## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETRÓLEOS DE VENEZUELA, S.A., PDVSA PETRÓLEO, S.A., and PDV HOLDING, INC., | |
| Plaintiffs and Counterclaim Defendants, | |
| - against - | No. 19 Civ. 10023 (KPF) |
| MUFG UNION BANK, N.A. and GLAS AMERICAS LLC, | |
| Defendants and Counterclaim Plaintiffs. | |

### DEFENDANTS' ANSWER AND COUNTERCLAIMS

Defendants, by their undersigned attorneys, hereby file their Answer to the Complaint of Petróleos de Venezuela, S.A. ("PDVSA"), PDVSA Petróleo, S.A. ("PDVSA Petróleo"), and PDV Holding, Inc. ("PDVH") and their Counterclaims.

1.       Defendants deny the allegations in paragraph 1, except as follows.  Defendants admit that plaintiffs seek the stated relief (and deny that they are entitled to any of the relief sought).  Defendants admit upon information and belief that Citgo Holdings, Inc. ("Citgo Holdings") owns 100% of Citgo Petroleum Corporation ("Citgo") and that Citgo is a U.S.-based company that is engaged in, among other lines of business, the business of oil refining.

2.       Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2, except as follows.  Defendants admit upon information and belief that PDVSA is wholly owned by the Bolivarian Republic of Venezuela ("Venezuela"), that PDVSA Petróleo and PDV Holding are wholly owned subsidiaries of PDVSA, and that PDV Holding indirectly owns Citgo.

3.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3, except as follows.  Defendants admit upon information and belief that the National Assembly adopted declarations regarding the 2018 election and refer to those declarations for their contents.  Defendants admit that Maduro became President of Venezuela after Chávez's death in 2013.  Defendants admit that in January 2019 President Trump issued a statement entitled "Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela" and refer to that statement for its contents.

4.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4, except as follows.  Defendants admit that PDVSA issued unsecured notes due in 2017 (the "2017 Notes").  Defendants deny that this issuance constituted "odious borrowing."

5.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5, except as follows.  Defendants deny that the exchange offer by which PDVSA exchanged the 2017 Notes for the senior secured notes due in 2020 (the "Exchange Offer" and the "2020 Notes" respectively) was illegal or that the 2017 Notes were issued in local currency.  Defendants admit that PDVH is not a party to the indenture governing the 2020 Notes (the "Indenture") and refer to the Indenture and the pledge and security agreement (the "Pledge Agreement") for their terms.

6.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6, except as follows.  Defendants deny that the Exchange Offer required authorization by the National Assembly and deny that the holders of 2017 Notes who accepted the proposal did so knowing that the Exchange Offer required authorization by the

National Assembly.  Defendants admit that the National Assembly adopted a resolution dated September 27, 2016, and refer to that resolution for its contents.  Defendants admit that the Venezuelan Supreme Tribunal issued an opinion dated October 25, 2016, and refer to that opinion for its contents.

7.      Defendants deny the allegations in paragraph 7.

8.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8, except as follows.  Defendants admit that the Delaware Chancery Court issued an opinion concerning the ad hoc PDVSA Board and refer to that opinion for its contents.  Defendants allege that the relevant judgment of the Delaware Chancery Court is currently on appeal to the Supreme Court of Delaware.  Defendants admit upon information and belief that the Guaidó administration has appointed an ad hoc board of PDVSA, and that the ad hoc board has appointed a board of PDVH.

9.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9, except as follows.  Defendants admit that, on October 28, 2019, PDVSA did not make a payment of principal and interest due on the 2020 Notes of approximately $913 million, triggering an Event of Default.  Defendants admit that the Office of Foreign Assets Control of the United States Department of the Treasury issued General License 5A and refer to that document for its terms.

10.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10, except admit upon information and belief that PDVSA is a Venezuelan corporation with its principal place of business in Caracas, Venezuela and refer to Article 303 of the Venezuelan Constitution for its terms.

11.     Defendants admit upon information and belief the allegations in paragraph 11.

12.     Defendants admit upon information and belief the allegations in paragraph 12.

13.     Defendants deny the allegations in paragraph 13, except as follows.  Defendants admit that MUFG Union Bank, N.A. is a U.S. national banking association, with offices in California and New York City and that MUFG Union Bank, N.A. is the Trustee under the Indenture and the Pledge Agreement.  Defendants refer to the Indenture and the Pledge Agreement for their contents.

14.     Defendants admit the allegations in paragraph 14.

15.     Defendants admit upon information and belief the allegations in paragraph 15.

16.     Defendants deny the allegations in paragraph 16, except admit that this Court has personal jurisdiction over the defendants.

17.     Defendants admit the allegations in paragraph 17.

18.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18, except as follows.  Defendants admit that Venezuela is a sovereign state on the northern coast of South America, that Venezuela was colonized by Spain in 1498, that Venezuela gained independence in 1830, and that Venezuela became a federal presidential republic with democratic elections in 1958.

19.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19, except as follows.  Defendants admit upon information and belief that Venezuela underwent political upheaval in the 1980s and 1990s, that Hugo Chávez was elected president in 1998, and that Venezuela ratified a new constitution in 1999.

20.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20, except as follows.  Defendants admit that Chávez died in 2013; that he was succeeded by Nicolás Maduro; that Maduro won an election in 2013 following

Chávez's death; that until January 2019 the United States recognized the Chávez administration and later the Maduro administration as the legitimate government of Venezuela; and that, in January 2019, the United States recognized the President of the Venezuelan National Assembly, Juan Guaidó, as the Interim President of Venezuela.

21.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21, except as follows.  Defendants admit that in 2015 a coalition of Maduro opponents, including Guaidó, won control of Venezuela's National Assembly; that the Office of Foreign Assets Control of the United States Department of the Treasury sanctioned members of the Constitutional Chamber; and that the Office of Foreign Assets Control of the United States Department of the Treasury issued a related press release. Defendants refer to the press release for its contents.

22.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22, except as follows.  Defendants admit that the President of the United States issued Executive Order No. 13808 and refer to that Executive Order for its contents.  Defendants admit that the Constituent National Assembly was formed in 2017.

23.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23, except that defendants refer to the contents of the articles cited therein.

24.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24, except as follows.  Defendants admit that Maduro was sworn in as President of Venezuela on January 10, 2019.  Defendants admit that, in January 2019, President Trump issued a statement entitled "Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of

Venezuela" and refer to that statement for its contents.  Defendants refer to the cited Fact Sheet for its contents.

25.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25.

26.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26, except that defendants refer to the cited article for its contents.

27.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

28.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28.

29.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29.

30.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30, except that defendants refer to the statements cited therein for their contents.

31.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31, except that defendants refer to the cited reports and statements for their contents.

32.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32, except that defendants refer to the cited reports for their contents.

33.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33, except that defendants refer to the cited reports for their contents.

34.     Defendants admit upon information and belief the allegations in paragraph 34.

35.     Defendants deny knowledge or information sufficient to form a belief as to the allegations in paragraph 35, except that defendants admit upon information and belief that Interim President Guaidó has appointed an ad hoc board of PDVSA.

36.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 and refer to *Jimenez* v. *Palacios*, No. CV 2019-0490-KSJM, 2019 WL 3526479, at *1 (Del. Ch. revised Aug. 12, 2019), *appeal pending*, No. 399, 2019 (Del.) (notice of appealed filed Sep. 19, 2019), for its contents.

37.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37.

38.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38.

39.     Defendants deny that the 2017 Notes were issued in local currency at a preferential rate.  Defendants admit the remaining allegations in paragraph 39.

40.     Defendants deny the allegations in paragraph 40, except as follows.  Defendants admit that, in the September 2016 Exchange Offer, PDVSA offered to exchange the 2017 Notes for the 2020 Notes.  Defendants refer to the offering circular describing the Exchange Offer (the "Offering Circular"), the Indenture, and the Pledge Agreement for their terms.  Defendants deny knowledge or information sufficient to form a belief as to whether any other notes issued by PDVSA were secured by shares of Citgo Holding that were owned by PDVH.

7

41.    Defendants admit upon information and belief the allegations in paragraph 41.

42.    Defendants deny the allegations in paragraph 42, except as follows.  Defendants admit that the 2020 Notes were issued pursuant to the Indenture.  Defendants admit that, pursuant to the Pledge Agreement, the 2020 Notes were secured by a pledge of 50.1% of the shares of Citgo Holding.  Defendants admit that the pledged shares were owned by PDVH. Defendants refer to the definition of Transaction Documents in the Indenture for its contents and refer to the Offering Circular, the 2020 Notes, the Indenture, and the Pledge Agreement for their contents.

43.    Defendants admit the allegations in paragraph 43.

44.    Defendants deny knowledge or information sufficient to form a belief as to truth of the allegations in paragraph 44, except that defendants refer to the Offering Circular for its contents.

45.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45.

46.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46.

47.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47, except that defendants refer to the cited press releases and the other cited documents for their contents.

48.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48, except that defendants refer to the cited National Assembly resolution for its contents.

49.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49, except as follows.  Defendants deny that the Exchange Offer violated the Venezuelan Constitution.  Defendants admit that PDVSA defaulted on certain of its debts in late 2017.

50.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50, except that defendants refer to the cited National Assembly resolution for its contents.

51.     Defendants deny the allegations in paragraph 51, except that defendants refer to the articles cited for their contents.

52.     Defendants deny the allegations in paragraph 52, except that defendants refer to the articles cited for their contents.

53.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53, except that defendants refer to the reports cited for their contents.

54.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54, except as follows.  Defendants admit that the results of the Exchange Offer were announced on October 24, 2016.  Defendants admit that the Indenture was executed on October 27, 2016.  Defendants admit that the Pledge Agreement was executed on October 28, 2016.  Defendants refer to the cited opinion of the Venezuelan Supreme Tribunal for its contents.

