# EXHIBIT 1

Christopher J. Clark
Direct Dial: 212.906.1200
chris.clark@lw.com

# LATHAM&WATKINS LLP

53rd at Third
885 Third Avenue
New York, New York 10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

January 24, 2020

James R. Bliss, Esq.
Paul Hastings LLP
200 Park Avenue
New York, New York 10166

Jeffrey B. Korn, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019

    Re: *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.,*
       No. 19-cv-10023 (S.D.N.Y.)

Dear Counsel:

  We are writing to call your attention to conduct by persons associated with your clients with the apparent purpose or effect of interfering with potential expert witnesses for defendants, and to express our serious concerns about this conduct. We are confident that your firms would not be party to or approve any such conduct.

  Our concerns arise from the following events:

  On January 16, 2020, the administration of Interim President Guaidó published a press release claiming (as translated) that, "[i]n the upcoming days," the court would hear "arguments from lawyers and experts," which, the press release stated, "will allow for the Venezuelans to witness the debate between experts and to learn what Nicolas Maduro's dictatorship and his lawyers tried to hide in 2016." It continued: "for a legal expert to justify the approval of the PDVSA 2020 bond issuance without authorization from the National Assembly, *they would have to argue contrary to what is ordered by the Constitution of our Country*." (emphasis added). The press release warned witnesses that should they provide testimony against PDVSA, "Venezuelans will be able to witness the trial." The release concluded with the statement that the Guaidó administration would defend its position in this litigation "at all costs and by all means."

  On January 20, 2020, José Ignacio Hernández, who is the Special Attorney General of the Guaidó administration, tweeted that the "PDVSA 2020 case should be followed up by the Venezuelan juridical community," and attached a link to the Guaidó administration's earlier statement. You have represented to us that Mr. Hernández is acting as a member of plaintiffs' legal team.

LATHAM&WATKINS LLP

  Also on January 16, 2020—the same day the Guaidó administration released the above statement—Mr. Hernández tweeted an article from the online publication KonZapata containing similar statements, which were attributed to (as translated) "a source close to the Interim President, Juan Guaidó's, team." The article stated: "For their arguments, the parties must request reports or analyses from experts in Venezuela, practicing lawyers or Constitutional Law teachers. This also applies to the bondholders' agents." The article continued: "The source also states that the bondholders' agents 'will try to use the same arguments as the pro-government' representatives during September 2016, thus trying to justify the actions of Maduro's regime. . . . *For that, however, they will need the support of a Venezuelan expert.' What is that person going to say? Will their arguments go against the Constitution?*" (emphasis added). These statements and English translations are attached to this letter.

  These coordinated statements, made just one month before the upcoming deadline of February 20, 2020, for expert reports, appear to have the purpose or intended effect of interfering with defendants' expert witnesses and, by stirring up public hostility, influencing their testimony and/or pressuring them into withdrawing from testifying. The intimidating effect of these statements will also be felt by fact witnesses, particularly those residing in Venezuela. We are also aware of efforts by persons apparently working in coordination with plaintiffs or the Guaidó administration to identify lawyers or experts in Venezuela assisting defendants in this case.

  In light of the above statements, we are very concerned by the repeated suggestions by the Guaidó administration and those associated with plaintiffs that assisting in the defense of this litigation necessarily entails arguing "against the Constitution" of Venezuela to the witness of the entire nation. This suggestion by actors who aspire to obtain de facto state powers within Venezuela could have a deeply chilling effect on the willingness of Venezuelans to assist in the defense of this litigation.

  We are serving herewith document requests intended to elicit the facts relevant to these matters. We also enclose a supplemental subpoena for documents directed to Mr. Hernández. Please advise us promptly whether you will accept service on his behalf. In any event, given your representations that Mr. Hernández is acting as a member of plaintiffs' legal team, we expect that plaintiffs, in responding to the enclosed document requests, will produce any responsive and non-privileged documents within the possession, custody, or control of Mr. Hernández, his staff members, or his formal or informal agents.

  Given the nature of the underlying events, we also request production of an item-by-item privilege log of any responsive documents withheld by either your clients or Mr. Hernández based on an assertion of privilege or other alleged immunity from discovery. In light of the case schedule and the urgency of the issues raised in this letter, we request production of documents responsive to the enclosed document requests and subpoena, accompanied by any related privilege logs, within two weeks of the date of this letter.

  We also request that no later than 48 hours after your receipt of this letter, you (a) advise us of all efforts of which you, your clients, or those who work on their behalf are aware to identify experts and others working with defendants; (b) communicate with your clients and

**LATHAM&WATKINS**LLP

those who work on their behalf the need to cease any such efforts immediately; (c) communicate with your clients and those who work on their behalf the need to cease making any statements that are intimidating and/or chilling in purpose or effect immediately; (d) advise us that these messages have been communicated; and (e) confirm that plaintiffs and Mr. Hernández will produce all responsive and non-privileged documents requested by the enclosed document requests and subpoena, and any related privilege logs, within two weeks of receipt of this letter.

We also note your prior representation that Mr. Hernández is a member of plaintiffs' legal team, and the established principle that a court has "inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct." *Sussman v. Bank of Israel,* 56 F.3d 450, 459 (2d Cir. 1995).

Defendants reserve all rights.

Very truly yours,

*/s/ Christopher J. Clark*

Christopher J. Clark
of LATHAM & WATKINS LLP

Encls.