# EXHIBIT 9

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PETRÓLEOS DE VENEZUELA, S.A., PDVSA
PETRÓLEO, S.A., and PDV HOLDING, INC.,

          Plaintiffs and Counterclaim Defendants,

    - against -

MUFG UNION BANK N.A. and GLAS
AMERICAS LLC,

          Defendants and Counterclaim Plaintiffs.

No. 19 Civ. 10023 (KPF)

## DEFENDANTS' SECOND REQUEST FOR THE PRODUCTION OF DOCUMENTS

        Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rules 26.2 and 26.3 of the Local Civil Rules of this Court, defendants, by their undersigned attorneys, request that plaintiffs produce all documents in plaintiffs' possession, custody, or control requested herein (the "Requests," and each individually a "Request") in accordance with the definitions and instructions set forth below, at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, within fourteen days of this Request.

### Definitions

    A.    The definitions, rules of construction, and instructions in Local Civil Rules 26.2 and 26.3 are incorporated by reference herein. Accordingly, and without limiting the foregoing, the terms "Document," "Communication," "Concerning," "Person," "all," "any," "each," "and," and "or" as used herein have the meanings set forth in Local Civil Rule 26.3.

    B.    "PDVSA" means Petróleos de Venezuela, S.A.

    C.    "PDVSA Petróleo" means PDVSA Petróleo, S.A.

D.    "PDVH" means PDV Holding, Inc.

E.    "Plaintiffs," "You," and "Your" mean the Plaintiffs in this matter as defined in Local Civil Rule 26.3(c)(5). For the avoidance of doubt, in the circumstances of this case, references to Plaintiffs include (i) the Ad Hoc Board of PDVSA and the boards of PDVSA Petróleo and PDVH that the Ad Hoc Board appointed (as alleged in paragraph 8 of the Complaint); (ii) any board or other Person or body purporting to manage or direct such entities appointed by the Maduro regime, whether or not deemed legitimate by Plaintiffs or the United States government, or appointed by any predecessor Venezuelan government; (iii) each of Plaintiffs, whether under the control or supervision, or purported control or supervision, of any of the Persons or bodies identified in the foregoing subparagraphs (i) and (ii); and (iv) any representative of the administrations of President Maduro or Interim President Guaidó purporting to speak or act on behalf of Plaintiffs, or Concerning the 2020 Notes or the Governing Documents, whether or not such Person has a formal position or title with any Plaintiff.

F.    "2020 Notes" means the 8.50% Senior Secured Notes issued by PDVSA and due 2020.

G.    "Collateral Agent" means GLAS Americas LLC in its capacity as Collateral Agent.

H.    "Complaint" means the complaint filed in this litigation as Docket No. 1.

I.    "Governing Documents" means the Indenture, the Pledge Agreement, and the Offering Circular as defined herein, or any of them.

J.    "Indenture" means the Bond Indenture Agreement dated October 27, 2016, by and between: (i) PDVSA, as Issuer, (ii) PDVSA Petróleo, as Guarantor, (iii) Trustee, (iv) Collateral Agent, (v) Law Debenture Trust Company of New York, as Registrar, Transfer

Agent, and Principal Paying Agent, and (vi) Banque Internationale à Luxembourg, Société Anonyme as Luxembourg Paying Agent.

K.      "Offering Circular" means the Offering Circular dated September 16, 2016, that is attached as an exhibit to the Form T-3 filed by PDVSA with the Securities and Exchange Commission on September 16, 2016, and referred to in paragraph 44 and footnote 28 of the Complaint.

L.      "Pledge Agreement" means the Pledge and Security Agreement dated October 28, 2016, by and between: (i) PDV Holding, Inc. as Pledgor, (ii) PDVSA, as Issuer, (iii) PDVSA Petróleo, as Guarantor, (iv) Collateral Agent, and (v) Trustee.

M.      "Trustee" means MUFG Union Bank N.A. in its capacity as Trustee.

N.      "Venezuela" means the Bolivarian Republic of Venezuela.

O.      "Venezuelan Government" means any governmental, executive, administrative, regulatory, legislative, or judicial body or agency of Venezuela or any political subdivision thereof; any state-owned or state-controlled entities; and all Persons acting or purporting to speak or act on behalf of any of the foregoing, whether or not authorized to do so. Without limiting the foregoing, "Venezuelan Government" includes the regime of Nicolás Maduro, the administration of Interim President Guaidó, or any predecessor de jure or de facto Venezuelan government or regime.

P.      "Statement" means the statement posted on the official Twitter account of the Office of the President of Venezuela (@Presidencia_VE) on January 16, 2020, at 4:47 PM, titled "Gobierno Legítimo de Venezuela Argumentará Ante Corte de Nueva York Sobre Bonos 2020," which, when translated, states, "Venezuela's Legitimate Government to Argue Before the New

York Court on 2020 Bonds." A certified translation from Spanish to English of the Statement is annexed hereto as Appendix B.

Q.      "Article" means the January 15, 2020, report authored by Caleb Zuleta, published on the online website, KonZapata (https://konzapata.com/), and titled, "Juicio en Nueva York Sacará a Flote Lo que Maduro Ocultó Sobre el Bono PDVSA 2020," which, when translated, states, "New York Trial to Shed Light on What Maduro Covered About the PDVSA 2020 Bond." A certified translation from Spanish to English of the Article is annexed hereto as Appendix C.

