**Christopher J. Clark**
Direct Dial: 212.906.1200
chris.clark@lw.com

# LATHAM&WATKINS LLP

53rd at Third
885 Third Avenue
New York, New York 10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

January 31, 2020

**Via ECF and Electronic Mail**

The Honorable Katherine Polk Failla
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007



*Petróleos de Venezuela, S.A., et al. v. MUFG Union Bank, N.A. and Glas Americas LLC*, **1:19-cv-10023**

Dear Judge Failla:

We are counsel for defendants in the above-referenced action, and we are writing pursuant to Local Civil Rule 37.2 and Section 3(c) of this Court's Individual Rules of Practice in Civil Cases to request a conference to address two related issues: (i) recent public statements by persons associated with plaintiffs that appear intended to chill the willingness of potential expert witnesses to testify on defendants' behalf; and (ii) a dispute between the parties about whether plaintiffs should be permitted to provide access to highly confidential documents produced in discovery to Jose Ignacio Hernández, the Special Attorney General of the Guaidó administration, and one other person in his office. The parties have exchanged correspondence about these matters, annexed to this letter as Exhibits 1–4, and held meet and confer calls on January 31, 2020, without resolution. Defendants are prepared to address these issues at the conference currently scheduled for February 6, 2020.

Plaintiffs challenge the validity under the Venezuelan constitution of approximately $1.68 billion in current principal amount of 2020 Notes ("Notes") issued in October 2016 by plaintiff Petróleos de Venezuela, S.A. ("PDVSA"), Venezuela's state-owned oil company, and guaranteed by PDVSA Petróleo, S.A. When the Notes were issued, in October 2016, PDVSA and its subsidiaries were managed by appointees of the administration of President Nicolás Maduro, then recognized by the United States and other countries as the legitimate government of Venezuela. Since early 2019, the U.S. assets of PDVSA and the other plaintiffs have been controlled by the political opposition to the Maduro regime, which is led by Interim President Juan Guaidó and recognized by the United States. The Maduro regime retains effective control of the government of Venezuela. As has been widely reported, the country remains bitterly divided and in a state of political turmoil. Appointees of the Guaidó administration control plaintiffs for purposes of this litigation. Mr. Hernández is the Special Attorney General of the Guaidó administration and a high-profile public spokesperson for PDVSA regarding the dispute underlying this litigation, and has served as a representative and legal advisor to PDVSA and PDVSA Petroléo. Plaintiffs have characterized him as part of their legal team. Since the conference on November 8, 2019, in this matter, the parties have been engaged in fact discovery. Expert reports are currently due on February 20, 2020. No party has yet disclosed the identities or opinions of its experts.

**LATHAM&WATKINS**LLP

The issues on which defendants seek a conference are as follows:

***Improper public statements by Guaidó representatives about expert witnesses***.  Between January 16 and January 20, 2020, Mr. Hernández and representatives of the Guaidó administration have made a coordinated series of highly public statements condemning any expert in Venezuelan law who might testify on behalf of defendants.  These statements include claims that any such expert "would have to argue contrary to what is ordered by the Constitution of our Country," would be "trying to justify the actions of Maduro's regime," and would be doing so before "the Venezuelan legal community" and the Venezuelan nation.  (Ex. 5, 6.)  One statement asserted that the Guaidó administration would press its position in the litigation "at all costs and by all means." (Ex. 5.)  The clear intended effect of these public statements circulated widely in Venezuela is to chill the willingness of Venezuelans to participate in this action on behalf of defendants.  (Full copies of these materials in original Spanish and certified English translation are attached as Exhibits 5–8; all quotations herein are from the English translations.)

On January 24, 2020, counsel for defendants wrote to plaintiffs' counsel describing concerns over the above-described conduct.  At the same time, defendants served supplemental discovery requests, and requested that plaintiffs accept service of a supplemental subpoena directed to Mr. Hernández.  (Ex. 9, 10.)  Both the requests and the subpoena sought limited, expedited discovery intended to elicit the facts relevant to these matters.  We also noted efforts by plaintiffs to identify persons in Venezuela, including potential expert witnesses, that they believe are working with defendants.  (To protect such persons, we advised plaintiffs that we are unwilling to provide additional information about these efforts.)  Finally, we requested that plaintiffs advise us of any efforts made to identify defendants' experts, cease such efforts, and confirm that they and their associates would cease making any statements intimidating in purpose or effect.

