PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS   NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

JONATHAN HURWITZ

TELEPHONE    (212) 373-3254
FACSIMILE    (212) 492-0254

E-MAIL:  jhurwitz@paulweiss.com

February 12, 2020

The Honorable Katherine Polk Failla
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York  10007

      *Petróleos de Venezuela, S.A., et al. v. MUFG Union Bank et al.*, 1:19-cv-10023

Dear Judge Failla:

      We respectfully request a conference to address a discovery dispute relating to documents possessed by the law firm Hogan Lovells ("Hogan") as attorneys for plaintiff Petróleos de Venezuela, S.A. ("PDVSA").  Defendants and Hogan have exchanged correspondence and held meet and confer calls (which included plaintiffs' counsel) on December 19, 2019, January 27, 2020, and February 12, 2020, without resolution.

      Hogan played a central role in the issuance of the disputed 2020 Notes.  Hogan, through its offices in Caracas, Venezuela, and New York, advised PDVSA in connection with the Exchange, and provided opinion letters to defendants, among others, stating that the transactions were lawful and valid under the law of Venezuela and New York.  Exs. 1, 2 (Hogan opinion letters).  Hogan's Venezuela law opinion stated that the 2020 Notes did not "conflict with or violate any Venezuelan law, rule, regulation, order, judgment or decree."  Ex. 2, at 4.  Neither of Hogan's opinions identified any legal risk associated with the Venezuelan constitution or any alleged requirement that the transaction be approved by the National Assembly.

      Hogan has unjustifiably refused, on grounds of PDVSA's attorney-client privilege, to produce all documents relating to the validity of the 2020 Notes.  Exs. 3, 4 (subpoena and response).  Plaintiffs, however, have forfeited any attorney-client privilege covering those documents by placing at issue their understanding, at the time of the Exchange, of the legal validity of the Exchange and the enforceability of the Notes.

      Privilege is forfeited by a "party's advancing a claim to a court or jury . . . while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim."  *John Doe Co.* v. *United States*, 350 F.3d 299, 303 (2d Cir. 2003).  PDVSA has forfeited its privilege here by advancing claims and defenses that turn, in critical part, on its knowledge of the legal issues in 2016.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Katherine Polk Failla                                                                                2

*First*, PDVSA's complaint contradicts Hogan's opinion letters by alleging that the Exchange was unlawful as a matter of Venezuelan law and that the supposed legal risks of the Exchange were the subject of "widespread concern" at the time. Compl. (Ex. 5) ¶ 48. Likewise, the Complaint alleges that at the time of the Exchange, "multiple [press] articles not[ed] that National Assembly authorization was constitutionally required," and that "articles and market reports warned that the lack of National Assembly approval would render the 2020 Notes subject to legal challenge." *Id.* ¶¶ 51, 52. Moreover, in support of its affirmative defenses of unclean hands, equitable estoppel, and *in pari delicto*, plaintiffs allege that defendants and beneficial holders of 2020 Notes "were on notice of . . . the invalidity, illegality, and/or enforceability of the 2020 Notes, the Indenture, and/or the Pledge Agreement," and that they "knew or should have known" that the alleged purpose of the Exchange was to "prolong the Maduro regime's illegitimate exercise of power . . . ." PDVSA's Answer (Ex. 6) defenses 3–5. These defenses place PDVSA's understanding of whether the transaction violated Venezuelan law directly at issue. *See JPMorgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. de C.V.*, 2010 WL 4868142, at *14–15 (N.Y. Sup. Ct. Mar. 16, 2010) (rejecting defense that contract was unenforceable due to foreign illegality where party claiming illegality was not "entirely innocent," but rather "*in pari delicto*" because it was equally aware of alleged illegality).

*Second*, PDVSA has alleged that the 2020 Notes are unenforceable because they are illegal under Venezuelan law. But not every violation of foreign law makes a contract unenforceable under New York law. Some courts have held that a contract that is illegal under foreign law will not be enforced by a New York court if "the parties entered into the contract *with a view to violate* the laws of that other jurisdiction." *Lehman Bros. Commercial Corp.* v. *Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 138 (S.D.N.Y. 2000) (emphasis added). Evidence regarding PDVSA's understanding of Venezuelan law at the time of the Exchange—and thus its communications with Hogan about that subject—is directly relevant to this issue. While defendants believe that, in light of the broad choice-of-law provision in the governing documents, the Court should apply New York rather than Venezuelan law regardless of PDVSA's state of mind, they are entitled to discovery to address the issues of knowledge and intent raised by plaintiffs' pleadings.

*Third*, some authorities also suggest that in determining whether a contract allegedly unlawful under foreign law should be enforced, the Court may consider whether the parties were "ignorant of the illegality" or, instead, "entered the contract with knowledge thereof." Restatement (Second) of Conflict of Laws § 202 cmt. c (1971). Evidence that Hogan advised PDVSA of legal risks bears directly on this issue.

Plaintiffs have argued that their claims and defenses place only *defendants'* knowledge, not PDVSA's knowledge, at issue. That is not the case. While plaintiffs understandably seek to emphasize defendants' purported fault while ignoring their own, the relevant legal doctrines require a comparison of both parties' relative fault. *See, e.g.*, *Controladora*, 2010 WL 4868142, *14–15; *BrandAid Mktg. Corp.* v. *Biss*, 462 F.3d 216, 218 (2d Cir. 2006) ("Another requirement for invocation of the doctrine of *in pari delicto* is that the plaintiff's wrongdoing be at least substantially equal to that of the defendant."). And, in the context of plaintiffs' claims, that means both parties' knowledge of the Venezuelan legal issues in 2016. Plaintiffs cannot avoid

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Katherine Polk Failla                                                                                                      3

an at-issue forfeiture by artful pleading that seeks to elide fundamental elements of the claims and defenses that they raise.

In these circumstances, fairness requires a forfeiture of privilege. *See, e.g.*, *Weizmann Inst. of Sci. v. Neschis*, 2004 WL 540480, at *6 (S.D.N.Y. Mar. 17, 2004) (finding at-issue forfeiture where "Plaintiffs' understanding" of Swiss and Liechtenstein law was relevant to assessing plaintiffs' response to affirmative defense); *Metro. Bridge & Scaffolds Corp. v. N.Y.C. Hous. Auth.*, 92 N.Y.S.3d 248, 250 (App. Div. 1st Dep't 2019) (finding at-issue forfeiture where plaintiff asserted claim that could be disproven by in-house counsel's knowledge). Accordingly, defendants are entitled to all documents related to the validity of 2020 Notes, including Hogan's communications with PDVSA.

The unfairness to defendants arising from Hogan's refusal to produce these documents is exacerbated by defendants' lack of access to other evidence of PDVSA's state of mind in 2016. Plaintiffs have not produced any documents from PDVSA's files from 2016, asserting that all such documents are now outside of their control. Defendants also cannot depose any PDVSA witnesses who were involved in the 2016 Exchange, as those witnesses are in Venezuela and are allegedly beyond the control of the PDVSA board that is conducting this litigation.

Hogan has complained that, as a purported third party, it should not be burdened with reviewing these documents. But Hogan represented PDVSA in connection with the Exchange; Hogan continues to represent PDVSA in significant U.S. litigation; and Hogan's documents are within PDVSA's control. Hogan has also admitted that it intends to bill PDVSA for its response to the subpoena.

\*     \*     \*

In addition, defendants are continuing to discuss with Hogan and plaintiffs another potential privilege dispute relating to emails involving Credit Suisse (PDVSA's financial advisor in connection with the Exchange), Credit Suisse's counsel, and KPMG (PDVSA's independent auditor). Defendants have proposed a compromise and are hopeful to resolve that issue by agreement. If the parties cannot reach an agreement, defendants will seek the Court's assistance promptly.

We thank the Court for its attention to these matters.

Respectfully,

/s/ Jonathan Hurwitz

Exhibits 1–6 attached

cc:  Counsel of Record (Via ECF and Electronic Mail)