# EXHIBIT 2



Despacho de Abogados Miembro de Hogan Lovells
RIF.: J-31408984-6
Centro San Ignacio, Torre Copérnico
Ofi. TO-P3-04
Av. Blandín, La Castellana
1060 Caracas, Venezuela
T +58 212 266 97 72
F +58 212 266 97 32
www.hoganlovells.com

October 28, 2016

To the addressees listed on Annex A
Attached hereto

**Re: Petróleos de Venezuela, S.A. – Offering**

Ladies and Gentlemen,

This firm has acted as external Venezuelan counsel to Petróleos de Venezuela, S.A., a *sociedad anónima* organized under the laws of the Bolivarian Republic of Venezuela (the "**Company**") and PDVSA Petróleo, S.A., a *sociedad anónima* organized under the laws of the Bolivarian Republic of Venezuela (the "**Guarantor**"), in connection with the offering (the "**Offer**") and issuance of U.S. dollar denominated 8.50% Senior Secured Notes due 2020 (the "**Notes**") unconditionally and irrevocably guaranteed by the Guarantor (the "**Guarantee**"), each of the Offer and the Exchange (as defined below) pursuant to, and subject to, the terms and conditions set forth in the Offering Circular dated September 16, 2016 and its Supplement dated September 26, 2016 (together, the "**Offering Circular**").

This opinion letter is furnished to Credit Suisse Securities (USA) LLC, as Financial Advisor (the "**Financial Advisor**") pursuant to the requirements set forth in Section 7 of the Financial Advisor Agreement dated as of September 16, 2016, among the Financial Advisor, the Company and the Guarantor (the "**Financial Advisor Agreement**"), in connection with the exchange of all outstanding U.S. dollar denominated notes due April 2017 (the "**April 2017 Notes**") and November 2017 (the "**November 2017 Notes**" and, together with the April 2017 Notes, the "**Existing Notes**") for the Notes on the date hereof (the "**Exchange**").

Despacho de AbogadosMiembro de Hogan Lovells is an affiliated business of Hogan Lovells US LLP, a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP, Hogan Lovells International LLP and their affiliated businesses, with offices in: Alicante Amsterdam Baltimore Beijing Brussels Caracas Colorado Springs Denver Dubai Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston Johannesburg London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Moscow Munich New York Northern Virginia Paris Perth Philadelphia Rio de Janeiro Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Sydney Tokyo Ulaanbaatar Warsaw Washington DC Associated offices: Budapest Jeddah Riyadh Zagreb. For more information see www.hoganlovells.com

The Notes are to be issued under an indenture (the "**Indenture**") dated as of the date hereof among the Company, the Guarantor, MUFG Union Bank, N.A., as Indenture Trustee (the "**Indenture Trustee**"), GLAS Americas LLC, as Collateral Agent (the "**Collateral Agent**"), Law Debenture Trust Company of New York, as registrar, transfer agent and principal paying agent, and Banque Internationale à Luxembourg, société anonyme, as Luxembourg listing agent and paying agent. The Notes are secured by 50.1% of the shares of capital stock that PDV Holding, Inc., a corporation organized under the laws of the state of Delaware (the "**Pledgor**") owns in Citgo Holding, Inc. pursuant to the Pledge and Security Agreement dated as of the date hereof among the Pledgor, the Company, the Guarantor, the Indenture Trustee and the Collateral Agent (the "**Pledge and Security Agreement**").

The Company, the Guarantor and the Pledgor are referred hereto as the "Relevant Parties." The Indenture, the Notes, the Pledge and Security Agreement and the Financial Advisor Agreement are referred hereto as the "**Transaction Documents**." Capitalized terms used herein shall have the meanings set forth in the Transaction Documents, unless otherwise defined herein, including in Schedule 1 attached hereto.

For purposes of this opinion letter, we have examined copies of the documents listed in Schedule 1 attached hereto (the "**Documents**").

In our examination of the Transaction Documents and the other Documents, we have assumed the genuineness of all signatures, the legal capacity of all natural persons, the accuracy and completeness of all of the Documents, the authenticity of all originals of the Documents and the conformity to authentic originals of all of the Documents submitted to us as copies (including telecopies). As to all matters of fact relevant to the opinions expressed and any other statements made herein, we have relied on the representations and statements of fact made in the Documents; we have not independently established the facts so relied on and we have not made any investigation or inquiry other than our examination of the Documents. This opinion letter is given, and all statements herein are made, in the context of the foregoing.

For purposes of this opinion letter, we have assumed that (i) each party to the Transaction Documents, other than the Company and the Guarantor under Venezuelan Law (as defined below), has all requisite power and authority under all applicable laws, regulations and governing documents to execute, deliver and perform its obligations under the Transaction Documents and each party to any of the Transaction Documents, other than the Company and the Guarantor, has complied with all legal requirements pertaining to its status as such status relates to its rights to enforce the Transaction Documents against the other parties thereto; (ii) each party to the Transaction Documents is validly existing and in good standing in all necessary jurisdictions, other than the Company and the Guarantor in respect of the Bolivarian Republic of Venezuela ("**Venezuela**"); (iii) each Transaction Document constitutes a valid and binding obligation, in accordance with its terms under all applicable law; (iv) there has been no mutual mistake of fact or misunderstanding, or fraud, duress or undue influence, in connection with the negotiation, execution or delivery of the Transaction Documents, and the conduct of all parties to the Transaction Documents has complied with any requirements of good faith, fair dealing and conscionability; (v) there are and have been no agreements or understandings among the parties, written or oral, and there is and has been no usage of trade or course of prior dealing among the parties (and no act or omission of any party), that would, in any such case, define, supplement or qualify the terms of the Transaction Documents; and (vi) each of the certifications and authorizations issued before the date of this opinion letter continue to be valid and in full force and effect as of the date of this opinion letter. We have also

assumed the validity and constitutionality of each relevant statute, rule, regulation and agency action covered by this opinion letter, unless a reported decision of the Constitutional Chamber of the Venezuelan Tribunal of Justice has established its unconstitutionality or invalidity.

We note that the Transaction Documents provide that they will be governed by and construed in accordance with the laws of the State of New York ("**NY Law**"). We express no opinion herein with respect to NY Law or as to the effect that NY Law may have upon the opinions expressed and other statements made herein. We have assumed that each of the Transaction Documents constitutes the valid and binding obligation of the parties under NY Law, that each of its provisions is enforceable under NY Law, and that the choice of NY Law set forth in each of the Finance Documents as its governing law (a "**NY Governing Law Provision**") would be upheld as a valid choice of law, in each case, under NY Law and the laws of any other relevant foreign jurisdiction. We note that in connection with the transactions contemplated by the Transaction Documents you are separately receiving an opinion from Hogan Lovells US LLP, United States counsel to the Company and the Guarantor, with respect to the Transaction Documents and certain other matters. We draw to your attention that, because we are not in a position to interpret the Transaction Documents under NY Law, for purposes of this opinion letter we have instead interpreted the provisions of the Transaction Documents in accordance with the apparent meaning that lawyers generally understand terms to have under internal Venezuelan contract law as currently in effect, even though Venezuelan courts would more likely seek to interpret the Transaction Documents under NY Law, which could lead to different results. We have not considered any interpretation of such provisions or any divergence from such apparent-meaning interpretation thereof that may arise by reason of the application of NY Law or any other law, and we have not considered any substantive provisions of NY Law that may be supplied by mandatory choice of law rules.

This opinion letter is based, as to matters of law, on the applicable provisions, as currently in effect and as applied by the courts of Venezuela on the date hereof, of the laws, statutes, regulations and decrees of Venezuela that are generally recognized as applicable to the transactions contemplated in the Transaction Documents (collectively, "**Venezuelan Law**"), and is subject to the exclusions and limitations set forth in this opinion letter.

Based upon, subject to, and limited by the assumptions, qualifications, exceptions and limitations set forth in this opinion letter, we are of the opinion that:

1. The Company has been duly incorporated as of September 15, 1975 before the First Mercantile Registry Office of the Judicial Circuit of the Federal District and State of Miranda, under No. 23, Volume 99-A and the Guarantor has been duly incorporated as of November 16, 1978 before the Second Mercantile Registry Office of the Judicial Circuit of the Federal District and State of Miranda under No. 26, Volume 127-A-Second. Each of the Company and the Guarantor is validly existing under the laws of the jurisdiction of its incorporation and is duly qualified to transact business in such jurisdiction.

2. The Company is wholly owned by the Bolivarian Republic of Venezuela, pursuant to Article 303 of the Constitution of the Bolivarian Republic of Venezuela and the provisions of Article 4 of its Articles of Incorporations and By-Laws.

3. The Guarantor is wholly owned by the Company as provided in the Article 3 of its Articles of Incorporation and By-Laws.

4. The Company and the Guarantor have the corporate power and authority to take all necessary corporate action to authorize the Exchange, the issuance of the Notes and to execute, deliver and perform the Transaction Documents.

5. Assuming that they have been duly executed and delivered by the Relevant Parties under New York law, the Exchange, the issuance of the Notes and the execution, delivery and performance by the Company of the Transaction Documents are within Company's corporate powers, and the execution and delivery of the Transaction Documents, and the performance by the Company of its obligations thereunder, have been duly authorized by all necessary corporate action of the Company. The Transaction Documents have been duly executed and delivered by the Company.

6. Assuming that they have been duly executed and delivered by the Relevant Parties under New York law, the Exchange, the issuance of the Notes and the execution, delivery and performance by the Guarantor of the Transaction Documents are within Guarantor's corporate powers, and the execution and delivery by the Guarantor of the Transaction Documents and the performance by the Guarantor of its obligations thereunder, have been duly authorized by all necessary corporate action of the Guarantor. The Transaction Documents have been duly executed and delivered by the Guarantor.

7. The Exchange, the issuance of the Notes, the execution and delivery by the Company and the Guarantor of the Transaction Documents and the performance of their respective obligations thereunder does not (i) violate Venezuelan Law or the Articles of Incorporation and By-Laws of the Company or the Guarantor, respectively, (ii) conflict with or violate any Venezuelan law, rule, regulation, order, judgment or decree applicable to the Company or the Guarantor by which any property or asset of the Company, the Guarantor or any of their subsidiaries is or may be bound, and (iii) result in the creation or imposition of a lien or encumbrance under Venezuelan Law or breach or constitute, a default under, or the acceleration of (or entitle any party to accelerate) the maturity of any obligation of the Relevant Parties under, or result in or require the creation of any lien upon or security interest in any property of the Relevant Parties pursuant to, the terms of any Company Contracts set forth in Schedule 1 attached hereto (except that we express no opinion with respect to any matters that would require a mathematical calculation or a financial or accounting determination).

8. No approval, authorization or consent of or registration or filing with, any governmental agency or governmental authority in Venezuela is required to be obtained or made by the Company or the Guarantor under Venezuelan Law in connection with, the execution, delivery and consummation by the Company or the Guarantor of the Transaction Documents.

9. The courts of Venezuela will, if properly presented with the issue, accept the choice by the Company and the Guarantor of the law of the State of New York as the governing law of the Transaction Documents, except when (i) the application of any provisions of NY Law bring results which are incompatible with essential principles of Venezuelan public policy or (ii) imperative principles of international public policy apply.

10. Under Venezuelan Law, the Company and Guarantor have (i) the corporate power to submit, and pursuant to the Transaction Documents have validly submitted, under Venezuelan Law, to the jurisdiction of federal and state courts of competent jurisdiction sitting in the County of New York, State of New York in respect of any actions or proceedings relating to the Transaction Documents ; (ii) due to such submission waived any right to jurisdiction to which they may be entitled under Venezuelan Law on account of place of residence or domicile and (iii) appointed CSC as their

agent for service of process for the purposes described in the Financial Advisor Agreement. The submission, waiver and appointment set forth in clauses (i), (ii) and (iii) will be treated by Venezuelan courts as valid and binding on each the Company and the Guarantor.

11. A final judgment rendered against the Company or the Guarantor by a New York State or United States Federal court relating to the Transaction Documents will be enforceable against the Company or the Guarantor, as applicable, in the courts of Venezuela, subject only to the obtaining of a confirmatory judgment (exequatur) from the Supreme Tribunal of Justice (*Tribunal Supremo de Justicia*), as required under the Venezuelan Civil Procedure Code (*Código de Procedimiento Civil de Venezuela*) and the Venezuelan International Private Law (*Ley de Derecho Internacional Privado*) published in Official Gazette of the Bolivarian Republic of Venezuela N° 36,511 dated August 6, 1998 (the "**Venezuelan International Private Law**"); provided that: (i) the foreign judgment concerns matters of private civil or commercial law subject to settlement only; (ii) the foreign judgment constitutes *res judicata* under the laws of the jurisdiction where it was rendered; (iii) the foreign judgment does not relate to real property interests over real estate located in Venezuela and the exclusive jurisdiction of Venezuelan courts over the subject matter of the case has not been violated; (iv) the foreign courts have jurisdiction over the matter pursuant to the general principles of jurisdiction set forth in Chapter IX of the Venezuelan International Private Law; (v) the Company or the Guarantor (as the case may be) is duly served, with sufficient time to appear in the proceedings and due process is respected in the proceedings; (vi) the foreign judgment is not incompatible with a prior judgment that constitutes *res judicata* and no proceeding initiated prior to the rendering of the foreign judgment is pending before Venezuelan courts on the same subject matter among the same parties to litigation; and (vii) the foreign judgment does not contravene the essential principles of Venezuelan public policy. For its part, the execution and delivery of the Transaction Documents do not contravene essential principles of Venezuelan public policy.

12. The execution and delivery by the Company and the Guarantor and the performance of their obligations under the Transaction Documents and the performance of its obligations thereunder, constitute private and commercial acts (*iure gestionis*) rather than governmental or public acts (*iure imperi*) under Venezuelan Law, and neither the Company nor the Guarantor nor any of its properties, assets or revenues enjoy any right of sovereign immunity under Venezuelan Law from suit, judgment, execution on a judgment or attachment (whether before judgment or in aid of execution) in respect of its obligations, liabilities or any other matter under the Transaction Documents, other than stay of procedure requirements, following the mandatory notice required in respect of companies owned by Venezuela and companies that render services of public interest in Venezuela in accordance with Article 111 of the Law of the Attorney General Office (*Ley Orgánica de la Procuraduría General de la República)*.

Our opinion in paragraph 8 above is not intended to cover and should not be viewed as covering proposals, consents, registrations, and filings required for the conduct of the business of the Company and the Guarantor generally (i.e. that would be required in the course of its business in the absence of entering into the Transaction Documents).

In addition to the assumptions, qualifications, exceptions and limitations elsewhere set forth in this opinion letter, our opinions expressed above are also subject to the effect of: (i) bankruptcy, insolvency, reorganization, receivership, moratorium, *atraso* and other laws affecting creditors' rights (including, without limitation, the effect of statutory and other law regarding fraudulent conveyances, fraudulent transfers and preferential transfers); and (ii) the exercise of judicial discretion and the application of principles of equity, good faith, fair dealing, reasonableness, conscionability and

materiality (regardless of whether the applicable agreements are considered in a proceeding in equity or at law).

We express no opinion as to any statutes, rules and regulations other than Venezuelan Law, including without limitation, the laws of any other country or governing law of the Transaction Documents (and in particular, we express no opinion as to any effect that such other statutes, rules and regulations may have on the opinions expressed herein). We express no opinion in this letter as to antitrust, unfair competition, securities, or banking statutes, rules or regulations, or as to any tax statutes, rules or regulations (except to the extent stated in opinion paragraphs 10 and 11 hereof), or as to any statutes, rules or regulations of any political subdivision below the national level. We provide our legal opinion acting as Venezuelan lawyers and do not express any enforceability opinion on the Transaction Documents.

We assume no obligation to advise you of any changes in the foregoing subsequent to the delivery of this opinion letter. This opinion letter has been prepared solely for your use in connection with the transactions contemplated under the Financial Advisor Agreement on the date hereof, and should not be quoted in whole or in part or otherwise be referred to, and should not be filed with or furnished to any governmental agency or other person or entity, without the prior written consent of this firm.

Very truly yours,

Hogan Lovells S.C.

HOGAN LOVELLS S.C.

**SCHEDULE 1**

**DOCUMENTS**

(i) Executed copy of the Indenture.

(ii) Executed copy of the Financial Advisor Agreement.

(iii) Executed copy of the global note representing the Notes.

(iv) Executed copy of the Pledge and Security Agreement.

(v) The Offering Circular

(vi) Copies of the current articles of incorporation and by-laws (*documento constitutivo y estatutos sociales*) of (a) the Company, as certified by the First Mercantile Registry of the Capital District and State of Miranda of Venezuela on July 20, 2011, under No. 15, Volume 151-A; and (b) the Guarantor, as certified by the Second Mercantile Registry of the Capital District and State of Miranda of Venezuela on March 16, 2007, under No. 57, Volume 49-A-Sgdo.(in each case, the "**Articles of Incorporation and By-Laws**").

(vii) Copies of the minutes of the shareholders meeting of the Company and the Guarantor appointing the Secretary and the members of the Board of Directors of the Company and the Guarantor's Board of Directors.

(viii) Copies of the certificates of each of the Secretary of the Company and the Guarantor dated the date hereof, certifying that the Articles of Incorporation and By-Laws of the Company and the Guarantor in the form certified as described in paragraph (vi) above has not been amended, revoked or replaced and is correct, complete and in full force and effect on the date hereof.

(ix) Copy of the certificate of the Secretary of the Company and the Guarantor dated the date hereof, certifying as to the accuracy, completeness and effectiveness of the resolution of the Board of Directors of the Company and the Guarantor dated September 7, 2016 and the Shareholders Meeting Minutes of the Company dated September 8, 2016, (A) approving the terms of the Transaction Documents to which the Company and the Guarantor are a party and the transactions contemplated thereby and the execution, delivery and performance by the Company and the Guarantor of such Transaction Documents; (B) authorizing a specified person or persons to execute such Transaction Documents on the Company and the Guarantor 's behalf; and (C) authorizing a specified person or persons, on the Company and the Guarantor's behalf, to sign all documents and notices to be signed by the Company and the Guarantor under or in connection with such Transaction Documents.

(x) Copy of the certificate of the Secretary of the Company dated the date hereof, certifying as to the accuracy, completeness and effectiveness of the resolution of the Board of Directors of the Company dated September 21, 2016 and the Shareholders Meeting Minutes of the Company dated September 21, 2016, approving the modification of certain terms and conditions of the Exchange.

(xi) Incumbency Certificates of each of the Secretary of the Company and Guarantor certifying the names and true signatures of the officers of each of the Company and Guarantor authorized to sign the Transaction Documents.

(xii) Certificate of debt of the Company indicating its consolidated outstanding debt prepared by Rodríguez, Velázquez & Asociados (a KPMG affiliate), a Certified Public Accountant, published in Venezuelan newspapers Diario Panorama and Diario Vea on January 22, 2016 and January 23, 2016 respectively.

(xiii) Copy of the letter from CSC accepting to act as agent for service of process for the purposes described in the Financial Advisor Agreement.

(xiv) Company Contracts:

- Public offering of U.S.$435 million in bonds due 2016 ("Petrobonos").

- Three 18-month term investment certificates in favor of *Fondo de Protección Social de los Depósitos Bancarios* ("FOGADE") issued in February 2009, having an aggregate total principal dollar equivalent amount of U.S.$1,000 million, subsequently renewed.

- Two short term investment certificates having an aggregate principal amount of U.S.$465 million in favor of Banco del Tesoro, Banco Universal C.A. ("Banco del Tesoro") (wholly-owned by the Bolivarian Republic of Venezuela) issued in December 2010 and subsequently renewed .

- Six short term investment certificates totaling U.S.$721 million, denominated in Bolívares, in favor of Banco del Tesoro, Banco Universal C.A. ("Banco del Tesoro") issued in 2011 and subsequently renewed.

- Two investment certificates totaling U.S.$465 million, denominated in Bolívares, in favor of Banco de Venezuela, Banco Universal S.A. ("Banco de Venezuela") issued in February 2012 and subsequently renewed.

- Seven renewable investment certificates for a total of U.S.$145 million (Bs. 10.000 million) issued in favor of Banco de Venezuela in December 2015.

- A renewable investment certificate for a total of U.S.$150 million, issued in favor of Banco de Desarrollo Económico y Social de Venezuela (BANDES) in October 2015, renewed under the same conditions in June 2016 and July 2016.

- A renewable investment certificate issued in favor of Banco de Desarrollo Económico y Social de Venezuela (BANDES) in February 2016 for a total of U.S.$100 million, renewed under the same conditions in July 2016.

- Three renewable investment certificates issued in July 2016 in favor of Banco de Venezuela denominated in Bolívares in an aggregate amount of U.S.$76 million.

***Banco del Tesoro***

- A loan agreement with Banco del Tesoro for a total aggregate amount of Bs. 500 million (equivalent to U.S.$116 million) for the manufacturing sector, dated November 2011.

- A loan agreement with Banco del Tesoro for a total aggregate amount of Bs. 500 million (equivalent to U.S.$116 million) for the agricultural sector., dated November 2011.
- A Bs. 500 million loan agreement with Banco del Tesoro (equivalent to U.S.$116 million), dated January 2012.
- A credit facility with Banco del Tesoro for Bs. 4,000 million (equivalent to U.S.$635 million), dated March 2013.
- Two loan agreements with Banco del Tesoro for a total aggregate amount of Bs. 2,000 million (equivalent to U.S.$317 million), dated September 2013.
- A Bolívar denominated loan agreement with Banco del Tesoro for U.S.$476 million (Bs. 3,000 million), dated February 2014.
- A loan agreement with Banco del Tesoro for a total aggregate amount of Bs. 1,100 million (equivalent to U.S.$175 million) dated August 2014.

***Banco de Venezuela***

- Two loan agreements with Banco de Venezuela for a total amount equal to Bs. 4,000 million (equivalent to U.S.$930 million), dated June, 2011.
- Two loan agreements, one in the amount of Bs. 2,000 million (equivalent to U.S.$465 million), and the other in the amount of Bs. 300 million (equivalent to U.S.$70 million), with Banco de Venezuela dated November 2011.
- A loan agreement with Banco de Venezuela in the amount of Bs. 2,000 million (equivalent to U.S.$465 million) dated December 2011.
- A loan agreement dated March 2012 with Banco de Venezuela for Bs. 2,000 million (equivalent to U.S.$465 million).
- A loan agreement dated March 2012 with Banco de Venezuela for Bs. 2,000 million (equivalent to U.S.$465 million).
- A credit facility dated March 2013 with Banco de Venezuela for a total amount of Bs. 10,000 million (equivalent to U.S.$1,587 million).
- Two commercial loan agreements dated September and October 2013, with Banco de Venezuela for a total amount of Bs. 1,200 million (equivalent to U.S.$190 million) and Bs. 2,800 million (equivalent to U.S.$444 million), respectively.
- Loan agreements between Venezuelan Heavy Industries, C.A. a subsidiary of PDVSA Industrial, S.A. and Banco de Venezuela for an aggregate amount of Bs. 900 million (equivalent to U.S.$147 million) July 2012, January 2013 and May 2013.
- A Bolívar denominated loan agreement with Banco de Venezuela for a total amount of U.S.$476 million (Bs. 3,000 million) dated December 2013.

- A Bolívar denominated loan agreement with Banco de Venezuela for a total amount of U.S.$476 million (Bs. 3,000 million) dated March 2014.
- Two loans entered into in September 2014 for Bs. 4,000 million (equivalent to U.S.$635 million) with Banco de Venezuela.
- A revolving credit facility with Banco de Venezuela for a total amount of Bs. 20,000 million (equivalent to U.S.$126 million) dated February 2016.

***Banco de Desarrollo Económico y Social de Venezuela (BANDES)***

- A loan agreement with Banco de Desarrollo Económico y Social de Venezuela (BANDES) for a total amount of U.S.$30 million dated December 2015.

***Banco Bicentenario Banco Universal Commercial Loan Agreement***

- A Bolívar denominated loan agreement with Banco Bicentenario Banco Universal, C.A. for Bs. 500 million (equivalent to U.S.$79 million) dated November 2013.
- A Bolívar denominated loan agreement with Banco Bicentenario Banco Universal, C.A. for Bs. 4,000 million (equivalent to U.S.$635 million) dated February 2014.
- A Bolívar denominated loan agreement with Banco Bicentenario Banco Universal, C.A. for Bs. 1,200 million (equivalent to U.S.$190 million) dated August 2014.

**Annex A**

Petróleos de Venezuela, S.A.
Avenida Libertador
Edificios Petróleos de Venezuela, Torre Este
La Campiña
Caracas 1050, Venezuela

PDVSA Petróleo, S.A.
Avenida Libertador
Edificios Petróleos de Venezuela, Torre Este
La Campiña
Caracas 1050, Venezuela

Credit Suisse Securities (USA) LLC
Eleven Madison Avenue
New York, New York 10010-3629

MUFG Union Bank, N.A.
350 California Street, 11th Floor
San Francisco, CA 94104

Law Debenture Trust Company of New York
400 Madison Avenue
New York, NY 10017

GLAS Americas LLC
230 Park Avenue – Suite 1000
New York, NY 10169