# Exhibit 3 to the Xu Declaration

| From: | Francisco Rodriguez [franciscorodriguez@torinocap.com] |
|---|---|
| Sent: | 9/28/2016 8:41:20 AM |
| To: | Undisclosed recipients: |
| Subject: | National Assembly Resolution on Debt Swap |

Good morning,

Yesterday evening Venezuela's National Assembly approved a resolution rejecting the PDVSA bond swap operation. Bloomberg reports that opposition whip Julio Borges stated that the swap offer would not be valid in an event of political transition. Despite these facts, I think that a repudiation by a future MUD government of the new bonds is unlikely. Here's why:

1. The resolution actually approved by the National Assembly does not state that the operation is illegal nor does it criticize it on legal grounds. The resolution contains four points: (i) it summons to PDVSA President Eulogio Del Pino to explain the bond swap offer (ii) it issues a "categorical rejection" of the use of Citgo Holding stock as collateral for the operation (iii) it asks the attorney general to investigate whether the operation risks harm to the state's patrimony (iv) Asks PDVSA to present a plan for reprofiling its debt and recovering the oil industry. The resolution <u>does not claim that the deal required National Assembly approval</u>. The closest that it comes to criticizing it on legal grounds is point (iii), but even then it is simply asking the (government-controlled) Attorney General to investigate, and even if it was shown that the operation was detrimental to the nation, this would involve legal responsibilities for those who approved the operation but would not necessarily nullify it.
2. <u>The resolution is non-binding</u> and is simply a way that the Assembly has of saying "we disagree with this operation." An Assembly resolution has no legal binding force. This is important because in other instances, such as the Mining Arc concessions, the National Assembly approved a law intended to stop the operations. In the Mining Arc case, the law was subsequently ruled unconstitutional by the Supreme Court, but this leaves open questions about the legality of the whole operation arising from the validity of Supreme Court decisions in this period of confrontation between branches of government. But in the swap case, the Assembly has stopped short of that action, and simply decided to issue a non-binding resolution.
3. <u>The operation is clearly legal in terms of Venezuelan law</u>. Public credit operations are normed by the Organic Law of Financial Administration of the Public Sector. Although the law requires National Assembly approval for bond issuances and forbids the use of state assets as collateral (Article 105), it also expressly exempts PDVSA from those requirements (Article 101). We discussed this with several Venezuelan lawyers and they all agreed that the operation was clearly within the bounds of Venezuelan law.
4. We spoke to several opposition leaders yesterday. Most, including the most senior members, agreed that the operation was legal and did not require National Assembly authorization. Some claimed that it did, particularly in the case of using CITGO collateral. But those that had looked at the legal aspect in some detail agreed with our view. That, I believe, is the reason why the resolution in the end did not claim that Assembly approval was required.
5. I am trying to verify Borges's comment. At least one other legislator told me that that comment was misattributed and came from a more junior member of Congress. In any case, there is a strong distinction between a politician saying that something won't be recognized and the Assembly taking some action in that direction which, as I argue, was not the case.
6. Regardless of what action they take now, I really have a hard time seeing the opposition repudiating this deal if it comes to power. Some opposition politicians may want to claim that they will do so in order to scare off investors now and make the government's life harder, but I just don't think it makes sense for a new government to risk the loss of CITGO by repudiating this deal. It's one thing to repudiate a mining concession where the firm may have very little recourse outside of local courts; it's quite another to repudiate a contract that is legally binding in the US and to risk losing a key asset as a result. The opposition would have little to gain and much to lose by taking this route once it gets to power.

Best,

CONFIDENTIAL
ASH_00002449

Francisco

**Francisco Rodríguez**
Chief Economist and Managing Director
Torino Capital LLC
777 3rd Avenue  23 floor
New York NY 10017
Work   :  212-339-0021
Mobile :  917-275-2357
www.torinocap.com



*** Scanned by MessageLabs for the Ashmore Group (inbound) ***