UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETRÓLEOS DE VENEZUELA, S.A., PDVSA PETRÓLEO, S.A., and PDV HOLDING, INC.,<br><br>    Plaintiffs and Counterclaim Defendants,<br><br>    - against -<br><br>MUFG UNION BANK, N.A. and GLAS AMERICAS LLC,<br><br>    Defendants and Counterclaim Plaintiffs. | No. 19 Civ. 10023 (KPF) |

**DECLARATION OF SERGIO TRIGO PAZ**

SERGIO TRIGO PAZ declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am employed by BlackRock Investment Management (UK) Ltd. ("BIM," and along with its affiliates, "BlackRock"). BIM is an investment management company incorporated in the United Kingdom and an indirect, wholly owned subsidiary of BlackRock, Inc. The corporate headquarters of BlackRock, Inc. are located in New York, New York. BlackRock does not maintain an office in Venezuela. For the entirety of my employment at BlackRock, I have worked in BlackRock's London office.

2. I have worked at BlackRock since 2012, where I am currently a Managing Director, Head of BlackRock's Emerging Markets Fixed Income.

3. Certain funds and accounts managed by BlackRock are the beneficial owners of Petróleos de Venezuela, S.A. ("PDVSA") Notes due 2020 (the "2020 Notes"). BlackRock funds and accounts have been holders of 2020 Notes since 2016, when they received the Notes in exchange for certain PDVSA bonds due to mature in April 2017 and November

CONFIDENTIAL

2017 (the "2017 Notes"). BlackRock funds and accounts have also purchased additional 2020 Notes on the secondary market since 2016.

4. PDVSA has not made payments on the 2020 Notes since May 2019.

5. The 2020 Notes were issued pursuant to an exchange offer (the "Exchange") first announced on September 16, 2016, pursuant to an Offering Circular of that date (the "Offering Circular"). In broad terms, the Exchange involved the exchange of the 2017 Notes for newly issued 2020 Notes. The 2020 Notes were U.S. dollar-denominated, and were secured by a pledge of 50.1% of the shares in CITGO Holding, Inc. (the "Pledge").

6. Certain funds and accounts managed by BlackRock held 2017 Notes eligible to be tendered in the Exchange.

7. It has been brought to my attention that one of Plaintiffs' experts, David Hinman, has asserted that, at the time of the Exchange, "an institutional investor would have been aware (or at a minimum should have been aware) of the invalidity risk associated with the 2020 Notes" and the "purported pledge of CITGO." Contrary to this assertion, neither I, nor to my knowledge anyone else at BlackRock, believed that the legality of the Notes or the Pledge was subject to any legitimate question under any law, including Venezuelan law.

8. I was also aware from the Offering Circular that Hogan Lovells US LLP had passed on issues of New York law and that Despacho de Abogados Hogan Lovells, S.C. (together with Hogan Lovells US LLP, "Hogan Lovells") had passed on issues of Venezuelan law. I was aware that the Offering Circular did not identify any risk that the Exchange would be deemed invalid under Venezuelan law, although it extensively disclosed other risks. In addition, I was aware that PDVSA, PDVSA Petróleo, S.A., and PDV Holding, Inc. represented in the transaction documents that they had authority to enter into the transactions that made up the

2

CONFIDENTIAL

Exchange, including the issuance of the 2020 Notes and the associated Pledge. I believed that, if Hogan Lovells had identified any legal risks under New York or Venezuelan law with respect to the validity of the Exchange, the PDVSA parties would not have made those representations, and any such legal risks would have been disclosed. Accordingly, BlackRock reasonably relied on those representations and the absence of any disclosure in the Offering Circular of any risks relating to the validity of the 2020 Notes or the Pledge in deciding to invest in the 2020 Notes.

9.  I was aware, at the time of the Exchange (and at the time that certain BlackRock funds and accounts made secondary purchases of Notes), that the 2020 Notes and the Pledge were to be governed by New York law, as stated in PDVSA's Offering Circular and the other governing agreements. The selection of New York law in the bond indenture and pledge and security agreement was an important factor in BlackRock's decision to participate in the Exchange. We believed the choice of New York law would insulate us from the risk that the Venezuelan government would use local law to the detriment of noteholders.

10. Certain BlackRock funds and accounts that I manage participated in the Exchange, which closed on October 28, 2016.

11. Neither I nor, to my knowledge, anyone at the BlackRock funds and accounts that I manage believed at the time of the Exchange, or after, that the transactions violated any provision of Venezuelan law. Nor did we believe that there was any risk that the Notes or the Pledge were invalid.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: Verbier, Switzerland
       June 9, 2020

                                                _____
                                                     Sergio Trigo Paz

CONFIDENTIAL                             4