# Exhibit 6 to the Moreyra Declaration

**Hogan Lovells**

Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
T +1 212 918 3000
F +1 212 918 3100
www.hoganlovells.com

October 28, 2016

To the addressees listed on Annex A
attached hereto

Re:     Petróleos de Venezuela, S.A. Offering

Ladies and Gentlemen:

This firm has acted as New York counsel to Petróleos de Venezuela, S.A., a *sociedad anónima* organized under the laws of the Bolivarian Republic of Venezuela (the "Company") and PDVSA Petróleo, S.A., a *sociedad anónima* organized under the laws of the Bolivarian Republic of Venezuela (the "Guarantor"), in connection with the offering (the "Offer") and issuance of U.S. dollar denominated 8.50% Senior Secured Notes due 2020 (the "Notes") unconditionally and irrevocably guaranteed by the Guarantor (the "Guarantee"), each of the Offer and the Exchange (as defined below) pursuant to, and subject to, the terms and conditions set forth in the Offering Circular dated September 16, 2016 (together with any extensions, supplements or amendments thereto, the "Offering Circular").

This opinion letter is furnished to Credit Suisse Securities (USA) LLC, as financial advisor (the "Financial Advisor") pursuant to the requirements set forth in Section 7 of the Financial Advisor Agreement dated as of September 16, 2016, among the Financial Advisor, the Company and the Guarantor (the "Financial Advisor Agreement"), in connection with the exchange of all outstanding U.S. dollar denominated notes due April 2017 (the "April 2017 Notes") and November 2017 (the "November 2017 Notes" and, together with the April 2017 Notes, the "Existing Notes") for the Notes on the date hereof (the "Exchange").

The Notes are to be issued under an indenture (the "Indenture") dated as of the date hereof among the Company, the Guarantor, MUFG Union Bank, N.A., as Trustee (the "Trustee"), GLAS Americas LLC, as Collateral Agent (the "Collateral Agent"), Law Debenture Trust Company of New York, as registrar, transfer agent and principal paying agent, and Banque Internationale à Luxembourg, société anonyme, as Luxembourg listing agent and paying agent.  The Notes are secured by 50.1% of the shares of capital stock that PDV Holding, Inc., a corporation organized under the laws of the state of Delaware (the "Pledgor") owns in Citgo Holding, Inc. pursuant to the Pledge and Security Agreement dated as of the date hereof among the Pledgor, the Company, the Guarantor, the Trustee and the Collateral Agent (the "Pledge Agreement").

The Company, the Guarantor and the Pledgor are referred hereto as the "Relevant Parties."  The Indenture, the Notes, the Pledge Agreement and the Financial Advisor Agreement are referred hereto as the "Transaction Documents."  Capitalized terms used herein shall have the meanings set forth in the Transaction Documents, unless otherwise defined herein, including in Schedule 1 attached hereto.

For purposes of the opinions, which are set forth in Paragraphs (a) through (q) below (the "Opinions"), and other statements made in this letter, we have examined originals or copies of the

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante  Amsterdam  Baltimore  Beijing  Brussels  Caracas  Colorado Springs  Denver  Dubai  Dusseldorf  Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  Johannesburg  London  Los Angeles  Luxembourg  Madrid  Mexico City  Miami  Milan  Minneapolis  Monterrey  Moscow  Munich  New York  Northern Virginia  Paris  Perth  Philadelphia  Rio de Janeiro  Rome  San Francisco  São Paulo  Shanghai  Silicon Valley  Singapore  Sydney  Tokyo  Ulaanbaatar  Warsaw  Washington DC  Associated offices: Budapest  Jakarta  Jeddah  Riyadh  Zagreb  Business Service Centers: Johannesburg  Louisville.  Legal Service Center: Birmingham.  For more information see www.hoganlovells.com

\\NY - 099762/000098 - 6477680 v16

CONFIDENTIAL

TRU_00010711

To the addressees listed on <u>Annex</u> <u>A</u> attached hereto — 2 — October 28, 2016

documents listed on <u>Schedule 1</u> attached hereto (the "Documents").  We believe the Documents provide an appropriate basis on which to render the Opinions.

As used in this opinion letter: (i) the term "UCC" means the Uniform Commercial Code as in effect on the date hereof in the States of New York and Delaware, as applicable, the term "New York UCC" means the Uniform Commercial Code as in effect on the date hereof in the State of New York and the term "Delaware UCC" means the Uniform Commercial Code as in effect on the date hereof in the State of Delaware, (ii) the terms "certificated security," "debtor," "delivery," "financing statement," "indorsement," "proceeds," "registered organization," "secured party," "securities intermediary," and "security," have the meanings provided in the New York UCC, and (iii) the term "Collateral" means the Pledgor's right, title and interest in and to the securities and proceeds identified in the Pledge Agreement.

In our examination of the Documents, we have assumed the genuineness of all signatures, the legal capacity of all natural persons, the accuracy and completeness of all of the Documents, the authenticity of all originals of the Documents and the conformity to authentic originals of all of the Documents submitted to us as copies (including telecopies).  As to all matters of fact relevant to the Opinions and other statements made herein, we have relied on the representations and statements of fact made in the Documents, we have not independently established the facts so relied on, and we have not made any investigation or inquiry other than our examination of the Documents.  The Opinions are given, and other statements are made, in the context of the foregoing.

For purposes of this opinion letter, we have assumed that (i) each party to the Transaction Documents (except to the extent set forth in Paragraph (l) as to the Pledgor) has all requisite power and authority under all applicable laws, rules, regulations and governing documents to execute, deliver and perform its obligations under the Transaction Documents, and each such party has complied with all legal requirements pertaining to its status as such status relates to its rights to enforce the Transaction Documents against the other parties thereto, (ii) each such party (other than the Pledgor) has duly authorized, and (except to the extent set forth in Paragraphs (c), (d) and (e) below as to the Relevant Parties) has duly executed and delivered, the Transaction Documents to which it is a party, (iii) each party to the Transaction Documents is validly existing and in good standing in all necessary jurisdictions (except to the extent set forth in Paragraph (k) as to the Pledgor), (iv) each of the Transaction Documents constitutes a valid and binding obligation, enforceable against each of the parties thereto in accordance with its terms (except to the extent set forth in Paragraphs (d) and (e) as to the Relevant Parties), (v) there has been no mutual mistake of fact or misunderstanding, or fraud, duress or undue influence, in connection with the negotiation, execution or delivery of the Transaction Documents, and the conduct of all parties to the Transaction Documents has complied with any requirements of good faith, fair dealing and conscionability, (vi) there are and have been no agreements or understandings among the parties, written or oral, and there is and has been no usage of trade or course of prior dealing among the parties (and no act or omission of any party), that would, in any such case, define, supplement or qualify the terms of the Transaction Documents, and legally sufficient consideration has been given and received for the transactions covered by the Transaction Documents and for the obligations of each of the parties thereunder, and (vii) the execution, delivery and performance by each of the Company and the Guarantor of the Transaction Documents to which it is a party has been duly authorized by all necessary action (corporate of otherwise) and do not (a) contravene its *estatutos*

CONFIDENTIAL                                                                                                                           TRU_00010712

To the addressees listed on Annex A attached hereto	- 3 -	October 28, 2016

(certificates or articles of incorporation and bylaws) or other organizational documents, (b) except with respect to the federal law of the United States of America and the law of the State of New York, violate any law, rule or regulation applicable to it, or (c) except as set forth in Paragraph (a) below, result in any conflict with or breach of any agreement or document binding on it of which any addressee hereof has knowledge, has received notice or has reason to know. We have also assumed the validity and constitutionality of each relevant statute, rule, regulation and agency action covered by this opinion letter.

For purposes of the opinions set forth in Paragraphs (a) and (b) below, we have assumed that all orders, judgments, decrees, agreements and contracts would be interpreted in accordance with their plain meaning and that the meaning of terms in such agreements and contracts would be what lawyers generally understand them to mean under New York State Law (as defined below), notwithstanding that such agreements and contracts may be governed by the laws of a different jurisdiction.

For purposes of the opinions set forth in Paragraph (f)(ii) below, we have assumed that (i) the Trustee is a corporation organized and doing business under the laws of the United States or of any state or territory or of the District of Columbia or a corporation or other person permitted and qualified to act as trustee by the U.S. Securities and Exchange Commission (the "SEC"), which (A) is authorized under such laws to exercise corporate trust powers, and (B) is subject to supervision or examination by federal, state, territorial, or District of Columbia authority, and (ii) the Trustee has a combined capital and surplus of a specified minimum amount, and such amount is not less than US$150,000.

For purposes of the opinions expressed in Paragraphs (o), (p) and (q) below, we have made the additional assumption that that the Pledgor is a registered organization "organized solely" under the law of the State of Delaware within the meaning of § 9-102(a)(70) of the UCC. Insofar as it relates to Collateral constituting proceeds, our opinion in Paragraph (p) is subject to the limitations set forth in Section 9-315 of the UCC.  We call your attention to the fact that security interests in certain categories of the Collateral may be subject to perfection by means other than or in addition to the filing of financing statements. We further assume that value has been given within the meaning of § 9-203(b)(1) of the UCC.

For purposes of the opinions expressed in Paragraph (p) below, we have assumed that the Pledged Securities qualify as securities under § 8-102 (a)(15) of the UCC and made the following additional assumptions: (i) that the Collateral Agent is taking and will maintain possession of the certificate(s) representing the Pledged Securities solely in its capacity as secured party under the Pledge Agreement and not as a securities intermediary or in any other capacity; (ii) that the Collateral Agent is taking and will maintain possession of the certificates representing the Pledged Securities in the State of New York; (iii) that the Collateral Agent has acquired its security interest in and has obtained control of the Pledged Securities without notice of any adverse claim thereto; and (iv) that each of the certificates representing the Pledged Securities has been indorsed (to the Collateral Agent or in blank) by an indorsement that is effective under UCC § 8-107(b).

The Opinions are based as to matters of law solely on applicable provisions of the following, as currently in effect: (i) as to the Opinions expressed in Paragraphs (a), (b), (c), (d), (e), (h), (i) and (m)

CONFIDENTIAL	TRU_00010713

below, subject to the exclusions and limitations set forth in this opinion letter, internal New York state law ("New York State Law"); (ii) as to the Opinions expressed in Paragraphs (a) and (b) below, subject to the exclusions and limitations set forth in this opinion letter, federal statutes, rules and regulations ("Applicable Federal Law"); (iii) as to the Opinion expressed in Paragraph (f)(i) below, the U.S. Securities Act of 1933, as amended (the "Securities Act"), and as to the Opinion expressed in Paragraph (f)(ii) below, the U.S. Trust Indenture Act of 1939, as amended ("Trust Indenture Act") and the rules and regulations promulgated thereunder; (iv) as to the opinion expressed in Paragraph (g) below, the U.S. Investment Company Act of 1940, as amended ("Investment Company Act") and the rules and regulations promulgated thereunder; (v) as to the opinion expressed in Paragraph (j) below, the Securities Exchange Act of 1934, as amended (the "Exchange Act") and the rules and regulations promulgated thereunder; (vi) as to the Opinions expressed in Paragraphs (k), (l) and (n) below, subject to the exclusions and limitations set forth in this opinion letter, the Delaware General Corporation Law; and (vii) as to the opinions expressed in Paragraphs (o), (p) and (q), Articles 1, 8 and 9 of the UCC.

References to provisions of the UCC identified based on their section numbers in the Official Text of the Uniform Commercial Code (as promulgated by the American Law Institute and the National Conference of Commissioners on Uniform State Laws) shall be deemed to be references to the corresponding provisions of the Uniform Commercial Code as currently in effect in New York and Delaware, as applicable.

Based upon, subject to and limited by the assumptions, qualifications, exceptions, and limitations set forth in this opinion letter, we are of the opinion that:

(a) The execution, delivery and consummation by the Relevant Parties of any Transaction Document to which it is a party does not, and the making and consummation of the Exchange and the issuance of the Notes will not (i) violate any provision of Applicable Federal Law or any provision of New York State Law, (ii) violate any Company Orders, or (iii) breach or constitute, a default under, or the acceleration of (or entitle any party to accelerate) the maturity of any obligation of the Relevant Parties under, or result in or require the creation of any lien upon or security interest in any property of the Relevant Parties pursuant to, the terms of any Company Contracts (except that we express no opinion with respect to any matters that would require a mathematical calculation or a financial or accounting determination).

(b) No approval or consent of, or registration or filing with, the SEC, any U.S. federal governmental agency or New York State governmental body or regulatory authority is required to be obtained or made by the Relevant Parties under Applicable Federal Law or New York State Law in connection with the execution, delivery and consummation by the Relevant Parties of any Transaction Document to which it is a party, the making and consummation of the Exchange, the issuance of the Notes, or delivery of the Notes, except such approval or consent, or registration or filing as has been obtained, or except as may be required under the securities or blue sky laws of any jurisdiction in the United States in connection with the offer and sale of the Notes.

(c) Assuming that it has been duly executed and delivered by the Company and the Guarantor under Venezuelan law, the Financial Advisor Agreement has been duly executed and delivered by the Company and the Guarantor under New York State Law.

CONFIDENTIAL                                                                                                              TRU_00010714

(d) Assuming that it has been duly executed and delivered by the Company and the Guarantor under Venezuelan law, each of the Indenture and the Pledge Agreement has been duly executed and delivered and is the legal, valid and binding obligation of the Relevant Parties, as applicable, under New York State Law, enforceable against the Relevant Parties in accordance with its terms.

(e) Assuming that the Notes have been duly executed and delivered by the Company under Venezuelan law, the Notes have been duly executed by the Company under New York State Law and, when authenticated in the manner provided for in the Indenture and issued and delivered in accordance with the Offering Circular, the Notes will be the legally valid and binding obligations of the Company and the Guarantor, enforceable against the Company and the Guarantor in accordance with their terms and entitled to the benefits of the Indenture.

(f) (i) Based upon and assuming (A) the truth and accuracy of the representations and warranties of the parties to the Financial Advisor Agreement, (B) compliance by the parties to the Financial Advisor Agreement with their respective covenants and agreements contained therein, and (C) that the issuance, offer and delivery of the Notes will be, in each case, in accordance with the arrangements relating to offers, transfers and deliveries of the Notes contemplated by the Financial Advisor Agreement, the Offering Circular and the Indenture, the Notes are not required to be registered under the Securities Act, it being understood that no opinion is expressed herein as to any reoffer or resale of a Note subsequent to the initial issuance thereof. (ii) The Indenture has been duly qualified under the Trust Indenture Act.

(g) Neither the Company nor the Guarantor is, and immediately following the closing of the Exchange will be, an investment company within the meaning of the Investment Company Act.

(h) The statements in the Offering Circular under the caption "Description of the Notes", insofar as such statements constitute descriptions of United States' legal matters and documents referred to therein, are accurate descriptions in all material respects of the United States' legal matters and documents referred to therein.

(i) Assuming the validity of such action under Venezuelan law, under provisions of New York State Law relating to submission to jurisdiction, each of the Relevant Parties (i) has, pursuant to Section 14 of the Financial Advisor Agreement, Section 10.12 of the Indenture and Section 7.13 of the Pledge Agreement, as the case may be, validly submitted to the jurisdiction of any New York state or United States federal court having subject matter jurisdiction thereof located in New York County, State of New York, in any suit, action or proceeding arising out of or with respect to the Financial Advisor Agreement, the Indenture or the Pledge Agreement, respectively, that is duly brought by any party entitled to bring such suit, action or proceeding under or pursuant to such Transaction Document, (ii) has validly appointed Corporation Service Company ("CSC") as its authorized agent for the purposes described in Section 15 of the Financial Advisor Agreement, Section 10.12 of the Indenture and Section 7.13 of the Pledge Agreement, and (iii) has validly waived any objection to the laying of venue of any such proceeding in any such court based on *forum non conveniens* and service of process effected on CSC in New York in accordance with New York State Law and pursuant to such appointment will be effective under New York State Law to confer valid personal jurisdiction over the Company and the Guarantor in any such action or

To the addressees listed on <u>Annex A</u> attached hereto                                       - 6 -                                       October 28, 2016

proceeding arising under the Financial Advisor Agreement, the Indenture and the Pledge Agreement.

(j) No filings are required to be made with the SEC pursuant to Section 14 of the Exchange Act in connection with the Exchange. The Exchange complies with the requirements of Rule 14e-1 under the Exchange Act, provided that the Exchange is conducted in accordance with the terms and conditions set forth in the Offering Circular.

(k) The Pledgor is validly existing as a corporation and in good standing as of the date of the Good Standing Certificate under the laws of the State of Delaware.

(l) The Pledgor has the corporate power to execute, deliver and perform the Pledge Agreement. The execution, delivery and performance by the Pledgor of the Pledge Agreement have been duly authorized by all necessary corporate action of the Company.

(m) The Pledge Agreement has been duly executed and delivered by the Pledgor.

(n) The execution and delivery by the Pledgor of the Pledge Agreement do not violate the Pledgor Charter or Pledgor Bylaws.

(o) The Pledge Agreement is effective to create in favor of the Collateral Agent a security interest in the Collateral.

(p) Insofar as the Pledged Securities qualify as securities under § 8-102(a)(15) of the UCC, such security interest has been perfected by indorsement and delivery to the Collateral Agent of the certificate(s) representing the Pledged Securities.

(q) By virtue of the filing of the Financing Statement with the Registered Organization Filing Office, the security interest created by the Pledge Agreement in the Article 9 Collateral, if any, owned by the Pledgor constitutes a perfected security interest in such portion of such Article 9 Collateral in which a security interest may be perfected by filing a financing statement under Article 9 of the Delaware UCC.

To the extent that the Company is now an agency or instrumentality of a foreign state that is entitled to immunity from jurisdiction of any court or from legal process with respect to itself or its property, any waiver by the Company of such immunity is subject to the limitations imposed by the United States Foreign Sovereign Immunities Act of 1976. We express no opinion as to the enforceability of any such waiver at a time in the future when the Company that is not now such an agency or instrumentality shall become one.

In addition to the assumptions, qualifications, exceptions and limitations elsewhere set forth in this opinion letter, the opinions expressed in Paragraphs (d) and (e) above are subject to the qualification that certain rights, remedies, waivers and other provisions of the Transaction Documents may not be enforceable in accordance with their terms, but, subject to the assumptions, qualifications, exceptions, and limitations set forth elsewhere in this opinion letter, such unenforceability would not render the Transaction Documents invalid as a whole or preclude (i) the judicial enforcement in accordance with applicable law of the obligations of the Company to pay the

CONFIDENTIAL                                                                                                                                                      TRU_00010716

principal of the Note and interest thereon at the rate or rates (but not including any increase in rate after default) set forth therein, (ii) the acceleration by the Trustee of the Company's obligation to pay such principal, together with such interest, after a default by the Company (A) in the payment of such principal or interest, or (B) in the performance of any other obligation of the Company in circumstances in which a court will provide a remedy, (iii) the judicial enforcement in accordance with applicable law of the obligations of the Guarantor under the Indenture to pay the principal of the Notes and interest thereon at the rate or rates (but not including any increase in rate after default) set forth in the Indenture after a default by the Company in the payment of such principal or interest at maturity or following acceleration pursuant to clause (ii) above, or (iv) with regard to such security interests granted by the Pledgor under the Pledge Agreement as have been created, perfected and maintained in accordance with Article 9 of the UCC, and assuming that the Trustee and the Collateral Agent will comply with all requirements of applicable procedural and substantive law, the enforcement of such security interests as provided in Article 9 of the UCC and the foreclosure of such liens in accordance with applicable law after a default by the Company in the payment of such principal or interest at maturity or following acceleration pursuant to clause (ii) above.

In addition to the assumptions, qualifications, exceptions and limitations elsewhere set forth in this opinion letter, our opinions expressed above are also subject to the effect of: (i) bankruptcy, insolvency, reorganization, receivership, moratorium and other laws affecting creditors' rights (including, without limitation, the effect of statutory and other law regarding fraudulent conveyances, fraudulent transfers and preferential transfers); and (ii) the exercise of judicial discretion and the application of principles of equity, good faith, fair dealing, reasonableness, conscionability and materiality (regardless of whether the applicable agreements are considered in a proceeding in equity or at law).

Our opinion in Paragraph (b) above is not intended to cover and should not be viewed as covering approvals, consents, registrations and filings required for the conduct of the Relevant Parties' business generally (i.e., that would be required in the course of its business in the absence of entering into the Transaction Documents).

Our opinion in Paragraph (i) above is subject to the qualification that we note that at least one court[1] has observed *in dicta* that the effectiveness of a contractual choice of internal New York law (which is the law stated to be the governing law of the Transaction Documents) may be subject to certain constitutional limitations where the parties and the transaction have little or no contact with New York.

In addition to the assumptions, qualifications, exceptions and limitations elsewhere set forth in this opinion letter, we note that (i) a court may decide not to enforce a contractual forum selection clause where to do so would be unreasonable or unjust, in contravention of public policy, or invalid due to fraud or overreaching, or where it is shown that a trial in the selected forum would be so gravely difficult and inconvenient that the challenging party would, for all practical purposes, be deprived of its day in court, and (ii) U.S. federal courts have discretion to transfer venue of an action or proceeding from one federal court to another pursuant to 28 U.S.C. Section 1404(a), or to dismiss

---

[1] *Lehman Brothers Commercial Corporation v. Minmetals International Non-Ferrous Metals Trading Company et al.*, 179 F. Supp. 2d 118 (S.D.N.Y. Aug. 10, 2000), order unsealed (Nov. 13, 2000).

CONFIDENTIAL                                                                                        TRU_00010717

To the addressees listed on <u>Annex A</u> attached hereto   - 8 -   October 28, 2016

actions or proceedings on the grounds that the federal court in which such action or proceeding is brought is an inconvenient forum for such an action or proceeding. We also express no opinion as to the subject matter jurisdiction of a U.S. federal court to adjudicate any controversy related to the Transaction Documents. Our opinions in Paragraph (i) above are subject to the foregoing.

We express no opinion in this letter as to any other statutes, rules and regulations not specifically identified above as being covered hereby (and in particular, we express no opinion as to any effect that such other statutes, rules and regulations may have on the opinions expressed herein).

We express no opinion in this letter as to federal or state securities laws or regulations (except to the extent stated in Paragraphs (f), (g) and (j)), antitrust, unfair competition, banking, or tax laws or regulations, or statutes, rules or regulations of any political subdivision below the state level. The opinions set forth in Paragraphs (a), (b), (c), (d), (e), (h), (i) and (m) are based upon a review of only those statutes, rules and regulations (not otherwise excluded in this letter) that, in our experience, are generally recognized as applicable to transactions of the type contemplated in the Transaction Documents. Insofar as they concern perfection of security interests under the New York UCC or the Delaware UCC our opinions set forth in Paragraphs (o) and (p) are based solely on review of the texts of pertinent provisions of the Delaware UCC, as published in the West's Delaware Code Annotated, 2016 edition, Thomson West.

Nothing herein shall be construed to cause us to be considered "experts" within the meaning of Section 11 of the Securities Act.

We assume no obligation to advise you of any changes in the foregoing subsequent to the delivery of this opinion letter. This opinion letter has been prepared solely for your use in connection with the transactions contemplated under the Financial Advisor Agreement on the date hereof, and should not be quoted in whole or in part or otherwise be referred to, and should not be filed with or furnished to any governmental agency or other person or entity, without the prior written consent of this firm.

Very truly yours,

*Hogan Lovells US LLP*
HOGAN LOVELLS US LLP

\\NY - 099762/000098 - 6477680 v16

CONFIDENTIAL

TRU_00010718

**Schedule 1**

(a) Executed copy of the Indenture.

(b) Executed copy of the Financial Advisor Agreement.

(c) Executed copies of the global notes representing the Notes.

(d) Executed copy of the Pledge Agreement.

(e) The Offering Circular.

(f) The Supplement to Offering Circular, dated September 26, 2016.

(g) The Certificate of Incorporation of the Pledgor, as certified by the Secretary of State of the State of Delaware on October 10, 2016 and as certified by the Secretary of the Pledgor on the date hereof as being true, complete and in full force and effect.

(h) Copy of the by-laws of the Pledgor, as certified by the Secretary of the Pledgor on the date hereof as being true, complete and in effect.

(i) A certificate of good standing of the Pledgor issued by the Secretary of State of the State of Delaware dated October 13, 2016 (the "Good Standing Certificate").

(j) Copies of the resolutions of the Board of Directors of the Pledgor adopted by unanimous written consent dated September 15, 2016 and October 25, 2016, as certified by the Secretary of the Pledgor on the date hereof as being true, correct and complete.

(k) Copy of the certificate of the Secretary of the Pledgor dated the date hereof, certifying, among other things: (i) that the resolutions of the Board of Directors of the Pledgor dated September 15, 2016 and October 25, 2016 have not been further amended or modified and are in full force and effect, and (ii) the names and true signatures of the officers of each of the Pledgor authorized to sign the Pledge Agreement.

(l) Copy of the certificate of the Secretary of the Company dated the date hereof, certifying, among other things, that: (i) the Articles of Incorporation and By-Laws of the Company, as in effect on the date hereof, which have been filed before the *Registro Mercantil Primero del Distrito Capital y Estado Miranda* (Public Registry of Commerce) of Venezuela, have not been further amended, supplemented or otherwise modified, and (ii) the resolutions of the Board of Directors of the Company dated September 7, 2016 and September 21, 2016 and the Shareholders Meeting Minutes of the Company dated September 8, 2016 and September 21, 2016, have not been further amended or modified and are in full force and effect.

IINY - 099762/000098 - 6477680 v16

CONFIDENTIAL

TRU_00010719

y

(m) Copies of the resolutions of the Board of Directors of the Company dated September 7, 2016 and September 21, 2016, as certified by the Secretary of the Company on the date hereof as being true, correct and complete.

(n) Copies of the resolutions of the Shareholders of the Company dated September 8, 2016 and September 21, 2016, as certified by the Secretary of the Company on the date hereof as being true, correct and complete.

(o) Copy of the certificate of the Secretary of the Guarantor dated the date hereof, certifying, among other things, that: (i) the Articles of Incorporation and By-Laws of the Guarantor, as in effect on the date hereof, which have been filed before the *Registro Mercantil Primero del Distrito Capital y Estado Miranda* (Public Registry of Commerce) of Venezuela, have not been amended, supplemented or otherwise modified, and (ii) the resolutions of the Board of Directors of the Guarantor dated September 7, 2016 and September 21, 2016, have not been further amended or modified and are in full force and effect.

(p) Copies of the resolutions of the Board of Directors of the Guarantor dated September 7, 2016 and September 21, 2016, as certified by the Secretary of the Guarantor on the date hereof as being true, correct and complete.

(q) Copies of the Incumbency Certificates of each of the Secretary of the Company and the Guarantor certifying the names and true signatures of the duly elected or appointed, qualified and acting officers, directors or agents of each of the Company and Guarantor authorized to sign the Transaction Documents to which the Company and the Guarantor, as applicable, is a party.

(r) A time-stamped copy of the UCC-1 financing statement (the "Financing Statement"), naming the Company as debtor and the Collateral Agent as secured party and filed in the UCC records of the Secretary of State of the State of Delaware (the "Registered Organization Filing Office").

(s) Citgo Holding, Inc.'s stock certificates numbers 6, 7, 8, 9 and 10, each dated September 27, 2016, identifying the Pledgor as registered owner, representing in the aggregate 501 shares of common stock (the "Pledged Securities"), as indorsed in blank by an indorsement in the name of the Pledgor.

(t) Form T-3 filed before the SEC on September 16, 2016, together with all its exhibits, and the filing receipt therefor.

(u) Amendment No. 1 to Form T-3 filed before the SEC on September 26, 2016, together with all its exhibits, and the filing receipt therefor.

(v) The following court or administrative orders, judgments, and decrees naming the Pledgor (the "Company Orders"):

\\NY - 099762/000098 - 6477680 v16

CONFIDENTIAL                                                                                                                                     TRU_00010720

No items in these categories have been provided to us and identified as items which we should review in connection with rendering this opinion. We have been authorized to provide you with a copy of the Pledgor's officer's certificate to the effect that there are no court or administrative orders, judgments, or decrees that name the Pledgor.

(w) Copies of the following agreements and contracts of the Company (the "Company Contracts"):

**2026 Notes**

Indenture dated as of November 15, 2013, among Petróleos de Venezuela, S.A., as issuer, PDVSA Petróleo, S.A., as guarantor, Law Debenture Trust Company of New York, as trustee, Citibank, N.A., as registrar, transfer agent and principal paying agent, and Banque Internationale à Luxembourg, société anonyme, as Luxembourg listing agent and paying agent.

**2035 Notes**

Indenture dated as of May 17, 2012, among Petróleos de Venezuela, S.A., as issuer, PDVSA Petróleo, S.A., as guarantor, Wilmington Trust Company, as trustee, Citibank, N.A., as registrar, transfer agent and principal paying agent, and Banque Internationale á Luxembourg, société anonyme, as Luxembourg listing agent and paying agent.

**2022 Notes**

Indenture dated as of February 17, 2011, among Petróleos de Venezuela, S.A., as issuer, PDVSA Petróleo, S.A., as guarantor, Wilmington Trust Company, as trustee, Citibank, N.A., as registrar, transfer agent and principal paying agent, and Dexia Banque Internationale à Luxembourg, société anonyme, as Luxembourg listing agent and paying agent.

**2021 Notes**

Indenture dated as of November 17, 2011, among Petróleos de Venezuela, S.A., as issuer, PDVSA Petróleo, S.A., as guarantor, Wilmington Trust Company, as trustee, Citibank, N.A., as registrar, transfer agent and principal paying agent, and Dexia Banque Internationale à Luxembourg, société anonyme, as Luxembourg listing agent and paying agent.

**2017 Notes**

Indenture dated as of October 29, 2010, among Petróleos de Venezuela, S.A., as issuer, PDVSA Petróleo, S.A., as guarantor, Wilmington Trust Company, as trustee, Citibank, N.A., as registrar, transfer agent and principal paying agent, and Dexia Banque Internationale à Luxembourg, société anonyme, as Luxembourg listing agent and paying agent.

\\NY - 099762/000098 - 6477680 v16

CONFIDENTIAL                                                                                                                                  TRU_00010721

Supplemental Indenture dated as of January 18, 2011 among Petróleos de Venezuela, S.A., as issuer, PDVSA Petróleo, S.A., as guarantor, Wilmington Trust Company, as trustee, Citibank, N.A., as registrar, transfer agent and principal paying agent, and Dexia Banque Internationale à Luxembourg, société anonyme, as Luxembourg listing agent and paying agent.

**2017, 2027 and 2037 Notes**

Indenture dated as of April 12, 2007, among Petróleos de Venezuela, S.A., as issuer, PDVSA Petróleo, S.A., as guarantor, and The Bank of New York, as trustee.

<u>**Annex A**</u>

Petróleos de Venezuela, S.A.
Avenida Libertador
Edificios Petróleos de Venezuela, Torre Este
La Campiña
Caracas 1050, Venezuela

PDVSA Petróleo, S.A.
Avenida Libertador
Edificios Petróleos de Venezuela, Torre Este
La Campiña
Caracas 1050, Venezuela

Credit Suisse Securities (USA) LLC
Eleven Madison Avenue
New York, New York 10010-3629

MUFG Union Bank, N.A.
350 California Street, 11th Floor
San Francisco, CA 94104

Law Debenture Trust Company of New York
400 Madison Avenue
New York, NY 10017

GLAS Americas LLC
230 Park Avenue – Suite 1000
New York, NY 10169

\\NY - 099762/000098 - 6477680 v16

CONFIDENTIAL

TRU_00010723