**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PETRÓLEOS DE VENEZUELA, S.A., PDVSA
PETRÓLEO, S.A., and PDV HOLDING, INC.,

      Plaintiffs and Counterclaim Defendants,

      - against -

MUFG UNION BANK, N.A. and GLAS
AMERICAS LLC,

      Defendants and Counterclaim Plaintiffs

No. 19 Civ. 10023 (KPF)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS AND
COUNTERCLAIM PLAINTIFFS' MOTION TO STRIKE UNAUTHORIZED
SUBMISSION OF CARLOS VECCHIO (ECF NO. 80)**

LATHAM & WATKINS LLP
Christopher J. Clark
Matthew S. Salerno
Sean H. McMahon
885 Third Avenue
New York, NY 10022
Telephone: 212-906-1200
Facsimile:  212-751-4864

*Attorneys for Defendants and
Counterclaim Plaintiffs*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND..................................................2

LEGAL STANDARD ..........................................................................................................7

ARGUMENT ....................................................................................................................8

I.      The Vecchio Letter Violates the Procedural Rules Governing Court Submissions ...........8

II.     Permitting the Republic's Submission in its Current Form Violates the Court's Scheduling Order and Offends Basic Concepts Of Fairness ...........................................10

        A.     The Vecchio Letter Violates the Court's Scheduling Order and Creates Unfair Surprise ...................................................................................................10

        B.     The Vecchio Letter Improperly Attempts to Plug Credibility Issues With Plaintiffs' Foreign Law Expert ...................................................................12

        C.     Allowing the Vecchio Letter Would Introduce Arguments Far Afield from Issues of Venezuelan Law Properly Considered Under Rule 44.1 .....................13

III.    The Republic Cannot Serve as an *Amicus Curiae*, and Leave to Serve as an *Amicus* Should Be Denied ....................................................................................................15

        A.     The Republic Has Not Sought Leave of Court to Participate as an *Amicus*, and Defendants Have Not Consented to Such Participation................................15

        B.     Even if Styled as a Motion Seeking Leave to File an *Amicus* Brief, the Republic's Submission Should Still Be Rejected ..................................17

IV.    The Court Should Strike the Vecchio Letter with Prejudice as to Refiling in a Different Form ...........................................................................................................19

CONCLUSION................................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abu-Jamal v. Horn*,
  2000 WL 1100784 (E.D. Pa. Aug. 7, 2000) ........................................................................17

*Biocon Ltd. v. Abraxis Bioscience, Inc.*,
  2016 WL 5817002 (S.D.N.Y. Sep. 26, 2016)..........................................................................9

*Bitumenes Orinoco, S.A. v. New Brunswick Power Holding Corp.*,
  2007 WL 485617 (S.D.N.Y. Feb. 13, 2007).........................................................................13

*Blatt v. City of N.Y.*,
  2019 WL 1367605 (S.D.N.Y. Mar. 26, 2019) .........................................................................7

*Cantu v. Flanigan*,
  705 F. Supp. 2d 220 (E.D.N.Y. 2010) ....................................................................................7

*Carrascosa v. McGuire*,
  2007 WL 1456205 (D.N.J. May 15, 2007) ............................................................................19

*Chemical Bank v. Affiliated FM Ins. Co.*,
  1994 WL 719681 (S.D.N.Y. Dec. 28, 1994) ..........................................................................9

*Crystallex International Corporation v. Bolivarian Republic of Venezuela*,
  17-mc-00151-LPS (D. Del.) ..........................................................................................10, 15

*Evans v. Syracuse City Sch. Dist.*,
  704 F.2d 44 (2d Cir. 1983)....................................................................................................20

*Flaherty v. Filardi*,
  2009 WL 749570 (S.D.N.Y. Mar. 20, 2009) ........................................................................12

*Fluor Corp. v. United States*,
  35 Fed. Cl. 284 (Ct. Fed. Cl. 1996) ......................................................................................18

*Kelly v. EMI Blackwood Music Inc.*,
  2007 WL 2327059 (S.D.N.Y. Aug. 3, 2007)...........................................................................7

*LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*,
  185 F.3d 61 (2d Cir. 1999).....................................................................................................9

*Lehman XS Tr., Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.*,
  2014 WL 265784 (S.D.N.Y. Jan. 23, 2014) ......................................................................8, 17

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*,
2015 WL 4757601 (S.D.N.Y. Aug. 12, 2015) ......................................................... 7

*Nabulsi v. Nahyan*,
2009 WL 1658017 (S.D. Tex. June 12, 2009) ...................................................... 13

*NML Capital, Ltd. v. Banco Central de la Republica Argentina*,
652 F.3d 172 (S.D.N.Y. 2011) ............................................................................ 19

*NML Capital, Ltd. v. Republic of Argentina*,
2013 WL 491522 (S.D.N.Y. Feb. 8, 2013) ............................................................ 9

*Pacenza v. IBM Corp.*,
363 Fed. Appx. 128 (2d Cir. 2010) ..................................................................... 12

*Picard v. Greiff*,
797 F. Supp. 2d 451 (S.D.N.Y. 2011) ................................................................... 8

*Ruotolo v. City of New York*,
514 F.3d 184 (2d. Cir. 2008) ........................................................................ 19, 20

*Schablonentechnik v. MacDermid Graphic Arts, Inc.*,
2005 WL 5974438 (N.D. Ga. June 21, 2005) ....................................................... 12

*SEC v. Bear, Stearns & Co.*,
2003 WL 22000340 (S.D.N.Y. Aug. 25, 2003) ..................................................... 19

*Silberman v. Innovation Luggage, Inc.*,
2002 WL 31175226 (S.D.N.Y. Sept. 30, 2002) .................................................... 11

*United States v. Ahmed*,
788 F. Supp. 196 (S.D.N.Y. 1992) ...................................................................... 17

*United States v. Gotti*,
755 F. Supp. 1157 (E.D.N.Y. 1991) .................................................................... 16

*United States v. Michigan*,
940 F.2d 143 (6th Cir. 1991) ........................................................................ 18, 19

## STATUTES

28 U.S.C. § 1746 ................................................................................... 2, 8, 9

Foreign Sovereign Immunities Act of 1976 ................................................... 19

**RULES**

Fed. R. App. Proc.

    29...............................................................................................................16
    29(a)........................................................................................................16
    29(b)........................................................................................................16

Fed. R. Civ. P.

    7..................................................................................................................9
    11.........................................................................................................2, 8, 9
    11(a)............................................................................................................8
    44.1.................................................................................................... *passim*

**TREATISES**

16AA C. Wright & A. Miller, Federal Practice and Procedure § 3975 (2008) .............................18

The Trustee and Collateral Agent respectfully submit this memorandum of law and accompanying declaration of Christopher J. Clark ("Clark Decl.") in support of their motion to strike the unauthorized June 9, 2020 Letter to Judge Katherine Polk Failla from Ambassador Carlos Vecchio, ECF No. 80 (the "Vecchio Letter").[1]

### PRELIMINARY STATEMENT

On June 9, 2020, one day before the parties' motions for summary judgement were scheduled to be filed, the Bolivarian Republic of Venezuela, led by the Guaidó administration (the "Republic"), filed an 11-page unsworn and unsolicited letter from its U.S. Ambassador, Mr. Carlos Vecchio, purporting to opine on matters of fact, law, and policy. The Vecchio Letter was submitted without leave or notice, and fails to adhere to the basic procedural rules governing submissions to this Court. The Republic, which is the sole direct and indirect shareholder of Plaintiffs, offers no justification for why it waited eight months to make its submission—akin to an *amicus* brief—or why its letter should be accepted by this Court.

The Republic's submission is just the latest example of the sovereign rewriting its own history and law in order to paper over the material defects in Plaintiffs' *ad hoc* legal theories. In this instance, the Republic's letter appears intended to fix significant credibility issues and problematic assertions in the opinions proffered by Plaintiffs' Venezuelan law expert. But the Republic, a non-party, cannot fix those defects, whether through an improper submission to the Court or otherwise. Indeed, as the Republic's own Special Attorney General and counsel to Plaintiffs, Dr. José Ignacio Hernández, has recently conceded with respect to this litigation: "Nobody knows the walls of [our] judicial defense better than I do. As the designer I tell you

---

[1]       Capitalized terms used but not defined herein shall be ascribed the definitions given to them in Defendants and Counterclaim Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment, ECF No. 135.

that these walls are weak and fractured and will collapse."  *See* Clark Decl. Ex. 1.  The Republic should not be afforded yet another opportunity to muddy the record in order to bolster the "weak and fractured" walls of Plaintiffs' arguments.  The Vecchio Letter, and references thereto, should be stricken from the record for several reasons.

*First*, the Vecchio Letter was submitted with no regard for the basic procedural requirements governing all submissions to this Court , including the signature requirements of Federal Rule of Civil Procedure ("Rule") 11 and the certification requirements of 28 U.S.C. § 1746.

*Second*, the submission violates the Court's scheduling order and general principles of fairness.  Permitting the Vecchio Letter to stand would allow the Republic to make an end-run around the Court's case and discovery schedule and afford Plaintiffs a manifestly unfair opportunity to correct the late-discovered problems in their prior expert submissions.

*Third*, to the extent the Republic seeks to recharacterize its submission as a request for leave to file the Vecchio Letter as a brief *amicus curiae*, leave should be denied.  The Republic has a direct financial stake in the outcome of this case, and it is a friend of Plaintiffs, not the Court.  The Vecchio Letter meets none of the substantive requirements for a valid *amicus* brief.

For the above reasons, and as set out more fully below, Defendants respectfully request that the Vecchio Letter, and all references thereto, be stricken from the record.

### RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

Since the initiation of this litigation on October 29, 2019, the Republic has played a significant and consistent role in directing Plaintiffs' litigation strategy.  Plaintiffs commenced this litigation at the direction of PDVSA's *ad hoc* board of directors, appointed by the administration of the Republic's Interim President, Juan Guaidó.  They have requested (or

argued against) scheduling modifications based on the Republic's wishes.[2]  They have conceded

that the Office of the Special Attorney General serves as "co-counsel" to Plaintiffs on this

matter.[3]  And Dr. Hernández has advocated for, and proclaimed himself to be the architect of,

Plaintiffs' litigation "strategy,"[4] before more recently admitting the strategy is destined to fail.

*See* Clark Decl. Ex. 1.  Notwithstanding the Republic's interest and involvement in this case, it

has not formally intervened.

>        At Plaintiffs' request, the parties agreed to—and the Court ordered—an expedited

case and discovery schedule for the adjudication of this matter (the "Scheduling Order"), which

contemplated a set period for conducting expert discovery and the exchange of expert reports.

*See* Nov. 15, 2019 Letter of J. Bliss to the Court, ECF No. 29.  The parties agreed to a process

for how and when respective experts would be disclosed, along with other related disclosures

pertaining to each expert (including rates and fees).  *See* Clark Decl. Ex. 2.  The Republic was

well aware of both the expedited case schedule and the parties' engagement of Venezuelan legal

experts, as demonstrated by troubling public tweets published by Dr. Hernández between

---

[2]        *See, e.g.*, Clark Decl. Ex. 3, Feb. 6 Hr'g Tr. at 27:9-24 ("[MR. WORTHINGTON:] [T]he status of this litigation . . . is a matter of political concern in Venezuela. . . .  And the longer this case remains there is a political cost to the Guaidó administration.  The ongoing, continued uncertainty in this litigation is costly to the Guaidó administration. . . ."); June 3, 2020 Letter of J. Bliss to the Court, ECF No. 76 (seeking modification of the case schedule, noting "[Special Attorney General of the Republic] Dr. Hernández has been forced to abruptly and unexpectedly turn his attention away from plaintiffs' summary judgment filings.").

[3]        *See, e.g.*, Clark Decl. Ex. 3, Feb. 6 Hr'g Tr. at 51:4-9 ("[MR. WORTHINGTON:] Dr. Hernández is appointed under Venezuelan law to represent the government – the Guaidó administration, including the state-owned instrumentalities such as PDVSA and PDVSA Petróleo."); *id.* at 55:19-21 ("[COURT:] Dr. Hernández is, I am told, effectively outside counsel to your client PDVSA.  Correct?  MR. BLISS:  That's correct, your Honor."); *id.* at 61:11-13 ("THE COURT:  [Dr. Hernández presents] [s]ome strange counsel relationship, almost your co-counsel.  MR. BLISS: I think that's a fair way to describe it.").

[4]        *See, e.g.*, April 15, 2019 Letter from L. Pacheco to J. Guaidó,  ECF No. 122-16 ¶ 29 ("The fifth and last strategy consists in questioning the legality of the 2020 Bond Issue."); May 28, 2020 Letter of J. Hernández, Clark Decl. Ex. 4 ¶¶ 4-5 ("This Office was in charge of designing the plan that allowed the [Republic] to take control of Citgo . . . . In addition, this Office led the legal strategy aimed at defending that company from both Maduro's regime and the creditors . . . .").

January 16 and January 20, 2020 regarding those same experts.  *See* Jan. 31, 2020 Letter of C. Clark to the Court, ECF No. 46.

At no point during negotiation of the case schedule or its several extensions did Plaintiffs or the Republic alert Defendants or the Court that the Republic desired to make its own submission to the Court regarding the Republic's "views" on Venezuelan law.  Instead, for over eight months, the Republic stayed silent.  In doing so, the Republic avoided triggering any discovery obligations that could potentially arise related to making such a submission, as well as the entire process set by the Court for addressing matters of foreign law—namely, the exchange of expert reports and rebuttal reports from disclosed foreign law experts.

During the exchange of the parties' expert reports and rebuttal reports, it became apparent that Plaintiffs' expert on Venezuelan law, Professor Allan Randolph Brewer-Carías, advanced several problematic opinions in his expert report, including opinions diametrically opposed to his prior published works, which support Defendants' arguments.  *See, e.g.*, Decl. of Defs.' Venezuelan Law Expert, ECF No. 128 ¶¶ 24-27, 40, 41, 48, 63-72.  Specifically, prior to his engagement in this litigation, Professor Brewer asserted in no less than five publications that Venezuelan law established a binding interpretation limiting classification of contracts of national public interest to those *to which the Republic is a party*.  *See id.* ¶¶ 24-25.  In unequivocal terms, Professor Brewer repeatedly opined, "[t]he Constitutional Chamber of the Supreme Tribunal of Justice, as the highest and last interpreter of the Constitution . . . established a *binding interpretation*, and reduced the category of 'public interest contracts' (art. 150 C.) to those signed or concluded by the Republic, the States, and the Municipalities, *thus, excluding from such a classification those contracts concluded by autonomous institutes or national public enterprises such as PDVSA*."  *Id.* ¶ 24 (emphasis added).

4

Plaintiffs have since euphemistically characterized these prior conclusions as an "inadvertency" and attributed them to a perpetual reprinting error.  *See* Pls.' Mot. for Summ. J., ECF No. 95 at 36.  Problematically for Plaintiffs (and the Republic), Professor Brewer's contradictory opinions were not stray or errant remarks or typographical errors.  Rather, they were a recurring and common fixture in published works from 2006 through 2019.[5]

Professor Brewer's present opinion in support of the Plaintiffs introduced a series of additional hurdles for the Plaintiffs and, if adopted, would lead to absurd results.  For example, Professor Brewer opined that "*any* contract entered into by an entity within the National Public Administration," such as PDVSA, with a foreign entity "is a national public interest contract" regardless of any other consideration for the nature of the contract.  Decl. of Allan Randolph Brewer-Carías, Ex. B, ECF No. 119-2 ¶ 3(c).  This opinion goes far beyond the position espoused by Plaintiffs, which have repeatedly argued that the contracts at issue are national public interest contracts solely because they included a pledge of PDVSA's shares in CITGO.  *See*, *e.g.*, Pls.' Mot. for Summ. J., ECF No. 95 at 31.  Moreover, because no PDVSA debt transaction has ever received National Assembly approval since PDVSA was formed in 1975, *see* Decl. of Defs' Venezuelan Law Expert, Ex. 2, ECF No. 128-2 ¶¶ 24, 222, Professor Brewer's position would lead to the absurd result that all of PDVSA's debt transactions, and indeed any foreign contract entered into by PDVSA, would be void.  Importantly, Professor Brewer's opinion here contradicts even the published views of the Republic.  *See* Nov. 19, 2019

---

[5]     *See, e.g.*, Decl. of Def's Venezuelan Law Expert, ECF No. 128 ¶¶ 22-28 (discussing Professor Brewer's published works from 2006 through 2019 and quoting Professor Brewer's consistent conclusion from those works, including that the Constitutional Chamber of the Supreme Tribunal's 2002 decision, *Andres Velasquez*, "reduced [the definition of] Contracts of National Interest to only those concluded by the 'Republic,' excluding from the category of Contracts of National Interest those that decentralized entities, such as autonomous institutes and state enterprises, may enter into . . . .").

Press Release of the Republic, Clark Decl. Ex. 5 ("It is also important to remember that the Bond 2020, unlike the rest of PDVSA's financial debt, has as collateral 50.1% of Citgo's shares.  It is precisely for this reason that this Bond is unconstitutional. . . .").

On June 9, 2020, the day before motions for summary judgment were to be exchanged, the Republic submitted the 11-page Vecchio Letter as an enclosure to a three-sentence cover letter from its counsel at the law firm of Munger, Tolles & Olson ("Munger Tolles").  Vecchio Letter, ECF No. 80.  According to the cover letter, the Vecchio Letter purports to "set[] forth the official views of the [Republic]" regarding the merits of this litigation. *Id*.  The Vecchio Letter, in turn, presents legal arguments and proffers other facts and opinions for consideration.  *Id.*  Several opinions set forth within the Vecchio Letter mirror the legal arguments proffered by Professor Brewer.  Others, however, diverge, and instead parrot Plaintiffs' pleadings and summary judgment briefing.  Further still, the Vecchio Letter purports to provide an overview of the "strategic relevance of CITGO in the democratic transition in Venezuela," *see* Vecchio Letter, ECF No. 80 ¶¶ 20-27, and interpret U.S. legal doctrines.  S*ee id.* ¶ 25 ("The act of state doctrine requires a finding that the Indenture, the Pledge, and the 2020 Notes issued thereunder are invalid, illegal, and null and void *ab initio*.").  The Vecchio Letter then suggests that the Court should rule in a manner that will create the "proper conditions" for the "amicable and orderly renegotiation of all the legacy claims against Venezuela."  *Id.* ¶ 27.

On June 10, 2020, Plaintiffs filed their motion for summary judgment, extensively citing the Vecchio Letter as though it were an independent and unbiased submission.  *See, e.g.*, Pls.' Mot. for Summ. J., ECF No. 95 at 28-29.

On June 16, 2020, Defendants sent a letter to counsel for the Republic, informing them of the impropriety of the Vecchio Letter and requesting that it be promptly withdrawn.  *See*

Clark Decl. Ex. 6.  Specifically, Defendants informed counsel for the Republic that the letter, which is both a declaration from Ambassador Vecchio and a quasi-legal brief, "violate[d] the Court's briefing schedule and the rules governing nonparty submissions" and served as an "inappropriate submission by a purported *amicus*." *Id.*

On June 22, 2020, counsel for Defendants and the Republic met and conferred regarding the Vecchio Letter, at which time counsel for the Republic maintained that its submission was proper under Rule 44.1.  Clark Decl. ¶ 8.  The Republic declined to withdraw its letter.  *Id.*  Defendants now respectfully request that the Court strike the Vecchio Letter and any references to the Vecchio Letter in Plaintiffs' submissions.

## LEGAL STANDARD

This Court has the authority to "strike any filed paper which it determines to be abusive or otherwise improper under the circumstances."  *Blatt v. City of N.Y.*, 2019 WL 1367605, at *3 (S.D.N.Y. Mar. 26, 2019) (quoting *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 2015 WL 4757601, at *3 (S.D.N.Y. Aug. 12, 2015)).  All submissions to the Court must comply with the Rules, as well as federal and state law.  *See, e.g., Kelly v. EMI Blackwood Music Inc.*, 2007 WL 2327059, at *3 (S.D.N.Y. Aug. 3, 2007) (dismissing case with prejudice and warning of future monetary sanctions for "all future submissions that do not comply with the Federal Rules of Civil Procedure and the S.D.N.Y. Local Civil Rules").

There is no inherent right to file an *amicus curiae* brief with the Court.  Any entity or individual, other than the U.S. government, seeking to act as *amicus* must therefore first seek permission.  *See Cantu v. Flanigan*, 705 F. Supp. 2d 220, 224 (E.D.N.Y. 2010).  "[T]he decision to grant leave to file a brief *amicus curiae* is in the firm discretion of the court."  *Lehman XS Tr., Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.*, 2014 WL 265784, at *1

(S.D.N.Y. Jan. 23, 2014).  This Court has "broad discretion to grant or deny an appearance as *amicus curiae* in a given case."  *Picard v. Greiff*, 797 F. Supp. 2d 451, 452 (S.D.N.Y. 2011).

**ARGUMENT**

The Court should strike the Vecchio Letter for three independent reasons.  *First*, the Vecchio Letter violates the basic procedural and evidentiary rules governing court submissions, including Rule 11 and 28 U.S.C. § 1746.  *Second*, the Republic's last-minute submission undermines the procedures ordered by this Court for addressing issues of foreign law and violates basic principles of fairness.  *Third*, to the extent the Republic seeks to reframe its submission as a request for leave to file an *amicus* brief, the Vecchio Letter does not meet the substantive requirements for *amicus* filings.  Given the substantive defects in the Vecchio Letter, the Court should strike it with prejudice as to refiling in a different form.

## I.     The Vecchio Letter Violates the Procedural Rules Governing Court Submissions

The Republic's submission fails to adhere to the basic legal requirements governing submissions to the Court, such as Rule 11, addressing submissions not signed by counsel of record, and 28 U.S.C. § 1746, addressing unsworn testimony.  Rule 11(a) provides that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record."  Rule 11 is not merely a technicality: it helps ensure that parties making submissions to the Court are held accountable for the accuracy and propriety of such filings.  *See* Fed. R. Civ. P. 11, 1983 Advisory Committee Notes ("Since its original promulgation, Rule 11 has provided for the striking of pleadings and the imposition of disciplinary sanctions to check abuses in the signing of pleadings.").[6]  While Munger Tolles proffered an unsworn three-sentence cover letter

---

[6]     The advisory committee note to Rule 11 makes clear that the rule's requirements "have always applied to motions *and other papers* as well as pleadings by virtue of incorporation by reference to Rule 7, which governs the form of motions and other papers submitted to the court."  *Chemical Bank v. Affiliated FM Ins. Co.*, 1994 WL 719681,

for the Vecchio Letter, the Vecchio Letter itself, which presents as a legal brief and sets forth a legal analysis of Venezuelan law, is not signed by an attorney of record.  Instead, it is simply signed by Ambassador Vecchio, who is not licensed to practice law within the State of New York and does not claim to be licensed in any other U.S. jurisdiction.

Moreover, the Vecchio Letter seeks to assert purported facts regarding the Republic's history, its governance under the regime of Nicolas Maduro, and the impact of the litigation on its future governance.  *See, e.g.*, Vecchio Letter, ECF No. 80 ¶¶ 1, 3, 5-7. Introduction of such fact evidence through a witness must be done in the form of a declaration. Unsworn declarations such as this must be "subscribed by [the declarant], as true under penalty of perjury, and dated, in substantially the following form . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'"  28 U.S.C. § 1746.  The Second Circuit has held that "a district court should disregard an unsworn letter in ruling on a summary judgment motion," unless it complies with the requirements of Section 1746.  *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999).  The Vecchio Letter simply does not.[7]

These procedural defects are notable because the Republic has complied with such requirements while making similar substantive submissions in other cases.  For instance, on June 17, 2020, Ambassador Vecchio filed a declaration under penalty of perjury in a separate

---

at *9 (S.D.N.Y. Dec. 28, 1994) (emphasis added).  In turn, Rule 7 is explicit that "the signing requirement and sanctions of Rule 11" also apply to motions and other papers.  *Id.*

[7]        As discussed further, below, while this Court may consider materials put before it for the purposes of Rule 44.1, no rules, including Rule 44.1, allow parties, let alone non-parties such as the Republic, to ignore wholesale the legal strictures governing Court filings.  Moreover, "[g]enerally, sworn testimony or affidavits are preferable to support an argument" regarding issues of foreign law.  *NML Capital, Ltd. v. Republic of Argentina*, 2013 WL 491522, at *3 (S.D.N.Y. Feb. 8, 2013).  "Generally," furthermore, expert "affidavits are the minimal formal requirements" for establishing "precisely what the [foreign] law is and how it is interpreted."  *Biocon Ltd. v. Abraxis Bioscience, Inc.*, 2016 WL 5817002, at *3 (S.D.N.Y. Sep. 26, 2016) (citation omitted).

litigation pending in the United States District Court for the District of Delaware.  *See Crystallex International Corporation v. Bolivarian Republic of Venezuela*, 17-mc-00151-LPS (D. Del. June 17, 2020), ECF No. 186.  Neither the Vecchio Letter nor the Republic's counsel presents any justification for why the Republic chose to comply with these basic requirements in other circumstances, but refused to do so here.

## II.   Permitting the Republic's Submission in its Current Form Violates the Court's Scheduling Order and Offends Basic Concepts Of Fairness

The Vecchio Letter is improper and abusive.  *First*, the Vecchio Letter violates the Court's Scheduling Order.  *Second*, the Vecchio Letter is designed to give Plaintiffs a second bite at the apple by effectively supplementing and correcting the credibility issues of Plaintiffs' expert rather than offering the unbiased views of the Republic.  *Third*, while this Court has discretion under Rule 44.1 to examine a wide range of evidence when considering issues of foreign law, the Vecchio Letter introduces facts and opinions far afield from foreign law, and indeed goes so far as to request that this Court make its determination on political, rather than legal, considerations.

### A.   The Vecchio Letter Violates the Court's Scheduling Order and Creates Unfair Surprise

The Republic has offered no justification for its delay in submitting the Vecchio Letter.  As the case schedule has been extended—including at the Republic's request—on several occasions, the Republic had ample time to seek leave to submit its papers at any point over the last eight months.  It chose not to do so, effectively dropping its submission on the Court's and Defendants' doorstep after the close of fact discovery and on the eve of summary judgment.  Plaintiffs stand to benefit significantly from this gamesmanship, and were even able to craft and incorporate arguments relying extensively on the Vecchio Letter in their opening summary judgment briefing.  Meanwhile, with no notice of the Republic's intent to make such a

submission, Defendants were deprived of an opportunity to take discovery of the Republic or

Ambassador Vecchio, seek Ambassador Vecchio's deposition, or otherwise probe the validity

and underlying bases for the arguments presented in the Vecchio Letter in advance of summary

judgment.[8]

While the Republic contends its submission is proper under Rule 44.1, this

contention is misplaced.  Rule 44.1 does not provide a mechanism for the Republic—an

interested third party—to indiscriminately file materials on the public docket whenever and

however it pleases.  Rule 44.1 merely states, in relevant part: "In determining foreign law, the

court may consider any relevant material or source, including testimony, whether or not

submitted by a party or admissible under the Federal Rules of Evidence."  The rule ensures that,

"in determining [issues of foreign] law the court is not limited by material presented by the

parties; *it may engage in its own research and consider any relevant material thus found*."  Fed.

R. Civ. P. 44.1, 1966 Advisory Committee Notes.

Thus, Rule 44.1 contemplates a mechanism for Courts to consider a wide range of

materials in determining issues of foreign law; it is not intended as a procedural loophole for

non-parties to launder patently improper submissions.  *See, e.g.*, *Silberman v. Innovation

Luggage, Inc.*, 2002 WL 31175226, *2 n.1 (S.D.N.Y. Sept. 30, 2002) (rejecting argument that

Rule 44.1 absolves parties from complying with other Court procedures or preempts other Court

obligations).  For this reason, courts have disfavored parties' attempts to use Rule 44.1 to avoid

their disclosure obligations or the discovery protocols set forth by the Court.  *See

Schablonentechnik v. MacDermid Graphic Arts, Inc.*, 2005 WL 5974438, at *4 (N.D. Ga. June

---

[8] During the June 22, 2020 meet and confer between counsel for Defendants and the Republic, the Republic declined
to consent to any discovery associated with the Vecchio Letter.  *See* Clark Decl. ¶ 8.

21, 2005) (rejecting Rule 44.1 submission while stating that "Plaintiff offers no case law or other logical support for the proposition that Rule 44.1 permits the disclosure of experts on foreign law with complete disregard for the scheduling order or expert disclosure rules").  The Vecchio Letter does just that, and should be rejected accordingly.  *See id.* [9]

> **B.    The Vecchio Letter Improperly Attempts to Plug Credibility Issues With Plaintiffs' Foreign Law Expert**

The Republic's delayed submission also prejudices Defendants by effectively providing Plaintiffs an unchallenged sur-reply from a new "expert" to correct significant deficiencies in the opinions of their disclosed expert, Professor Brewer.  As explained further in Defendants' Motion for Summary Judgement, Professor Brewer suffers from severely diminished credibility, having offered legal opinions spanning over a decade that support Defendants' arguments and are diametrically opposed to the opinions offered here.

Apparently dissatisfied with their expert reports, and after realizing all too late Professor Brewer's complete *volte-face* on the key issues of this case, the Vecchio Letter attempts to bolster Professor Brewer's credibility while papering over the significant logical inconsistencies in his legal analyses.  Indeed, the Vecchio Letter disavows Professor Brewer's position that *all* contracts entered into by PDVSA with foreign entities are contracts of national public interest altogether, *see* Vecchio Letter, ECF No. 80 ¶ 11 ("It is not possible to compare the 2020 Notes with ordinary financial debt issued by PDVSA because this was the first time an ownership interest in CITGO was purportedly pledged as collateral"), and advances brand new

---

[9]      In addition to violating the Scheduling Order, the Vecchio Letter also enables Plaintiffs to bypass the Court's page limits for briefing.  See Order re: Ltr. Mot. for Extension of Time, ECF No. 72.  Courts regularly strike submissions intended to evade mandated page limits and the portions of filings that rely upon them.  *See, e.g., Pacenza v. IBM Corp.*, 363 Fed. Appx. 128, 130 (2d Cir. 2010) (affirming order striking portions of summary judgment filing, where "extraneous arguments constituted an attempt by the Plaintiffs to circumvent page-limit requirements placed on legal memoranda submitted to the courts"); *Flaherty v. Filardi*, 2009 WL 749570, at *20 (S.D.N.Y. Mar. 20, 2009) (granting motion to strike declaration and exhibits exceeding Court-imposed page limits).

legal arguments not included in Professor Brewer's report.  *See id.* ¶ 12 ("It is also not possible to compare the 2020 Notes with financial debt transactions of CITGO, because the Indenture and the Pledge were signed by PDVSA and PDVSA Petróleos . . . .").

But putting Professor Brewer's words in Ambassador Vecchio's mouth does nothing to remedy the credibility problems plaguing Professor Brewer's newfound interpretation of foreign law; nor does it erase Professor Brewer's expansive and implausible views on foreign law that are inconvenient for Plaintiffs' case.  The Vecchio Letter should be rejected for this reason.  *See Nabulsi v. Nahyan*, 2009 WL 1658017, at *3 (S.D. Tex. June 12, 2009) (excluding plaintiff's Rule 44.1 submission from purported expert whose "testimony on U.A.E. law essentially echoed the testimony of Defendant's legal expert").  That Ambassador Vecchio also has no apparent expertise in constitutional law, and instead appears to be parroting the arguments proffered by Plaintiffs and their expert (though slightly refined), further militates in favor of rejecting the submission.  *See Bitumenes Orinoco, S.A. v. New Brunswick Power Holding Corp.*, 2007 WL 485617, at *19 n.21 (S.D.N.Y. Feb. 13, 2007) (rejecting expert testimony pursuant to Rule 44.1 where expert "conceded that he is not an expert on this topic" during depositions and "contradicted his reply declaration").

## C.    Allowing the Vecchio Letter Would Introduce Arguments Far Afield from Issues of Venezuelan Law Properly Considered Under Rule 44.1

The Vecchio Letter does not simply provide an analysis of the current state of the laws of Venezuela.  Rather, it introduces purported "facts" and arguments that are wholly improper, even within the context of Rule 44.1.  Indeed, five pages of the Vecchio Letter are dedicated solely to "the strategic relevance of CITGO in the democratic transition in Venezuela." Vecchio Letter, ECF No. 80 ¶¶ 20-27.  In that section, Ambassador Vecchio, who has no apparent expertise in U.S. law, asserts that Venezuela's actions should be "accord[ed] respectful

deference to [the Republic's] official acts . . . under the act of state doctrine."  Vecchio Letter, ECF No. 80 ¶ 25.  The Vecchio Letter further states—without basis—that an adverse ruling from this Court would "severely undermine the United States' foreign policy aimed at restoring democracy in Venezuela and bringing much needed relief to the Venezuelan people."  *Id.* ¶ 26. Along similar lines, the Vecchio Letter troublingly suggests that this Court's decision should create "proper conditions" for an "amicable and orderly renegotiation of all of the legacy claims against Venezuela."  *Id.* ¶ 27.  Such statements have no place within the public record, whether or not couched as material for this Court's consideration under Rule 44.1.  To the extent the Republic sought to submit such "facts" and considerations, it could have done so in a sworn declaration (as it has done in other cases), rather than an unsworn eleventh-hour submission. Having failed to take those steps, however, the Vecchio Letter serves as a unabashed attempt to shoehorn additional facts and law into the record any way it sees fit.

        To allow the Republic to ignore all procedural rules, and further allow Plaintiffs to rely on a submission made in violation of those rules, would condone the Republic's ongoing and systemic interference with this litigation, which started in October 2019 and continues to this day.  Indeed, at every stage of this litigation, the Republic, the Office of the Special Attorney General, and the Guaidó-aligned National Assembly have made whatever statements—and taken whatever legislative and executive steps—they deemed necessary to support Plaintiffs' litigation stance, including successive resolutions prior to and during the pendency of this litigation purporting to (i) nullify controlling Venezuelan case law that corroborates Defendants' legal arguments and (ii) invalidate past debt issuances of PDVSA that are inconsistent with Plaintiffs'

current legal arguments.[10]  Within recent days, in fact, it has come to light that Dr. Hernández, the architect of the Republic's and Plaintiffs' legal strategy, believed Plaintiffs' proffered legal arguments, apparently including those put before the Court, are "weak and fractured and will collapse."[11]  Clark Decl. Ex. 1.  This is, of course, unsurprising, as Dr. Hernández considered this lawsuit the last resort out of several "strategies" to help PDVSA "skip payment of interest" under the 2020 Notes.  *See* April 15, 2019 Letter from L. Pacheco to J. Guaidó, ECF No. 122-16 ¶¶ 21-29.

The entirely foreseeable possibility of such *post hoc* government action—as admitted by Dr. Hernández in his strategic memoranda and now-leaked statements—is a real-time demonstration of why Defendants negotiated for New York law to govern the 2016 Exchange documents to begin with—namely, because they could otherwise be left at the whim of the laws of a government that is ever-so-willing to twist, bend, or break its own well-established rules whenever politically convenient.

## III.   The Republic Cannot Serve as an *Amicus Curiae*, and Leave to Serve as an *Amicus* Should Be Denied

### A.   The Republic Has Not Sought Leave of Court to Participate as an *Amicus*, and Defendants Have Not Consented to Such Participation

While it is clear the Republic intends for the Vecchio Letter to serve as, at least in part, an *amicus* brief, the Republic has no inherent right to serve as an *amicus* in this matter and has failed to comply with any of the procedural requirements to make such a submission.

---

[10]     Certain of the Republic's attempts to influence this litigation are more fully addressed in Defendants' Motion for Summary Judgement.  *See* Defs.' Mot. for Summ. J., ECF No. 99 at 21-22.

[11]     Notably, Dr. Hernández cannot be referring to any "weak" or "fractured" legal arguments advanced in *Crystallex*, since Dr. Hernández served as an expert witness on behalf of Crystallex International Corporation in that case, opining on the "relationship between PDVSA and the Bolivarian Republic of Venezuela under Venezuelan law, and whether PDVSA operates as a separate entity from the Venezuelan Government."  *See Crystallex*, 17-mc-00151-LPS (D. Del. Aug. 14, 2017), Decl. of José Ignacio Hernández, ECF No. 8.

Under Federal Rule of Appellate Procedure 29, which this Court refers to regarding the filing of *amicus* briefs, the Republic must have first sought leave to make an *amicus* filing or obtain the consent of the parties *before* filing its brief.  *See* Fed. R. App. Proc. 29(a) ("Any *amicus curiae* may file a brief only by leave of court or if the brief states that all parties have consented to its filing.").  In seeking such leave, the Republic was required to identify "the movant's interest" and "the reason why an *amicus* brief is desirable."  Fed. R. App. Proc. 29(b).  The Republic has failed to take any such steps.  Rather, the Republic only alerted the Court and Defendants of its intentions when it eschewed all rules and filed its submission on the public docket.  In pursuing this course, the Republic appears to have (by design) circumvented the Court's discretion in order to yet again aid Plaintiffs' litigation prospects.

Rather than explain *why* the Republic should be allowed to make an untimely, substantive submission—*amicus* or otherwise—on the eve of dispositive motion practice, the Republic merely submitted a three-sentence cover letter, through counsel, acknowledging that an *amicus curiae* would be the appropriate form for such a filing.  *See* Vecchio Letter, ECF No. 80, cover letter.  The submission therefore should be rejected outright.  *Cf. United States v. Gotti,* 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991) (rejecting purported *amicus* brief where no consent was obtained and the submission "fail[ed] to state any reason why an *amicus* brief is desirable beyond stating that several constitutional provisions are implicated by the issues raised by the defendants' motion"); *see also Abu-Jamal v. Horn*, 2000 WL 1100784, at *5 (E.D. Pa. Aug. 7, 2000) (denying petitions of *amici* under Fed. R. App. Proc. 29 in part because such submissions were "too long, untimely, and lacking proper foundation").

**B.     Even if Styled as a Motion Seeking Leave to File an *Amicus* Brief, the Republic's Submission Should Still Be Rejected**

"The usual rationale for *amicus curiae* submissions is that they are of aid to the court and offer insights not available from the parties." *Lehman XS*, 2014 WL 265784, at *2. "An *amicus* brief should normally be allowed when a party is not represented competently or is not represented at all, when the *amicus* has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. Otherwise, leave to file an *amicus curiae* brief should be denied." *Id*. at *2 (citation omitted).

None of these conditions is present here. As Plaintiffs' sole direct or indirect shareholder and as the director of Plaintiffs' litigation, the Republic's views and interests are fully represented by Plaintiffs.  Indeed, Plaintiffs have conceded in both their Complaint and subsequent filings that the purpose of this litigation is to protect the Republic's "crown jewel," CITGO.  Plaintiffs are represented by several sets of competent counsel, and have purportedly retained the "the foremost scholar of Venezuelan public law in the world," Pls.' Mot. for Summ. J., ECF No. 95 at 38, to interpret and opine on Venezuela's Constitution.  Where the interests of the potential *amicus* are fully represented, as is the case here, leave to file an *amicus* brief should be denied. *See United States v. Ahmed*, 788 F. Supp. 196, 198 n.1 (S.D.N.Y. 1992) (denying request for leave to appear as *amicus* where "defendant's interests [were] adequately represented by his counsel" and "the additional memorandum of law would not aid this Court's evaluation of defendant's motion").

Along similar lines, courts also consider the "interest[s] of the movants [and] partisanship" when determining whether to accept an *amicus* brief.  *See Fluor Corp. v. United*

17

*States,* 35 Fed. Cl. 284, 285 (Ct. Fed. Cl. 1996).  Here, the Republic's submission "is not a

memorandum *amicus curiae*, one filed as a friend of the Court.  In fact, to coin a Latin phrase, it

is a memorandum *amicus petitor*, one proffered as a friend of the plaintiff(s)."  *Id.* at 422.  The

Republic does not just direct Plaintiffs' conduct within this litigation.  It also has an economic

and political stake in the outcome of the case.  CITGO assets have previously been distributed

via dividend to Venezuela, as its indirect equity owner.  *See Crystallex*, 17-mc-00151-LPS (D.

Del. Jan. 19, 2018), Jan. 19, 2018 Hr'g Tr. 16:25-17:8, ECF No. 49 ("In the past, of course, there

have been all sorts of dividends and that, of course, is a commercial use of the property and, of

course, irrespective of whatever the conditions would be currently, they continued to be a source

of rights to a point over the management and directors change, who is running Citgo and who is

running PDVH, and all of those other instances of ownership.  So they are clearly property that is

being used to run a commercial business in the United States.").  A nonparty with such direct and

overlapping interests should not be permitted to make any submission under the guise of an

*amicus*.  *See United States v. Michigan*, 940 F.2d 143, 164-65 (6th Cir. 1991) (reversing grant of

leave to file *amicus* brief and noting that "[t]he orthodox view of *amicus curiae* was, and is, that

of an impartial friend of the court -- not an adversary party in interest in the litigation"); 16AA C.

Wright & A. Miller, Federal Practice and Procedure § 3975, p. 313 (2008) ("[A]n amicus ought

to add something distinctive to the presentation of the issues, rather than serving as a mere

conduit for the views of one of the parties.").[12]  This is particularly true here, not only because

---

[12]     Courts do accept *amicus* submissions from sovereign nations that, having no direct financial interest in the outcome of a case, present a disinterested interpretation of their own laws to aid the Court in resolving the dispute of the litigating parties.  *Cf. NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 188-89 (S.D.N.Y. 2011) (accepting *amicus* submission from United States presenting statutory interpretation of relevant portions of Foreign Sovereign Immunities Act to assist court in resolving dispute); *Carrascosa v. McGuire*, 2007 WL 1456205, at *5 (D.N.J. May 15, 2007) (accepting amicus submission from Spanish province of Valencia interpreting Spanish Constitution's concept of "fundamental freedom").  Here, however, the Vecchio Letter consists of partisan argument from a financially and politically interested sovereign.  This renders the Vecchio Letter inappropriate as an

Dr. Hernández himself has apparently acknowledged that Plaintiffs' legal positions are "weak and fragile" and on the verge of "collapse," but because the Republic has demonstrated a clear willingness to rewrite the facts and law underlying this litigation in real time.  These facts overwhelmingly weigh in favor of precluding the Republic from reframing the Vecchio Letter as an *amicus* brief.  *See, e.g.*, *SEC v. Bear, Stearns & Co.*, 2003 WL 22000340, at \*6 (S.D.N.Y. Aug. 25, 2003)  (finding that *amici* seeking leave to file brief "are [not] seeking to assist the Court in clarifying the issues as an objective, neutral, dispassionate 'friend of the court'" and that "[c]onferring *amicus* status on such partisan interests is inappropriate").

## IV.    The Court Should Strike the Vecchio Letter with Prejudice as to Refiling in a Different Form

The Court should strike the Vecchio Letter with prejudice to refiling because its defects in substance and credibility cannot be cured.  Moreover, having now seen Defendants' primary legal arguments, allowing the Republic to amend would only serve to benefit the Republic and Plaintiffs and further prejudice Defendants, would require Defendants to spend additional time and resources in responding to yet another belated submission of the Republic, and would potentially further prolong the resolution of this litigation.  *Cf. Ruotolo v. City of New York,* 514 F.3d 184, 192 (2d. Cir. 2008) ("In gauging prejudice, we consider, among other factors, whether an amendment [of pleadings] would 'require the opponent to expend significant additional resources . . . or significantly delay the resolution of the dispute.").  Such prejudice is unwarranted, particularly where the Republic has provided no explanation for deferring its participation in this litigation until the eve of the parties' dispositive motion filing.  *Cf. Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (citation omitted) ("The longer the

---

*amicus* brief.  *See Michigan*, 940 F.2d at 165 ("The position of  classical *amicus* in litigation [is] not to provide a highly partisan account of the facts, but rather to aid the court in resolving doubtful issues of law.").

period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.").[13]

## CONCLUSION

Defendants respectfully request that the Court strike the Vecchio Letter, ECF No. 80, with prejudice as to refiling, and strike any references to the Vecchio Letter within Plaintiffs' filings.  In the alternative, if the Court is inclined to accept a submission from the Republic, Defendants respectfully request that the Court accept the Vecchio Letter in its current form without affording the Republic an opportunity to revise and refile.  Should the Court be inclined to accept the Vecchio Letter in a new form, Defendants respectfully request permission to seek discovery from the Republic and Ambassador Vecchio.

---

[13]     While cases such as *Ruotolo* and *Evans* relate to the amendment of complaints, the principles they establish are equally applicable here: papers with incurable substantive defects that were filed following an unexplained and prejudicial delay, such as the Vecchio Letter, should be stricken with prejudice as to refiling.  *See, e.g., Ruotolo*, 514 F.3d at 191.

Dated: New York, New York
        June 26, 2020

Respectfully submitted,

LATHAM & WATKINS LLP

By:   s/ Christopher J. Clark____
      Christopher J. Clark
      Matthew S. Salerno
      Sean H. McMahon
885 Third Avenue
New York, New York 10022
Telephone: 212-906-1200
Facsimile: 212-751-4864
chris.clark@lw.com
matthew.salerno@lw.com
sean.mcmahon@lw.com

*Attorneys for Defendants and Counterclaim
Plaintiffs MUFG Union Bank, N.A. and
GLAS Americas LLC, in their respective
capacities as Trustee and Collateral Agent,
under the Indenture dated October 27, 2016,
and the Pledge and Security Agreement
dated October 28, 2016, governing
PDVSA's Senior Secured Notes due 2020*