FILED UNDER SEAL

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PETRÓLEOS DE VENEZUELA, S.A., PDVSA
PETRÓLEOS, S.A., and PDV HOLDING, INC.,

        Plaintiffs and Counterclaim Defendants,

        - against -

MUFG UNION BANK N.A. and GLAS
AMERICAS LLC,

Defendants and Counterclaim Plaintiffs.

No. 19 Civ. 10023 (KPF)

**SUPPLEMENTAL DECLARATION OF** ▮▮▮▮▮▮▮▮▮▮

I, ▮▮▮▮▮▮▮▮▮▮, hereby declare as follows:

1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

FILED UNDER SEAL

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████[1]

2.      I have been retained by Latham & Watkins LLP, legal counsel for MUFG Union Bank, N.A. ("MUFG"), in its capacity as Trustee, and GLAS Americas LLC, in its capacity as Collateral Agent ("GLAS," and together with MUFG, the "Defendants") to provide my expert opinion in connection with judicial proceedings between Petróleos de Venezuela, S.A. ("PDVSA"), PDVSA Petróleo, S.A., ("PDVSA Petróleo"), and PDV Holding, Inc. ("PDVH," and together with PDVSA and PDVSA Petróleo, the "PDVSA Parties") and the Defendants. ████████████████████████████

████████████████████████████████████

3.      On March 16, 2020, I submitted an expert report (the "Expert Report") providing my opinions with regard to two questions of Venezuelan law: (i) whether, under Venezuelan law, the Governing Documents are Contracts of National Interest that required the approval of the National Assembly of Venezuela; and (ii) whether, even assuming the Governing Documents were Contracts of National Interest, a Venezuelan court nevertheless would enforce the Governing Documents against PDVSA, PDVSA Petróleo, and PDVH after

---

[1]   *See* ████████████████████ *PDVSA et al* v. *MUFG Union Bank, N.A. et al*, No. 1:19-cv-10023-KPF (S.D.N.Y. June 10, 2020), ECF No. 84 (hereinafter, ██████████

FILED UNDER SEAL

applying the presumption of validity and the principle of legitimate expectations to these agreements.[2]

4.      As explained in my Expert Report, I concluded that the Governing Documents are not Contracts of National Interest requiring National Assembly approval.[3]  I further opined that, even assuming such contracts were considered Contracts of National Interest, a Venezuelan court would still enforce the Governing Documents. I hereby incorporate by reference the contents of my Expert Report as my sworn testimony as if fully rewritten herein.

5.      On May 1, 2020, I submitted a rebuttal report (the "Rebuttal Report") addressing arguments raised by the PDVSA Parties' Venezuelan law expert, Professor Brewer-Carías, who opined that the Governing Documents were, in fact, Contracts of National Interest requiring the approval of the National Assembly and that the Governing Documents were not subject to New York law.[4]  I incorporate by reference the contents of my Rebuttal Expert Report as my sworn testimony as if fully rewritten herein.

6.      On June 10, 2020, I submitted a Declaration (the "Declaration") in which I summarized for the Court's convenience my opinions, as expressed in my Expert Report and Rebuttal Report, and, where noted, responded to arguments first raised by Professor Brewer-Carías in his rebuttal report.[5]

7.      I hereby certify that the statements and opinions made in my Expert Report, Rebuttal Report, and Declaration are truthful and accurately reflect my knowledge at the time

---

[2]   *See generally* ███ Ex. 2.
[3]   *See generally id.*
[4]   *See generally* ███ Ex. 3.
[5]   *See generally* ███

FILED UNDER SEAL

each report was signed, and that my opinions on the issues therein have not changed. If called to testify regarding my opinions, I would testify consistent with those reports and my Declaration.

8.     The information, sources, and data that form the factual predicate for my findings, conclusions, and opinions in my Expert Report and Rebuttal Report include, among other things, the Venezuelan Constitution, Venezuelan statutes, decisions of Venezuelan courts, regulatory filings, scholarly sources, and documents produced in this litigation.

9.     I submit this declaration to opine on new developments in this matter that occurred after the submission of expert reports, including: (i) the filing of a letter from Ambassador Carlos Vecchio to Judge Katherine Polk Failla dated June 9, 2020,[6] and (ii) the Venezuelan law arguments raised by the PDVSA Parties for the first time in their memorandum of law in support of their motion for summary judgement (the "PDVSA Memo").

## I.     THE VECCHIO LETTER IS INCONSISTENT WITH VENEZUELAN LAW AND THE EXPERT REPORTS OF PROFESSOR BREWER-CARÍAS

10.     In his letter dated June 9, 2020, Venezuela's Ambassador, Carlos Vecchio, argues that the Governing Documents are Contracts of National Interest that required National Assembly approval pursuant to Article 150 of the Constitution.[7]

11.     At the outset, I note that the interpretation of Article 150 of the Constitution in the Vecchio Letter cannot override or supersede the interpretation of that provision made

---

[6]     Letter from Ambassador Carlos Vecchio to Hon. Katherine Polk Failla, *PDVSA et al.* v. *MUFG, et al.*, No. 1:19-cv-10023 (S.D.N.Y. June 9, 2020), ECF No. 80 (hereinafter, "Vecchio Letter").

[7]     Vecchio Letter, ¶ 4.

FILED UNDER SEAL

by the Constitutional Chamber of the Supreme Tribunal of Justice (the "Constitutional Chamber") in the *Andrés Velásquez et al.* decision and the other Constitutional Chamber decisions I have cited. The decisions by the Constitutional Chamber on the contents and scope of Article 150 are controlling pursuant to Article 335 of the Constitution.[8]  Moreover, I am not aware of any academic writing by Ambassador Vecchio regarding Article 150 of the Constitution or contracts of national public interest.

12.     In the following sections, I discuss the ways in which the Vecchio Letter is inconsistent with Venezuelan law and the expert reports of Professor Brewer-Carías in this matter.

### A.     THE NATIONAL ASSEMBLY RESOLUTIONS REGARDING JOINT VENTURE AGREEMENTS RELIED UPON IN THE VECCHIO LETTER ARE INAPPOSITE

13.     The Vecchio Letter invokes several Resolutions by the National Assembly approving Joint Venture Agreements by a PDVSA subsidiary as proof that the National Assembly has concluded in the past that contracts entered into by PDVSA and PDVSA Petróleo may be characterized as Contracts of National Interest (the "Joint Venture Resolutions").[9] The Joint Venture Resolutions are inapposite for several reasons.

14.     *First*, these resolutions are entirely distinguishable, as I opined in my Expert Report, because their required approval by the National Assembly was based on a Venezuelan statute, Article 33 of the Organic Hydrocarbons Law, which expressly mandates

---

[8]        ████████ Ex. 3, ¶ 86.
[9]        Vecchio Letter, ¶ 4. *See, e.g.*, Bliss Decl. Exs. 47–48.

FILED UNDER SEAL

that certain hydrocarbon-related contracts be approved by the National Assembly.[10]   As explained in my Expert Report, this hydrocarbons-related statute has nothing to do with the PDVSA Parties' debt contracts.[11]   A true and correct copy of the Organic Hydrocarbons Law in its original Spanish text, along with a certified translation of the relevant portions thereof, are attached as **Exhibit 1**. Professor Brewer-Carías has not opined that this statute applies to PDVSA's debt contracts, or to the Governing Documents. Unlike the Joint Venture Resolutions, no National Assembly approval is required "by law" under Article 150 for any contracts involving the PDVSA Parties' debt.[12]   Rather, the opposite is true, as the Financial Administration Law[13] has long exempted PDVSA's debt from the requirement of National Assembly approval, as explained in my Expert Report.[14] Consistent with this exemption, I am not aware of any decision by any Venezuelan Court, or resolution of the National Assembly prior to this litigation, determining that the PDVSA Parties' debts require National Assembly Approval.

---

[10]  ▮▮▮▮▮ Ex. 2, ¶ 172, n. 262 ("Under Venezuelan law, hydrocarbon reservoirs are owned by the Republic and exploration and exploitation activities are reserved to the Venezuelan state, directly or through State Corporations. In contrast, in the instruments reviewed I did not find language showing that such an approval was requested and/or granted to debt instruments issued by PDVSA.").

[11]  *Id.*; Supp. ▮▮▮▮▮ Ex. 1, at art. 33. Article 33 of the Organic Hydrocarbons Law provides: "The establishment of mixed enterprises and the conditions that will govern the completion of their primary activities will require prior approval from the National Assembly, to which end the National Executive Branch, through the Ministry of Energy and Oil, must report said establishment and conditions, *including the special advantages anticipated in favor of the Republic*, in all pertinent circumstances."

[12]  ▮▮▮▮▮ Ex. 5, at art. 150.

[13]  ▮▮▮▮▮ Ex. 2, ¶¶ 159–165.

[14]  *Id.* ¶¶ 47, 159–165. Professor Brewer-Carías has acknowledged that "PDVSA, as part of the state-owned enterprises of the Oil sector, [is] exempted of the need to be previously authorized by the National Assembly" for the purpose of entering into public credit transactions. *See* Clark Decl. Ex. 13, ¶ 77.

FILED UNDER SEAL

15.    *Second*, although it is true that the Joint Venture Resolutions invoke Article 150 of the Constitution,[15] the Joint Venture Resolutions cannot supersede the binding interpretation of Article 150 of the Constitution made by the Constitutional Chamber in *Andrés Velásquez et al.* and the other cases, because, as explained in my Rebuttal Report, the controlling definition of Contracts of National Interest is the one made by the Constitutional Chamber.[16]

16.    *Third*, the joint venture agreements are inapposite because they created special advantages in favor of the Republic. Among other obligations, PDVSA's counterparty had to agree to (i) deliver directly to the Republic as special advantages, *inter alia*, an additional royalty of three point thirty-three percent (3.33%) on the volumes of hydrocarbons extracted in the Delimited Area and delivered to PDVSA Petróleo, S.A. (Provision N° 6.), and (ii) all the geological, geophysical and any other technical information related to the primary activities carried out within the Delimited Area would become direct property of the Republic (Provision N° 8.). Further, the corporations created pursuant to the Joint Venture Agreements had to include a provision in their Bylaws requiring that they "undertake[] to defend and indemnify the Republic . . . for any action, claim, trial, demand, loss, cost, expense, damage or other liability that could arise or be related to the Operating Agreement or to any of the activities derived from it."[17] A true and correct copy of the September 24, 2009 National Assembly resolution setting forth the model contractual terms for joint ventures in its original Spanish text, and certified translation of the relevant portions thereof, is attached as

---

[15]    *See, e.g.*, Bliss Decl. Exs. 47–48.

[16]    ▮▮▮▮▮ Ex. 3, ¶¶101–02.

[17]    ▮▮▮▮▮▮▮ Ex. 2, at 371.841–843.

FILED UNDER SEAL

**Exhibit 2**. As such, these agreements directly affected the patrimony—*i.e.*, the assets and liabilities—of the Republic and so cannot be compared to the Governing Documents which, as explained in my Expert Report, directly affect only the private assets and liabilities of the PDVSA Parties. [18]

    **B.**    **THE VECCHIO LETTER IS INCONSISTENT WITH THE OPINIONS OF PROFESSOR BREWER-CARÍAS RENDERED BEFORE AND DURING THIS MATTER**

        **1.**    **Unlike Professor Brewer-Carías, Ambassador Vecchio Concludes That the Governing Documents Are Contracts of National Interest On Account of the Pledge**

17.    According to Professor Brewer-Carías, "any contract entered into by an organ or entity within the Public Administration is a public interest contract,"[19] such that "any" contract concluded between PDVSA or PDVSA Petróleo and a corporation not domiciled in Venezuela would require approval by the National Assembly. The Vecchio Letter adopts a different definition of Contracts of National Interest that contradicts the thesis defended by Professor Brewer-Carías. Specifically, Ambassador Vecchio asserts that the Governing Documents are "national public interest contract[s]" because of "[t]he purported pledge of a controlling interest in CITGO."[20]

18.    While the opinions of Professor Brewer-Carías and Ambassador Vecchio in this litigation are at odds with one another, neither is supported by Venezuelan law. Both

---

[18]    ████████ Ex. 2, ¶ 147; *accord* ████████ ¶ 57. Further unlike the Governing Documents, the geographic zones in which the joint ventures were to operate had to be delimited by a Decree approved by the President of the Republic and be published in the Official Gazette (Provisions N° 2. and N° 9.). No such intervention by the Republic was required for the execution of the Governing Documents.

[19]    Clark Decl. Ex. 13, ¶ 39.

[20]    Vecchio Letter, ¶ 1.

FILED UNDER SEAL

opinions are incompatible with relevant Venezuelan legal concepts explained in detail in my

Expert Report, including the binding interpretation on the contents and scope of Article 150

of the Constitution made in *Andrés Velásquez et al.*, which has recognized the long-standing

requirement that the Republic must be a party for a contract to qualify as Contracts of

National Interest.[21]

> **2.** **The Vecchio Letter Is Inconsistent with Professor Brewer-Carías's Refusal to Recognize in His Expert Report the Criteria for Contracts of National Interest Set Forth in *Andrés Velásquez et al.***

19.     In a footnote, the Vecchio Letter states that:

> the Indenture and the Pledge qualify as national public interest contracts under any qualitative criteria, including (i) that the contract must implicate the collective interest of the national community and (ii) that the contract implies the assumption of obligations whose total or partial payment is stipulated over the course of several fiscal years subsequent to the one in which the object of the contract was caused.[22]

20.     Without naming the *Andrés Velásquez et al.* or ensuing decisions, the Vecchio

Letter thus invokes two of the four concurring requisites demanded by those Constitutional

Chamber rulings, as recounted in my Expert Report.[23]  The letter is thus inconsistent with the

expert reports of Professor Brewer-Carías in this matter, which do not recognize these

criteria.[24]

21.     More importantly, and as I have previously opined, according to *Andrés*

*Velásquez et al.*, a contract is a Contract of National Interest only when *all* four requisites

---

[21]     *See generally* ▮▮▮▮ Ex. 2, ¶¶ 95–117.

[22]     Vecchio Letter, ¶ 8 n.6.

[23]     *Id.*

[24]     Clark Decl. Ex. 13, ¶ 56.

FILED UNDER SEAL

concur, namely: (i) The Republic must be one of the contracting parties; (ii) the subject of the contract must be decisive or essential for the realization of the goals and missions of the Venezuelan State; (iii) the contract must satisfy the collective interests of the national community; and (iv) the contract must imply the assumption of obligations payable by the Republic "against the National Treasury" during several fiscal years after the one in which the contract was concluded and, therefore, commits amounts of money and fiscal resources from Venezuela's future budgets.[25]

22.    As seen, the Vecchio Letter only invokes two of these criteria (criteria (iii) and (iv) above) but omits the remaining criteria. As explained in my Expert Report, two criteria do not suffice, because a contract must meet all four of these criteria to qualify as a Contract of National Interest. The Governing Documents do not qualify as Contracts of National Interest requiring National Assembly approval because they do not satisfy the aforementioned criteria, and in particular, the criterion that the Republic *must be* one of the contracting parties to the contracts.[26]

## II.    THE PDVSA MEMO MISINTERPRETS VENEZUELAN LAW AS PROHIBITING THE APPLICATION OF NEW YORK LAW TO THE GOVERNING DOCUMENTS UNDER ARTICLE 151 OF THE CONSTITUTION

23.    In the PDVSA Memo (Chapter II.A), the PDVSA Parties argued that the Governing Documents are invalid, illegal, null and void *ab initio*, and unenforceable under applicable Venezuelan Law, and offer a definition of Contracts of National Interest that is based primarily on the economic significance of these contracts.

---

[25]        Ex. 2, ¶¶ 15, 18; *id.* Ex. 3, ¶ 144.
[26]    *Id.* Ex. 2 ¶¶ 93–127.

FILED UNDER SEAL

24.     For the reasons set forth in my previous reports, that definition is not supported by Venezuelan law and is contrary to the text of the Venezuelan Constitution and the binding decisions of the Constitutional Chamber.[27]  That definition also departs from the definition of Contracts of National Interest proposed by Professor Brewer-Carías in his expert report, specifically, that any contracts between an entity of the National Public Administration and a corporation not domiciled in Venezuela qualify as Contracts of National Interest.  It departs as well from the opinions offered in previous writings by Professor Brewer-Carías, which are discussed in detail in my Rebuttal Report, and which themselves are at odds with the opinions the Professor Brewer-Carías offers in this case.[28]

25.     In addition to proposing the above definition of Contracts of National Interest, the PDVSA Parties adopt Professor Brewer-Carías's erroneous opinion that Venezuelan law does not permit PDVSA and PDVSA Petróleo to select the law of another jurisdiction to govern the formation and validity of the contracts they enter into.[29]

26.     More specifically, Professor Brewer-Carías argues the following, which the PDVSA Parties[30] have invoked in the PDVSA Memo:

    a.     Pursuant to Article 151 of the Constitution, doubts and controversies related to matters that arise prior to the execution of a Contract of National Interest, such as whether the contract is legal and valid in the first instance, may only be resolved according to Venezuelan law.  According to

---

[27]   *See generally id.* Exs. 2–3; ███████
[28]   ███████ Ex. 3, at ¶¶ 26–35; 89.
[29]   Clark Decl. Ex. 13, ¶ 117.
[30]   PDVSA Mem. at 26 (citing Clark Decl. Ex. 13, at pp. 53–59).

FILED UNDER SEAL

Professor Brewer-Carías, this is particularly true with respect to matters of public order, such as a public contracting party's power of *consent*.[31]

b.    Venezuelan law, not foreign law, governs the conditions of validity of Contracts of National Interest subject to National Assembly approval.[32]

c.    Article 151 of the Constitution does not permit PDVSA and PDVSA Petróleo to select a foreign law to govern the formation and validity of the contract itself. Such validity is a matter of public order regulated only by Venezuelan law.[33]

27.    Each of the above arguments with regard to Article 151 is erroneous for the reasons discussed in my Rebuttal Report, which are summarized and discussed in further detail below.[34]

**A.    THE LEGAL REGIME APPLICABLE TO CONTRACTS ENTERED INTO BY PDVSA AND PDVSA PETRÓLEO**

28.    As I have opined in my Expert Report, Article 151 does not prohibit the application of New York Law to the Governing Documents for several reasons.[35]  Consistent with this opinion, in this section I discuss: (i) Article 151 of the Constitution and its inapplicability to the Governing Documents; and (ii) the freedom to contract and to select the law applicable to a contract concluded by PDVSA and PDVSA Petróleo.

---

[31]    Clark Decl. Ex. 13, ¶ 123.

[32]    *Id.* ¶ 132.

[33]    *Id.* ¶¶ 118, 128, 130.

[34]    ▮▮▮▮▮ Ex. 3, ¶¶ 158–163.

[35]    ▮▮▮▮▮ Ex. 3, ¶¶ 158–63; ▮▮▮▮ ¶ 19.

FILED UNDER SEAL

      **1.**     **Article 151 of the Constitution Does Not Prohibit Parties to a Contract of National Interest from Selecting New York Law to Govern Their Contracts**

29.    Article 151 of the Constitution does not mandate that all public interest contracts, and therefore, all Contracts of National Interest, be governed by Venezuelan Law. Rather, Article 151 of the Constitution provides that:

> In [Contracts of National Interest, State Interest and Municipal Interest], *if not inadmissible according to their nature*, a clause shall be considered as included, even when not expressly so, according to which the questions and disputes which may arise about these contracts and they may not be settled amicably by the parties to the contracts, shall be decided by the competent courts of the Republic, in accordance with its laws, which without for any reason or cause, may give rise to foreign claims.[36]

30.    As I opined in my Expert Report, Article 151 provides that any doubts and disputes related to a Contract of National Interest will be decided by Venezuelan courts and under Venezuelan law unless this jurisdiction and this law is "inadmissible," or unsuitable, according "to their nature."[37]  This necessarily means that doubts and disputes related to a Contract of National Interest may be decided by a foreign court in accordance with foreign law if suitable with the nature of the contract. Hence, the mandate contained in Article 151 is not absolute.[38] Consequently, even in Contracts of National Interest, Article 151 does not prohibit the contracting parties to a Contract of National Interest to submit the resolution of any doubts and disputes which may arise in the context of such contract—including issues of validity—to a foreign court in accordance with a foreign law.

---

[36]    ██████ Ex. 5, art. 151.
[37]    *Id.*; *see also* ██████ Ex. 2, ¶ 53.
[38]    Clark Decl. Ex. 13, ¶ 118.

FILED UNDER SEAL

31.     As I have opined in my expert reports and Declaration, Articles 150 and 151 of the Constitution apply solely to contracts of public interest (including Contracts of National Interest), so they do not require the application of Venezuelan law to the Governing Documents.[39]  As explained in my Expert Report and my Rebuttal Report, the Governing Documents are not Contracts of National Interest under the binding interpretation of Article 150 of the Constitution made by the Constitutional Chamber in *Andrés Velásquez et al.* (2002) and the ensuing cases, among several other reasons.[40]

32.     As Professor Brewer-Carías has acknowledged, one of the consequences stemming from the *Andrés Velásquez et al.* case is that, pursuant to Article 151 of the Constitution:

> *in public contracts signed by* national public entities, such as the Central Bank of Venezuela, autonomous institutes and *State* [*corporations*]*, such as Petróleos de Venezuela S.A.* and its subsidiary companies, a clause shall not be considered incorporated, as is required with respect to contracts of public interest, including those of national public interest, "according to their nature," and "even when not expressly stated," according to which, "the doubts and controversies that may arise regarding said contracts and that may not be resolved amicably by the contracting parties, will be decided by the competent courts of the Republic, in accordance with its laws, without any reason or cause may give rise to foreign claims."[41]
>
> *This means that with respect to public contracts signed by* national public entities, such as autonomous institutes and *State companies, such as Petróleos de Venezuela S.A. and its subsidiary companies*, it can be freely established that the applicable law is *some foreign*

---

[39]         Ex. 2, ¶¶ 49–53; *id.* Ex. 3, ¶¶ 158–63;          ¶ 19.

[40]    *Id.* Ex. 2, ¶¶ 91–128; *id.* Ex. 3, ¶¶ 20–49.

[41]         Ex. 5, at 390 (emphasis added).

FILED UNDER SEAL

> *law* and that the applicable jurisdiction may be that of the courts of any other State or that of arbitral tribunals.[42]

33.     The plain text of Article 151 of the Constitution does not support the PDVSA Parties' argument to the contrary, which is based on Professor Brewer-Carías's opinion in his expert reports that Article 151 does not allow the validity of the Governing Documents to be governed by New York law.[43] That opinion differentiates, without any support, the law and jurisdiction applicable to doubts and disputes related to: (i) the validity of Contracts of National Interest, on the one hand, and, on the other, (ii) the conduct or performance of a Contract of National Interest, such that a choice of law and jurisdiction would be possible for the latter but not the former.[44]   However, Article 151, which I have quoted in my reports, does not make any such distinction, and this distinction created by Professor Brewer-Carías does not otherwise have any constitutional basis.[45]

34.     Moreover, according to Article 151, doubts and disputes arising from public interest contracts must "be decided by the *competent courts of the Republic*, in accordance with its laws."[46]   The plain text of Article 151 therefore states that both requirements—that the dispute be decided by Venezuelan courts and with Venezuelan laws—must apply if compatible with the nature of a Contract of National Interest. But notably, neither the PDVSA

---

[42]     ████████          Ex. 5, at 391 (emphasis added). A true and correct copy of an excerpt of this article—which is an additional page of, ████ Ex. 15—in its original Spanish text, and a certified translation of the relevant portions thereof, are included as **Exhibit 5**. To preview the contents of two other critical legal consequences that Professor Brewer-Carías derives from the *Andrés Velásquez et al.* case, *see* ████ ████ Ex. 3, ¶33.

[43]     PDVSA Mem. 25–26.

[44]     Clark Decl., Ex. 13, ¶ 118.

[45]     *Id.*; ████ Ex. 2, ¶ 53; *id.* Ex. 3, ¶ 27.

[46]     *Id.*, Ex. 5, at art. 151 (emphasis added).

FILED UNDER SEAL

Memo nor Professor Brewer-Carías have challenged the jurisdiction of the United States District Court for the Southern District of New York in relation to resolving doubts and disputes related to the conduct or validity of the Governing Documents. That selective reading of Article 151, which disassociates the two requirements of Article 151, is erroneous and contrary to that article's plain text.[47]

35.     The interpretation of Article 151 contemplated by the PDVSA Memo is further inadmissible because it defeats the very purpose of Article 151, which aims to ensure that the Principle of Relative Immunity from the Jurisdiction of another State is guaranteed for Contracts of National interest, when suitable according to their nature.

> **2.      The Principle of Relative Immunity From the Jurisdiction of Another State Does Not Apply to State Corporations Nor to Public Debt Agreements**

36.     Professor Brewer-Carías affirms that Article 151 of the Constitution recognizes the Principle of Relative Immunity from the Jurisdiction of another State.[48] I agree.

37.     Regarding the Principle of Relative Immunity from the Jurisdiction of another State, Professors De Maekelt and Hernández Bretón have argued that said principle applies to "certain and specific subjects of Public International Law," and particularly to sovereign States.[49] A true and correct copy of Professors De Maekelt and Hernández Bretón's article in its original Spanish text, and a certified translation of the relevant portions thereof, are included as **Exhibit 3**. Given that PDVSA and PDVSA Petróleo are State Corporations and

---

[47]   Clark Decl. Ex. 13, ¶¶ 117, 124.

[48]   *Id.*, ¶ 120.

[49]   ███████████ Ex. 3, at 328.

16

FILED UNDER SEAL

not the Republic,[50] Article 151 of the Constitution is inapplicable (by reason of the person)—to PDVSA and PDVSA Petróleo.[51]

38.     As discussed in my Rebuttal Report, the contrary view adopted by Professor Brewer-Carías, that Article 150 (and by extension Article 151) of the Constitution applies to all contracts entered into by PDVSA and PDVSA Petróleo with corporations domiciled outside of Venezuela would lead to absurd results.[52]   To further illustrate this point, if one were to apply Article 151 in this manner: (i) no international contract signed by PDVSA and PDVSA Petróleo would be valid unless it had previously been approved by the National Assembly; and, (ii) the choice of applicable law could be ignored or disregarded every time PDVSA and PDVSA Petróleo challenge the validity of a contract containing a foreign governing law provision on the basis that there is an issue of validity that must be decided by Venezuelan courts in accordance with Venezuelan laws.

> **3.      Even If the Governing Documents Were Contracts of National Interest and Article 151 Applied, the Nature of These Agreements Would Allow New York Law to Govern**

39.     Based on the Governing Documents, PDVSA issued debt that was to be transacted in international markets. The "nature" of the Governing Documents—Public Debt to be transacted in the international markets and issued to non-Venezuelan investors—made it inappropriate to require that any doubts and disputes arising from these contracts be subject to Venezuelan courts and Venezuelan laws.

---

[50]   *Ibid.*

[51]   *Idem.*

[52]   ▓▓▓▓▓ Ex. 3, ¶¶ 89–91.

FILED UNDER SEAL

40.    Regarding the *choice of law*, in a 1977 legal opinion—later ratified in 1984—the Office of the Attorney General of the Republic concluded that (i) external financing agreements whose contents are "purely commercial," are "governed fundamentally by Private law" and "*can be submitted to the jurisdiction of the lending State without such submission signifying violation of article 127 of the Constitution [the correspondent provision of Art. 151 of the 1999 Constitution], since these contracts, by their nature, do not compromise either the internal sovereignty or the security of the Republic*"; and, (ii) "the Venezuelan government practice on the matter reinforces the consideration of external public loans as acts of a *mercantile nature*, subject to clauses waiving immunity from jurisdiction by the borrowing State." [53] A true and correct copy of the article containing this legal opinion in its original Spanish text, as well as a certified translation of the relevant portions thereof, is included as **Exhibit 4**.

41.    Regarding the *applicable jurisdiction*, in that same 1977 legal opinion the Office of the Attorney General of the Republic added: "*the contracts that are generated in the financial markets to which a State goes, as a private company does, with liquidity objectives, are not located in the sphere of sovereignty. The mere public interest of these contracts is not sufficient to affirm the exclusivity of the Venezuelan jurisdiction*."[54]

42.    In summary, if the Governing Documents were Contracts of National Interest (and they are not) and Article 151 applied to them, the nature of the Governing Documents would have allowed PDVSA and PDVSA Petróleo to validly choose the law and jurisdiction

---

[53]    ███████████ Ex. 4, at 442–43 (emphasis added).
[54]    *Id.* at 443 (emphasis added).

FILED UNDER SEAL

of the State of New York to govern the validity of the Governing Documents as well as other disputes arising thereunder.

**B.      THE PDVSA PARTIES' FREEDOM TO CONTRACT AND TO SELECT THE LAW GOVERNING THEIR CONTRACTS**

**1.      Under Venezuelan Law, Limitations to PDVSA and PDVSA Petróleo's Freedom to Contract Must Be Expressly Regulated, Interpreted Restrictively, and Proved By the Party Claiming the Limitation**

43.      In the reports already submitted to the Court I have opined that:

a.      According to Article 108 of the Organic Law of the Public Administration, State Corporations are governed by (i) first, private, corporate laws; second, (ii) the Organic Law of Public Administration; and, (iii) third, other applicable Public Law statutes and regulations.[55]

b.      Based on Venezuelan private and corporate laws, PDVSA and PDVSA Petróleo enjoy the freedom to (i) conclude contracts and (ii) negotiate their terms.[56]

c.      In our legal system, corporations—including State Corporations— having such freedom "is the rule"; lack of that freedom "the exception."[57] Three fundamental consequences derive from this general premise. *First*, any limits to this general rule must derive from an explicit legal rule enacted by the Legislature establishing the same. *Second*, in principle, limits to this general rule must be subject to a

---

[55]      ▮▮▮▮▮ Ex. 2, ¶¶ 11, 40, 42.

[56]      *Id.*, ¶ 40, 42.

[57]      *Id.* ¶ 41.

FILED UNDER SEAL

restrictive interpretation (which is known in Venezuela as the principle of *favor libertatis*). *Third*, whoever asserts an applicable limit to this rule, proper or alien, has the burden of proving its applicability.[58]

44.     Based on the freedom to contract or autonomy of will afforded to the contracting parties, PDVSA and PDVSA Petróleo had the right to choose New York laws to govern both the Indenture, based on which the 2020 Notes were issued, as well as the Pledge Agreement.

45.     As stated in my Rebuttal Report, Professor Brewer-Carías has acknowledged as much in his published work, including that, according to the Constitutional Chamber's binding criteria, PDVSA and PDVSA Petróleo may freely choose the laws applicable to their contracts.[59] Indeed, as I have stated previously, and as noted above (¶ 32), Professor Brewer-Carías has argued that one of the legal consequences derived from the Constitutional Chamber's decision in the *Andrés Velásquez et al.* is that

> [in] public contracts signed by public national entities. . . such as *Petróleos de Venezuela S.A.* and its subsidiary companies, [it] can be freely established that the applicable law is some foreign law and that the applicable jurisdiction may be that of the courts of any other *State* or that of arbitral tribunals.[60]

---

[58]     *Id.*

[59]     ██████ Ex. 3, ¶ 33.b. (quoting ██████ Ex. 5, at 391) (emphasis added).

[60]     *Id.*

FILED UNDER SEAL

**C.    THE PDVSA MEMO DOES NOT ACCURATELY DESCRIBE PROFESSOR BREWER-CARÍAS'S PREVIOUS OPINIONS ON THE BINDING DECISION OF THE CONSTITUTIONAL CHAMBER IN *ANDRÉS VELÁSQUEZ***

46.    The PDVSA Parties argue that the works by Professor Brewer-Carías cited in my Rebuttal Report do not reflect his opinion on *Andrés Velásquez at al.*, given that (i) the opinions published are no more than "a single footnote from a 2006 paper that was reprinted verbatim in numerous other publications," in which (ii) Professor Brewer-Carías "inadvertently referred to the discussion in *Andrés Velásquez . . .* as a 'binding interpretation.'"[61] I respectfully disagree. The published works by Professor Brewer-Carías cited in my Rebuttal Report show a consistent line of scholarly thought held and developed over several years and expressed in various forms. As such, these publications cannot be dismissed lightly as the reproduction of a single footnote or an inadvertent reference.

47.    As stated in my Rebuttal Report,[62] Professor Brewer-Carías, while expressing disagreement with the holding of *Andrés Velásquez et al.*, has acknowledged (i) that said judicial decision is binding law per Article 335 of the Constitution, and (ii) that it held the Republic has to be a party for a contract to qualify as a Contract of National Interest. In Professor Brewer-Carías's own words:

> [In *Andrés Velásquez et al.*,] [t]he Constitutional Chamber of the Supreme Tribunal of Justice, as the highest and last interpreter of the Constitution . . . , *established a binding interpretation*, and reduced the category of 'contracts of public interest' (art. 150 C.) to those signed or concluded by the Republic, the States, and the Municipalities, thus, *excluding from such a classification those contracts concluded by* autonomous institutes or *national public enterprises such as PDVSA.*

---

[61]    PDVSA Mem. at 36.

[62]    ▮▮▮▮ Ex. 3, ¶¶ 25–35.

The central argument of the Chamber's decision referred to the issue of prior parliamentary authorization in relation to the public debt contracts signed by the Republic, the States, and the Municipalities.[63]

48.     In a more recent work of his, Professor Brewer-Carías elaborated on the aforementioned idea by saying, and I quote:

> *Having reduced the notion of 'public interest contracts' to only those signed by the Republic*, States, and Municipalities, and consequently, *reduced the notion of 'national public interest contracts' [] to those signed only by the Republic*, the most notorious consequence of the decisions of [*Brigitte Acosta Isasis* and *Andrés Velásquez et al.*] is—that *Articles 150, 151, 187.9, 236.14 and 247 of the Constitution do not apply to public contracts concluded by* these decentralized national public entities, for example, the Central Bank of Venezuela, autonomous institutes and *state companies . . . .*[64]

49.     In line with the statements above, Professor Brewer-Carías has argued that:

> [T]he consequence of the indicated jurisprudential interpretation [made in *Andrés Velásquez et al.*] is that *public contracts signed by . . . state companies, like Petróleos de Venezuela S.A. and its subsidiary companies, may freely [be entered into] with* States or foreign official entities or with *companies not domiciled in Venezuela, and even transfer to them without being it necessary to obtain authorization from the National Assembly.*[65]

50.     Given these numerous, detailed writings, I cannot agree with the PDVSA Parties' assertion that Professor Brewer-Carías inadvertently referred to the discussion in *Andrés Velásquez* as a binding interpretation.

---

[63]     ▮▮▮▮ Ex. 3, ¶ 26.

[64]     *Id.* ¶ 27 (emphasis added).

[65]     *Id.* ¶ 33.a (emphasis added).

FILED UNDER SEAL

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct, pursuant to 28 U

Executed on June 27, 2020.