**Christopher J. Clark**
Direct Dial: 212.906.1350
chris.clark@lw.com

53rd at Third
885 Third Avenue
New York, New York  10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

**LATHAM & WATKINS** LLP

July 10, 2020

**Via ECF and Electronic Mail**

The Honorable Katherine Polk Failla
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York  10007

Re: *Petróleos de Venezuela, S.A., et al. v. MUFG Union Bank*, et al., 1:19-cv-10023

Dear Judge Failla:

We write on behalf of Defendants in response to Plaintiffs' July 7, 2020 letter to the Court requesting that the identity of Defendants' expert in Venezuelan law be disclosed on the public docket. Dkt. No. 172. The Court should reject Plaintiffs' request and allow the identity of Defendants' expert to remain redacted. In light of the volatile political and security situation in Venezuela, the expert has reasonable concerns that disclosure of the expert's name would risk retaliation against the expert and the expert's family and their personal safety. There is no public interest served in disclosing the expert's identity, where the expert's full opinions are available on the Court's public docket and the expert's identity is not at issue.

Plaintiffs ignore the context under which this dispute arises. Representatives of the Guaidó administration, which is directing this litigation for PDVSA and its affiliates, have engaged in a months-long campaign of inflammatory rhetoric, not only against the Maduro regime, but against highly regarded independent figures who have been critical of the policies or actions of the Guaidó administration or Plaintiffs' position in this case. As this Court is aware, the Guaidó administration has publicly charged that any Venezuelan legal scholar testifying for Defendants would be acting "contrary to what is ordered by the Constitution" and would be "trying to justify the actions of Maduro's regime." Dkt. Nos. 46-5, 46-6. Similar vitriol has been directed against others who have questioned the administration's litigation position. The Guaidó administration has falsely and baselessly accused holders of the 2020 Notes of conspiring with the Maduro regime to hand them control of CITGO, although, as the Court is aware from the summary judgment submissions, that accusation is not supported by a shred of evidence. *See* Ex. 1 at 7 (calling the 2020 Notes the "product of a conspiracy in which [] PDVSA participated.")

Just last month, the former Special Attorney General publicly claimed that a highly regarded, politically independent Venezuelan economist, Francisco Rodríguez, who has written that the issuance of the 2020 Notes was "clearly legal" under Venezuelan law and has criticized the administration's litigation strategy, Clark Decl. Ex. 293 at BLA_00004830, was engaged in a

LATHAM&WATKINS LLP

corrupt "conspiracy" with the Maduro regime and holders of the 2020 Notes.[1]  In interviews since that time, individuals associated with the Guaidó administration have accused Rodríguez of "treason to the homeland" and "play[ing] for both teams."[2]  This pattern of professional attack has also resulted in the resignation of Alejandro Grisanti from PDVSA's Ad Hoc Board of Directors, following the "constant disparagement both in public and private" by the then-Special Attorney General "against everything he regards as being contrary to himself."[3]  In that letter, Grisanti stated that he had expressed opposition to this lawsuit and called Plaintiffs' strategy "misguided."[4]  That the then-Special Attorney General continued to engage in such hostile conduct toward opponents of this litigation *after this Court's* admonishments makes sealing Defendants' expert's identity all the more reasonable.

The expert's legitimate concerns also extend to potential retaliation from the Maduro regime.  The Maduro regime retains *de facto* control of PDVSA's Venezuelan operations and Venezuela's petroleum assets in that country.  It would benefit financially, and would seek to benefit politically, from a victory by Plaintiffs that relieves PDVSA of a multi-billion dollar obligation.  The Maduro regime, as Plaintiffs acknowledge, "has a well-documented record of persecution."  *See* Dkt. No. 172.

In these circumstances, bland assurances from Plaintiffs' U.S. lawyers that "there is no credible reason to believe Defendants' expert would be under threat" are of little comfort, and should be given no weight.  Defendants' Venezuelan law expert is a permanent resident of Caracas, where the expert maintains a home and practices law.  While the expert has recently been able to leave Venezuela temporarily for a country in Europe, members of the expert's family and the expert's students and colleagues remain there.  The expert has every reason to be concerned about potential retaliation (including from the Guaidó administration, should it come into power) were the expert's identity to be publicly disclosed.  Indeed, in discussions with Defendants' counsel, Plaintiffs' counsel initially agreed to Defendants' proposal to redact the name of their expert from any public filings, only now reversing course (without justification) and claiming that such public disclosure is imperative.

While Plaintiffs claim that the "public interest" supports disclosure of the expert's identity, the public interest in disclosure is not absolute.  As courts have recognized, "'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, [or] circulate libelous statements."

---

[1] *See, e.g.*, Ex. 1, Transcript of June 19, 2020 Interview of Special Attorney General José Ignacio Hernández, LA GRAN ALDEA, at 7.

[2] Ex. 2, Interview with Ricardo Villasmil, HISPANOPOST (June 10, 2020) (stating that it was "treason to the homeland" for the economist be involved in debt issuances); Ex. 3, Interview with Miguel Ángel Santos, LA GRAN ALDEA (June 22, 2020) (accusing the economist of "play[ing] for both teams."). *See also* Ex. 4, José Ignacio Hernández (@ignandez), Twitter (Mar. 26, 2020, 11:43 AM) (stating that the economist and "collaborators of the Maduro regime and those who for years benefited from illegitimate operations already wanted [the Guaidó administration] to be a fiction").

[3] Ex. 5, Letter from A. Grisanti to J. Guaidó (April 23, 2020), at 1.

[4] *Id.* at 3.

LATHAM&WATKINS LLP

*Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)); *see also United States Dep't of State v. Ray*, 502 U.S. 164, 176 n. 12 (1991) (permitting redaction of names of Haitian nationals who cooperated with investigation where disclosure would "subject [the interviewees] to possible embarrassment or retaliatory action").

Courts routinely allow the sealing of information to protect the safety of witnesses. *See, e.g., Walker v. City of New York*, 2017 WL 2799159, at *6 (E.D.N.Y. June 27, 2017) ("[T]he safety of the complaining witness and his family constitutes a higher value which should be protected by filing redacted versions of the summary judgment papers.") (internal quotations omitted); *Chevron Corp. v. Donziger*, 2013 WL 646399, at *4-5 (S.D.N.Y. Feb. 21, 2013) (ordering the sealing of names of two witnesses who "[b]oth fear[ed] reprisals against their families and themselves" in Ecuador, including from individuals with "enormous personal and economic stakes" in the outcome of ongoing litigation who had already issued public threats regarding witnesses); *Al Otro Lado, Inc. v. McAleenan*, 2019 WL 6220898, at *4-5 (S.D. Cal. Nov. 21, 2019) (ordering redaction of names of asylum seekers attempting to leave Mexico due to fears of further persecution).

Finally, Plaintiffs have not articulated a single harm stemming from maintaining the status quo. And indeed, there is no such harm. The identity of Defendants' expert is not at issue, and the redactions requested are narrowly tailored; the expert's opinions have been disclosed to the public in full, along with all supporting exhibits and materials. In these circumstances, there is little or no marginal public interest served in disclosing the expert's identity. *See In re Savitt/Adler Litig.*, 1997 WL 797511, at *3 (N.D.N.Y. Dec. 23, 1997) (permitting redaction of the non-party witness names where identities did not have "any bearing on the decision of the summary judgment motion" at issue); *Cohen v. Gerson Lehrman Grp., Inc.*, 2011 WL 4336679, at *2 (S.D.N.Y. Sept. 15, 2011) (ordering redaction where "[t]he identity of Gerson Lehrman's experts is not at issue in this litigation" and "their identities are irrelevant to the motion"). Moreover, Plaintiffs' counsel knows the identity of the expert and has had the opportunity to challenge the expert's statements and opinions, including through rebuttal reports and sworn declarations. And contrary to Plaintiffs' newfound contention that preventing public access to Defendants' expert's identity would require "extraordinary measures" during the summary judgment hearing, *see* Dkt. No. 172, there are several narrowly tailored and minimally burdensome remedies that could be undertaken, such as an agreement not to use the expert's name in open court or closure of the courtroom solely during times when the expert's identity would otherwise be revealed.

For all the reasons set forth above, Defendants respectfully request that Plaintiffs' request be denied.

Respectfully Submitted,

*/s/ Christopher J. Clark*
Christopher J. Clark
of LATHAM & WATKINS LLP

Encls.
cc: Counsel of record