**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PETRÓLEOS DE VENEZUELA, S.A., PDVSA
PETRÓLEO, S.A., and PDV HOLDING, INC.,

Plaintiffs,

- against -

MUFG UNION BANK, N.A. and GLAS AMERICAS
LLC,

Defendants.

Case No: 19-cv-10023-KPF

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION TO STRIKE AMBASSADOR VECCHIO'S LETTER**
**<u>TO THE COURT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

LEGAL STANDARD............................................................................................................... 4

ARGUMENT ........................................................................................................................... 5

I.      THE REPUBLIC'S LETTER IS ADMISSIBLE AND ENTITLED TO
SUBSTANTIAL WEIGHT ........................................................................................... 5

        A.     The Letter May Be Considered Pursuant to Rule 44.1 ........................................ 5

                1.     Rule 44.1 Submissions Need Not be Sworn .............................................. 5

                2.     There Has Been No "Unfair Surprise" and Defendants Have Not
Been Prejudiced By Any Purported Delay in Submitting the
Republic's Letter.................................................................................. 7

                3.     The Republic's Letter Represents the Official Views of a Foreign
Sovereign, and Is Not an Expert Report .................................................... 9

                4.     The Republic's Letter Does Not Improperly Introduce Facts ................ 10

        B.     The Letter Is Not Only Admissible, It Is Entitled to Substantial Weight ............ 11

II.     ALTERNATIVELY, THE REPUBLIC MAY SUBMIT AN AMICUS BRIEF ........... 13

III.    DEFENDANTS' ACCUSATIONS OF IMPROPRIETY ARE BASELESS................. 14

IV.    DEFENDANTS IMPROPERLY RELY UPON PURPORTED RECORDINGS
THAT ARE ILLEGAL AND THAT WERE PUBLICIZED BY SANCTIONED
INDIVIDUALS........................................................................................................... 16

CONCLUSION...................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*,
   138 S. Ct. 1865 (2018)................................................................................4, 11, 12, 13

*Banco de Espana v. Fed. Reserve Bank of New York*,
   114 F.2d 438 (2d Cir. 1940)........................................................................12

*Base Metal Trading SA v. Russian Aluminum*,
   253 F. Supp. 2d 681 (S.D.N.Y. 2003), *aff'd*, 98 F. App'x 47 (2d Cir. 2004)...................10, 11

*Bitumenes Orinoco, S.A. v. New Brunswick Power Holding Corp.*,
   No. 05 Civ. 9485 (LAP), 2007 WL 485617 (S.D.N.Y. Feb. 13, 2007)...................................9

*City of New York v. United States*,
   971 F. Supp. 789 (S.D.N.Y. 1997)..............................................................14

*Cornea v. U.S. Attorney Gen.*,
   771 F. App'x 944 (11th Cir. 2019) ..............................................................12

*Curley v. AMR Corp.*,
   153 F.3d 5 (2d Cir. 1998) ........................................................................4, 5

*Daehan Inv. Tr. Mgmt. Co. v. J.P. Morgan Chase Bank*,
   No. 02 Civ. 1379 (RCC) (DFE), 2003 WL 21297304 (S.D.N.Y. June 4, 2003)...................10

*DP Aviation v. Smiths Indus. Aerospace and Defense Sys. Ltd.*,
   268 F.3d 829 (9th Cir. 2001) ....................................................................7

*Granville Gold Trust-Switzerland v. Commisione Del Fullimento/Inter-Change
   Bank*,
   924 F. Supp. 397 (E.D.N.Y. 1996), *aff'd*, 111 F.3d 123 (2d Cir. 1997)...................................5

*Nabulsi v. Nahyan*,
   No. H–06–2683, 2009 WL 1658017 (S.D. Tex. June 12, 2009), *aff'd*, 383 F.
   App'x (5th Cir. 2010) ..............................................................................9

*PDVSA US Litigation Trust v. Lukoil Pan Americas, LLC*,
   Case No. 19-10950 (11th Cir. 2019).............................................................6, 11

*Strauss v. Credit Lyonaiss, S.A.*,
   249 F.R.D. 429 (E.D.N.Y. 2008) ................................................................5

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*,
   No. 1:15-cv-00211 (LGS) (SDA), 2020 WL 1442915 (S.D.N.Y. Jan. 27,
   2020), *Report and Recommendation adopted*, No. 15 Civ. 211 (LGS), 2020
   WL 1911205 (S.D.N.Y. Apr. 20, 2020)......................................................4, 7, 8, 9

# TABLE OF AUTHORITIES

**Page(s)**

*The Argo Fund Ltd. v. Bd. of Dirs. of Telecom Argentina, S.A.*,
    528 F.3d 162 (2d Cir. 2008)....................................................................................11

*Torah Soft Ltd. v. Drosnin*,
    224 F. Supp. 2d 704 (S.D.N.Y. 2002). Here, the Republic's Letter ..........................8

*Tyco Int'l Ltd. v. Walsh*,
    No. 02 Civ. 4633 (DLC), 2010 WL 3860390 (S.D.N.Y. Oct. 4, 2010)................7, 9

*United States v. Pink*,
    315 U.S. 203 (1942)..............................................................................................12

*Varnelo v. Eastwind Transp., Ltd.*,
    No. 02 Civ. 2084 (KMW) (AJP), 2003 WL 230741, 15
    (S.D.N.Y. Feb. 3, 2003)...........................................................................................5

*Zuckerman v. Metropolitan Museum of Art*,
    307 F. Supp. 3d 304 (S.D.N.Y. 2018)......................................................................4

**Statutes, Rules, and Regulations**

18 U.S.C. § 1746......................................................................................................5

28 U.S.C. § 1746...................................................................................................2, 5

Fed. R. Civ. P.
    R. 44.1............................................................................................................ *passim*
    R. 11...............................................................................................................2, 5

**Other Authorities**

Department of Justice, Office of Public Affairs, *Nicolás Maduro Moros and 14
    Current and Former Venezuelan Officials Charged with Narco-Terrorism,
    Corruption, Drug Trafficking and Other Criminal Charges*  (Mar. 26, 2020)......................18

*Guaidó team favoring COP in Citgo fight: update*, Argus Media (June 19, 2020)......................18

U.S. Const., art. II, § 3 ..............................................................................................6

U.S. Department of Treasury, Office of Foreign Assets Control, *Venezuela-
    related designations* (Sept. 25, 2018) ..................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

Plaintiffs PDVSA, PDVSA Petróleo, and PDV Holding[1] respectfully submit this

memorandum of law in opposition to Defendants' motion to strike the letter submitted to this

Court by Ambassador Carlos Vecchio (the "Republic's Letter" or the "Letter").  (Dkt. No. 145).

## PRELIMINARY STATEMENT

Defendants' motion to strike the Letter submitted to this Court by Ambassador Carlos

Vecchio—the recognized and credentialed ambassador of Venezuela to the United States—is

simply an unfounded plea to have this Court disregard authoritative and persuasive evidence

about the meaning of Venezuelan law.  In the absence of any legal basis for their motion,

Defendants instead ask this Court to join sides in a mudslinging battle engineered by former

Venezuelan Vice President (and head of the Maduro regime's intelligence service), Delcy

Rodriguez, a Specially Designated National[2] with whom it is unlawful for any U.S. person to

transact business.  Citing to a propaganda-laden press conference she held on behalf of the

illegitimate and corrupt Maduro regime, Defendants would have this Court rely upon an illegal

(and ultimately irrelevant) purported recording of Venezuela's former Special Attorney General,

Dr. José Ignacio Hernandez, which was made surreptitiously at the behest of, and then used as

propaganda by, SDNs such as Ms. Rodriguez and other leaders within the Maduro regime.

(Clark Decl. Ex. 1).  The recordings are in line with the Maduro regime's long history and

pattern of intimidation and violence directed at the legitimate Guaidó Government, and

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, filed June 10, 2020, hereafter referred to as "PSJ." (Dkt. No. 95).  Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment, filed June 29, 2020, is hereafter referred to as "DMSJ Opp." (Dkt. No. 158).  Defendants' opening brief in support of their Motion to Strike the letter submitted to the Court by Carlos Vecchio, filed June 26, 2020, is hereafter referred to as "DOB." (Dkt. No. 147).  The Declaration of Christopher J. Clark in support of Defendants' Motion to Strike, filed June 26, 2020, is hereafter referred to as "Clark Decl." (Dkt. No. 146).

[2] A "Specially Designated National" or "SDN" is an individual that OFAC has officially sanctioned: their assets are blocked and U.S. persons are generally prohibited from dealing with them.  (*See supra* n.12).

Defendants' suggestion that this Court should rely upon such materials (without even considering issues of authenticity or propriety) should give this Court serious pause.

Defendants devote pages of their opening brief to introducing irrelevant and inflammatory allegations, including their unsupported accusation that Mr. Vecchio (and by extension the Republic of Venezuela) has conspired with Plaintiffs to circumvent the Court's schedule and otherwise tilt this litigation in Plaintiffs' favor.  These accusations of gamesmanship are impossible to take seriously given the positions taken elsewhere by Defendants' counsel (Paul Weiss, who opted not to co-sign this motion), and they are beyond the pale when directed at a foreign sovereign that has offered to the Court  its views regarding the meaning of its own laws.  Defendants' separate claim of unfairness lacks credibility in light of their supplemental expert declarations after the Republic submitted its Letter to this Court.

Putting aside Defendants' groundless attacks on the Republic and Plaintiffs, their motion is utterly meritless.  The Court has broad discretion under Federal Rule of Civil Procedure 44.1 to consider submissions on foreign law without regard to the independent admissibility of such submissions.  For this reason, courts in this Circuit and others have repeatedly considered, pursuant to Rule 44.1, letters and other un-sworn statements regarding foreign law—such as the Republic's Letter.  Defendants' arguments that the Republic's Letter is improper for failure to comply with Rule 11 or 28 U.S.C. § 1746 are irrelevant, as it is Rule 44.1 that controls.  These arguments are also directly contradictory to the position taken by Defendants' other counsel, in a matter pending before the Eleventh Circuit Court of Appeals, where Paul Weiss argues that a similar unsworn letter from Ambassador Vecchio is not just admissible, but entitled to substantial weight.

Defendants' argument that the Republic's Letter should be struck as untimely is plainly wrong, as Rule 44.1 permits the Court to consider a submission thereunder at any time.  Equally meritless are Defendants' contentions that the Republic's Letter ought to be struck because it incorporates certain statements of fact, and because the Republic is an interested non-party.  The Letter's recitation of facts denoting the strategic significance of CITGO with respect to the democratic transition in Venezuela is entirely appropriate, and ultimately it is within the Republic's discretion to provide information to inform this Court's interpretation of Venezuela's laws relating to national public interest contracts, the policy implications of the Court's ruling regarding the act of state doctrine, and the nature and effect of the Republic's official acts with respect to the 2020 Notes and other Transaction Documents.  And it is within the Court's discretion to determine which of those sources of information will aid its resolution of foreign law issues.

This Court should also decline to strike the Republic's Letter because Defendants have not been prejudiced by its submission.  The Letter covers subjects of foreign law that Defendants have fully addressed in their summary judgment briefing, as well as in the reports and "supplemental" declarations of their Venezuelan law expert.  In fact, the most recent extra expert declarations submitted by Defendants in connection with their summary judgment briefing specifically address the statements in the Republic's Letter.  In these circumstances, Defendants cannot credibly assert any prejudice sufficient to support their motion to strike.

For the foregoing reasons, Defendants' motion to strike should be denied.  If the Court has any concerns regarding the form of the Republic's submission, the appropriate remedy is to ask the sovereign representative of the Republic to comply with whatever form the Court deems appropriate, whether that is submission via an *amicus* brief, sworn affidavit, or otherwise.

Contrary to Defendants' assertions, the Federal Rules contain no requirement as to how a foreign sovereign must submit its views to a federal court, and those same rules clearly afford this Court substantial discretion in determining how to accept and evaluate such views.

## LEGAL STANDARD

Under principles of international comity, federal courts should "carefully consider a foreign state's views about the meaning of its own laws," which may be presented to courts in a broad "range of circumstances." *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1873 (2018). This is also made clear by Rule 44.1 of the Federal Rules of Civil Procedure, which provides that "[i]n determining foreign law, the court may consider *any relevant material or source . . . whether or not submitted by a party or admissible under the Federal Rules of Evidence*." (Emphasis added). Rule 44.1 has two purposes: "(1) to make a court's determination of foreign law a matter of law rather than fact, and (2) to relax the evidentiary standard and to create a uniform procedure for interpreting foreign law." *Zuckerman v. Metropolitan Museum of Art*, 307 F. Supp. 3d 304, 316 (S.D.N.Y. 2018). The Court has "wide latitude to consider evidence that may be helpful in interpreting foreign law[.]" *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*, No. 1:15-cv-00211 (LGS) (SDA), 2020 WL 1442915, at *5 (S.D.N.Y. Jan. 27, 2020), *Report and Recommendation adopted*, No. 15 Civ. 211 (LGS), 2020 WL 1911205 (S.D.N.Y. Apr. 20, 2020). Indeed, the Second Circuit has "urge[d] district courts to invoke the flexible provisions of Rule 44.1 to determine issues relating to the law of foreign nations." *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998).

<u>ARGUMENT</u>

I.   **THE REPUBLIC'S LETTER IS ADMISSIBLE AND ENTITLED TO SUBSTANTIAL WEIGHT**

    **A.   The Letter May Be Considered Pursuant to Rule 44.1**

        1.   <u>Rule 44.1 Submissions Need Not Be Sworn</u>

Defendants argue that the Republic's Letter ought to be struck because it is unsworn and thus purportedly "fails to adhere to the basic legal requirements governing submissions to the Court," such as Rule 11 and 28 U.S.C. § 1746.  (DOB at 8–10).  That is wrong.  No evidentiary issues preclude this Court from considering the Republic's Letter.

Rule 44.1 expressly permits this Court to consider the Republic's Letter in resolving legal questions of Venezuelan law even if the Letter is not admissible under the Federal Rules of Evidence.  *See* Fed. R. Civ. P. 44.1.  In accordance with the "flexible provisions of Rule 44.1," *Curley*, 153 F.3d at 13, courts in this Circuit have routinely considered letters and other unsworn documents such as the Republic's Letter when determining issues of foreign law.  *See*, *e.g.*, *Varnelo v. Eastwind Transp., Ltd.*, No. 02 Civ. 2084 (KMW) (AJP), 2003 WL 230741, at *15–16 (S.D.N.Y. Feb. 3, 2003) (considering an unsworn letter and purported "affirmations" that did not comply with 18 U.S.C. § 1746); *Strauss v. Credit Lyonaiss, S.A.*, 249 F.R.D. 429, 447 n.18, 448 (E.D.N.Y. 2008) (considering a letter from the French Ministry of Justice); *Granville Gold Trust-Switzerland v. Commisione Del Fullimento/Inter-Change Bank*, 924 F. Supp. 397, 405 n.6 (E.D.N.Y. 1996), *aff'd*, 111 F.3d 123 (2d Cir. 1997) (considering a letter from the Swiss Embassy).

Defendants' contention that an unsworn statement may not be considered by the Court is not only foreclosed by a long, unbroken chain of case law, but it is at odds with the position taken by Paul Weiss in a case pending before the Eleventh Circuit Court of Appeals.  In *PDVSA*

*US Litigation Trust v. Lukoil Pan Americas, LLC*, Case No. 19-10950 (11th Cir. 2019), Paul

Weiss submitted a supplemental brief on Appellees' behalf arguing that, "consistent with Federal

Rule of Civil Procedure 44.1," the Eleventh Circuit may consider an unsworn letter by

Ambassador Vecchio—submitted long after the parties filed their opening and reply briefing on

appeal—"which sets out the official views of the recognized government of Venezuela on the

meaning and effect of its own laws."[3]  That letter is materially indistinguishable from the

Republic's Letter that Defendants here seek to exclude.[4]  And as Defendants' counsel correctly

argued before the Eleventh Circuit, there are no evidentiary issues precluding the Court from

considering Ambassador Vecchio's Letter pursuant to Rule 44.1.  (Bliss Decl. Ex. 1 at 2–5).

There is no dispute that the United States Government recognizes Interim President Juan

Guaidó as the legitimate president of Venezuela.  (*Id*. at 3; PSJ at 17–18; Defendants' Response

to Plaintiffs' Rule 56.1 Statement of Undisputed Facts, Dkt. No. 156, ¶ 118 ("President Trump

officially recognized Interim President Juan Guaidó eight days after the National Assembly

issued a legislative order stating that Guaidó would assume the role of Interim President[.]")).

Nor can there be any dispute that the Executive Branch, in exercise of its exclusive power to

"receive Ambassadors," U.S. Const., art. II, § 3, has accepted Carlos Vecchio as the Venezuelan

Ambassador to the United States.[5]  Ambassador Vecchio's role is thus to speak for the Republic

and the Guaidó Administration in the United States, just as he has done in the Letter to the Court.

---

[3] Supplemental Brief of Appellees, *PDVSA US Litigation Trust v. Lukoil Pan Americas, LLC*, Case No. 19-10950 (11th Cir. 2019), dated May 29, 2020, at 1, attached as Exhibit 1 to the Declaration of James R. Bliss ("Bliss Decl."), filed herewith.

[4] Ambassador Vecchio's letter submitted in *PDVSA US Litigation Trust v. Lukoil Pan Americas, LLC*, Case No. 19-10950 (11th Cir. 2019), filed May 13, 2020, is attached as Exhibit 2 to the Declaration of James R. Bliss filed herewith.

[5] *See* Office of the Chief Protocol, *Diplomatic Corps Order of Precedence and Dates of Presentation of Credentials*, U.S. Dep't State (as of May 6, 2020), attached as Exhibit 3 to the Declaration of James R. Bliss filed herewith (noting that the White House received Ambassador Vecchio's credentials on April 8, 2019); *U.S. and International*

2.      There Has Been No "Unfair Surprise" and Defendants Have Not Been
Prejudiced By Any Purported Delay in Submitting the Republic's Letter

Defendants next contend that the submission of the Republic's Letter somehow "violates

the Court's scheduling order and creates unfair surprise" because "Defendants were deprived of

an opportunity to take discovery of the Republic or Ambassador Vecchio, seek Ambassador

Vecchio's deposition, or otherwise probe the validity and underlying bases for the arguments

presented in the Vecchio Letter in advance of summary judgment."  (DOB at 10–11).  These

arguments are baseless.

As an initial matter, "Rule 44.1 allows the court to consider issues of foreign law at any

time[.]"  *DP Aviation v. Smiths Indus. Aerospace and Defense Sys. Ltd.*, 268 F.3d 829, 847 (9th

Cir. 2001).  Accordingly, courts have rejected arguments that a purportedly untimely Rule 44.1

submission violates the parties' disclosure obligations or other procedural rules.  *See Syntel*

*Sterling*, 2020 WL 1442915, at *5 (denying motion to strike a foreign law declaration as

untimely and explaining that "the Court has wide latitude to consider evidence that may be

helpful in interpreting foreign law"); *Tyco Int'l Ltd. v. Walsh*, No. 02 Civ. 4633 (DLC), 2010 WL

3860390, at *2 (S.D.N.Y. Oct. 4, 2010) (denying motion to strike for failure to disclose "[s]ince

a court has an independent duty to determine foreign law if choice of law principles require its

application, and may turn to any relevant source").

Furthermore, Defendants cannot complain that they are the victims of "unfair surprise."

For purposes of Rule 44.1, unfair surprise relates to the Rule's requirement that "[a] party who

intends to raise an issue about a foreign country's law must give notice by a pleading or other

writing."  Fed. R. Civ. P. 44.1; *see also* Advisory Committee's Note ("To avoid unfair surprise,

---

*Community Actions on Venezuela*, U.S. Dep't State (Sept. 27, 2019), attached as Exhibit 4 to the Declaration of
James R. Bliss filed herewith (same).

the *first sentence* of the new rule requires that a party who intends to raise an issue of foreign law shall give notice thereof.").  Defendants have been on notice since day one of this litigation that Plaintiffs would assert the invalidity of the Indenture, the Pledge, and the 2020 Notes under Venezuelan law—the exact same issues addressed in the Republic's Letter.  (*See*, *e.g.*, Compl. ¶¶ 73–94).  Defendants have submitted their own expert reports on Venezuelan law in an attempt to counter Plaintiffs' claims, and have fully briefed the relevant issues under Venezuelan law.  In any event, under Rule 44.1, "notice provided in the first submission by a party in connection with a motion will usually be adequate because the opposing party still has the opportunity to respond." *Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 718 (S.D.N.Y. 2002).  Here, the Republic's Letter was submitted before Plaintiffs' filed their opening summary judgment brief, allowing ample opportunity for Defendants to respond in their opposition brief.  Defendants have, in fact, availed themselves of that opportunity, contesting the Republic's views as set forth in the Letter in both their opposition brief and a "supplemental" declaration by their Venezuelan law expert.  (*See* DMSJ Opp. at 34–40; Supplemental Declaration, dated June 27, 2020, Dkt. No. 152).

In short, Defendants were on notice of the Venezuelan law issues from the outset of this litigation, they have fully briefed those issues and submitted the testimony of their own expert thereon, and they have submitted an additional declaration by their expert directly addressing the Republic's Letter.  In these circumstances, Defendants have suffered no prejudice as a result of any purported delay in the submission of the Republic's Letter to this Court.  *See Syntel Sterling*, 2020 WL 1442915, at *5 (explaining that the "harsh sanction of preclusion is not appropriate" given that defendants were "not prejudiced because they submitted evidence regarding the primary issue addressed" in the Rule 44.1 declaration); *Torah Soft*, 224 F. Supp. 2d at 719

(denying motion to strike because plaintiffs "have suffered no prejudice, as they have availed themselves of the opportunity to reply" to defendant's Rule 44.1 submission "and have included a further declaration by their expert, addressing Israeli law as it relates to the counterclaims at issue").

3.     The Republic's Letter Represents the Official Views of a Foreign Sovereign and Is Not an Expert Report

Defendants also contend that the Republic's Letter should be struck because it "effectively provid[es] Plaintiffs an unchallenged sur-reply from a new 'expert' to correct significant deficiencies in the opinions of their disclosed expert, Professor Brewer."[6]  (DOB at 12).  This argument is nonsensical.  Ambassador Vecchio, who submitted the Republic's Letter on behalf of the Republic, is not a party or an expert witness.[7]  He is the recognized Ambassador of Venezuela to the United States, and it is inappropriate to treat the credentialed representative of the recognized *de jure* government of a foreign sovereign as anything less.  For this simple reason, the cases cited by Defendants are entirely inapposite.  *See Nabulsi v. Nahyan*, No. H–06–2683, 2009 WL 1658017, at *3 (S.D. Tex. June 12, 2009), *aff'd*, 383 F. App'x (5th Cir. 2010) (excluding expert report because the purported expert admitted he is not an expert on United Arab Emirates law and did not make use of any of the relevant foreign law rules at issue); *Bitumenes Orinoco, S.A. v. New Brunswick Power Holding Corp.*, No. 05 Civ. 9485 (LAP), 2007 WL 485617, at *19 n.21 (S.D.N.Y. Feb. 13, 2007) (rejecting expert declaration where purported

---

[6] Plaintiffs are in no way "dissatisfied with their expert reports."  Nor has Professor Brewer made "a complete *volte-face* on the key issues of this case[.]"  (DOB at 12).  As explained at length in Plaintiffs' opening summary judgment brief, Professor Brewer, one of the framers of the current Venezuelan Constitution and a renowned scholar of Venezuelan law, has *not* suddenly adopted a contradictory opinion on any of the issues in this case.  (*See* PSJ at 36–37; *see also* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, filed June 30, 2020, Dkt. No. 159, at 25–26).

[7] Regardless, as set forth above, even if the Letter were treated as an expert declaration—which it is not—nothing precludes this Court from considering it.  *See Syntel Sterling*, 2020 WL 1442915, at *5 (denying motion to strike a foreign law declaration as untimely); *Tyco Int'l*, 2010 WL 3860390, at *2 (denying motion to strike Rule 44.1 submission for lack of disclosure).

expert conceded that he is not an expert on the issues upon which he opined).  Defendants' claim

that the Letter constitutes "an unchallenged sur-reply" is belied by the fact that Defendants and

their expert have, in fact, submitted briefing and a declaration challenging the Letter.  (*See* DMSJ

Opp. at 34–40; Supplemental Declaration, dated June 27, 2020, Dkt. No. 152).

4. <u>The Republic's Letter Does Not Improperly Introduce Facts</u>

As a final salvo, Defendants assert that the Republic's Letter "introduces purported

'facts' and arguments that are wholly improper, even within the context of Rule 44.1."  (DOB at

13).  Defendants once again miss the mark, and tellingly cite no authority to support this

erroneous argument.

The Republic may put forward whatever facts it deems necessary to support its

considered views of its own laws.  It is up to the Court, in its discretion, to determine which (if

any) of those facts aid its resolution of the foreign law issue before it.  *See*, *e.g.*, *Base Metal*

*Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 700 (S.D.N.Y. 2003), *aff'd*, 98 F. App'x

47 (2d Cir. 2004) ("The Court must decide what weight, if any, to give to [the foreign law]

declarations and to all of the evidence the Court uses in determining Russian law, but the Court

will make such a determination rather than to merely strike informative testimony.").

While the Republic's Letter does discuss, in broad terms, the strategic relevance of

CITGO to the democratic transition in Venezuela, these facts contextualize and fully explain the

Republic's views of its own laws and official acts with respect to the Transaction Documents.

This is entirely proper under Rule 44.1.  *See Daehan Inv. Tr. Mgmt. Co. v. J.P. Morgan Chase*

*Bank*, No. 02 Civ. 1379 (RCC) (DFE), 2003 WL 21297304, at *2 (S.D.N.Y. June 4, 2003)

10

(factual references at issue concerning intent of the Argentine Government were raised "as a *legal* question" and did not exceed limits of Rule 44.1).[8]

At best, Defendants' challenge goes to the weight the Court should give the noted provisions of the Republic's Letter, and not to the propriety of the Court considering the Republic's views.  *See Base Metal Trading*, 253 F. Supp. 2d at 700.

### B.      The Letter Is Not Only Admissible, It Is Entitled to Substantial Weight

Supreme Court precedent requires this Court to "carefully consider" the Republic's "views about the meaning of its own laws," and, in these circumstances, the Republic's interpretation of its own constitution and laws as expressed in the Republic's Letter are entitled to substantial weight.  *Animal Sci. Prods.*, 138 S. Ct. at 1873.  It would violate the doctrine of comity for this Court to accede to Defendants' entreaties to strike the Letter in its entirety on the basis of their assertion that the Republic is "an interested third party."  (DOB at 11).

Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws."  *The Argo Fund Ltd. v.  Bd. of Dirs. of Telecom Argentina, S.A.*, 528 F.3d 162, 171 (2d Cir. 2008) (quoting *Hilton v. Guyot*, 159 U.S. 113, 143 (1895)).  Under principles of comity, federal courts "deciding questions of foreign law. . . should carefully consider a foreign state's views about the meaning of its own laws."  *Animal Sci. Prods.*, 138 S. Ct. at 1873.  The "appropriate weight in each case will depend upon the circumstances."  *Id.*  "Relevant

---

[8] Further, the statements of fact in the Republic's Letter parallel similar statements included in the letter from the Republic of Venezuela to the Eleventh Circuit in the *PDVSA Litigation Trust* case, which was supported by Defendant's counsel (Bliss Decl. Ex. 1).  *See* Bliss Decl. Ex. 2 at 3 (claims at issue in *PDVSA Litigation Trust* "relate to Venezuela's petroleum industry, an industry vital to Venezuela's national interests.  The Litigation Trust Agreement thus would significantly affect Venezuela's economy and public interest and clearly fulfills criteria of a national public interest contract under the Venezuelan Constitution.").

considerations include the statement's clarity, thoroughness, and support; its context and purpose; the transparency of the foreign legal system; the role and authority of the entity or official offering the statement; and the statement's consistency with the foreign government's past positions." *Id.* at 1873-74.

As set forth in Plaintiffs' opening brief in support of their summary judgment motion, the considerations identified in *Animal Science* weigh heavily in favor of deferring to the Republic's interpretation of its own laws here.  (PSJ at 28–29).  The Republic's Letter presents a clear and thorough explanation of the relevant constitutional and legal principles supporting its conclusion that the Indenture and the Pledge were illegally and unconstitutionally executed.  The Letter is executed by Venezuela's credentialed ambassador to the United States, whose primary role is to represent the Republic's views and interests to the United States Government.  *See, e.g.*, *Banco de Espana v. Fed. Reserve Bank of New York*, 114 F.2d 438, 445-46 (2d Cir. 1940) (affidavit from ambassador of Spain alleging that the Spanish Government had authority to requisition a cache of silver through governmental decree was accepted by the court as proof of the fact that such acts had occurred).  The Republic's interpretation is consistent with the overwhelming majority of Venezuelan legal scholars.  (*See* PSJ at 29–38).  Furthermore, the Republic's position, as represented by a recognized official of the Guaidó Government, is consistent with resolutions passed by the duly elected National Assembly dating back to May 2016, long before litigation was contemplated.  (*See id.* at 10–12).

For the foregoing reasons, the Republic's Letter is entitled to substantial weight.  *See United States v. Pink,* 315 U.S. 203 (1942) (deferring to the Soviet Government's declaration submitted to the Court stating that its nationalization decree applied to certain Russian assets located in the United States); *Cornea v. U.S. Attorney Gen.*, 771 F. App'x 944, 948 (11th Cir.

2019) (finding that the District Court had "made a manifest error of law" in not deferring to the Greek government's submission that was "offered by the agency tasked with interpreting Greek laws, consistent with the Greek authorities' past positions expressed in this case, and well-supported by the Greek Code of Criminal Procedure"); (Bliss Decl. Ex. 1 at 6–8 (Defendants' counsel arguing that an unsworn letter from Ambassador Vecchio is entitled to substantial weight under *Animal Science*)).

## II.    ALTERNATIVELY, THE REPUBLIC MAY SUBMIT AN AMICUS BRIEF

In a further attempt to prevent this Court from considering the views of the recognized sovereign of the Republic of Venezuela, Defendants devote five pages of their motion to the argument that the Republic ought to be precluded from filing an *amicus* brief in this matter. Specifically, Defendants erroneously contend that "[w]hile it is clear the Republic intends for the Vecchio Letter to serve as, at least in part, an *amicus* brief, the Republic has no inherent right to serve as an *amicus*" and that this Court should reject the Republic's Letter as it does not satisfy the requirements of an *amicus* brief.  (DOB at 15–20).  These arguments are meritless and entirely premature.

Contrary to Defendants' assertion, the Republic's Letter is not an *amicus* brief.  Rather, it is a submission to the Court pursuant to Rule 44.1 that provides the Republic's considered view of its own laws and official acts.  As explained above, the Republic's Letter is admissible in its current form under Rule 44.1 and entitled to substantial weight under Supreme Court precedent.

Defendants mistakenly claim that the Republic acknowledged "that an amicus curiae would be the appropriate form for such a filing."  (DOB at 16).  Not so.  As the Republic noted in its cover letter, "[i]f this Court would prefer to receive this expression of views in the form of a brief amicus curiae or *in some other form*, we will promptly provide them."  (Dkt. No. 80 at 1) (emphasis added).  Far from acknowledging that an *amicus* brief would be a more appropriate

form of transmitting the Republic's views, the Republic has simply offered to provide its views in whichever form would be most convenient for the Court.  Should the Court prefer to consider these views in the form of an *amicus* brief, the Republic should be permitted to submit a brief along with the legal arguments relevant to such a submission.  "A district court has broad discretion in deciding whether to accept an *amicus* brief."  *See, e.g.*, *City of New York v. United States*, 971 F. Supp. 789, 791 n.3 (S.D.N.Y. 1997) (citing cases).  None of the cases cited by Defendants is to the contrary.

Plaintiffs respectfully submit that this is unnecessary and that the Republic's Letter is entirely proper in its present form.  But at minimum, any resolution on this motion of arguments as to the Republic's ability to participate in this case as an *amicus* would be premature and prejudicial.

III.    **DEFENDANTS' ACCUSATIONS OF IMPROPRIETY ARE BASELESS**

Throughout their opening brief, Defendants resort to baseless and unprofessional attacks on Plaintiffs and the Republic by asserting: (1) that the Republic's Letter "is designed to give Plaintiffs a second bite at the apple by effectively supplementing and correcting the credibility issues of Plaintiffs' expert rather than offering the unbiased views of the Republic" (DOB at 10); (2) that Plaintiffs have engaged in "gamesmanship" (*id*.); (3) that the Republic is using its Rule 44.1 submission "as a procedural loophole . . . to launder [a] patently improper submission[]" (*id*. at 11); (4) that Plaintiffs are attempting to subvert the Court's schedule by introducing a "an unchallenged sur-reply from a new 'expert'" (*id*. at 12); (5) that Plaintiffs have "bypass[ed] the Court's page limits for briefing" by virtue of the Republic's Letter (*id*. at n.9); (6) that Plaintiffs have "put[] Professor Brewer's words in Ambassador Vecchio's mouth" (*id*. at 12); and (7) that the Republic is guilty of "ongoing and systemic interference with this litigation" (*id*. at 14).  These arguments are entirely without merit.

14

To begin with, the Republic's Letter was submitted by the Republic itself via its own counsel, Munger Tolles.  (*See* Dkt. No. 80).  That the Republic's views of its own laws and the official acts taken by the Guaidó Government support, and even closely align with, Plaintiffs' litigation position should be no surprise.  Those same legal views also happen to align with the views expressed in a brief filed by Defendants' other counsel, Paul Weiss, in a case involving similar legal issues.  The hypocritical claim of conspiracy now advanced by Defendants should be seen for what it is—an effort to shield this Court from persuasive evidence that the Indenture, Pledge, and 2020 Notes are invalid under Venezuelan law.

Although Defendants assert that Plaintiffs have somehow attempted to subvert the Court's schedule and skirt Your Honor's page limits for briefing by virtue of the Republic's Letter—which, again, is an appropriate mechanism for the Republic to express its views as to its own laws—it is Defendants who have flouted the Court's schedule and page limitations in their presentation of Venezuelan public law issues.  In particular, Defendants submitted a 45-page declaration by their Venezuelan law expert in support of their summary judgment motion.  (Dkt. No. 84).  This declaration (which totals 1,708 pages including exhibits) is in reality nothing more than a second rebuttal report aimed at contesting the rebuttal report of Plaintiffs' Venezuelan law expert.  (*See id.* ¶ 9 ("In this Declaration, I summarize for the Court's convenience my opinions, as expressed in my Expert Report and Rebuttal Report, *and, where noted, respond to arguments first raised by Professor Brewer-Carías in his rebuttal report*.") (emphasis added)).  Defendants also submitted a separate 23-page declaration from the same expert along with their summary judgment opposition brief, which addresses the views expressed in the Republic's Letter, and which improperly opines on the Venezuelan law issues set forth in Plaintiffs' opening summary judgment brief.  (*See* Dkt. No. 152 ¶ 9 ("I submit this declaration to opine on new developments

in this matter that occurred after the submission of expert reports, including: (i) the filing of a

letter from Ambassador Carlos Vecchio to Judge Katherine Polk Failla dated June 9, 2020, and

(ii) the Venezuelan law arguments raised by the PDVSA Parties for the first time in their

memorandum of law in support of their motion for summary judgement[.]")  The Court's

schedule does not contemplate sur-rebuttals of this kind, and Defendants can hardly complain

that they were unfairly prejudiced by the Letter, particularly when they have already responded

to it at such length.

## IV.     DEFENDANTS IMPROPERLY RELY UPON PURPORTED RECORDINGS THAT ARE ILLEGAL AND THAT WERE PUBLICIZED BY SANCTIONED INDIVIDUALS

Finally, Plaintiffs are disappointed to be in the position of addressing accusations that,

given their genesis, have utterly no place in this Court.  In their motion to strike, despite its at

best tangential relevance, Defendants rely at length upon a purported recording[9], which if

authentic would have been recorded illegally under Venezuelan law, of former Special Attorney

General Dr. José Ignacio Hernandez—the purpose of which is not to show why the Republic's

letter should be rejected but instead to try to discredit Plaintiff's legal position as "weak and

fractured."  (DOB at 1–2, 15, 19, Clark Decl. Ex. 1).  As an initial matter, Defendants repeatedly

mischaracterize the recordings as relating to this litigation (which is nowhere mentioned in

Clark. Decl. Ex. 1).  Defendants offer no basis for this speculation or even for the claim that the

Special Attorney General was referring in any way to this litigation, or any other individual case

for that matter.  Further, the recordings upon which Defendants rely were allegedly made during

non-public, privileged meetings of the Permanent Commission on Energy and Petroleum on June

---

[9] Defendants do not even attempt to lay a foundation for the authenticity of this recording, and appear to have simply taken it (without even pausing to consider the implications of doing so) from a broadcast by the SDN representative of the criminal Maduro regime, as described herein.

3 and June 10, 2020, in violation of the Venezuelan Constitution.  As explained in a letter dated

July 1, 2020, to Juan Guaidó by Elías Matta Webhe, President of that Commission:[10]

> Pursuant to articles 13.8, 56 and 119 of the Internal Regulations and the Regulations on Debates of the National Assembly, appearances by the Special Attorney General and the Chairman of the *ad hoc* board of directors of PDVSA on Wednesday, June 3 and Wednesday, June 10, 2020, were not public.  During these meetings the Special Attorney General noted that, owing to the confidential nature of the information being submitted, it was necessary for it to retain this private nature.  For that reason, in my capacity as Chairman of the Commission, I submitted its status as a private meeting for consideration by the deputies as set forth in the corresponding minutes.  Consequently, all of the information and documents submitted by the appearing parties and the deputies in those meetings are protected as being confidential in nature.

(Bliss Decl. Ex. 5 at 1).

Mr. Webhe explains that "the recording illegally taken of these meetings of the

Commission is in direct violation of article 48 of the Constitution of the Republic according to

which *'the secrecy and inviolability of prior communications in all their forms is guaranteed.*

*These may not be interfered with except by order of a competent court, with compliance of the*

*legal provisions and retaining the secrecy of those private matters that bear no relationship to*

*the corresponding proceeding.'"*  (*Id.*).  The recordings upon which Defendants rely thus

"violated the confidential nature" of the aforementioned meetings and "implied an

unconstitutional, unlawful and illegal intervention in private communications[.]"  (*Id.*).

These purported recordings were released publicly as an act of propaganda by the

illegitimate Maduro regime, and in particular by the regime's illegitimate former "Vice

President" Delcy Rodriguez, an individual whom OFAC has designated a Specially Designated

---

[10] A certified English translation of the letter is attached as Exhibit 5 to the Declaration of James R. Bliss filed herewith.

National, at the behest of Maduro (himself a SDN and recently indicted narco-terrorist).[11]  Apart from the fact that Defendants simply assume the authenticity and accuracy of the recording notwithstanding its origin, it is a violation of United States law for any U.S. person to accept from or provide any service to a SDN.[12]  Defendants' decision to further the aims of the Maduro regime by weaponizing regime propaganda to attack representatives of the Guaidó Government, such as Ambassador Vecchio, raises serious questions.  In short, the illegitimate Maduro regime, "by recourse to unlawful and unconstitutional acts, has attempted to utilize these recordings to undermine and damage the institutional position of the National Assembly in the litigation aimed at defending the assets of Venezuela[.]"  (Bliss Decl. Ex. 5 at 2).  Given this background, Defendants' decision to use illegal recordings in a filing on this Court's docket is an absolutely improper attempt to profit from the illegal acts of the Maduro regime.  This Court should not reward Defendants for the effort.

All told, Defendants' motion is nothing more than an ill-advised attempt to discredit the Guaidó Government—the only recognized government of Venezuela—and otherwise improperly to prevent the Court from considering the Republic's views of its own laws and its own official

---

[11] *See Venezuela Unveils Plot to Plunder Its Nation's Oil Wealth*, teleSUR (June 18, 2020), attached as Exhibit 6 to the Declaration of James R. Bliss filed herewith (describing Delcy Rodriguez press conference at which recording was released); U.S. Department of Treasury, Office of Foreign Assets Control, *Venezuela-related designations* (Sept. 25, 2018) at 1, attached as Exhibit 7 to the Declaration of James R. Bliss filed herewith (announcing that Delcy Rodriguez has been added to OFAC's Specially Designated Nationals list); Department of Justice, Office of Public Affairs, *Nicolás Maduro Moros and 14 Current and Former Venezuelan Officials Charged with Narco-Terrorism, Corruption, Drug Trafficking and Other Criminal Charges*  (Mar. 26, 2020), attached as Exhibit 8 to the Declaration of James R. Bliss filed herewith.

[12] *See* U.S. Department of Treasury, Specially Designated Nationals And Blocked Persons List (SDN) Human Readable Lists (last visited July 8, 2020), attached as Exhibit 9 to the Declaration of James R. Bliss filed herewith ("As part of its enforcement efforts, OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries.  It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific.  Collectively, such individuals and companies are called 'Specially Designated Nationals' or 'SDNs.'  Their assets are blocked and U.S. persons are generally prohibited from dealing with them").

acts that are detrimental to the Defendants' claims.  As detailed above, the Republic's Letter is admissible and entitled to substantial weight, and Defendants' motion to strike is meritless.

## <u>CONCLUSION</u>

Accordingly, this Court should deny Defendants' motion to strike the letter submitted by Ambassador Carlos Vecchio on behalf of the Republic.

Dated: New York, New York
        July 13, 2020             Respectfully submitted,

                                         */s/ Kurt W. Hansson*
                                         Kurt W. Hansson
                                         James R. Bliss
                                         James B. Worthington

                                         PAUL HASTINGS LLP
                                         200 Park Avenue
                                         New York, New York 10166
                                         Telephone: (212) 318-6000
                                         Facsimile: (212) 319-4090
                                         kurthansson@paulhastings.com
                                         jamesbliss@paulhastings.com
                                         jamesworthington@paulhastings.com

                                         *Attorneys for Plaintiffs and Counterclaim*
                                         *Defendants Petróleos de Venezuela, S.A. and*
                                         *PDVSA Petróleo, S.A.*

                                         */s/ Jeffrey B. Korn*
                                         Jeffrey B. Korn
                                         Michael Gottlieb
                                         Nicholas Reddick
                                         Cole S. Mathews

                                         WILLKIE FARR & GALLAGHER LLP
                                         787 Seventh Avenue
                                         New York, NY 10019
                                         Telephone: (212) 728-8000
                                         Facsimile: (212) 728-8111
                                         jkorn@willkie.com
                                         cmathews@willkie.com

                                         1875 K Street NW
                                         Washington, DC  20006-1238
                                         Telephone: (202) 303-1442
                                         Facsimile: (202) 303 2442
                                         mgottlieb@willkie.com
                                         nreddick@willkie.com

                                         *Attorneys for Plaintiff and Counterclaim Defendant*
                                         *PDV Holding, Inc.*

20