UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PETRÓLEOS DE VENEZUELA, S.A., PDVSA PETRÓLEO, S.A., and PDV HOLDING, INC.,

    Plaintiffs and Counterclaim Defendants,

- against -

MUFG UNION BANK, N.A. and GLAS AMERICAS LLC,

    Defendants and Counterclaim Plaintiffs

No. 19 Civ. 10023 (KPF)

---

### DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DAVID C. HINMAN

PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
Walter Rieman
William A. Clareman
Jonathan Hurwitz
Shane D. Avidan
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Facsimile:  212-757-3990

PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
Roberto J. Gonzalez (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006-1047
Telephone: 202-223-7300

*Attorneys for Defendants and Counterclaim Plaintiffs
(as to New York law issues only)*

LATHAM & WATKINS LLP
Christopher J. Clark
Matthew S. Salerno
Sean H. McMahon
885 Third Avenue
New York, NY 10022
Telephone: 212-906-1200
Facsimile:  212-751-4864

*Attorneys for Defendants and Counterclaim Plaintiffs*

## Table of Contents

                                                                                  Page

Table of Authorities .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .................................................................................................................... 1

    I.      Mr. Hinman's Definition of "Invalidity Risk" Conflates Legal and Political Risks. ................................................................................. 1

    II.     Mr. Hinman's Review of Market Commentary Is Flawed and Unreliable. ............................................................................................... 4

    III.    Mr. Hinman's Testimony Does Not Show that "Invalidity Risk" Had Any Impact on the 2020 Notes' Price, Recovery Rate, or Market Interest in the Exchange. .................................... 8

    IV.    Mr. Hinman's Enrichment Opinions Are Irrelevant and Unreliable. ................................................................................................... 9

CONCLUSION ............................................................................................................... 10

## Table of Authorities

**Page(s)**

**CASES**

*United States* v. *Litvak*,
   808 F.3d 160 (2d Cir. 2015) ..................................................................................7

*In re Longtop Fin. Tech. Ltd. Sec. Litig.*,
   32 F. Supp. 3d 453 (S.D.N.Y. 2014) ......................................................................7

*LVL XIII Brands, Inc.* v. *Louis Vuitton Malletier S.A.*,
   209 F. Supp. 3d 612 (S.D.N.Y. 2016) ................................................................2, 5

*In re Lyondell Chem. Co.*,
   558 B.R. 661 (Bankr. S.D.N.Y. 2016) ...................................................................7

*Media Sport & Arts s.r.l.* v. *Kinney Shoe Corp.*,
   1999 WL 946354 (S.D.N.Y. Oct. 19, 1999) ..........................................................6

*Monterey* v. *City of New York*,
   2019 WL 5884466 (S.D.N.Y. Nov. 12, 2019) .......................................................8

*R.F.M.A.S., Inc.* v. *So*,
   748 F. Supp. 2d 244 (S.D.N.Y. 2010) ................................................................5, 9

*Silvercreek Mgmt., Inc.* v. *Citigroup, Inc.*,
   346 F. Supp. 3d 473 (S.D.N.Y. 2018) ....................................................................5

*U.S. Info. Sys., Inc.* v. *IBEW Local Union No. 3, AFL-CIO*,
   313 F. Supp. 2d 213 (S.D.N.Y. 2004) ............................................................6, 8, 9

*In re Urethane Antitrust Litig.*,
   152 F. Supp. 3d 357 (D. N.J. 2016) .......................................................................8

**OTHER AUTHORITIES**

Arturo C. Porzecanski, *Venezuela: Sliding into a Generalized Default*,
   AULA BLOG (Jan. 9, 2018) ....................................................................................4

Arturo C. Porzecanski, *The PDVSA 2020 bond: time for a solution*,
   FINANCIAL TIMES (Nov. 18, 2019) .........................................................................4

**PRELIMINARY STATEMENT**

The testimony of proposed economic expert David C. Hinman is inadmissible on several grounds, and none of the principal flaws identified in the Trustee and Collateral Agent's motion to preclude are contested in the PDVSA Parties' opposition. The PDVSA Parties acknowledge he defines his core term—"invalidity risk"—to include both political repudiation risk and the separate risk of legal invalidity as a matter of contract law. They concede that Mr. Hinman, in opining that sophisticated investors "knew or should have known" of this "invalidity risk," did not consider any of the substantial market commentary that cuts against his opinion, and did not survey the "totality of the evidence" to determine what a reasonable, sophisticated investor would conclude based on the total mix of information available at the time of the Exchange. The PDVSA Parties admit that his testimony is "not being offered to prove[] that the invalidity risk *caused* " any impact on the pricing, recovery rates, or investor interest in the 2020 Notes. And the PDVSA Parties agree that Mr. Hinman's opinion that PDVSA was "not enriched" by the Exchange did not consider a scenario in which the 2020 Notes or Collateral Pledge were held to be unenforceable in this action, after PDVSA had already received benefits under the terms of the Exchange in the form of maturity relief and deferred payments.

These failings in Mr. Hinman's work render his opinions inadmissible. Even in a bench trial, *Daubert* establishes standards against which all expert opinions must be tested, and Mr. Hinman's proposed testimony falls far short. The motion to preclude should be granted.

**ARGUMENT**

I.     **Mr. Hinman's Definition of "Invalidity Risk" Conflates Legal and Political Risks.**

The Trustee and Collateral Agent sought to preclude Mr. Hinman's opinion that sophisticated investors "knew or should have known" of "invalidity risk" because his definition

of "invalidity risk" improperly conflates "the legal risk that a court of competent jurisdiction will declare the 2020 Notes legally invalid and thus unenforceable," with "the political risk that a Venezuelan governmental entity would deem the pledge invalid by repudiating the debt for political reasons." Mem. 7. Only the former risk is even arguably relevant to any claim or defense in this case; the risk of political repudiation, which need not be based on any legal deficiency under principles of contract law, is plainly irrelevant to the merits of this case.

The PDVSA Parties argue that Mr. Hinman's opinions are relevant to affirmative defenses raised by the Trustee and Collateral Agent, which require a showing that "the 2020 Noteholders reasonably relied on . . . statements of the Maduro-controlled PDVSA or its agents affirming the validity of the 2020 Notes." Opp. 9. Yet Mr. Hinman does not address any such statements, and does not call reliance on them into question. At the time of the Exchange, the PDVSA Parties represented, among other things, that they had done "all things necessary" to make the 2020 Notes "valid obligations," they "require[d] no additional action by . . . any governmental authority," and did "not contravene any Applicable Law," including Venezuelan law. *See* Answer ¶¶ 143–44; 56.1 ¶¶ 195–210. Mr. Hinman discusses none of these statements, and his opinion that investors "knew or should have known" of "invalidity risk" does not show that any investor "knew or should have known" these statements were false. Instead, the "invalidity risk" Mr. Hinman describes draws no distinction between the risk that these statements were false (due to some legal infirmity), and the risk that a successor government would repudiate the debt irrespective of whether these statements were true at the time they were made. As a result, his opinion is irrelevant and fails to satisfy *Daubert*'s "fit" requirement. *See LVL XIII Brands, Inc.* v. *Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 642–43 (S.D.N.Y. 2016).

The PDVSA Parties attempt to justify Mr. Hinman's definition of "invalidity risk"—a definition invented by counsel for purposes of this case, which does not come from finance literature or industry usage, Opp. 10 n.4, 11—to include both legal and political risks because the "political risk identified by Mr. Hinman" is "a necessary precondition for any legal risk of invalidity." *Id.* 2, 11.  This explanation does not remotely cure the deficiency.  Even if it were true that the ascension of an opposition party was a precondition for any legal risk under principles of contract law to materialize in this case (a proposition which does not make sense, as it assumes that Maduro would never seek to avoid obligations under the 2020 Notes if there were grounds to do so), political repudiation risk does not depend on an underlying legal risk associated with the authorization to execute the Governing Documents.  Consequently, even if a hypothetical investor "knew" there was a risk of political repudiation by the National Assembly if it came to power, it does not follow that such repudiation would be based on a claimed defect in PDVSA's authority to have performed the Exchange.  Indeed, at the time of the Exchange, although the National Assembly expressed disagreement with the Exchange as a matter of public policy, it did not state that the Indenture or Pledge Agreement were illegal or void *ab initio* for lack of National Assembly approval.  Nothing in the Hinman Report explains how or why a reasonable investor would conclude from the public information available at the time that PDVSA's statements about the lawfulness of the Exchange or its authority to enter into it was subject to uncertainty; knowledge of "invalidity risk" as he defines that term would not suffice.

The PDVSA Parties' attempt to conjure support for Mr. Hinman's definition of "invalidity risk" in the discovery record fares no better.  For example, █████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

3



The irrelevant and unreliable nature of Mr. Hinman's definition of "invalidity risk" renders all of his opinions on that subject inadmissible.

## II.   Mr. Hinman's Review of Market Commentary Is Flawed and Unreliable.

Mr. Hinman's opinion that "extensive" market commentary discussed "invalidity risk" refers to a small fraction of the commentary to which investors might have had access, and virtually none of the commentary identified the alleged legal invalidity at issue in this case. *See* Mem. 8–9.  He performed no systematic review of any particular universe of information available to investors, ignored all information that did not support his thesis, and made no effort to comprehensively assess how the totality of available information would have been interpreted by reasonable, sophisticated investors at the time.  *Id.* 9.  His opinion is thus not supported by any reliable methodology and should be excluded.

---

[1]   The PDVSA Parties also misleadingly cite a statement made in 2018 by Professor Porzecanski, that "the validity of some debts could be challenged, especially by an eventual successor government, because not all received proper authorization (e.g., from the National Assembly)." Arturo C. Porzecanski, *Venezuela: Sliding into a Generalized Default*, AULA BLOG (Jan. 9, 2018), https://aulablog.net/2018/01/09/venezuela-sliding-into-a-generalized-default/; Opp. 11.  Contrary to the PDVSA Parties' suggestion, the statement does not refer to the 2020 Notes, and offers no opinion whether a possible challenge would be valid.  In an article published the following year (before he was engaged in this litigation) specifically addressing the 2020 Notes, Professor Porzecanski characterized this case as a "Hail Mary pass" by the PDVSA Parties, and explained that "PDVSA has never requested authorisation from the National Assembly to incur debt, so what transpired [in the Exchange] was business as usual." Arturo C. Porzecanski, *The PDVSA 2020 bond: time for a solution*, FINANCIAL TIMES (Nov. 18, 2019), https://ftalphaville.ft.com/2019/11/14/1573766503000/The-PDVSA-2020-bond--time-for-a-solution/.

The PDVSA Parties concede that Mr. Hinman ignored market commentary that did not address invalidity risk, including commentary that, in their words, "downplayed that risk," and argue that he need not review "every single piece of public commentary under the sun regarding the 2020 Notes." Opp. 14.  But, to render an expert opinion, an expert must "use a reliable methodology" that can be "tested or challenged in an[] objective sense." *LVL XIII Brands, Inc.*, 209 F. Supp. 3d at 644–48.  Thus, when evaluating the import of public information, an expert must use a reliable methodology for surveying the available, relevant information and assessing how the record as a whole supports (or does not support) the conclusion.  *See id.* at 637, 644–48 (excluding opinion on secondary meaning and distinctiveness based on social media posts, where expert did not "establish parameters to guide" selection of posts or explain how content of posts or reactions to posts supported opinion); *R.F.M.A.S., Inc.* v. *So*, 748 F. Supp. 2d 244, 283 (S.D.N.Y. 2010).

Astonishingly, the PDVSA Parties even concede that a reasonable investor, "after reviewing the totality of the evidence, may have decided there was little to no invalidity risk." Opp. 15.  They nevertheless claim Mr. Hinman's opinion is relevant because even such investors would have been "aware of the [invalidity] risk."  This strange claim underscores one of the fundamental flaws in his opinion:  if a sophisticated investor, based on the totality of the evidence, could consider "invalidity risk" non-existent or immaterial, certainly those investors could have reasonably relied on PDVSA's statements about the lawfulness of the Governing Documents at the time of the Exchange Offer.  *See Silvercreek Mgmt., Inc.* v. *Citigroup, Inc.*, 346 F. Supp. 3d 473, 480, 485 (S.D.N.Y. 2018) (rejecting argument that sophisticated investor's reliance on company's financial statements was unreasonable in light of "[c]autionary signs," including "mixed" analyst and credit agency reports and "the announcement of an SEC inquiry,"

5

where investor "consulted a host of different sources" revealing multiple "positive assessments" of debt securities). Nothing in the Hinman Reports indicates otherwise.

This admission highlights the central, methodological flaw in Mr. Hinman's opinion. In lieu of any comprehensive analysis, he simply marshals cherry-picked sentences from various public reports from a variety of sources over a multi-year period. *See* Hinman Rep. ¶ 22. Mr. Hinman provides no reason to believe that any actual investors would have reviewed the same set of commentary he did. As explained in the opening brief, this sort of marshalling of the record does not constitute a reliable methodology under *Daubert*. Mem. 9. Indeed, one of the very cases that the PDVSA Parties cite in their opposition makes exactly this point, and excludes expert testimony for a similar error. *See* Opp. 17; *U.S. Info. Sys., Inc.* v. *IBEW Local Union No. 3, AFL-CIO*, 313 F. Supp. 2d 213, 234 (S.D.N.Y. 2004) (excluding opinion based on subpoenas designed "to select projects with the very price differential that [the expert's] analysis was designed to test for").

The PDVSA Parties' recourse to the factual record to argue that "sophisticated investors would have (or should have) been aware of the invalidity risk" because Ashmore and BlackRock "received much of the commentary and market analysis that Mr. Hinman reviewed" does not save Mr. Hinman's opinions. Opp. 12–14. The question of which pieces of information specific investors received and what conclusions they drew is not a matter on which experts can opine. *See Media Sport & Arts s.r.l.* v. *Kinney Shoe Corp.*, 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999). Those are questions only fact witnesses can answer. Moreover, in relying on the factual record, the PDVSA Parties routinely mischaracterize it and ignore evidence that contradicts Mr. Hinman's opinion. For example, ███████████████████████
████████████████████████████████████████████████████████████████



Conceivably, an economic expert for the PDVSA Parties *could have* sought to opine on the subject of how sophisticated investors typically evaluate and categorize risks, and sought to explain under generally accepted standards how the significance of those risks would be assessed, and applied those standards to the facts of this case. *Cf. United States* v. *Litvak*, 808 F.3d 160, 182 (2d Cir. 2015) (expert may testify about "the process by which investment managers value RMBS"). Mr. Hinman did not do that. He embarks on a project to mischaracterize assorted documents that the PDVSA Parties can seek to admit into evidence without an expert, and fact witnesses can testify to whether they saw the information and if so what conclusions they reached and why. His testimony contributes no specialized knowledge, and courts routinely exclude this type of testimony. *See, e.g.*, *In re Longtop Fin. Tech. Ltd. Sec. Litig.*, 32 F. Supp. 3d 453, 458 (S.D.N.Y. 2014) (excluding "factual narrative"); *In re Lyondell Chem. Co.*, 558 B.R. 661, 668–69 (Bankr. S.D.N.Y. 2016) (same). His opinions concerning market commentary should be excluded.

---

2 ████████████████████████████████████████

### III. Mr. Hinman's Testimony Does Not Show that "Invalidity Risk" Had Any Impact on the 2020 Notes' Price, Recovery Rate, or Market Interest in the Exchange.

The Hinman Report opined that: (i) the price for the 2020 Notes after PDVSA's default, (ii) the recovery rating assigned by Fitch to the 2020 Notes, and (iii) the "muted" investor response to the Exchange Offer were "consistent with" the presence of invalidity risk. Hinman Rep. ¶ 19(a)(iii)–(v). None of these claims is empirically supported by any analysis, and is therefore inadmissible. *See* Mem. 11–12.

The PDVSA Parties concede that Mr. Hinman's testimony does not establish that invalidity risk *actually caused* any of the pricing effects described above. Opp. 17. Indeed, they state—as though it is a defense—that Mr. Hinman "was not asked to opine, and his testimony is not being offered to prove, that the invalidity risk *caused* " any of these effects. *Id.* (emphasis in original). This concession should end the analysis. If Mr. Hinman is not opining on whether "invalidity risk" caused any price impact, or impact on Fitch's recovery ratings, or diminished interest in the Exchange Offer, he should be precluded from offering testimony on those issues.

The PDVSA Parties meekly suggest that Mr. Hinman's opinion is nevertheless admissible based on other cases allowing "consistent with" opinions, but the cases they rely on are inapposite. Opp. 17. In two cases, experts applied a generally accepted methodology for proving antitrust claims with indirect evidence of anticompetitive conduct. *U.S. Info. Sys.*, 313 F. Supp. 2d at 221, 229 (applying "widely accepted" methodology to "determine whether there was anticompetitive conduct"); *In re Urethane Antitrust Litig.*, 152 F. Supp. 3d 357, 361 (D. N.J. 2016) (applying "'structure-conduct-performance' paradigm that other courts have accepted"). In the third case, an expert opined that a party's injury was "unusual unless there ha[d] been trauma with sudden force," which "implicitly eliminate[d] other potential causes." *Monterey* v. *City of New York*, 2019 WL 5884466, at *3, 6 (S.D.N.Y. Nov. 12, 2019). Mr. Hinman neither

8

applied a generally accepted methodology nor ruled out other potential causes. His opinion rests entirely on speculation, has no scientific foundation, and sheds no light on any fact in dispute.

The PDVSA Parties attempt to support Mr. Hinman's opinion by asserting that "even in the context of causation, '[i]t is not required . . . that an expert categorically exclude each and every possible alternative cause.'" Opp. 18. This is beside the point, given that they concede that Mr. Hinman "was not retained as a causation expert" and offers no opinion on that issue. *Id.* 3. In any event, "[a]n expert must demonstrate that he has adequately accounted for obvious alternative explanations in order for his testimony to be reliable." *U.S. Info. Sys.*, 313 F. Supp. 2d at 238; *see also* Mem. 11. Mr. Hinman's analysis fails this test.

Mr. Hinman considers only one alternative cause for only one of his observed pricing effects: the effect of U.S. sanctions policy on the 2020 Notes' pricing post-default. But even there, the PDVSA Parties concede he performs no price impact analysis, event study, or other generally accepted methodology to evaluate whether sanctions policy had an impact on the price of the 2020 Notes. Hinman Rep. ¶ 62; Mem. 14–15. The opinion is precisely the type of unreliable, speculative junk science that courts routinely exclude.[3] *See R.F.M.A.S.*, 748 F. Supp. 2d at 271–74 (excluding testimony as "not a principled method of inquiry" where experts failed to consider "obvious possibility" that decline in sales was attributable to conscious decision).

### IV. Mr. Hinman's Enrichment Opinions Are Irrelevant and Unreliable.

Nothing in the PDVSA Parties' opposition supports the relevance or reliability of

---

[3] The PDVSA Parties mount a half-hearted defense of Mr. Hinman's assessment of the impact of sanctions policy on the price of the 2020 Notes, by arguing that his use of a 7-day window to observe price movements is somehow consistent with the use of 1- or 2-day windows commonly used in event studies for securities that trade in efficient markets. Opp. 19. There is no evidence that the 2020 Notes traded in an efficient market, and in any case, if 1- or 2-day windows are commonplace, that does not support his use, without supporting analysis, of a 7-day window. The defense of Mr. Hinman's analysis of the 2016 Fitch report is equally lacking; it concedes the report "does not specifically discuss the invalidity risk," and merely refers to generic ratings criteria and speculates that "it follows that Fitch's recovery rating for the 2020 Notes would have considered the invalidity risk." Opp. 20–21. This conjectural testimony is inadmissible.

Mr. Hinman's opinion that PDVSA was "not enriched" because the Exchange Offer, compared to other debt exchanges in sovereign and SOE restructurings, offered terms that were "unusually favorable" to investors. It is undisputed that he employs no methodology to isolate and quantify the value of the benefits PDVSA received in the Exchange, and offers no opinion on whether the PDVSA Parties would be enriched at the bondholders' expense if the PDVSA Parties were relieved of their obligations under the Governing Documents. Mem. 17–18.

The PDVSA Parties' sole defense of Mr. Hinman's enrichment opinion is that it "bears upon" the unjust enrichment counterclaim. Opp. 24. For the reasons explained in the opening brief, it does no such thing because it does not fit the legal theory at issue. The Trustee and Collateral Agent allege that the PDVSA Parties will be unjustly enriched if the 2020 Notes are voided. *See* Answer ¶¶ 221–26. A comparison of the terms of the Exchange—which the PDVSA Parties seek to invalidate *only after* reaping the benefits of maturity extensions and deferred payments—to other exchanges is irrelevant to the question of whether the PDVSA Parties would be enriched if they receive benefits without fully performing their obligations in exchange. If the 2020 Notes or Collateral Pledge is voided, the PDVSA Parties would retain the benefits they bargained for, while depriving investors of the consideration they received. Mr. Hinman's opinion is not relevant to this unjust enrichment claim.[4]

## CONCLUSION

Mr. Hinman's testimony should be excluded in its entirety.

---

[4] As described in the opening brief, Mr. Hinman's opinion that exchanging investors have suffered no losses is irrelevant because, as the PDVSA Parties concede, he "include[s] the market value of the 2020 Notes in some of his calculations." Mem. 19–20; Opp. 24. If the PDVSA Parties honor their contractual obligations, investors will be made whole and have no losses. If the contracts are held to be unenforceable, however, the 2020 Notes will lose all value. The PDVSA Parties answer that the 2020 Notes may retain some value if only the Pledge Agreement, and not the 2020 Notes, is invalidated, *id.* 25, but the Hinman Report does not address or consider this scenario. Moreover, his calculation of the cash flows that investors in the 2017 Notes received prior to the Exchange Offer is irrelevant to the unjust enrichment claim because investors would have received these amounts regardless of whether they participated in the Exchange Offer. *See* Hinman Rep. ¶¶ 86–90.

Dated: New York, New York
      July 15, 2020

Respectfully submitted,

| | |
|---|---|
| PAUL, WEISS, RIFKIND,<br>   WHARTON & GARRISON LLP<br>Walter Rieman<br>William A. Clareman<br>Jonathan Hurwitz<br>Shane D. Avidan<br>1285 Avenue of the Americas<br>New York, New York 10019-6064<br>Telephone: 212-373-3000<br>Facsimile:  212-757-3990<br>wrieman@paulweiss.com<br>wclareman@paulweiss.com<br>jhurwitz@paulweiss.com<br>savidan@paulweiss.com<br><br>PAUL, WEISS, RIFKIND,<br>   WHARTON & GARRISON LLP<br>Roberto J. Gonzalez (*pro hac vice*)<br>2001 K Street, NW<br>Washington, DC 20006-1047<br>Telephone: 202-223-7300<br>rgonzalez@paulweiss.com<br><br>*Attorneys for Defendants and Counterclaim Plaintiffs MUFG Union Bank, N.A. and GLAS Americas LLC, in their respective capacities as Trustee and Collateral Agent, under the Indenture dated October 27, 2016, and the Pledge and Security Agreement dated October 28, 2016, governing PDVSA's Senior Secured Notes due 2020 (as to New York law issues only)* | LATHAM & WATKINS LLP<br><br>By:  s/ Matthew S. Salerno<br>     Christopher J. Clark<br>     Matthew S. Salerno<br>     Sean H. McMahon<br>885 Third Avenue<br>New York, New York 10022<br>Telephone: 212-906-1200<br>Facsimile:  212-751-4864<br>chris.clark@lw.com<br>matthew.salerno@lw.com<br>sean.mcmahon@lw.com<br><br>*Attorneys for Defendants and Counterclaim Plaintiffs MUFG Union Bank, N.A. and GLAS Americas LLC, in their respective capacities as Trustee and Collateral Agent, under the Indenture dated October 27, 2016, and the Pledge and Security Agreement dated October 28, 2016, governing PDVSA's Senior Secured Notes due 2020* |