UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETRÓLEOS DE VENEZUELA S.A., PDVSA PETRÓLEO, S.A., and PDV HOLDING, INC.,

Plaintiffs,

- v -

MUFG UNION BANK, N.A., and GLAS AMERICAS LLC,

Defendants.

19 Civ. 10023 (KPF)

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

AUDREY STRAUSS
Acting United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: 212-637-2677/2810
Facsimile: 212-637-2786
*Attorney for the United States of America*

SAMUEL DOLINGER
ANTHONY J. SUN
Assistant United States Attorneys
*Of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

DISCUSSION ........................................................................................................... 3

I. THE UNITED STATES SUPPORTS THE EFFORTS OF THE INTERIM GOVERNMENT IN VENEZUELA TO RESTORE DEMOCRACY AND SUBSEQUENTLY RECONSTRUCT THE VENEZUELAN ECONOMY, AND HAS UNDERTAKEN EXECUTIVE ACTIONS TO ASSIST THE INTERIM GOVERNMENT ........................................................................................ 3

II. THE UNITED STATES TAKES NO POSITION ON THE APPLICABILITY OF THE ACT OF STATE DOCTRINE HERE IN LIGHT OF THE UNRESOLVED ANTECEDENT QUESTIONS OF VENEZUELAN LAW ............................................ 4

III. RESOLVING THIS CASE IN ACCORD WITH U.S. LAW AND POLICY APPEARS TO TURN ON QUESTIONS OF FACT AND OF VENEZUELAN LAW ...................... 7

CONCLUSION ........................................................................................................ 9

# TABLE OF AUTHORITIES

## CASES

*Alfred Dunhill of London, Inc. v. Republic of Cuba*,
425 U.S. 682 (1976) ..... 5, 6

*Allied Bank Int'l v. Banco Credito Agricola de Cartago*,
757 F.2d 516 (2d Cir. 1985) ..... 1, 5, 7, 8

*Banco Nacional de Cuba v. Sabbatino*,
376 U.S. 398 (1964) ..... 5

*Bandes v. Harlow & Jones, Inc.*,
852 F.2d 661 (2d Cir. 1988) ..... 6

*Garcia v. Chase Manhattan Bank, N.A.*,
735 F.2d 645 (2d Cir. 1984) ..... 5

*Georges v. United Nations*,
834 F.3d 88 (2d Cir. 2016) ..... 1

*Oetjen v. Central Leather Co.*,
246 U.S. 297 (1918) ..... 6

*Republic of Philippines v. Marcos*,
806 F.2d 344 (2d Cir. 1986) ..... 6

*Ricaud v. American Metal Co.*,
246 U.S. 304 (1918) ..... 6

*Underhill v. Hernandez*,
168 U.S. 250 (1897) ..... 6

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*,
493 U.S. 400 (1990) ..... 5

## STATUTES

28 U.S.C. § 517 ..... 1

## EXECUTIVE ORDERS

Exec. Order No. 13,835 (May 21, 2018) ..... 4

Exec. Order No. 13,857 (Jan. 25, 2019) ..... 4

## REGULATIONS

31 C.F.R. pt. 591 ..... 4

**OTHER AUTHORITIES**

Brief for the United States as Amicus Curiae,
*Allied Bank Int'l v. Banco Credito Agricola de Cartago*,
No. 83-7714 (2d Cir. filed July 30, 1984)........................................................................ 8

Statement of Interest of the United States,
*Macrotecnic Int'l Corp. v. Republic of Argentina*,
No. 02 Civ. 5932 (TPG) (S.D.N.Y. filed Jan. 12, 2004) ........................................................... 8

Office of Foreign Assets Control, Venezuela-related FAQ 595,
*available at* https://home.treasury.gov/policy-issues/financial-sanctions/faqs/595 ............... 4, 9

Office of Foreign Assets Control, Venezuela-related General License No. 5D (July 15, 2020),
*available at* https://home.treasury.gov/system/files/126/venezuela_gl5d.pdf............................ 4

## PRELIMINARY STATEMENT

The United States of America (the "United States" or the "Government") respectfully submits this Statement of Interest in response to the invitation of the Court, and in accordance with 28 U.S.C. § 517,[1] to provide the views of the Government regarding "the potential applicability of the act of state doctrine," and "whether the applicability of the doctrine would be 'consistent with the law and policy of the United States,'" in this matter concerning the Petróleos de Venezuela, S.A. ("PDVSA") 2020 8.5 Percent Bond (the "2020 Bonds"). Dkt. No. 144 (quoting *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 522 (2d Cir. 1985)). The United States has important foreign policy and national security interests in the current situation in Venezuela, alongside legal and policy interests in preserving stability in the sovereign debt markets.

The Government stands firmly behind the interim government in Venezuela led by Juan Guaidó and against the illegitimate regime led by Nicolás Maduro. The United States is advancing its policy goals of, among other things, preserving assets in support of the interim government's efforts to restore democracy in Venezuela and reconstruct the Venezuelan economy after Maduro steps aside, including through executive actions such as sanctions that currently preclude certain transactions with respect to the 2020 Bonds and the sale of the asserted collateral for the bonds. The sanctions regime helps the United States to advance its policy goals with respect to Venezuela without specific regard to the outcome of the parties' cross-motions.

The Court invited the United States to provide its views on the applicability of the act of state doctrine. In the view of the United States, however, it would be premature to address whether

[1] Congress has authorized the Attorney General to send "any officer of the Department of Justice . . . to any . . . district in the United States to attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C. § 517; *see Georges v. United Nations*, 834 F.3d 88, 91 & n.10 (2d Cir. 2016).

or in what manner the act of state doctrine may apply. The parties dispute central questions of fact and of Venezuelan law and practice. The United States takes no position on the operation of Venezuelan law in this context or the analysis needed to resolve the question of the legality of the bond issuance and the associated pledge of collateral. The resolution of these issues appears to be antecedent to any possible application of the act of state doctrine.

The Court also invited the United States' views regarding whether giving effect to the Venezuelan National Assembly's asserted invalidation of the bond issuance would be consistent with the law and policy of the United States. Dkt. No. 144. Again, while the United States takes no position on this corollary to the act of state doctrine in this case, we note that the law and policy of the United States generally favors certainty in lawful contractual relations and an orderly process for restructuring sovereign debts for which creditors can legitimately expect payment. With respect to the 2020 Bonds in particular, however, the parties dispute the legality of the bonds' issuance and of the pledge of collateral for the bonds, as well as the legitimacy of the bondholders' expectations due to actions by the Venezuelan National Assembly near in time to the issuance of the 2020 Bonds. Those issues of Venezuelan law and practice, along with factual issues (including with regard to bondholders' asserted awareness of related risks), are not matters upon which the Government is in a position to opine, but the United States believes that resolution of these issues by the Court should precede any consideration of the act of state doctrine.

## DISCUSSION

### I. THE UNITED STATES SUPPORTS THE EFFORTS OF THE INTERIM GOVERNMENT IN VENEZUELA TO RESTORE DEMOCRACY AND SUBSEQUENTLY RECONSTRUCT THE VENEZUELAN ECONOMY, AND HAS UNDERTAKEN EXECUTIVE ACTIONS TO ASSIST THE INTERIM GOVERNMENT

As detailed in the attached letter from Elliott Abrams, Special Representative for Venezuela at the U.S. Department of State, Venezuela is currently in the midst of an "unprecedented humanitarian, political and economic crisis," with an "illegitimate regime led by Nicolás Maduro and an inner circle of corrupt officials" who have continued a decades-long process "in which the government has destroyed democratic institutions, repressed freedom of expression and committed other serious human rights abuses, and ruined the prosperity Venezuela once enjoyed." *See* Letter from Elliott Abrams to Jeffrey Bossert Clark dated September 16, 2020, attached hereto as Exhibit A, at 1. The illegitimate regime threatens not only its own citizens, but the security and stability of the region. *See id.* Disturbingly, the Maduro regime has built a close relationship, including military and intelligence ties, with "foreign adversaries of the United States . . . which but for the regime's existence would have little foothold in South America." *Id.*

Since January 23, 2019, the United States has recognized the interim government of Venezuela led by Interim President Juan Guaidó, the democratically elected President of the Venezuelan National Assembly. *Id.* at 1-2. The United States has strong foreign policy and national security interests in supporting the interim government's efforts both to restore democracy to Venezuela with the departure of Maduro, and to reconstruct the Venezuelan economy following Maduro's departure. *See id.* at 2.

In furtherance of its foreign policy interests, and in response to the abuses of the Maduro regime, the United States has implemented, through executive orders and actions of the Office of

Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury, certain Venezuela-related economic sanctions so as to prevent Venezuela's key assets from being misused or squandered by the illegitimate Maduro regime. *See, e.g.*, Exec. Order No. 13,835 (May 21, 2018), *as amended by* Exec. Order No. 13,857 (Jan. 25, 2019); 31 C.F.R. pt. 591. The Venezuela sanctions program includes restrictions on certain transactions related to the 2020 Bonds, and it prohibits transactions related to the sale, transfer, or assignment of equity interests in any entity in which the Government of Venezuela has a 50 percent or greater ownership interest, including CITGO Holding, Inc. *See* OFAC Venezuela-related FAQ 595, *available at* https://home.treasury.gov/policy-issues/financial-sanctions/faqs/595. At present, sanctions restrict certain transactions relating to the 2020 Bonds until on or after October 20, 2020. *See* OFAC Venezuela-related General License No. 5D (July 15, 2020), *available at* https://home.treasury.gov/system/files/126/venezuela_gl5d.pdf. Accordingly, the United States is currently implementing and will continue to implement U.S. foreign policy concerning Venezuela through, *inter alia*, OFAC's application of the sanctions regime.

## II. THE UNITED STATES TAKES NO POSITION ON THE APPLICABILITY OF THE ACT OF STATE DOCTRINE HERE IN LIGHT OF THE UNRESOLVED ANTECEDENT QUESTIONS OF VENEZUELAN LAW

The parties here dispute, *inter alia*, whether a September 2016 resolution of the Venezuelan National Assembly constitutes an official act of a foreign sovereign that potentially could trigger application of the act of state doctrine, advancing arguments that implicate issues of Venezuelan law and historical legal practice. In the view of the United States, there are myriad factual and legal disputes in this case over the existence and nature of an act of state that appear, in the first instance, to require judicial scrutiny under Venezuelan law.

"The act of state doctrine operates to confer presumptive validity on certain acts of foreign sovereigns by rendering non-justiciable claims that challenge such acts." *Allied Bank*, 757 F.2d at 520; *see Garcia v. Chase Manhattan Bank, N.A.*, 735 F.2d 645, 650 (2d Cir. 1984) ("[U]nder the act of state doctrine United States courts will not question the validity of the actions of foreign governments carried out within their own borders."); *see also W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 428 (1964).

However, the doctrine can only be applied in cases involving the "official act" of a foreign sovereign. *W.S. Kirkpatrick & Co.*, 493 U.S. at 405. Typical cases where the act of state doctrine arises involve undisputedly sovereign acts inside a foreign country by a foreign government with authority to act—for instance, where the parties sought to challenge the validity under international law of formalized, official expropriation decrees of a foreign sovereign. *See, e.g.*, *Sabbatino*, 376 U.S. at 400-01. On the other hand, it is "unnecessary" for a court to analyze the applicability or appropriateness of the act of state doctrine where "the factual predicate for application of the act of state doctrine does not exist." *W.S. Kirkpatrick & Co.*, 493 U.S. at 405; *see Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 690, 694-95 (1976).

Here, the parties present an array of legal and factual disputes as to whether there has been an act of state at all, based on contested questions of Venezuelan law and practice. These disputes appear to center on whether a September 2016 resolution of the Venezuelan National Assembly rendered PDVSA's issuance of the 2020 Bonds and/or the pledge of collateral for the 2020 Bonds void *ab initio*. Thus, as framed by the parties, the dispute over the nature of the claimed act of state appears itself to require an inquiry into matters controlled by Venezuelan law.

A party asserting that relevant conduct constitutes an act of a foreign state to be given effect in U.S. courts has the burden to prove the claimed act. *Alfred Dunhill*, 425 U.S. at 691. "That the acts must be *public* acts of the *sovereign* has been repeatedly affirmed." *Republic of Philippines v. Marcos*, 806 F.2d 344, 358 (2d Cir. 1986) (emphasis in original). Thus, in *Alfred Dunhill*, the Supreme Court rejected the assertion of an act of state because "nothing in the record reveal[ed] an act of state" beyond a party's argument during litigation, and "[n]o statute, decree, order, or resolution" of the foreign government was offered as evidence of a sovereign action. 425 U.S. at 690, 694-95. By contrast, in other cases such as *Underhill v. Hernandez*, 168 U.S. 250 (1897), *Oetjen v. Central Leather Co.*, 246 U.S. 297 (1918), and *Ricaud v. American Metal Co.*, 246 U.S. 304 (1918), "the facts were sufficient to demonstrate that the conduct in question was the public act of those with authority to exercise sovereign powers and was entitled to respect in our courts." *Alfred Dunhill*, 425 U.S. at 694. In this case, among other things, the parties dispute whether certain conduct of different branches of the Venezuelan government in 2016 constitute a "public act of those with authority to exercise sovereign powers," *id.*, with respect to the issuance of, and/or the pledge of collateral for, the 2020 Bonds.

The parties also dispute whether—assuming the existence of a valid sovereign act—an action claiming to render the 2020 Bonds, or the pledge of collateral for the 2020 Bonds, void *ab initio* could qualify for deference under the act of state doctrine, which "does not extend to property located within the United States." *Bandes v. Harlow & Jones, Inc.*, 852 F.2d 661, 666 (2d Cir. 1988). Although the enforceability of the 2020 Bonds and the validity of the pledge of collateral for the 2020 Bonds are in dispute, the parties appear to agree that if the 2020 Bonds are valid, payments are to be made in New York in U.S. dollars. Under Second Circuit law, a foreign government's actions prohibiting payment of notes sited in New York generally constitutes an

extraterritorial act rendering the act of state doctrine inapplicable. *See Allied Bank*, 757 F.2d at 521-22. Plaintiffs' argument that the act of state doctrine nonetheless controls here is also dependent on arguments regarding the substance and effect of National Assembly resolutions under Venezuelan law. *See* Dkt. No. 117 (plaintiffs' summary judgment brief) at 22; Dkt. No. 160 (defendants' summary judgment opposition) at 8-10.

The Court's resolution of these disputes would necessarily implicate issues of Venezuelan law, as well as factual disputes, concerning the nature of the actions taken by the National Assembly. Because the resolution of these issues of fact and Venezuelan law appears to be a necessary precondition before considering whether the act of state doctrine applies here, in the view of the United States it would be premature to opine on the application of that doctrine.

## III. RESOLVING THIS CASE IN ACCORD WITH U.S. LAW AND POLICY APPEARS TO TURN ON QUESTIONS OF FACT AND OF VENEZUELAN LAW

As to whether "recognition of the Venezuelan National Assembly's denunciation and invalidation of the 2020 Bond Indenture [is] consistent with the law and policy of the United States," Dkt. No. 144, United States foreign policy generally favors ensuring that the Maduro government cannot squander Venezuela's key assets, as well as the "negotiated and consensual resolution of sovereign debt disputes," *see* Letter from Special Representative Abrams, Ex. A, at 2. The United States supports the efforts of the interim government in Venezuela to restore democracy and to reconstruct the Venezuelan economy after Maduro steps aside. *See id.* Due to "years of mismanagement through the regimes of former Presidents Chávez and Maduro, Venezuelan financial assets have been imperiled," at the same time as these corrupt leaders have engaged in a pattern of destruction of democratic institutions, abuse of human rights, and erosion of economic stability in Venezuela. *Id.* at 1-2. The illegitimate Maduro regime threatens its own

citizens, builds close relationships with adversaries of the United States, and undermines regional stability. *See id.* at 1.

As the Government has stated in past litigation concerning sovereign debt, the United States also has a substantial interest in avoiding the adverse effects that uncertainty in contract enforcement could have on international financial markets and on efforts to restructure sovereign debt. Where "legal principles require enforcement of international loan agreements," any "[s]ubstantial alteration of these legal principles changes expectations in a way that renders contractual relations less certain," which may "discourag[e] needed further lending." Brief for the United States as Amicus Curiae at 6-7, *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, No. 83-7714 (2d Cir. filed July 30, 1984);[2] *see* Statement of Interest of the United States at 6-8, *Macrotecnic Int'l Corp. v. Republic of Argentina*, No. 02 Civ. 5932 (TPG) (S.D.N.Y. filed Jan. 12, 2004). The United States is "a major source of private international credit," and "has an interest in maintaining New York's status as one of the foremost commercial centers in the world." *Allied Bank*, 757 F.2d at 521-22.

As set forth above, the parties before the Court present legal and factual disputes regarding the validity of the 2020 Bonds and of the pledge of collateral for the 2020 Bonds, which appear to turn on questions of fact and of Venezuelan law and practice. In particular, the parties dispute whether the issuance of the 2020 Bonds and the associated pledge of collateral constituted a contract in the national public interest that required the approval of the Venezuelan National Assembly. *See, e.g.*, Dkt. No. 117 (plaintiffs' summary judgment brief) at 29-38; Dkt. No. 135 (defendants' summary judgment brief) at 37-43; *see also* Dkt. No. 165 (plaintiffs' summary judgment opposition) at 19-36; Dkt. No. 160 (defendants' summary judgment opposition) at 27-

[2] The *Allied Bank* U.S. amicus brief is before the Court as Dkt. No. 151-2.

34. Plaintiffs also assert that bondholders were on notice of a risk that the 2020 Bonds, and/or the pledge of collateral for the 2020 Bonds, would be invalidated in light of the issuance procedure followed here, *see* Dkt. No. 117, at 10-14, while defendants dispute this contention, *see* Dkt. No. 135, at 12-15. The United States is not in a position to express a view regarding these questions, which may ultimately require resolution by the Court in its determination of the validity and enforceability of the 2020 Bonds and the associated pledge of collateral.

Finally, as stated above, the United States' foreign policy concerning Venezuela is being effectuated in part through OFAC's implementation of the U.S. sanctions regime, without regard to the act of state or comity doctrines. Even if a judgment were to be entered against PDVSA in this case, sanctions restrictions currently prohibit certain transactions related to the 2020 Bonds, as well as all transactions related to the sale or transfer of shares of CITGO Holding, Inc., absent OFAC's specific authorization. *See* OFAC Venezuela-related FAQ 595, *supra*.

## CONCLUSION

For the foregoing reasons, the United States respectfully takes no position on the question of whether the act of state doctrine applies in this case in light of unresolved questions of fact and of Venezuelan law antecedent to the possible applicability of the doctrine. The United States respectfully submits that it would be appropriate for the Court, consistent with the law and policy of the United States, to first evaluate the arguments presented by the parties regarding whether the issuance of the 2020 Bonds and the associated pledge of collateral are valid under applicable law.

Dated: September 16, 2020
New York, New York

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney
Southern District of New York
*Attorney for the United States of America*

By: /s/ Samuel Dolinger

SAMUEL DOLINGER
ANTHONY J. SUN
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: 212-637-2677/2810
samuel.dolinger@usdoj.gov
anthony.sun@usdoj.gov