**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PETRÓLEOS DE VENEZUELA, S.A., PDVSA
PETRÓLEO, S.A., and PDV HOLDING, INC.,

Plaintiffs,

- against -

MUFG UNION BANK, N.A. and GLAS AMERICAS
LLC,

Defendants.

Case No: 19-cv-10023-KPF

---

**PDV HOLDING, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**PARTIAL STAY OF EXECUTION OF FINAL JUDGMENT PENDING APPEAL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ............................................................................................................4

I.    THE COURT'S FINAL JUDGMENT DENIED PDVH'S REQUEST FOR
DECLARATORY AND INJUNCTIVE RELIEF AND DECLARED THE
PLEDGE AGREEMENT VALID AND ENFORCEABLE................................................4

II.    EXECUTION OF THE FINAL JUDGMENT WOULD RESULT IN
DEVASTATING AND IRREVERSIBLE CONSEQUENCES INCLUDING
BUT NOT LIMITED TO THE LOSS OF PDVH'S OWNERSHIP OF CITGO...............7

III.   THE SANCTIONS REGIME CURRENTLY PROHIBITS ENFORCEMENT
OF THE FINAL JUDGMENT AND RESTRICTS PDVH'S ABILITY TO
OBTAIN A BOND ........................................................................................8

ARGUMENT .............................................................................................................10

I.    PDVH IS ENTITLED AS A MATTER OF RIGHT UNDER RULE 62(b) TO A
PARTIAL STAY OF THE COURT'S FINAL JUDGMENT SECURED BY THE
COLLATERAL ..............................................................................................10

A.    The Pledge Agreement Secures Defendants' Right to Obtain the Pledged
Shares, the Only Portion of the Judgment PDVH Seeks to Stay, and Is Therefore
Adequate Security to Obtain a Stay Under Rule 62(b).......................................12

B.    No Additional Security Beyond the Pledged Shares Is Required to Secure
Defendants' Right to Obtain and Sell the Pledged Shares at the Conclusion
of the Appeal ............................................................................................14

II.    PDVH IS ALSO ENTITLED TO A PARTIAL STAY OF THE COURT'S FINAL
JUDGMENT SECURED BY THE COLLATERAL AS A MATTER OF RIGHT
UNDER RULE 62(f) ....................................................................................17

CONCLUSION............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan,*
  No. 11 CV 1471 (VB), 2013 WL 12444540 (S.D.N.Y. Jan. 29, 2013)....................................15

*Butler v. Ross,*
  No. 16CV1282 (DLC), 2017 WL 6210843 (S.D.N.Y. Dec. 7, 2017) ...............................18, 19

*Castillo v. Montelepre, Inc.,*
  999 F.2d 931 (5th Cir. 1993) .................................................................................................19

*Cohen v. Metro. Life Ins. Co.,*
  334 F. App'x 375 (2d Cir. 2009) ...........................................................................................11

*Crystallex Int'l Corp. v. PDVH Inc.,*
  No. 15-CV-1082-LPS, 2019 WL 6785504 (D. Del. Dec. 12, 2019) ................................13, 14

*Deutsche Bank Nat'l Tr. Co. as Tr. for GSAA Home Equity Tr. 2006-18 v.*
  *Cornish,*
  759 F. App'x 503 (7th Cir. 2019) ..............................................................................2, 13, 14

*F.D.I.C. v. Ann–High Assocs.,*
  No. 97-6095, 1997 WL 1877195 (2d Cir. 1997) (per curiam) ...................................17, 18, 19

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n,*
  636 F.2d 755 (D.C. Cir. 1980) ...............................................................................................12

*Frommert v. Conkright,*
  639 F. Supp. 2d 305 (W.D.N.Y. 2009) ..................................................................................15

*Grant v. Lockett,*
  No. 5:15-CV-0445, 2019 WL 1872967 (N.D.N.Y. Apr. 26, 2019)...........................11, 15, 17

*In re Nassau Cnty. Strip Search Cases,*
  783 F.3d 414 (2d Cir. 2015)..............................................................................................14, 16

*Nken v. Holder,*
  556 U.S. 418 (2009).................................................................................................................12

*Offor v. Mercy Med. Ctr.,*
  No. 2:15-CV-2219-ADS/SIL, 2019 WL 8112472 (E.D.N.Y. Jan. 11, 2019).........................11

*Rivera v. Home Depot U.S.A. Inc.,*
   16-cv-7552 (KBF), 2018 WL 3105069 (S.D.N.Y. June 25, 2018)........................................14

*Seneca Nation of Indians v. New York,*
   No. 19-CV-735S, 2019 WL 6768779 (W.D.N.Y. Dec. 12, 2019) ............................11, 13, 15

**Statutes**

N.Y.C.P.L.R. § 2201 ......................................................................................................18

N.Y.C.P.L.R. § 5202(a) ...................................................................................................18

N.Y.C.P.L.R. § 5519.................................................................................................3, 17, 18

N.Y.C.P.L.R. § 5519(a)(4)................................................................................................17

**Other Authorities**

31 C.F.R. part 591 ......................................................................................................6, 9, 10

Fed. R. Civ. P. 62 ................................................................................................. *passim*

PDV Holding, Inc. ("PDVH") respectfully submits this memorandum of law in support of its motion (the "Motion") for a partial stay of enforcement of this Court's December 1, 2020 final judgment [ECF No. 229] (the "Final Judgment") during the pendency of PDVH's appeal to the United States Court of Appeals for the Second Circuit.

PDVH proposed an expedited schedule for resolution of this Motion to Defendants on December 7, 2020.  Defendants asked to meet and confer with PDVH on December 9, 2020, at which point Defendants declined to agree to an expedited schedule and refused to propose a schedule of their own until after this Motion was filed.  Pursuant to Rule 62(a), execution on the Court's Final Judgment is currently stayed through December 31, 2020.  In light of that date, PDVH respectfully asks the Court to expedite consideration of this Motion and, to the extent possible, decide it on or before December 31, 2020, after which the automatic stay is set to expire.

## PRELIMINARY STATEMENT

On December 1, 2020, the Court entered its Final Judgment in this case, granting in part and denying in part the motion for summary judgment brought by MUFG Union Bank, N.A. ("MUFG") and GLAS Americas LLC (collectively with MUFG, "Defendants"), and denying the motion for summary judgment brought by PDVH, Petróleos De Venezuela, S.A. ("PDVSA"), and PDVSA Petróleo, S.A. ("PDVSA Petróleo," and collectively with PDVH and PDVSA, "Plaintiffs").  The Final Judgment awards a money judgment against PDVSA and PDVSA Petróleo (but not PDVH) in the amount of approximately $1.924 billion in principal and interest payments under the 2020 Notes, and further declares that the Pledge Agreement may be enforced and that the Trustee is entitled to exercise its remedies under the Pledge Agreement, including by directing the Collateral Agent to sell PDVH's controlling share of CITGO Holding, Inc. ("CITGO

1

<u>Shares</u>") to satisfy the money judgment against PDVSA.[1]

While PDVH is not liable for the sum awarded to the Trustee, PDVH is in jeopardy of irrevocably losing CITGO Petroleum Corp. ("<u>CITGO</u>") if the Pledge Agreement is enforced while its appeal of the Final Judgment is pending.  The loss of the CITGO Shares during the pendency of PDVH's appeal would permanently alter its business by depriving it of its sole meaningful asset.  Permitting this result to occur while the appeal is pending is unwarranted given the serious and novel questions of law at issue in this case.[2]

PDVH accordingly requests a stay of the Court's judgment authorizing the sale of the CITGO Shares while the appeal is pending.  *First*, such relief is warranted under Fed. R. Civ. P. 62(b), which provides that PDVH is entitled to a stay of execution of the portions of the Final Judgment pertaining to the pledged CITGO Shares *as a matter of right* to be secured by "a bond or other security."  Here, the portion of the Final Judgment that would be stayed—*i.e.*, the Collateral Agent's entitlement to exercise its remedies, including to sell the pledged CITGO Shares—is entirely secured by the Pledge Agreement itself.  As has been the case throughout this action, the Pledge Agreement fully preserves Defendants' rights as to the CITGO Shares, including by protecting Defendants' ability to sell those Shares should they prevail on appeal.  Where a judgment is secured by agreement, the preservation of such security during the appeal is sufficient to grant a stay under Rule 62(b) without requiring any further security.  *See, e.g.*, *Deutsche Bank Nat'l Tr. Co. as Tr. for GSAA Home Equity Tr. 2006-18 v. Cornish*, 759 F. App'x 503 (7th Cir.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, filed June 10, 2020, hereafter referred to as "PSJ" (ECF No. 95), Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, filed June 29, 2020 (ECF No. 155), and Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, filed July 15, 2020, hereafter referred to as "RPSJ" (ECF No. 185).

[2] Although PDVSA and PDVSA Petróleo have not requested a stay of the Court's Final Judgment as to the portions of that judgment that run towards each of them, PDVSA and PDVSA Petróleo have informed PDVH that they consent to the filing of this Motion and support the request for relief contained herein.

2019).   Here, no additional security is required to safeguard Defendants' rights to enforce the Pledge Agreement and sell the CITGO Shares.  Defendants lack the right to do so *now* in any event given the current sanctions regime; even if that regime changes *and* Defendants prevail on appeal, they will then possess precisely the same rights that they possess now, along with the right to collect additional interest that will continue to accrue post-judgment.

*Second*, in the alternative, PDVH is entitled to a partial stay of the Court's Final Judgment without a bond pursuant to Rule 62(f).  Because the Final Judgment declares that Defendants are entitled to enforce their lien on PDVH's property, the CITGO Shares, PDVH is entitled to a stay of execution under New York law while its appeal is pending.  As the CITGO Shares are already in the Collateral Agent's custody pursuant to the Pledge Agreement, the Court may designate the Collateral Agent to continue to hold custody of the CITGO Shares pursuant to CPLR 5519.  Under this approach, the CITGO Shares would be adequately secured pending appeal as contemplated by Rule 62(f), and PDVH would be entitled to a stay without bond under the same.

This case raises difficult and novel questions of law on matters of vital importance not just to the parties, but to the U.S. Government and the Venezuelan Republic.  *See* Sept. 25, 2020 Hr'g Tr. 6:25-7:5 (this Court observing that this case has "some very, very difficult questions," involving "very, very complicated issues of law").  Defendants should not be permitted to moot an appeal by moving to enforce the judgment against the CITGO Shares (resulting in the permanent and irrevocable loss of CITGO) before the appeal may be considered.  Thus, PDVH respectfully requests this Court stay execution of portions of its judgment to allow the Second Circuit the requisite breathing space to resolve the difficult questions of federal and state law that are presented here.

## BACKGROUND

I.  **THE COURT'S FINAL JUDGMENT DENIED PDVH'S REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF AND DECLARED THE PLEDGE AGREEMENT VALID AND ENFORCEABLE**

Plaintiffs filed their Complaint on October 29, 2019, seeking a declaration from this Court that the 2020 Notes and underlying Governing Documents are invalid, illegal, null and void *ab initio*, and thus unenforceable, and seeking an injunction "permanently enjoining the Defendants, any owners or holders of the 2020 Notes or beneficial interests therein, and any other parties claiming an interest in the 2020 Notes or a security interest in the pledged CITGO Shares, from attempting to enforce the 2020 Notes, the Indenture, or the Pledge Agreement or from otherwise attempting to exercise any rights, remedies, or privileges purportedly arising from a default or Event of Default under the Indenture or the Pledge Agreement."  (ECF No. 1).

Notably, the Pledge Agreement provides several levels of protection of Defendants' collateral in the CITGO Shares.  Specifically, the Pledge Agreement "pledges, charges, mortgages, grants, assigns, hypothecates, transfers and delivers to the Collateral Agent, for the benefit of the Secured Parties, a first-priority security interest in all of its right, title and interest" in the pledged CITGO Shares, Pledge Agreement § 2.01(a),[3] the certificate of which, "accompanied by duly executed instruments of transfer or assignment undated and in blank," was "deliver[ed] to the Collateral Agent" "concurrently with the execution and delivery" of the Pledge Agreement.  *Id*. at § 2.02.  In addition to the grant of security, the Pledge Agreement contains a number of provisions restricting PDVH from selling, transferring, or taking any action to devalue the pledged CITGO Shares, thus preserving the status quo thereunder.  For example, PDVH covenanted that it "shall ensure that, at all times, the Pledged Shares shall represent 50.1% of the outstanding shares of

---

[3] Attached as Ex. 11 to Declaration of James R. Bliss in Support of Plaintiffs' Motion for Summary Judgment ("Bliss Declaration").  (ECF No. 106-11).

capital stock or ownership interests in CITGO Holding," and that it will not "create or suffer to exist any Liens on the Collateral other than Permitted Collateral Liens," nor "sell, assign, lease, transfer or otherwise dispose of any interest in the Collateral, except as permitted by the Transaction Documents or upon the direction of the Collateral Agent (acting at the written direction of the Trustee) in connection with the enforcement of its rights under the Transaction Documents," nor "take, or knowingly permit to be taken, any action that would terminate, or discharge or [] prejudice the validity or effectiveness of this Agreement or the validity, effectiveness or priority of the Liens created hereby," nor "take any action that would Impair in any respect the rights and interests of the Collateral Agent and/or any successor collateral agent or the Trustee and/or any successor trustee." *Id*. §§ 4.01(a), 4.02(a)-(d).

On October 16, 2020, after briefing and argument on cross-motions for summary judgment, the Court issued an Opinion and Order, granting in part and denying in part Defendants' motion for summary judgment and denying Plaintiffs' motion for summary judgment.  (ECF No. 215, hereafter "Op."). The Court granted a declaratory judgment in favor of Defendants regarding the validity, enforceability, and the associated remedies for default under the 2020 Notes and the Governing Documents.  *Id*. at 67-68.  The Court also ruled that MUFG is entitled to judgment in the amount of $1,683,764,500, including prejudgment and other interest.  *Id.* at 68.  The Court did not, however, determine the amount of pre-judgment interest at that time, instead granting Defendants 45 days in which to "submit a proposed judgment providing an accurate calculation of accrued and unpaid interest, including any prejudgment interest."

Defendants took the 45 days allotted to them, filing a Motion for Final Judgment (ECF No. 222) and proposed Final Judgment (ECF No. 227) on November 30, 2020, along with a 17-page Memorandum of Law in Support of their Motion (ECF No. 224) and accompanying expert

declaration (ECF No. 225).  On December 1, 2020, the Court issued an Order granting Defendants' Motion and "direct[ing] that judgment shall be entered in the form proposed by Defendants."[4] (ECF No. 228).

Shortly thereafter, on December 1, 2020, the Court entered its Final Judgment pursuant to Rule 54(b).  (ECF No. 229).  The Court dismissed with prejudice the Complaint, rejecting Plaintiffs' request for injunctive relief that, *inter alia,* would have enjoined Defendants from enforcing or exercising any rights, remedies, or privileges arising under the Pledge Agreement. *Id.* at 1.  Additionally, the Court entered judgment in favor of Defendants and against Plaintiffs with respect to Defendants' First through Seventh Counterclaims (ECF No. 40).  *Id.*  The Court further ordered that PDVSA and PDVSA Petróleo are jointly liable for the sum of $1,924,126,058. *Id.* at 2.  As to PDVH, the Court declared that the Pledge Agreement is "valid and enforceable;" that "a default has occurred under the terms of the Indenture;" that "the Trustee and Collateral Agent are permitted to exercise the remedies for default set forth in the Indenture and the Pledge Agreement;" that "the Trustee is entitled to direct the Collateral Agent to sell the collateral securing the 2020 Notes;" and that "the Collateral Agent is entitled to so sell." *Id.* at 2-3.

Plaintiffs have filed a notice of appeal alongside the filing of this Motion.  The Final

---

[4] Plaintiffs did not have an opportunity to review the Defendants' proposed final judgment before it was submitted to the Court and were not provided an opportunity to respond to Defendants' Motion before the Court entered its Final Judgment.  Had Plaintiffs been provided the opportunity to respond, Plaintiffs would have noted that the Judgment, as proposed by Defendants, could be interpreted to entitle Defendants to take actions as to the pledged CITGO Shares that are currently prohibited by sanctions.  *See, e.g.*, Executive Order (E.O.) 13835 of May 21, 2018, as amended by E.O. 13857 of January 25, 2019, and incorporated into the Venezuela Sanctions Regulations, 31 C.F.R. part 591; *see also* U.S. Dept. of Treasury, OFAC, General License No. 5E, Authorizing Certain Transactions Related to the Petróleos de Venezuela, S.A. 2020 8.5 Percent Bond on or After January 19, 2021, https://home.treasury.gov/system/files/126/venezuela_gl5e.pdf.  Notably, the form of relief granted by the Court goes beyond the relief that Defendants requested in their Counterclaims (ECF No. 40), which explicitly conditioned their request for a declaration that the Trustee was entitled to direct the Collateral Agent to sell the pledged CITGO Shares and that the Collateral Agent was entitled to so sell as "subject to obtaining any necessary approvals from the United States government."  That language is omitted from the Final Judgment, and provides another reason for granting the requested stay pending appeal, as the Judgment could arguably be misinterpreted to authorize Defendants to take actions that are currently prohibited by law.

Judgment is currently stayed through December 31, 2021, by operation of Fed. R. Civ. P. 62(a).

## II.   EXECUTION OF THE FINAL JUDGMENT WOULD RESULT IN DEVASTATING AND IRREVERSIBLE CONSEQUENCES INCLUDING BUT NOT LIMITED TO THE LOSS OF PDVH'S OWNERSHIP OF CITGO

The CITGO Shares constitute PDVH's controlling share (50.1%) of CITGO Holding, which in turn owns 100% of CITGO.  If Defendants were allowed to execute on the Final Judgment while PDVH pursues its appeal, it would permanently and irrevocably deprive PDVH (and its shareholders) of majority ownership and control over CITGO.  If this occurs, it will effectively moot any favorable result PDVH could achieve with respect to PDVH's rights and remedies through appeal.

Beyond the direct financial consequences to PDVH and the CITGO Entities, foreclosure on the Collateral could have significant negative collateral consequences in the United States and Venezuela.[5]  CITGO's oil supply reaches U.S. consumers and businesses every day at more than 5,000 gas stations across the country, including in New York.[6]  In 2015 alone, "CITGO supplied fifteen billion gallons of gasoline in the United States."[7]  CITGO also employs over 3,500 people in the United States, most of them at the three refineries in Texas, Louisiana, and Illinois that are pledged as collateral for the CITGO Notes.[8]  The transfer of control of CITGO, and the potential sale of CITGO's assets, could cause serious disruption to the U.S. oil supply and introduce employment uncertainty to the lives of CITGO's employees during a global health crisis.

As the United States recognized in its Statement of Interest in this case, a transfer of CITGO—Venezuela's "crown jewel"—would also harm the foreign policy interests of the United

---

[5] *See* Amy Myers Jaffe, *How Much Worse Can it Get for Venezuela's Oil Firm PDVSA?*, Council on Foreign Relations (Jan. 23, 2018), https://www.cfr.org/blog/how-much-worse-can-it-get-venezuelas-state-oil-firm-pdvsa.
[6] *See* CITGO Corporate Social Responsibility Report at 2 (2015), http://www.CITGO.com/SocialResponsibility.jsp; CITGO.com, *CITGO Gas Stations Nearest to You in Delaware*, http://gas-stations.CITGO.com/ny.
[7] Jaffe, *supra* note 5.
[8] *See* CITGO Corporate Social Responsibility Report, *supra* note 5, at 2, 5.

States.  The United States has described that harm as severe and likely irrevocable.  As the United States explained, the sale of CITGO at this time would "severely erode[]" the "domestic legitimacy of the interim government under Guaidó," the impact of which "on Guaidó, the interim government, and U.S. foreign policy goals in Venezuela, would be ***greatly damaging and perhaps beyond recuperation***."  *Id*. at 3–4 (emphasis added).  Additionally, the United States represented that:

> [c]ritical to U.S. foreign policy, the United States assesses that the domestic legitimacy of the interim government under Guaidó would be severely eroded were creditors able to take control of CITGO while the illegitimate Maduro regime still attempts to cling to de facto power in Caracas.  Any such loss of PdVSA's U.S.-based assets, including PDVH and CITGO, would be detrimental to U.S. policy and the interim government's priorities.

*Id*. at 3.

In the context of other efforts to attach CITGO's assets, the United States similarly observed that attaching PDVH's shares in CITGO Holding, "which provide indirect ownership of CITGO, are at the heart of the United States' current foreign policy efforts with respect to Venezuela," and allowing the sale of the pledged CITGO Shares "would imperil the United States' foreign policy and national security interests."  Statement of Interest of the United States, *Crystallex Int'l Corp. v. Venezuela*, C.A. No. 17-mc-00151-LPS, ECF No. 212 at 4, 13 (D. Del. July 16, 2020).  Accordingly, the United States urged the district court in *Crystallex* "to refrain from authorizing an auction and sale of Venezuela's largest and most important foreign asset" given "the delicate and evolving political situation in Venezuela, the U.S. foreign policy and national security interests that are implicated, and the related economic sanctions."  *Id.*

## III.   THE SANCTIONS REGIME CURRENTLY PROHIBITS ENFORCEMENT OF THE FINAL JUDGMENT AND RESTRICTS PDVH'S ABILITY TO OBTAIN A BOND

The current U.S. sanctions regime restricts Defendants' ability to take action with respect

to the pledged CITGO Holding shares.  Those restrictions are contingent on the Treasury Department's further suspension of the license effective date in General License 5E, which suspension is currently set to expire on January 19, 2021.  Pursuant to General License 5E, whenever the license goes back into effect, "***all transactions*** related to, the provision of financing for, and other dealings in the [2020 Notes] that would be prohibited by Subsection l(a)(iii) of Executive Order (E.O.) 13835 of May 21, 2018, as amended by E.O. 13857 of January 25, 2019, and incorporated into the Venezuela Sanctions Regulations, 31 C.F.R. part 591 (the VSR), ***are authorized***."[9]  Until then, any such transactions are prohibited.

PDVH respectfully submits that it is entitled to a stay of this Court's judgment as a matter of right regardless of what action the Treasury Department may take with respect to General License 5E.  *See infra* at Argument, § I.  In any event, consistent with the United States Government's statements to this Court and in similar actions, PDVH expects that in the coming weeks the Treasury Department will extend the suspension of General License 5E for an additional period of time.  Indeed, as noted at the outset of this action, the Treasury Department agreed to suspend this license (and extended this suspension multiple times throughout the action) to afford the federal courts the opportunity to consider the parties' claims without those claims being rendered moot by any effort to seize and sell the CITGO Shares.  There is no reason to suspect that the Treasury Department will depart from this reasoning prior to the exhaustion of an ordinary appellate process.

The sanctions regime is also relevant to this Motion because the regime restricts PDVH's ability to post a bond.  Specifically, under current sanctions, U.S. persons may not participate in any transaction related to the issuance of any debt, including the issuance of any bonds, by any

---

[9] General License No. 5E, *supra* note 4.

9

subsidiary of PDVSA, including PDVH, where the debt has a maturity of greater than 90 days. E.O. 13808 Sec. 1(a)(i).  What is more, the current sanctions regime also restricts the transfer of any property of the Government of Venezuela, *including* any transfer of PDVH funds.[10]  While the Treasury Department has issued several general licenses permitting the CITGO Entities to engage in certain transactions despite these sanctions,[11] there is no license that would permit PDVH to issue a bond, or to otherwise transfer any of its property to a third party, in this case.  *See, e.g.*, OFAC FAQ Nos. 401 & 808 ("[A] specific license from OFAC is required for . . . the enforcement of . . . [an] order . . . purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to the Venezuela Sanctions Regulations (31 C.F.R. Part 591)"); E.O. 13808; E.O. 13850; E.O. 13884; General Licenses 2A and 7C (noting that the authorizations detailed within the license do not apply to any transaction where the Government of Venezuela, or its non-U.S. subsidiaries such as PDVSA, are involved).  In sum, PDVH lacks the capacity to post a bond, or to transfer other property to third parties, without first obtaining a specific license from OFAC authorizing it to execute such a transaction.

## ARGUMENT

**I.      PDVH IS ENTITLED AS A MATTER OF RIGHT UNDER RULE 62(b) TO A PARTIAL STAY OF THE COURT'S FINAL JUDGMENT SECURED BY THE COLLATERAL**

The Final Judgment is currently stayed by operation of Fed. R. Civ. P. 62(a) through December 31, 2021.  PDVH seeks a further stay of execution of the portions of the Final Judgment

---

[10]  *See* U.S. Dept. of Treasury, OFAC, Other Sanctions Programs, *Venezuela Sanctions*, FAQ No. 596, https://home.treasury.gov/policy-issues/financial-sanctions/faqs/596 (issued by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") in connection with Exec. Order No. 13835, 83 Fed. Reg. 24,001 (May 24, 2018) ("E.O. 13835" and, together with E.O. 13808, the "Executive Orders")).

[11]  For example, General License No. 2 exempts financing transactions in which the only Venezuelan-owned entities involved are CITGO Holding and any of its subsidiaries.  U.S. Dept. of Treasury, OFAC, General License No. 2, Authorizing Certain Transactions Involving CITGO Holding, Inc. (Aug. 25, 2017), https://www.treasury.gov/resource-center/sanctions/Programs/Documents/venezuela_gl2.pdf.

affecting the pledged CITGO Shares, in order to allow for an orderly appeal of the Final Judgment and avoid the imposition of unwarranted damage, including but not limited to the catastrophic and irreversible loss of its only meaningful asset, while the appeal is pending.

Rule 62(b) provides that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). A stay under Rule 62(b) is granted as *a matter of right* to the movant. *Cohen v. Metro. Life Ins. Co.*, 334 F. App'x 375, 378 (2d Cir. 2009) (under former Rule 62(d), now Rule 62(b), "an appellant may obtain a stay pending appeal, as of right") (citing *F.D.I.C. v. Ann–High Assocs.*, No. 97-6095, 1997 WL 1877195, at *1 (2d Cir. 1997) (per curiam)); *see also Grant v. Lockett*, No. 5:15-CV-0445 (DNH/TWD), 2019 WL 1872967, at *4 (N.D.N.Y. Apr. 26, 2019) ("Where a party posts a full bond or other security pursuant to Federal Rule of Civil Procedure 62(b), such party is entitled to a stay from a monetary judgment as a matter of right."); *Offor v. Mercy Med. Ctr.*, No. 2:15-CV-2219-ADS/SIL, 2019 WL 8112472, at *1 (E.D.N.Y. Jan. 11, 2019) ("Under Rule 62(b), [Plaintiff] could obtain a stay as a matter of right by posting a bond or other security."). "In such circumstances, 'the court has no discretion to deny the stay itself, but only to fix the amount of (or to waive) the bond.'" *Seneca Nation of Indians v. New York*, No. 19-CV-735S, 2019 WL 6768779, at *2 (W.D.N.Y. Dec. 12, 2019) (quoting *Frommert v. Conkright*, 639 F. Supp. 2d 305, 308 (W.D.N.Y. 2009)).

Here, as discussed below, Defendants' rights under the Final Judgment to enforce the Pledge Agreement and sell the CITGO Shares are already secured by the Pledge Agreement itself, which will remain in full force and effect throughout the pendency of the appeal. This is sufficient to satisfy the "other security" requirement of Rule 62(b). No additional security is warranted—or for that matter possible given the sanctions regime—to protect the status quo.[12]

---

[12] While PDVH maintains that it is entitled to a stay as a matter of right under Rule 62(b), Rule 62(g) makes clear that the rule's remaining provisions do not limit the general equitable power of appellate courts, and by extension district

**A.     The Pledge Agreement Secures Defendants' Right to Obtain the Pledged Shares, the Only Portion of the Judgment PDVH Seeks to Stay, and Is Therefore Adequate Security to Obtain a Stay Under Rule 62(b)**

PDVH, which is not a debtor under the Transaction Documents, respectfully seeks a stay only of the portions of the judgment affecting the pledged CITGO Shares.  Neither PDVH nor any other PDVSA party seeks a stay of the portion of the Final Judgment holding that PDVSA and PDVSA Petróleo owe the sum of approximately $1.924 billion to Defendants.

The Pledge Agreement assures that the pledged CITGO Shares (in which PDVH has granted and delivered a first-priority interest to the Collateral Agent) will remain in exactly the same form and manner post-appeal as they do today.  For example, PDVH covenanted that it "shall ensure that, at all times, the Pledged Shares shall represent 50.1% of the outstanding shares of capital stock or ownership interests in CITGO Holding," and that it will not "create or suffer to exist any Liens on the Collateral other than Permitted Collateral Liens," nor "sell, assign, lease, transfer or otherwise dispose of any interest in the Collateral, except as permitted by the Transaction Documents or upon the direction of the Collateral Agent in connection with the enforcement of its rights under the Transaction Documents," nor "take, or knowingly permit to be taken, any action that would terminate, or discharge or [] prejudice the validity or effectiveness of this Agreement or the validity, effectiveness or priority of the Liens created hereby," nor "take any action that would Impair in any respect the rights and interests of the Collateral Agent and/or any successor collateral agent or the Trustee and/or any successor trustee."  Pledge Agreement, §§ 4.01(a), 4.02(a)-(d).  The Pledge Agreement also makes clear that it "shall create a continuing

---

courts, "to stay proceedings—or suspend, modify, restore, or grant an injunction—while an appeal is pending, or to issue an order to preserve the status quo or the effectiveness of the judgment to be entered."  PDVH respectfully submits that the Court may exercise its equitable powers to protect the status quo by issuing a stay without requiring a bond should Rule 62(b) be held not to apply.  *See, e.g.*, *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 757–61 (D.C. Cir. 1980); *Nken v. Holder*, 556 U.S. 418, 421 (2009) ("That is why it has always been held, that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.").

security interest in the Collateral until the release thereof." *Id.* § 7.02.  As a result, the Court can be assured that at the conclusion of the appeal, should this Court's Final Judgment be upheld, Defendants (subject to any sanctions restrictions) would be able to foreclose on and sell the very same pledged CITGO Shares available today.  The existence of that security entitles PDVH to a stay as a matter of right under Rule 62(b).

The Seventh Circuit, in analyzing the recently amended Rule 62(b), has found similar security sufficient in the analogous context of a mortgage foreclosure action.  *See Cornish*, 759 F. App'x 503.  In *Cornish*, the court held that a lender's security interest in the property subject to a foreclosure action is adequate to secure the money judgment and grant the borrower a stay under Rule 62(b), explaining that:

> [i]n the case of a mortgage foreclosure, the execution to put money in the lender's pocket should actually be simpler than with a general money judgment. The difference is that the lender already has its security interest in the mortgaged property. That security interest should ordinarily suffice to protect the lender's rights pending appeal for purposes of Rule 62. That's what the lender bargained for as its security, after all . . . .

*Id.* at 507-8 (further explaining that "the newly expressed flexibility for the form of security to protect the appellee gives more explicit support for treating the property in a mortgage foreclosure appeal as sufficient security" under Rule 62(b)); *see also Seneca Nation*, 2019 WL 6768779, at *1 ("Rule 62(b) now 'makes explicit the opportunity to post security in a form other than a bond,'  by providing that '[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security'") (quoting Fed. R. Civ. P. 62 (b) advisory committee's note to 2018 amendment).

The district court in *Crystallex Int'l Corp. v. PDVH Inc.* similarly determined that the PDVH shares that were attached subject to that court's judgment appropriately secured the money judgment against PDVSA, obviating the need for a bond—the court reasoned that at the conclusion

of litigation, Crystallex would be able to sell the attached property, just as it sought to do absent the stay.  No. 15-CV-1082-LPS, 2019 WL 6785504, at *3 n.4 (D. Del. Dec. 12, 2019).  The court further held such security adequate to warrant a stay without a bond even where a license from OFAC would be required before the attached property could be sold.  *Id*. at n. 5.

The rationale adopted by the courts in *Cornish* and *Crystallex* applies here with even greater force, as PDVH does not seek to stay the portion of the judgment requiring PDVSA and PDVSA Petróleo to pay the $1.924 billion in unpaid principal and interest.  PDVH simply seeks to stay the portion of the Final Judgment affecting the pledged CITGO Shares themselves and will continue to maintain those very shares secured by the Pledge Agreement that Defendants negotiated to secure their collateral as security for that portion of the judgment.  No additional security should be required, as discussed below.

### B.    No Additional Security Beyond the Pledged Shares Is Required to Secure Defendants' Right to Obtain and Sell the Pledged Shares at the Conclusion of the Appeal

The Second Circuit in *Nassau* has identified the following non-exclusive factors to determine whether additional security beyond the Pledge Agreement is warranted:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the [movant's] ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the [movant] is in such a precarious financial situation that the requirement to post a bond would place other creditors of the [movant] in an insecure position.

*In re Nassau Cnty. Strip Search*, 783 F.3d 414, 417-418 (2d Cir. 2015) (waiving the bond or security requirement altogether where the movant had "demonstrated the existence of appropriated funds available for the purpose of paying judgments without substantial delay or other difficulty"). Importantly, the Court's discretion under *Nassau* extends not just to the acceptance of alternative security, ***but to the complete waiver of any additional requirement***.  *See id.*; *Rivera v. Home Depot*

14

*U.S.A. Inc.*, 16-cv-7552 (KBF), 2018 WL 3105069, at *2 (S.D.N.Y. June 25, 2018) (granting a stay and waiving the bond requirement without requiring further security, in part because the court was satisfied the movant could satisfy the judgment if unsuccessful on appeal); *Grant*, 2019 WL 1872967, at *4 (granting a stay under Rule 62(b) without requiring a bond given the movant's ability to satisfy the judgment if upheld on appeal).

Under the *Nassau* factors, no additional security is necessary or appropriate beyond what is provided for in the Pledge Agreement, which (if the Final Judgment is upheld on appeal) is more than adequate to secure the portion of the Final Judgment that PDVH seeks to stay.  The Pledge Agreement already fully secures the very shares for which it seeks to stay execution, thereby preserving the status quo for all parties during the pendency of the appeal, exactly as *Nassau* and its progeny contemplate.

As to the first and second *Nassau* factors, the collection process will be no more complex and time consuming at the resolution of PDVH's appeal than it would be if this Court and OFAC authorized it to occur today.  Were the Second Circuit to uphold the Final Judgment, Defendants would engage in the same process at that time to foreclose on and sell the pledged Collateral.  The facts here are analogous to *In re Bakery & Confectionery Union & Industry International Pension Fund Pension Plan*, No. 11 CV 1471 (VB), 2013 WL 12444540 (S.D.N.Y. Jan. 29, 2013), where another court in this District granted a stay and waived the bond requirement after finding that the movant had sufficient funds set aside in trust, the majority of which were invested in "readily marketable securities" such that beneficiaries who would "receive payments if the judgment is affirmed will be paid within thirty to ninety days thereafter."  *See also Seneca Nation*, 2019 WL 6768779, at *3 (finding that the movant's proffered "other security"—a restricted securities account and an agreement by movant not to withdraw funds—was adequate for a stay under Rule

62(b)); *Frommert,* 639 F. Supp. 2d at 313–14 (finding adequate security in the movant's retaining assets large enough to pay the judgment in a timely fashion after appeal).

As to the third and fourth *Nassau* factors, there is no reason to doubt that PDVH will satisfy its portion of the Final Judgment should it be affirmed on appeal.  Given that PDVH's obligations under the Final Judgment pertain only to its pledged Collateral (and it seeks to stay only that part), the only question is whether PDVH will be able to meet its obligations as Pledgor following an appeal in the same way that it would be required to do today.  Imposing a bond (or similar security) would do nothing to make PDVH better able or more likely to satisfy its existing obligations. Moreover, requiring a bond (or additional security) would not only waste resources; it would place PDVH in an impossible position, as current sanctions would preclude PDVH from providing or raising funds for a bond or otherwise transferring shares to any third party in the absence of an OFAC license.  *See supra* Background, § IV.

As to the fifth factor, requiring a bond in addition to the Pledge Agreement would place other creditors of PDVH and its subsidiaries in an insecure position.  PDVH's only meaningful assets are held by the CITGO Entities, and those entities have their own creditors.  If PDVH were required to post a bond (even assuming it could get an OFAC license in time to avoid irreparable harm) obtaining a bond would require PDVH effectively to mortgage CITGO's assets, placing other creditors in a less secure position with respect to the CITGO Entities.

Thus, under the *Nassau* factors, no additional security or bond should be required.  The CITGO Shares secured by the Pledge Agreement will remain entirely intact throughout the appeal, and Defendants will have no less ability to enforce their rights to sell the CITGO Shares following an appeal than they do today.  The enumerated *Nassau* factors are, of course, not exclusive.  783 F.3d at 417.  This Court therefore should additionally consider the harm to U.S. foreign policy and

national security interests, as well as the overall harm to CITGO, its employees, and the millions of Americans that rely on its oil, not to mention the harm caused to the Republic of Venezuela. These potential public harms are additional factors weighing in favor of allowing PDVH to secure the Collateral in lieu of a bond or additional security. *See, e.g.*, *Grant*, 2019 WL 1872967, at *5 (highlighting the potential harm to taxpayers in deciding to waive the bond).

## II.   PDVH IS ALSO ENTITLED TO A PARTIAL STAY OF THE COURT'S FINAL JUDGMENT SECURED BY THE COLLATERAL AS A MATTER OF RIGHT UNDER RULE 62(f)

In addition to Rule 62(b), PDVH is entitled to a stay as a matter of right under Rule 62(f). Pursuant to Rule 62(f), "[i]f a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give." Here, the Final Judgment constitutes a lien on PDVH's property under New York law and, accordingly, PDVH is entitled to a stay under N.Y.C.P.L.R. § 5519.

The Second Circuit has held that Rule 62(f) applies where the party seeking the stay can demonstrate: "(1) that state law entitles it to appeal without a bond and (2) that a judgment can be made a lien against a judgment debtor's property under the state's lien law, [and] (3) that the circumstances are such that the judgment creditor can readily establish a lien that will be adequate to secure the judgment." *Ann–High Assocs.*, 1997 WL 1877195, at *4. "If state law provides security pending appeal to a particular judgment creditor in the form of a lien, then federal courts must respect the state's determination that judgment debtors in the state may appeal without filing a bond." *Id*. PDVH satisfies these requirements here and is therefore entitled to a stay under Rule 62(f) as a matter of right without the requirement to post a bond.

New York law entitles PDVH to a stay pending an appeal without requiring a bond. Under CPLR 5519(a)(4), "[s]ervice upon the adverse party of a notice of appeal . . . stays all proceedings

to enforce the judgment or order appealed from pending the appeal . . . where . . . the judgment or order directs the assignment or delivery of personal property, and the property is placed in the custody of an officer designated by the court of original instance to abide the direction of the court to which the appeal is taken."   Additionally, under CPLR 5519(c), the Court "may stay all proceedings to enforce the judgment" absent any bond requirement not subject to an automatic stay under subsection (a).  *See also* N.Y.C.P.L.R. § 2201 ("Except where otherwise prescribed by law, the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just.").  Thus, once the CITGO Shares have been placed in the custody of an agent designated by the Court, or the Court determines that this is unnecessary because the CITGO Shares have already been secured, PDVH would be entitled to a stay as a matter of right under New York law.  *See* Commentary to § 5519 ("Under paragraph 4, . . . the appellant has the option of placing the property in neutral custody.").  Here, the CITGO Shares are already secured by an agent approved by the Defendants—they are in the possession of the Collateral Agent and protected by the Pledge Agreement.  As such, this Court should find the requirements of New York law satisfied and issue a stay under Rule 62(f).

*Second*, by declaring that the Pledge Agreement is valid and may be enforced, the Court's Final Judgment (if affirmed on appeal) confirms a lien against the CITGO Shares.  The Pledge Agreement itself, which is adjudged to be valid under the Final Judgment, explicitly contemplates the pledged Collateral as constituting "Liens created by this Agreement," and the district court's judgment can swiftly be made a lien against PDVH's property under New York law—the writ need only be executed via ministerial acts.  *See* Pledge Agreement, § 2.02; N.Y.C.P.L.R. § 5202(a) (automatically converting money judgment into lien on personal property upon delivery of

judgment to a sheriff);[13] *Ann–High*, 1997 WL 1877195, at *3 (where creditor need do no more than "ministerial acts" to make lien effective, lien can satisfy Rule 62(f)).  To be sure, the Second Circuit's flexible test was crafted with the express purpose of allowing for the satisfaction of Rule 62(f) where state judgments give rise to liens without directly creating them.  *Ann–High*, 1997 WL 1877195, at *3 (collecting cases); *see also Castillo v. Montelepre, Inc.*, 999 F.2d 931, 942 (5th Cir. 1993) (finding that judgment qualified as a lien for purposes of Rule 62(f) because only ministerial acts needed to transform it into a lien, explaining that "great deference must be given to the manifest desire of the [state] legislature to allow [a losing party] to appeal without bond").

*Third*, as discussed *supra*, PDVH has demonstrated that the circumstances are such that, should the Final Judgment be upheld on appeal, Defendants can readily establish a lien over the pledged CITGO Shares (the portion of the judgment being stayed), as such shares are subject to and secured by the Pledge Agreement, which provided for the delivery of said shares, "accompanied by duly executed instruments of transfer or assignment undated and in blank." Pledge Agreement, § 2.02.

## **CONCLUSION**

For the forgoing reasons, PDVH respectfully requests that this Court stay the portions of its Final Judgment that pertain to the Pledge Agreement and underlying Collateral.

---

[13] As another court in this district recently explained, a money judgment "acts as a lien on personal property" under CPLR 5202 "[o]nce the writ is delivered to a sheriff," a mere ministerial act.  *Butler v. Ross*, No. 16CV1282 (DLC), 2017 WL 6210843, at *2–3 (S.D.N.Y. Dec. 7, 2017).  While the court in *Butler* ultimately did not grant the stay under Rule 62(f) because, under the third factor of *Ann-High Associates*, the court determined that a lien on the personal property at issue would not be adequate to secure the judgment in that case; here, a lien on the CITGO Shares would clearly be adequate to secure the judgment as to those very shares.  Moreover, the Final Judgment, if upheld on appeal, entitles Defendants to enforce the Pledge Agreement which itself contemplates the pledge serving as a "lien" on the CITGO Shares, obviating the need for the Collateral Agent to take the additional ministerial step of delivering the judgment to the Sherriff.

Dated:  December 11, 2020                    Respectfully submitted,


                                             /s/ Jeffrey B. Korn
                                             Jeffrey B. Korn
                                             Michael Gottlieb
                                             Nicholas Reddick
                                             Cole Mathews
                                             Kyle Mathews

                                             WILLKIE FARR & GALLAGHER LLP
                                             787 Seventh Avenue
                                             New York, NY 10019
                                             Telephone: (212) 728-8000
                                             Facsimile: (212) 728-8111
                                             jkorn@willkie.com
                                             cmathews@willkie.com

                                             1875 K Street NW
                                             Washington, DC  20006-1238
                                             Telephone: (202) 303-1442
                                             Facsimile: (202) 303 2442
                                             mgottlieb@willkie.com
                                             nreddick@willkie.com
                                             kmathews@willkie.com

                                             *Attorneys for PDV Holding, Inc.*