**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETRÓLEOS DE VENEZUELA, S.A., PDVSA PETRÓLEO, S.A., and PDV HOLDING, INC., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> - against - <br><br> MUFG UNION BANK, N.A. and GLAS AMERICAS LLC, <br><br> Defendants and Counterclaim Plaintiffs. | No. 19 Civ. 10023 (KPF) |

**MEMORANDUM OF LAW IN OPPOSITION TO PDVH'S MOTION FOR A PARTIAL STAY OF EXECUTION OF FINAL JUDGMENT PENDING APPEAL**

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
Walter Rieman
William A. Clareman
Jonathan Hurwitz
Shane D. Avidan
Zachary B. Kaye
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Facsimile: 212-757-3990

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
Roberto J. Gonzalez (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006-1047
Telephone: 202-223-7300

*Attorneys for Defendants and
Counterclaim Plaintiffs
(as to New York law issues only)*

LATHAM & WATKINS LLP
Christopher J. Clark
Matthew S. Salerno
Sean H. McMahon
885 Third Avenue
New York, NY 10022
Telephone: 212-906-1200
Facsimile: 212-751-4864

*Attorneys for Defendants and
Counterclaim Plaintiffs*

TABLE OF CONTENTS

**Page**

Table of Contents..........................................................................................................i

Glossary and Citation Conventions ...................................................................v

Preliminary Statement ......................................................................................1

Background   ....................................................................................................3

      A.    The 2020 Notes, the Security Interest, and the Power of the Trustee and Collateral Agent to Pursue Nonjudicial Foreclosure and Sale of the Collateral..................................................................................3

      B.    OFAC Restrictions on the Ability of the Trustee and Collateral Agent to Foreclose on and Sell the Collateral .................................................5

      C.    This Litigation and the Court's Judgment ...................................................7

      D.    PDVH's Motion ..................................................................................8

Argument   ....................................................................................................8

I.     PDVH Is Not Entitled to Relief Under Rule 62(b)................................................9

      A.    Rule 62(b) Applies Only to Money Judgments, and Not to Judgments for Declaratory Relief.........................................................................9

      B.    Rule 62(b) Does Not Entitle PDVH to an Injunction Precluding Enforcement of the Indenture and Pledge Agreement.............................12

II.    PDVH Is Not Entitled to Relief Under Rule 62(f). ................................................18

III.   PDVH Has Waived Any Argument for an Injunction Pending Appeal Under Rule 62(d).  20

IV.   PDVH Is Not Entitled to Seek Relief Against Actual or Beneficial Owners of 2020 Notes or Other Nonparties. ..........................................................22

Conclusion   .................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension
    Plan,*
    2013 WL 12444540 (S.D.N.Y. Jan. 29, 2013) ...........................................................11

*Butler* v. *Ross,*
    2017 WL 6210843 (S.D.N.Y. Dec. 7, 2017) ............................................................19

*Centauri Ship. Ltd.* v. *W. Bulk Carriers KS,*
    528 F. Supp. 2d 186 (S.D.N.Y. 2007) ...............................................................10, 11

*City of New York* v. *District Council 37, AFSCME,*
    2006 WL 1465724 (Sup. Ct. N.Y. County Apr. 10, 2006).......................................19

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venez.,*
    2018 WL 4026738 (D. Del. Aug. 23, 2018) ............................................................14

*Crystallex Int'l Corp.* v. *PDVH Inc.,*
    2019 WL 6785504 (D. Del. Dec. 12, 2019) ............................................................14

*Deutsche Bank Nat'l Tr. Co.* v. *Cornish,*
    759 F. App'x 503 (7th Cir. 2019)................................................................11, 14, 15

*Doctor's Assocs., Inc.* v. *Reinert & Duree, P.C.,*
    191 F.3d 297 (2d Cir. 1999) ...................................................................................22

*Donovan* v. *Fall River Foundry Co., Inc.,*
    696 F.2d 524 (7th Cir. 1982) ..................................................................................10

*FDIC* v. *Ann-High Associates,*
    1997 WL 1877195 (2d Cir. Dec. 2, 1997)..........................................................18, 19

*Federal Prescription Serv., Inc.* v. *American Pharmaceutical Association,*
    636 F.2d 755 (D.C. Cir. 1980)................................................................................22

*Flatiron Health, Inc.* v. *Carson,*
    2020 WL 1643396 (S.D.N.Y. Apr. 1, 2020) ...........................................................17

*Frommert* v. *Conkright,*
    639 F. Supp. 2d 305 (W.D.N.Y. 2009)....................................................................11

*Frye* v. *Lagerstrom,*
    2018 WL 4935805 (S.D.N.Y. Oct. 10, 2018)...........................................................17

*Gulino* v. *Bd. of Educ.*,
   2019 WL 2454094 (S.D.N.Y. June 12, 2019) ..........................................10

*Knowles-Carter* v. *Feyonce, Inc.*,
   2017 WL 11567528 (S.D.N.Y. Sept. 23, 2017) ......................................21

*LaRouche* v. *Kezer*,
   20 F.3d 68 (2d Cir. 1994) ......................................................................20

*Leevson* v. *Aqualife USA Inc.*,
   2017 WL 6541766 (E.D.N.Y. Dec. 8, 2017) ...........................................15

*LinkCo, Inc.* v. *Naoyuki Akikusa*,
   367 F. App'x 180 (2d Cir. 2010) ...........................................................21

*Metro. Life Ins. Co.* v. *RJR Nabisco, Inc.*,
   906 F.2d 884 (2d Cir. 1990) ..................................................................15

*Moore* v. *Navillus Tile, Inc.*,
   2017 WL 4326537 (S.D.N.Y. Sept. 28, 2017) ...................................17, 18

*Morgenthau* v. *Erlbaum*,
   5451 N.E.2d 150 (N.Y. 1983)..................................................................19

*In re Nassau County Strip Search Cases*,
   783 F.3d 414 (2d Cir. 2015) ..................................................................14

*In re New York Skyline, Inc.*,
   520 B.R. 1 (S.D.N.Y. 2014) ...................................................................21

*NLRB* v. *Westphal*,
   859 F.2d 818 (9th Cir. 1988) .................................................................10

*Nken* v. *Holder*,
   556 U.S. 418 (2009)...................................................................12, 13, 20, 22

*Off-White LLC* v. *0225XIANGCHUN*,
   2020 WL 3618963 (S.D.N.Y. July 2, 2020).............................................22

*Optimum Shipping & Trading, S.A.* v. *Prestige Marine Servs. Pte. Ltd.*,
   613 F. Supp. 2d 502 (S.D.N.Y. 2009) ....................................................20

*In re Pandeff*,
   201 B.R. 865 (Bankr. S.D.N.Y. 1996)....................................................18

*Pokoik* v. *Dep't of Health Servs.*,
   641 N.Y.S.2d 881 (2d Dep't 1996).....................................................19, 20

iii

*In re Residential Capital, LLC*,
497 B.R. 403 (Bankr. S.D.N.Y. 2013)..........................................................................15

*In re Tower Auto., Inc.*,
*Van Valkenberg ex rel. B.G.* v. *Astrue*,
2010 WL 2400455 (N.D.N.Y. May 27, 2010)......................................................10, 21

*Spin Master Ltd.* v. *158*,
*In re Weatherford Int'l Sec. Litig.*,
2013 WL 12185082 (S.D.N.Y. Nov. 19, 2013).........................................................21

463 F. Supp. 3d 348, 380 (S.D.N.Y. 2020), *adhered to in part on*
*reconsideration*, 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020) ..................................23

*United States* v. *Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*,
44 F.3d 1082 (2d Cir. 1995) ......................................................................................20

*Xerox Corp.* v. *JCTB Inc.*,
2019 WL 6000997 (W.D.N.Y. Nov. 14, 2019) .........................................................10

**STATUTES**

C.P.L.R. § 5202 ..............................................................................................................19

C.P.L.R. § 5519 ........................................................................................................19, 20

**OTHER AUTHORITIES**

Black's Law Dictionary (11th ed. 2019) ..........................................................................12

Frederick H. Miller and Carl S. Bjerre, 10 Hawkland UCC Series § 9-
609:1 (2020)................................................................................................................15

Federal Rule of Civil Procedure 54 ...................................................................................7

Federal Rule of Civil Procedure 62 ............................................................................passim

Reilly, Editors' Notes, McKinney's Cons Laws of NY, C.P.L.R. Ch.
Eight, Art. 52 .............................................................................................................19

Reilly, Practice Commentary, McKinney's Cons Laws, Book 7B, C.P.L.R.
§ 5519(c)....................................................................................................................20

11A Charles A. Wright and Arthur R. Miller, Federal Practice and
Procedure (3d ed. 2020)........................................................................................21, 22

## GLOSSARY AND CITATION CONVENTIONS

This brief uses the following defined terms:

"56.1 ¶ __" means the Local Rule 56.1 Statement of Undisputed Material Facts in Support of Defendant and Counterclaim Plaintiffs' Motion for Summary Judgment, ECF No. 100.

"2017 Notes" means the 5.25% Senior Notes due 2017 and the 8.5% Senior Notes due 2017, both issued by PDVSA.

"2020 Notes" or "Notes" means the 8.5% Senior Secured Notes due 2020 issued by PDVSA pursuant to the Indenture.

"CITGO Holding" means CITGO Holding Inc.

"Collateral" means PDVH's pledge of a 50.1% interest in CITGO Holding under the Pledge Agreement.

"Collateral Agent" means defendant and counterclaim plaintiff GLAS Americas LLC, the collateral agent of the 2020 Notes.

"Complaint" means the Complaint for Declaratory and Injunctive relief filed by the PDVSA Parties in the above-captioned action on October 29, 2019, ECF No. 1.

"Event of Default" has the meaning specified in Section 5.0l(a) of the Indenture.

"Global Notes" means, collectively, the Global Notes to which the Indenture refers, and that evidence the obligations of PDVSA, as issuer, and PDVSA Petróleo, as guarantor, to Cede & Co., which is the registered holder of the 2020 Notes.  The Global Notes are attached as Exhibit 6 to the Declaration of Christopher J. Clark dated June 10, 2020.

"Governing Documents" means the Global Note, Indenture, and Pledge Agreement for the 2020 Notes.

"Indenture" means the Indenture dated October 27, 2016, between PDVSA as issuer, PDVSA Petróleo as guarantor, the Trustee, the Collateral Agent, the Law Debenture Trust Company of New York as registrar, transfer agent, and principal paying agent, and Banque Internationale à Luxembourg, Société Anonyme as Luxembourg paying agent.  The Indenture is attached as Exhibit 2 to the Declaration of Christopher J. Clark dated June 10, 2020.

"Judgment" means the Court's Judgment dated December 1, 2020, ECF No. 229.

"PDVH" means plaintiff and counterclaim defendant PDV Holding, Inc.

"PDVH Mem." means PDV Holding, Inc.'s Memorandum of Law in Support of Motion for Partial Stay of Execution of Final Judgment Pending Appeal, ECF No. 234.

"PDVSA" means plaintiff and counterclaim defendant Petróleos de Venezuela, S.A.

"PDVSA Parties" means PDVSA, PDVSA Petróleo, and PDVH.

"PDVSA Petróleo" means plaintiff and counterclaim defendant PDVSA Petróleo S.A.

"Pl. Opp. 56.1 ¶ __" means the Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts in Support of Defendants' Cross-Motion for Summary Judgment, ECF No. 153.

"Pledge Agreement" means the Pledge and Security Agreement dated October 28, 2019, between PDVH as pledgor, PDVSA as issuer, PDVSA Petróleo as guarantor, the Collateral Agent, and the Trustee.  The Pledge Agreement is attached as Exhibit 3 to the Declaration of Christopher J. Clark dated June 10, 2020.

"OFAC" means the Office of Foreign Assets Control of the U.S. Department of the Treasury.

"Summary Judgment Order" means the Court's Opinion and Order, dated October 16, 2020.

"Trustee" means defendant and counterclaim plaintiff MUFG Union Bank, N.A., the trustee of the 2020 Notes.

PRELIMINARY STATEMENT

On December 1, 2020, this Court entered judgment ordering PDVSA and PDVSA Petróleo to pay the Trustee and Collateral Agent $1,924,126,058 in unpaid principal and interest, and declaring, among other things, that the 2020 Notes and the Governing Documents are valid and enforceable, that a default has occurred under the terms of the Indenture, and that the Trustee and Collateral Agent are permitted to exercise the default remedies set forth in the Indenture and Pledge Agreement, including a sale of the Collateral. As PDVH acknowledges, the judgment as to PDVH is exclusively declaratory: it merely affirms the rights and obligations of the parties under the Governing Documents. It awards no damages against PDVH and grants no injunctive relief against it.

Although PDVH characterizes the relief it seeks as a "stay of execution" of the Court's judgment, its motion papers, including its proposed order, make clear that it is seeking an entirely different remedy—a remedy to which it does not even attempt to establish a right. The effect of granting PDVH's motion would not be to stay enforcement of the judgment. Because the judgment grants only declaratory relief as to PDVH, there is nothing to enforce. Instead, PDVH seeks to enjoin the Trustee and Collateral Agent (and a range of nonparties, including holders of the 2020 Notes) from exercising contractual rights under the Pledge Agreement that exist independent of the judgment. But under settled law, the Rules on which PDVH relies—subsections (b) and (f) of Federal Rule of Civil Procedure 62—do not apply to purely declaratory judgments. Those Rules also do not entitle the moving party to injunctive relief. PDVH has made no effort to establish a right to injunctive relief under subsection (d) of Rule 62 (which it does not even cite), and accordingly has waived any request for an injunction.

1

The relief PDVH seeks would impair the rights of the Trustee and the Collateral Agent and, ultimately, those of the holders of the 2020 Notes.  As the Court is aware, the value of the 2020 Notes when they were issued rested (and today still rests) principally on PDVH's pledge of a controlling interest in CITGO.  In turn, the value of that pledge turned in large part on the ability of the Trustee and Collateral Agent, upon an Event of Default, to commence and consummate a swift nonjudicial foreclosure of the pledged shares on the terms set forth in the Pledge Agreement.  The availability of an immediate nonjudicial foreclosure protects secured creditors from the risk that the value of their collateral might decline (due to debtor mismanagement or otherwise) while their rights are litigated, or that other creditors will attempt to seize the debtor's assets.  The order that PDVH seeks would write those critical remedial provisions out of the governing documents, and deprive the Trustee and Collateral Agent of their benefit.

The present inability of the Trustee and Collateral Agent to foreclose on and undertake the process of selling the Collateral under the U.S. sanctions regime does not support the relief PDVH seeks.  PDVH contends that a sale of the collateral would harm the foreign policy interests and domestic economy of the United States.  As the Court is aware, U.S. sanctions currently preclude sale of the Collateral until January 19, 2021.  If—as PDVH claims to expect, PDVH Mem. at 9—the executive branch extends the effective time of that prohibition, the relief PDVH seeks is unnecessary for as long as the prohibition is in place.  The political and foreign policy considerations that PDVH cites as reasons for a stay in its motion are more appropriately considered by the executive branch than by this Court.  PDVH should not be heard to ask the Court to pre-empt future actions by the executive branch based upon its view of whether this country's

foreign policy interests are consistent with permitting the Trustee and Collateral Agent to sell the Collateral while this case is on appeal.

BACKGROUND

**A.     The 2020 Notes, the Security Interest, and the Power of the Trustee and Collateral Agent to Pursue Nonjudicial Foreclosure and Sale of the Collateral**

As the Court is aware from prior proceedings, the 2020 Notes, issued on October 28, 2016, in a voluntary exchange for previously issued 2017 Notes, are secured by PDVH's pledge of 50.1% of the equity in CITGO Holding, the corporate parent of CITGO Petroleum.  Summary Judgment Order at 1–2, 12.  Concurrently with the execution of the Pledge Agreement, PDVH delivered the pledged shares to the Collateral Agent, which continues to hold them.  *Id*. at 9–10.

The pledge of a controlling interest in CITGO Holding was integral to the success of the Exchange in which the 2020 Notes were issued.  PDVSA's credit rating had rapidly declined between the issuance of the 2017 Notes and the Exchange Offer, and PDVSA's financial advisors concluded that the pledge was a means of providing "value" to investors.  Summary Judgment Order at 7–8; 56.1 ¶¶ 54–57, 175; Pl. Opp. 56.1 ¶¶ 54–57.  The pledge was prominently featured on the Offering Circular for the Exchange Offer delivered to prospective investors.  Offering Circular, ECF No. 40–1 at 1 ("The New Notes will be secured, subject to certain exceptions and permitted liens, by a first-priority lien on 50.1% of the capital stock of CITGO Holding, Inc. (the 'Collateral').").

The Indenture and Pledge Agreement authorize the Trustee and the Collateral Agent to execute an immediate nonjudicial foreclosure and eventual sale of the Collateral in case of an Event of Default, as well as to pursue a wide range of other remedies with respect to the Collateral.  Section 5.01 of the Pledge Agreement authorizes

3

the Collateral Agent (acting in accordance with the terms of the Indenture and at the written direction of the Trustee), "in addition to all other rights and remedies granted in this Agreement" or in any other relevant agreement, to exercise "all rights and remedies of a secured party under the Uniform Commercial Code" with respect to the Collateral. Pledge Agreement § 5.01. Section 5.02 of the Pledge Agreement further provides that, "[w]ithout limiting the generality of Section 5.01," if an Event of Default has occurred and is continuing, the Collateral Agent, at the written direction of the Trustee and upon at least ten days' written notice to PDVH, may "sell the Collateral or any part thereof" on any commercially reasonable terms. *Id.* § 5.02. Under Section 2.05(d) of the Pledge Agreement, upon an Event of Default, the Collateral Agent, acting at the written direction of the Trustee, is also entitled to direct PDVH to vote the Collateral in the manner directed. *Id.* § 2.05(d).

The Indenture separately authorizes the Trustee and Collateral Agent to pursue judicial remedies against PDVSA and PDVSA Petróleo (as Guarantor of the 2020 Notes), in addition to the nonjudicial remedies authorized by the Pledge Agreement. Under the Indenture, in an Event of Default, the Trustee may "institute a judicial proceeding for the collection of the sums . . . due and unpaid, may prosecute such proceeding to judgment or final decree and may enforce the same against the Issuer or any other obligor upon such Notes and collect the monies . . . ." Indenture § 5.01(f). The Indenture further provides that "every right and remedy [provided under the Indenture] shall . . . be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise." *Id.* § 5.01(m).

**B.**     **OFAC Restrictions on the Ability of the Trustee and Collateral Agent to Foreclose on and Sell the Collateral**

On October 27, 2019, PDVSA failed to make principal and interest payments due in the amount of $913,442,241.25.  As a consequence, an Event of Default as defined in the Governing Documents, has occurred and is continuing.  *See* Summary Judgment Order at 14; Indenture § 5.01(a)(1), (2); 56.1 ¶¶ 259, 261–62.

The only current restriction on the ability of the Trustee and Collateral Agent to foreclose on and undertake the process of selling the Collateral stems from U.S. sanctions relating to Venezuela and Venezuelan state-owned enterprises, including PDVSA and its subsidiaries.  In July 2018, OFAC issued General License 5, which authorizes "all transactions related to, the provision of financing for, and other dealings in" the 2020 Notes, including a foreclosure and sale of the Collateral securing the 2020 Notes, irrespective of otherwise applicable sanctions prohibitions.  56.1 ¶ 226.  Since October 2019, however, OFAC has issued a series of amended licenses temporarily suspending this authorization.  *Id.* ¶¶ 229–31   The most recent suspension expires on January 19, 2020.  U.S. Dep't of Treasury, OFAC, General License No. 5E, Authorizing Certain Transactions Related to the Petróleos de Venezuela, S.A. 2020 8.5 Percent Bond on or After January 19, 2021, https://home.treasury.gov/system/files/126/venezuela_gl5e.pdf.  PDVH represents in its brief that it "expects that in the coming weeks the Treasury Department will extend the suspension of General License 5E for an additional period of time."  PDVH Mem. at 9.

As the PDVSA Parties and the Guaidó Administration have repeatedly acknowledged, seeking a continued prohibition on foreclosure from the executive branch of the United States Government is an integral element of their litigation strategy, which

is designed to protect their control of CITGO "at all costs and by all means."  56.1 ¶ 279.

Immediately after the Court issued its ruling on summary judgment, the Guaidó

Administration stated in a press release that it "continues to work with our allies,

especially the U.S. Government, to maintain protection over and move towards definitive

preservation of CITGO for all Venezuelans."  Hurwitz Decl. Ex. 1.

        The PDVSA Parties have repeatedly recognized that, if and when General

License 5E goes into effect, the Trustee and Collateral Agent will be able to foreclose on

and sell the Collateral without need for action by the Court.  On November 6, 2019,

shortly after this litigation commenced, the PDVSA Parties urged the Court to establish a

highly expedited litigation schedule so that the Court could rule on summary judgment

motions before the expiration on January 22, 2020, of General License 5A (the then-

effective OFAC license suspending the effective date of the relevant authorization).  The

PDVSA Parties acknowledged in a letter to the Court that, unless the Court ruled in their

favor on or before that date, the Trustee and Collateral Agent "will be able (absent further

action by OFAC) to exercise purported default remedies with respect to the pledged

CITGO Holdings shares on January 22, 2020."  ECF No. 15 at 2.  At a hearing held

shortly thereafter, counsel for the PDVSA Parties reiterated that they would be willing to

agree to a less expedited schedule only "if we could get, from the Treasury Department,

an extension of the effective date of General License 5A."  Hr'g Tr. 8:24–9:5, Nov. 8,

2019, ECF No. 31.

        The PDVSA Parties' Complaint likewise acknowledges that, absent

injunctive relief in their favor, "but for General License 5A, the Trustee could direct the

Collateral Agent to exercise default remedies with respect to the pledged CITGO

Shares." Complaint ¶¶ 9, 72. The parties' agreement under which the Trustee and

Collateral Agent agreed to forbear from exercising certain rights against the Collateral,

*see* ECF No. 29 at 1, has now expired.

**C.    This Litigation and the Court's Judgment**

On October 29, 2019, the PDVSA Parties commenced this action against

the Trustee and the Collateral Agent. They alleged in the Complaint that the 2020 Notes

and the Governing Documents were invalid. The Complaint sought declaratory relief and

an injunction precluding the Trustee and Collateral Agent from, among other things,

"attempting to exercise any rights, remedies, or privileges purportedly arising from a

default or Event of Default under the Indenture or the Pledge Agreement." Complaint,

Prayer for Relief at 30. The Trustee and the Collateral Agent asserted counterclaims for,

in relevant part, declaratory relief and breach of contract for payment of principal and

interest. Answer and Counterclaims, ECF No. 40 at ¶¶ 175–253.

On December 1, 2020, the Court entered final judgment under Federal

Rule of Civil Procedure 54(b) in favor of the Trustee and the Collateral Agent. *See*

Judgment at 1. The Judgment dismissed with prejudice the PDVSA Parties' Complaint

for Declaratory Judgment and Injunctive Relief, and "all claims asserted therein;" granted

summary judgment to the Trustee and Collateral Agent on their counterclaims for breach

of contract; and directed judgment against PDVSA and PDVSA Petróleo for unpaid

principal and interest, including prejudgment interest. *Id*. at 1–2. The Judgment also

declared, among other things, that the 2020 Notes and the Governing Documents are

valid and enforceable, that a default has occurred under the terms of the Indenture, that

"the Trustee is entitled to direct the Collateral Agent to sell the collateral securing the

2020 Notes," and that "the Collateral Agent is entitled to so sell." *Id*. at 2–3. The Court

withheld judgment on the Trustee and Collateral Agent's counterclaims for equitable relief and breach of warranty and on the amount of fees and expenses to which the Trustee and Collateral Agent are entitled. *Id.* at 1–2.

### D.       PDVH's Motion

PDVH purports by this motion to seek only "a partial stay of enforcement" of the Court's judgment pending appeal. PDVH Mem. at 1. It contends that, pursuant to Federal Rule of Civil Procedure 62(b) and (f), it is entitled to a stay of the provisions of the Court's judgment declaring that the 2020 Notes and the Governing Documents are valid and that the Trustee and Collateral Agent are entitled to sell the Collateral. *Id.* at 2–3. As the motion acknowledges, PDVSA and PDVSA Petróleo do not seek a stay or any other relief from the Judgment. *Id*. at 2 n.2.

PDVH's motion and supporting memorandum of law do not purport to seek any injunctive relief. PDVH does not rely on, or even cite, Rule 62(d), which authorizes injunctive relief pending appeal, or endeavor to establish a right to that relief. In its proposed order, however, PDVH asks the Court to "ENJOIN" the Trustee, the Collateral Agent, holders and beneficial owners of the 2020 Notes, and others from "attempting to enforce the Pledge Agreement or from otherwise attempting to exercise any rights, remedies, or privileges purportedly arising from a default or Event of Default under the Pledge Agreement, including by attempting to sell the collateral securing the 2020 Notes." Proposed Order, ECF No. 235 ¶ 5.

ARGUMENT

PDVH is not entitled to a stay of the Judgment under either Rule 62(b) or Rule 62(f). Rule 62(b) authorizes only stays of execution of money judgments and provides no support to PDVH's motion. The Court's judgment awards no monetary

8

relief against PDVH.  And the relief PDVH seeks is not a stay of the Judgment, but an affirmative injunction precluding the Trustee and Collateral Agent from exercising contractual rights under the Pledge Agreement.  The Judgment did not create those rights, and enforcement of those rights does not depend on the Judgment.  Rule 62(f) is inapplicable for similar reasons.  It provides only for a stay and, in any event, PDVH would not be entitled to a stay under New York state law, a predicate for relief under that Rule.  PDVH has waived any right to seek an injunction pending appeal under Rule 62(d) (which it does not even cite) or any other provision of law, because its moving papers make no effort to show any entitlement to that relief.  Finally, PDVH is not entitled to an injunction extending to holders of the 2020 Notes and other non-parties.

I.      **PDVH Is Not Entitled to Relief Under Rule 62(b).**

PDVH is not entitled to a stay or other relief under Rule 62(b).  That section applies only to money judgments, and not to judgments granting declaratory relief.  Nor does Rule 62(d) authorize the Court to enjoin a party from enforcing a contractual lien that exists independently of the Court judgment.

A.      **Rule 62(b) Applies Only to Money Judgments, and Not to Judgments for Declaratory Relief.**

Rule 62(b) provides in relevant part that, following entry of judgment, "a party may obtain a stay by providing a bond or other security."  Under the Rule, the stay becomes effective "when the court approves the bond or other security" and remains in effect for the time specified in the bond or other security.  Prior to the amendments in 2018 that reorganized the subsections of Rule 62, the predecessor provision of current Rule 62(b) was designated Rule 62(d).  Fed. R. Civ. P. 62 advisory committee's note to 2018 amendments.  Courts in this Circuit have frequently relied on pre-amendment case

law in construing current Rule 62(b).  *See, e.g.*, *Xerox Corp.* v. *JCTB Inc.*, 2019 WL 6000997, at \*3 (W.D.N.Y. Nov. 14, 2019) (relying on *Nassau County*—a pre-2018 Second Circuit decision—for factors to consider when deciding a motion to waive the bond or other security requirements of Rule 62(b)); *Gulino* v. *Bd. of Educ.*, 2019 WL 2454094, at \*1 (S.D.N.Y. June 12, 2019) (relying on pre-2018 case law in determining applicability of Rule 62(b)).

Rule 62(b) "applies only to stays of money judgments."  *Id.* at \*1.  As a former judge of this Court (now Second Circuit Judge Sullivan) has noted, "it is well-settled that [Rule 62] subsection (d) [now subsection (b)] applies exclusively to stays of money judgments . . . ."  *Centauri Ship. Ltd.* v. *W. Bulk Carriers KS*, 528 F. Supp. 2d 186, 188 (S.D.N.Y. 2007); *see also NLRB* v. *Westphal*, 859 F.2d 818, 819 (9th Cir. 1988) (noting Rule 62(b) applies to money judgments); *Donovan* v. *Fall River Foundry Co., Inc.,* 696 F.2d 524, 526 (7th Cir. 1982) (same).

A judgment granting declaratory relief is not a money judgment to which Rule 62(b) applies.  *In re Tower Auto., Inc.*, 2007 WL 1975447, at \*1 (S.D.N.Y. July 6, 2007).  In *Tower*, the court held that former subsection (d) of Rule 62 did not authorize a stay of a judgment declaring that the defendant was obligated to pay defense costs of certain claims brought against the plaintiff.  That was so, the court concluded, because the judgment was not one for a fixed sum of money.  *Id.* at \*1.  (The court in *Tower* entered an injunction under former Rule 62(c) (now 62(d)) after finding that the moving party made the showing required by that subsection.  As noted, PDVH has not sought relief under Rule 62(d).)

Likewise, in *Centauri*, the court held that former subsection (d) did not apply to an application to stay the *vacatur* of an attachment pending appeal, on the ground that the motion effectively sought to lift an injunction that provided for the attachment of assets. *Centauri*, 528 F. Supp. 2d at 189.

PDVH cites no case, and the Trustee and Collateral Agent know of none, in which a court relied upon Rule 62(b) to stay a judgment granting only declaratory relief against the moving party. In contrast, the cases PDVH cites granting a stay under Rule 62(b) (or former 62(d)), PDVH Mem. 13–15, involved money judgments. *See, e.g.*, *Deutsche Bank Nat'l Tr. Co.* v. *Cornish*, 759 F. App'x 503, 507 (7th Cir. 2019) (applying Rule 62(b) to order to turn over residence of home because "[a]t the core of a foreclosure judgment is a judgment simply ordering the borrower to repay a money debt"); *In re Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 2013 WL 12444540, at *1 (S.D.N.Y. Jan. 29, 2013) (applying former Rule 62(d) to judgment that was "monetary in nature"); *Frommert* v. *Conkright*, 639 F. Supp. 2d 305, 308 (W.D.N.Y. 2009) (applying former Rule 62(d) to judgment ordering defendants to recalculate plaintiffs' retirement benefits and pay each plaintiff the difference as this is "an order 'to pay' rather than order 'to do'").

These principles preclude a stay under Rule 62(b) here. As PDVH acknowledges, the Judgment awards no monetary relief against PDVH, PDVH Mem. at 1, 6, and PDVSA and PDVSA Petróleo have disclaimed any request for a stay pending appeal, *id*. at 2 n.2. Accordingly, PDVH is not entitled to relief under Rule 62(b).

**B.      Rule 62(b) Does Not Entitle PDVH to an Injunction Precluding Enforcement of the Indenture and Pledge Agreement.**

Rule 62(b) also does not entitle PDVH to the relief it seeks for the related reason that the Rule entitles a party to no more than a stay of execution of a judgment.  It does not entitle a party to an injunction—such as PDVH seeks here—precluding a party from exercising contractual rights that are independent of the judgment.

Rule 62(b) by its terms entitles a party only to a "stay" of a judgment (and then only if the party seeking a stay provides a bond or other satisfactory security).  A stay is "[t]he postponement or halting of a . . . judgment," or "[a]n order to suspend all or part of a . . . judgment."  Black's Law Dictionary (11th ed. 2019).  As the Supreme Court has emphasized, a stay, unlike an injunction, prevents action only "by temporarily suspending the source of authority to act—the order or judgment in question—not by directing an actor's conduct."  *Nken* v. *Holder*, 556 U.S. 418, 428–29 (2009).  Thus, as the Court in *Nken* explained:

> A stay "simply suspend[s] judicial alteration of the status quo," while injunctive relief "grants judicial intervention that has been withheld by lower courts."  *Ohio Citizens for Responsible Energy, Inc. v. NRC,* 479 U.S. 1312, 1313, 107 S.Ct. 682, 93 L.Ed.2d 692 (1986) (SCALIA, J., in chambers); *see also Brown v. Gilmore,* 533 U.S. 1301, 1303, 122 S.Ct. 1, 150 L.Ed.2d 782 (2001) (Rehnquist, C.J., in chambers) ("[A]pplicants are seeking not merely a stay of a lower court judgment, but an injunction against the enforcement of a presumptively valid state statute"); *Turner Broadcasting System, Inc. v. FCC,* 507 U.S. 1301, 1302, 113 S.Ct. 1806, 123 L.Ed.2d 642 (1993) (same) ("By seeking an injunction, applicants request that I issue an order *altering* the legal status quo").

*Id*. at 429.

While PDVH's memorandum characterizes the relief it seeks as a "stay of the Court's judgment authorizing the sale of the CITGO Shares while the appeal is pending," PDVH Mem. at 2, the relief it seeks is not a stay of the Judgment to which it

might have been entitled upon a proper showing and the posting of a bond.  It is, instead, an order "grant[ing] judicial invention" by altering what the Court has already determined to be the respective legal rights and obligations between the parties, *Nken*, 556 U.S. at 429 (2009) (quoting *Ohio Citizens for Responsible Energy*, 479 U.S. at 1313), by precluding enforcement of the rights of the Trustee and Collateral Agent under the Pledge Agreement.  This is clear from PDVH's own proposed order, which, as noted, provides that the Trustee, the Collateral Agent, and others are "ENJOINED from attempting *to enforce the Pledge Agreement*, or from otherwise attempting to exercise any rights, remedies, or privileges purportedly arising from a default or Event of Default *under the Pledge Agreement*."  Proposed Order, ECF No. 235, ¶ 5 (emphasis added).

        The rights of the Trustee and Collateral Agent with respect to the Collateral—including the right, under the terms of the Pledge Agreement, to sell the Collateral upon an Event of Default—are independent of the Judgment, and the exercise of those rights would not require enforcement of the Judgment.  The PDVSA Parties have repeatedly recognized that the Trustee and Collateral Agent may initiate a sale of the Collateral unless the Court or OFAC precluded them from doing so.  *See* pp. 6–7, above.  The Court has denied the PDVSA Parties' request to enjoin such a sale.  Summary Judgment Order at 68; Complaint, Prayer for Relief at 30.  Any actions by the Trustee and Collateral Agent to sell the Collateral, if and when such a sale is permitted by OFAC, would represent the exercise of their contractual rights, distinct from enforcement of the Judgment.  Accordingly, Rule 62(b) does not authorize the relief PDVH seeks.

        The cases on which PDVH relies are inapposite.  In *Deutsche Bank* v. *Cornish*, 759 F. App'x at 505–06, the moving party sought to stay a judgment permitting

judicial foreclosure, rather than to enjoin the other party from exercising its contractual right to commence and complete a nonjudicial foreclosure, which is what PDVSA seeks here. *Cornish* was decided without "full adversarial presentation," *id.* at 504 n. 2, and, as an unreported order, is of no precedential value in the Seventh Circuit. *See* 7th Cir. R. 32.1 (citation of unpublished opinions). The ruling in *Cornish* that "stays pending appeal should be the norm in mortgage foreclosure appeals" also relied on factors specific to home mortgages, such as the increased risk of error "in this age of high-volume securitized mortgages," that are not present here. 759 F. App'x at 504. PDVH's reliance on the district court's grant of a stay of enforcement in *Crystallex Int'l Corp.* v. *PDVH Inc.*, 2019 WL 6785504, at *2 (D. Del. Dec. 12, 2019) (cited in PDVH Mem. at 13), is similarly misplaced, because that case likewise involved a stay of execution of a money judgment, rather than an injunction prohibiting a party from exercising a contractual right to nonjudicial foreclosure. *See Crystallex Int'l Corp.* v. *Bolivarian Republic of Venez.*, 2018 WL 4026738, at *1 (D. Del. Aug. 23, 2018) (issuing a writ of attachment to enforce money judgment against the Republic).

The standards adopted for stays under Rule 62(b) in *In re Nassau County Strip Search Cases*, 783 F.3d 414, 417–418 (2d Cir. 2015) (cited in PDVH Mem. at 14–17), are inapposite for similar reasons. That decision addresses the factors applied to determine the sufficiency of alternative security in connection with a stay of a money judgment pursuant to Rule 62(b). But, as discussed above, Rule 62(b) does not apply to declaratory judgments, and does not entitle a party to an order precluding another party's enforcement of its contractual rights.

PDVH argues that it is entitled to a stay under *Nassau* without need for additional security because the right of the Trustee and Collateral Agent to sell the Collateral is ensured by the contractual pledge itself.  PDVH Mem. at 14–17.  That argument ignores the risks to the Trustee and Collateral Agent (and, ultimately, the beneficial owners of 2020 Notes) from a long delay in their ability to foreclose on the Collateral until the appeal is finally resolved.  The purpose of nonjudicial foreclosure provisions like those in the Pledge Agreement is to permit efficient and inexpensive repossession and disposition of collateral.  *See In re Residential Capital, LLC*, 497 B.R. 403, 418 (Bankr. S.D.N.Y. 2013); *see also Leevson* v. *Aqualife USA Inc*., 2017 WL 6541766, at *4 (E.D.N.Y. Dec. 8, 2017), *report and recommendation adopted*, 2017 WL 6550683 (E.D.N.Y. Dec. 21, 2017) (judicial "foreclosure actions are not simple procedures").  The ability of a creditor to foreclose promptly after an event of default is critical, because an event of default implies that the debtor is in distress.  An event of default can lead rapidly to a decline in the value of the debtor's assets and a scramble for those assets by secured and unsecured creditors.  Nonjudicial foreclosure also protects the secured party "from the possibility of debtor concealment, disposal or misuse between the time of default and the time of sale or strict foreclosure."  Frederick H. Miller and Carl S. Bjerre, 10 Hawkland UCC Series § 9-609:1 (2020).

The order PDVH seeks would write those provisions out of the contract, and deprive the Trustee and Collateral Agent of their benefit.  *See Metro. Life Ins. Co.* v. *RJR Nabisco, Inc.*, 906 F.2d 884, 889–90 (2d Cir. 1990) (holding the district court erred in granting an injunction that impermissibly altered the terms of the parties' agreement regarding tolling of cure periods).  The long delay of enforcement that PDVH seeks

would deprive the Trustee and Collateral Agent of the benefit of that contractual right.  It would impose on them the risk that, while the appeal is pending, the value of CITGO will decline, either because a defaulting PDVSA mismanages the business or for other reasons.  Indeed, CITGO Petroleum has reported very substantial losses during this litigation.  *See* Press Release, CITGO Reports Third Quarter 2020 Results, CITGO (Nov. 13, 2020), https://www.citgo.com/press/news-room/news-room/2020/citgo-reports-third-quarter-2020-results (reporting net quarterly loss of $248 million, and noting the "extremely challenging margin environment").  Only yesterday, CITGO Petroleum and CITGO Holding had their stand-alone credit profile downgraded by Standard & Poor's, which noted its increased leverage ratio, reduced liquidity, and weak refining margins, as well as the PDVSA's poor credit quality.  *See* Hurwitz Decl. Ex. 2.  Even before these developments, the PDVSA Parties' own expert opined that as of July 2019 the Collateral was worth only $1.34 billion—well below the more than $1.9 billion of principal and interest outstanding on the 2020 Notes.  Hinman Opening Report, ECF No. 120-1 at ¶ 68.

In addition, the injunction that PDVH seeks would further prejudice the Trustee and Collateral Agent in light of the efforts by many other creditors of PDVSA and the Republic to seize PDVSA's assets, including PDVH, itself.  That is indeed what is occurring here.  The scramble for these assets is illustrated by the Crystallex litigation in Delaware, in which many creditors of PDVSA and the Republic are attempting to enforce claims worth billions of dollars by seizing PDVSA's assets in the United States, including PDVH.  *See, e.g.*, *Registration of Judgment, Crystallex Int'l Corp.* v. *Bolivarian Rep. of Venez.*, No. 17-mc-151 (D. Del. June 19, 2017) (ECF No. 1) (registering $1.2 billion judgment); Complaint, *Owens-Illinois Group B.V.* v. *Bolivarian*

*Rep. of Venez.*, No. 19-cv-290 (D. Del. Feb. 11, 2019) (ECF No. 1) (seeking payment on

over $500 million arbitral award); Notice of Motion for Summary Judgment in Lieu of

Complaint, *Red Tree Investments, LLC* v. *Petróleos de Venezuela, S.A.*, No. 19-cv-2519

(S.D.N.Y. Mar. 21, 2019) (ECF No. 3-1 at 4) (seeking payment of over $118 million

from unpaid note agreements).  Crystallex has in fact already moved for an order setting

the procedures for an execution sale of shares of PDVH.  Memorandum Order, *Crystallex

Int'l Corp.*, No. 17-mc-00151 (D. Del. May 22, 2020) (ECF No. 181).  These

circumstances illustrate the importance of a nonjudicial remedy here.  If the executive

branch permits creditors of PDVSA to exercise their rights, Crystallex and other creditors

will press aggressively for immediate execution on all available assets of PDVSA.  It

would not be fair to consign the Trustee and the Collateral Agent to all the risks of being

left behind, including the risk that Crystallex and other creditors might complete the

attachment and sale of shares of PDVH.

      At the very least, any order granting relief to PDVH should require PDVH

to post a bond that would protect against these risks.  *See Moore* v. *Navillus Tile, Inc.*,

2017 WL 4326537, at *1 (S.D.N.Y. Sept. 28, 2017) (Rule 62(b) bond requirement can be

waived "only if the appellant provides an acceptable alternative means of securing the

judgment"); *Flatiron Health, Inc.* v. *Carson*, 2020 WL 1643396, at *9 (S.D.N.Y. Apr. 1,

2020) (issuance of injunction pending appeal contingent on bond).  PDVH's asserted

inability to post a bond, PDVH Mem. at 16, is a reason to deny a stay, not to waive the

requirement of a bond.  *Frye* v. *Lagerstrom*, 2018 WL 4935805, at *4 (S.D.N.Y. Oct. 10,

2018) (denying stay on the ground that, among other things, movant's concession that he

was unable to pay the judgment was "determinative" of most considerations under the

*Nassau* framework); *Moore*, 2017 WL 4326537, at *2 ("[Movant's] insistence that satisfying any amount of the bond would plunge it into bankruptcy undercuts its position [under *Nassau*].").

## II.      PDVH Is Not Entitled to Relief Under Rule 62(f).

PDVH fares no better under Rule 62(f).  That Rule provides that "[i]f a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give.  Fed. R. Civ. P. 62(f).

*First*, for reasons discussed above, Rule 62(f) provides only for a "stay of execution" of a judgment, not an injunction prohibiting the Trustee and Collateral Agent from exercising their contractual rights under the Pledge Agreement.

*Second*, PDVH fails to meet the requirements set out by the Second Circuit in *FDIC* v. *Ann-High Associates*, 1997 WL 1877195, at *4 (2d Cir. Dec. 2, 1997). There, the Second Circuit held that a party is entitled to a stay under Rule 62(f) only if it can show "(1) that state law entitles it to appeal without a bond and (2) that a judgment can be made a lien against a judgment debtor's property under the state's lien law, [and] . . . (3) that the circumstances are such that the judgment creditor can readily establish a lien that will be adequate to secure the judgment."  *Id.* at *4.

The declaratory judgment against PDVH does not satisfy the second *Ann-High* requirement because it is not a lien under New York law, nor can it be made one. Under New York law, "[e]xcept as provided by statute, a judgment is not a lien against property of the judgment debtor."  *In re Pandeff*, 201 B.R. 865, 873 (Bankr. S.D.N.Y. 1996).  As the court explained in that case, "Article 52 of New York's Civil Practice Law and Rules . . . supplies the procedural law for the enforcement of judgments and the

mechanisms for creating judgment liens." *Id.* Article 52 "supplies the governing procedural law for the enforcement of money judgments." Reilly, Editors' Notes, McKinney's Cons Laws of NY, C.P.L.R. Ch. Eight, Art. 52. No provision in Article 52 provides for the creation of a lien from a declaratory judgment. That is because, as the state's Court of Appeals has recognized, a declaratory judgment "cannot be executed upon so as to compel a party to perform an act or to surrender property." *Morgenthau* v. *Erlbaum*, 5451 N.E.2d 150, 153 (N.Y. 1983). PDVH's reliance on *Butler* v. *Ross*, 2017 WL 6210843, at *2–3 (S.D.N.Y. Dec. 7, 2017), and CPLR 5202(a) for the proposition that a money judgment need only be delivered to a sheriff in order to create a lien is misplaced, because both *Butler* and Section 5202(a) apply only to money judgments. PDVH also cannot satisfy the third *Ann-High* requirement because it cannot "readily establish a lien that will be adequate to secure the judgment" for the reasons discussed above, pp. 18–19. 1997 WL 1877195, at *4.

*Third*, the New York statutes on which PDVH relies would not entitle it to a stay under state law. CPLR 5519(a)(4), creates a right to a stay only where "the judgment or order directs the assignment or delivery of personal property" and that property is deposited with an officer designated by the court. "[T]he scope of the automatic stay of CPLR 5519(a) is restricted to the executory directions of the judgment or order appealed from which command a person to do an act[.]" *Pokoik* v. *Dep't of Health Servs.*, 641 N.Y.S.2d 881, 884 (2d Dep't 1996). Accordingly, courts have held that CPRL. 5519(a)(4) does not apply to declaratory judgments such as the Judgment here. In *City of New York* v. *District Council 37, AFSCME*, 2006 WL 1465724, at *4 (Sup. Ct. N.Y. County Apr. 10, 2006), for example, the court rejected "the novel

19

proposition that the § 5519(a)(1) stay applies to declaratory judgment actions, which

contain no executory provisions," and denied a motion to stay such a judgment. *See also*

*Pokoik*, 641 N.Y.S.2d at 883–84. The other statute PDVH cites, CPLR 5519(c), is

similarly inapposite, because that provision merely authorizes the court to stay

proceedings to enforce a judgment. *See* Reilly, Practice Commentary, McKinney's Cons

Laws of NY, Book 7B, C.P.L.R. § 5519(c) ("In considering whether to grant a stay under

subdivision (c), the court's discretion is the guide.").

### III. PDVH Has Waived Any Argument for an Injunction Pending Appeal Under Rule 62(d).

PDVH's motion does not seek a stay of injunctive relief pursuant to Rule

62(d) or attempt to establish a right to such relief under the well-developed case law

under that Rule. PDVH has accordingly waived a right to seek such relief.

A party seeking injunctive relief pending appeal must make the familiar

four part showing: (1) a likelihood of success on the merits; (2) a risk of irreparable

injury to the movant absent a stay; (3) that the grant of the stay would not result in

substantial harm to the non-movant; and (4) that the public interest favors relief. *Nken*,

556 U.S. at 426; *see also LaRouche* v. *Kezer*, 20 F.3d 68, 72 (2d Cir. 1994). A "party

seeking a stay of a lower court's order bears a difficult burden." *United States* v. *Private

Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995). The

"burden of establishing a favorable balance of [the relevant] factors is a heavy one and

more commonly stay requests will be denied." *Optimum Shipping & Trading, S.A.* v.

*Prestige Marine Servs. Pte. Ltd.*, 613 F. Supp. 2d 502, 503 (S.D.N.Y. 2009) (finding

plaintiff failed to carry its burden and denying motion to stay the vacatur of an

attachment pending appeal); see 11A Charles A. Wright and Arthur R. Miller, Federal

Practice and Procedure § 2904 (3d ed. 2020) (same).

PDVH's moving papers do not address or even cite Rule 62(d).  Nor does

PDVH make any effort to establish any right to an injunction pending appeal under the

standards of *Nken* and *LaRouche* (or any other applicable case).  PDVH has accordingly

waived any argument that it is entitled to injunctive relief under Rule 62(d) or otherwise

"by failing to develop it in [its] opening brief."  *In re Weatherford Int'l Sec. Litig.*, 2013

WL 12185082, at *2 n.2 (S.D.N.Y. Nov. 19, 2013); *see also LinkCo, Inc.* v. *Naoyuki*

*Akikusa*, 367 F. App'x 180, 184 n.2 (2d Cir. 2010) ("By failing to raise the issue in its

opening brief, [plaintiff] waived its argument."); *Knowles-Carter* v. *Feyonce, Inc.*, 2017

WL 11567528, at *13 (S.D.N.Y. Sept. 23, 2017) (holding that defendants' "argument is

therefore waived" because defendants failed to include the argument in their opening

brief); *Van Valkenberg ex rel. B.G.* v. *Astrue*, 2010 WL 2400455, at *18–19 (N.D.N.Y.

May 27, 2010) (declining to reach plaintiff's argument "because Plaintiff failed to raise it

in the opening brief").

PDVH also briefly mentions injunctive relief under a different subsection

of Rule 62—subsection (g)—in a footnote, PDVH Mem. at 11–12 n.12, but that

subsection by its terms applies only to the equitable power of "the appellate court" to

grant interim relief.  *In re New York Skyline, Inc.*, 520 B.R. 1, 3 n. 4 (S.D.N.Y. 2014)

(Rule 62(g) "describes the power of the court of appeals, not this [district] court.").

PDVH asserts that the equitable power recognized by Rule 62(g) applies "by extension"

to district courts, but it cites no authority for that assertion, and the Trustee and Collateral

Agent know of none.  In any event, PDVH makes no effort to establish its entitlement to injunctive relief under any subsection of Rule 62.

PDVH's reliance on the court's "general equitable power,"  PDVH Br. 11 n.12, also does not change the result.  A "stay," whether under Rule 62(b) or general equitable power, cannot enjoin a party from exercising contractual rights that do not arise from a judgment.  Neither of the cases PDVH cites does so.  *Nken*, 556 U.S. 418, stayed enforcement of an order of removal, while *Federal Prescription Serv., Inc.* v. *American Pharmaceutical Association*, 636 F.2d 755 (D.C. Cir. 1980), stayed enforcement of a money judgment.  And, as discussed above, PDVH makes no effort to satisfy the requirements for an injunction, whether under the Court's equitable power or Rule 62.

## IV.  PDVH Is Not Entitled to Seek Relief Against Actual or Beneficial Owners of 2020 Notes or Other Nonparties.

Finally, PDVH is not entitled to relief against holders or beneficial owners of 2020 Notes or other nonparties.  "[A] court generally may not issue an order against a non-party."  *Doctor's Assocs., Inc.* v. *Reinert & Duree, P.C.*, 191 F.3d 297, 302 (2d Cir. 1999) (quoting *United States* v. *Paccione*, 964 F.2d 1269, 1275 (2d Cir. 1992)). "Therefore, unless [a] case falls within an exception to the general principle that a court cannot 'make a decree which will bind any one but a party,'" the order will be improper. *Doctor's Assocs.*, 191 F.3d at 302 (quoting *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 832 (2d Cir. 1930) (L. Hand, J.)).  "Indeed, 'holding a nonparty in contempt for engaging in enjoined conduct might be considered as a possible denial of due process.'"  *Off-White LLC* v. *0225XIANGCHUN*, 2020 WL 3618963, at *2 (S.D.N.Y. July 2, 2020) (Failla, J.) (citing 11A Charles A. Wright and Arthur R. Miller, *supra*, at § 2956).

PDVH cannot rely on the "limited and circumscribed exception to that general principle" permitting courts to enforce an injunction against a nonparty "in active concert or participation" with a party. *Spin Master Ltd.* v. *158*, 463 F. Supp. 3d 348, 380 (S.D.N.Y. 2020), *adhered to in part on reconsideration*, 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020). While certain holders of 2020 Notes are directing the Trustee and Collateral Agent in this litigation pursuant to the Indenture, other holders or beneficial owners have no involvement in this case. And PDVH's proposed injunction is not limited to actions taken by any holders or beneficial owners taken in concert or participation with the Trustee or Collateral Agent.

## CONCLUSION

PDVH's motion should be denied.

Dated: New York, New York
        December 18, 2020

Respectfully submitted,

LATHAM & WATKINS LLP
Christopher J. Clark
Matthew S. Salerno
Sean H. McMahon
885 Third Avenue
New York, New York 10022
Telephone: 212-906-1200
Facsimile: 212-751-4864
chris.clark@lw.com
matthew.salerno@lw.com
sean.mcmahon@lw.com

*Attorneys for Defendants and
Counterclaim Plaintiffs MUFG Union
Bank, N.A. and GLAS Americas LLC, in
their respective capacities as Trustee
and Collateral Agent, under the
Indenture dated October 27, 2016, and
the Pledge and Security Agreement
dated October 28, 2016, governing
PDVSA's Senior Secured Notes due
2020*

PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP

By:   *s/ Walter Rieman*
        Walter Rieman
        William A. Clareman
        Jonathan Hurwitz
        Shane D. Avidan
        Zachary B. Kaye
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: 212-373-3000
Facsimile: 212-757-3990
wrieman@paulweiss.com
wclareman@paulweiss.com
jhurwitz@paulweiss.com
savidan@paulweiss.com
zkaye@paulweiss.com

PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
Roberto J. Gonzalez (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006-1047
Telephone: 202-223-7300
rgonzalez@paulweiss.com

*Attorneys for Defendants and Counterclaim
Plaintiffs MUFG Union Bank, N.A. and
GLAS Americas LLC, in their respective
capacities as Trustee and Collateral Agent,
under the Indenture dated October 27, 2016,
and the Pledge and Security Agreement
dated October 28, 2016, governing
PDVSA's Senior Secured Notes due 2020
(as to New York law issues only)*