**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PETRÓLEOS DE VENEZUELA, S.A., PDVSA
PETRÓLEO, S.A., and PDV HOLDING, INC.,

                        Plaintiffs,

- against -

MUFG UNION BANK, N.A. and GLAS AMERICAS
LLC,

                        Defendants.

Case No: 19-cv-10023-KPF

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PDV HOLDING, INC.'S**
**MOTION FOR PARTIAL STAY OF EXECUTION OF**
**FINAL JUDGMENT PENDING APPEAL**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ............................................................................................................... 2

    I.      PDVH IS ENTITLED TO A PARTIAL STAY UNDER RULE 62(b) ........................ 2

        A.    The Final Judgment Is Monetary In Nature ............................................... 2

        B.    The CITGO Shares Are Adequate "Other Security" ................................. 5

        C.    PDVH Is Seeking A Stay, Not An Injunction ........................................... 7

    II.     PDVH IS ALSO ENTITLED TO A PARTIAL STAY UNDER RULE 62(f) ............. 8

CONCLUSION ........................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bolt v. Merrimack Pharms., Inc.*,
  2005 WL 2298423 (E.D. Cal. 2005) ......................................................................................5

*Butler v. Ross*,
  No. 16cv1282 (DLC), 2017 WL 6210843 (S.D.N.Y. Dec. 7, 2017) .......................................9

*Centauri Ship. Ltd. v. W. Bulk Carriers KS*,
  528 F. Supp. 2d 186 (S.D.N.Y. 2007) ....................................................................................5

*City of New York v. Dist. Council 37, AFSCME, AFL-CIO*,
  No. 401436/05, 2006 WL 1465724 (Sup. Ct. 2006) ...........................................................9, 10

*Deutsche Bank Nat'l Trust Co. as Trustee for GSAA Home Equity Trust 2006-18*
  *v. Cornish,*
  759 F. App'x 503 (7th Cir. 2019) .......................................................................................3, 6

*Deutsche Bank Nat'l Trust Co. v. Cornish et al.,*
  13-cv-2599-VMK, Dkt. No. 89 (Ill. App. Ct. 2019) ..............................................................4

*Donges v. USAA Fed. Sav. Bank,*
  No. CV-18-00093-TUC-RM, 2019 WL 3208076 (D. Ariz. July 16, 2019) ............................6

*Donovan v. Fall River Foundry Co., Inc.,*
  696 F.2d 524 (7th Cir. 1982) ...............................................................................................5

*FDIC v. Ann–High Assocs.,*
  No. 97-6095, 1997 WL 1877195 (2d Cir. 1997). (Opp. ) ...................................................8, 9

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n,*
  636 F.2d 755 (D.C. Cir. 1980) .............................................................................................7

*Frommert v. Conkright,*
  639 F. Supp. 2d 305 (W.D.N.Y. 2009) ..................................................................................4

*Hebert v. Exxon Corp.,*
  953 F.2d 936 (5th Cir. 1992) ...............................................................................................4

*Joseph v. Cheeseboro,*
  42 Misc.2d 917 (N.Y. Civ. Ct. 1964), *rev'd on other grounds*, 43 Misc.2d 702
  (N.Y. App. Div. 1964) .........................................................................................................10

*Mohr v. MLB Sub I, LLC,*
    No. 16-00493, 2020 WL 3803847, at *4–5 (D. HI July 7, 2020)............................................6

*Nken v. Holder,*
    556 U.S. 418 (2009)........................................................................................................7

*NLRB v. Westphal,*
    859 F.2d 818 (9th Cir. 1988) ........................................................................................5

*In re Pandeff,*
    201 B.R. 865, 875 (Bankr. S.D.N.Y 1996)..................................................................9

*Pauma Band of Luiseno Mission Indians v. California,*
    No. 3:09-cv-1955-CAB-MDD, 2014 WL 12669557 (S.D. Cal. Aug. 28, 2014) .....................3

*Pokoik v. Dep't of Health Servs.,*
    641 N.Y.S.2d 881 (2d Dep't 1996)................................................................................9

*Tax Equity Now NY LLC v. City of New York,*
    173 A.D.3d 464 (N.Y. App. Div. June 6, 2019) .........................................................10

*In re Tower Auto., Inc.,*
    No. 06 Civ. 2105(RWS), 2007 WL 1975447 (S.D.N.Y. July 6, 2007) .....................5

*Tri Cty. Wholesale Distribs., Inc. v. Labatt USA Operating Co., LLC,*
    311 F.R.D. 166 (S.D. Ohio 2015) ...............................................................................4

*United States v. Birdsong,*
    No. 17-72-M-DWM, 2019 WL 1026277 (D. Mont. Mar. 4, 2019)..............................3

**Other Authorities**

CPLR 5202(a) ...............................................................................................................................9

CPLR 5202(a)(1) .........................................................................................................................10

CPLR 5202(c) ..............................................................................................................................10

CPLR 5519(a) ..............................................................................................................................10

CPLR 5519(a)(1) ...........................................................................................................................9

CPLR 5519(a)(4) ...........................................................................................................................9

CPLR 5519(c) ................................................................................................................................9

Rule 8(a)..........................................................................................................................................7

Rule 8(b) ......................................................................................................................................7

Rule 62 ...................................................................................................................................2, 6, 7

Rule 62(b) ............................................................................................................................. *passim*

Rule 62(d) ...................................................................................................................................7, 8

Rule 62(f) ............................................................................................................................8, 9, 10

PDV Holding, Inc. ("PDVH") respectfully submits this reply in support of its motion ("Motion" or "Mot.") for a partial stay of the Court's Final Judgment.[1]

## PRELIMINARY STATEMENT

Defendants petitioned this Court for an Order that would authorize them to sell the pledged CITGO Shares as part, and in satisfaction, of a money judgment against the PDVSA parties. Notwithstanding their current claim that they are entitled to exercise "contractual rights . . . that exist independent of the judgment," Defendants nonetheless asked this Court to issue an Order authorizing them to enforce their money judgment, and the parties have spent substantial resources litigating those claims.  The Court has now granted Defendants precisely the relief they sought. PDVH is entitled to a stay of that relief under Rule 62(b) and (f), as well as the Court's equitable powers, so that the Court's judgment, including the declarations that enforce it, cannot be acted upon pending appeal.  If the declaratory relief in the Final Judgment is truly as superfluous as Defendants now claim, they should not have wasted the Court's resources by seeking it, and they have forfeited any objection to staying that (purportedly unnecessary) relief pending appeal.

There is only one judgment in this case, *see* ECF No. 229, and it is a money judgment that contains declaratory and injunctive components.  The fact that PDVH has sought only a partial stay of the Court's Final Judgment does not render Rule 62(b) inapplicable.  The portion of the Final Judgment that PDVH seeks to stay is an inseparable component of the Court's award of money damages.  By Defendants' own admissions, no further security is required as to the pledged CITGO Shares.  Thus, there is no justification to permit Defendants to rely upon any portion of the judgment pertaining to the pledged CITGO Shares while an appeal is pending.

---

[1] Capitalized terms not defined herein are defined in PDVH's opening memorandum of law ("Mem.").  (ECF No. 234).

Defendants' Opposition is primarily aimed against a request for injunctive relief for which PDVH has not moved under Rule 62(b), (f), or any other provision. To the extent this Court believes that neither Rule 62(b) or (f) contemplates the stay PDVH has requested, the appropriate remedy is for the Court to exercise its equitable powers in order to fashion an effective stay. The purpose of Rule 62 is to preserve the status quo while a matter remains pending on appeal, and this Court has the discretion to rely upon any of the authorities within Rule 62 or its equitable powers to effectuate that end. In sum, Defendants should not be permitted to moot the appeal of a closely contested issue of substantial public importance, as they now threaten to do, in reliance on the declaratory relief they sought and obtained from the Court.

## ARGUMENT

## I.     PDVH IS ENTITLED TO A PARTIAL STAY UNDER RULE 62(b)

The Final Judgment, which adopted an order Defendants proposed following 45 days of consideration, awards money damages to Defendants and expressly authorizes enforcement of that money judgment by, *inter alia*, execution against the stock of CITGO Holding. That stock will remain fully intact while held by the Collateral Agent through the appeal, and Defendants will have the same ability to enforce their rights with respect to the CITGO Shares post appeal as they do today. PDVH is therefore entitled under Rule 62(b) to a stay of the provisions of the Final Judgment that authorize Defendants to control and sell the CITGO Shares. (Mem. at 12-17.)

### A.     The Final Judgment Is Monetary In Nature

There is only one judgment in this case, and it awards Defendants monetary damages against PDVSA and PDVSA Petróleo in the amount of $1.924 billion. (Final Judgment at 2.) The declaratory relief within the Final Judgment that runs against PDVH is both derivative of and inseparable from this money judgment. If Defendants were owed no money (because of invalidity

or otherwise), they would have no right to act against PDVH's property.  The only purpose of the relief Defendants sought as to PDVH—including authorization for the Trustee to direct the Collateral Agent to sell the CITGO Shares—is to obtain money in satisfaction of the money judgment.  *See* Pledge Agreement (ECF No. 106-11), § 5.05.

Defendants' claim that Rule 62(b) does not apply to "purely declaratory judgments" (Opp. at 1) misses the mark.  The applicability of Rule 62(b) turns on the nature of the judgment, not the contours of the stay requested, and here the nature of the Final Judgment is monetary even though the components that PDVH seeks to stay are declaratory.  *See, e.g.*, *United States v. Birdsong*, No. 17-72-M-DWM, 2019 WL 1026277, at *1 (D. Mont. Mar. 4, 2019) ("foreclosure is merely a mechanism to enforce the money judgment," and thus Rule 62(b) applies); *Pauma Band of Luiseno Mission Indians v. California*, No. 3:09-cv-1955-CAB-MDD, 2014 WL 12669557, at *2 (S.D. Cal. Aug. 28, 2014) ("although the legal underpinning of the judgment here is specific performance, which is an equitable remedy, the judgment itself is more akin to a money judgment rather than equitable relief," and thus Rule [62(b)] applies) (citation and quotations omitted).

*Deutsche Bank National Trust Co. as Trustee for GSAA Home Equity Trust 2006-18 v. Cornish*, 759 F. App'x 503 (7th Cir. 2019), is instructive.  The judgment there ordered the "foreclosur[e] [of] the mortgage on [the defendant's] home and confirm[ed] the sale of that home in a court-ordered auction."  *Id*. at 503.  The Seventh Circuit held that the defendant was entitled to a stay as a matter of right under Rule 62(b) given the monetary nature of the judgment affecting the control over and sale of the security.  *Id*. at 507-08.  Although Defendants attempt to distinguish *Cornish* as addressing "a judgment permitting judicial foreclosure" (Opp. at 13-14), the pertinent order in *Cornish*—which declared that the bank was entitled to execute on the underlying contract granting a security interest in the defendant's property—is materially indistinguishable from the

3

Final Judgment here.[2]  The fact that Defendants now claim to have rights independent of the judgment they drafted and obtained is irrelevant to whether that judgment should itself be stayed.

There is no bright-line rule precluding the application of Rule 62(b) to any form of declaratory relief.  The text of Rule 62(b) contains no such limitation, and while courts have generally limited the application of Rule 62(b) to money judgments, that is "because a bond may not adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment." *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992) (staying declaratory judgment under Rule [62(b)]).  Where the monetary value of the judgment—even if it is a declaratory judgment—can be readily ascertained, appellants are entitled to a stay under Rule 62(b) upon the posting of adequate security.  *See Frommert v. Conkright*, 639 F. Supp. 2d 305, 308-09 (W.D.N.Y. 2009) ("The fundamental question in this regard, then, is not whether the underlying judgment itself put a dollar figure on the relief ordered, but on whether the monetary value of the judgment 'can be calculated and secured with relative ease.'") (citation omitted).

Contrary to Defendants' claim, courts have not prohibited the application of Rule 62(b) to declaratory judgments.  *See, e.g.*, *id.* at 310 (staying declaratory judgment ordering defendants to recalculate plaintiffs' retirement benefits and subsequently provide plaintiffs compensation for missed payments); *Tri Cty. Wholesale Distribs., Inc. v. Labatt USA Operating Co., LLC*, 311 F.R.D. 166, 174 (S.D. Ohio 2015) (finding Rule [62(b)] applicable where "the judgment determines that [p]laintiffs must relinquish the distribution rights over which they currently have possession, and those distribution rights are worth a specific sum of money").  For example, in

---

[2] *Compare* Final Judgment at 3 ("the Trustee is entitled to direct the Collateral Agent to sell the collateral securing the 2020 Notes" and "the Collateral Agent is entitled to so sell"); *with Deutsche Bank National Trust Co. v. Cornish et al.*, 13-cv-2599-VMK, Dkt. No. 89 (Ill. App. Ct. 2019) (enforcing underlying contract that provided that in event of default lender "may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Investment by judicial proceeding")).

*Bolt v. Merrimack Pharms., Inc.*, the Eastern District of California applied what is now Rule 62(b) to stay a declaratory judgment which, as here, "laid the foundation for plaintiff's right to redeem his stock," holding that this relief "is more akin to a money judgement rather than injunctive relief." 2005 WL 2298423, at *2 (E.D. Cal. 2005).[3]

Defendants obtained a money judgment and an accompanying declaration authorizing remedies to satisfy it. Those remedies were not designed to achieve equity; they are instead one path through which Defendants may act to satisfy the specified money judgment. Rule 62(b) therefore applies to PDVH's stay request.

### B.     The CITGO Shares Are Adequate "Other Security"

In its opening brief, PDVH demonstrated that the CITGO Shares, held by the Collateral Agent and subject to the protections of the Pledge Agreement, are adequate security for the stay PDVH has sought. (Mem. at 12-17.) Defendants do not explain why the CITGO Shares are not adequate security to protect their purported rights to sell the CITGO Shares, and they do not even attempt to address the *Nassau* factors articulated by the Second Circuit. Instead, they speculate that the CITGO Shares could be worth less after an appeal than if sanctions are lifted at some unknown point in the future—which may or may not be after the appeal concludes. Defendants' theoretical projections are irrelevant to whether the CITGO Shares themselves provide adequate security for obtaining a stay. There is no need to speculate as to what the present value of the CITGO Shares may be because the Collateral Agent already holds, and therefore has secured for

---

[3] The cases Defendants invoke, *Centauri Ship. Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 186 (S.D.N.Y. 2007), *In re Tower Auto., Inc.*, No. 06 Civ. 2105(RWS), 2007 WL 1975447 (S.D.N.Y. July 6, 2007), *NLRB v. Westphal*, 859 F.2d 818 (9th Cir. 1988), and *Donovan v. Fall River Foundry Co., Inc.*, 696 F.2d 524 (7th Cir. 1982), do not hold otherwise. *Centauri*, which addressed a request to stay the *vacatur* of a writ of maritime attachment, did not involve a declaratory judgment at all. *In re Tower* addressed a declaratory judgment concerning the scope of an insurer's obligation to pay defense costs, the amount of which the parties agreed was unknown at the time. *NLRB* addressed a stay of an order directing compliance with subpoenas where it was "difficult to calculate the size of a bond necessary to compensate the NLRB for the delay in getting testimony and documents." 859 F.2d at 819. *Donovan* addressed a stay of an order to submit to a government health inspection.

the benefit of Defendants, the CITGO Shares themselves.  *See Cornish*, 759 Fed. App'x. at 509-10; *see also Donges v. USAA Fed. Sav. Bank*, No. CV-18-00093-TUC-RM, 2019 WL 3208076, at *3 (D. Ariz. July 16, 2019) (granting a stay under Rule 62 without a bond where the mortgage contract already afforded the bank "the right to foreclose on the subject property, thereby recovering substantially all of [p]laintiffs' debt" should the bank win on appeal); *Mohr v. MLB Sub I, LLC*, No. 16-00493 ACK-WRP, 2020 WL 3803847, at *4–5 (D. HI July 7, 2020) (granting a stay in a mortgage foreclosure action because "allowing the [plaintiffs] to use the property as security for the judgment maintains the status quo and adequately balances the interests of both parties").

Defendants claim they are entitled to a bond to insure against the risk that the CITGO Shares could decrease in value,[4] but that misapprehends the nature of the security interest recognized in the Final Judgment.  The Final Judgment entitles Defendants to obtain their damages award through multiple means, as Defendants acknowledge (Opp. at 4), only one of which is executing on the CITGO Shares.  Nothing in the Indenture or Pledge makes PDVH liable to Defendants in the event the value of the Shares proves insufficient to satisfy the amount owed under the Indenture and the Final Judgment is no different.  In sum, the bond that Defendants seek would grant them *more* security than they bargained for, and *more* relief than the Court has ordered.

---

[4] Defendants argue that the value of the CITGO Shares is only $1.34 billion (*See* Opp. at 17 (citing David Hinman Report, ECF No. 120-1 at ¶ 68.))  Even setting aside that Defendants are entitled to recover from PDVH *only* the value of the Shares *up to* the value of the Final Judgment, Hinman merely pointed out the then-current estimate  by Fitch of the value of the 50.1% interest in the Shares as of July 2019.  But, factors influencing that valuation *would not apply* in the event Defendants prevail on appeal (including the risk of invalidity as to the 2020 Notes).  Further, the Fitch valuation was "on a going concern basis, not on a liquidation basis."  (ECF No. 120-1 Ex. 1.)  That estimate does not establish the value of the Shares if Defendants are permitted to exercise their option to *liquidate* the shares should they prevail on appeal.

Defendants effectively concede that PDVH lacks the ability to post a bond under the existing sanctions, claiming that justifies denial of a stay.  But the cases on which Defendants rely are inapposite because they all involve the financial wherewithal of the judgment debtor.  Here, although PDVH is legally blocked from posting a bond, PDVH has already tendered (to the Collateral Agent) everything that it would be required to deliver if Defendants prevail on appeal.  A bond would offer *nothing* beyond an insurance policy to which Defendants are not legally entitled, and requiring PDVH to post one would serve no purpose under Rule 62.[5]

### C.   PDVH Is Seeking A Stay, Not An Injunction

This Court awarded Defendants *all* of the relief they sought on their Counterclaims.  Specifically, this Court awarded Defendants $1.924 billion in damages and, as a remedy to enforce that award, declared that "the Trustee is entitled to direct the Collateral Agent to sell the collateral securing the 2020 Notes" and "the Collateral Agent is entitled to so sell."  (Final Judgment at 3.)  Defendants presumably included this language in their proposed judgment for a reason, perhaps to have the Court's imprimatur when they move to control and sell the CITGO Shares.  In granting Defendants' proposed judgment, the Court altered the status quo.  And as the Supreme Court has held (in language Defendants quote), a stay is necessary to "temporarily suspend[] the authority to act—the order or judgment in question" pending an appeal of the serious issues raised in this case.  *Nken v. Holder*, 556 U.S. 418, 428-29 (2009) (explaining that a stay "simply suspend[s] judicial alteration of the status quo").

---

[5] Finally, to the extent the Court concludes that Rule 62(b) does not apply, the Court also has the equitable authority to "stay proceedings—or suspend, modify, restore, or grant an injunction—while an appeal is pending."  (Mem. at 12 n.12.)  Defendants claim PDVH "cites no authority for this assertion," yet the authority PDVH already cited (Mem. At 12), *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n* held that "if the appellate court has power to issue an unsecured stay, as Rule 8(b) clearly implies, then the district court *must have that power also*, if Rule 8(a) is to make sense. [Rule] 62(g) removes any doubt on this matter in favor of an interpretation that confines Rule 62(d)'s bond requirement to stays obtained as a matter of right." 636 F.2d 755, 760 (D.C. Cir. 1980) (emphasis added).

PDVH is not seeking an injunction at this time.  Currently, sanctions remain in place at least until January 19, 2021, precluding Defendants from exercising any remedies with respect to the CITGO Shares.  However, Defendants have now indicated that, if sanctions are lifted, they intend to exercise "nonjudicial" remedies *even if* PDVH's appeal is pending.  To the extent Defendants sought the Court's imprimatur to bolster their planned "nonjudicial" conduct, which could effectively moot the appeal, that is more, not less, of a reason to issue a stay.[6]

Finally, Defendants argue, citing no authority, that PDVH's failure to move for an injunction in its opening brief has resulted in a waiver.  All of the cases Defendants cite hold only that parties should not request new relief in a reply brief.  But that doctrine is distinct from the concept of legal "waiver," and a party does not waive its right to seek an injunction when needed by not moving for such relief when it first requests a stay.  Such a rule would be senseless, as it could force parties to choose between waiver or the filing of premature requests for injunctive relief.  PDVH reserves its right to seek injunctive relief in the future should circumstances (or Defendants' actions) necessitate it.

## II.     PDVH IS ALSO ENTITLED TO A PARTIAL STAY UNDER RULE 62(f)

Rule 62(f) provides for a stay as a matter of right.  Each of Defendants' three arguments as to why Rule 62(f) does not apply is inapposite.

*First*, PDVH seeks a stay of the Court's judgment, not an injunction.

*Second*, Defendants misconstrue the requirements of Rule 62(f) as set out in *FDIC v. Ann– High Associates*, No. 97-6095, 1997 WL 1877195 (2d Cir. 1997).  (Opp. at 18).  The Final

---

[6] Defendants are correct that ¶ 5 of PDVH's Proposed Order (ECF No. 235) included the word "enjoin."  That is designed to prevent Defendants from relying upon the Court's judgment while an appeal is pending—a relief that is within this Court's power.  PDVH did not intend to seek injunctive relief under Rule 62(d) through a mere word in the proposed order.  In any event, if the Court believes such language goes beyond a stay of the Court's judgment, it can strike ¶ 5 and enter the remainder of the Order.

Judgment can be considered a lien under New York law because the Pledge expressly grants a lien over the pledged CITGO Shares (Pledge Agreement, § 2.02) and the Court's Final Judgment declares such lien valid and enforceable.   Defendants ignore that *Ann–High* uses "[a] more flexible" approach as to whether a judgment constitutes a lien rather than per se rules in determining whether a stay is appropriate under Rule 62(f).  *Id*. at *3.  The question is not whether a "provision in Article 52 provides for the creation of a lien from a declaratory judgment," but rather whether "a particular federal judgment can adequately be secured by a lien . . . as a matter of fact" by mere "ministerial acts."  *Compare* Opp. at 26, *with Ann–High*, 1997 WL 1877195 at *3.  *In re Pandeff* makes clear that a judgment may be converted into a lien where the judgment "is filed with the clerk," a mere ministerial act.  201 B.R. 865, 875 (Bankr. S.D.N.Y. 1996).[7]

*Third*, both CPLR 5519(a)(4) and (c) entitle PDVH to a stay pending appeal without requiring a bond.  As Defendants acknowledge, "CPLR 5519(a)(4), creates a right to a stay . . . where 'the judgment or order directs the assignment or delivery of personal property' and that property is deposited with an officer designated by the court."  (Opp. at 19).   Once the CITGO Shares have been placed in the custody of an agent designated by the Court (such as the Collateral Agent, which already has custody of the Shares), PDVH would be entitled to an automatic stay without requiring a bond under New York law.  *See* Commentary to § 5519 ("Under paragraph 4, . . . the appellant has the option of placing the property in neutral custody.").  *Pokoik v. Dep't of Health Servs.*, 641 N.Y.S.2d 881, 884 (2d Dep't 1996), is not to the contrary.  Defendants quote *Pokoik*—which examined a stay under CPLR 5519(a)(1), not (a)(4)[8]—for the notion that a stay

---

[7] Defendants concede that if a judgment is considered monetary in nature (which it is, *supra* at §I.A.), an automatic stay would be appropriate under *Butler v. Ross*, No. 16cv1282 (DLC), 2017 WL 6210843, at *2–3 (S.D.N.Y. Dec. 7, 2017) and CPLR 5202(a).  (*See* Opp. at 26).

[8] *City of New York v. Dist. Council 37, AFSCME, AFL-CIO*, No. 401436/05, 2006 WL 1465724 (Sup. Ct. 2006), which Defendants cite (Opp. at 19), held only that CPLR 5519(a)(1), which applies to judgments against the state, did not apply to administrative decisions and that, in any event, under *Pokoik*, the judgment in question did not contain

under CPLR 5519(a) "is restricted to the executory directions of the judgment or order appealed from." *Id.* Yet, as the court explained, this means "the stay does not extend to matters which are not commanded but which are the sequelae of granting or denying relief." *Id.* Here, PDVH seeks to stay only parts of the Court's Final Judgment, not some "future act" outside of it. *Id.*

Finally, contrary to Defendants' assertion, CPLR 5202(c) provides vast discretion to the court in granting a stay of any form of judgment without a bond. *See* Siegel's N.Y. Prac. § 535 ("This stay, which lies entirely in the court's discretion, is of course the one turned to when the automatic stay provisions aren't applicable, or aren't used, but the court's powers are not restricted to those cases."). "[T]he scope of this discretionary stay is 'coextensive' with the automatic stay, and applies . . . to stay proceedings to enforce the judgment . . . pending the appeal." *Tax Equity Now NY LLC v. City of New York*, 173 A.D.3d 464, 465 (N.Y. App. Div. June 6, 2019); *Joseph v. Cheeseboro*, 42 Misc.2d 917, 919 (N.Y. Civ. Ct. 1964) (The "only limitation on a stay, therefore, is the court's own sense of discretion, prudence, and justice"), *rev'd on other grounds*, 43 Misc.2d 702 (N.Y. App. Div. 1964). A stay is warranted under New York law under CPLR 5202(a)(1) or (c), and accordingly under Rule 62(f).

## **CONCLUSION**

PDVH respectfully submits that its motion for a partial stay should be granted.

---

"executory provisions" where it merely ordered parties to negotiate in good faith. *Id.* at *4-5. Moreover, as *City of New York* explained, CPLR 5519's purpose "is to maintain the status quo, as it operates to nullify enforcement of the judicial mandate pending appeal," just as PDVH seeks to do here. *Id.*

Dated:  December 22, 2020

Respectfully submitted,

*/s/ Jeffrey B. Korn*

Jeffrey B. Korn
Michael Gottlieb
Nicholas Reddick
Cole Mathews
Kyle Mathews

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
jkorn@willkie.com
cmathews@willkie.com

1875 K Street NW
Washington, DC  20006-1238
Telephone: (202) 303-1442
Facsimile: (202) 303 2442
mgottlieb@willkie.com
nreddick@willkie.com
kmathews@willkie.com

*Attorneys for PDV Holding, Inc.*