**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PETRÓLEOS DE VENEZUELA, S.A., PDVSA
PETRÓLEO, S.A., and PDV HOLDING, INC.,

    Plaintiffs and Counterclaim Defendants,

    - against -

MUFG UNION BANK, N.A. and GLAS
AMERICAS LLC,

    Defendants and Counterclaim Plaintiffs.

No. 19 Civ. 10023 (KPF)

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO MODIFY PARTIAL STAY**

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
Walter Rieman
Jonathan Hurwitz
Shane D. Avidan
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Facsimile: 212-757-3990

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
Roberto J. Gonzalez (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006-1047
Telephone: 202-223-7300

*Attorneys for Defendants and
Counterclaim Plaintiffs
(as to Federal and New York
law issues only)*

LATHAM & WATKINS LLP
Matthew S. Salerno
1271 Avenue of the Americas
New York, New York 10020-1300
Telephone: 212-906-1200
Facsimile: 212-751-4864
matthew.salerno@lw.com

*Attorneys for Defendants and
Counterclaim Plaintiffs*

## Table of Contents

**Page**

Table of Authorities ............................................................................................................ ii

Preliminary Statement ........................................................................................................ 1

Background ......................................................................................................................... 3

    A.    The Dispute ........................................................................................... 3

    B.    Judgment and Stay ............................................................................... 5

    C.    Appeal ................................................................................................... 7

    D.    The Impending Sale of PDVH ............................................................. 8

    E.    The Risk That the PDVSA Parties Will Use Assets of CITGO Holding to Settle With Creditors of PDVSA or the Republic in Order to Avoid the Impending Sale ....................................................................... 13

    F.    Movants' Efforts to Obtain Additional Protections Without Motion Practice ............................................................................................... 16

Argument ........................................................................................................................... 16

I.    There Is Significant Risk That the PDVSA Parties or the Republic Will Deplete the Value of the Collateral by Using Assets of CITGO Holding to Finance Settlements with Other Creditors ........................................................................... 17

II.    Changed Circumstances Warrant Conditioning the Stay on Protections Against Diminution of the Value of the Collateral ............................................................ 18

III.    Changed Circumstances Warrant Permitting the Trustee and the Collateral Agent to Exercise Their Contractual Right to Vote Shares of CITGO Holding ............ 22

Conclusion ......................................................................................................................... 23

## Table of Authorities

**Page(s)**

**CASES**

*Am.'s Collectibles Network, Inc.* v. *Sterling Com. (Am.), Inc.*,
No. 3:09-cv-00143, 2019 WL 13169731 (E.D. Tenn. July 26, 2019) ...................................20

*In re Bakery & Confectionary Union & Indus. Int'l Pension Fund Pension Plan*,
759 F. App'x 503 (7th Cir. 2019) ....................................................................................7, 19

*Betts* v. *Coltes*,
449 F. Supp. 751 (D. Hawaii 1978) ......................................................................................16

*Coan* v. *Dunne*,
No. 3:15-cv-00050-JAM, 2022 WL 392856 (D. Conn. Feb. 9, 2022) ...................................20

*Crystallex Int'l Corp.* v. *Bolivarian Rep. of Venez.*,
No. 17-mc-00151-LPS, 2021 WL 129803 (D. Del. Jan. 14, 2021) ...................................12, 21

*Crystallex Int'l Corp.* v. *Bolivarian Rep. of Venez.*,
932 F.3d 126 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020). .......................................21

*Deutsche Bank Nat'l Trust Co.* v. *Cornish*,
759 F. App'x 503 (7th Cir. 2019) ....................................................................................7, 19

*Donges* v. *USAA Fed. Sav. Bank*,
No. 18-cv-00093-TUC-RM, 2019 WL 3208076 (D. Ariz. July 16, 2019)...........................20

*FTC* v. *Shkreli*,
No. 20-cv-00706-DLC, 2022 WL 814071 (S.D.N.Y. Mar. 17, 2022) ...................................19

*In re Nassau County Strip Search*,
783 F.3d 414 (2d Cir. 2015)...............................................................................................6, 21

*Ortiz* v. *Stambach*,
No. 1:16-cv-00321-EAW, 2023 WL 3089087 (W.D.N.Y. Apr. 26, 2023) ...........................19

*Richardson* v. *Prisoner Transp. Servs. of Am.*,
No. 3:15-cv-01061-ARC, 2019 WL 1003624 (M.D. Pa. Feb. 27, 2019) ...............................19

*SEC* v. *Mut. Benefits Corp.*,
No. 04-cv-60573-FAM, 2022 WL 3715982 (S.D. Fla. Aug. 29, 2022) .................................20

*SEC* v. *Mut. Benefits Corp.*,
No. 04-cv-60573-FAM, 2021 WL 5206302 (S.D. Fla. Nov. 9, 2021) ...................................20

**OTHER AUTHORITIES**

16A Charles Alan Wright & Arthur R. Miller,
    Fed. Prac. & Proc. Juris. § 3954 (5th ed.) ...............................................................16

Fed. R. Civ. P. 54(b) ...............................................................................................................5

Fed. R. Civ. P. 62(b) ..................................................................................................... passim

The Trustee and the Collateral Agent, by their attorneys Paul, Weiss, Rifkind, Wharton & Garrison LLP and Latham & Watkins LLP, and at the direction of owners of a majority of outstanding 2020 Notes,[1] respectfully submit this memorandum of law in support of their motion to modify the partial stay of execution of enforcement entered pursuant to Federal Rule of Civil Procedure 62(b) on December 29, 2020 (Stay Order, ECF No. 241).

### Preliminary Statement

On December 1, 2020, this Court entered judgment against PDVSA[2] (the issuer) and PDVSA Petróleo (the guarantor) and in favor of the Trustee for the unpaid principal and interest on the 2020 Notes in the amount of $1,924,126,058 (plus fees and expenses).  The judgment also granted declaratory relief in favor of the Trustee and the Collateral Agent and against PDVSA, PDVSA Petróleo, and PDVH (the pledgor).  The Court ruled, among other things, that the 2020 Notes and the Governing Documents are valid and enforceable, that a default has occurred under the terms of the Indenture, and that the Trustee and the Collateral Agent may exercise the remedies for default set forth in the Indenture and the Pledge Agreement, including foreclosure on and sale of the Collateral.  The Collateral consists of a first-priority interest in 50.1% of the shares of CITGO Holding.  The Collateral Agent possesses a first-priority security interest in the Collateral.

---

[1]  The Trustee and the Collateral Agent act through the direction of owners of a majority of outstanding 2020 Notes, pursuant to the Governing Documents, and all references to the Trustee and the Collateral Agent are solely in their respective capacities as the Trustee and the Collateral Agent as subject to direction of such holders.

The Trustee, MUFG Union Bank, N.A., merged into U.S. Bank National Asssociation, effective May 26, 2023, with U.S. Bank National Association as the surviving entity.

[2]  Terms not defined herein have the meanings set forth in the papers of the Trustee and the Collateral Agent in support of their motion for summary judgment, ECF Nos. 99, 158, 182.

To provide PDVH with an "opportunity to pursue its appeal" from the judgment, the Court granted a partial stay of enforcement of the judgment as to PDVH on December 29, 2020.  In doing so, the Court declined to require PDVH to post a supersedeas bond on the ground that the Collateral was sufficient security under Federal Rule of Civil Procedure 62(b) for collection of the money judgment.

Two and a half years later, with the appeal process still ongoing, the circumstances that led the Court to enter a partial stay without a bond have materially changed, and the value of the Collateral is at risk.  The reason is straightforward: there are strong reasons to believe that the PDVSA Parties intend to use the assets of CITGO Petroleum and CITGO Holding (i.e., the assets underlying the value of the Collateral) to settle many billions of dollars of claims against the PDVSA Parties and the Republic—claims that far exceed the value of the CITGO entities—and thereby to preserve their indirect ownership of CITGO Petroleum.  One creditor action in the United States District Court for the District of Delaware is rapidly moving towards a judicial sale of shares of PDVH, the direct parent of CITGO Holding.  The PDVSA Parties have publicly expressed a willingness to prevent a loss of their indirect ownership of CITGO Petroleum "at all costs and by all means," ECF No. 139 ¶ 279.  The use of assets from the CITGO entities to settle claims against PDVSA and the Republic would deplete the value of the Collateral and would create a substantial risk that the remaining value of the Collateral will not be sufficient to satisfy the money judgment entered by this Court in favor of the Trustee.  Federal Rule of Civil Procedure 62(b) is designed to protect creditors from outcomes such as these, not enable them.

The Trustee and the Collateral Agent therefore request that this Court modify the partial stay to protect against such depletion of the value of the Collateral.  Specifically, they ask

2

that the Court condition the stay on the PDVSA Parties' committing to refrain from (i) using any assets of CITGO Holding or CITGO Petroleum to make payments to PDVSA's creditors and (ii) issuing any securities, loans, or indebtedness, or any derivatives of CITGO Holding or CITGO Petroleum, to PDVSA's creditors.  Additionally, the Trustee and the Collateral Agent request that this Court further condition the stay on permitting the Trustee and the Collateral Agent to exercise their contractual rights pursuant to the Pledge Agreement to vote the shares of CITGO Holding.

**Background**

The Court is familiar with the factual background and procedural history of this action.  The Trustee and the Collateral Agent describe here only those facts most relevant to this motion.

### A.    The Dispute

This action arises from the issuance by PDVSA of senior secured notes (the "2020 Notes") on October 28, 2016, in a voluntary exchange for previously issued notes maturing in 2017 (the "Exchange Offer").  ECF No. 215, at 9–12.  PDVSA Petróleo guaranteed the 2020 Notes.  *Id.* at 1.  The 2020 Notes are secured by PDVH's pledge of a first-priority interest in 50.1% of the shares of CITGO Holding, Inc., which is the parent of CITGO Petroleum (the "Collateral").  *Id.* at 9–10.  The terms of the Exchange Offer are set forth in the Indenture, the Pledge Agreement, and the Global Notes (collectively, the "Governing Documents").  *Id.* at 2.  Pursuant to the Pledge Agreement, the Collateral is held by the Collateral Agent in New York.  *Id.* at 10.

After making payments of principal and interest through April 2019, PDVSA failed to make a required payment of principal and interest due on October 27, 2019.  *Id.* at 14. Two days later, PDVSA, PDVSA Petróleo, and PDVH (then under the legal control of the then

U.S.-recognized Guaidó administration) filed suit against the Trustee and the Collateral Agent "seek[ing] to avoid the consequences of [PDVSA's] default." *Id.* at 2, 14. Both of these actions constituted Events of Default as defined in the Governing Documents, and those Events of Default are continuing. *Id.* at 2, 67.

The Governing Documents provide the Trustee and the Collateral Agent with certain rights in the Event of Default. Among other things, the Pledge Agreement authorizes the Trustee and the Collateral Agent to foreclose on and sell the Collateral in case of an uncured Event of Default (including a payment default) without the need to commence any judicial process. Pledge § 5.02(a), ECF No. 87-5.

The Pledge Agreement also provides protections against actions that might diminish the value of the Collateral. The Pledge Agreement provides that following an Event of Default, profits and other distributions from CITGO Holding must be paid directly to the Collateral Agent—not to PDVH. It provides further that if PDVH receives any assets or other consideration in breach of that provision, it must hold the consideration in trust for the Collateral Agent, and may not transfer that consideration to anyone else. Section 2.05 of the Pledge Agreement states in relevant part:

> If any Event of Default has occurred and is continuing, and whether or not the Collateral Agent, as directed in writing by the Trustee, or the requisite Holders seek or pursue any right, remedy, power or privilege available to them under Applicable Law, this Agreement or any other Transaction Document, all profits and other distributions on the Securities [i.e., the CITGO Holding shares that constitute the Collateral] shall be paid directly to the Collateral Agent and retained by it as part of the Collateral, subject to the terms of this Agreement. . . .

> All payments, proceeds, dividends, distributions, monies, compensation, property, assets, instruments or rights that are received by the Pledgor contrary to the provisions of this Section 2.05 shall be received and held in trust for the benefit of the Collateral Agent for the benefit of the Secured Parties, shall be segregated by the Pledger from other funds of the Pledgor and shall be forthwith paid over to the Collateral Agent in the same form as so received.

Pledge § 2.05(c), (f), ECF No. 87-5.

   The Pledge Agreement further authorizes the Collateral Agent, following an Event of Default, to act in all respects as the owner of the Collateral, *id.* § 2.05(a), and specifically authorizes the Collateral Agent to direct the voting of the shares that constitute the Collateral, *id.* § 2.05(d).  As is routine in such pledge agreements, the Pledge Agreement provides that "upon the occurrence and during the continuation of any Event of Default," the Collateral Agent is entitled "to instruct and direct the Pledgor [PDVH], and upon such instruction or direction the [PDVH] shall be obligated, to vote the Securities representing the Pledged Shares [i.e., the Collateral] in the manner and within the time frames indicated in such instruction or direction and otherwise to act with respect to the Collateral as outright owner thereof." *Id.* § 2.05(d).

### B.   Judgment and Stay

   On October 16, 2020, the Court issued an opinion and order granting the Trustee and the Collateral Agent's motion for summary judgment and denying the PDVSA Parties' motion for summary judgment.  Summary Judgment Order, ECF No. 215.  The Court concluded, among other things, that "New York law is the applicable law for this action"; that "the 2020 Notes and the Governing Documents are valid and enforceable"; and that the Trustee and the Collateral Agent "are permitted to exercise the remedies for default set forth in the Indenture and the Pledge Agreement." *Id.* at 65–68.

   On December 1, 2020, this Court entered judgment in favor of the Trustee and the Collateral Agent pursuant to Federal Rule of Civil Procedure 54(b).  Judgment, ECF No. 229, at 1.  The judgment dismissed with prejudice the PDVSA Parties' complaint and "all claims asserted therein"; granted summary judgment to the Trustee and the Collateral Agent on their counterclaims for breach of contract; and entered judgment against PDVSA and PDVSA

Petróleo for overdue and unpaid principal and interest on the 2020 Notes, including prejudgment interest, of more than $1.9 billion (plus fees and expenses). *Id*. at 1–2. The judgment also declared, among other things, that the Governing Documents are valid and enforceable; that an Event of Default had occurred and was continuing under the terms of the Indenture; that "the Trustee is entitled to direct the Collateral Agent to sell the collateral securing the 2020 Notes"; and that "the Collateral Agent is entitled to so sell." *Id*. at 2–3. The PDVSA Parties appealed. Notice, ECF No. 232.

Following entry of judgment, PDVH sought what it described as a partial stay of execution of judgment pending appeal. Stay Motion, ECF No. 234. PDVSA and PDVSA Petróleo did not seek any stay. *Id.* at 2 n.2. On December 29, 2020, this Court granted a partial stay of enforcement pursuant to Federal Rule of Civil Procedure 62(b). Stay Order, ECF No. 241. Among other things, the partial stay precludes the Trustee and the Collateral Agent from "attempt[ing] to enforce the Pledge Agreement or otherwise to exercise any rights, remedies, or privileges purportedly arising from a default or Event of Default under the Pledge Agreement, including by attempting to sell the collateral securing the 2020 Notes" through the issuance of a mandate by the Second Circuit. *Id.* at 7. It does not affect the ability of the Trustee to enforce the Court's money judgment against PDVSA and PDVSA Petróleo through methods other than enforcement of rights arising from the pledge of the Collateral. In issuing the partial stay, this Court stated that it "sympathizes with Defendants' position that the Indenture and Pledge Agreement contemplate an immediate nonjudicial foreclosure and eventual sale of the Collateral in case of an Event of Default," but explained that the partial stay was designed to "allow PDVH the opportunity to pursue its appeal." Stay Order, ECF No. 241, at 1–2.

In granting the partial stay, this Court determined that PDVH was not required to post security under Rule 62(b) because the Pledge Agreement "assures that the Pledged Shares will be maintained in their current form for the duration of the appeal," and that "no additional security is necessary" under the factors sets forth in *In re Nassau County Strip Search*, 783 F.3d 414, 417–18 (2d Cir. 2015).  *Id.* at 3–4.  In *Nassau County*, the Second Circuit set forth a nonexclusive set of factors to consider:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

783 F.3d at 417–18.  In applying these standards, the Court relied on guidance from the Seventh Circuit that "continuing an existing security interest in the property that a lender required as a condition of the loan should provide adequate security in most cases" where the "property is cared for and protected."  Stay Order, ECF No. 241 at 3–4 (quoting *Deutsche Bank Nat'l Trust Co.* v. *Cornish*, 759 F. App'x 503, 509–10 (7th Cir. 2019), and citing *In re Bakery & Confectionary Union & Indus. Int'l Pension Fund Pension Plan*, No. 11-cv-01471-VB, 2013 WL 12444540, at *2 (S.D.N.Y. Jan. 29, 2013) (determining that a bond was "unnecessary" where the movant's assets were held in trust, most of the movant's assets were "invested in readily marketable securities," and the beneficiaries "who would receive payments if the judgment is affirmed will be paid within thirty to ninety days thereafter").

### C.    Appeal

Promptly after the PDVSA Parties noticed their appeal to the United States Court of Appeals for the Second Circuit, the Trustee and the Collateral Agent moved to expedite the

appeal.  No. 20-3858 (2d Cir.), ECF No. 82.  The PDVSA Parties opposed the motion, and the Second Circuit denied it.  *Id.*, ECF No. 96.

On October 13, 2022, the Second Circuit certified questions of New York law to the New York Court of Appeals.  *Id.*, ECF No. 324.  Briefing on the merits is expected to be complete on July 18, 2023; oral argument is not yet scheduled.  Based upon the court's argument calendar, we do not anticipate that oral argument will occur before October 2023.

### D.    The Impending Sale of PDVH

The PDVSA Parties and the Bolivarian Republic of Venezuela are defendants or respondents in of dozens of state, federal, and international lawsuits and arbitrations through which creditors seek to recover billions of dollars in claims.  The value of these claims far exceeds any estimated value of CITGO Petroleum, which (through a series of holding companies) is PDVSA's and the Republic's only significant asset in the United States.  As counsel for the Republic has stated, claims against the Republic and against PDVSA amounted to approximately $150 billion as of November 2019, "which is way, way more than what can possibly be satisfied using Citgo."  Transcript of Oral Argument at 31, *Crystallex Int'l Corp.* v. *PDV Holding, Inc.*, No. 15-cv-01082-LPS (D. Del. Nov. 17, 2019), ECF No. 118.  The Republic's counsel is correct in that limited respect; CITGO Petroleum is currently valued at approximately $13 billion—far less than the amount of these claims.  Ex. 1.  (Citations to "Ex. __" refer to the exhibits annexed to the accompanying declaration of Jonathan H. Hurwitz.)

Actions by these other creditors to seize PDVSA's assets in the United States are moving forward.  Multiple creditors have commenced proceedings in the United States District Court for the District of Delaware to enforce judgments against PDVSA by attaching, foreclosing on, and selling shares of PDVH.  In *Crystallex International Corp.* v. *Bolivarian Republic of Venezuela*, an action to collect approximately $970 million due on a judgment

entered against the Republic, Judge Leonard Stark granted a motion by Crystallex in August 2018 permitting it to attach shares of PDVH, the pledgor here and the direct parent of CITGO Holding. *Crystallex Int'l Corp.* v. *Bolivarian Rep. of Venez.* ("*Crystallex Asset Proceeding*"), 333 F. Supp. 3d 380, 426 (D. Del. 2018), *aff'd and remanded*, 932 F.3d 126 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020); Ex. 2 at 9.  In April 2021, Judge Stark entered an order appointing a Special Master to oversee a process for the judicial sale of the attached PDVH shares; the order contemplates that proceeds from the sale of PDVH shares will be applied to pay the outstanding amount of Crystallex's judgment and perhaps to pay unsatisfied judgments obtained by other creditors against PDVSA or Venezuela. *Crystallex Asset Proceeding*, No. 17-mc-00151-LPS (D. Del. Apr. 13, 2021), ECF No. 258.

The interest of the Trustee and the Collateral Agent in CITGO Holding are structurally senior to the claims of the plaintiffs in the Delaware proceedings.  Those plaintiffs assert claims against PDVSA or the Republic, and seek to recover on those claims through a sale of shares of PDVH (the parent of CITGO Holding).  The Collateral securing the 2020 Notes, as discussed above, is shares of CITGO Holding.  A sale of PDVH shares or a transfer of ownership or control of PDVH would not affect the security interest of the Trustee and the Collateral Agent in that Collateral.

On October 11, 2022, Judge Stark entered a final Sale Procedures Order in the *Crystallex* action, setting in motion a sale of shares of PDVH within approximately one year from today.  *Id.*, ECF Nos. 481, 553 (Exs. 2, 3).  Among other things, the Order directed the Special Master and his advisors to seek guidance from the Office of Foreign Asset Control ("OFAC") regarding "its support for (or non-opposition to), the launch of the Marketing Process by the Special Master, the viability of the Marketing Process, and any additional feedback or

guidance that the Special Master believes will more likely result in a value-maximizing transaction," as well as any other input from the Executive Branch "regarding implementation of this Order and the Bidding Procedures at any time." Ex. 2 ¶¶ 3, 6. The Order also authorized the Special Master to communicate with the Trustee and the Collateral Agent concerning a sale of the PDVH shares. *Id.* ¶ 39.

The Executive Branch, including OFAC, has indicated that it will permit the sale of PDVH to an appropriate buyer. On April 28, 2023, the Special Master filed a report accompanied by a letter from the U.S. Department of Justice ("DOJ") expressing the government's views about the sale process and a possible sale. No. 17-mc-00151-LPS (D. Del.), ECF No. 553, Ex. 3. The letter from the DOJ states that OFAC will allow prefatory steps set forth in the Sale Procedures Order to take place and will not take enforcement action against individuals or entities for participating in or complying with those steps. *Id.* at 2–3. The DOJ letter also states that, while it would be premature before a buyer has been identified to issue a license for the sale of the PDVH shares or express a view about whether a license will be granted, "OFAC intends to implement a favorable licensing policy for license applications in connection with the execution of a sale as contemplated in the Sales Order or, as applicable, the negotiation of a settlement agreement among the relevant parties." *Id.* at 3. The Special Master accordingly recommended that: (i) preparations for launching a marketing process begin as soon as practicable after June 5, 2023 as the Court is able to consider the report and any objections; (ii) the Launch Date for the Marketing Process should occur on the earlier of September 5, 2023, or the date on which the Special Master in his sole discretion believes he is sufficiently prepared to launch the process; and (iii) a Sale Hearing should take place on approximately June 1, 2024. *Id.* at 3–4.

On May 1, 2023, consistent with DOJ's letter to the Special Master, OFAC issued Venezuela General License 42.  General License 42 authorizes all transactions that are "ordinarily incident and necessary to the negotiation of settlement agreements" with the Venezuelan National Assembly or the Commission it appointed to oversee PDVSA's overseas assets.  U.S. Dept. of Treasury, OFAC, General License No. 42 Authorizing Certain Transactions Related to the Negotiation of Certain Settlement Agreements with the IV Venezuelan National Assembly and Certain Other Persons (Ex. 4).  FAQ 1123 accompanying General License 42 further provides, with respect to the *Crystallex* litigation, that "OFAC will not take enforcement action against any individuals or entities for participating in, facilitating, or complying with the prefatory steps set out in the court's Sale Procedures Order, or for engaging in transactions that are ordinarily incident and necessary to participating in, facilitating, or complying with such steps (such as serving as potential or actual credit counterparties)" and that OFAC "intends to implement a favorable licensing policy toward such license applications in connection with the execution of a sale as contemplated in the Sale Procedures Order."  Ex. 5.

Multiple creditors of PDVSA and the Republic in pending proceedings in Delaware, in addition to Crystallex, are seeking to recover proceeds resulting from a judicial sale of PDVH shares.  OFAC issued a specific license authorizing the issuance and service of writs of attachment *fieri facias* on PDVH shares by all creditors of PDVSA and the Republic that Judge Stark deems "Additional Judgment Creditors" under the Sale Procedures Order.  Ex. 6.  That specific license potentially opens up the universe of creditors who could recover proceeds from a judicial sale of PDVH shares.  That license therefore also creates the possibility that a judicial sale of PDVH shares would need to include the sale of a majority or all of the PDVH equity and would thus terminate PDVSA's indirect ownership of CITGO Holding.  *See* Ex. 2 ¶ 12.

Following the Special Master's report and DOJ's letter, Judge Stark entered an order scheduling briefing on responses to the Special Master's report and seeking the parties' views on the following questions: (i) which, if any, judgments in favor of other creditors should be regarded as "Additional Judgments" under the Sale Procedures Order, such that they would be permitted to share in the proceeds of any sale of PDVH shares; (ii) whether Judge Stark should issue full, unconditional orders of attachment to creditors other than Crystallex; and (iii) how Judge Stark should determine the priority of any judgments that are made Additional Judgments. No. 17-mc-00151-LPS (D. Del.), ECF No. 559, Ex. 7.  This briefing is complete, and Judge Stark held a hearing on June 26, 2023, relating to these questions.  *Id.*  More than a dozen creditor groups asserting billions of dollars in claims arising out of alleged breaches of contract and expropriations filed briefs in response to Judge Stark's order seeking permission to share in the sale proceeds.  *See id.* ECF Nos. 562–76, 587–597, 599–612.

If the *Crystallex* sales process goes forward, the Republic and the PDVSA Parties are likely to lose their indirect ownership of CITGO Petroleum before the appeal in this action has run its course and this Court's stay is lifted.  But the Republic and the PDVSA Parties have repeatedly sought to delay and frustrate this process.  As Judge Stark has concluded, the Republic has proved a "highly recalcitrant judgment debtor," *Crystallex Asset Proceeding*, No. 17-mc-00151-LPS, 2021 WL 129803, at *5 (D. Del. Jan. 14, 2021), and has engaged in conduct motivated with "at least a partial goal of further delaying these proceedings," Order, No. 17-mc-00151-LPS (D. Del.), ECF No. 554, Ex. 8, at 7.

The Sale Procedures Order empowers the PDVSA Parties to put a halt to the sale process by settling with the holders of all Attached Judgments (including Crystallex and other creditors deemed to be Additional Judgment Creditors).  It provides that "[i]f at any time all

Attached Judgments become satisfied in full (or otherwise are consensually resolved), then the Special Master shall cease implementation of the Sale Procedures and seek further direction from the Court." Ex. 2 ¶ 29.

### E. The Risk That the PDVSA Parties Will Use Assets of CITGO Holding to Settle with Creditors of PDVSA or the Republic in Order to Avoid the Impending Sale

As the sale of PDVH shares in the *Crystallex* action grows closer, the value of the Collateral—and thus the adequacy of the Collateral to function as security for the Trustee's money judgment under Rule 62(b)—has been placed at significant risk of impairment.

The PDVSA Parties have expressed a clear intent to use funds from CITGO Petroleum to finance a potential settlement with Delaware creditors and to halt the *Crystallex* sales process. Such a use of funds would put the value of the Collateral at risk. Earlier this month, Horacio Medina, the president of PDVSA's Ad Hoc Board, stated that CITGO is actively seeking to renegotiate more than half of its $21 billion in debt, or $10 to $11 billion, and is able to do so because of CITGO Petroleum's recent profitability. Ex. 9. He stated: "[w]e have a few ways to make payments," and that "there is a range of possibilities to solve, something that we did not have four years ago." *Id.* (While Mr. Medina referred to "CITGO" debts, media reports make clear the "$21 billion in debt" he mentioned consists of debts owed by PDVSA and the Republic. *See, e.g.*, Ex. 10. Indeed, Mr. Medina's failure to distinguish obligations of CITGO from obligations of PDVSA and the Republic underscores the reasons for concern that the PDVSA Parties intend to use assets of CITGO Petroleum to resolve obligations of PDVSA and the Republic.)

The PDVSA Parties have repeatedly expressed the view that retaining the Republic's indirect ownership of CITGO Petroleum is of enormous importance to PDVSA and the Republic and have repeatedly stated that their highest priority is to retain control of CITGO

"at all costs and by all means."  ECF No. 139 ¶ 279; ECF No. 112-37 (describing Guaidó Administration press release stating "[t]he legitimate Government of Venezuela stands by its absolute decision to defend, at all costs and by all means, the property of our people of a strategic asset necessary for the national reconstruction and for overcoming the worst humanitarian crisis ever seen in the history of our region"); *see also* Memorandum, ECF No. 95, at 31 (referring to CITGO as the "crown jewel" of Venezuela and "the most economically and strategically important foreign asset"); ECF No. 238-1 (Guaidó Administration press release after this Court's summary judgment decision, stating that it "continues to work with our allies, especially the U.S. Government, to maintain protection over and move towards definitive preservation of CITGO for all Venezuelans").  Since the entry of Judgment and the Stay Order in this matter, the Venezuelan National Assembly has reiterated this position.  While it removed Mr. Guaidó as interim president at the end of 2022, it created a committee whose sole function is to protect Venezuelan assets abroad.  Exs. 10, 11.

   For those reasons, the 2020 Noteholders have every reason to believe that the PDVSA Parties and the Republic will exhaust all means available to use assets of CITGO Holding or CITGO Petroleum to fund a settlement with the Delaware creditors, halt the *Crystallex* sales process, and preserve their ownership of PDVH.

   Although the Pledge Agreement contains provisions designed to protect and preserve the Collateral, Pledge § 2.05(c), (f), ECF No. 87-5, those provisions provide insufficiently explicit protection against the use of assets of CITGO Holding or CITGO Petroleum to settle with other creditors of PDVSA or the Republic.  To begin with, the Stay Order currently precludes the Trustee and the Collateral Agent from exercising their contractual rights to enforce the Pledge Agreement.  The PDVSA Parties might also argue CITGO Holding

is not a party to the Pledge Agreement and cannot be bound by it, although any funds distributed by CITGO Holding to PDVSA or the Republic would necessarily flow through PDVH, its direct parent.  While the Trustee and the Collateral Agent would strongly dispute these arguments, they cannot reliably predict how a court would resolve them.

The PDVSA Parties' prior conduct underscores the reasons for concern that they will seek to prevent a sale of PDVH shares by using CITGO Holding or CITGO Petroleum to settle with creditors of PDVSA or the Republic.  As Judge Stark has found, PDVSA and the Republic have a history of using funds belonging to CITGO Petroleum for their own benefit.  Earlier this year, in concluding that PDVSA was an alter ego of the Republic under the Guaidó administration, Judge Stark found that "the Guaidó government tapped PDVSA and CITGO funds located in the United States to fund its legal fees and also to fund the National Assembly itself."  Opinion and Order, *OI European Grp. B.V.* v. *Bolivarian Rep. of Venez.*, No. 19-mc-00290-LPS (D. Del.), ECF No. 131, Ex. 13 ¶ 84.  As reported in media sources and in statements by counsel for creditors cited by Judge Stark, in April 2021, the Guaidó administration accessed frozen U.S. accounts, which contain funds derived from CITGO Petroleum, to pay for various expenses, including $23 million for "defending democracy" and $2.3 million for "advising, security, and travel costs."  Ex. 14; *see also* Ex. 15, at 22:2–10, 160:12–20 (a Delaware creditor's counsel explaining that the Guaidó administration "drew down on Central Bank funds previously frozen in the United States" consisting of "money that was derived from CITGO" in part "to pay his government and also, in part, to pay for Venezuela and PDVSA's legal bills").

These practices are not new.  In November 2019, the Guaidó-aligned National Assembly elected in 2015 issued a resolution directing PDVSA funds be used for the defense of Venezuela in foreign and international proceedings.  Ex. 16 ¶ 12; Ex. 17.  And earlier in 2019, as

reported in an article that Judge Stark cited, the Guaidó administration accessed income from oil sales to fund efforts to dislodge Nicolas Maduro.  Ex. 18.  The Republic admitted earlier this month that it has obtained loans from PDVSA to fund its own litigation expenses.  Ex. 19, at 7; Ex. 20 ¶ 7.

### F.   Movants' Efforts to Obtain Additional Protections Without Motion Practice

On June 21, 2023, counsel for the Trustee and the Collateral Agent contacted counsel representing certain PDVSA and/or CITGO entities to inquire, among other things, whether the PDVSA Parties would be willing to agree to protections against diminution in the value of the Collateral.  Counsel stated that they were not in a position to agree to such a request. Declaration of Andrew N. Rosenberg ¶¶ 3–6.

## Argument

This Court has jurisdiction to modify the parameters of a stay pending appeal. *See* 16A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3954.1 (5th ed.) ("[Federal Rule of Appellate Procedure] 8(b) . . . is a recognition of the fact that district courts are better equipped to handle all bond and security matters . . . ."); *Betts* v. *Coltes*, 449 F. Supp. 751, 754 (D. Hawaii 1978) (determining that the district court retained jurisdiction to modify its order staying execution of a money judgment).

The PDVSA Parties' use of assets of CITGO Holding or CITGO Petroleum to settle with the PDVSA Parties' creditors could diminish and impair the value of the Collateral— and, ultimately, the recovery of the Trustee and the 2020 Noteholders.  The Trustee and the Collateral Agent accordingly request that the Court condition the stay on the PDVSA Parties' committing to refrain from (i) using any assets of CITGO Holding or CITGO Petroleum to make payments to PDVSA's creditors and (ii) issuing any securities, loans, or indebtedness, or any derivatives of CITGO Holding or CITGO Petroleum, to PDVSA's creditors.  Additionally, the

Trustee and the Collateral Agent request that this Court further condition the stay on permitting the Trustee and the Collateral Agent to exercise their contractual rights pursuant to the Pledge Agreement to vote the shares of CITGO Holding.

**I.      There Is Significant Risk That the PDVSA Parties or the Republic Will Deplete the Value of the Collateral by Using Assets of CITGO Holding to Finance Settlements with Other Creditors**

As discussed above, creditors are seeking to enforce billions of dollars in claims against the Republic and the PDVSA Parties.  CITGO Holding and CITGO Petroleum are an attractive source of value for the Republic and the PDVSA Parties to fund a settlement and avoid the potential loss of its professed "crown jewel."  Indeed, it is likely the only source of such value available to the Venezuelan National Assembly and the Commission charged with managing the Republic's foreign assets.  *See* Motion, ECF No. 234, at 16 (PDVH identifying shares of CITGO Holding as "its only meaningful asset"); *see also* Transcript of Oral Argument at 31, *supra* p. 8.

The risk to the Collateral here is by no means hypothetical.  The PDVSA parties have suggested publicly that they intend to use CITGO Petroleum's assets to reach settlements with creditors of the Republic and PDVSA.  *See supra* p. 12.  According to Mr. Medina's statements, as much as 85% of the value of CITGO Petroleum could be wiped out in order to satisfy other creditors, Ex. 1, leaving the Trustee and the Collateral Agent with Collateral worth potentially far less than the amount of this Court's judgment.  The PDVSA Parties acknowledged at the time of the Exchange Offer that distributing assets of CITGO Holding to anyone other than the Collateral Agent would cause harm to the Trustee and the Collateral Agent in an Event of Default and agreed to certain protections to prevent CITGO's assets.  Pledge § 2.05(c), (f), ECF No. 87-5.

The provisions in the Pledge Agreement restricting PDVH's use of CITGO Petroleum funds no longer sufficiently protect the Trustee and the Collateral Agent from diversion of CITGO Petroleum's assets in light of the Stay Order.  As noted, following an Event of Default, Section 2.05 of the Pledge Agreement provides that during the pendency of an Event of Default, profits and other distributions from CITGO Holding must be paid directly to the Collateral Agent and are subject to the liens provided under the Pledge Agreement.  *See supra* p. 4.  But the Stay Order precludes the Trustee and the Collateral Agent from enforcing those provisions.  And, as noted, the Republic and the PDVSA Parties have a history of using assets belonging to CITGO Petroleum to fund the activities of other corporate entities and the Republic. *See supra* p. 15.

The PDVSA Parties might argue that because any prior distributions from CITGO Holding to PDVSA were structured as loans, not dividends, those distributions and any similarly structured future distributions do not implicate section 2.05 of the Pledge Agreement.  But regardless of whether such actions violate the Pledge Agreement, they can potentially impair the value of the Collateral, and thus call into question whether the Collateral provides sufficient security to support a continuance of the stay.  These purported loans also do not appear to be bona fide.  There is no apparent reason that a solvent corporation such as CITGO Petroleum or CITGO Holding would lend money on a unsecured basis to an entity (PDVSA) whose unsecured debt trades for pennies on the dollar.  A lender that actually intended to seek repayment and that was not controlled by the borrower would not have entered into such transactions.

## II. Changed Circumstances Warrant Conditioning the Stay on Protections Against Diminution of the Value of the Collateral

This Court held that PDVH need not post a supersedeas bond to obtain a partial stay, as the Collateral was sufficient alternative security.  This Court relied on case law holding

that a supersedeas bond is not necessary when there already exists alternative security that ensures a judgment creditor's rights will be protected. Specifically, this Court relied on guidance from the Seventh Circuit that "continuing an existing security interest in the property that a lender required as a condition of the loan should provide adequate security in most cases" where the "property is cared for and protected." Stay Order, ECF No. 241, at 3–4 (quoting *Cornish*, 759 F. App'x at 509, and citing *In re Bakery & Confectionary Union*, 2013 WL 12444540, at *2). Courts have since explained that alternative security is permissible where "[t]he Court further has a high degree of confidence in the availability of funds to pay the judgment" and where the judgment debtor has "specifically set aside funds to pay the judgment, which funds will not be used or allocated for any other purpose." *Ortiz* v. *Stambach*, No. 1:16-cv-00321-EAW, 2023 WL 3089087, at *2 (W.D.N.Y. Apr. 26, 2023); *see also FTC* v. *Shkreli*, No. 20-cv-00706-DLC, 2022 WL 814071, at *2 (S.D.N.Y. Mar. 17, 2022) (finding that shares of a private company were "insufficient to ensure that the prevailing party will recover in full" because it was "not clear what the market value of its shares is or even when that value will be determined"); *cf. Richardson* v. *Prisoner Transp. Servs. of Am.*, No. 3:15-cv-01061-ARC, 2019 WL 1003624, at *2 (M.D. Pa. Feb. 27, 2019) (security is adequate if it "'assures the judgment creditor of payment in full,' come what may" (quoting *Olympia Equip. Leasing Co.* v. *W. Union Tel. Co.*, 786 F.2d 794, 800 (7th Cir. 1986) (Easterbrook, J.))).

In requesting a stay, PDVH likewise recognized that alternative security is not always sufficient to obtain a stay. It represented to the Court, however, that "[t]he Pledge Agreement assures that the pledged CITGO Shares (in which PDVH has granted and delivered a first-priority interest to the Collateral Agent) will remain in exactly the same form and manner post-appeal as they do today." Stay Motion, ECF No. 234, at 12. PDVH also represented to this

Court that "there is no reason to doubt that PDVH will satisfy its portion of the Final Judgment should it be affirmed on appeal." *Id.* at 16.

But events since the stay was entered cast serious doubt on those assurances. As discussed above, the PDVSA parties have made clear that they intend to use CITGO Petroleum assets (and thereby diminish the value of the Collateral) in an effort to settle the Delaware creditor actions and retain PDVSA's indirect ownership of CITGO Petroleum. *See supra* p. 12.

In light of these changed circumstances, it is appropriate to modify the stay. As one court noted when granting a stay pending appeal based on alternative security (citing this Court's stay order), "[i]f push comes to shove, the Court can revisit the issue of security to protect the [judgment creditor] against a harm." *SEC* v. *Mut. Benefits Corp.*, No. 04-cv-60573-FAM, 2021 WL 5206302, at *4 (S.D. Fla. Nov. 9, 2021); *see also SEC* v. *Mut. Benefits Corp.*, No. 04-cv-60573-FAM, 2022 WL 3715982, at *4 (S.D. Fla. Aug. 29, 2022) ("During the length of the appeal, the Trustee may seek the Court revisit the conditions of the stay if the impact to the Trust is magnified. The Trustee may also move for a specific bond amount if there is a specific loss to the Trust."); *Coan* v. *Dunne*, No. 3:15-cv-00050-JAM, 2022 WL 392856, at *1 (D. Conn. Feb. 9, 2022) (modifying a stay to condition it upon the posting of a bond and imposing obligations to care for mortgaged property); *cf. Donges* v. *USAA Fed. Savs. Bank*, No. 18-cv-00093-TUC-RM, 2019 WL 3208076, at *3 (D. Ariz. July 16, 2019) (granting relief pursuant to Rule 62(d) and noting that "[s]hould the property begin to deteriorate in value or other circumstances arise such that Defendant's interest in the property is no longer sufficient to secure its interests pending appeal, Defendant may 'petition the [Court] for supplementary relief.'" (quoting *N. Ind. Pub. Serv. Co.* v. *Carbon Cnty. Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986))); *Am.'s Collectibles Network, Inc.* v. *Sterling Com. (Am.), Inc.*, No. 3:09-cv-00143, 2019

WL 13169731, at *2 (E.D. Tenn. July 26, 2019) (denying motion to lift stay in light of changed circumstances, as judgment debtor offered to post additional bond).  Here, push has come to shove, and the Collateral is at risk.

The Court has ample authority to condition a continuation of the stay on the requested commitment of the PDVSA Parties so as to preserve the value of the Collateral.  Rule 62(b) is designed to protect creditors, and any stay of enforcement must keep in mind this goal.  As the Second Circuit has articulated, "[t]he purpose of the rule is to ensure 'that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed.'"  *In re Nassau*, 783 F.3d at 417 (quoting *Cleveland Hair Clinic, Inc.* v. *Puig*, 104 F.3d 123, 125 (7th Cir. 1997)).

In the absence of the stay, the Trustee and the Collateral Agent would have been permitted to foreclose on shares of CITGO Holding more than two years ago.  It would be unfair to allow the PDVSA Parties to use security meant to protect the judgment in favor of the Trustee and the Collateral Agent to resolve other obligations of PDVSA and the Republic, to the detriment of the Trustee and the Collateral Agent.  A stay under such circumstances does more than provide the "opportunity to pursue [an] appeal," Stay Order, ECF No. 241, at 2—it permits adjudicated judgment debtors to avoid their obligations.  As Judge Stark has stated, "it would be inequitable to permit the Republic—an adjudicated judgment debtor"—to "evade its obligations" and "undermine the authority of the U.S. judicial system."  *Crystallex Asset Proceeding*, 2021 WL 129803, at *5; *see also Crystallex Asset Proceeding*, 932 F.3d 126, 149 (3d Cir. 2019) ("Any outcome where Crystallex is not paid means that Venezuela has avoided its obligations."), *cert. denied*, 140 S. Ct. 2762 (2020).

**III.    Changed Circumstances Warrant Permitting the Trustee and the Collateral Agent to Exercise Their Contractual Right to Vote Shares of CITGO Holding**

The Trustee and the Collateral Agent also request that this Court modify the stay to permit the Trustee and the Collateral Agent to exercise their rights pursuant to Section 2.05(d) of the Pledge Agreement, which permits the Collateral Agent to instruct PDVH to vote the shares of CITGO Holding at the Trustee's direction.  If the Collateral Agent were permitted, at the direction of the Trustee, to vote the shares pursuant to the authorization in the Pledge Agreement, the Trustee and the Collateral Agent would have the ability to elect directors of CITGO Holding who would ensure that the PDVSA Parties comply with their obligations not to diminish the value of the Collateral by causing CITGO Holding and CITGO Petroleum to use their assets to settle claims with the Republic and the PDVSA Parties.

Permitting the Collateral Agent to exercise its contractual right to vote the shares of CITGO Holding would allow the Trustee and the Collateral Agent to protect their rights by means of this commonplace method of bondholder protection.  Granting the requested permission would also largely keep in place this Court's partial stay and would have no effect on PDVH's "opportunity to pursue its appeal"—the principal basis for the stay order.  Stay Order, ECF No. 241, at 2.  Modifying the partial stay in this discrete respect is reasonable and warranted.

The exercise of the Trustee and the Collateral Agent's contractual right to vote the shares of CITGO Holding and elect directors would be fully consistent with the OFAC sanctions regime.  Exercise of that right would be permitted by OFAC's Venezuela General License 7C, which authorizes "all transactions and all activities . . . where the only Government of Venezuela entities involved are PDVH, CITGO Holding, Inc., or any of their subsidiaries."  Ex. 21.  It would also be permitted by Venezuela General License 9G, which authorizes "all transactions

and activities . . . that are ordinarily incident and necessary to dealings in any debt . . . of [PDVSA] or any entity in which PDVSA owns, directly or indirectly, a 50 percent or greater interest." Ex. 22. Exercise of that right would be consistent with OFAC's statement in its FAQ 1124 that "OFAC will not take enforcement action against any person for taking steps to preserve the ability to enforce bondholder rights to the CITGO shares serving as collateral for the PDVSA 2020 8.5 percent bond." Ex. 23. In addition, the Trustee and the Collateral Agent would consult with OFAC before exercising their right to vote the shares of CITGO Holding.

### Conclusion

For the foregoing reasons, the Trustee and the Collateral Agent request that the Court condition the stay on the PDVSA Parties' committing to refrain from (i) using any assets of CITGO Holding or CITGO Petroleum to make payments to PDVSA's creditors and (ii) issuing any securities, loans, or indebtedness, or any derivatives of CITGO Holding or CITGO Petroleum, to PDVSA's creditors. Additionally, the Trustee and the Collateral Agent request that this Court further condition the stay on permitting the Trustee and the Collateral Agent to exercise their contractual rights pursuant to the Pledge Agreement to vote the shares of CITGO Holding.

Dated: New York, New York
       June 28, 2023


Respectfully submitted,

LATHAM & WATKINS LLP
Matthew S. Salerno
1271 Avenue of the Americas
New York, New York 10020-1300
Telephone: 212-906-1200
Facsimile: 212-751-4864
matthew.salerno@lw.com

*Attorneys for Defendants and Counterclaim Plaintiffs MUFG Union Bank, N.A. and GLAS Americas LLC, in their respective capacities as Trustee and Collateral Agent, under the Indenture dated October 27, 2016, and the Pledge and Security Agreement dated October 28, 2016, governing PDVSA's Senior Secured Notes due 2020*

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP

By:  *s/ Walter Rieman*
      Walter Rieman
      Jonathan Hurwitz
      Shane D. Avidan
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: 212-373-3000
Facsimile: 212-757-3990
wrieman@paulweiss.com
jhurwitz@paulweiss.com
savidan@paulweiss.com

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
Roberto J. Gonzalez (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006-1047
Telephone: 202-223-7300
rgonzalez@paulweiss.com

*Attorneys for Defendants and Counterclaim Plaintiffs MUFG Union Bank, N.A. and GLAS Americas LLC, in their respective capacities as Trustee and Collateral Agent, under the Indenture dated October 27, 2016, and the Pledge and Security Agreement dated October 28, 2016, governing PDVSA's Senior Secured Notes due 2020 (as to Federal and New York law issues only)*