# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| **CRYSTALLEX INTERNATIONAL CORPORATION,** | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| | : |
| v. | : **Misc. No. 17-151-LPS** |
| | : |
| **BOLIVARIAN REPUBLIC OF VENEZUELA,** | : |
| | : |
| | : |
| Defendant. | : |

---

## SIXTH REVISED PROPOSED ORDER (A) ESTABLISHING SALE AND BIDDING PROCEDURES, (B) APPROVING SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING PROPOSED SALE PROCEDURES ORDER, (C) AFFIRMING RETENTION OF EVERCORE AS INVESTMENT BANKER BY SPECIAL MASTER AND (D) REGARDING RELATED MATTERS

On January 14, 2021, the Court issued an opinion and corresponding order (D.I. 234, 235)

(the "**January Ruling**") following pleadings filed by Plaintiff Crystallex International

Corporation ("**Crystallex**"), Defendant Bolivarian Republic of Venezuela (the "**Republic**"),

Intervenor Petróleos de Venezuela, S.A. ("**PDVSA**"), Garnishee PDV Holding, Inc. ("**PDVH**"),

Intervenor CITGO Petroleum Corp. ("**CITGO Petroleum**," and together with the Republic,

PDVSA, and PDVH, the "**Venezuela Parties**"), non-parties Phillips Petroleum Company

Venezuela Limited and ConocoPhillips Petrozuata B.V. (together, "**ConocoPhillips**," and

collectively with Crystallex and the Venezuela Parties, the "**Sale Process Parties**") and the United

States, which set out "some contours of the sale procedures that [the Court] will follow in

conducting a sale of PDVSA's shares in PDVH," including appointment of a special master to

"oversee the day-to-day and detailed implementation of the sales procedures." (D.I. 234 at 34).

Consistent with the January Ruling, on April 13, 2021, the Court appointed Robert B. Pincus as a special master (the "**Special Master**") to assist the Court with the sale of PDVSA's shares in PDVH (D.I. No. 258). On May 27, 2021, the Court entered the *Order Regarding Special Master* (D.I. No. 277) (the "**May Order**") directing the Special Master to, among other things, devise a plan (the "**Proposed Sale Procedures Order**") for the sale of shares of PDVH (the "**PDVH Shares**") as necessary to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the sale by the Court and/or devise such other transaction as would satisfy such outstanding judgment(s) while maximizing the sale price of any assets to be sold (collectively, the "**Sale Transaction**").

On August 9, 2021, the Special Master filed the *Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* (D.I. 302) (the "**Initial Proposed Sale Procedures Order**") and the *Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order* (D.I. 303) (the "**Report**").

On August 25, 2021, objections to the Initial Proposed Sale Procedures Order were filed by Crystallex (D.I. 317), the Venezuela Parties (D.I. 318), and ConocoPhillips (D.I. 319) (collectively, the "**August 25 Objections**").

On September 10, 2021, the Special Master filed the *Response of Special Master to Objections to Proposed Sale Procedures Order* (D.I 341) (the "**Reply**") and the *Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of*

2

*Evercore as Investment Banker by Special Master and (D) Regarding Related Matters*, attached as Exhibit A.1 to the Reply (the "**First Revised Proposed Sale Procedures Order**").

On November 5, 2021, the Special Master filed the *Second Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* at (D.I. 391) (the "**Second Revised Proposed Sale Procedures Order**").

On November 8, 2021, the Court held a hearing to consider the relief contemplated by the Proposed Sale Procedures Order and heard oral arguments with respect thereto (the "**Hearing**").

On November 24, 2021, the Special Master filed the *Third Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* at (D.I. 411-1) (the "**Third Revised Proposed Sale Procedures Order**").

On March 2, 2022, the Court issued an *Opinion* [D.I. 443] (the "**March 2022 Opinion**") in which the Court, among other things, (i) ruled on certain Objections (as defined herein) to the Proposed Sale Procedures Order and (ii) directed the Special Master to submit a revised Proposed Sale Procedures Order consistent with the March 2022 Opinion.

On March 31, 2022, consistent with the March 2022 Opinion, the Special Master filed the *Fourth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* at (D.I. 451-1 Ex. A) (the "**Fourth Revised Proposed Sale Procedures Order**").

3

On April 11, 2022, objections to the Fourth Revised Proposed Sale Procedures Order were filed by ConocoPhillips (D.I. 455), Crystallex (D.I. 456), and the Venezuela Parties (D.I. 457), (collectively, the "**April 11 Objections**"). The April 11 Objections filed by ConocoPhillips and Crystallex were resolved. (*See* D.I. 458).

On July 27, 2022, the Court issued a *Memorandum Order* [D.I. 469] (the "**July 2022 Order**") in which the Court, among other things, (i) ruled on the April 11 Objections and (ii) directed the Special Master to submit a revised Proposed Sale Procedures Order consistent with the July 2022 Order.

On August 5, 2022, consistent with the July 2022 Order, the Special Master filed the *Fifth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* at (D.I. 472-1 Ex. A) (the "**Fifth Revised Proposed Sale Procedures Order**").

On September 29, 2022, the Court issued an *Oral Order* [D.I. 479] (the "**September 2022 Order**") in which the Court, among other things, directed the Special Master to submit a revised Proposed Sale Procedure Order reflecting the passage of time since the Fifth Revised Proposed Sale Procedures Order.

On October 4, 2022, consistent with the September 2022 Order, the Special Master filed the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* at (D.I. [●]) (the "**Sixth Revised Proposed Sale Procedures Order**").

4

The Court, having reviewed and considered the Initial Proposed Sale Procedures Order, the Reply, the First Revised Proposed Sale Procedures Order, the Second Revised Proposed Sale Procedures Order, the Third Revised Proposed Sale Procedures Order, the Fourth Revised Proposed Sale Procedures Order, the Fifth Revised Proposed Sale Procedures Order, the Sixth Revised Proposed Sale Procedures Order, the Report, and the proposed sale procedures contemplated thereby, and having reviewed the August 25 Objections, the April 11 Objections and all other objections filed with the Court (collectively, with the August 25 Objections and the April 11 Objections, the "**Objections**"); and the Court having held the Hearing to consider the relief contemplated by the Proposed Sale Procedures Order; and upon the record of the Hearing; and the Court having issued the March 2022 Opinion; and the Court having issued the July 2022 Order; and the Court having issued the September 2022 Order; and the Court having determined that the legal and factual bases set forth in this Order and the Report establish just cause for the relief contemplated herein; and upon all of the proceedings had before the Court in the above captioned case; and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY FOUND AND DETERMINED THAT:[1]

A.     **Jurisdiction and Venue**.  The Court has jurisdiction to grant the relief requested herein pursuant to 28 U.S.C. § 1605(a)(6).  Venue is proper before the Court pursuant to 28 U.S.C. § 1963.

B.     **Statutory and Legal Predicates**.  The statutory and legal predicates for the relief granted herein include (a) Rule 69(a) of the Federal Rules of Civil Procedure (the "**Federal Rules**"), (b) Section 324 of Title 8 of the Delaware Code (the "**Delaware General Corporation**

---

[1] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

5

**Law**"), (c) Rule 53 of the Federal Rules ("**Rule 53**"), (d) the Court's general equitable powers to enforce its orders and judgments (*See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962)) and (e) the All Writs Act (*See United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.").

        C.    **Sale Procedures**. As set out in his Report delivered in accordance with Rule 53 contemporaneously with this Order, the Special Master has articulated good and sufficient reasons for the Court to approve the procedures set forth herein (the "**Sale Procedures**"), including the bidding procedures and accompanying notices, substantially in the form attached hereto as **Exhibit 1** (the "**Bidding Procedures**").[2] For the reasons outlined in the Report, the Sale Procedures, including the Bidding Procedures, are (a) fair, (b) reasonable, (c) appropriate, (d) designed to promote a competitive and robust bidding process to generate the greatest level of interest in the PDVH Shares and result in the highest offer in connection with any Sale Transaction at least sufficient to satisfy the Attached Judgments (as defined below), and (e) reasonably calculated to balance the many competing interests in a dynamic and internationally sensitive set of circumstances. The Bidding Procedures are substantively and procedurally fair to all parties and potential bidders and they afford notice and a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the PDVH Shares. The

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures (as defined herein).

6

procedures and requirements set forth in the Bidding Procedures, including those associated with submitting deposits and Qualified Bids, are fair, reasonable, and appropriate.

D. **Timeline and Marketing Process**. Beginning on the Launch Date (as defined below), the Special Master, directly or through the assistance of his Advisors (as defined below), shall market the PDVH Shares pursuant to the procedures set forth in the Bidding Procedures (the "**Marketing Process**"). The Special Master has articulated good and sufficient reasons for the Marketing Process and the timeline contemplated by the Bidding Procedures, including the procedures for modifying deadlines or postponing implementation thereof. The Marketing Process and the timeline for implementation of the Sale Procedures is (a) fair, open, comprehensive, and a public process, (b) adequate, (c) reasonable, (d) appropriate, (e) consistent with applicable law, (f) sufficient to promote a competitive and robust bidding and auction process to generate competitive interest in the PDVH Shares, (g) reasonably calculated to maximize value and result in the highest offer in connection with any Sale Transaction at least sufficient to satisfy the Attached Judgments, and (h) reasonably calculated to balance the many competing interests in a dynamic and internationally sensitive set of circumstances.

E. **Notice Procedures**. After the Launch Date, in addition to conducting the Marketing Process, the Special Master shall cause a notice, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"), to be published (i) following the launch of the sale process, and (ii) prior to any Auction or designation of any Stalking Horse Bidder as the Successful Bidder, in *The News Journal*, the *Delaware State News*, the *Wall Street Journal* (national edition), the *USA Today* (national edition), and, if practicable, a regional or local newspaper published or circulated in Venezuela selected by the Special Master in consultation with the Sale Process Parties, in each case for two successive weeks. A copy of this Order shall be served by e-mail on counsel to the

7

Venezuela Parties.[3] If any Sale Process Party believes that further service of this order, the Sale Notice or any additional publication or notice is necessary or appropriate, such Sale Process Party shall, within 10 calendar days of entry of this Order, provide the Special Master with a specific list of specific actions or service that the Sale Process Party believes should be undertaken, subject to order of the Court or with the consent of the Special Master. The foregoing notice procedures (the "**Notice Procedures**") are appropriate and reasonably calculated to provide interested parties and Potential Bidders with timely and proper notice of the Sale Procedures and any Sale Transaction.

F. **Sufficient Notice**. The Marketing Process and Notice Procedures are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sale Procedures, the opportunity to bid pursuant to the Bidding Procedures, the Auction, the Sale Hearing, and any proposed Sale Transaction, and any and all objection deadlines related thereto, and no other or further notice shall be required for this Order and any Sale Transaction, except as expressly required herein. The Sale Process Parties have had an adequate opportunity to review and provide input on the Sale Notice and Notice Procedures.

G. **Public Sale**. The process contemplated by the Sale Procedures, including the Marketing Process, Bidding Procedures, and Notice Procedures, shall constitute a "public sale to the highest bidder" within the meaning of Section 324 of the Delaware General Corporation Law.

H. **Designation of Stalking Horse Bid**. The Special Master has articulated good and sufficient reasons for the Court to authorize the Special Master to seek authority from

---

[3] The Court takes notice and accepts that the Venezuela Parties have voluntarily waived any requirement under the Delaware General Corporation Law or otherwise regarding publication of notice in Venezuela. (*See* D.I. 318 at ¶ 24) The Special Master and the other Sale Process Parties are entitled to rely on this waiver.

8

this Court to designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement with (or without) the Stalking Horse Bid Protections (as defined below), at the Special Master's sole discretion and in accordance with the Bidding Procedures and this Order, if he determines that it would be in furtherance of a value maximizing Sale Transaction. The Stalking Horse Bid Protections are (a) fair, (b) appropriate, (c) reasonably calculated to incentivize potential bidders to participate in a competitive bidding process, (d) designed to encourage robust bidding by compensating a bidder whose definitive agreement in connection with a Sale Transaction is terminated for the risks and costs incurred in signing and announcing an agreement for a transaction that may not ultimately be completed, and (e) reasonably calculated so as to not unreasonably deter Qualified Bidders from submitting a Qualified Bid.

I. **Crystallex's Judgment**. Subject to paragraphs 31 and 32 of this Order, Crystallex's alleged outstanding judgment is $969,999,752.93 as of August 9, 2021 ("**Crystallex's Judgment**").[4] The amount of Crystallex's Judgment for the purpose of any satisfaction of payment shall be finalized pursuant to the procedures set forth in this Order and any further order of the Court.

J. **ConocoPhillips' Judgment**. Subject to paragraphs 31 and 32 of this Order, ConocoPhillips' alleged outstanding judgment against PDVSA is $1,289,365,299.91 as of August 9, 2021 ("**ConocoPhillips' Judgment**"). To the extent that ConocoPhillips' Judgment becomes an Attached Judgment (as defined below), the amount of ConocoPhillips' Judgment for the purpose of any satisfaction of payment shall be finalized pursuant to the procedures set forth in this Order and any further order of the Court.

---

[4] In paragraph 50 of the Report, the Special Master identified what appears to be a clerical error in judgment entered by the Clerk for the United States District Court for the District of Columbia. The figure set forth here is the amount of Crystallex's Judgment if the clerical error is rectified or if the Court otherwise determines that such rectification is unnecessary.

9

        K.      **Retention of Advisors.**  The Special Master has articulated good and sufficient reasons and has retained, as approved by the May Order and as affirmed by this Order, Weil, Gotshal & Manges LLP, Potter Anderson & Corroon LLP, Jenner & Block LLP, Evercore Group L.L.C. ("**Evercore**"), and any additional advisors engaged by the Special Master pursuant to the May Order (collectively, the "**Advisors**"). The terms of the proposed Engagement Letter between the Special Master and Evercore, the form of which is annexed to this Order as **Exhibit 3** (the **"Proposed Evercore Engagement Letter"**), are (a) fair, (b) reasonable, and (c) appropriate and are hereby approved in all respects. All obligations owed to Evercore set forth in the Proposed Evercore Engagement Letter, including the fees and reimbursement of reasonable expenses, are approved, and Evercore shall be compensated and reimbursed in accordance with the terms of the Proposed Evercore Engagement Letter, in each case subject to the procedures set forth herein and any other applicable orders of the Court. For avoidance of doubt, all obligations owed to Evercore pursuant to the Proposed Evercore Engagement Letter shall constitute and be included within the definition of "Transaction Expenses" (as defined below); *provided* that, as set forth below, any Sale Fee other than the Upfront Amount (each as defined in the Proposed Evercore Engagement Letter) shall be paid by the purchaser directly or from any proceeds from a Sale Transaction.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

        1.      All Objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied on the merits with prejudice.

        2.      Following the Launch Date, a hearing to consider approval of any Sale Transaction resulting from implementation of the Sale Procedures shall be scheduled for approximately 270 calendar days after the Launch Date and noticed on the docket of the Crystallex

Case (the "**Sale Hearing**"), and may be adjourned or rescheduled by the Court upon notice by the Special Master. At the Sale Hearing, the Court will consider approval of the Successful Bid(s) (as defined below) and Back-up Bid(s), if applicable. Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the applicable Sale Transaction(s) and there will be no further bidding at such hearing.

      3.      Within the period of six (6) months after the date of this Order (the "**Six-Month Window**"), the Special Master and his Advisors shall solicit and attempt to gain clarity or guidance from the United States Department of the Treasury's Office of Foreign Assets Control ("**OFAC**") of its support for (or non-opposition to), the launch of the Marketing Process by the Special Master, the viability of the Marketing Process, and any additional feedback or guidance that the Special Master believes will more likely result in a value-maximizing Sale Transaction. During the Six-Month Window, but by no later than the expiration thereof or May 2, 2023 (whichever comes first), the Special Master shall make a recommendation (such recommendation, the "**Supplemental Report**") to the Court as to whether (and when) the Court should direct the Special Master to begin to make preparations for launch of the Marketing Process (the date on which preparation for the Marketing Process is launched, the "**Preparation Launch Date**") and the ultimate launch of the Marketing Process (the date on which the Marketing Process is launched, the "**Launch Date**"). The Supplemental Report shall, in the Special Master's sole discretion, address significant factors and considerations that the Special Master and his Advisors believe relevant to the Court's decision as to when Preparation Launch Date and the Launch Date should occur. The Sales Process Parties shall have the opportunity to object to the Special Master's recommendations in the Supplemental Report regarding the Preparation Launch Date and the Launch Date ("**Launch Date Objections**"), which Launch Date Objections shall be filed with the

11

Court no later than 15 business days after the Supplemental Report is filed (the "**Launch Date Objection Deadline**"). Any response to a Launch Date Objection from the Special Master or a Sale Process Party shall be filed no later than 10 business days after the Launch Date Objection Deadline. The Court shall consider the Supplemental Report, all Launch Date Objections thereto, and any responses, after which the Court shall make a determination regarding when to trigger the Preparation Launch Date and subsequent Launch Date with or without a license from OFAC.

4.     Prior to the Preparation Launch Date, unless otherwise ordered by the Court, the Special Master shall not prepare in a material way for the Marketing Process or take material steps toward implementation of the Sale Procedures; *provided* that, notwithstanding the foregoing, the Special Master shall be authorized to (i) proactively engage with representatives from the Executive Branch (as defined below) and to take all steps or actions reasonably in furtherance of the issuance of OFAC guidance and/or authorization, including, but not limited to, making market inquiries into potential bidders with respect to the impact of OFAC's position (or their lack thereof) on their willingness to participate in a sale process that is conditioned on OFAC's final approval of any sale transaction; *provided* that the Sale Process Parties and their advisors shall be consulted as to the identity of, and the scope of inquiry to, any such potential bidders, (ii) proactively engage with the Sale Process Parties and their advisors, (iii) prepare for and participate in any discussions with the Court and/or any hearing held by the Court, including the Initial Status Conference (as defined below), (iv) participate in any settlement discussions with parties regarding a global claims waterfall or related issues if so directed by the Court, and (v) direct his Advisors to assist him in all actions contemplated in (i) to (iv) of this paragraph 4 and in furtherance of all actions authorized or contemplated by this Order. On and after the Preparation Launch Date, the Special Master and the Special Master's Advisors are hereby directed to prepare for the Marketing Process and take

12

all such preliminary actions in connection therewith, including conducting or performing appropriate due diligence and related analysis. Without limiting the foregoing, in preparation for the Marketing Process following the Preparation Launch Date, the Special Master shall prepare a customary "teaser" and a "confidential information memorandum" ("**CIM**") to be shared with Potential Bidders and such other materials that the Special Master reasonably determines to be necessary or appropriate. Subject to the Protective Order, the Special Master shall share a draft of the "teaser" and CIM with counsel to the Sale Process Parties no later than seven (7) calendar days prior to launch of the Marketing Process and shall consult in good faith with the Sale Process Parties regarding the same. Further, the Special Master shall (a) no later than 10 business days after the Preparation Launch Date, meet and confer with PDVSA regarding any minority shareholder rights or other protections that could facilitate a sale of minority shares and (b) as soon as reasonably practicable after any Potential Bidder submits a Non-Binding Indication of Interest that contemplates the provision of minority shareholder rights and protections. *See* Bidding Procedures at item (iii) on page 4 (requesting Potential Bidders to identify "any minority shareholder rights, protections, or other desired terms in connection with any bid for less than 100% of the PDVH Shares").

     5.   **Status Conferences**. Unless otherwise ordered by the Court, the Court shall hold a status conference approximately every thirty days commencing after the Preparation Launch Date for the Special Master to provide an update to the Court and other interested parties regarding implementation of the Sale Procedures Order; *provided* that subject to the Court's availability, the Special Master or the Sale Process Parties may request that such status conferences occur more or less frequently or on an as-needed basis; *provided further* that nothing shall impede the Special Master's right to meet *in camera* or share information with the Court to provide updates

13

on the sale process. The initial status conference shall be held approximately 30 days after the Preparation Launch Date at a date and time to be set by the Court by separate order (the "**Initial Status Conference**"). At the Initial Status Conference, the Special Master shall provide the Court and interested parties with an update on his progress and the Special Master's current estimate, if any, regarding launch of the Marketing Process. For the avoidance of doubt, the Special Master shall not launch the Marketing Process until otherwise ordered by the Court.

6.     The Special Master shall deliver a copy of this Order to the United States Attorney for the District of Delaware ("**USAO**"). The Court hereby requests that, upon receipt, the USAO take reasonable efforts to ensure that copies of the Order are received by the pertinent offices within the Executive Branch of the United States Government, including the United States Department of Justice, Department of State, and Department of the Treasury (including OFAC) (collectively, the "**Executive Branch**"). Consistent with the Court's prior orders, the Court invites input from the Executive Branch regarding implementation of this Order and the Bidding Procedures at any time and further requests that the representatives from the USAO voluntarily provide an update regarding the Executive Branch's decision-making process related to the Marketing Process and consummation of a Sale Transaction, including, but not limited to, whether, in a sale process overseen and directed by this Court in connection with the enforcement of the judgment(s) of this Court, (i) the Special Master, acting as an arm of this Court, requires an OFAC specific license to launch and conduct the Marketing Process; (ii) potential bidders participating in any or all aspect of the Marketing Process require an OFAC specific license; or (iii) an order of this Court approving the sale, cancellation and reissue, or transfer of property subject of its prior order, requires a specific OFAC license. If the Special Master determines that it is necessary as a precondition to launching the Marketing Process he may request that the Court issue an order for

14

the Executive Branch to show (i) cause as to why the launch and participation of prospective

bidders in the Marketing Process is not authorized and (ii) the facts and circumstances that would

be necessary for OFAC to provide approval for any transfer of the PDVH Shares pursuant to the

process contemplated by these Sale Procedures.

## The Bidding Procedures

7.    The Sale Procedures, including the Bidding Procedures, substantially in the

form attached hereto as **Exhibit 1**, are hereby approved. The Bidding Procedures are incorporated

herein by reference, and shall govern the bids and proceedings related to any sale of PDVH Shares

in connection with a Sale Transaction. The failure to specifically include or reference any

particular provision of the Bidding Procedures in this Order shall not diminish or otherwise impair

the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are

approved in their entirety, as if fully set forth in this Order.

8.    The Special Master is authorized and directed to take all reasonable actions

necessary or desirable to implement this Order, including the Sale Procedures and the Bidding

Procedures.

9.    Subject to the Bidding Procedures and this Order, the Special Master shall

be authorized, as he may reasonably determine is necessary or desirable, to carry out the Bidding

Procedures, including, without limitation, to: (a) designate a Stalking Horse Bid, if any, pursuant

to the Bidding Procedures; (b) determine which bidders are Qualified Bidders; (c) determine which

bids are Qualified Bids; (d) determine which Qualified Bid is the highest purchase price received

prior to the Auction; (e) determine which Qualified Bid is the Successful Bid; (f) reject any bid

that is (i) inadequate or insufficient, (ii) not a Qualified Bid or otherwise not in conformity with

the requirements of the Bidding Procedures, or (iii) not a bid that provides for a value maximizing

15

Sale Transaction; (g) adjourn the Auction and/or the Sale Hearing by filing a notice on the Court's docket without need for further notice; and (h) modify the Bidding Procedures upon notice to and consultation with the Sale Process Parties in a manner consistent with his duties and applicable law.

10. The Special Master shall be authorized to, in his reasonable judgment, upon notice to and consultation with the Sale Process Parties, modify the Bidding Procedures, including (a) waive terms and conditions with respect to any Potential Bidder, (b) extend the deadlines set forth in the Bidding Procedures, (c) announce at the Auction modified or additional procedures for conducting the Auction, and (d) provide reasonable accommodations to a Stalking Horse Bidder with respect to such terms, conditions, and deadlines set forth in the Bidding Procedures to promote further bids by bidders, in each case, to the extent not materially inconsistent with the Bidding Procedures and this Order; *provided* that a Sale Process Party may, within five (5) calendar days, file an objection to any modification, upon which time the Court shall set a briefing schedule for any reply and a hearing, if applicable, to adjudicate such objection.

11. All Potential Bidders submitting bids determined by the Special Master to be "Qualified Bids" in accordance with the Bidding Procedures are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Bidding Procedures, the Auction, and any Sale Transaction. Except as provided in an executed definitive Stalking Horse Agreement, and then subject to the terms thereof, nothing in this Order or the Bidding Procedures shall obligate the Special Master to pursue any transaction with a Qualified Bidder.

12. The Special Master may, in the exercise of his judgment, identify the highest Qualified Bid(s) that the Special Master reasonably believes to be capable of being timely consummated after taking into account the factors set forth in the Bidding Procedures as the

successful bid(s) (a "**Successful Bid**" and, the bidder(s) submitting such bid(s), a "**Successful Bidder**"); *provided*, that if the Special Master receives multiple competing Qualified Bids that would satisfy the Attached Judgments in full and which the Special Master reasonably believes to be capable of being timely consummated as set forth above, then the Special Master must designate such Qualified Bid that (i) satisfies the Attached Judgments and (ii) provides for the sale of the fewest PDVH Shares, unless PDVSA consents to the Special Master designating the Qualified Bid for more of the PDVH Shares.  As soon as reasonably practicable following selection of a Successful Bid, the Special Master shall file with the Court a notice containing information about the Successful Bidder with the proposed definitive agreement attached thereto (without exhibits or schedules that the Special Master elects to omit) (the "**Notice of Successful Bidder**"). Notwithstanding anything to the contrary in this Order (including the Bidding Procedures), the Special Master shall not designate a Qualified Bid as the Successful Bid if it provides for the sale of more shares than are necessary to satisfy the Attached Judgments; *provided* that if PDVSA informs the Special Master that they wish to sell more of the PDVSA Shares, then the Special Master may consider that view.

13.     Upon the selection of a Successful Bidder and as soon as reasonably practicable after the Special Master files the Notice of Successful Bidder (and in no event later than seven (7) days prior to the Sale Objection Deadline), the Special Master shall file a report under seal (and serve a copy to the Sale Process Parties) that provides a summary of the Bids, including their cash and non-cash consideration components.  Further, if, pursuant to the Bidding Procedures, the Special Master, in the exercise of his judgment, does not select a Successful Bid following the Bid Deadline, the Special Master shall file a report with the Court under seal (and serve a copy to the Sale Process Parties) explaining the basis and rationale for not selecting any of

17

the Bids (if any) as a Successful Bid. In the event the Special Master fails to select a Successful Bid, the Sales Process Parties shall have the right to move the Court to select a Successful Bid from among those presented to the Special Master. In connection with any of the foregoing reports filed under seal, the Special Master shall disclose to the Court (with a copy to the Sale Process Parties) a copy of any Bid(s) received that were not selected by the Special Master as a Successful Bid. Any unsealed version of such reports or Bids filed on the Court's docket shall retain redactions to the names of any bidders or other identifying information and any other redactions to be determined by the Special Master.

14.     For the avoidance of doubt, subject to approval of any Sale Transaction by the Court, the Special Master shall have authority to select a Qualified Bid as the Successful Bid that provides for a transfer of PDVH Shares free and clear of any claims, encumbrances, and liabilities, which, for the avoidance of doubt, upon entry of an order by this Court approving any Sale Transaction and upon the consummation of any such Sale Transaction, may constitute a full and complete general assignment, conveyance, and transfer of all of PDVSA's or any other person's right, title, and interest in the PDVH Shares and may provide for the valid transfer under applicable law of good and marketable title to the PDVH Shares to the Successful Bidder free and clear of all claims, encumbrances, and liabilities; *provided* that such transfer shall be without prejudice to any such claims, encumbrances, and liabilities attaching to the proceeds of any Sale Transaction with the same nature, validity, priority, extent, perfection, and force and effect that such claims, encumbrances, and liabilities encumbered the PDVH Shares immediately prior to the consummation of any Sale Transaction.

15.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved, and no other or further notice of the Sale Transaction, the Auction, the Sale Hearing or

18

the Sale Objection Deadline shall be required if the Special Master publishes such notice in accordance with the Notice Procedures. The Sale Notice and publication thereof complies in all respects with and satisfies the requirements of Section 324 of the Delaware General Corporation Law. The Special Master may file on Court's docket, publish, or otherwise distribute any supplemental notice that he, in his sole discretion, deems appropriate or desirable; *provided* that no such supplemental notice shall be required. All expenses and fees related to implementation of the Marketing Process and Notice Procedures shall constitute "Transaction Expenses" and shall be payable by the Sale Process Parties and holders of any Additional Judgments (as defined below) (the "**Additional Judgment Creditors**"). The Special Master may request that the Sale Process Parties and any Additional Judgment Creditors, collectively, reimburse the Special Master in advance in an amount equal to the amount of any quote received in connection with publication required by the Notice Procedures and, upon any such request, the Sale Process Parties shall each promptly pay their respective share; *provided* that, in the event any Additional Judgment Creditor becomes obligated to pay a portion of the Transaction Expenses pursuant to this Order, the Special Master shall meet and confer with the Sale Process Parties to determine such Additional Judgment Creditor's share of the reimbursement obligation.

## Objections to Sale Transaction

16. The deadline to object to any Sale Transaction to be approved at the Sale Hearing will be **4:00 p.m. (prevailing eastern time) on the fourteenth day after the Special Master files the Notice of Successful Bid** (the "**Sale Objection Deadline**," and any such objection, a "**Sale Objection**"); *provided* that, the Special Master may extend such deadline, as the Special Master deems appropriate in the exercise of his reasonable judgment. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court

19

at the Sale Hearing. The Notice of Successful Bid shall state the specific date and time of the Sale Objection Deadline.

17. The Successful Bidder(s) shall appear at the Sale Hearing and be prepared, if necessary, to have a representative(s) testify in support of the Successful Bid and the Successful Bidder's ability to close the Sale Transaction contemplated therein in a timely manner.

18. Any party who fails to timely file with the Court and serve a Sale Objection (including any Sale Process Party) on the Special Master may be forever barred from asserting any Sale Objection to the applicable sale, or to the consummation of any Sale Transaction.

19. For the avoidance of doubt, the Sale Process Parties shall have the opportunity to object to the Special Master's recommendation as to which bid is best and whether the Court should accept or reject such bid. Upon hearing all Sale Objections, the Court will make the final decision as to whether to accept or reject any bid. Nothing in this Order shall affect the rights of any party to appeal such a decision by the Court.

## Designation of Stalking Horse Bidder

20. **Selection of Stalking Horse Bidder**. The Special Master is authorized to, in the exercise of his judgment and at his sole discretion, designate a Stalking Horse Bidder for the PDVH Shares and following such designation, subject to approval by the Court, enter into a Stalking Horse Agreement for the sale of any such PDVH Shares, in accordance with the terms of this Order and the Bidding Procedures.

21. **Stalking Horse Bid Protections**. Subject to the Bidding Procedures and approval by this Court, the Special Master may: (a) establish an initial overbid minimum and subsequent bidding increment requirements not to exceed 5.00% of the Stalking Horse Bid Implied Value, subject to adjustment for any Bids for a lesser percentage of the PDVH Shares than the Stalking Horse Bid (the "**Initial Minimum Overbid Amount**"); (b) offer any Stalking Horse

20

Bidder a break-up fee in an amount agreed to by the Special Master in consultation with the Sale Process Parties, but not to exceed 3.00% of the Stalking Horse Bid Implied Value (a "**Termination Payment**") payable either (i) in the event that an overbid is consummated, out of the proceeds from the consummation of such overbid or (ii) by PDVH, CITGO Holding, Inc. ("**CITGO Holding,**" and collectively with CITGO Petroleum, "**CITGO**") and CITGO Petroleum in circumstances where any of PDVH, CITGO Holding, and/or CITGO Petroleum is materially responsible for the events that give rise to termination of the Stalking Horse Agreement; (c) provide that, if the Stalking Horse Bidder bids on PDVH Shares at the Auction, the Stalking Horse Bidder will be entitled to a credit up to the amount of its Termination Payment against the increased purchase price for the PDVH Shares; (d) provide for the reimbursement of reasonable and documented fees and expenses actually incurred by the Stalking Horse Bidder by PDVH, CITGO Holding and CITGO Petroleum solely under certain circumstances in which the transactions contemplated by the Stalking Horse Agreement are not consummated; (e) provide that any sale order shall seek to transfer the PDVH Shares free and clear of any claims upon them; and (f) in consultation with the Sale Process Parties, provide other appropriate and customary protections to a Stalking Horse Bidder (the Termination Payment and the other bid protections described in this paragraph collectively are referred to as the "**Stalking Horse Bid Protections**"). The Special Master is authorized to offer the Stalking Horse Bid Protections at his sole discretion if he determines that such Stalking Horse Bid Protections would be in furtherance of a value maximizing transaction; *provided* that, (a) absent further order of the Court, the Special Master shall not enter into a Stalking Horse Agreement and (b) any Stalking Horse Bid Protections offered shall not be effective until entry by the Court of an order approving such Stalking Horse Bid Protections and subsequent execution by the Special Master of the Stalking Horse Agreement.

21

22. To the extent the Special Master designates a Stalking Horse Bidder with respect to any Sale Transaction, the Special Master shall, as soon as reasonably practicable following the execution of a Stalking Horse Agreement, file with the Court a notice containing information about the Stalking Horse Bidder with the proposed Stalking Horse Agreement attached thereto (without exhibits or schedules that the Special Master elects to omit) (the "**Notice of Stalking Horse Bidder**"). Any Stalking Horse Bid Protections shall be described in reasonable detail, including the amount and calculation of such Stalking Horse Bid Protections and the amount of the Stalking Horse Bid Implied Value, in the Notice of Stalking Horse Bidder. Contemporaneously with the filing of the Notice of Stalking Horse Bidder, the Special Master shall file a proposed order approving the Special Master's entry into the Stalking Horse Agreement.

23. Objections to the Special Master's entry into a Stalking Horse Agreement, including any provision of Stalking Horse Bid Protections in connection therewith (each a "**Stalking Horse Objection**"), must be in writing, state with particularity the basis and nature of any objection, and be filed with the Court no later than 10 calendar days after the filing of the Notice of Stalking Horse Bidder (the "**Stalking Horse Objection Deadline**"), upon which time the Court shall set a briefing schedule for any reply and a hearing, if applicable, to adjudicate such objection.

24. If a timely Stalking Horse Objection is filed and served with respect to a Stalking Horse Agreement, the proposed Stalking Horse Bid Protections provided for under that agreement shall not be approved until the objection is resolved by agreement of the objecting party or by entry of an order by the Court resolving such objection. If no timely Stalking Horse Objection is filed and served with respect to a particular Stalking Horse Agreement, then the Court

22

may enter an Order approving the Stalking Horse Bid Protections provided for under such agreement upon the expiration of the Stalking Horse Objection Deadline.

25. For all purposes under the Bidding Procedures, any Stalking Horse Bidder approved as such pursuant to this Order shall be considered a Qualified Bidder, and the Stalking Horse Bid shall be considered a Qualified Bid. In the event that the Stalking Horse Bid is the only Qualified Bid received by the Special Master by the Bid Deadline, the Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the assets set forth in the Stalking Horse Agreement.

## Credit Bids

26. Crystallex, and any other holder of an Attached Judgment, may submit a "credit bid" pursuant to the Bidding Procedures (each, a "**Credit Bid**"); *provided* that such Credit Bid shall comply with the Bidding Procedures, including the requirement that any credit bid include a cash component or other funding mechanism sufficient to pay (or otherwise contemplate payment in full in cash in a manner acceptable to the Special Master; *provided*, that, with respect to any reimbursement of Transaction Expenses owed to a Sale Process Party pursuant to the May Order, such Sale Process Party's consent shall be required if such Sale Process Party is not to be reimbursed in cash) (a) any applicable Termination Payment, (b) all Transaction Expenses, and (c) all obligations secured by senior liens on the PDVH Shares (if any). If any Credit Bidder withdraws its Credit Bid or in any other way fails to consummate its Credit Bid in a manner that would cause any other Bidder to lose its Good Faith Deposit, then the lesser of ten percent (10%) of the portion of the judgment that was Credit Bid or $50 million of the judgment shall be forever waived and the Court shall enter an order reducing the judgment in accordance therewith, provided however that no such forfeiture shall occur if the reason for the withdrawal or failure to consummate the Credit Bid is a settlement or other satisfaction of the judgment. For the avoidance

23

of doubt, a Credit Bid must be submitted by the deadlines set forth in the Bidding Procedures applicable to all other Bids.

27.     Except as otherwise agreed by the Special Master, in connection with the submission of any Credit Bid (including a Credit Bid by Crystallex), any party seeking to submit a Credit Bid shall cause two of its representatives to each submit a sworn statement and affidavit that unequivocally and unconditionally states (a) the then outstanding and unpaid amount of such party's judgment as of the date the Credit Bid is submitted and (b) that such representative submits to the personal jurisdiction of this Court in connection with making such statement and affidavit. Except as otherwise agreed by the Special Master, in connection with the consummation of any Credit Bid that becomes the Successful Bid, the same two representatives shall each submit a supplemental statement and affidavit stating that all payments or consideration received by the person or entity in connection with or in respect of the applicable judgment that served as the basis for the Credit Bid have been disclosed to the Court and the Special Master.

28.     Any person or entity that submits a Credit Bid shall promptly (but in no event later than within 2 business days) notify the Special Master if such person or entity receives (or otherwise becomes entitled to receive) any payment or consideration in connection with or in respect of the judgment that served as the basis for the Credit Bid.

**Attached Judgments**

29.     **Satisfaction of All Attached Judgments.**  Nothing in this Order prohibits or in any way impairs the rights of the Venezuela Parties to satisfy Crystallex's Judgment (or any other Attached Judgment) in full prior to consummation of a Sale Transaction. If at any time all Attached Judgments become satisfied in full (or otherwise are consensually resolved), then the Special Master shall cease implementation of the Sale Procedures and seek further direction from the Court. The Sale Process Parties and any Additional Judgment Creditors shall remain liable for

24

any Transaction Expenses incurred through the date that is two business days after the Special Master receives notice of satisfaction of all Attached Judgments. In the event that the Special Master selects a Successful Bid, the value of which implies satisfaction of less than all Attached Judgments, then any holder of an Attached Judgment that receives no proceeds in satisfaction of any part of their Attached Judgment shall be excused from contributing to the payment of any Transaction Expenses incurred after the date thereof. The Sale Process Parties shall be reimbursed for any paid Transaction Expenses as set forth in the May Order; *provided* that if the process is terminated due to satisfaction or resolution of all Attached Judgments by the Venezuela Parties, then, solely in such circumstance (and unless otherwise agreed to by Crystallex and ConocoPhillips), the Venezuela Parties shall pay and reimburse Crystallex and ConocoPhillips for the full amount of all Transaction Expenses paid by Crystallex and ConocoPhillips.

30. **Additional Judgment Deadline**. By no later than ten calendar days after the Launch Date (the "**Additional Judgment Deadline**"), the Court will decide in accordance with applicable law which, if any, additional judgments (the "**Additional Judgments**," and with the Crystallex Judgment, the "**Attached Judgments**") are to be considered by the Special Master for purposes of the Sale Transaction. Except as otherwise ordered by the Court, following the Additional Judgment Deadline, the Special Master shall implement the Sale Procedures, based on the Attached Judgments as of the Additional Judgment Deadline. For purposes of implementing this Order, the Special Master shall only consider judgments that are determined to be Attached Judgments by the Court by the Additional Judgment Deadline. For the avoidance of doubt, unless otherwise ordered by the Court, (i) the Additional Judgment Deadline does not impair or in any way limit any person's or entity's right to seek attachment to any proceeds following consummation of the Sale Transaction and (ii) no PDVH Shares shall be sold, nor proceeds from

25

any sale thereof distributed, to satisfy any judgments that are not Attached Judgments. If ConocoPhillips' Judgment is not made an Attached Judgment following the Additional Judgment Deadline or the Launch Date, whichever is earlier, ConocoPhillips shall be excused from contributing to the payment of any Transaction Expenses incurred thereafter, *provided* that should ConocoPhillips decline to contribute to the funding of the sale process it shall no longer be treated as a Sale Process Party for purposes of this Order. ConocoPhillips' excuse from further funding obligations shall not affect its entitlement to reimbursement for all payments previously advanced, as provided in the May Order.

31.     **Final Calculation of Attached Judgments**.   Thirty days prior to the designation of a Stalking Horse Bidder, the Special Master will file under seal a notice or recommendation with the Court seeking final determination of any Attached Judgment, including the rate at which interest continues to accrue and serve such notice or recommendation on the holder of the Attached Judgment and the Sale Process Parties. No later than seven calendar days after service, the holder of the Attached Judgment and the Sale Process Parties shall file any objection to the Special Master's notice or recommendation. If no objection is filed, the amount set forth in the Special Master's notice or recommendation shall become the amount of the Attached Judgment for purposes of the Sale Procedures. If an objection is filed, a hearing will be scheduled and the Court shall determine the amount of the Attached Judgment.

32.     By no later than 21 calendar days following the Preparation Launch Date, any holder of an Attached Judgment or holder of a judgment seeking to be an Attached Judgment shall deliver to the Special Master and to counsel for the Venezuela Parties a statement indicating the amount such creditor contends remains outstanding with respect to their Attached Judgment or judgment. Such creditor shall provide reasonably sufficient supporting documentation regarding

26

any alleged outstanding balance and all amounts and assets received by reason of the Attached Judgment or judgment and any other information pertinent to understanding the outstanding balance of the applicable Attached Judgment or judgment.

## Amendments & Additional Powers of the Special Master

33.     **Additional Guidance from the Court**.  If the Special Master, in his sole discretion, but after consultation with the Sale Process Parties, determines that (a) a material modification or amendment of this Order or the Sale Procedures (including the Bidding Procedures) that is not otherwise permitted (each a "**Proposed Amendment**") or (b) additional powers or guidance from the Court, is reasonably necessary or desirable for any reason, including to (i) ensure a value maximizing sale process or (ii) effectuate a value maximizing sale process through a Sale Transaction, the Special Master may seek such Proposed Amendment or additional powers or guidance, as applicable, by filing a request or recommendation with the Court with notice to the Sale Process Parties.

34.     **Requests of the Special Master**.  In addition to the cooperation provisions in the May Order, the Sale Process Parties, including CITGO and PDVH, and each of their subsidiaries, including their directors, officers, managers, employees, agents, and advisors, shall promptly cooperate and comply with the requests of the Special Master.  If the Special Master specifically invokes this paragraph 34 in connection with any such request, then the person or entity that is the subject or recipient of such request shall comply no later than five (5) business days after the date upon which the request was made, unless the Special Master sets a different deadline for which a response is due.  If any person objects to a request by the Special Master that specifically invokes this paragraph 34, including objections based on a belief that such request is unreasonable, such person shall file a motion with the Court seeking relief from the Special Master's request.  Absent a motion seeking relief from the Court, the Special Master may (but

27

shall have no obligation to) explain the basis of his request to the subject or recipient; *provided* that, if requested by the subject or recipient, the Special Master shall meet and confer with such person at least one business day before such person's deadline to file a motion seeking relief from the Special Master's request. The Special Master may, in his sole discretion, recommend to the Court appropriate sanctions with respect to any person or entity that fails to promptly comply with a request absent a timely request for relief from the Court. For the avoidance of doubt, the terms of this paragraph are in addition to the terms of the May Order; *provided* that the scope of the May Order shall in no way be read to limit the effect of this paragraph.

35.    **CITGO Management Team**. Without limiting paragraph 34, if requested by the Special Master, CITGO shall use reasonable efforts to make members of the CITGO management team available for meetings with bidders or potential bidders, which may include, in the Special Master's sole discretion, the most senior members of the CITGO management team. CITGO shall further use reasonable efforts to timely respond to the Special Master's diligence requests or bidder-specific questions, including, if applicable, by providing accurate and complete due diligence materials, documentation, and backup support requested by the Special Master.

36.    **Additional Powers of the Special Master**. In addition to the duties and powers set forth in this Order, the Special Master shall have all of the powers and duties set forth in prior orders of the Court, including the May Order. Without limiting the foregoing, the Special Master may issue, without limitation, orders, subpoenas and interrogatories to any person in the course of performing his duties. Further, the Special Master may, in his sole discretion and consistent with Rule 53 of the Federal Rules, issue orders to compel delivery of information from any person or entity in connection with implementing the Sale Procedures, including to ensure a comprehensive and value-maximizing sale process, to ensure that property that is directly or

28

indirectly the subject of this Order is not transferred or otherwise encumbered by the Venezuela Parties or to determine the amount of claims against the Venezuela Parties. Following consultation with the Sale Process Parties, the Special Master may by order impose on a party any non-contempt sanction provided by Rule 37 or Rule 45 of the Federal Rules, and may recommend a contempt sanction against a party and sanctions against a nonparty, consistent with Rule 53(c) of the Federal Rules.

## Additional Provisions

37.    **Rosneft Trading S.A.** The *Consent Order Regarding Disclosure by Rosneft Trading S.A. and Petróleos de Venezuela, S.A. Regarding CITGO Holding Pledge* (D.I. 396) (the "**Rosneft Consent Order**") is incorporated herein by reference as if fully set forth herein.

38.    **Dispute Resolution**. All bidders that participate in the sale and bidding process shall be deemed to have (a) consented to the jurisdiction of the Court to enter any order or orders, which shall be binding in all respects, in any way related to the Sale Procedures or Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction, interpretation, and enforcement of any agreement or any other document relating to a Sale Transaction; (b) waived any right to a jury trial in connection with any disputes relating to the Sale Procedures or Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction, interpretation, and enforcement of any agreement or any other document relating to a Sale Transaction; and (c) consented to the entry of a final order or judgment in any way related to the Sale Procedures or Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction, interpretation, and enforcement of any agreement or any other document relating to a Sale Transaction if it is determined that the Court would lack jurisdiction to enter such a final order or judgment absent the consent of the parties.

39.  **Communications & Negotiations with Third Parties**.  The Special Master is authorized and empowered, in his sole discretion and at any time, to communicate and, as applicable, negotiate with any bidder, potential bidder, or governmental or regulatory body. Further, in consultation with the Sale Process Parties, the Special Master is authorized and empowered, in his sole discretion and at any time, to communicate and, as applicable, negotiate with any other person or entity, including any contract counterparty, any indenture trustee, administrative agent, or collateral agent, any holders of that certain series of bonds issued by PDVSA due in 2020 (the "**PDVSA 2020 Bondholders**") or other person related to PDVH, CITGO, and their affiliates to the extent reasonably necessary or desirable in connection with preparation of the Supplemental Report and implementation of the Sale Procedures and any Sale Transaction.  If the Special Master determines it is reasonably necessary or desirable to negotiate a change, modification, or amendment to, or seek a consent or waiver under, any contract of PDVH, CITGO, or any of their subsidiaries in connection with any Bid or Potential Bid or implementation of the Sale Procedures or any Sale Transaction, including with respect to any "change-of-control" provisions in any contract, the Special Master shall work with PDVH and CITGO, as applicable, to negotiate such change, modification, amendment, consent, or waiver. If either PDVH or CITGO, as applicable, do not cooperate with or otherwise consent to any particular negotiation, change, modification, amendment, consent, or waiver, the Special Master shall seek additional guidance from the Court and shall not proceed absent further order from the Court.

40.  **Communications with Potential Bidders**.  The Sale Process Parties (other than the Venezuela Parties) shall not, directly or indirectly, contact or otherwise communicate with any Potential Bidders regarding this Order, the Sale Procedures, any bid or potential bid, or any

30

Sale Transaction, other than as expressly permitted in writing by the Special Master or otherwise authorized by this Court. Subject in all cases to the *Special Master Confidentiality Order* (D.I. 291) (the "**Protective Order**"), nothing herein restricts the Venezuela Parties' ability to communicate with Potential Bidders or any other third-party, including by placing public advertisements regarding the Marketing Process and the Sale Transaction, *provided* that (a) the Venezuela Parties shall not disclose any nonpublic terms regarding the Bids of any Potential Bidder that the Venezuela Parties have learned as a Consultation Party or by any other means, (b) the Venezuela Parties shall provide the Special Master and his Advisors with advance notice prior to engaging in any form of communication with Potential Bidders, and (c) any information provided to the Potential Bidders by the Venezuela Parties shall be made available to the Special Master and all other Potential Bidders. If the Venezuela Parties communicate with any Potential Bidders, the Special Master may (in his sole discretion) disclose the identity of such Potential Bidders to the Sale Process Parties. If, during the course of implementing this Order, the Special Master believes that any of the Venezuela Parties is communicating with Potential Bidders in a manner that will impair or inhibit the ability of the Special Master to obtain value-maximizing Bids, the Special Master may inform the Court and the Court will consider appropriate amendments to this Order. For the avoidance of doubt, this paragraph 40 does not prevent or prohibit contact or communications in the ordinary course of business consistent with past practice on matters unrelated to this Order, the Sale Procedures, any bid or potential bid, or any Sale Transaction.

41.     The Sale Process Parties may propose a list of Potential Bidders for the Special Master to solicit Bids from in connection with the Marketing Process and the Special Master shall consider in good faith inclusion of such Potential Bidders. If the Special Master elects

31

to exclude or declines to solicit a Bid from a Potential Bidder identified by a Sale Process Party, the Special Master shall notify the applicable Sale Process Party of such decision as soon as reasonably practicable thereafter and, if appropriate, explain his rationale for the decision. If the applicable Sale Process Party reasonably believes that the Special Master inappropriately or unfairly excluded or declined to solicit a Bid from a Potential Bidder identified by such Sale Process Party, then such Sale Process Party shall file a letter that shall not exceed three pages with the Court and serve such letter on the Special Master and the other Sale Process Parties. The Special Master shall have two business days following service to respond by letter not to exceed three pages. After considering the parties' submissions, the Court will issue an appropriate order.

42. **Communications among Sale Process Parties.** Subject in all cases to the *Special Master Confidentiality Order* (D.I. 291) (the "**Protective Order**"), nothing in this Order prohibits the Sale Process Parties from communicating with each other; *provided* that such communications do not involve or relate to colluding in connection with a Bid that has been submitted or may be submitted by the applicable Sale Process Party or a Bid by any Potential Bidder. For the avoidance of doubt, this provision is not intended to limit in any way the ability of some or all of the Sale Process Parties to discuss settlement or satisfaction of any Attached Judgment or to discuss the terms, content, or grounds of any potential objection to be filed with the Court. The Special Master shall consult with the Sale Process Parties periodically and as appropriate in implementing the Sale Procedures.

43. **Sharing of Information with Potential Bidders**. Upon giving notice to the applicable Sale Process Party, the Special Master shall be permitted, in his sole discretion, to share any and all information obtained related to the Sale Process Parties, regardless of whether marked or designated "confidential" or "highly confidential" pursuant to the Protective Order, with

32

any bidder or potential bidder that has entered into a confidentiality arrangement in the form attached hereto as **Exhibit 4** (the "**Confidentiality Agreement**"); *provided* that the Special Master shall be authorized to make reasonable changes to the extent requested by a Potential Bidder. The Special Master shall file each executed Confidentiality Agreement under seal with the Court and shall provide notice of execution of such Confidentiality Agreement to the Sale Process Parties. The Special Master shall exercise reasonable care in providing confidential information to bidders and Potential Bidders and, if applicable, shall use reasonable efforts to consult any Sale Process Party that marks or designates any information as "confidential" or "highly confidential" prior to its disclosure to any Potential Bidder. The Special Master shall use reasonable efforts to consult PDVH and CITGO in connection with sharing competitively sensitive information and, if determined to be appropriate by the Special Master, to establish firewall protections or "clean team" protocols with respect to any Potential Bidder that is a competitor, customer or supplier or under such other circumstances as the Special Master determines to be appropriate. Notwithstanding the foregoing, solely with respect to information designated as "highly confidential" by ConocoPhillips, unless the Court orders otherwise, the Special Master shall seek the reasonable consent of ConocoPhillips, which consent shall not be unreasonably withheld, prior to disclosing any such information to any Potential Bidder. Notwithstanding the foregoing, unless otherwise ordered by the Court, the Special Master shall not disclose to any Potential Bidders the limited set of documents that the Special Master and the Venezuela Parties have agreed in writing (email shall suffice) shall not be disclosable pursuant to this paragraph 43.

44. **Sharing of Information with the United States**. The Special Master shall be authorized to share with the United States information obtained related to the Sale Process Parties and any bidder or potential bidder that the Special Master determines, in his sole discretion,

33

is reasonably necessary or desirable in connection with the issuance of any regulatory approval or is reasonably necessary or desirable in connection with implementation of the Sale Procedures and any Sale Transaction, including any guidance or license from OFAC, *provided* that the Special Master shall request confidential treatment of information shared with the United States that has been designated as confidential or highly confidential by a Sale Process Party.

45. **Engagement of Advisors**. The Special Master has retained, as approved by the May Order and as affirmed by this Order, the Advisors. The Special Master's engagement of Evercore, pursuant to the Proposed Evercore Engagement Letter, is hereby approved and the terms of the Engagement Letter in all respects shall be binding on the Special Master, including with respect to payment of the Upfront Amount of the Sale Fee by the Sale Process Parties. Any amounts owed to Evercore under the Proposed Evercore Engagement Letter shall be payable to Evercore pursuant to the terms of the May Order, including the Sale Fee and the Upfront Amount of the Sale Fee; *provided* that in no circumstance absent further order of the Court, shall any Sale Fee (other than the Upfront Amount) be payable directly by the Sale Process Parties and any such amount shall, in each circumstance, be payable out of any proceeds or other cash consideration provided in connection with a Sale Transaction after the Sale Process Parties have been reimbursed pursuant to the terms of the May Order.

46. **Judicial Immunity & Exculpation**. The Special Master is entitled to judicial immunity in performing his duties pursuant to this Order, including all actions taken to implement the Sale Procedures, and all other orders of the Court. The Special Master's Advisors are entitled to judicial immunity in connection with all actions taken at the direction of, on behalf of, or otherwise in connection with representation of or advising the Special Master. No person or entity shall be permitted to pursue any cause of action or commence or prosecute any suit or

34

proceeding against the Special Master or the Advisors, or their respective employees, officers, directors, attorneys, auditors, representatives, agents, successors or assigns, for any reason whatsoever relating to the Crystallex Case, implementation of the Sale Procedures, or in connection with any Sale Transaction, or the performance of the Special Master's and his Advisors' duties pursuant to this Order or any other orders of the Court, or any act or omission by the Special Master or any Advisor in connection with the foregoing. All interested persons and entities, including but not limited to the Sale Process Parties, any purchaser or prospective purchaser of the PDVH Shares, and all persons acting in concert with them, are hereby enjoined and restrained from pursuing any such cause of action or commencing any such action or proceeding. If any person or entity attempts to pursue any such cause of action or commence any suit or proceeding against the Special Master or any of the Advisors with knowledge of this Order (or continues to pursue or prosecute any cause of action, suit or proceeding after having received notice of this Order), the Court shall issue an order to show cause to such person or entity and a hearing will be scheduled to consider appropriate relief, which may include payment of fees and expenses incurred by the Special Master or any of the Advisors in connection therewith. To the maximum extent permitted by applicable law, neither the Special Master nor his Advisors nor their respective employees, officers, directors, attorneys, auditors, representatives, agents, successors and assigns will have or incur, and are hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim in connection with or arising out of all actions taken to implement the Marketing Process, Sale Procedures, Bidding Procedures, or Sale Transaction, or the performance of the Special Master's and his Advisors' duties pursuant to this Order and all other orders of the Court.

35

47.   **Payment of Transaction Expenses**.   The Special Master shall be compensated and reimbursed for all expenses (including fees and expenses of his Advisors) on a monthly basis by the Sale Process Parties pursuant to the procedures set forth in the May Order (collectively, such compensation and expenses, the "**Transaction Expenses**"), which Transaction Expenses shall be shared by the Sale Process Parties and any Additional Judgment Creditors, pursuant to this Order; *provided* that the Special Master shall have the discretion to seek from the Court authorization to reallocate payment of any Transaction Expenses if the circumstances require (*e.g.*, if any single Sale Process Party generates an inordinate number of disputes or if a Sale Process Party's position in a dispute is found to be unreasonable); *provided, further*, that any Additional Judgment Creditor shall be obligated to reimburse its share of the Transaction Expenses pursuant to the May Order (as if such Additional Judgment Creditor were a Sale Process Party) and this Order (for purposes of determining such Additional Judgment Creditor's share of the reimbursement obligation) .   The Special Master shall comply with the procedures established pursuant to the Court's *Memorandum Order* (D.I. 338) and any subsequent order of the Court regarding the provision of a budget to the Sale Process Parties.

48.   **Location of PDVH Shares**.   By no later than 30 calendar days after entry of this Order, the Venezuela Parties, including PDVSA, shall inform the Special Master as to the specific and precise physical location of the PDVH Shares held by PDVSA or any other facts relevant for determining the physical location of the PDVH Shares held by PDVSA and the custodian of the shares.   If the applicable Venezuela Party is unaware of the location of the PDVH Shares, such party shall inform the Special Master as such in writing.   If at any point thereafter the applicable Venezuela Party becomes aware of any change in circumstance regarding the location of the PDVH Shares, then such party shall update the Special Master in writing.

36

49.     If the location of the PDVH Shares cannot be located with reasonable precision or if the Special Master reasonably determines that the custodian of the PDVH Shares is unlikely to cooperate in connection with an order compelling the person or entity to transfer the PDVH Shares in connection with any Sale Transaction, the Special Master shall file a recommendation with the Court in advance of the Sale Hearing regarding the appropriate steps to be taken to ensure that the Successful Bidder is able to actually purchase the applicable PDVH Shares in connection with the applicable Sale Transaction. The Special Master's recommendation may include, if appropriate, an order compelling PDVH to issue new certificates or uncertificated shares to the applicable Successful Bidder and cancel the registration of the shares attached to the books of PDVH.

50.     **Delaware Code, Title 10, Section 5072.**  For the avoidance of doubt, the 5-year period for execution upon a judgment in a civil action set forth in 10 *Del C.* § 5072 is satisfied or otherwise tolled with respect to the PDVH Shares.

51.     **Other Provisions**.  All provisions of the May Order shall remain in full force and effect, except for any that directly and irreconcilably conflict with an express provision of this Order; *provided* that nothing in the May Order shall in any way be used to limit the scope of the terms and provisions of this Order.

52.     The Special Master is authorized to make non-substantive changes to the Bidding Procedures, the Sale Notice, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

53.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

WEIL:\98747427\4\67816.0003

54.     In addition to and without limiting any of the provisions set forth herein, the

Special Master is authorized to take all reasonable steps necessary or appropriate to carry out this

Order.

55.     This Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, or enforcement of this Order.

Dated: ___October 7___, 2022
        Wilmington, Delaware

_____
HONORABLE LEONARD P. STARK
UNITED STATES ~~DISTRICT~~ CIRCUIT JUDGE

38