# Exhibit 15

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                                  - - -

 4    OI EUROPEAN GROUP B.V.,              :  MISCELLANEOUS ACTION
                                           :
 5              Plaintiff,                 :
      v                                    :
 6                                         :
      BOLIVARIAN REPUBLIC OF VENEZUELA;    :
 7                                         :
                Defendant.                 :  NO. 19-290-LPS
 8    -------------------------------------
      NORTHROP GRUMMAN SHIP SYSTEMS, INC.,
 9                                         :  MISCELLANEOUS ACTION
                Plaintiff,                 :
10    v                                    :
                                           :
11    THE MINISTRY OF DEFENSE OF THE       :
      REPUBLIC OF VENEZUELA,               :
12                                         :  NO. 20-257-LPS
                Defendant.
13                                  - - -

14                         Wilmington, Delaware
                          Friday, April 30, 2021
15                         Oral Argument Hearing

16                                  - - -

17    BEFORE:     HONORABLE LEONARD P. STARK, Chief Judge

18    APPEARANCES:                         - - -

19              MORGAN LEWIS & BOCKIUS, LLP
                BY:  JODY C. BARILLARE, ESQ.
20
                     and
21
                MORGAN LEWIS & BOCKIUS, LLP
22              BY:  P. SABIN WILLETT, ESQ.,
                     JONATHAN M. ALBANO, ESQ., and
23                   CHRISTOPHER L. CARTER, ESQ.
                     (Boston, Massachusetts)
24
                     and
25
                                        Brian P. Gaffigan
                                        Registered Merit Reporter
```

Case 1:19-cv-10023-KPF   Document 255-154   Filed 06/28/23   Page 3 of 8
Case 1:19-cv-10023-KPF   Document 47   Filed 05/15/19   Page 3 of 8 PageID #: 1767

2

```
 1     APPEARANCES:   (Continued)

 2
                  SEQUOR LAW, P.A.
 3                     EDWARD H. DAVIS, JR., ESQ.
                       FERNANDO J. MENENDEZ, ESQ., and
 4                     CRISTINA VICENS BEARD, ESQ.
                       (Miami, Florida)
 5
                            Counsel for OI European Group B.V.
 6

 7                PACHULSKI STANG ZIEHL & JONES LLP
                  BY:   PETER J. KEANE, ESQ.
 8
                        and
 9
                  ALSTON & BIRD, LLP
10                BY:   ALEXANDER A. YANOS, ESQ.,
                        CARLOS RAMOS-MROSOVSKY, ESQ., and
11                      ROBERT POOLE, ESQ.
                        (New York, New York)
12
                            Counsel for Northrop Grumman
13                          Ship Systems, Inc.

14
                  ABRAMS & BAYLISS
15                BY:   STEPHEN C. CHILDS, ESQ.

16                      and

17
                  SULLIVAN & CROMWELL, LLP
18                BY:   JOSEPH E. NEUHAUS, ESQ.
                        (New York, New York)
19
                            Counsel for Bolivarian
20                          Republic of Venezuela

21

22

23

24

25
```

Case 1:19-cv-10023-KPF Document 255-154 Filed 06/28/23 Page 4 of 8
Case 1:19-cv-10023-KPF Document 47 Filed 06/28/23 Page 4 of 8 PageID #: 1768

3

```
 1   APPEARANCE:   (CONTINUED)

 2
             HEYMAN ENERIO GATTUSO & HIRZEL LLP
 3           BY:   SAMUEL T. HIRZEL, II, ESQ.

 4                 and

 5           CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
             BY:   JOSEPH D. PIZZURRO, ESQ.
 6                 JULIA B. MOSSE, ESQ.
                   KEVIN A. MEEHAN, ESQ., and
 7                 JUAN O. PERLA, ESQ.
                   (New York, New York)
 8
                     Counsel for Intervenor Petróleos de
 9                   Venezuela, S.A.

10

11

12

13

14

15

16

17

18

19

20

21
                              - oOo -
22
                     P R O C E E D I N G S
23
             (REPORTER'S NOTE:  The following oral argument
24
     video hearing was held remotely, beginning at 9:11 a.m.)
25
```

1     not physically control the country. This means that his

2     government needs to both be seen to act in a presidential

3     manner and he needs -- and PDVSA offers him a chance to

4     govern something effectively, and he needs PDVSA for

5     leverage in his political struggle with Mr. Maduro.

6           Just last week -- turning to the next slide --

7     Mr. Guaidó drew down on Central Bank funds previously frozen

8     in the United States to, in part, pay for vaccines and also,

9     in part, to pay his government and also, in part, to pay for

10    Venezuela and PDVSA's legal bills.

11           We offered that article today as Plaintiff's

12    Exhibit 124.

13           And the use of Venezuelan money to pay PDVSA's

14    bills, by definition, constitute commingling, which is, of

15    course, as the Court knows, a critical element of the

16    banking cap.

17           Mr. Guaidó's domination of PDVSA was so

18    important that in an official decree published on

19    February 8th, 2019, less than a month after being declared

20    Interim President, Mr. Guaidó appointed a new Ad Hoc Board.

21    Shortly thereafter, Mr. Guaidó issued Decree Number 3

22    reorganizing the Ad Hoc Board and enhancing its power.

23           That is at Plaintiff's Exhibit 93, with the

24    original at Plaintiff's Exhibit 92.

25           The point of this decree was to keep PDVSA and

```
 1    its assets close and, of course, it's most important, away
 2    from Mr. Maduro.
 3              President Guaidó's relationship with PDVSA is
 4    organized entirely around his struggle to gain legitimacy
 5    and power vis-à-vis Mr. Maduro.
 6              But this is a case, it's clear on the face of,
 7    among other things, Article 34(3)(b) of the transition
 8    statute, which is Plaintiff's Exhibit 89, which we put on
 9    the screen.
10              What you see there, Your Honor, is provisions
11    directly ordering PDV Holdings and its subsidiaries, you
12    know, not to engage in any relationships with Mr. Maduro.
13              So obviously Venezuela does not own the shares
14    of PDV Holdings or CITGO.  They own PDVSA, but this is not a
15    statute directing PDVSA to do something.  It is -- they're
16    just jumping straight through that.  They're directing PDV
17    Holdings to do something.  That is not a shareholder acting.
18    That is a shareholder that is, in fact, the alter ego of the
19    company it owned.
20              As reported in the article from the United
21    Press, presented as Plaintiff's Exhibit 105 on the next
22    slide, the Guaidó government has, in fact, characterized the
23    appointments of the Ad Hoc Board as "part of taking,
24    progressive and orderly control of the assets of our
25    Republic abroad in order to speed up the political
```

1     transition."

2              So there we see again the assets of the
3     Republic, which is all we want to do is enforce our judgment
4     against the Republic, against the assets of the Republic,
5     and then we also see the fact that the state is using its
6     assets for political purposes, to speed up the political
7     transition.

8              Set against all of this, PDVSA's main defense,
9     as you will probably hear again today, has been to pretend
10    it observes all corporate formalities.  Mr. Guaidó said he
11    respects PDVSA's corporate separateness and that
12    separateness necessarily -- but that is not how it works.
13    PDVSA's formal invocation of corporate separation is at best
14    aspirational.

15             At this time, and this is the only relevant time
16    for your analysis, we submit, PDVSA remains an integral part
17    of the state.  Venezuela controls PDVSA's actions for purely
18    political end, to keep the money away from Mr. Maduro and to
19    preserve its bargaining position in political negotiations.

20             Venezuela uses PDVSA funds to pay government
21    bills, and Venezuela uses its own money to pay PDVSA's
22    lawyers.  In other words, PDVSA and Venezuela are sharing
23    the same money for whichever purpose is expedient at any
24    given moment.

25             And Venezuela -- three, Venezuela interferes

```
 1      categories that would not be enough for you to prevail, I
 2      believe.
 3                  MR. YANOS:  Well, thank you for asking that
 4      question.
 5                  I think that the first point is that the use of
 6      the company for noncommercial ends, right, the control that
 7      PDVSA exercises or the control exercised over PDVSA is, as
 8      I'd said before, for political end unrelated to the
 9      commercial business of PDVSA.  PDVSA is not a -- is in the
10      business of owning and managing oil assets but Venezuela
11      asks it to further its political ends.
12                  Second of all, we have what we call the
13      commingling of funds, both with respect to bills paid by the
14      National -- that funds that we talked about that Mr.
15      Pizzurro said was a Central Bank fund, we have evidence that
16      has in its origin actually money that was derived from
17      CITGO.  So we have money that was derived from CITGO being
18      used to pay the salaries of the National Assembly.  We also
19      have the use of that money to pay -- by the state to pay
20      PDVSA's lawyers.
21                  So it's just, you know, my debt is your debt.
22      We're all one big debt.  And that basic concept is
23      reinforced in the government's position on the payment
24      of debt where everyone is told to be treated pari passu,
25      whether the obligor is PDVSA or the obligor is Venezuela.
```