# Exhibit 19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONTRARIAN CAPITAL MANAGEMENT, L.L.C., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN DOME DU GOUTER MASTER FUND, LP, CONTRARIAN CAPITAL SENIOR SECURED, L.P., CONTRARIAN EM II, LP, CONTRARIAN EMERGING MARKETS, L.P., BOSTON PATRIOT SUMMER ST LLC, POLONIUS HOLDINGS, LLC, EMMA 1 MASTER FUND, L.P., CONTRARIAN FUNDS, L.L.C., and E1 SP, A SEGREGATED ACCOUNT OF EMAP SPC, | ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 21-mc-00018-LPS C.A. No. 22-mc-00131-LPS C.A. No. 22-mc-00263-LPS |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) ) | |
| Defendant. | ) ) | |

## BRIEF OF BOLIVARIAN REPUBLIC OF VENEZUELA
## IN OPPOSITION TO CONTRARIAN'S MOTION FOR AN
## ORDER AUTHORIZING A WRIT OF ATTACHMENT *FIERI FACIAS*

OF COUNSEL:

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Brendan B. Gants
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com
Elaine.Goldenberg@mto.com
Ginger.Anders@mto.com
Brendan.Gants@mto.com

A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

*Attorneys for Bolivarian Republic of Venezuela*

George M. Garvey
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com

Dated:  June 2, 2023

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ..................................................................1

SUMMARY OF ARGUMENT .......................................................................................1

STATEMENT OF FACTS ..............................................................................................3

I.     The *OIEG* Litigation And Contrarian's Motion ......................................3

II.    Changes In The Venezuelan Government Since December 2022 ..........5

ARGUMENT ..................................................................................................................8

I.     Contrarian Is Not Entitled To Collateral Estoppel Based On The March 23 Opinion ........................................................................................9

      A.    The Issues Are Not Identical.....................................................9

      B.    The Parties Did Not Actually Litigate Whether PDVSA Is The Republic's Alter Ego Under the Post-Guaidó Government.......................12

      C.    The Issue Was Not Determined by a Final Judgment................13

      D.    The Determination was Not Essential to the Decision ..............14

      E.    It Would Be Inequitable to Apply Collateral Estoppel Here ....15

II.    Contrarian Has Failed To Satisfy Delaware's Requirements For A Writ Of Attachment ................................................................................16

III.   The Republic Reserves Its Arguments Relating to Sanctions and Seizure Of The Certificate ...................................................................19

CONCLUSION ..............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACL1 Investments Ltd., ACL2 Investments LTD., and LDO (Cayman) XVIII Ltd.
v. Bolivarian Republic of Venez.,*
Case No. 1:21-mc-00046-LPS ..............................................................................3, 4

*Albanese v. Emerson Elec. Co.,*
552 F. Supp. 694 (D. Del. 1982) ................................................................................14

*Bank of Nova Scotia v. United States,*
487 U.S. 250 (1988) ...................................................................................................17

*Bright v. United States,*
603 F.3d 1273 (Fed. Cir. 2010) ................................................................................17

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft,*
154 A.2d 684 (Del. 1959) ..........................................................................................16

*Cassirer v. Thyssen-Bornemisza,*
142 S. Ct. 1502 (2022) ...............................................................................................17

*City of Milwaukee,*
451 U.S. at 323 ...........................................................................................................18

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.,*
Case No. 1:17-mc-00151-LPS ..............................................................................3, 19

*Crystallex,*
932 F.3d 126, 133 (3d Cir. 2019) ..............................................................................18

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.,*
2021 WL 129803 (D. Del. Jan. 14, 2021), appeal dismissed, 24 F.4th 242
(2022) ......................................................................................................1, 14, 15, 19

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
24 F.4th 242 (3d Cir. 2022) ...........................................................................13, 17, 18

*Crystallex Int'l Corp. v. PDV Holding Inc.,*
No. 15-CV-1082-LPS, 2019 WL 6785504 (D. Del. Dec. 12, 2019) ...............8, 9, 10

*Delaware v. BP Am. Inc.,*
578 F. Supp. 3d 618 (D. Del.) ...........................................................................12, 13

*Donegal Steel Foundry Co. v. Accurate Prod. Co.,*
516 F.2d 583 (3d Cir. 1975) ......................................................................................14

*Free Speech Coal., Inc. v. Att'y Gen. of U.S.*,
  677 F.3d 519 (3d Cir. 2012) ....................................................................................13, 14

*Haize v. Hanover Ins. Co.*,
  536 F.2d 576 (3d Cir. 1976) ..................................................................................14

*Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*,
  356 F.3d 731 (7th Cir. 2004) ................................................................................16

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991) ................................................................................................18

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
  394 F.3d 1143 (9th Cir. 2004) ..............................................................................16

*Kauffman v. Moss*,
  420 F.2d 1270 (3d Cir. 1970) ................................................................................9

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
  998 F.2d 157 (3d Cir. 1993) ..................................................................................18

*Northrop Grumman Ship Sys., Inc. v. Ministry of Defense of the Republic of
  Venez.*,
  Case No. 1:20-mc-00257-LPS ..............................................................................3

*OI European Group, B.V. v. Bolivarian Republic of Venez.*,
  Case No. 1:19-mc-00290-LPS ..............................................................................3

*OI European Group B.V. v. Bolivarian Republic of Venez.*,
  __ F. Supp. 3d __, 2023 WL 2609248 (D. Del. Mar. 23, 2023) ..................... *passim*

*Pac. Reinsurance Mgmt. Corp. v. Fabe*,
  929 F.2d 1215 (7th Cir. 1991) ..............................................................................16

*Rusoro Mining Limited v. Bolivarian Republic of Venez.*,
  Case No. 1:21-00481-LPS .....................................................................................3, 4

*Showan v. Pressdee*,
  922 F.3d 1211 (11th Cir. 2019) ............................................................................18

*Suppan v. Dadonna*,
  203 F.3d 228 (3d Cir. 2000) ..................................................................................9

*Sys. Div., Inc. v. Teknek Elecs., Ltd.*,
  253 F. App'x 31 (Fed. Cir. 2007) ...................................................................16, 17

*Trust v. Kummerfeld*,
  153 F. App'x 761 (2d Cir. 2005) ...........................................................................17

*UCB, Inc. v. Accord Healthcare, Inc.,*
201 F. Supp. 3d 491 (D. Del. 2016)................................................................12

*United States ex rel. Doe v. Heart Sol., PC,*
923 F.3d 308 (3d Cir. 2019).........................................................................9

*United States v. Botefuhr,*
309 F.3d 1263 (10th Cir.2002) ..................................................................13

*United States v. Miller,*
229 F.2d 839 (3d Cir. 1956).......................................................................16

*United States v. Yazell,*
382 U.S. 341 (1966)...................................................................................16

*United States v. Young,*
804 F.2d 116 (8th Cir.1986)......................................................................13

*Uzdavines v. Weeks Marine, Inc.,*
418 F.3d 138 (2d Cir. 2005).......................................................................13

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood,*
752 A.2d 1175 (Del. Ch. 1999)..................................................................17

**RULES**

Fed. R. Civ. P. 5(d) ..........................................................................................18

Fed. R. Civ. P. 23.1 .........................................................................................18

Fed. R. Civ. P. 26(c) ........................................................................................18

Fed. R. Civ. P. 69 ..........................................................................3, 8, 16, 18

Fed. R. Civ. P. 69(a) ...........................................................................16, 17, 18

Fed. R. Civ. P. 69(a)(1) ...................................................................................16

**STATUTES**

8 Del. C. § 324(a) ...........................................................................................16

10 Del. C. § 5031 ............................................................................................16

28 U.S.C. § 1602 ..............................................................................................3

28 U.S.C. § 1606 ......................................................................................17, 18

28 U.S.C. § 2072(b) .........................................................................................17

PDVSA under the Foreign Sovereign Immunities Act ("FSIA")......................................................3

Rules Enabling Act ...........................................................................................................................17

STATE REGULATIONS

Opinion, 2023 WL 2609248, at *27 .................................................................................................4

Opinion, 2023 WL 2609248, at *29 ...............................................................................................18

OTHER AUTHORITIES

Isayen Herrera and Genevieve Glatsky, *Juan Guaido Is Voted Out as Leader of Venezuela's Opposition*, N.Y. Times (Dec. 30, 2022)..............................................................5

18 James Wm. Moore et al., *Moore's Federal Practice* § 132.03[2][h][i] (3d ed. 2005) ............................................................................................................................................13

United States Department of State, Press Statement, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023), https://www.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/..........................................................................................................................5, 10

The Bolivarian Republic of Venezuela (the "Republic") respectfully submits this brief in opposition to Contrarian's[1] motion for an order authorizing a writ of attachment *fieri facias* against shares of PDVH owned by PDVSA.

## NATURE AND STAGE OF PROCEEDINGS

Contrarian, a group of investment funds who hold bonds issued by the Republic, has registered judgments with the Court and has moved for an order for the issuance of a writ of attachment, to be served on PDVH, attaching PDVSA's shares of stock in PDVH, based on the allegation that PDVSA is the alter ego of the Republic. The proposed order would stay the delivery of the writ to the Marshal for service until a license from OFAC is obtained for its service. The Republic opposes Contrarian's motion.

## SUMMARY OF ARGUMENT

1.      This Court has twice "held that 'the pertinent time' for purposes of an alter ego analysis is 'the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ.'" *OI European Grp. B.V. v. Bolivarian Republic of Venez.*, __ F. Supp. 3d __, No. 1:17-mc-00151-LPS, 2023 WL 2609248, at *26 (D. Del. Mar. 23, 2023) (the "March 23 Opinion") (quoting *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 1:17-mc-00151-LPS, 2021 WL 129803, at *6 (D. Del. Jan. 14, 2021), *appeal dismissed*, 24 F.4th 242 (2022)). Contrarian seeks a writ of attachment against PDVSA's shares of PDVH, premised on the position that PDVSA is the alter ego of the Republic. But Contrarian does not purport to make any showing that PDVSA was the Republic's alter ego during the pertinent time: the period commencing on April 26, 2023, when Contrarian moved for a writ of attachment.

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to them in the Opening Brief in Support of Contrarian's Motion for an Order Authorizing a Writ of Attachment *Fieri Facias*, D.I. 21 ("Opening Brief").

Instead, it argues that the March 23 Opinion, issued before Contrarian's pertinent time began, determining that OIEG was conditionally entitled to a writ of attachment in the future, established as a matter of collateral estoppel that PDVSA was the Republic's alter ego during Contrarian's pertinent time.

2.     The Court should reject Contrarian's invocation of collateral estoppel as a substitute for proving its claim of alter ego.  All of the elements a party must establish to invoke collateral estoppel—that the issues in the former litigation and the current litigation were identical, and that the issue was actually litigated—are missing here.  The issue decided in *OIEG* was whether, based on the activities of the government of Interim President Juan Guaidó, and (in the Court's view) those of the illegitimate Maduro regime in Venezuela between 2019 and 2021, rendered PDVSA the alter ego of the Republic.  The parties did not litigate, and the Court made no findings on, the issue on which Contrarian bears the burden:  whether during the period commencing April 26, 2023, after the expiration of the interim presidency, the affairs of PDVSA were managed in a manner that rendered PDVSA the Republic's alter ego.  The record in *OIEG* contains no findings regarding the relationship between the Republic and PDVSA during that period.

3.     Although Contrarian's failure to carry its burden is sufficient without more to require denial of its motion, this is not merely a matter of a party failing to carry its burden.  As the Court knows, the Republic strongly disagrees with the findings in the March 23 Opinion and has appealed that decision, but regardless of how that appeal fares, the fact remains that Contrarian's motion must be based on the facts as they exist during the period commencing April 26, 2023.  The Republic's government has changed in significant ways from the circumstances on which the Court based its March 23 Opinion, including the removal of the Interim President and the Special Attorney General, the expiration of the office of Interim President, and the installation

of a new council to exercise the Republic's responsibilities as the shareholder of PDVSA. Contrarian has made no effort to make the required showing concerning that time period. Contrarian has thus failed to establish that PDVSA was the Republic's alter ego. It has failed to overcome the immunity from jurisdiction and the immunity from attachment provided to the assets of PDVSA under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq*.

4.     Contrarian's motion fails for an independent reason. In addition to overcoming the immunities provided in the FSIA, Contrarian has the burden of satisfying the requirements of Fed. R. Civ. P. 69 and Delaware law for attaching PDVSA's property. Contrarian has failed to show that the alleged disregard of corporate separateness caused fraud or similar injustice, as Delaware law requires for attachment on alter ego grounds.[2]

## STATEMENT OF FACTS

The Republic presumes the Court's familiarity with the procedural background and facts pertinent to the Crystallex[3] and OIEG[4] attachment proceedings referred to in the Opening Brief.

## I.     The *OIEG* Litigation And Contrarian's Motion

The merits of the March 23 Opinion are on appeal before the U.S. Court of Appeals for the Third Circuit, and the Republic adheres to its position that the Court erred in determining that OIEG had carried its burden of establishing that PDVSA was the Republic's alter ego under the

---

[2] Contrarian has asked "to brief the alter-ego issue on its merits" if its collateral estoppel attempt fails. Opening Brief at 11, n. 9. The Republic requests an opportunity to respond to any such briefing.

[3] *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, Case No. 1:17-mc-00151-LPS ("*Crystallex*").

[4] *OI European Grp., B.V. v. Bolivarian Republic of Venez.*, Case No. 1:19-mc-00290-LPS, *Northrop Grumman Ship Sys., Inc. v. Ministry of Defense of the Republic of Venez.*, Case No. 1:20-mc-00257-LPS ("Huntington"), *ACL1 Invs. Ltd., ACL2 Invs. LTD., and LDO (Cayman) XVIII Ltd. v. Bolivarian Republic of Venez.*, Case No. 1:21-mc-00046-LPS ("ACL1"), *Rusoro Mining Limited v. Bolivarian Republic of Venez.*, Case No. 1:21-00481-LPS ("Rusoro") (together, "*OIEG*").

government of Interim President Guaidó. But regardless of those merits, the March 23 Opinion concerned a different pertinent time than Contrarian's motion. In concluding that PDVSA stands as the alter ego of the Republic, the Court reiterated that "the pertinent time is the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ." March 23 Opinion, 2023 WL 2609248, at *27. For OIEG, the pertinent time periods began on February 19, 2021 (OIEG and Huntington), November 22, 2021 (ACL1), and February 9, 2022 (Rusoro), and would run through the date of issuance and/or service of any writ of attachment. *Id*. Accordingly, the primary focus of the evidentiary record developed for the alter ego analysis in *OIEG* concerned the relationship between former Interim President Guaidó (whose presidency was recognized by the United States from January 23, 2019 to January 4, 2023) and the ad hoc administrative board of PDVSA ("Ad Hoc Board"). The Court also referenced actions of the illegitimate Maduro regime in Venezuela during 2019, 2020 and 2021—times when OIEG's motions were pending. *Id*. at *15-17.

On April 26, 2023, Contrarian, as judgment creditors of the Republic based upon bonds issued by the Republic, filed three (identical) motions for writs of attachment *fieri facias* with this Court. Contrarian's motion fails to make any substantive argument that, based on the structure of the Venezuelan government as it existed on April 26, 2023 and thereafter, there is an alter ego relationship between the Republic and the PDVSA Ad Hoc Board. Rather, Contrarian argues that it can rely on the findings of fact in the March 23 Opinion, and that the Republic is collaterally estopped from arguing that PDVSA is not the alter ego of the Republic. Opening Brief at 7. The pertinent time for any alter ego analysis in support of Contrarian's motion, however, would begin on April 26, 2023—post-dating the March 23 Opinion and the entire record supporting it.

## II.      Changes In The Venezuelan Government Since December 2022

On December 30, 2022, the Venezuelan National Assembly voted to remove Interim President Juan Guaidó and to end the office of Interim President.[5] The National Assembly enacted the Law Reforming the Statute Governing the Transition to Democracy to Restore the Validity of the Constitution of the Bolivarian Republic of Venezuela (the "2023 Transition Statute"), effective January 4, 2023.[6]  The National Assembly enacted the 2023 Transition Statute "to establish the regulatory framework governing the democratic transition in the Bolivarian Republic of Venezuela" following the end of the interim presidency.[7] The 2023 Transition Statute affirmed that the National Assembly continued to be the "the only institution legitimized by popular decision that remains for the Venezuelan people."[8] The United States Department of State promptly announced that the "United States continues to recognize the . . . National Assembly as the last remaining democratic institution in Venezuela . . . ."[9]

The 2023 Transition Statute transferred the oversight and administration of the Republic's overseas assets to the Council for the Administration and Protection of Assets ("CAPA"), as "the entity with jurisdiction to protect all property or assets of the Bolivarian Republic of Venezuela abroad, participating when it deems appropriate in the administration of such assets."[10] To fulfill that responsibility, CAPA is instructed to "represent shares belonging to the Republic in any of the

---

[5] Isayen Herrera and Genevieve Glatsky, *Juan Guaidó Is Voted Out as Leader of Venezuela's Opposition*, N.Y. Times (Dec. 30, 2022), *available at* https://www.nytimes.com/2022 /12/30/world/americas/venezuela-opposition-juan-guaido.html. Declaration of Stephen C. Childs. Except as otherwise stated, citations to Exhibits refer to exhibits to that Declaration.
[6] Ex. 2 (National Assembly Legislative Gazette No. 66) at pp. 14-26.
[7] *Id*., p. 15.
[8] *Id.*
[9] United States Department of State, Press Statement, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023), *available at* https://www.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/.
[10] Ex. 2, pp. 17-18 (2023 Transition Statute, Art. 9).

entities in which the Republic is a shareholder."[11] CAPA is authorized to appoint its own attorneys-in-fact to represent the Republic's interest in the assets located abroad.[12]

The 2023 Transition Statute also terminated (with specified limited exceptions) the entities and officials appointed by former Interim President Guaidó, including the office of the Special Attorney General appointed by the former Interim President.[13]

On January 26, 2023, the National Assembly ratified the existence of PDVSA's Ad Hoc Board.[14] Under the 2023 Transition Statute, the PDVSA Ad Hoc Board is insulated from direct oversight by the National Assembly or officers of the Republic. CAPA, rather than the former Interim President, is vested with the authority to appoint and remove the members of the PDVSA Ad Hoc Board, subject to the approval of the National Assembly or the National Assembly's Delegated Commission.[15] Although the National Assembly and its Delegated Commission have the power to authorize CAPA's decisions to appoint and remove the members of the PDVSA Ad Hoc Board, neither the National Assembly nor its Delegated Commission has rejected CAPA's appointments for any reason.[16] In short, the 2023 Transition Statute empowered CAPA as the Republic's agent to exercise the role most characteristic of a shareholder of a wholly-owned entity: to appoint its Board of Directors.

Throughout the period in which the 2023 Transition Statute has been in effect, the Republic has scrupulously observed the separate existence of PDVSA under the direction of the PDVSA Ad Hoc Board. Throughout that period, neither PDVSA nor its direct or indirect United States

---

[11] 2023 Transition Statute, Article 9.
[12] 2023 Transition Statute, Article 9.
[13] Ex. 2, p. 21 (2023 Transition Statute, Art. 20).
[14] Ex. 3 (National Assembly Legislative Gazette No. 68).
[15] Ex. 1, p. 19 (2023 Transition Statute, Art. 13).
[16] Declaration of Gustavo Eduardo Marcano, par. 4.

subsidiaries have transferred, by way or dividends or otherwise, any of their funds or other assets to the Republic.[17] Throughout that period, the National Assembly, its Delegated Commission, and CAPA have not asserted control over PDVSA's litigation strategy or legal decisions; have not directed the PDVSA Ad Hoc Board to pay debts or to stop paying debts of PDVSA; have not announced a policy or made plans to treat the debts of the Republic and PDVSA the same in any debt restructuring; and have not exercised control over PDVSA's daily activities.[18]

Throughout the period in which the 2023 Transition Statute has been in effect, PDVSA has not paid the Republic's legal fees. Rather, PDVSA has made loans to the Republic, which followed proper PDVSA Ad Hoc Board authorization protocols, for legal services in a handful of cases in which both PDVSA and the Republic were parties and creditors of the Republic have sought to attach PDVSA's assets in the United States. These loans were essential for the PDVSA Ad Hoc Board to protect PDVSA's own assets, and were premised on an explicit finding that advancing the funds was in PDVSA's strategic and economic interest. CAPA has agreed in writing that the Republic would repay the funds advanced, with interest, once the necessary OFAC licenses are obtained.[19]

Thus, under the 2023 Transition Statute, the National Assembly, its Delegated Commission and CAPA have respected the autonomy and independence of PDVSA and its direst and indirect United States subsidiaries.[20] Whatever might be said of the conditions that the Court determined

---

[17] *Id.*, par. 5.
[18] *Id.*, pars. 8, 10-12.
[19] *Id.*, par. 7.
[20] *Id.*, par. 13.

supported a finding of alter ego in the March 23 Opinion,[21] no evidence has been presented that the same conditions existed under the 2023 Transition Statute.

## ARGUMENT

Contrarian makes no attempt to prove the facts that would support a finding of alter ego, whether for purposes of establishing jurisdiction and overcoming immunity under the FSIA, or as a matter of fulfilling the requirements for a writ under Fed. R. Civ. P. 69 and Delaware law. Instead, it tries to skip around those hurdles by invoking collateral estoppel based on the March 23 Opinion. This does not work.

Respectfully, the Republic continues to believe that a finding of alter ego under the facts presented in the March 23 Opinion was inappropriate. But whatever one thinks about the merits of that decision, the burden rests on Contrarian to show that PDVSA is the alter ego of the Republic under the facts of *this* case. And instead of making any showing as to why the alter ego finding is appropriate here, Contrarian rests exclusively on the March 23 Opinion suggest that the Republic is now collaterally estopped from contesting the conclusion that the Republic and PDVSA are alter egos. The Court previously rejected the efforts of OIEG to use collateral estoppel, from a decision with a different pertinent period, to avoid its burden of proving the elements of collateral estoppel for its own pertinent time period. *See Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-CV-1082-LPS, 2019 WL 6785504, at *7 (D. Del. Dec. 12, 2019). The Republic respectfully urges the Court to do the same in response to Contrarian's attempt at the same tactic.

---

[21] Nothing in the facts stated herein should be construed as implying the absence of a proper separation between PDVSA and the Republic under the former Interim President, a period not relevant to Contrarian's motion.

## I.   Contrarian Is Not Entitled To Collateral Estoppel Based On The March 23 Opinion

Collateral estoppel, also known as issue preclusion, requires a showing that: "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 316 (3d Cir. 2019) "The party seeking to effectuate an estoppel has the burden of demonstrating the propriety of its application." *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000). "Reasonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel." *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir. 1970).

### A.   The Issues Are Not Identical

Contrarian offered no evidence to support the assumption that the Court has already decided the identical issue presented by Contrarian's motion.  Nor could it.  When OIEG's motion was briefed and decided, Contrarian's pertinent period had yet to begin.  No evidence was before the Court concerning the relationship between the Republic and PDVSA during the period beginning April 26, 2023.  Contrarian's assertion in its brief that it is "not aware of any material changes" is no substitute for a showing that PDVSA was the Republic's alter ego in and after April 26. And although it is Contrarian's burden to show identity of issues beyond a "reasonable doubt," *see Kauffman*, 420 F.2d at 1274, not the Republic's burden to show how different the issues are, the circumstances described above are more than enough to refute the erroneous assumption that the *OIEG* decision necessitates a finding of alter ego in and after April 2023.

This Court has already once rejected a judgment creditor's attempt to use collateral estoppel to prevent the Republic from contesting a finding of alter ego with regards to claims brought by a different creditor.  In *Crystallex*, this Court concluded that "whether PDVSA can, under the present circumstances, be deemed an alter ego of the Republic is not identical to the

issue decided in [a separate proceeding], and has not been actually litigated and decided on the merits." *Crystallex*, 2019 WL 6785504, at *7. "[T]hings are not at all the same as they were when the Court made its [prior] findings" because "[t]he relevant portion of PDVSA, which is the property in the U.S., is under different control under a new legal regime, recognized by the U.S." *Id.* (cleaned up). "[T]he alter-ego status today was not actually litigated and necessarily decided in the Court's [prior] decision." *Id.* (cleaned up). "[A]ny creditor seeking to place itself in a situation similar to [a prior judgment creditor] will have to prove that PDVSA is and/or was the Republic's alter ego on whatever pertinent and applicable date." *Id.* at *8. This is a "determination that will need to be made in *each* non-*Crystallex* case, at the appropriate time." *Id.* (emphasis added).

Here, too, Contrarian relies exclusively on a decision in a proceeding involving different creditors to avoid its burden to prove that PDVSA is the Republic's alter ego. But there are crucial differences between the facts in *OIEG* and the facts here. Foremost amongst them is that in the pertinent time period—"the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ," *OIEG*, 2023 WL 2609248, at *26 — "a new legal regime," *Crystallex*, 2019 WL 6785504, at *7 (internal quotation marks omitted), has replaced the Interim President and his officers: the National Assembly, which the United States recognizes as the "last remaining democratic institution in Venezuela"[22] through its Delegated Commission and CAPA. Moreover, just as in *Crystallex*, "equitable principles disfavor [the] application [of collateral estoppel]" in this case—not least, because the creditor now asserting it bases its claim on bonds that on their face are obligations of the Republic and not PDVSA. *Id.*

---

[22] United States Department of State, Press Statement, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023), *available at* https://www.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/.

Contrarian offers a single argument to make up for its failure to prove alter ego during its pertinent period. It argues that in a status conference held in *OIEG* (not in Contrarian's cases, and before Contrarian moved for a writ), "PDVSA acknowledged that there were no 'material changes' of fact that would affect that decision." Opening Brief at 8. Contrarian is wrong on the facts. Counsel for PDVSA did not concede that there had been *no* material changes since October 2022 that would affect even *that* decision. Instead, the Court asked whether PDVSA was reserving the right to argue that material changes had occurred, because the pertinent time for the *OIEG* creditors "is still open and running" until the writ actually issues. In response, counsel stated that PDVSA had "not asserted any—we have not made any arguments that there have been material changes that would affect the analysis of the Court today." *OIEG* D.I. 137, Tr. at 28-29. In other words, counsel did not foreclose raising factual changes in the future that could alter the Court's conclusions in *OIEG*. It only stated that, at that moment, it would not press the relevance of changed circumstances. *Id.* at 28-29.

More fundamentally, counsel did not say anything about what might be material in a future case involving a completely different record, such as the one here. The Court's decision in *OIEG* was based on an extensive record regarding the Guaidó-PDVSA relationship during a period of over three years. By contrast, at the time of counsel's statement, less than three months had passed since the Interim Government has been allowed to lapse and the National Assembly government had been formed. Under this Court's pertinent time rule, the vast majority of the pertinent time period relevant to the *OIEG* decision was the Guaidó period, and thus any changes in early 2023 were likely not going to move the needle in the Court's analysis. Such a decision does not imply a concession that nothing material had changed for a future motion for attachment filed in the future by a different creditor seeking to establish an alter ego relationship between the new

government and PDVSA based on a different record.  The Republic is entitled to hold Contrarian to the same standard as the other creditors: to prove its case over the *pertinent time*, 100% of which is in the post-Guaidó era.

Finally, citing no authority, Contrarian argues that "because neither the OIEG creditors nor Contrarian will have their attachments issued while sanctions are pending," the pertinent time "is effectively the same."  Opening Brief at 9. This is nonsense. It ignores the indisputable fact that no portion of Contrarian's pertinent time encompassed the events on which the *OIEG* decision was based:  events occurring during the administration of the Interim President. Contrarian's argument would render a nullity the Court's holding that the pertinent time begins when the moving party files its motion for writ of attachment.

**B.**     *The Parties Did Not Actually Litigate Whether PDVSA Is The Republic's Alter Ego Under the Post-Guaidó Government*

Conceding that it must demonstrate the issues on which it seeks collateral estoppel must have been "actually litigated," Contrarian asserts that those issues were "thoroughly litigated in *OIEG*."  Opening Brief at 9.  But conspicuously missing from Contrarian's list of issues that were actively litigated is the issue, crucial to Contrarian's motion, of whether PDVSA was the Republic's alter ego during the period commencing April 26.  By definition, that issue could not have been actively litigated in *OIEG*, where the motions for attachment were filed years earlier, and decided a month earlier, than Contrarian's pertinent period began.

In a footnote, Contrarian makes the undeveloped argument that the Republic and PDVSA may not raise facts not raised in *OIEG*, including the removal of Interim President Guaidó. Opening Brief at 8 n. 5. But arguments made exclusively in footnotes and not developed "are entitled to little weight," *UCB, Inc. v. Accord Healthcare, Inc.*, 201 F. Supp. 3d 491, 542 n.33 (D. Del. 2016), or waived entirely, *see Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, 627 n.6 (D.

Del.) (deeming argument raised solely in a footnote waived).  Moreover, as explained above, the

Republic (and PDVSA) did *not* actually litigate the "issue of ultimate fact" here—the alter ego

relationship from April 26, 2023 to present under the National Assembly government; Contrarian's

footnote is thus inapposite.  In fact, the parties had already completed litigating by November 2022,

and had stipulated in October 2022 that they would rest on the record for purposes of the decision

in that case rather than seek to reopen it to supplement it with new developments between 2021

and October 2022.

The most that could be said is that PDVSA and OIEG did not seek to reopen the extensive

existing record in *that* case between January 2023, when the Guaidó government terminated, and

March 2023, when the Court issued its decision, based on its conclusion that such changes would

not be material to the Court's analysis, which would be primarily based on the extensive evidence

regarding the Guaidó government's relationship with the Ad Hoc Board.  That hardly constitutes

a full and fair opportunity to litigate the issue.[23]

## C.    The Issue Was Not Determined by a Final Judgment

Collateral estoppel also is not appropriate here because the March 23 Opinion is not final.

"[A] prior adjudication of an issue in another action must be sufficiently firm to be accorded

conclusive effect."  *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 541 (3d Cir. 2012).

---

[23] Contrarian does not contend that the stipulation by the parties to the *Gold Reserve* case (involving a motion filed during the Guaidó presidency), which stated that they would "not argue that 'there has been any material change to any relevant fact to the determination(s) the Court must make with respect to the pending alter ego issues since April 2021," supports the application of a collateral estoppel. *Gold Reserve Inc., v. Bolivarian Republic of Venez.*, 22:mc-00453-LPS, D.I. 20, at 3. Nor could they. "[A] fact established in prior litigation by stipulation, rather than by judicial resolution, has not been 'actually litigated'" unless the "parties intend[ed] [the] stipulation to be binding in future litigation." *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 146–47 (2d Cir. 2005) (citing *United States v. Botefuhr,* 309 F.3d 1263, 1282–83 (10th Cir.2002); *United States v. Young,* 804 F.2d 116, 118 (8th Cir.1986); 18 James Wm. Moore et al., *Moore's Federal Practice* § 132.03[2][h][i] (3d ed. 2005)). No such intent was even arguably manifested in the Gold Reserve stipulation.

In *OIEG*, unlike even in *Crystallex*, the Court has not actually issued a writ of attachment or made a final determination that such a writ will issue. Indeed, the Court acknowledged—and Contrarian concedes—that the alter ego decision will not be final until the writ issues, as the "pertinent time is still open and running." *OIEG* D.I. 137, Tr. at 28:3. Moreover, the *OIEG* decision is currently on interlocutory appeal to the Third Circuit, yet another indication that it is not "sufficiently firm" to have preclusive effect. *Free Speech Coal., Inc.*, 677 F.3d at 541 (noting that whether a decision "was[] appealed" is a relevant factor to consider in the finality analysis).

      D.      *The Determination was Not Essential to the Decision*

Even if the issue of the relationship between PDVSA and the Republic now under the National Assembly government were identical to the issue decided in the March 23 Opinion, and even if the relationship between the National Assembly government and PDVSA could be deemed to have been actually litigated on waiver or similar grounds, that determination was not essential to the decision. "[A]ny matter that was 'collaterally in question,' 'incidentally cognizable,' or 'to be inferred by argument from the judgment' is not restricted in a subsequent suit." *Donegal Steel Foundry Co. v. Accurate Prod. Co.*, 516 F.2d 583, 588 (3d Cir. 1975). This is all the more so where, as here, all of the evidence to which the Court pointed to support its alter ego conclusion was developed in the record before January 2023. The pertinent time for certain OIEG creditors had been running for over three years by the time the National Assembly voted to end the mandate of the former Interim President and the 2015 National Assembly. Thus, the 2023 transition of the National Assembly would have been merely "incidentally cognizable" and unlikely to change the course of the Court's conclusion with respect to its alter ego analysis. *See Albanese v. Emerson Elec. Co.*, 552 F. Supp. 694, 700 (D. Del. 1982) (citing *Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir. 1976)) ("[I]t is well settled that a finding made on an issue not necessary to the judgment rendered cannot be used for collateral estoppel purposes in a subsequent action.").

E.   *It Would Be Inequitable to Apply Collateral Estoppel Here*

Contrarian argues that it would be equitable to apply collateral estoppel in this case because the District Court has allowed other creditors (in addition to Crystallex) to attach the PDVH shares. This assertion is factually incorrect. Crystallex remains the only creditor who has attached the shares. *See OIEG* D.I. 151 (order setting briefing schedule to address whether, among other questions, the Court should "issue full, unconditional orders attachment (including by converting conditional grants) to any creditors").

Moreover, the law requires that a judgment creditor attach only the property of the debtor. As this Court has previously noted, the Republic's relationship with PDVSA (the alleged "debtor" in this case) is not fixed. *See Crystallex* D.I. 234 at 11 ("real-world facts or legal consequences are [not] . . . 'frozen in amber'"). The Republic is a foreign sovereign that enacts new statutes, adopts new policy positions, and receives input from different legislators and officials over time. Thus these "real world facts" must be given their due weight by the Court. Indeed, when OIEG attempted to advance the same collateral estoppel argument that Contrarian asserts here, the Court determined that "equitable principles ***disfavor[ed]*** its application" under the circumstances. *OIEG* D.I. 26 at 15 (emphasis added). Specifically, in *OIEG* the Court took note of a change in the "regime of the U.S. sanctions imposed on Venezuela and recent amendment of OFAC's policies and guidance," as well as the "possible consequent changes in the relationship of PDVSA to the Republic." *OIEG* D.I. 26 at 5, 16. In light of those circumstances, the Court determined that the *OIEG* creditors could not invoke collateral estoppel to prove alter ego. *Id.* at 16. The same circumstances that informed the Court's equity analysis in *OIEG* are present here, too. OFAC recently issued revised guidance with respect to the license requirements for certain blocked property under the Venezuelan sanctions regime and there has been a subsequent change in the relationship between PDVSA and the Republic stemming from the 2023 transition in the National

15

Assembly. Accordingly, it would be inequitable to allow Contrarian to shortcut its burden of proof in order to attach property that it has not proven is currently the property of the debtor where it has precluded other judgment creditors from doing the same.

## II. Contrarian Has Failed To Satisfy Delaware's Requirements For A Writ Of Attachment

Contrarian's motion should also be denied because the proposed writ would violate Fed. R. Civ. P. 69(a)(1). Rule 69(a)(1) provides that procedures in aid of executions "must accord with the procedure of the state where the court is located," unless a federal statute applies. The proposed writ would violate Delaware law, and therefore Rule 69, because Contrarian has not proved fraud or injustice, as Delaware law requires.

Under Delaware law, Contrarian may execute against the property of PDVSA only by piercing PDVSA's corporate veil. That is because the judgments are against the Republic, not against PDVSA itself. *See* 8 *Del. C.* § 324(a), 10 *Del. C.* § 5031; *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. 1959).

Deciding whether veil-piercing is appropriate is thus an integral part of the "procedure on execution" and "in proceedings supplementary to and in aid of judgment or execution." Fed. R. Civ. P. 69(a). Whether the veil may be pierced "determines which assets may be reached," which is exactly the issue that Rule 69(a) leaves to state law. *Pac. Reinsurance Mgmt. Corp. v. Fabe*, 929 F.2d 1215, 1219 (7th Cir. 1991); *see United States v. Yazell*, 382 U.S. 341, 355 (1966); *United States v. Miller*, 229 F.2d 839, 841 (3d Cir. 1956). Accordingly, federal courts applying Rule 69(a) regularly follow state law in determining whether the assets of a party that is not the subject of a judgment may be reached by piercing the corporate veil. *See, e.g.*, *Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc.*, 356 F.3d 731, 737 (7th Cir. 2004) (collecting cases); *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148-49 (9th Cir. 2004); *Sys. Div., Inc. v.*

*Teknek Elecs., Ltd.*, 253 F. App'x 31, 34-35 (Fed. Cir. 2007); *Trust v. Kummerfeld*, 153 F. App'x 761, 762 (2d Cir. 2005).[24]

To pierce the corporate veil between PDVSA and the Republic, Delaware requires not only proof of the extraordinary disregard of the separate status of the alleged alter ego that is necessary to overcome the FSIA's protection, but also a "showing [of] fraud—not just extensive control—to seize the property of a non-debtor like PDVSA." *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 24 F.4th 242, 247-48 (3d Cir. 2022); *see also Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) ("Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice. Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." (cleaned up)). Contrarian has attempted no such showing. This represents an independently sufficient reason why Contrarian's motion must be denied.

Under the Rules Enabling Act, Rule 69(a) is binding on the courts—which means that, pursuant to a federal statute, Rule 69(a) itself has the force and effect of a federal statute. *See* 28 U.S.C. § 2072(b); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988) (holding that a rule issued under the Rules Enabling Act is, "in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions"); *Bright v. United States*, 603 F.3d 1273, 1279 (Fed. Cir. 2010).

---

[24] Even if—contrary to all those decisions—Rule 69(a) were somehow inapplicable here, Delaware law would *still* apply, because the FSIA provides that, "when a foreign state is not immune from suit," it is treated like a "private party," including as to "the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza*, 142 S. Ct. 1502, 1508-09 (2022) (citing 28 U.S.C. § 1606).

Consequently, federal common law cannot displace Rule 69's express directives.  And one of those directives is Rule 69(a)'s mandate that "[t]he procedure on execution . . . must accord with the procedure of the state where the court is located."  Fed. R. Civ. P. 69(a); *see City of Milwaukee*, 451 U.S. at 323 & 324 n.18 (federal common law may fill "interstice[s]" left by statutes, but "disagreement" with statutory law "is no basis for the creation of federal common law"); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993) (declining to "extend the federal common law to discovery motions" when "Rules 5(d) and 26(c) of the Federal Rules of Civil Procedure" govern); *Showan v. Pressdee*, 922 F.3d 1211, 1223 (11th Cir. 2019) (a federal rule "governs" so long as it is "sufficiently broad to control the issue before the Court," and "federal common law" applies only where "no Federal Rule answers the question in dispute" (citations omitted)); *see also, e.g.*, *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 100 n.6 (1991) (explaining that an issue "is now governed not by a federal common law doctrine of demand but rather by the express terms of Federal Rule of Civil Procedure 23.1"); 28 U.S.C. § 1606.

The Republic recognizes that the Court has stated that the Third Circuit "previously rejected these contentions."  March 2023 Opinion, 2023 WL 2609248, at *29.  But the Court had previously declined to consider the Delaware law issue because (in its view) "PDVSA and its subsidiaries had failed to preserve the issue after an adequate opportunity to do so."  *Crystallex*, 24 F.4th at 249.  The appeal now pending in *OIEG* might provide guidance on this issue, and in any event, Contrarian—holders of debt securities that were explicitly the obligations of the Republic, not PDVSA—are not situated similarly to Crystallex, which claimed (but offered no proof) that its assets were expropriated by the Republic and given to PDVSA.  *See Crystallex*, 932 F.3d 126, 133 (3d Cir. 2019).  Even if it is assumed (contrary to the record) that the issue of the

application of Delaware law was waived or was actually litigated in *Crystallex*, that issue is not identical to that presented by Contrarian's motion.

## III. The Republic Reserves Its Arguments Relating to Sanctions and Seizure Of The Certificate

For avoidance of doubt, the Republic continues to maintain that writs cannot be issued for the reasons explained in its recently-filed briefs concerning additional judgments in the *Crystallex* matter. *See Crystallex* D.I. 561 at 4-5; D.I. 571 at 13.

## CONCLUSION

For each of the reasons set forth above, the Republic respectfully urges the Court to deny Contrarian's motion for a conditional writ of attachment.

Dated: June 2, 2023

Respectfully submitted,

*/s/ Stephen C. Childs*

OF COUNSEL:

A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Brendan B. Gants
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com
Elaine.Goldenberg@mto.com
Ginger.Anders@mto.com
Brendan.Gants@mto.com

ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

*Attorneys for Bolivarian Republic of Venezuela*

George M. Garvey
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com