55.     Defendants deny the allegations in paragraph 55, except that defendants refer to the cited article and reports for their contents.

56.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56, except that defendants deny that the Indenture or the Pledge Agreement required authorization by the National Assembly.

57.     Defendants deny knowledge or information sufficient to form as belief as to the truth of the allegations in paragraph 57, except as follows.  Defendants admit that, on January 23, 2019, President Trump issued a statement entitled "Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela" and refer to that statement for its contents.

58.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58, except as follows.  Defendants admit that, on January 23, 2019, Secretary of State Michael Pompeo issued a press statement.  Defendants refer to that statement for its contents.

59.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59, except as follows.  Defendants admit that on January 25, 2019, President Trump issued Executive Order No. 13857 and refer to that Executive Order for its contents.

60.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60, except that defendants refer to the cited press statement and news article for their contents.

61.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61, except that defendants refer to the cited statute and press statement for their contents.

62.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62, except that defendants refer to the cited press statement for its contents.

63.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63, except that defendants refer to the cited statements for their contents.

64.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64, except that defendants refer to the cited statement for its contents.

65.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65, except as follows.  Defendants admit that President Trump issued Executive Order No. 13835 and refer to that Executive Order for its contents.

66.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66, except as follows.  Defendants admit that, in July 2018, OFAC issued General License 5 as a carve-out from Executive Order No. 13835.  Defendants refer to Executive Order No. 13835 and General License 5 for their contents.

67.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67, except as follows.  Defendants admit that OFAC issued General License 7B and refer to Executive Order No. 13835, General License 7B, and the other documents cited for their contents.

68.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68, except as follows.  Defendants admit that, on August 5,

2019, President Trump issued Executive Order No. 13884 and OFAC issued General License 31 and refer to the documents cited for their contents.

69.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69, except as follows.  Defendants admit that OFAC issued General License 5A on October 24, 2019.  Defendants refer to Executive Order No. 13835, General License 5, and General License 5A for their contents.

70.     Defendants refer to the Indenture for its contents and deny the allegations in paragraph 70 to the extent those allegations may be inconsistent with the Indenture.

71.     Defendants refer to the Indenture and the Pledge Agreement for their contents and deny the allegations in paragraph 71 to the extent those allegations may be inconsistent with the Indenture or the Pledge Agreement.

72.     Defendants deny the allegations in paragraph 72, except as follows.  Defendants admit that under the terms of the Indenture, approximately $913 million in principal and interest was due by 10:00 a.m. (EST) on October 28, 2019.  Defendants admit that this payment was not made.  Defendants admit that an Event of Default has consequently occurred.  Defendants admit that under the terms of the Indenture and the Pledge Agreement, the occurrence of an Event of Default entitles the Trustee at the written direction of a certain percentage of holders specified in such Transaction Documents to direct the Collateral Agent to exercise certain remedies specified in such Transaction Documents.  Defendants refer to the Indenture, the Pledge Agreement, and General License 5A for their contents.

73.     Defendants repeat, assert, and incorporate by reference their responses to allegations in paragraphs 1 through 72 as if fully set forth herein.

74.     To the extent that paragraph 74 states a legal conclusion, no response is required. To the extent a response is required, defendants deny the allegations in paragraph 74, except that defendants refer to the cited provisions of the Venezuelan Constitution for their contents.

75.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75, except as follows.  Defendants admit upon information and belief that PDVSA is wholly owned by the Republic of Venezuela and that PDVSA Petróleo is a wholly owned subsidiary of PDVSA.

76.     Defendants deny the allegations in paragraph 76, except defendants admit that PDVSA and PDVSA Petróleo are parties to the Indenture.

77.     Defendants admit the allegations in paragraph 77.

78.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78, except defendants deny that the Indenture was entered into in violation of the Venezuelan Constitution.

79.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79, except defendants refer to the cited National Assembly resolution for its contents.

80.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80, except as follows.  Defendants admit that in January 2019, President Trump issued a statement entitled "Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela" and refer to that statement for its contents.

81.     Defendants admit the allegations in paragraph 81.

82.     Defendants admit the allegations in paragraph 82 and allege that PDVSA and PDVSA Petróleo are in default of their valid, legal, and enforceable payment obligations under the Indenture.

83.     Defendants deny the allegations in paragraph 83.

84.     Defendants repeat, assert, and incorporate by reference their responses to allegations in paragraphs 1 through 83 as if fully set forth herein.

85.     Defendants deny the allegations in paragraph 85, except defendants refer to the cited provisions of the Venezuelan Constitution for their terms.

86.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86, except as follows.  Defendants admit upon information and belief that PDVSA is wholly owned by the Republic of Venezuela and that PDVSA Petróleo is a wholly owned subsidiary of PDVSA.

87.     Defendants deny the allegations in paragraph 87, except defendants admit that PDVSA and PDVSA Petróleo are parties to the Pledge Agreement.

88.     Defendants admit the allegations in paragraph 88.

89.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 89, except defendants deny that the Pledge Agreement was entered into in violation of the Venezuelan Constitution.

90.     Defendants deny the allegations in paragraph 90, except as follows.  Defendants admit that, on October 15, 2019, the National Assembly adopted a resolution and refer to that resolution for its contents.

91.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91, except Defendants admit that, in January 2019, President

Trump issued a statement entitled "Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela" and refer to that statement for its contents.

92.      Defendants admit the allegations in paragraph 92.

93.      Defendants admit the allegations in paragraph 93 and allege that PDVSA and PDVSA Petróleo are in default of their valid, legal, and enforceable payment obligations under the Indenture.

94.      Defendants deny the allegations in paragraph 94.

95.      Defendants deny that plaintiffs are entitled to the relief requested in their prayer for relief.  Defendants respectfully request that the Court enter judgment dismissing plaintiffs' claims, awarding defendants the costs of this action and attorney's fees, and further awarding defendants and counterclaim plaintiffs the relief sought in the Prayer for Relief on their counterclaims.

## Defenses

96.      Defendants assert the following defenses without prejudice to any position they may take regarding the burden of proof on such defenses.  Defendants reserve the right to assert additional defenses in the future, including defenses based on facts that may be revealed through discovery or further investigation.

## First Defense

97.      The Complaint fails to state a claim upon which relief can be granted.

## Second Defense

98.      Plaintiffs' claims are barred, in whole or in part, by plaintiffs' unclean hands and/or inequitable conduct.

**Third Defense**

99.     Plaintiffs' claims are barred, in whole or in part, due to plaintiffs' knowledge of the alleged Venezuelan constitutional violations, plaintiffs' failure to disclose the alleged Venezuelan constitutional violations, plaintiffs' acceptance of the benefits of the exchange offer, and plaintiffs' bad faith and prejudicial delay in asserting their purported claims.

**Fourth Defense**

100.    Plaintiffs' claims are barred, in whole or in part, by consent, acquiescence, waiver, promissory estoppel, and/or ratification.  Plaintiffs knowingly and voluntarily agreed to the terms of the Offering Circular, the 2020 Notes, the Indenture, and the Pledge Agreement, accepted benefits under those documents and agreements, and substantially performed their obligations under those documents and agreements for years.  To the extent relevant, plaintiffs' statements, conduct, and omissions were intended to induce, and did induce, reliance by the Trustee and the Collateral Agent, each of which changed its position to its detriment based on its reliance, and, upon information and belief, plaintiffs' statements, conduct, and omissions were intended to induce, and did induce, reliance by beneficial owners who acquired beneficial ownership of the 2020 Notes in the Exchange Offer or subsequently, each of which changed its position to its detriment based on its reliance.

**Fifth Defense**

101.    Plaintiffs' claims are barred, in whole or in part, by laches due to plaintiffs' delay and/or lack of diligence in asserting their purported claims and the resulting prejudice to defendants and the beneficial owners of the 2020 Notes.

**Sixth Defense**

102.     Plaintiffs' claims are barred, in whole or in part, by estoppel by recitals and/or equitable estoppel.  Plaintiffs' claims contradict the recitals in the Indenture.  These recitals include statements that PDVSA had "duly authorized the exchange of the [2017] Notes for the [2020] Notes;" that PDVSA had "duly authorized the execution and delivery of this Indenture;" that "all things necessary to make this Indenture a valid agreement" of PDVSA had "been done;" PDVSA "has done all things necessary to make the [2020] Notes" its "valid obligations;" and that PDVSA Petróleo had "duly authorized the execution and delivery of this Indenture as guarantor of the [2020] Notes, and all things necessary to make this Indenture a valid agreement" of PDVSA Petróleo "have been done."  Plaintiffs' claims also contradict other statements by plaintiffs and are inconsistent with other conduct by plaintiffs.  Moreover, if plaintiffs' allegations are true, plaintiffs knowingly failed to disclose the violations of the Venezuelan Constitution that plaintiffs have alleged.  To the extent relevant, plaintiffs' statements, conduct, and omissions were intended to induce, and did induce, reliance by the Trustee and the Collateral Agent, each of which changed its position to its detriment based on its reliance, and, upon information and belief, plaintiffs' statements, conduct, and omissions were intended to induce, and did induce, reliance by beneficial owners who acquired beneficial ownership of the 2020 Notes in the Exchange Offer or subsequently, each of which changed its position to its detriment based on its reliance.

**Seventh Defense**

103.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of *in pari delicto* because plaintiffs were voluntary participants in the alleged wrongful conduct and plaintiffs' wrongdoing was at least substantially equal to any wrongdoing of defendants.

**Eighth Defense**

104.    Plaintiffs' claims are barred, in whole or in part, because plaintiffs had apparent

authority to enter into the 2020 Notes, the Indenture, and the Pledge Agreement.

**Ninth Defense**

105.    This Court should exercise its discretion to deny plaintiffs any declaratory relief

under all the circumstances, including, among other factors, plaintiffs' inequitable conduct, the

lack of mutuality, and the insufficiency of the evidentiary record.

**Tenth Defense**

106.    Plaintiffs' claims are barred, in whole or part, by the act of state doctrine and/or

the doctrine of comity.

**COUNTERCLAIMS**

107.    These counterclaims arise from senior secured notes (the "2020 Notes") that

counterclaim defendant Petróleos de Venezuela, S.A. ("PDVSA") issued in connection with an

exchange offer in 2016 (the "Exchange Offer").  The terms of the Exchange Offer and the terms

of the 2020 Notes are described in an offering circular dated September 16, 2016, and a

supplement to such offering circular dated September 26, 2016 (collectively, the "Offering

Circular"), both of which were issued by PDVSA.  The Offering Circular and its supplement are

attached to this Counterclaim as Exhibits A and B, respectively.  The 2020 Notes, by their terms,

were due to reach original maturity on October 27, 2020.  The 2020 Notes bear interest at a rate

of 8.5 percent per annum.  The 2020 Notes are governed by the Indenture[1] and the terms set forth

on the face of the 2020 Notes.

---

[1]    The Indenture was executed as of October 27, 2016, between PDVSA; PDVSA Petróleo, as
Guarantor; the Trustee; the Collateral Agent; Law Debenture Trust Company of New York
as Registrar, Transfer Agent, and Principal Paying Agent; and Banque Internationale à

108.    The current aggregate principal amount of the 2020 Notes (after taking into account certain prior payments of amortized principal) is approximately $1.68 billion.  PDVSA's subsidiary PDVSA Petróleo, S.A. ("PDVSA Petróleo") guaranteed the 2020 Notes.  The 2020 Notes are secured pursuant to the Pledge Agreement[2] by a pledge by PDV Holding, Inc. ("PDVH") of 50.1% of the capital stock of Citgo Holding, Inc. ("Citgo Holding").  Citgo Holding, in turn, owns 100% of the capital stock of Citgo Petroleum Corporation ("Citgo").

109.    The 2020 Notes and the Indenture required PDVSA to make a payment of approximately $913 million ($841,882,250 in principal and approximately $71 million in interest) on October 28, 2019.[3]  PDVSA failed to make that payment, and the amounts due remain unpaid.  Events of Default under the Indenture and the 2020 Notes have accordingly occurred.  As explained below, counterclaim defendants' filing of this action constituted additional and independent Events of Default under the relevant Transaction Documents.

110.    On December 18, 2019, prior to the filing of this Answer and Counterclaims, holders of at least 25% in principal amount of Outstanding Notes (as defined in the Indenture) sent an Acceleration Notice (as defined in the Indenture) to PDVSA and the Trustee pursuant to Section 5.01(b) of the Indenture.

111.    Counterclaim plaintiffs are MUFG Union Bank, N.A., in its capacity as Trustee under the Indenture (the "Trustee"), and GLAS Americas LLC, in its capacity as Collateral Agent under the Indenture and the Pledge Agreement (the "Collateral Agent").  The Trustee and

---

Luxembourg, Société Anonyme, as Luxembourg Paying Agent.  The Indenture is attached to this Counterclaim as Exhibit C.

[2]    The Pledge Agreement was executed October 28, 2019, between PDVH, as Pledgor; PDVSA, as Issuer; PDVSA Petróleo, as Guarantor; the Collateral Agent; and the Trustee. The Pledge Agreement is attached to this Counterclaim as Exhibit D.

[3]    For the avoidance of doubt, "dollars" or "$" refer to U.S. dollars.

19

Collateral Agent roles are created and circumscribed by the Indenture and related documents, and the Trustee and Collateral Agent assert these counterclaims at the direction of Required Holders (as defined in the Indenture) under the Indenture.[4]

112.     By these counterclaims, the Trustee and Collateral Agent seek the following relief:

(a)     Through their first through third counterclaims, the Trustee and the Collateral Agent seek declaratory relief holding that the 2020 Notes, the Indenture, and the Pledge Agreement are valid, legal, and enforceable.

(b)     Through their fourth counterclaim, the Trustee and the Collateral Agent seek declaratory relief holding that one or more Events of Default have occurred under the Indenture permitting the exercise of remedies set forth therein and in the Pledge Agreement with respect to the 2020 Notes.

(c)     By their fifth counterclaim, the Trustee and the Collateral Agent seek declaratory relief holding that, subject to obtaining any necessary approvals from the United States government, the Trustee is entitled (at the written direction of the percentage of holders specified in the Indenture with respect to such remedy) to direct the Collateral Agent to sell the collateral securing the 2020 Notes, and the Collateral Agent (at the written direction of the Trustee acting at the written direction of the percentage of holders specified in the Indenture with respect to such remedy) is entitled to sell that collateral.

---

[4]     Allegations set forth herein are based upon the terms of the Indenture and other Transaction Documents, publicly available information, or the investigation of counsel.

(d)     Through the sixth and seventh counterclaims, the Trustee seeks judgments awarding damages against PDVSA and PDVSA Petróleo in the amount of all sums currently due and continuing to accrue under the 2020 Notes and the Indenture, including but not limited to principal, interest, fees, and expenses.

(e)     Through the eighth through tenth counterclaims, the Trustee and the Collateral Agent seek certain relief in the event that the Court holds any material portion of the 2020 Notes, the Indenture, or the Pledge Agreement to be invalid.  More specifically, in that event, the Trustee and the Collateral Agent seek judgments awarding damages under the doctrine of unjust enrichment and for breach of warranty.

(f)     Through the eleventh and twelfth counterclaims, the Trustee and the Collateral Agent seek judgments awarding damages for certain fees, disbursements, and expenses, and/or for the reasonable value of services provided by the Trustee, the Collateral Agent, and for the fees, disbursements, and expenses of their agents and attorneys.

**Parties**

113.    Defendant and counterclaim plaintiff MUFG Union Bank, N.A., in its capacity as trustee under the Indenture, is a U.S. national banking association with offices in California and New York, New York.  The Trustee is authorized to pursue the claims it asserts herein under the Indenture and is doing so at the written direction of Required Holders.

114.    Defendant and counterclaim plaintiff GLAS Americas, LLC in its capacity as Collateral Agent under the Indenture and the Pledge Agreement is a New York limited liability company that has a single member organized under English law that has its principal place of

business in London, England.  The Collateral Agent (in accordance with the written direction of

the Trustee upon written direction of Required Holders) is authorized to pursue the claims it

asserts herein under the Pledge Agreement.

115.    Plaintiff and counterclaim defendant PDVSA is a Venezuelan corporation with its

principal place of business in Caracas, Venezuela.

116.    Plaintiff and counterclaim defendant PDVSA Petróleo is a Venezuelan

corporation with its principal place of business in Caracas, Venezuela.

117.    Plaintiff and counterclaim defendant PDVH is a Delaware corporation with its

principal place of business in Houston, Texas.  PDVH, through its wholly owned subsidiary

Citgo Holding, is the sole owner of Citgo.

**Jurisdiction and Venue**

118.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(a)(3) because the amount in controversy exceeds $75,000, exclusive of interest and costs,

and it is an action between citizens of different States (the Trustee and PDVH) in which citizens

or subjects of foreign states (PDVSA, PDVSA Petróleo, and the Collateral Agent) are additional

parties.

119.    This Court also has subject matter jurisdiction under 28 U.S.C. § 1367 because

the Court has original jurisdiction over this action and the counterclaims are so related to the

other claims that they form part of the same case or controversy.

120.    This Court has jurisdiction over the counterclaim defendants because they

consented to the jurisdiction of this Court in the Indenture, Ex. C § 10.12, and the Pledge

Agreement, Ex. D § 7.13(b), and because counterclaim defendants have voluntarily submitted

themselves to the jurisdiction of this Court by filing their Complaint in this Court.

121.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these counterclaims occurred in this district and because counterclaim defendants waived any objection to venue in this Court pursuant to the Indenture, Ex. C § 10.12, and the Pledge Agreement, Ex. D § 7.13(b).

**Factual Allegations**

**A.     PDVSA and Its Subsidiaries**

122.    PDVSA is an oil and natural gas company established by the Venezuelan government to coordinate, monitor, and control all operations relating to the country's oil and natural gas reserves.  PDVSA was incorporated as a *sociedad anónima* in 1975 and is wholly owned by the Bolivarian Republic of Venezuela.  According to PDVSA's Consolidated Financial Statements dated December 31, 2016, the most recent such statement available, its total assets and total liabilities were approximately $190 billion and $103 billion, respectively, and its annual gross revenue was $48 billion.

123.    PDVSA owns 100% of the shares of PDVSA Petróleo and PDVH.  PDVH, in turn, owns 100% of the shares of Citgo Holding, a Delaware corporation.  Citgo Holding owns 100% of the shares of Citgo.

124.    Citgo is a Delaware corporation with headquarters in Houston, Texas.  Citgo's business includes the refining, transportation, and marketing of transportation fuels, lubricants, petrochemicals, and other products.  As of 2016, Citgo's total assets and total debt were $8.18 billion and $4.018 billion, respectively, and its annual gross revenue was $19.984 billion. In 2018, Citgo's total assets and total debt were $8.075 billion and $3.475 billion, respectively, and its annual gross revenue was $29.841 billion.

125.    Citgo is the corporate successor to Cities Service Company, which was founded in 1910.  According to public reports, prior to 1986, PDVSA had no ownership interest in Citgo.

In 1986, PDVSA purchased approximately 50% of Citgo's stock, for consideration valued at $300 million, in a deal with Southland Corp.  In 1990, PDVSA purchased the rest of the Citgo's stock.  It was publicly reported that PDVSA acquired Citgo primarily as an outlet to refine and market Venezuelan crude oil and other products in the United States.

**B.      PDVSA Issues More than $9 Billion of 2017 Notes and Spends the Proceeds.**

126.     In April 2007, PDVSA issued $3 billion of Notes due in April 2017 with an interest rate of 5.25% (the "April 2017 Notes").  In October 2010 and January 2011, PDVSA issued an additional $6.15 billion of Senior Notes due in November 2017 with an interest rate of 8.5% (the "November 2017 Notes").  Together, the April 2017 Notes and November 2017 Notes are referred to as the "2017 Notes."  PDVSA Petróleo was a guarantor of all the 2017 Notes.

127.     Interest on the April 2017 Notes was payable semiannually (on April 12 and October 12, commencing in October 2007), with the entire principal amount due on April 12, 2017.  Interest on the November 2017 Notes was also payable semiannually (on May 2 and November 2), with their principal due in three equal installments on November 2, 2015, November 2, 2016, and November 2, 2017.

128.     The 2017 Notes were issued to and traded by investors around the world, including in the United States.  The 2017 Notes were payable in U.S. dollars, were governed by New York law, included a consent by PDVSA to jurisdiction in New York courts and a waiver of sovereign immunity, and had U.S.-based trustees (Bank of New York for the 5.25% notes, and Wilmington Trust Company for the 8.5% notes) and paying agents (Bank of New York for the 5.25% notes, and Citibank, N.A. for the 8.5% notes).

129.     PDVSA stated in the offering circulars for the 2017 Notes that it intended to use the proceeds to fund a business strategy that included oil and natural gas exploration,

development, and production and the expansion of refinery capacity, other infrastructure, and marketing efforts.

130.    To counterclaim plaintiffs' knowledge, PDVSA did not seek concurrent or prior authorization or approval from the Venezuelan National Assembly for any of these issuances of the 2017 Notes, and the National Assembly did not assert that any such authorization or approval was required.  Plaintiffs do not challenge the validity or legality of the 2017 Notes in this case, nor, to counterclaim plaintiffs' knowledge, have they done so elsewhere.

**C.    The Political Situation in Venezuela in 2016**

131.    Between 1999 and 2013, Hugo Chávez was the President of Venezuela.

132.    In 2013, following Chávez's death, Nicolás Maduro became the President of Venezuela.  Maduro won a special presidential election later that same year.

133.    From 2013 until January 2019, the United States recognized Maduro as the legitimate president of Venezuela and the Maduro administration as the country's legitimate government.  That continued after 2015, when an opposition group led by Guaidó won control of Venezuela's National Assembly, the country's unicameral legislature.

**D.    PDVSA's 2016 Offer to Exchange 2017 Notes for 2020 Notes**

134.    On September 16, 2016, PDVSA announced it would seek to refinance the 2017 Notes.  As described in the Offering Circular, PDVSA offered to exchange all of the remaining 2017 Notes for new 2020 Notes.  The Offering Circular, along with unexecuted drafts of the Indenture and the Pledge Agreement, was filed with the United States Securities and Exchange Commission ("SEC").

135.    At that time, the 2017 Notes had an aggregate principal amount outstanding of approximately $7.1 billion.  The conversion ratio that PDVSA initially proposed was 1:1, meaning that an exchanging holder would receive 2020 Notes with a principal amount equal to

25

the principal amount of the 2017 Notes the holder exchanged.  The 2020 Notes would have an interest rate of 8.5%.  This was a higher interest rate than the subset of the 2017 Notes issued in 2007 (5.25%), but the same interest rate as the subset of the 2017 Notes issued in 2010 and 2011.

136.    The exchange was structured as a tender offer.  Each holder had until the tender offer deadline (initially, October 14, 2016) to elect to accept the exchange offer by "tendering" its 2017 Notes.  But PDVSA was not obligated to close the exchange unless holders of at least 50% of the 2017 Notes (by principal amount) elected to participate.  In order to encourage holders to tender, PDVSA offered a 5% "premium" for holders who tendered by the early tender deadline (initially, September 29, 2016).  In other words, holders who tendered early would receive $1,050 of 2020 Notes for each $1,000 of 2017 Notes that they tendered.

137.    The 2020 Notes were secured by a pledge by PDVH of 50.1% of the capital stock of Citgo Holding.  The location of the collateral in the United States meant that it could reasonably be expected to be easier to foreclose upon in the event of a default than if it were located in Venezuela.

138.    PDVSA announced that the exchange offer was approved by the board of directors of PDVSA at meeting number 2016-14 on September 7, 2016; by the Extraordinary General Shareholder Assembly of PDVSA at a meeting held on September 8, 2016; and by the board of directors of PDVSA Petróleo at a meeting held on September 7, 2016.  *See* Petróleos de Venezuela, S.A., *Convocatoria para el Canje de Bonos con Vencimiento en Abril de 2017 y Noviembre de 2017* 13 (Sept. 16, 2016).

139.    Following the announcement of the exchange offer, on September 27, 2016, the National Assembly passed a resolution expressing disapproval of the pledge of the capital stock of Citgo Holding and the indirect interest in Citgo.  The resolution opined that PDVSA's need to

26

offer the security interest to refinance the debt, despite Venezuela's having the "largest oil reserves in the world," was an "indicator of the credibility problems" PDVSA was facing.  While the National Assembly stated that it "[c]ategorically reject[ed]" the pledge, it did not assert that the transaction (including the Pledge Agreement) required the approval of the National Assembly under Article 150 of the Constitution or otherwise, did not assert that the transaction was illegal, invalid, or unconstitutional, and did not mention Article 150.

140.     On September 26, 2016, PDVSA amended the terms of the exchange offer to: (i) increase the conversion ratio from 1:1 to 1:1.12 (for the April 2017 Notes) and from 1:1 to 1.17 (for the November 2017 Notes); (ii) establish a maximum exchange amount of 75% of the 2017 Notes; and (iii) extend the early tender deadline from September 29, 2016, to October 6, 2016.

141.     PDVSA continued to extend the deadlines.  On October 6, 2016, PDVSA again extended the early tender deadline to October 12, 2016.  On October 12, 2016, PDVSA extended both the early tender deadline and the expiration date to October 17, 2016—which had the effect of offering the early tender premium to *all* exchanging holders.  And on October 17, 2016, PDVSA further extended the deadlines to October 21, 2016.

142.     PDVSA ultimately waived the 50% tender threshold.  On October 24, 2016, PDVSA announced that holders with approximately $2.8 billion of 2017 Notes (approximately 39.43%) had tendered in exchange for approximately $3.4 billion of 2020 Notes.

**E.     PDVSA and Its Subsidiaries Represented That They Were Authorized to Issue the 2020 Notes and to Enter into the Indenture and Pledge Agreement.**

143.     At the time of the exchange, PDVSA and its subsidiaries had apparent authority to issue the 2020 Notes and to enter into the Indenture and the Pledge Agreement.  The Trustee,

Collateral Agent, and, to counterclaim plaintiffs' reasonable belief, exchanging holders were

reasonable in believing that to be the case.  The Indenture expressly recited the following:

> (a)     PDVSA "has duly authorized the exchange of the Old Notes for the [2020] Notes through the issuance of its 8.50% Senior Secured Notes due 2020," Indenture, Ex. C at 1 (first whereas clause);
>
> (b)     PDVSA "has duly authorized the execution and delivery of this Indenture," *id.*;
>
> (c)     "all things necessary to make this Indenture a valid agreement" of PDVSA "have been done," *id.* (second whereas clause);
>
> (d)     PDVSA "has done all things necessary to make the [2020] Notes" its "valid obligations," *id.*; and
>
> (e)     PDVSA Petróleo, S.A. "has duly authorized the execution and delivery of this Indenture as guarantor of the [2020] Notes, and all things necessary to make this Indenture a valid agreement" of PDVSA Petróleo, S.A. "have been done."  *Id.* (third whereas clause).

144.     In the Pledge Agreement, PDVH represented and warranted to the Collateral

Agent, for the benefit of the Collateral Agent as well as the Trustee and the holders of the 2020

Notes, among other things, that:

> (a)     PDVH had "full power and authority, and all governmental licenses, authorizations, consents and approvals, to execute and deliver" the Pledge Agreement "and to perform its obligations thereunder," Pledge Agreement, Ex. D § 3.01(a);
>
> (b)     "the execution and delivery by [PDVH] of the" Pledge Agreement "and its performance thereunder" had "been duly authorized by all necessary action by [PDVH]"; "require[d] no additional action by or in respect of, or filing with, any governmental authority, except such as have been taken or made on or before the date hereof and remain in full force and effect;" and that it would "not contravene any Applicable Law," which was defined to include Venezuelan law, *id.* § 3.01(b);
>
> (c)     the Pledge Agreement had "been duly executed and delivered by it and constitutes its legal, valid and binding obligation enforceable against it in accordance with its terms" (except in inapplicable circumstances); *id.* § 3.01(c); and
>
> (d)     that "the choice of the laws of the State of New York as the governing law of [the Pledge Agreement], the Indenture (and any Transaction Document)

is a valid choice of law under the laws of Venezuela and any political
subdivision thereof, and none of the Issuer, the Guarantor or the Pledgor
knows of any reason why the courts of Venezuela would not give effect to
such choice of law." *Id.* § 3.01(d).

145.    The Offering Circular contained a 15-page discussion of "Risk Factors."  The
risks discussed included: decreases in oil and gas prices; social and political tension in
Venezuela; the Venezuelan government's control over PDVSA's domestic prices; the
Venezuelan Constitution's requirement that Venezuela retain ownership over PDVSA; the
Venezuelan government's requirement that PDVSA contribute to Venezuela's social programs;
and Venezuelan regulations of industry, foreign exchange and capital controls, tax laws, price
controls, and the environmental laws.

146.    The Offering Circular did not identify as a risk factor that the 2020 Notes, the
Indenture, or the Pledge Agreement were subject to challenge as invalid or illegal.  Nor did the
Offering Circular state that the 2020 Notes, the Indenture, or the Pledge Agreement were subject
to challenge because those documents, or the transactions contemplated by those documents,
were not approved by the National Assembly or were in violation of Article 150 of the
Venezuelan Constitution.

147.    The Offering Circular stated that PDVSA's U.S. counsel (Hogan Lovells US
LLP) and Venezuelan counsel (Despacho de Abogados Hogan Lovells, S.C.) provided legal
opinions on United States and Venezuelan law.

**F.    The 2020 Notes, the Indenture, and the Pledge Agreement
    Are Governed by New York Law.**

148.    Each of the 2020 Notes, the Indenture, and the Pledge Agreement contains a
broad provision that "all matters arising out of or relating in any whatsoever" to such documents
are governed by New York law.  The Offering Circular also stated that the transaction and
transaction documents would be governed by New York law.

| Document | Text of New York Choice-of-Law Clause |
|---|---|
| 2020 Notes | THIS NOTE SHALL BE CONSTRUED IN ACCORDANCE WITH, AND THIS NOTE AND ALL MATTERS ARISING OUT OF OR RELATING IN ANY WAY WHATSOEVER TO THIS NOTE (WHETHER IN CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICTS OF LAW PROVISIONS THEREOF (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).  Indenture, Ex. C, 2020 Note, Exhibit A to the Indenture, § 18. |
| Indenture | THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH, AND THIS AGREEMENT AND ALL MATTERS ARISING OUT OR RELATING IN ANY WAY WHATSOEVER TO THIS AGREEMENT (WHETHER IN CONTRACT, TORT, OR OTHERWISE) SHALL BE GOVERNED BY, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICTS OF LAW PROVISIONS THEREOF (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATION LAW).  Indenture, Ex. C § 10.03. |
| Pledge Agreement | THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH, AND THIS AGREEMENT AND ALL MATTERS ARISING OUT OF OR RELATING IN ANY WAY WHATSOEVER TO THIS AGREEMENT (WHETHER IN CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICTS OF LAW PROVISIONS THEREOF (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).  Pledge Agreement, Ex. D § 7.13. |
| Offering Circular | Governing Law       New York.  Offering Circular, Ex. A at 13, 17.<br><br>The Indenture will provide that the New Notes will be governed by, and construed in accordance with, the laws of the State of New York.  The Security Documents will also be governed by, and construed in accordance with, the laws of the State of New York.  *Id.* at 156. |

149.     Under New York General Obligations Law § 5-1401, New York choice-of-law clauses are enforceable without regard to the connections between the subject matter of these contracts and New York.[5]  The New York Legislature enacted Section 5-1401 for "the purpose of encouraging a predictable contractual choice of New York commercial law and, crucially, of

---

[5]     N.Y. General Obligations Law § 5-1401 ("The parties to any contract . . . arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars . . . may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state.").

eliminating uncertainty regarding the governing law." *IRB-Brasil Resseguros, S.A.* v. *Inepar Investments, S.A.*, 20 N.Y.3d 310, 316 (2012).

150.     The Pledge Agreement includes a representation by PDVH that "the choice of the laws of the State of New York as the governing law of this Agreement, the Indenture (and any Transaction Document) is a valid choice of law under the laws of Venezuela and any political subdivision thereof, and none of the Issuer, the Guarantor or the Pledgor knows of any reason why the courts of Venezuela would not give effect to such choice of law."  Pledge Agreement, Ex. D § 3.01(d).

151.     The 2020 Notes, the Indenture, and the Pledge Agreement have substantial connections to New York.  The 2020 Notes are to be performed by PDVSA within New York, with payments due to the payment agent, "in the City of New York," on the designated payment days.

152.     The Trustee is a federally chartered national banking association with offices in New York.  The Collateral Agent is organized under New York law and has an office in New York.  The Paying Agent, the Transfer Agent, and the Registrar (Law Debenture Trust Company of New York) is incorporated and headquartered in New York.  The Registrar is chartered by the New York State Department of Financial Services.  The Global Notes were deposited with the Depository Trust Company and registered in the name of Cede & Co., both of which are organized under the law of New York and headquartered in New York.

153.     There are other substantial connections to the United States.  The Offering Circular was delivered to, among others, existing United States investors and filed with the SEC.  Offering Circular, Ex. A; Supplement to Offering Circular, Ex. B.  The 2017 and 2020 Notes were issued in U.S. dollars and traded in the United States.

154.    PDVH, Citgo Holding, and Citgo are Delaware corporations with headquarters in Houston, Texas.  Citgo's assets and operations are located throughout the eastern United States. Substantially all of Citgo's assets and operations are in the United States, and it has no material assets or operations in Venezuela.



155.    The Complaint admits that "a substantial part of the events giving rise to this complaint occurred [in New York]."  Complaint ¶ 17.

**G.    PDVSA Accepted the Benefits of the Exchange and Performed on the 2020 Notes Through April 2019.**

156.    With their later maturity, the 2020 Notes gave PDVSA more time to meet its obligations, invest in its business, or wait for a change in market conditions.

157.    Although all of the non-exchanged 2017 Notes were paid in full, PDVSA defaulted on other bonds in 2017.  If PDVSA had defaulted on the 2017 Notes, at that time, no U.S. sanctions would have prevented the trustee for the 2017 Notes from attaching and foreclosing on any of PDVSA's assets in the United States, including PDVH.

158.    Following the exchange, PDVSA repeatedly reaffirmed the validity of the 2020 Notes.  It did so by, among other things, making five separate principal and/or interest payments on the 2020 Notes in accordance with the Indenture as set forth below.  Together, the payments made in October 2017 and October 2018 amounted to 50% of the principal of the 2020 Notes.

| Date of Payment | Amount of Principal Paid | Amount of Interest Paid |
| --- | --- | --- |
| April 27, 2017 | N/A | $143.1 million |
| October 27, 2017 | $841.9 million | $143.1 million |
| April 27, 2018 | N/A | $107.3 million |
| October 27, 2018 | $841.9 million | $107.3 million |
| April 27, 2019 | N/A | $71.6 million |

159.    If PDVSA had failed to make any of these five payments, an Event of Default would have occurred under the Indenture, and the Trustee and the Collateral Agent could have, in accordance with the Indenture, and if so directed by the Required Holders (as defined in the Indenture), been able to pursue remedies, including taking action on the security interest on the collateral for the 2020 Notes.  As to the first three payments, due April 27, 2017, October 27, 2017, or April 27, 2018, there would have been no U.S. sanctions-related barrier because Executive Order 13835 ("E.O. 13835") had not yet been issued.  As to the other two payments, due October 27, 2018, and April 27, 2019, there also would have been no sanctions-related barrier because enforcement of the security interest would have been authorized by General License 5 ("GL5") issued by the Department of Treasury Office of Foreign Assets Control ("OFAC").

160.    The fifth payment—$71.6 million of interest due on April 27, 2019—was made

after PDVSA was under the control of the ad hoc board appointed by Interim President Guaidó,

and, according to the ad hoc board, was specifically authorized by the Venezuela National

Assembly.  *See* Ex. E (May 9, 2019, press release of ad hoc board).

161.    On October 30, 2019, José Ignacio Hernández González, Interim President

Guaidó's Special Attorney General, issued a press release explaining that PDVSA did not assert

its arguments prior to making the April interest payment because, at the time, "the United States

Government provided no protection measures necessary to reduce the risks of Citgo."  He went

on to explain that the delay from April to October "allowed the United States Government to

defer the enforcement of general license number 5 on October 24th, thus creating the right

conditions to be able to demand the nullity of the 2020 bond without risk of loss of Citgo."

162.    In May, Mr. Hernández similarly explained PDVSA's rationale for making the

April interest payment as follows: "[p]aying interest on the PDVSA 2020 bond is, under the

current conditions, the only option that allows us to protect the Venezuelan state's assets, and

leaves the government in a better position for its strategy to renegotiate public debt."[6]  Ricardo

Hausmann, an advisor to Interim President Guaidó, has offered a similar explanation.  He

tweeted on October 15, 2019, that "[i]n April we paid under protest to avoid Citgo being taken

from us because we were not prepared to go to trial.  Today we are."

---

[6]    *See* Venezuela Opposition Seeks to Pay PDVSA Bond Interest to Stave Off Creditors, Reuters (May 7, 2019 12:24 PM), https://www.reuters.com/article/us-venezuela-politics/venezuela-opposition-seeks-to-pay-pdvsa-bond-interest-to-stave-off-creditors-idUSKCN1SD1Z9; Comunicado del Procurador Especial sobre el pago de intereses del Bono 2020 (May 7, 2019), https://www.lapatilla.com/2019/05/07/procurador-bono-2020/.

**H.      Political Developments in Venezuela Since the 2016 Exchange.**

163.     In 2018, Maduro won reelection as President of Venezuela.  The United States and certain other countries did not recognize the legitimacy of the 2018 election.

164.     On May 21, 2018, President Trump issued E.O. 13835 prohibiting "the sale, transfer, assignment, or pledging as collateral" of any equity interest in any entity 50% or more owned by the Government of Venezuela, defined to include PDVSA.  On July 19, 2018, OFAC issued GL5 as a carve-out to E.O. 13835.  GL5 authorized "all transactions related to, the provision of financing for, and other dealings in the [2020 Notes] that would otherwise be prohibited by [E.O. 13835]."  On October 24, 2019, OFAC issued General License 5A, which amended GL5 to move its effective date to January 22, 2020.

165.     On January 23, 2019, President Trump recognized Guaidó as the Interim President of Venezuela.

**I.      Beginning in October 2019, PDVSA Defaulted on the 2020 Notes.**

166.     On October 28, 2019, PDVSA failed to make a payment of $841,882,250 of principal due under the 2020 Notes.  This nonpayment of principal was an Event of Default under the Indenture.  *See* Indenture, Ex. C, § 5.01(a)(1).

167.     On October 28, 2019, PDVSA also failed to pay $71,559,991.25 of interest that was due under the 2020 Notes.  This nonpayment of interest became another Event of Default under the Indenture, as of November 27, 2019, when it continued for a period of 30 days.  *See id.* § 5.01(a)(2).

168.     Plaintiffs have triggered further Events of Default by alleging in this action that the 2020 Notes, the Indenture, and the Pledge Agreement "are invalid, illegal, null and void *ab initio*, and thus unenforceable."  Complaint ¶¶ 83, 94; *see* Indenture, Ex. C, § 5.01(a)(8)–(9).

35

169.     On December 18, 2019, prior to the filing of this Answer and Counterclaims, holders of at least 25% in principal amount of Outstanding Notes (as defined in the Indenture) sent an Acceleration Notice (as defined in the Indenture), specifying these Events of Default, to PDVSA and the Trustee pursuant to Section 5.01(b) of the Indenture.

**J.     For Decades, PDVSA Has Issued Billions of Dollars of Debt,
       Without Ever Seeking or Obtaining National Assembly Approval.**

170.     Only PDVSA and its subsidiaries know the full extent of their borrowing history, and the Trustee and the Collateral Agent require discovery into that topic.  The public record, however, reflects the following.

171.     For many years, PDVSA has had billions of dollars of long-term debt outstanding, including billions of dollars of bonds issued outside Venezuela and tradable by international investors.  PDVSA has also issued billions of dollars of promissory notes to its suppliers and service providers, many of which are located outside Venezuela.  These promissory notes are also tradable by international investors.  PDVSA's direct and indirect subsidiaries, including PDVH, Citgo Holding, and Citgo, have also borrowed substantial sums of money and had hundreds of millions to billions of dollars of long-term debt outstanding and tradable by international investors at various relevant times.

172.     Citgo has issued debt secured by its assets.  For example, in 2010, Citgo issued $300 million of senior secured notes due 2017 secured by a first-priority lien on substantially all of its assets, including its refineries, its equity interests in certain subsidiaries, and substantially all of its inventory and accounts receivable.  In 2014, Citgo issued $650 million of senior secured notes due 2022 secured by substantially the same pool of collateral.  Citgo has also used substantially the same pool of collateral to secure its senior credit facilities.

173.     Citgo Holding has also issued debt secured by its Citgo stock.  For example, in 2015, Citgo Holding issued $1.5 billion of senior secured notes due 2020 secured by a first-priority lien on 100% of the capital stock of Citgo, as well as Citgo Holding's equity interests in certain other subsidiaries and five oil terminals owned by subsidiaries of Citgo Holding.  In 2019, Citgo Holding issued $1.37 billion of senior secured notes due 2024 secured by a first-priority lien on substantially the same pool of collateral.  The notes due 2024 were issued after PDVSA was under the control of the ad hoc board appointed by Interim President Guaidó.

174.     To the best of counterclaim plaintiffs' knowledge, concurrent or prior authorization or approval by Venezuela's National Assembly was neither sought nor obtained for any of these security interests.  Likewise, to the best of counterclaim plaintiffs' knowledge, PDVSA and its subsidiaries have never sought or received concurrent or prior authorization or approval by the National Assembly to borrow money or to issue bonds or notes.  Plaintiffs do not challenge the validity or legality of PDVSA's and its subsidiaries' other borrowings in this case, nor, to counterclaim plaintiffs' knowledge, have they done so elsewhere.

### First Cause of Action:
### Declaratory Judgment That the 2020 Notes Are Valid, Legal, and Enforceable
### (Trustee and Collateral Agent Against PDVSA, PDVSA Petróleo, and PDVH).

175.     Paragraphs 107–174 are incorporated by reference as if fully set forth herein.

176.     The 2020 Notes are valid, legal, and enforceable for the following reasons, among others: (a) all matters arising out of or relating in any way whatsoever to the 2020 Notes are governed by New York law; (b) PDVSA had actual authority to issue them; (c) PDVSA had apparent authority to issue them; (d) PDVSA ratified them; (e) no provision of Venezuelan law affects the legality, validity, or enforceability of them; and (f) counterclaim defendants are estopped from denying that they are valid, legal, and enforceable.

177.     28 U.S.C. § 2201(a) provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

178.     An actual controversy exists because PDVSA has failed to make payments due on the 2020 Notes and plaintiffs have contended that the 2020 Notes are invalid.

179.     Accordingly, counterclaim plaintiffs are entitled to a declaratory judgment that the 2020 Notes are valid, legal, and enforceable.

**Second Cause Of Action:**
**Declaratory Judgment That the Indenture Is Valid, Legal, and Enforceable**
**(Trustee and Collateral Agent Against PDVSA and PDVSA Petróleo).**

180.     Paragraphs 107–179 are incorporated by reference as if fully set forth herein.

181.     The Indenture is valid, legal, and enforceable for the following reasons, among others: (a) all matters arising out of or relating in any way whatsoever to the Indenture are governed by New York law; (b) PDVSA and PDVSA Petróleo had actual authority to enter into it; (c) PDVSA and PDVSA Petróleo had apparent authority to enter into it; (d) PDVSA and PDVSA Petróleo ratified it; (e) no provision of Venezuelan law affects the legality, validity, or enforceability of it; and (f) counterclaim defendants are estopped from denying that they are valid, legal, and enforceable.

182.     An actual controversy exists because counterclaim defendants have failed to honor their obligations under the Indenture and have contended that the Indenture is invalid.

183.     Accordingly, counterclaim plaintiffs are entitled to a declaratory judgment that the Indenture is valid, legal, and enforceable.

**Third Cause of Action:**
**Declaratory Judgment That the Pledge Agreement Is Valid, Legal, and Enforceable**
**(Trustee and Collateral Agent Against PDVSA, PDVSA Petróleo, and PDVH).**

184.   Paragraphs 107–183 are incorporated by reference as if fully set forth herein.

185.   The Pledge Agreement is valid, legal, and enforceable for the following reasons, among others: (a) all matters arising out of or relating in any way whatsoever to the Pledge Agreement are governed by New York law; (b) PDVSA, PDVSA Petróleo, and PDVH had actual authority to enter into it; (c) PDVSA, PDVSA Petróleo, and PDVH had apparent authority to enter into it; (d) PDVSA, PDVSA Petróleo, and PDVH ratified it; (e) no provision of Venezuelan law affects the legality, validity, or enforceability of it; and (f) counterclaim defendants are estopped from denying that they are valid, legal, and enforceable.

186.   An actual controversy exists because counterclaim defendants have failed to honor their obligations under the Pledge Agreement and have contended that it is invalid.

187.   Accordingly, counterclaim plaintiffs are entitled to a declaratory judgment that the Pledge Agreement is valid, legal, and enforceable.

**Fourth Cause of Action:**
**Declaratory Judgment That One or More Events of Default Under the Indenture Has**
**Occurred (Trustee and Collateral Agent Against PDVSA and PDVSA Petróleo).**

188.   Paragraphs 107–187 are incorporated by reference as if fully set forth herein.

189.   PDVSA was obligated to make a payment of approximately $841.9 million in amortized principal and approximately $71.6 million in interest for the 2020 Notes on October 28, 2019, as required by the Indenture.  *See* Indenture, Ex. C, 2020 Note, Exhibit A to the Indenture; Indenture, Ex. C § 2.08(b).  PDVSA's obligations to pay those amounts were not subject to any unfulfilled condition precedent.

190.     PDVSA did not make that payment on October 28, 2019, and has not paid those or any amounts on the 2020 Notes since October 28, 2019.  PDVSA therefore breached its contractual obligations under the 2020 Notes and the Indenture.

191.     Under Section 5.01(a)(1) of the Indenture, Ex. C, "the failure to pay the principal of . . . any Notes, when such principal becomes due and payable, at any of the Principal Payment Dates" constitutes an "Event of Default."  Plaintiffs admit that they have defaulted on this obligation.  *See* Complaint ¶¶ 72, 82, 93.

192.     Under Section 5.01(a)(2) of the Indenture, Ex. C, another "Event of Default" occurs upon "the failure to pay interest . . . on any Notes when the same becomes due and payable and the default continues for a period of 30 days."

193.     By filing the complaint in this action on October 29, 2019, PDVSA sought to invalidate the 2020 Notes, the Indenture, and the Pledge Agreement, and to disclaim its obligations thereunder.  By filing the complaint, PDVSA has therefore "contest[ed] the enforceability of, [and/or] deny[ed] or disaffirm[ed] its material obligations under the [2020] Notes or the Security Documents" (which are defined to include, among others, the Pledge Agreement).  *See* Indenture, Ex. C § 5.01(a)(8).  Another Event of Default has consequently occurred under Section 5.01(a)(8) of the Indenture.

194.     Under the Indenture, it is also an Event of Default for "the Issuer or any Subsidiary [to] assert" that "any of the Security Documents shall for any reason cease to be in full force and effect in all material respects."  Indenture, Ex. C § 5.01(a)(9). By filing the complaint, PDVSA, PDVSA Petróleo, and PDVH have asserted that the 2020 Notes, Indenture, and Pledge Agreements have ceased to be in full force and effect in material respects.

195.    An actual controversy exists because counterclaim defendants have breached their

obligations under the 2020 Notes, the Indenture, and the Pledge Agreement, and have disputed

counterclaim plaintiffs' rights to exercise their remedies for those breaches.

196.    Counterclaim plaintiffs are entitled to a declaratory judgment that Events of

Default have occurred under Sections 5.01(a)(1), (2), (8) and (9) of the Indenture.

**Fifth Cause of Action:**
**Declaratory Judgment That, Subject to Obtaining Any Necessary United States**
**Government Approvals, the Trustee Is Entitled to Direct the Collateral Agent to Sell the**
**Collateral, and the Collateral Agent Is Entitled to Sell the Collateral**
**(Trustee and Collateral Agent Against PDVSA, PDVSA Petróleo, and PDVH).**

197.    Paragraphs 107–196 are incorporated by reference as if fully set forth herein.

198.    Under Section 5.01(e) of the Indenture, Ex. C:

[I]n the event of the declaration of any Event of Default, the Trustee may, at the
written direction of Holders of at least 25% in aggregate principal amount of the
then Outstanding Notes voting as a single class: (i) institute proceedings to seek
or enforce any remedy to protect and enforce any of its rights or powers with
respect to the Collateral, including directing the Collateral Agent to enforce the
security interest created pursuant to the Citgo Holding Share Pledge Agreement,
(ii) apply any monies collected thereunder to the satisfaction of all Obligations of
the Issuer and the Guarantor hereunder, and (iii) take any other action of a secured
party available under Applicable Law.

199.    Section 5.01(m) of the Indenture, Ex. C provides that "every right and remedy

[provided under the Indenture] . . . shall be cumulative and in addition to every other right and

remedy given hereunder or now or hereafter existing at law or in equity or otherwise."

200.    One or more Events of Default has occurred.

201.    Subject to obtaining any required approvals from the United States government,

the Trustee, upon receipt of a written direction from Required Holders as provided in the

Indenture, would be entitled to "direct[] the Collateral Agent to enforce the security interest

created pursuant to the Citgo Holding Share Pledge Agreement," under Section 5.01(e) of the

Indenture, Ex. C.  Subject to obtaining any required approvals from the United States

government, under Section 5.02(a) of the Pledge Agreement, Ex. D, and consistent with written direction from Required Holders, "the Collateral Agent may . . . sell the Collateral or any part thereof in one of more parcels at public or private sale or at any of the Collateral Agent's offices or elsewhere, for cash, on credit or for future delivery, and at such price or prices and upon such other terms as the Collateral Agent may reasonably deem commercially reasonable."

202.    An actual controversy exists because counterclaim defendants have breached their obligations under the 2020 Notes, the Indenture, and the Pledge Agreement and disputed the validity of such documents and the counterclaim plaintiffs' rights to exercise their remedies under such documents for those breaches.

203.    Counterclaim plaintiffs are entitled to a declaratory judgment that the Collateral Agent (at the written direction of the Trustee acting upon and subject to the written direction of Required Holders) is entitled to foreclose on the collateral, subject to obtaining any necessary approvals from the United States government.

**Sixth Cause of Action:**
**Breach of Contract / Payment of Amounts Due Under the Indenture Pursuant to Indenture**
**Sections 5.01(f) and 5.01(m) (Trustee Against PDVSA).**

204.    Paragraphs 107–203 are incorporated by reference as if fully set forth herein.

205.    The 2020 Notes and the Indenture are valid and enforceable contracts.

206.    PDVSA was obligated to make a payment of approximately $841.9 million in amortized principal and approximately $71.6 million in interest for the 2020 Notes on October 28, 2019.  *See* Indenture, Ex. C, 2020 Note, Exhibit A to the Indenture; Indenture, Ex. C § 2.08(b).  PDVSA's obligations to pay those amounts were not subject to any unfulfilled condition precedent.

207.     PDVSA did not make that payment on October 28, 2019, and has not paid those or any amounts on the 2020 Notes since October 28, 2019.  PDVSA therefore breached its contractual obligations under the 2020 Notes and the Indenture.

208.     On December 18, 2019, prior to the filing of this Answer and Counterclaims, holders of at least 25% in principal amount of Outstanding Notes (as defined in the Indenture) sent an Acceleration Notice (as defined in the Indenture) to PDVSA and the Trustee pursuant to Section 5.01(b) of the Indenture.  Pursuant to Section 5.01(b) of the Indenture, an Acceleration Notice in accordance with the Indenture renders the principal of, and premium, if any, accrued interest, and Additional Amounts (as defined in the Indenture), if any, on all 2020 Notes immediately due and payable.

209.     The Trustee has a right to sue for collection of all amounts due and accruing under the Indenture pursuant to Sections 5.01(f) and (m) of the Indenture, Ex. C, which provide, respectively, that the Trustee may "institute a judicial proceeding for the collection of the sums . . . due and unpaid, may prosecute such proceeding to judgment or final decree and may enforce the same against the Issuer or any other obligor upon such Notes and collect the monies . . ." and that "every right and remedy [provided under the Indenture] shall . . . be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise."

210.     The Trustee is authorized to pursue these claims on behalf of the 2020 noteholders pursuant to the Indenture and is doing so at the written direction of Required Holders in accordance with the Indenture.

**Seventh Cause of Action:**
**Breach of Contract / Payment of Amounts Due Under Guarantee Pursuant to Indenture Sections 5.01, 7.01, and 7.04 (Trustee Against PDVSA Petróleo).**

211.     Paragraphs 107–210 are incorporated by reference as if fully set forth herein.

212.    The 2020 Notes and the Indenture are valid and enforceable contracts.

213.    PDVSA was obligated to make a payment of approximately $841.9 million in amortized principal and approximately $71.6 million in interest for the 2020 Notes on October 28, 2019.  *See* Indenture, Ex. C, 2020 Note, Exhibit A to the Indenture; Indenture, Ex. C § 2.08(b).  PDVSA's obligations to pay those amounts were not subject to any unfulfilled condition precedent.

214.    PDVSA did not make that payment on October 28, 2019, and has not paid those or any amounts on the 2020 Notes since October 28, 2019.  PDVSA therefore breached its contractual obligations under the 2020 Notes and the Indenture.

215.    On December 18, 2019, prior to the filing of this Answer and Counterclaims, holders of at least 25% in principal amount of Outstanding Notes (as defined in the Indenture) sent an Acceleration Notice (as defined in the Indenture) to PDVSA and the Trustee pursuant to Section 5.01(b) of the Indenture.  Pursuant to Section 5.01(b) of the Indenture, an Acceleration Notice in accordance with the Indenture renders the principal of, and premium, if any, accrued interest, and Additional Amounts (as defined in the Indenture), if any, on all 2020 Notes immediately due and payable.

216.    Pursuant to Section 7.01 of the Indenture, Ex. C, PDVSA Petróleo guaranteed PDVSA's obligations and was obligated to make payments that PDVSA failed to make.  Section 7.04 of the Indenture, Ex. C, further provides that PDVSA Petróleo has waived any requirement that the Trustee or noteholders proceed first against the Issuer.  Section 7.04 of the Indenture, Ex. C, further provides that the guarantee is one of payment rather than collection.

217.    PDVSA Petróleo has not paid amounts that PDVSA failed to pay under the Indenture.

218.     By failing to pay such amounts, PDVSA Petróleo has breached the Indenture.

219.     The Trustee has a right to sue PDVSA Petróleo for collection of the amount due under Sections 5.01(f) and (m) of the Indenture, Ex. C, and is doing so at the written direction of Required Holders in accordance with the Indenture.

220.     The Trustee is authorized to pursue these claims on behalf of the 2020 noteholders pursuant to the provisions of the Indenture.

### Eighth Cause Of Action:
### Unjust Enrichment (Trustee Against PDVSA, PDVSA Petróleo, and PDVH)

221.     Paragraphs 107–220 are incorporated by reference as if fully set forth herein.

222.     PDVSA and PDVSA Petróleo were enriched by the Exchange Offer when they were relieved of their obligations to pay the 2017 Notes.  PDVH was enriched by the Exchange Offer because it benefited from PDVSA and PDVSA Petróleo being relieved of their obligations to pay the 2017 Notes.

223.     PDVSA, PDVSA Petróleo, and PDVH's enrichment came at the expense of the 2020 noteholders.

224.     If the 2020 Notes, the Indenture, and/or the Pledge Agreement are invalid, illegal, null and void *ad initio*, and or unenforceable, it is against equity and good conscience to permit PDVSA, PDVSA Petróleo, and PDVH to retain the benefit of the exchange while disclaiming the obligations under the Indenture and/or Pledge Agreement.  The Court should condition any relief to plaintiffs on an appropriate equitable remedy that addresses the resulting unfairness to the Trustee, Collateral Agent, and noteholders.  That relief should include disgorgement, restitution, and/or quasi-contract remedies.

225.     If the 2020 Notes are valid, legal, and enforceable, but the Pledge Agreement is invalid, illegal, null and void *ad initio*, and unenforceable, it is against equity and good

conscience to permit PDVSA, PDVSA Petróleo, and PDVH to retain the benefit of the exchange while disclaiming their obligations under the Pledge Agreement. The Court should condition any relief to plaintiffs on an appropriate equitable remedy compensates the Trustee, Collateral Agent, and noteholders for the loss of the security interest. That relief should include disgorgement, restitution, and/or quasi-contract remedies.

226.    The Trustee is authorized to pursue these claims on behalf of the 2020 noteholders under the Indenture and is doing so at the written direction of Required Holders in accordance with the Indenture.

**Ninth Cause of Action:**
**Breach of Warranty (Trustee and Collateral Agent Against PDVSA Petróleo)**

227.    Paragraphs 107–226 are incorporated by reference as if fully set forth herein.

228.    The Indenture is a valid and enforceable contract.

229.    In the Indenture, PDVSA Petróleo represented and warranted to the Trustee and Collateral Agent, for the benefit of the Collateral Agent as well as the Trustee and the holders of the 2020 Notes, among other things, that:

   (a)    "This Guaranty constitutes a direct, general, and unconditional obligation of the Guarantor," Indenture § 7.01;

   (b)    "The Guaranty constitutes a Guarantee of payment and not of collection," *id.* § 7.04; and

   (c)    "The execution by the Guarantor of this Indenture evidences the Guaranty of the Guarantor." *Id.* § 7.07.

230.    If the 2020 Notes, the Indenture, and/or the Pledge Agreement are invalid, illegal, null and void *ad initio*, or unenforceable, then each of these representations and warranties in the Indenture was materially false, and PDVSA Petróleo has breached the warranties.

46

231.    Counterclaim plaintiffs, and, to the counterclaim plaintiffs' reasonable belief, the exchanging holders, and the subsequent purchasers of the 2020 Notes reasonably relied on PDVSA Petróleo's representations and warranties.

232.    As a direct and proximate result of PDVSA Petróleo's breach of warranty, counterclaim plaintiffs have been damaged in an amount to be determined.

233.    The Trustee and Collateral Agent are authorized to pursue these claims on behalf of the 2020 noteholders and are doing so at the written direction of Required Holders in accordance with the Transaction Documents.

**Tenth Cause of Action:**
**Breach of Warranty (Trustee and Collateral Agent Against PDVH)**

234.    Paragraphs 107–233 are incorporated by reference as if fully set forth herein.

235.    The Pledge Agreement is a valid and enforceable contract.

236.    In the Pledge Agreement, PDVH represented and warranted to the Collateral Agent, for the benefit of the Collateral Agent as well as the Trustee and the holders of the 2020 Notes, among other things, that:

     (a)     PDVH had "full power and authority, and all governmental licenses, authorizations, consents and approvals, to execute and deliver" the Pledge Agreement "and to perform its obligations thereunder," Pledge Agreement, Ex. D § 3.01(a);

     (b)     "[T]he execution and delivery by [PDVH] of the" Pledge Agreement "and its performance thereunder" had "been duly authorized by all necessary action by [PDVH]"; "require[d] no additional action by or in respect of, or filing with, any governmental authority, except such as have been taken or made on or before the date hereof and remain in full force and effect;" and that it would "not contravene any Applicable Law,", *id.* § 3.01(b);

     (c)     The Pledge Agreement had "been duly executed and delivered by it and constitutes its legal, valid and binding obligation enforceable against it in accordance with its terms" (except in inapplicable circumstances," *id.* § 3.01(c); and

47

Case 1:19-cv-10023-KPF   Document 40   Filed 12/18/19   Page 48 of 52

(d)     That "the choice of the laws of the State of New York as the governing law of [the Pledge Agreement], the Indenture (and any Transaction Document) is a valid choice of law under the laws of Venezuela and any political subdivision thereof, and none of the Issuer, the Guarantor or the Pledgor knows of any reason why the courts of Venezuela would not give effect to such choice of law." *Id.* § 3.01(d).

237.     If the 2020 Notes, the Indenture, and/or the Pledge Agreement are invalid, illegal, null and void *ad initio*, or unenforceable, then each of these representations and warranties in the Pledge Agreement was materially false, and PDVH has breached the warranties.

238.     Counterclaim plaintiffs, and, to the counterclaim plaintiffs' reasonable belief, the exchanging holders, and the subsequent purchasers of the 2020 Notes reasonably relied on PDVH's representations and warranties.

239.     As a direct and proximate result of PDVH's breach of warranty, counterclaim plaintiffs have been damaged in an amount to be determined.

240.     The Trustee and Collateral Agent are authorized to pursue these claims on behalf of the 2020 noteholders and are doing so at the written direction of Required Holders in accordance with the Transaction Documents.

**Eleventh Cause of Action:**
**Breach of Contract and Indemnification of Fees, Costs, and Expenses**
**(Trustee and Collateral Agent Against PDVSA and PDVSA Petróleo)**

241.     Paragraphs 107–240 are incorporated by reference as if fully set forth herein.

242.     The Indenture and Pledge Agreement are valid and binding contracts.

243.     In Section 8.05(a) of the Indenture, Ex. C, PDVSA and PDVSA Petróleo, jointly and severally, agreed to pay to the Trustee and the Collateral Agent certain agreed-upon compensation, and PDVSA further agreed to pay to the Trustee and the Collateral Agent "additional compensation" for the "reasonable out-of-pocket costs" of collecting and distributing

assets and performing additional or extraordinary services requested by the holders in accordance with the Indenture.

244.    In Section 8.05(b) of the Indenture, Ex. C, PDVSA and PDVSA Petróleo, jointly and severally, agreed to pay to the Trustee and the Collateral Agent "expenses, disbursements and advances reasonably incurred or made by or on behalf of it in accordance with the Transaction Documents (including the reasonable compensation of, documented expenses of, and disbursements by its counsel and of all agents and other Persons not regularly in its employ)."

245.    In Section 8.05(c) of the Indenture, Ex. C, PDVSA and PDVSA Petróleo, jointly and severally, agreed to indemnify the Trustee and Collateral Agent for "any and all loss, damage, claim, liability or expense, . . . arising out of or in connection with the . . . administration of the trust/or the Collateral and the performance of its duties hereunder and under the Transaction Documents, including the costs and expenses of defending itself (including reasonable attorneys' costs and fees) against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder or thereunder."  Section 6.01 of the Pledge Agreement, Ex. D, clarifies that these indemnification rights "apply equally to the Collateral Agent."

246.    In Section 5.06 of the Pledge Agreement, Ex. D, PDVSA agreed to pay the Collateral Agent "all reasonable out-of-pocket costs and expenses, including the fees and expenses of its counsel" that "the Collateral Agent may incur in connection with . . . the custody or preservation of, or the sale of, collection from or other realization upon, any of the Collateral pursuant to the exercise or enforcement of any of the rights of the Collateral Agent hereunder" or "the failure by the Pledgor to perform or observe any of the provisions hereof."

247.    The Trustee and Collateral Agent are owed fees and have incurred fees, costs, and expenses, including attorney's fees, that PDVSA and/or PDVSA Petróleo are obliged to pay under these provisions in an amount to be determined.

**Twelfth Cause of Action:**
***Quantum Meruit***
**(Trustee and Collateral Agent Against PDVSA and PDVSA Petróleo)**

248.    Paragraphs 107–247 are incorporated by reference as if fully set forth herein.

249.    The Trustee and Collateral Agent performed services called for by the Indenture and/or Pledge Agreement in good faith.

250.    PDVSA and/or PDVSA Petróleo accepted those services.

251.    The Trustee and Collateral Agent expected to be compensated for those services by PDVSA and/or PDVSA Petróleo under the Indenture and/or the Pledge Agreement.

252.    The Trustee and the Collateral Agent have not been compensated for the services provided to PDVSA and/or PDVSA Petróleo.

253.    Under the doctrine of *quantum meruit*, PDVSA and/or PDVSA Petróleo should be ordered to pay the Trustee and Collateral Agent the reasonable value of those services in an amount to be determined.

**Prayer for Relief**

254.    WHEREFORE, counterclaim Plaintiffs respectfully request relief as follows:

(a)    a judgment declaring that the 2020 Notes are valid, legal, and enforceable and not null or void *ab initio*;

(b)    a judgment declaring that the Indenture is valid, legal, and enforceable and not null or void *ab initio*;

(c)    a judgment declaring that the Pledge Agreement is valid, legal, and enforceable and not null or void *ab initio*;

(d)    a judgment declaring that Events of Default have occurred under Sections 5.01(1), (2), (8), and (9) of the Indenture;

(e)    a judgment declaring that (subject to obtaining any required U.S. government approvals) the Trustee and Collateral Agent are entitled to exercise the remedies provided in Section 5.01(e) and 5.01(m) of the Indenture and Section 5.02(a) of the Pledge Agreement;

(f)    a money judgment against PDVSA and PDVSA Petróleo for all amounts due and accruing under the Indenture and the 2020 Notes including principal and interest due and unpaid on the 2020 Notes;

(g)    compensatory damages in an amount to be determined at trial from PDVSA, PDVSA Petróleo, and PDVH for their breaches of the 2020 Notes, the Indenture, and the Pledge Agreement;

(h)    compensatory damages in an amount to be determined at trial from PDVH for its breaches of the representations and warranties in the Pledge Agreement;

(i)    disgorgement from PDVSA, PDVSA Petróleo, and PDVH of their ill-gotten gains;

(j)    restitution, quasi-contract, and/or *quantum meruit* remedies from PDVSA, PDVSA Petróleo, and PDVH;

(k)    prejudgment and postjudgment interest;

(l)    a money judgment against PDVSA and PDVSA Petróleo for fees, costs, and expenses, including, without limitation, reasonable attorney's fees,

including under Sections 5.01(q) and 8.05 of the Indenture and Sections

5.06 and 6.01 of the Pledge Agreement; and

(m)    such other and further relief as the Court deems just and proper.

Dated:  December 18, 2019                    LATHAM & WATKINS LLP


By: /s/ Christopher J. Clark
        Christopher J. Clark
885 3rd Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: chris.clark@lw.com


*Attorneys for Defendants and
Counterclaim Plaintiffs*