R.      "Expert" means any consultant working on behalf of the Trustee, the Collateral Agent, or any holders of the 2020 Notes in connection with this action, including, but not limited to, experts in Venezuelan law.

## Instructions

A.      Unless otherwise specified, each Request calls for the production of responsive Documents created during or Concerning, in whole or in part, any time between October 29, 2019, and the date of Your response (the "Relevant Time Period").

B.      No paragraph shall be construed with reference to any other paragraph for purposes of limitation.

C.      Each Plaintiff shall serve written responses and produce Documents individually. Plaintiffs shall not produce materials collectively or aggregate productions when responding to this or any future discovery requests.

D.      In responding to these Requests, Plaintiffs shall produce all responsive Documents that are in the possession, custody, or control of any of the Plaintiffs. A Document shall be deemed to be within a Plaintiffs' control if any Plaintiff has the right to secure the

Document or a copy of the Document from another Person having possession or custody of the Document.

E.      You are to produce for inspection and copy original Documents as they are kept in the usual course of business, or You shall organize and label them to correspond with the categories in these Requests.

F.      Each requested Document shall be produced in its entirety, along with any attachments, drafts, translations, and non-identical copies, including without limitation copies that differ by virtue of handwritten or other notes or markings. Any Document with marks of any kind is not deemed to be identical to one without such marks and is to be produced separately. If a Document responsive to this Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible. Documents contained in file folders, loose-leaf binders, and notebooks with tabs or labels identifying such Documents are to be produced intact together with such file folders, loose-leaf binders, or notebooks. All labels identifying such Documents, files, folders, or binders shall be copied. Documents attached to each other should not be separated, but all such attached Documents shall be produced.

G.      Any responsive Document in a language other than English shall be produced together with any English translation that may exist at the time of production or may be created thereafter.

H.      If any responsive Document was, but is no longer, in Your possession or subject to Your control, state whether it is (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and

address of its current or last known custodian, and the circumstances surrounding such disposition.

I.      In objecting to any Request herein, identify the specific grounds for the objection, and state which Documents will be withheld and which Documents will be produced notwithstanding such objections. If You object to part of any Request herein, You shall specify in the objection the part of the Request objected to, and shall produce all Documents responsive to the remainder of the Request.

J.      If You contend that you are unable to produce responsive Documents for any reason, You must provide a statement (i) affirming that a diligent search and a reasonable inquiry has been made in an effort to comply with the Request, (ii) specifying whether the inability to comply is because the particular item or category of items has never existed, has been destroyed, has been lost, misplaced, or stolen, or has been, or is no longer, in Your possession, custody, or control, and (iii) furnish a list specifying each Document and setting forth (a) the type of Document; (b) the general subject matter of the Document; (c) the date of the Document; and (d) the name(s) and address(es) of each Person known or believed to have possession, custody, or control of that item or category of items.

K.      Without limiting the foregoing Instruction, if you contend that you are unable to produce any responsive Documents because You do not have de facto control of assets of Plaintiffs in Venezuela or elsewhere, specify the nature and contents of all such responsive Documents and their location, and any other information explaining why You contend that You are unable to produce them.

L.      If there are no Documents responsive to any Request, You shall so state.

M.      Whenever necessary to bring within the scope of this Request Documents that might otherwise be construed to be outside its scope: (a) the use of any verb in any tense shall be construed as the use of that verb in all other tenses; (b) the use of a word in its singular form shall be deemed to include within its use the plural form as well, and vice versa; and (c) the connectives "and" and "or" shall be construed either disjunctively or conjunctively.

N.      If any Document responsive to this Request is withheld or redacted by Plaintiffs under a claim of privilege, Plaintiffs shall follow the procedures set forth in Local Civil Rule 26.2.

O.      You are obligated to supplement Your responses to the full extent required by Rule 26(e) of the Federal Rules of Civil Procedure.

P.      Except as otherwise set forth in this Request, Plaintiffs shall produce all electronically stored information ("ESI") in the format and manner set forth in Appendix A, or in such other format and manner as the parties may agree for the production of ESI by both parties. Defendants reserve the right to amend or otherwise modify this Instruction in light of any meet and confers between the parties or for any other appropriate reason.

Q.      Defendants reserve the right to propound additional requests for production of Documents based upon information subsequently obtained in discovery or for any other permissible reason.

## Documents Requested

1.      All Documents Concerning the Statement.

2.      All Documents Concerning any efforts by Plaintiffs or the Venezuelan Government (or Persons working with them or at their direction) to identify any Venezuelan

Expert or lawyer working with or consulting for the Trustee, the Collateral Agent, or any holders of the 2020 Notes in connection with this action.

3.      All Documents Concerning any efforts by Plaintiffs or the Venezuelan Government (or Persons working with them or at their direction) to prevent, impede, or otherwise obstruct the Trustee or Collateral Agent from obtaining assistance or testimony from any fact or Expert witness in this action. Such efforts include, but are not limited to, retaliation or threatened retaliation against, bribery of, or public criticism directed at any potential fact or Expert witnesses.

4.      All Documents Concerning the following phrase in the Statement: "tendrá que ir contra lo que ordena la Constitución de nuestro país" ("they would have to argue contrary to what is ordered by the Constitution of our country").

5.      All Documents Concerning the Article, including, but not limited to, Communications by Plaintiffs or the Venezuelan Government with Caleb Zuleta or other Persons, or among Plaintiffs or the Venezuelan Government, Concerning the Article.

6.      Documents sufficient to identify the individual referred to in the Article as "una fuente relacionada con el equipo del presidente Interino, Juan Guaidó" ("a source close to the Interim President, Juan Guaidó's, team").

Dated: January 24, 2020

LATHAM & WATKINS LLP


By: /s/ Christopher J. Clark
     Christopher J. Clark
885 3rd Avenue
New York, New York 10022
Tel:   (212) 906-1200
Fax:   (212) 751-4864
Email: chris.clark@lw.com


*Attorneys for Defendants and*
*Counterclaim Plaintiffs*

**APPENDIX A**
**Document Production Format**

I.    Overview

    A.    All Documents shall be produced as Bates-stamped tagged image file format ("TIFF") images along with an image load/cross reference file, a data load file with fielded metadata, and Document-level extracted text for electronically stored information ("ESI") or optical character recognition ("OCR") text for scanned hard copy Documents. Details regarding requirements, including files to be delivered in native format, are below.

II.   TIFF Image Requirements

    A.    All Documents shall be produced as TIFF images in 300x300 dpi Group IV single-page monochrome format.

    B.    All such images shall be sequentially Bates-stamped using a consistent length with leading zeros in the number. The format of the Bates numbers shall not change across productions.

    C.    Images shall include the following content where present:

        1.    For word processing files (e.g., Microsoft Word) – Comments and "track changes" (and similar in-line editing).

        2.    For spreadsheet files (e.g., Microsoft Excel) – Hidden columns, rows, and sheets; comments; and "track changes" (and similar in-line editing).

        3.    For presentation files (e.g., Microsoft PowerPoint) – Speaker notes and comments.

    D.    Reasonable care shall be taken not to degrade the legibility of Documents during the imaging process. If legibility is found to have been degraded, the receiving party may make reasonable requests for re-production of these Documents.

III.  Native Format Requirements

    A.    Spreadsheet files

        1.    Spreadsheet files (e.g., Microsoft Excel) shall be provided in native format.

        2.    In lieu of a TIFF image version of each spreadsheet file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the native format version of each file.

       3.     When redaction is necessary, a redacted TIFF image version shall be produced. The parties reserve the right to request access to the native format versions of such files.

  B.    Multimedia files

      1.     Multimedia files (e.g., audio or video files) shall be provided in native format.

      2.     In lieu of a TIFF image version of each multimedia file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the native format version of each file.

      3.     The parties reserve the right to edit multimedia files using industry standard methods if redaction of such files is deemed necessary.

  C.    Other files

      1.     In limited circumstances, it may be necessary to obtain or view the native format versions of files, including color Documents/images and dynamic files, such as databases. The parties reserve the right to request access to the native format versions of such files and/or an image format that supports viewing color Documents.

**IV.**    Image Load/Cross Reference File Requirements

  A.    A single-page image load/cross-reference file shall be provided with each production.

  B.    The file should use the Concordance Image Viewer (.OPT) format, as in the sample below. Note, the volume label information ("MSC001" in the sample .opt file) is optional:

        *Sample Concordance Image Viewer .opt file:*
        MSC000001,MSC001,MSC\0000\00000001.TIF,Y,,,3
        MSC000002,MSC001,MSC\0000\00000002.TIF,,,,
        MSC000003,MSC001,MSC\0000\00000003.TIF,,,,
        MSC000004,MSC001,MSC\0000\00000004.TIF,Y,,,2
        MSC000005,MSC001,MSC\0000\00000005.TIF,,,,

**V.**    Extracted Text/OCR Requirements

  A.    Extracted text and/or OCR text shall be provided for all Documents as separate, Document-level text files; extracted text and/or OCR text shall not be embedded in the .DAT file (as defined below).

  B.    Document-level text file names shall consist of the beginning Bates number information of the Document.

C.     If a Document is provided in native format with a single-page placeholder TIFF image (e.g., spreadsheet files), the text file shall contain the full extracted text of the native file.

D.     OCR text shall be provided for all redacted Documents in lieu of extracted text.

E.     With respect to produced text files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language Documents.

VI.     Data Load File Requirements

A.     A data load file shall be provided with each production.

B.     The file shall be a Concordance-loadable data file ("DAT" file) and contain Bates-stamp and metadata information as detailed below.

C.     The delimiters and qualifiers to be used in the .DAT file are:

*Record delimiter:* Windows newline/Hard return (ASCII 10 followed by ASCII 13)
*Field delimiter:* ¶ (ASCII 20)
*Multi-value delimiter:* Semicolon ; (ASCII 59)
*Text qualifier:* Small thorn þ (ASCII 254)

D.     With respect to .DAT files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language Documents.

E.     The .DAT file shall have a header line with the below listed field names and shall include the corresponding information per each applicable field:

| Field | Comments | Document Types |
|---|---|---|
| BegBates | Beginning Bates number. | All. |
| EndBates | Ending Bates number. | All. |
| BegRange | Bates number of first page of family range (e.g., first page of an email). | All. |
| EndRange | Bates number of last page of family range (e.g., last page of last attachment to an email). | All. |
| PageCount | Number of TIFF image pages in the produced Document. | All. |
| FileExtension | File extension of the original Document (e.g., .msg, .docx, .jpg). | All. |
| FileSize | File size of the original Document. Format: bytes. | All. |
| Title | Title of the original Document. | Loose files and attachments. |

| Field | Comments | Document Types |
|---|---|---|
| Custodian | Custodian full name. Format: LASTNAME, FIRSTNAME. | All. |
| AllCustodian | For globally de-duplicated productions only. Full name of all custodians for whom the Document is being produced. Format: LASTNAME, FIRSTNAME; LASTNAME, FIRSTNAME. | All. |
| Author | Author of Document from available metadata. | Loose files and attachments. |
| LastSavedBy | Last Saved By field value extracted from metadata of a native file. | Loose files and attachments. |
| Company | Company field extracted from the metadata of a native file. | Loose files and attachments. |
| From | Email author. | Email only. |
| To | Email addressee(s). | Email only. |
| CC | Email addressee(s), carbon copy. | Email only. |
| BCC | Email addressee(s), blind carbon copy. | Email only. |
| Subject | Email subject. | Email only. |
| DateCreated | File creation date. Format: MM/DD/YYYY. | All. |
| TimeCreated | File creation time. Format: HH:MM:SS AM/PM | All. |
| DateModified | File modification date. Format: MM/DD/YYYY. | All. |
| TimeModified | File modification time. Format: HH:MM:SS AM/PM | All. |
| DateSent | Email sent date. Format: MM/DD/YYYY. | Email only. |
| TimeSent | Email sent time. HH:MM:SS AM/PM. | Email only. |
| DateReceived | Email received date. MM/DD/YYYY. | Email only. |
| TimeReceived | Email received time. HH:MM:SS AM/PM. | Email only. |
| DateAccessed | Date Document was last accessed. | All. |
| TimeAccessed | Time Document was last accessed. | All. |
| MeetingStartDate | Start date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingStartTime | Start time of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| MeetingEndDate | End date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingEndTime | End date of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| TimeZone | The time zone in which files were standardized during processing (e.g., GMT). | All. |
| MessageID | Globally unique identifier for a message which typically includes messageid and a domain name (e.g., <0E6648D558F338179524D555@m1p.contoso.net). | Email only. |
| ConversationIndex | Email thread identification. | Email only. |
| Importance | Email flag indicating priority level set for message. | Email only. |

| Field | Comments | Document Types |
|-------|----------|----------------|
| Sensitivity | Sensitivity field from email messages. | Email only. |
| FileName | Name of file as maintained in the ordinary course of business. | Loose files and attachments. |
| FilePath | Original path to the file or email message. | All. |
| AllFilePaths | For globally and within custodian de-duplicated productions. Folder paths to this Document's duplicates and the original path. Each path will contain the associated custodian. | All. |
| HiddenContent | Denotes if file contains hidden content. Format: Yes/No value. | Loose files and attachments. |
| MD5Hash | Unique file identifier. | All. |
| TextPath | The production deliverable path to the extracted text or OCR for the Document, including the file name. | All. |
| NativePath | The production deliverable path to the native-format file for the Document, including the file name (if a native-format file is provided). | Loose files and attachments. |

      F.    In globally de-duped, incremental productions, there will be instances when production of Documents from additional custodians will include Documents previously produced. A Custodian Append overlay load file using the load file format described above shall be provided with an updated AllCustodian field (BegBates and EndBates fields may be used as the unique identifiers). For globally and within custodian deduped productions, a similar append overlay load file shall be provided with an updated AllFilePaths field.

VII.   Additional Considerations

    A. All Document family relationships shall be produced together and children files should follow parent files in sequential Bates number order.

    B. Embedded Documents shall be extracted from the parent Document with family relationship intact.

    C. Productions shall be provided using industry standard encryption software or hardware. Any electronic transmission of produced materials must be done via a secure file transfer system.

    D. If particular Documents warrant a different format (e.g., production of color images instead of black and white), the parties shall cooperate to arrange for the mutually acceptable production of such Documents.

    E. The parties agree not to knowingly degrade the searchability of Documents as part of the Document production process. For example,

extracted text should not be replaced by OCR text except where appropriate (e.g., OCR for redacted Documents).

F.  Redacted Documents may have certain metadata fields withheld from production.  The parties shall cooperate to create a list of metadata fields which may be produced for these Documents.

**APPENDIX B**

 **Centro de Comunicación Nacional** ✔
@Presidencia_VE

 Follow

# Gobierno Legítimo de Venezuela argumentará ante Corte de Nueva York sobre bonos 2020.

 CENTRO DE COMUNICACIÓN N A C I O N A L

**GOBIERNO LEGITIMO DE VENEZUELA ARGUMENTARÁ ANTE CORTE DE NUEVA YORK SOBRE BONOS 2020**

En los próximos días la Corte del distrito sur de Nueva York escuchará los argumentos de abogados y expertos en el juicio de nulidad en contra del Bono 2020 que inició el Gobierno Legítimo de Venezuela, a través del Procurador General, José Ignacio Hernández, con el propósito de buscar la declaratoria de nulidad, ilegalidad e invalidez de estos papeles por las graves violaciones a la Constitución Nacional que cometió el régimen de Maduro al poner a Citgo como colateral de estos bonos.

Esta fase de juicio en Estados Unidos permitirá al pueblo venezolano presenciar el debate de expertos y conocer lo que quiso esconder la dictadura de Nicolás Maduro y sus abogados en 2016, cuando a través de una sentencia de la Sala Constitucional del Tribunal Supremo de Justicia, bloquearon la investigación iniciada por la Asamblea Nacional luego de emitir un acuerdo en rechazo a la emisión del Bono 2020.

En la etapa de argumentos, las partes deberán plantear a la Corte su interpretación de la Constitución y presentar análisis de abogados venezolanos especialistas en derecho constitucional que la avalen. El argumento del Gobierno Legítimo es sólido. Por el contrario, para que un jurista pueda justificar la aprobación del Bono Pdvsa 2020, sin contar con el aval de la Asamblea Nacional, tendrá que ir contra lo que ordena la Constitución de nuestro país. Y finalmente, a pesar de los intentos de la dictadura por evitarlo, los venezolanos podrán ser testigos de ello.

El Parlamento ha declarado desde 2016 que el bono 2020 violó la Constitución por su irracionalidad y el colateral sobre el 50,1% de Citgo Holding, Inc. Por ello, se trata de un contrato de interés público nacional que ha debido ser previamente autorizado por la Asamblea Nacional.

El Gobierno Legítimo de Venezuela ratifica su decisión absoluta de defender, a toda costa y por todos los medios, la propiedad de nuestro pueblo sobre un bien estratégico necesario para la reconstrucción nacional y la superación de la peor crisis humanitaria jamás vista en la historia de nuestra región.

4:47 PM - 16 Jan 2020

**115** Retweets **90** Likes         

💬 2    🔁 115    ♡ 90



## GOBIERNO LEGÍTIMO DE VENEZUELA ARGUMENTARÁ ANTE CORTE DE NUEVA YORK SOBRE BONOS 2020

En los próximos días la Corte del distrito sur de Nueva York escuchará los argumentos de abogados y expertos en el juicio de nulidad en contra del Bono 2020 que inició el Gobierno Legítimo de Venezuela, a través del Procurador General, José Ignacio Hernández, con el propósito de buscar la declaratoria de nulidad, ilegalidad e invalidez de estos papeles por las graves violaciones a la Constitución Nacional que cometió el régimen de Maduro al poner a Citgo como colateral de estos bonos.

Esta fase de juicio en Estados Unidos permitirá al pueblo venezolano presenciar el debate de expertos y conocer lo que quiso esconder la dictadura de Nicolás Maduro y sus abogados en 2016, cuando a través de una sentencia de la Sala Constitucional del Tribunal Supremo de Justicia, bloquearon la investigación iniciada por la Asamblea Nacional luego de emitir un acuerdo en rechazo a la emisión del Bono 2020.

💬 2          🔁 115          ♡ 90          ⌄

En la etapa de argumentos, las partes deberán plantear a la Corte su interpretación de la Constitución y presentar análisis de abogados venezolanos especialistas en derecho constitucional que la avalen. El argumento del Gobierno Legítimo es sólido. Por el contrario, para que un jurista pueda justificar la aprobación del Bono Pdvsa 2020, sin contar con el aval de la Asamblea Nacional, tendrá que ir contra lo que ordena la Constitución de nuestro país. Y finalmente, a pesar de los intentos de la dictadura por evitarlo, los venezolanos podrán ser testigos de ello.

El Parlamento ha declarado desde 2016 que el bono 2020 violó la Constitución por su irracionalidad y el colateral sobre el 50,1% de Citgo Holding, Inc. Por ello, se trata de un contrato de interés público nacional que ha debido ser previamente autorizado por la Asamblea Nacional.

El Gobierno Legítimo de Venezuela ratifica su decisión absoluta de defender, a toda costa y por todos los medios, la propiedad de nuestro pueblo sobre un bien estratégico necesario para la reconstrucción nacional y la superación de la peor crisis humanitaria jamás vista en la historia de nuestra región.

💬 2       🔁 115        90       



**VENEZUELA'S LEGITIMATE GOVERNMENT TO ARGUE BEFORE THE NEW YORK COURT ON 2020 BONDS**

In the upcoming days, the District Court for the Southern District of New York shall hear arguments from lawyers and experts during the nullity lawsuit of the 2020 bond brought forward by the legitimate Government of Venezuela through Attorney General Jose Ignacio Hernandez. The intention is to get a nullity, illegitimacy, and invalidity ruling on the bonds due to serious violations of the National Constitution carried out by Maduro's regime by putting Citgo as collateral for the bonds.

This stage of the trial in America will allow for the Venezuelans to witness the debate between experts and to learn what Nicolas Maduro's dictatorship and his lawyers tried to hide in 2016 when, by means of a ruling of the Constitutional Chamber of the Supreme Court, they blocked an investigation started by the National Assembly after ruling on rejecting the issuance of the 2020 bond.

During the argument phase, the Parties shall pose their interpretation of the Constitution before the Court and present supporting analyses from Venezuelan lawyers specialized in Constitutional Law. The legitimate Government's argument is solid. On the contrary, for a legal expert to justify the approval of the PDVSA 2020 bond issuance without authorization from the National Assembly, they would have to argue contrary to what is ordered by the Constitution of our Country. Lastly, in spite of the efforts made by the dictatorship, the Venezuelans will be able to witness the trial.

Ever since 2016, the Parliament has declared that the 2020 bond violates the Constitution due to its irrationality and for placing 50.1% of Citgo Holding, Inc. as collateral. Therefore, that was an Agreement of national public interest that should have been previously authorized by the National Assembly.

The legitimate Government of Venezuela stands by its absolute decision to defend, at all costs and by all means, the property of our people of a strategic asset necessary for the national reconstruction and for overcoming the worst humanitarian crisis ever seen in the history of our region.



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK          )
                           )                    ss:
COUNTY of NEW YORK         )

### ***CERTIFICATE OF ACCURACY***

This is to certify that the attached document, "venezuela_tweet" -- originally written in *Spanish* -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into *English*.

Dated: 1/21/2020

Sworn to and signed before ME
this 21st day of January, 2020

*Susannah Smith*

Susannah Smith
Project Manager
Consortra Translations

*James G Mamera*

Notary Public



JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

Your
legal
translation
partner

New York, NY  |  Washington DC  |  Houston, TX  |  San Francisco, CA  |  Hong Kong

**APPENDIX C**

  

Kontakto     Viernes, 17 de Enero de 2020     Suskríbete al Newsletter    


La **Basura**, no se la llevan los **extraterrestres...**

KONFIDENCIALES   PODERÓMETRO   PODER KANÍBAL   MUSEO ELEKTORAL   KOLUMNISTAS   KATALEJO   KONDINERO   KILATES   KONVERSACIONES

KONFIDENCIALES

# Juicio en Nueva York sacará a flote lo que Maduro ocultó sobre el bono PDVSA 2020

**Por Caleb Zulet.**      Miércoles 15 de enero de 2020, 20:30h

 

Por Caleb Zuleta (KonZ).- El juicio de nulidad en contra del bono PDVSA 2020 intentado en Nueva York por la junta administradora ad-hoc de PDVSA sigue adelante. En los próximos días, la Corte deberá escuchar los argumentos relacionados con la inconstitucionalidad del papel. Esto permitirá conocer mejor lo que quisieron esconder el régimen de Nicolás Maduro y sus abogados en septiembre de 2016.



El "secreto de Maduro y sus abogados ahora quedará al descubierto" / Foto: @NicolásMaduro

Así lo señala una fuente relacionada con el equipo del presidente Interino, **Juan Guaidó**. Apunta que el "secreto de Maduro y sus abogados ahora quedará al descubierto en el juicio en Nueva York, donde las partes deberán explicar a la Corte cuál es la interpretación que hacen de la Constitución".

Para argumentar, las partes estarán obligadas a pedir reportes o análisis a expertos en **Venezuela**. A abogados en ejercicio o a profesores en derecho constitucional. Y esto procede también para los agentes de los bonistas. Lo que se discutirá en el fondo son las competencias de la **Asamblea Nacional**. "Lo que no pudo ventilarse en tribunales venezolanos en 2016, será ventilado ante la **Corte de Nueva York**. La comunidad jurídica venezolana debería seguir de cerca ese debate pues, en el fondo, lo que se está defendiendo son las competencias de control de la Asamblea Nacional violentadas por el régimen de Maduro", señaló la fuente.



AHORA EN PORTADA



El petroaguinaldo de Maduro fue el culpable de la subida del dólar y de más dinero inorgánico

La última advertencia de la Procuraduría de Guaić mensaje directo a las petroleras rusas



Anuncio tras anuncio, Maduro impone el petro en casi todas las áreas de la economía





AKTUALIDAD

Señala que "para la junta ad-hoc de PDVSA, el argumento es muy sólido. Tal y como explicó el jurista Román Duque Corredor en entrevista de noviembre de 2019, aun cuando PDVSA podía emitir deuda sin la autorización de la Asamblea Nacional, no podía comprometer a su activo más importante fuera de Venezuela, como es Citgo, sin autorización de la Asamblea Nacional, pues todo lo relacionado con Citgo es de interés público nacional". Aquí está la clave.

Explica que "luego de que el 16 de septiembre de 2016 PDVSA anunciara su intención de canjear los bonos PDVSA 2017 con el bono PDVSA 2020 garantizado con el 50,1% de acciones de **Citgo Holding, Inc.**, diversos diputados de la Asamblea Nacional advirtieron que la operación de canje requería la autorización previa de la Asamblea Nacional, debido a que los contratos de emisión del bono PDVSA 2020 eran contratos de interés público nacional".

La Asamblea Nacional avanzó en sus cuestionamientos cuando el 27 de agosto de 2016 debatió en plenaria el punto de la emisión. En esa sesión los diputados de la **Unidad Democrática** advirtieron que no reconocerían la emisión del Bono PDVSA 2020 "pues debido al colateral sobre Citgo, esos contratos eran de interés público que, como tal, debían ser previamente autorizados por la Asamblea Nacional".

Por su parte, los diputados del **PSUV** y el régimen de Maduro se limitaron a responder que **PDVSA** podía emitir deuda sin control previo de la Asamblea. Sin embargo, al final se impuso la mayoría de la oposición, y la Asamblea Nacional aprobó el Acuerdo que rechazó la emisión del Bono 2020, anunciando una investigación.

Dice la fuente que "el régimen de Maduro y sus abogados quisieron esconder este debate. Para ello, intentaron darle respaldo jurídico a lo expuesto por los diputados del PSUV en aquella sesión. Que PDVSA podía emitir deuda sin control de la Asamblea. Además, Maduro utilizó a la Sala Constitucional para bloquear la investigación iniciada por la Asamblea Nacional, como decidió en sentencia de 25 de octubre de 2016 -pocos días antes de que PDVSA firmara los contratos del Bono 2020, ignorando las objeciones del Parlamento".



### La lucha por Citgo y por el bono PDVSA 2020 puede coronar en un viernes de gloria

Leer más

**Señala que "para la junta ad-hoc de PDVSA, el argumento es muy sólido. Tal y como explicó el jurista Román Duque Corredor en entrevista de noviembre de 2019, aun cuando PDVSA podía emitir deuda sin la autorización de la Asamblea Nacional, no podía comprometer a su activo más importante fuera de Venezuela, como es Citgo, sin autorización de la Asamblea Nacional, pues todo lo relacionado con Citgo es de interés público nacional". Aquí está la clave.**

Así, de acuerdo con Duque Corredor, PDVSA requería la autorización previa para firmar los contratos de emisión del bono PDVSA 2020 y comprometer el 50,1% de


### Diosdado Cabello vuelve a imponer la línea radical en Venezuela


### Esta pareja de venezolanos tenía un problema en España y lo resolvió montando un negocio que hoy es todo un éxito


### La última advertencia de la Procuraduría de Guaidó es un mensaje directo a las petroleras rusas


### Rusia quiere que Guaidó y Maduro negocien porque están cansados de la confrontación


### El canciller de Putin no descarta que Trump repita la fórmula Guaidó en otros países

KonZapata



**Squarespace Website Builder**
Make and manage your own professio with Squarespace's all-in-one platform

Squarespace

**KILATES**



Citgo en garantía a favor de empresas extranjeras, de acuerdo con el artículo 150 de la Constitución, norma que regula la autorización de la Asamblea Nacional para todo contrato de interés público suscrito con empresas extranjeras, que fue precisamente lo que concluyó el Parlamento en septiembre de 2016.



### Nicolás Maduro ya no sabe qué inventar en materia económica (Y la crisis sigue)

Leer más

Explica que, por su parte, los agentes de los bonistas, "intentarán repetir los mismos argumentos que los diputados oficialistas formularon en septiembre de 2016, tratando de justificar de esa manera las acciones del régimen de Maduro orientadas a obstaculizar el ejercicio de las competencias de la Asamblea. Para ello, sin embargo, tendrán que contar con el apoyo de un experto venezolano". ¿Qué va a decir este? ¿Va a ir en contra de la Constitución?

Para el equipo de Guaidó, demostrar la nulidad del bono es una posición de principio. Y también poner a salvo Citgo, empresa clave para el rescate de Venezuela una vez ocurra el cambio político y se rescate la democracia. El gobierno de **Donald Trump** emitió a finales de 2019 medidas de protección de Citgo. En la administración Trump entienden también la nulidad del contrato del bono.



### El libro *Los machetes* de Juan Carlos Zapata ya está disponible en Amazon y en Kindle

Encuentralo Aquí

PSUV    Donald Trump    Asamblea Nacional    Juan Guaidó    Citgo    Bonos PDVSA 2020    Nicolás Maduro

Nueva York    Román Duque Corredor

Kaleb Zuleta

89 artículos

Todos los firmantes

NOTICIAS RELACIONADAS

**LA UE ACTIVA EL JUICIO POLÍTICO CONTRA LUIS PARRA, EL DIPUTADO QUE USÓ MADURO PARA EL GOLPE CONTRA GUAIDÓ**

**MADURO ARRANCA 2020 CON MÁS INFLACIÓN, MÁS DEVALUACIÓN Y MAYOR TENSIÓN POLÍTICA**

Tweets por @konzapata

KonZapata.com
@konzapata

Estas son las 9 áreas prioritarias para Leopoldo Castillo en el rescate de Telesur
konzapata.com/noticia/72935/… #17Ene

**Este es el plan de El Ciudadano Leopol...**
Por Juan Carlos Zapata (KonZ).- Leopold...
konzapata.com

1min

KonZapata.com
@konzapata

El último fiasco de Maduro ha sido el llamado 'petroguinaldo' konzapata.com/noticia/72941/… #17Ene

Insertar      Ver en Twitter

**JOSEP BORRELL REVELA QUE LA CRISIS ENTRE GUAIDÓ Y MADURO SACÓ A FLOTE EL DETERIORO DEL SISTEMA CONSULAR DE ESPAÑA**

**CONFIRMADO: EL EQUIPO DE GUAIDÓ SE ANOTÓ UNA GRAN VICTORIA CON EL BONO PDVSA 2020**

**LA LUCHA POR CITGO Y POR EL BONO PDVSA 2020 PUEDE CORONAR EN UN VIERNES DE GLORIA**

**EL JUICIO POR CITGO SACARÁ A LA LUZ LOS NOMBRES DE QUIÉNES TIENEN EL BONO PDVSA 2020**

**LA PELEA DE GUAIDÓ POR EL BONO PDVSA 2020 SERÁ CON ASHMORE, UN FONDO ALIADO DE MADURO**

**SEKCIONES**

Portada
Konfidenciales
Poder Kanibal
Museo EleKtoral
Kolumnistas
Katalejo

Kondinero
Konversaciones

Archivo
Noticias RSS

**Suskríbete**

Suskripción al newsletter

**Konz Media Group**

Kontakto
Aviso Legal
Política de Privacidad



# New York trial to shed light on what Maduro covered about the PDVSA 2020 bond

By Cale  Zuleta (Kon  ).- The nullity lawsuit o  the PDVSA 2020 bon   brought forward in New York by PDVSA ad-hoc Board moves forward.



In the u  coming days, the Court shall listen to the arguments relate  to the unconstitutionality o  the bon . This will allow for what Nicolás Ma uro s regime an  his lawyers trie  to hide in Se tember 2016 to be known, as was stated by a source close to the Interim President, **Juan Guaidó's**, team. Furthermore, the source states that  the secret held by Ma uro an  his lawyers will now be reveale  during the New York trial, where the parties shall e  plain to the Court how they interpret the Constitution.

For their arguments, the parties must re uest re orts or analyses from e perts in **Venezuela**, practicing lawyers or Constitutional Law teachers. This also applies to the bondholders  agents. Ultimately, what is going to be discusse  are the powers o  the **National Assembly**. That which could not be shared be ore the Venezuelan Court in 2016 shall be known be ore the **New York Court**. The Venezuelan legal community should follow this de ate closely since, ultimately, what is being de en ed are the National Assembly's control powers that have been violate  by Ma uro s regime,  said the source.

 After PDVSA announce  , on September 16, 2016, its intention of re eeming the PDVSA 2017 bon s with the PDVSA 2020 bond with a collateral o  50.1   o  **Citgo Holding, Inc**. s shares, several re resentatives o  the National Assembly warne  that the e  change transaction re uired prior authorization from the National Assembly, since the PDVSA 2020 in enture agreements were o  national public interest.

The National Assembly move  forward with its questioning during the August 27, 2016 plenary session where the point o  the issuance was discusse . During the session, **Unidad Democrática's** re resentatives warne  that they would not recognize the PDVSA 2020 bon  in enture  since, due to Citgo s collateral, those indenture agreements were o  pu lic interest an , as such, should have been previously authorize  by the National Assembly .

On the other han , the representatives o  **PSUV** and Maduro s regime only respon ed that **PDVSA** could issue debt without prior control from the Assembly. Nonetheless, with the ma ority from the o  position, the National Assembly passe  the Agreement that re ecte  the 20 0 Bond issuance, an  announce  an investigation.

The source declares that "Maduro's regime and his lawyers tried to conceal this discussion. In order to accomplish that, they tried to provide legal support for what was said by PSUV's representative during the session, which was that PDVSA could issue debt without prior control from the Assembly. Moreover, Maduro used the Constitutional Chamber to block the investigation started by the National Assembly, as was decided by the October 25, 2016 sentencing- a few days before PDVSA's signing of the 2020 indenture agreements- ignoring the Parliament's objections."

**"For PDVSA's ad-hoc Board, the argument is quite solid. As was explained by legal expert Román Duque Corredor during an interview on November 2019, even if PDVSA could issue debt without prior authorization from the National Assembly, it could not use its most important asset outside of Venezuela, Citgo, as collateral, without authorization from the National Assembly, since everything related to Citgo is of national public interest." That is the key point.**

Therefore, according to Duque Corredor, PDVSA would need prior authorization to sign the PDVSA 2020 indenture agreement and use 50.1% of Citgo's shares as collateral in favor of foreign companies, pursuant to Section 150 of the Constitution, the regulation which governs the authorization of the National Assembly for all agreements of public interest celebrated with foreign companies, which was precisely what the Parliament ruled on September 2016.

The source also states that the bondholders' agents "will try to use the same arguments as the pro-government' representatives during September 2016, thus trying to justify the actions of Maduro's regime destined to undermine the execution of the Assembly's powers. For that, however, they will need the support of a Venezuelan expert." What is that person going to say? Will their arguments go against the Constitution?

For Guaidó's team, it is of utmost importance to prove the bond's nullity, as well as ensuring Citgo's safety, since the company is key for saving Venezuela once the political authorities change and the democracy can be rescued. At the end of 2019, **Donald Trump's** government issued measures designed to protect Citgo. Trump's administration agrees with the nullity of the indenture agreement.



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK )
                  )           ss:
COUNTY of NEW YORK )


### *CERTIFICATE OF ACCURACY*


This is to certify that the attached document, "Juicio en Nueva York sacará a flote lo que Maduro ocultó sobre el bono PDVSA 2020 _ Konzapata" -- originally written in *Spanish* -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into *English*.


Dated: 1/21/2020                                      Sworn to and signed before ME
                                                      this 21st day of January, 2020

*Susannah Smith*                                      *James G Mamera*
Susannah Smith                                        Notary Public
Project Manager
Consortra Translations

JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022



New York, NY | Washington DC | Houston, TX | San Francisco, CA | Hong Kong