Plaintiffs asserted in response to defendants' letter that the public statements cited merely "express[] confidence in the plaintiffs' position" in this litigation.  Letter from James R. Bliss to Christopher J. Clark (Jan. 26, 2020) (Ex. 2).  And, while acknowledging that the "high visibility and political implications" of the case might cause some potential experts not to work for defendants, they attributed that concern to "the nature of the situation."  Letter from James R. Bliss to Christopher J. Clark (Jan. 29, 2020) (Ex. 4).  But the signaling function of these statements is clear.  Mr. Hernández represents an administration recognized by the United States that currently controls the Venezuelan National Assembly, and that aspires to control the executive branch of the Venezuelan government.  Nothing that occurred in the litigation, other than the imminent due date for expert reports, explains the timing of Mr. Hernández's decision to threaten any experts who testified for defendants with opprobrium in the eyes of the Guaidó administration, the Venezuelan legal community, and the Venezuelan nation.  The evident purpose is to attempt to intimidate Venezuelan legal experts from testifying for defendants.  Plaintiffs did not deny seeking to communicate with defendants' potential experts, nor did they suggest that the communications were for an innocent purpose, such as retaining the experts themselves.

While plaintiffs contend these statements merely comment on the outlook of the case, plaintiffs' counsel could not explain—including on several meet and confer calls on January 31, 2020—why it would be necessary for a high-level government official not merely to criticize defendants' legal position, but to attack the witnesses who may be called to support their case.  We

can conceive of no justification for a responsible government official to make public statements attacking its adversary's witnesses, other than to attempt to intimidate. Such attempts would be patently improper. *See Harris v. SCA Rest. Corp.*, No. 09-CV-2212 JFB ETB, 2014 WL 996249, at *4 (E.D.N.Y. Mar. 14, 2014); *Chahal v. Paine Webber Inc.,* 725 F.2d 20, 25 (2d Cir. 1984) (allowing § 1985(2) claim where defendant's expert refused to testify after plaintiff complained to his employer about an alleged violation of a stock exchange rule, resulting in the employer threatening the expert's termination); *Sewell v. Maryland Dep't of Transp.*, 206 F.R.D. 545, 547 (D. Md. 2002) (barring plaintiff's lawyer from contacting defense experts after plaintiff's attorney threatened a defense expert witness with a potential defamation claim); *Massachusetts Inst. of Tech. v. Imclone Sys., Inc.*, 490 F. Supp. 2d 119, 126–27 (D. Mass. 2007) (imposing sanctions after plaintiff's counsel contacted an expert witness's employer about the witness's participation in the litigation, conduct the court described as a demand that the employer "rein [the expert] in.").

Defendants respectfully request that the Court direct plaintiffs and persons working in coordination with them (i) to make no further statements having the intended or reasonably foreseeable effect of intimidating witnesses, accounting for plaintiffs' association with the Guaidó administration; (ii) not to make any efforts to communicate with persons they believe to be working with defendants; and (iii) to provide the limited, expedited discovery sought in the supplemental document requests and supplemental subpoena. (Ex. 9, 10.)

***Disclosure of highly confidential materials to Mr. Hernández****.* Defendants also seek the Court's assistance as to whether, as plaintiffs have demanded, discovery material designated by defendants or nonparties as Highly Confidential may be disclosed to Mr. Hernández or one of his colleagues in the Guaidó administration. Defendants have agreed to allow Hernández and his colleagues access to all materials designated Confidential; however, they believe that these individuals—who are not counsel of record or U.S. lawyers, and who have multiple business and political roles—should not be provided access to Highly Confidential materials, which may disclose information that is highly competitively sensitive. Although plaintiffs have asserted that Mr. Hernández plays an integral part in plaintiffs' decision-making, the proposed protective order would not preclude plaintiffs' counsel from providing legal advice based on those documents, and plaintiffs have not explained why he needs to have access to highly confidential discovery information in order to discharge those responsibilities, and, of course, plaintiffs retain the right to challenge defendants' designation of any document as Highly Confidential. Courts in this district commonly enter protective orders limiting the access to discovery of business personnel with decisionmaking responsibilities for the litigation. Mr. Hernandez's involvement in the inappropriate public statements discussed in the first part of this letter only increases our concerns about providing him access to such materials. Just this week, a purportedly personal and confidential letter was sent from Mr. Hernández to Mr. Guaidó offering to resign in light of disputes within the opposition party about funding this litigation. (Ex. 11.) The statement was promptly leaked to the press. (Ex. 11.) This leak makes defendants even less willing to provide Mr. Hernández highly confidential materials. We can present further documents relevant to this development on request.

Defendants request that the Court so-order the protective order included as Exhibit 12. The parties are in agreement as to all of its provisions, apart from those identified in brackets. Defendants do not accept those in yellow; plaintiffs do not accept those in green.

**LATHAM&WATKINS**LLP

Respectfully,

/s/ Christopher J. Clark
Christopher J. Clark
of LATHAM & WATKINS LLP

Encl.

cc: Counsel of Record

The Court is in receipt of Defendants' letter requesting a Rule 37.2 conference and explaining that they would be prepared to discuss their concerns with the Court at the conference scheduled for this action's related case on February 6, 2020. In order to ensure that the Court is fully apprised of the relevant issues prior to the conference, the Court ORDERS Plaintiffs to respond to Defendants' letter no later than February 5, 2020, at 10:00 a.m.

Dated: February 3, 2020
New York, New York

SO ORDERED.

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE