**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PETRÓLEOS DE VENEZUELA, S.A., PDVSA
PETRÓLEO, S.A., and PDV HOLDING, INC.,

Plaintiffs,

- against -

MUFG UNION BANK, N.A. and GLAS AMERICAS
LLC,

Defendants.

Case No: 19-cv-10023-KPF

**PDV HOLDING, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO MODIFY THE PARTIAL STAY PENDING APPEAL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ..............................................................................................................3

I.    THE COURT PARTIALLY STAYED ITS FINAL JUDGMENT FOLLOWING
PRUDENT CONSIDERATION OF THE POST-JUDGMENT RECORD ......................3

II.    SINCE 2020, THE VALUE OF THE COLLATERAL AND PLAINTIFFS'
LIKELIHOOD OF SUCCESS ON APPEAL HAVE INCREASED .................................6

III.    THE SANCTIONS REGIME CONTINUES TO PROHIBIT ENFORCEMENT
OF THE FINAL JUDGMENT ..........................................................................7

ARGUMENT ...................................................................................................................8

I.    DEFENDANTS HAVE FAILED TO JUSTIFY RECONSIDERATION OF THIS
COURT'S INDEPENDENT EQUITABLE BASIS FOR THE PARTIAL STAY ............8

II.    DEFENDANTS HAVE FAILED TO JUSTIFY MODIFICATION OF THE
STAY UNDER RULE 62(b) ...........................................................................14

    A.    Rule 62(b) Provides for an Automatic Stay as a Matter of Right and
Defendants Have Waived Any Request for A Supplemental Bond .....................14

    B.    The Pledge Agreement Continues to Provide Adequate Security for the
Pledged CITGO Shares .................................................................................14

    C.    The Value of the Collateral Has Increased Since 2020 .........................................18

    D.    Defendants' Concerns Regarding the Collateral's Value Are Speculative
and Ignore Their Alternative Remedies ..............................................................19

        1.    Defendants Have Failed to Show Actual Changed Circumstances
Warranting Modification of this Court's Partial Stay Under Rule 62(b) .....19

        2.    Defendants Have Alternative Remedies to Protect Their Unstayed Money
Judgment ...............................................................................................22

    E.    Defendants' Proposed Order Amounts to a Legally Deficient Request for
Injunctive Relief ..........................................................................................23

CONCLUSION ...............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re A2P SMS Antitrust Litig.*,
No. 12-cv-2656 (AJN), 2014 WL 4247744 (S.D.N.Y. Aug. 27, 2014).................................10

*ACL1 Inv. LTD. v. Bolivarian Republic of Venezuela*,
No. 1-19-cv-09014-LLS (S.D.N.Y. Dec. 7, 2020), ECF No. 52 .............................................12

*In re Bakery & Confectionary Union & Indus. Int'l Pension Fund Pension Plan*,
No. 11-cv-1471 (VB), 2013 WL 12444540 (S.D.N.Y. Jan. 29, 2013)....................................16

*Carlos Eduardo Lorefice Lynch v. R. Angel Gonzalez Gonzalez*,
C.A. No. 2019-0356-MTZ (Del. Ch. June 22, 2020)...............................................................24

*Cohen v. Metro. Life Ins. Co.*,
334 F. App'x 375 (2d Cir. 2009) .............................................................................................14

*Confederated Tribes & Bands of Yakama Nation v. Airgas USA, LLC*,
No. 3:17-cv-00164-JR, 2020 WL 13180198 (D. Or. June 16, 2020) .....................................19

*Conocophillips Gulf of Paria B.V. v. Corporacion Venezolana Del Petroleo*,
No. 19-cv-07304-LGS (S.D.N.Y. Dec. 3, 2020), ECF No. 53 ................................................12

*Contrarian Cap. Mgmt, L.L.C. et al. v. Bolivarian Republic of Venezuela*,
21-mc-00018-LPS (July 21, 2023), ECF No. 47 ....................................................................23

*Contrarian Cap. Mgmt. LLC. v. Bolivarian Republic of Venezuela*,
No. 1-19-cv-11018-AT-KNF (S.D.N.Y. Oct. 16, 2020), ECF No. 81 ...................................12

*In re Crystallex Int'l Corp.*,
11-14074-LSS (Nov. 28, 2022), ECF No. 373 .......................................................................22

*Crystallex Int'l Corp.* v. *Bolivarian Rep. of Venez.*,
No. 17-mc-00151-LPS (D. Del. Aug. 23, 2018)............................................................. *passim*

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
No. 16-cv-661 (RC) (D.D.C. Apr. 7, 2017), ECF No. 33......................................................12

*Donges v. USAA Fed. Sav. Bank*,
No. CV-18-00093-TUC-RM, 2019 WL 3208076 (D. Ariz. July 16, 2019).....................16, 19

*FTC v. Shkreli*,
No. 20-cv-00706-DLC, 2022 WL 814071 (S.D.N.Y. Mar. 17, 2022) ..............................17, 18

*Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela*,
  No. 14-cv-2014-JEB (D.D.C. Nov. 20, 2015), ECF No. 41 ...................................................12

*Milton Hosp. v. Thompson*,
  No. CIVA 04-1497 RWR, 2007 WL 1549078 (D.D.C. May 25, 2007)...............................19

*Mohr v. MLB Sub I, LLC*,
  No. 16-00493 ACK-WRP, 2020 WL 3803847, at *4-5 (D. Haw. July 7, 2020)....................16

*Mottolese v. Kaufman*,
  176 F.2d 301 (2d Cir. 1949).......................................................................................................19

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
  883 F.3d 32 (2d Cir. 2018)..........................................................................................................24

*N. Ind. Pub. Serv. Co. v. Carbon Cnty. Coal Co.*,
  799 F.2d 265 (7th Cir. 1986) ......................................................................................................19

*In re Nassau*,
  783 F.3d 414 (2d Cir. 2015).........................................................................................................25

*Nken v. Holder*,
  556 U.S. 418 (2009)................................................................................................................9, 24

*Northrop Grumman Ship Sys., Inc. v. The Ministry of Def. of the Republic of Venezuela*,
  No. 1-02-cv-785-HSO-RHW (S.D. Miss. Jun. 4, 2020), ECF No. 425...................................12

*OI European Grp. B.V. v. Bolivarian Republic of Venezuela*,
  No. 16-cv-1533 (ABJ) (D.D.C. May 21, 2019), ECF No. 86....................................................12

*Ortiz v. Stambach*,
  No. 1:16-cv-00321-EAW, 2023 WL 3089087 (W.D.N.Y. Apr. 26, 2023) .............................17

*Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
  20-3858 (2d Cir. Jan. 8, 2021), ECF No. 82.......................................................................4, 10

*Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
  51 F.4th 456 (2d Cir. 2022) .....................................................................................................6, 9

*Petróleos de Venezuela S.A., et al., v. MUFG Union Bank, N.A. et al.*,
  CTQ-2022-03 (N.Y. Ct. App. 2022).......................................................................................6, 13

*Phillips Petroleum Co. and ConocoPhillips Perozuata B.V. v. Petroleos De Venezuela*,
  No. 18-cv-03716-VEC (S.D.N.Y. Aug. 23, 2018), ECF No. 25 .............................................12

*Phillips Petroleum Co. Venezuela Ltd et al. v. Petroleos de Venezuela, S.A. et al.*,
    No. 19-mc-00342 (D. Del. Nov. 26, 2019), ECF Nos. 1-2 ..............................................4

*In re Platinum-Beechwood Litig.*,
    469 F. Supp. 3d 105 (S.D.N.Y. 2020) ..........................................................................9

*Pryor v. Jaffe & Asher, LLP*,
    992 F. Supp. 2d 252 (S.D.N.Y. 2014) ......................................................................9, 14

*Richardson v. Prisoner Transp. Servs. of Am.*,
    No. 3:15-cv-01061-ARC, 2019 WL 1003624 (M.D. Pa. Feb. 27, 2019) ..............................18

*Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*,
    No. 16-cv-02020 (RJL) (D.D.C. Mar. 02, 2018), ECF No. 22 ...............................12

*SEC v. Mut. Benefits Corp.*,
    No. 04-cv-60573-FAM, 2022 WL 3715982 (S.D. Fla. Aug. 29, 2022) ...............................19

*Seneca Nation of Indians v. State*,
    No. 19-CV-735S, 2019 WL 6768779 (W.D.N.Y. Dec. 12, 2019) ...........................14

*Thapa v. Gonzales*,
    460 F.3d 323 (2d Cir. 2006) ..........................................................................9

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
    No. 17-cv-1457 (TJK) (D.D.C. Jan. 25, 2019), ECF No. 23 ...................................12

*William Gluckin & Co. v. Int'l Playtex Corp.*,
    407 F.2d 177 (2d Cir. 1969) ..........................................................................24

## Other Authorities

31 C.F.R. § 591.309 ...........................................................................................7

31 C.F.R. § 591.310 ...........................................................................................7

E.O. 13808 .......................................................................................................7

E.O. 13850 .......................................................................................................7

E.O. 13884 .......................................................................................................7

Fed. R. Civ. P. 41(a)(2) .......................................................................................22

PDV Holding, Inc. ("PDVH") respectfully submits this memorandum of law in opposition to the motion (ECF No. 252) filed by MUFG Union Bank, N.A. and GLAS Americas LLC ("Defendants") to modify this Court's stay of its December 1, 2020 judgment (ECF No. 241).

## PRELIMINARY STATEMENT

Defendants' motion is a transparent attempt to moot Plaintiffs' appeal of this Court's judgment by converting the Court's partial stay into an effective injunction against settlements of litigation before other courts, thereby pressuring Petróleos de Venezuela S.A. ("PDVSA"), PDVSA Petróleo, S.A., and PDVH to settle with Defendants now at a premium. Having strategically declined to take any steps to enforce the unstayed money judgment awarded to them in December 2020, Defendants should not be permitted to transform the stay this Court entered into a vehicle that would moot the appeal, irreparably harm PDVH, and interfere with efforts to resolve other creditor claims pending before other courts.

Defendants do not even attempt to engage with this Court's two independent bases for entering the limited stay. *First*, Defendants ignore that this Court entered a partial stay of the judgment *as to PDVH* pursuant to its equitable authority, because permitting enforcement of that particular part of the judgment would "clearly" cause irreparable harm to PDVH. And the equitable rationales for the Court's partial stay have only strengthened over time. The appeal that this Court sought to enable is nearing resolution, and the Second Circuit's decision to certify a number of first-impression choice-of-law questions to the New York Court of Appeals further demonstrates its importance. With briefing complete and argument before New York's highest Court expected soon, granting Defendants the relief they seek would effectively freeze the assets of CITGO Holding, Inc. ("CITGO Holding") and CITGO Petroleum ("CITGO") (together, the "CITGO Entities"), obstruct the ability of PDVSA and PDVH to explore resolution of billions of dollars of creditor claims before the United States District Court in Delaware, and even enable Defendants

to vote the shares of CITGO Holding (the very remedy this Court stayed) to install their own Board of Directors and, presumably, initiate a foreclosure sale. For the same reasons as when it granted the current stay, this Court should conclude that Defendants' proposed relief would cause irreversible harm to CITGO, its employees, CITGO's parent companies, and Venezuelan ownership of the "crown jewel" of its foreign assets. Weighed against that harm, Defendants have shown no cognizable injury by continuing the partial stay, which adequately protects their rights *as to PDVH* by preserving a first-lien security interest in the pledged shares of CITGO Holding (the "CITGO Shares") that would survive any judicial sale or settlements in the *Crystallex* action.

*Second*, Rule 62(b) also continues to warrant the existing partial stay. As the Court already explained in its stay order, "[t]he Pledge Agreement suffices to satisfy the 'other security' requirement of Rule 62(b), as it assures that the Pledged Shares will be maintained in their current form for the duration of the appeal." ECF No. 241 at 3. The Pledged Shares remain unencumbered in the possession of the Collateral Agent. Moreover, the value of the Collateral has substantially increased during the stay: what Defendants said was worth at most $1.34 billion in December 2020 is today publicly valued at approximately $13 billion. Defendants again ignore that this Court stayed *only* their judgment as to PDVH (and *not* their judgment against PDVSA). And as to PDVH, Defendants are not entitled to any specific amount of money or value—instead, they are entitled only to what the Pledge Agreement provides: the preservation of their right to access and foreclose on 50.1% of the shares of CITGO Holding. With those rights fully intact, Defendants have failed to show changed circumstances that would warrant modifying the partial stay under Rule 62(b).

Further, Defendants have not demonstrated that any of the so-called "risks" deriving from potential settlements in *Crystallex* are of real moment. There are no executed or imminent settlement agreements, and numerous preconditions stand between the use of CITGO assets to

satisfy judgments of PDVSA or the Republic, including requisite approvals by the Executive Branch and the District Court in *Crystallex*. And, as the National Assembly's Commission overseeing PDVSA and its U.S. subsidiaries has publicly stated, there is no plan or intent to reach settlements in an amount that would remotely threaten the security of Defendants' judgment.

Finally, Defendants' requested relief is not tailored to any of the speculative risks they conjure. Instead, it is designed to moot the appeal by authorizing the Noteholders to vote the shares of CITGO Holding and install their own directors, or at minimum, to create an effective injunction that would prevent PDVSA or the Republic from agreeing to any settlements with other creditors unless and until Plaintiffs abandon their pending appeal and pay Defendants' ransom. None of this is remotely warranted by the record before this Court, any established equitable principles, or precedents interpreting Rule 62(b). In sum, nothing in Defendants' motion warrants reconsideration or revision of this Court's partial stay.

## **BACKGROUND**

I.   **THE COURT PARTIALLY STAYED ITS FINAL JUDGMENT FOLLOWING PRUDENT CONSIDERATION OF THE POST-JUDGMENT RECORD.**

On December 1, 2020, this Court entered its final judgment, awarding a money judgment against PDVSA and PDVSA Petróleo of approximately $1.924 billion in principal and interest under the 2020 Notes. ECF No. 229 (the "Final Judgment"). The Final Judgment also declared that the Trustee is entitled to enforce the Pledge Agreement against PDVH, including by directing the Collateral Agent to sell the Collateral to satisfy the money judgment against PDVSA. *Id.* at 2-3. Plaintiffs appealed to the Second Circuit on December 11, 2020, and PDVH filed its motion for partial stay of execution of the Final Judgment pending appeal the same day. ECF Nos. 232, 233.

In opposing the stay, Defendants highlighted the financial uncertainty faced by PDVH's direct and indirect subsidiaries CITGO Holding and CITGO, and whether their value would satisfy

the money judgment. Thus, Defendants emphasized the considerable economic challenges posed to CITGO by a pandemic that had battered the refining industry. Defendants noted CITGO's considerable reported losses and the CITGO Entities' credit profile struggles. *See* ECF No. 237 at 16 (referencing CITGO net quarterly loss of $248 million in 2020); ECF No. 238-2 (S&P Global Ratings). And Defendants stressed, invoking the PDVSA Parties' expert, that "as of July 2019 the Collateral was worth only $1.34 billion—well below the more than $1.9 billion of principal and interest outstanding on the 2020 Notes." ECF No. 237 at 16 (citation omitted).

Defendants were also well aware of PDVH and the CITGO Entities' engagement in creditor proceedings in the District of Delaware, which had been underway for years, and in which creditors of the Chavez and Maduro regimes were seeking payment of billions of dollars of debts of the Republic and PDVSA. By the time the Court entered the stay, Crystallex had received a writ of attachment for its judgment of $1,202,000,000, and ConocoPhillips Petrozuata B.V. had applied for a writ for its judgment of over $1,270,000,000. *See Crystallex Int'l Corp.* v. *Bolivarian Rep. of Venez.* ("*Crystallex*"), No. 17-mc-00151-LPS (D. Del. Aug. 23, 2018), ECF No. 95; *Phillips Petroleum Co. Venezuela Ltd et al. v. Petroleos de Venezuela, S.A. et al.*, No. 19-mc-00342 (D. Del. Nov. 26, 2019), ECF Nos. 1-2. Defendants knew of these and many more judgments and had the opportunity to participate in that ongoing litigation. *See Crystallex*, No. 17-mc-00151-LPS (D. Del. Dec. 12, 2019), ECF No. 154, Ex. A at 13 (granting permission to intervene to two beneficial holders).[1] This Court also was apprised of the *Crystallex* proceedings and referenced them when entering the stay. *See, e.g.*, ECF No. 241 at 5 n.5.[2]

---

[1] "Ex. __" refers to exhibits annexed to the accompanying declaration of Michael J. Gottlieb.

[2] The Second Circuit, too, was aware of other creditor judgments and litigation when denying Defendants' motion to expedite the appeal. *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 20-3858 (2d Cir. Jan. 8, 2021), ECF No. 82 (motion to expedite), at 13-15, 16-17; *id.* (2d Cir. Jan. 25, 2021), ECF No. 96 (denying motion).

The Court granted PDVH's motion for a partial stay on December 29, 2020. ECF No. 241. The Court found that PDVH was entitled to a stay as a matter of right under Rule 62(b) because the Pledge Agreement provides adequate security to protect Defendants' interest in a controlling share of CITGO Holding, and thus any additional bond or security was unnecessary. *Id.* at 3-4. The Court specifically observed that the Pledge Agreement "assures that the Pledged Shares will be maintained in their current form for the duration of the appeal." *Id.* at 3.

This Court also concluded that the circumstances warranted exercise of its equitable authority to grant a partial stay: "[G]iven PDVH's representations as to the potential consequences of the execution of the Final Judgment on PDVH and the CITGO Entities, not to mention the potential collateral political consequences … *the Court easily concludes that PDVH has established irreparable injury*, one of the most 'critical' factors in this [equitable] analysis." *Id.* at 5 n.5 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)) (emphasis added). In light of "Defendants' position that the Indenture and Pledge Agreement contemplate an immediate nonjudicial foreclosure and eventual sale of the Collateral in case of an Event of Default," and their "intent to exercise this remedy if sanctions are lifted during the pendency of PDVH's appeal, which would effectively moot the appeal," the Court ruled that a partial stay was "warranted to allow PDVH the opportunity to pursue its appeal." ECF No. 241 at 1-2.

Accordingly, the Court stayed execution of the Final Judgment "with respect to all portions of the Final Judgment pertaining to the Pledge Agreement." *Id.* at 5. The partial stay precludes the Trustee and the Collateral Agent from "attempt[ing] to enforce the Pledge Agreement or otherwise to exercise any rights, remedies, or privileges purportedly arising from a default or Event of Default under the Pledge Agreement, including by attempting to sell the collateral securing the

2020 Notes." *Id.* at 7. Plaintiffs did not seek, and this Court did not enter, a stay of the money judgment against PDVSA and PDVSA Petróleo. Defendants did not appeal this Court's order.

## II. SINCE 2020, THE VALUE OF THE COLLATERAL AND PLAINTIFFS' LIKELIHOOD OF SUCCESS ON APPEAL HAVE INCREASED.

Since December 2020 (when this Court granted a partial stay), economic conditions in the refining sector have vastly improved. In 2022, CITGO reported its net income as $2.8 billion, and in the first quarter of 2023, net income was $937 million; meanwhile, Fitch has awarded a rating outlook for CITGO and CITGO Holding as stable. *See* Ex. B; Ex. C; Ex. D. Public reporting cited by Defendants estimates CITGO's current valuation at $13 billion. *See* ECF No. 255-1.

On October 13, 2022, the Second Circuit certified questions of New York law to the New York Court of Appeals, and stressed the merits of Plaintiffs' arguments. As the court observed, "the statute appears to call for the application of Venezuelan law to determine the 'validity' of the 2020 Notes," and "the plain language of [UCC] Article 8 and associated commentary support applying Venezuelan law to determine the validity of the 2020 Notes in light of Articles 150 and 187(9) of the Venezuelan Constitution." *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 468, 469 (2d Cir. 2022). The court also recognized "a colorable argument that … Venezuela has the 'materially greater interest' over the 'particular issue' of PDVSA's authority or capacity to execute the Exchange Offer without National Assembly approval." *Id.* at 473 (quoting Restatement (Second) of Conflict of Laws § 187(2) (1971)).[3]

---

[3] The parties concluded merits briefing before the New York Court of Appeals on July 25, 2023, and are awaiting oral argument. *See Petróleos de Venezuela S.A., et al., v. MUFG Union Bank, N.A. et al.*, CTQ-2022-03 (N.Y. Ct. App. 2022).

### III.     THE SANCTIONS REGIME CONTINUES TO PROHIBIT ENFORCEMENT OF THE FINAL JUDGMENT.

As when the stay was entered, the existing U.S. sanctions regime restricts Defendants' ability to take action with respect to the pledged CITGO Holding shares. On July 18, 2023 (after Defendants filed their motion to modify the stay), the United States issued General License 5L further suspending the authorization of "all transactions related to, the provision of financing for, and other dealings in the [2020 Notes]" until October 20, 2023. Ex. E. General License 5L is the latest of twelve consecutive suspensions of the license and it is virtually identical to General License 5E—the license in effect when this Court entered the stay.

The sanctions regime continues to limit PDVH's ability to post a bond, just as it did when the Court entered the stay. Specifically, PDVH is prohibited from posting a bond, or transferring any blocked property to third parties, without first obtaining a specific license from OFAC authorizing it to execute such a transaction. Under current sanctions, U.S. persons may not participate in any transaction related to the issuance of any debt, including the issuance of any bonds, by any PDVSA subsidiary, including PDVH, where the debt has a maturity greater than 90 days. E.O. 13808 Sec. 1(a)(i). Current sanctions also restrict the transfer of any property of the Government of Venezuela, including any transfer of PDVH funds. E.O. 13850, E.O. 13884; *see also* 31 C.F.R. § 591.310 (defining the term "transfer") and 31 C.F.R. § 591.309 (defining the term "property"). At this time, OFAC has not issued any specific license that would authorize PDVH to issue a bond, or to otherwise transfer any of its property to a third party. *See, e.g.*, OFAC FAQ Nos. 401 & 808 ("[A] specific license from OFAC is required for . . . the enforcement of . . . [an] order . . . purporting to transfer or otherwise alter or affect property or interests in [blocked] property"); *see also* E.O. 13808; E.O. 13850; E.O. 13884; General Licenses 2A and 7C.

7

In recent months, OFAC has issued or revised guidance implicating this and other creditor litigation. Among this guidance, on May 1, 2023, OFAC indicated with respect to the *Crystallex* litigation that while it would not take enforcement action against, *inter alia*, prefatory steps in the court's Sales Procedure Order, "an additional license will be required before any sale is executed.

In making these licensing determinations, OFAC is committed to fair and equivalent treatment of potential creditors." ECF No. 255-5 (FAQ 1123). At the same time, OFAC provided holders of the PDVSA 2020 bonds with flexibility necessary to "preserve" their "ability to enforce bondholder rights to the CITGO shares serving as collateral for the PdVSA 2020 8.5 percent bond" by adopting a policy of non-enforcement. *See* ECF No. 255-23 (FAQ 1124). This policy enables the Noteholders to take steps to preserve their rights, such as by participating in the *Crystallex* sales process, yet still requires a license for the Noteholders to execute on their Collateral, or to enter into any settlement agreement relating to the notes. *Id.*

Finally, OFAC issued General License 42 authorizing transactions that are "ordinarily incident and necessary to the negotiation of settlement agreements" with the Venezuelan National Assembly or its appointees. *See* ECF No. 255-4. In FAQ 1125, OFAC clarified that "GL 42 does not authorize the entry into settlement agreements, contingent or otherwise. Parties that have negotiated a settlement agreement pursuant to GL 42 will need to seek a specific license for entry into that agreement." Ex. F. Thus, settlement agreements involving creditors of the Republic or PDVSA require parties to apply for and receive a specific license from OFAC.

## **ARGUMENT**

### I.   **DEFENDANTS HAVE FAILED TO JUSTIFY RECONSIDERATION OF THIS COURT'S INDEPENDENT EQUITABLE BASIS FOR THE PARTIAL STAY.**

Defendants' motion should be denied because they have failed to challenge this Court's independent equitable basis for entry of the partial stay. In addition to finding a partial stay

appropriate under Rule 62(b), this Court held that the stay was also warranted pursuant to its equitable discretion. ECF No. 241 at 4-5 & n.5. Defendants' present motion does not challenge (or seek relief from) that determination. By failing to challenge the Court's equitable basis for the stay, Defendants have waived any such challenge—and this Court should disregard any new arguments regarding the issue Defendants may raise on reply. *See Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 260 (S.D.N.Y. 2014) (Failla, J.) ("[A] court should not consider arguments that are raised for the first time in a reply brief.") (internal quotation marks and citation omitted); *see also In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 118 n.15 (S.D.N.Y. 2020).

Even if Defendants had raised this argument, the equitable factors favoring the existing stay—the likelihood of success, irreparable injury, injury to the other parties, and the public interest—have only grown stronger since 2020. *See* ECF No. 241 at 5 n.5; *Nken*, 556 U.S. at 434 (articulating equitable factors); *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (factors apply on "sliding scale" where "more of one excuses less of the other") (internal quotation marks and citations omitted). Each of these factors counsels in favor of maintaining the stay.

*First*, PDVH's strong showing of likelihood of success in 2020 is indisputably stronger now. This Court has long acknowledged the difficult and complex legal questions this case presents. *See* Sept. 25, 2020 Hr'g Tr. 6:25-7:5 (observing that this case has "some very, very difficult questions," involving "very, very complicated issues of law"). In certifying the choice-of-law questions, the Second Circuit noted its view that "the plain language of Article 8 and associated commentary support applying Venezuelan law to determine the validity of the 2020 Notes in light of Articles 150 and 187(9) of the Venezuelan Constitution." *Petróleos de Venezuela*

*S.A.*, 51 F.4th at 469.[4] If the New York Court of Appeals confirms the Second Circuit's impressions, the PDVSA Parties will prevail on appeal, and further proceedings will be required to determine whether, *inter alia,* the Pledge is a legally enforceable instrument. These serious questions and the clear balance of hardships also tilt this factor in PDVH's favor. *See In re A2P SMS Antitrust Litig.*, No. 12-cv-2656 (AJN), 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014).

*Second*, nothing since 2020 has changed the factors that led this Court to "easily conclude that PDVH has established irreparable injury." ECF No. 241 at 5 n.5. Indeed, the Court found the stay warranted on this factor alone. *Id.* That reasoning applies just as forcefully today. Now, just as in 2020, permitting Defendants to vote the CITGO Shares while the appeal remains pending would allow them to install their own Board of Directors and initiate a foreclosure sale, which would "permanently and irrevocably deprive PDVH (and its shareholders) of majority ownership and control over CITGO." *Id.* at 7. Likewise, just as in 2020, granting the Noteholders control of the disputed CITGO Shares could disrupt U.S. oil supply and inject uncertainty into the lives of thousands of CITGO Petroleum employees. *Id.* And it remains true that premature execution of the Final Judgment would have disastrous consequences for the Venezuelan pro-democracy parties. *See, e.g.*, Ex. G at 1 (the loss of CITGO would "likely influence" Venezuelan elections, "having a negative impact on public opinion which would benefit the Maduro regime, that has repeatedly accused the opposition of losing CITGO").

*Third*, Defendants will not suffer any cognizable injury as a result of maintaining the present stay. Today, just as in 2020, the Pledge adequately secures the Collateral by ensuring that Defendants will have access to the CITGO Shares in the event they prevail on appeal. ECF No.

---

[4] Defendants have contributed to the appeal's longevity via extensions before the Second Circuit and New York Court of Appeals.  *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 20-3858, (2d Cir. Jan. 8, 2021), ECF No. 82; Ex. H.

241 at 3. Defendants will *still* hold a first-lien security interest in the CITGO Shares, and any sale (or settlement) in the *Crystallex* litigation can only occur subject to this existing security interest. *See* ECF 106-11 ("Pledge Agreement") § 2.03(b); *see also id.* § 2.06(c) (creating "valid, perfected, first-priority security interest in the Collateral"). Likewise, the CITGO Shares *still* remain in the possession of the Collateral Agent. If anything, improved market conditions have caused the value of the shares to increase substantially since 2020. *See infra* at 18-19. Meanwhile, U.S. sanctions continue to prohibit PDVSA or PDVH from transferring, encumbering, pledging, or otherwise altering rights to the CITGO Shares absent an express OFAC license. *See supra* at 7-8.

To the extent Defendants have articulated *any* harm, it is a speculative risk that could come to pass only if numerous contingent acts occur. For starters, the Council for the Administration and Protection of the Assets ("CAPA"), which oversees PDVSA, has expressly disclaimed any intent to engage in the kind of irresponsible leveraging of the CITGO Entities that forms the gravamen of Defendants' motion. Ex. G. CAPA, PDVSA, PDVH, and CITGO all understand that CITGO cannot incur an amount of debt that would come close to satisfying the total amount of creditor claims in Delaware. Further, there are no executed or imminent settlement agreements with other creditors. Declaration of Fernando Vera ¶ 2. In any event, executing settlements with Republic or PDVSA creditors would require: (1) a transactional license from OFAC; (2) approvals by all parties to the claim, including the Venezuelan National Assembly; and (3) an order of dismissal from the District Court in Delaware. For its part, OFAC has committed to the "fair and equivalent treatment of potential creditors," FAQ 1123, and authorized the Noteholders to participate in the *Crystallex* proceedings to preserve their rights, FAQ 1124. Thus, Defendants have extant remedies obviating any basis for granting their requested relief.

Moreover, any cognizable harm is of Defendants' own making. This Court's partial stay has never prevented Defendants from taking steps to enforce their money judgment against PDVSA and PDVSA Petróleo. The partial stay that PDVH sought, and this Court entered, pertains only to the Pledge. Thus, at any point since 2020, Defendants could have registered their judgment in the District Court in Delaware and sought to obtain the same writ of attachment as those secured by other creditors. In fact, the Noteholders were offered the opportunity to participate as an intervenors in the *Crystallex* action—an opportunity they declined. No. 17-mc-00151-LPS (D. Del. May 5, 2021), ECF No. 276, Ex. I (withdrawing from discussions with Special Master). This Court should not excuse Defendants from declining to enforce their unstayed judgment in Delaware by retroactively converting the partial stay into an effective injunction designed to prohibit the Republic and PDVSA from executing settlement agreements in that very court.[5]

---

[5] Notably, many of the judgments underlying creditors' applications for writs for attachment in *Crystallex* existed, in a total amount vastly exceeding Defendants' money judgment, at the time the partial stay was entered. *See Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela*, No. 14-cv-2014-JEB (D.D.C. Nov. 20, 2015), ECF No. 41 (awarding $713,032,000 plus pre- and post-judgment interest and fees); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 16-cv-661 (RC) (D.D.C. Apr. 7, 2017), ECF No. 33 ($1,202,000,000 plus pre-judgment interest); *Phillips Petroleum Co. and ConocoPhillips Perozuata B.V. v. Petroleos De Venezuela*, No. 18-cv-03716-VEC (S.D.N.Y. Aug. 23, 2018), ECF No. 25 ($1,271,076,739.34. plus interest); *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 16-cv-02020 (RJL) (D.D.C. Mar. 02, 2018), ECF No. 22 ($967,777,002 plus pre- and post-judgment interest and costs); *Phillips Petroleum Co. v. Petroleos De Venezuela*, No. 18-cv-03716-VEC (S.D.N.Y. Aug. 23, 2018), ECF No. 25 ($434,884,356 plus pre- and post-judgment interest); *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. 17-cv-1457 (TJK) (D.D.C. Jan. 25, 2019), ECF No. 23 (over $36 million plus pre- and post-judgment interest); *OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 16-cv-1533 (ABJ) (D.D.C. May 21, 2019), ECF No. 86 ($372,461,982 plus post-judgment interest and costs); *Northrop Grumman Ship Sys., Inc. v. The Ministry of Def. of the Republic of Venezuela*, No. 1-02-cv-785-HSO-RHW (S.D. Miss. Jun. 4, 2020), ECF No. 425 ($137,977,646 plus post-judgment interest and costs); *Contrarian Cap. Mgmt. LLC. v. Bolivarian Republic of Venezuela*, No. 1-19-cv-11018-AT-KNF (S.D.N.Y. Oct. 16, 2020), ECF No. 81 (over $140 million plus pre- and post-judgment interest); *Conocophillips Gulf of Paria B.V. v. Corporacion Venezolana Del Petroleo*, No. 19-cv-07304-LGS (S.D.N.Y. Dec. 3, 2020), ECF No. 53 ($48,008,707 plus post-judgment interest); *ACL1 Inv. LTD. v. Bolivarian Republic of Venezuela*, No. 1-19-cv-09014-LLS (S.D.N.Y. Dec. 07, 2020), ECF No. 52 (over $57 million plus pre- and post-judgment interest).

*Fourth*, the public interest continues to favor a stay. Defendants' objective in enforcing the Pledge is to seize ownership of CITGO—Venezuela's most important foreign asset. The relief Defendants now demand—conditions allowing them either to vote the shares of CITGO Holding or imposing intrusive restrictions on CITGO's operations—would moot the appeal and threaten PDVSA and the Venezuelan people's ownership of CITGO. *See* Ex. G at 2 ("[T]he loss of CITGO would severely hinder the possibility for an expedient economic recovery for Venezuela, which would prolong … the migration crisis that has affected the region, including the United States.").

U.S. policy, moreover, continues to reflect a preference for resolution of this dispute through litigation (or negotiated settlement) rather than self-help by the Noteholders. OFAC has continuously suspended General License 5 during the pendency of this litigation, reflecting a recognition that the courts should be given the time to adjudicate the merits of parties' claims. Meanwhile, OFAC has made clear that its approval is required prior to the entry of any settlement agreement in *Crystallex* or this matter, and that its licensing decisions will be guided by the principle of achieving "fair and equivalent treatment" of creditors. *Supra* at 8, 11. Defendants' proposed conditions on the stay would supplant OFAC's role and potentially disrupt consensual resolutions that the U.S. Government officially encourages and supports.

Finally, maintaining the stay in its current form will also facilitate a disposition on the merits of issues affecting foreign sovereigns' interests in constitutional enforcement, as well as important contractual and commercial principles. *See, e.g.*, Br. for the Bolivarian Rep. of Venezuela as *Amicus Curiae*, *Petróleos de Venezuela S.A. v. MUFG Union Bank*, N.A., No. 20-3858, ECF No. 146, at 1 (2d Cir. Mar. 22, 2021) (case implicates "matters of vital importance to the future of the Republic and its legitimate government"); Br. of Four Law Professors as *Amici Curiae*, No.20-3858, ECF No. 147-2, at 6 (2d Cir. Mar. 22, 2021) (referencing the risk of "a

damaging loophole to anti-authoritarian constitutional provisions" around the world). In sum, even more than in 2020, the relevant equitable factors support the maintenance of the current stay.

## II.   DEFENDANTS HAVE FAILED TO JUSTIFY MODIFICATION OF THE STAY UNDER RULE 62(b).

### A.   Rule 62(b) Provides for an Automatic Stay as a Matter of Right and Defendants Have Waived Any Request for A Supplemental Bond.

As this Court recognized, a stay under Rule 62(b) is granted as *a matter of right*. ECF No. 241 at 3; *see also Cohen v. Metro. Life Ins. Co.*, 334 F. App'x 375, 378 (2d Cir. 2009) (under former Rule 62(d), now Rule 62(b), "an appellant may obtain a stay pending appeal, as of right"). "In such circumstances, 'the court has no discretion to deny the stay itself, but only to fix the amount of (or to waive) the bond.'" *Seneca Nation of Indians v. State*, No. 19-CV-735S, 2019 WL 6768779, at *2 (W.D.N.Y. Dec. 12, 2019) (citation omitted).

This Court found that "the Pledged Shares … provide the Defendants with adequate security" in the absence of a bond. ECF No. 241 at 3. To justify modifying the stay, Defendants need to show *both* that the security is no longer adequate *and* that Rule 62(b) permits the imposition of injunction-like conditions (rather than a bond). Defendants have failed on both grounds. Defendants have not shown that the Pledge is no longer adequate security. If anything, the changed conditions since 2020 have only increased the value of that security. Moreover, the security contemplated by Rule 62(b) where "other security" is inadequate is a bond, not prospective conditions resembling an injunction—yet Defendants have neither moved for the imposition of a bond *nor* explained why no security could be fashioned. Their failure to do so is a waiver, *see Pryor*, 992 F. Supp. 2d at 260, warranting denial of Defendants' requested relief.

### B.   The Pledge Agreement Continues to Provide Adequate Security for the Pledged CITGO Shares.

The Pledge Agreement and the status of the Collateral remain the same as when the Court

entered a stay. The Pledge provides that it "shall create a continuing security interest in the Collateral until the release thereof." Pledge Agreement § 7.02.The Pledge has not been released, nor have any other of its provisions changed. As has been the case since 2020, the pledged shares of CITGO Holding remain in the Collateral Agent's possession. And the Pledge continues to obligate PDVH to "ensure that, at all times, the Pledged Shares shall represent 50.1% of the outstanding shares of capital stock or ownership interests in CITGO Holding," to not "create or suffer to exist any Liens on the Collateral other than Permitted Collateral Liens," nor "sell, assign, lease, transfer or otherwise dispose of any interest in the Collateral," nor "take, or knowingly permit to be taken, any action that would terminate, or discharge or [] prejudice the validity or effectiveness of this Agreement or the validity, effectiveness or priority of the Liens created hereby." *Id.* §§ 4.01(a), 4.02(a)-(c).

Defendants do not argue that PDVH has violated any of the Pledge's provisions during the pendency of the appeal. Nor do they argue that PDVH has failed to care for and protect the Collateral as promised in the Pledge—considerations this Court found important in deciding whether to enter the stay. *See* ECF No. 241 at 3. The CITGO Shares will remain available to the Collateral Agent in exactly the same form and manner post-appeal as when this Court entered its judgment. Thus there is no reason for the Court to alter its conclusion that "[t]he Pledge Agreement suffices to satisfy the 'other security' requirement of Rule 62(b), as it assures that the Pledged Shares will be maintained in their current form for the duration of the appeal." *Id.* at 3.

Unable to argue that the Collateral has been impaired, Defendants contend instead that there is a *risk* of future impairment due to the *potential* for settlements with other creditors that may reduce the expected market value of the CITGO Shares. *See* ECF No. 253 at 17. But this is the same argument Defendants made (unsuccessfully) in opposing the stay. Then, Defendants

asserted that "[t]he long delay of enforcement … would impose on [the Trustee and Collateral Agent] the risk that, while the appeal is pending, the value of CITGO will decline, either because a defaulting PDVSA mismanages the business or for other reasons." ECF No. 237 at 15-16. The specter of a "defaulting PDVSA" that "mismanages the business" is precisely the risk Defendants raise now, yet even when presented with that argument in the midst of the COVID-19 pandemic, the Court concluded that the CITGO Shares provided adequate security. ECF No. 241 at 3.

Defendants' argument also misconstrues the nature of the Collateral. The security for which the Noteholders bargained, and on which they relied when making their investment decisions, did not (and does not) purport to guarantee them the right to any specific monetary amount. Nor has the Pledge ever been the sole remedy available to Defendants to enforce their rights in the event of default. Instead, the Pledge (if enforceable) gives Defendants the right to control and sell a majority interest in CITGO Holding, whatever value that control or sale might deliver. Moreover, Defendants have the right to perfect their money judgment against PDVSA through other avenues apart from the Pledge. *See* ECF No. 239 at 11.

The preserved right to future sale or foreclosure suffices as adequate "other security" under Rule 62(b). *See In re Bakery & Confectionary Union & Indus. Int'l Pension Fund Pension Plan*, No. 11-cv-1471 (VB), 2013 WL 12444540, at *2 (S.D.N.Y. Jan. 29, 2013) (bond "unnecessary" where assets were held in trust, mostly "invested in readily marketable securities," and beneficiaries "if the judgment is affirmed will be paid within thirty to ninety days thereafter"); *Donges v. USAA Fed. Sav. Bank*, No. CV-18-00093-TUC-RM, 2019 WL 3208076, at *3 (D. Ariz. July 16, 2019) (granting stay without a bond where mortgage contract already afforded bank "the right to foreclose on the subject property, thereby recovering substantially all of [p]laintiffs' debt" should the bank win on appeal); *Mohr v. MLB Sub I, LLC*, No. 16-00493 ACK-WRP, 2020 WL

3803847, at *4–5 (D. Haw. July 7, 2020) (granting stay where "allowing the [plaintiffs] to use the property as security for the judgment maintains the status quo and adequately balances the interests of both parties"). Similarly, the Collateral suffices as adequate security here, where PDVH has tendered to the Collateral Agent everything it would be required to deliver if Defendants prevail on appeal. There is no reason to impose the intrusive conditions Defendants now seek.

Defendants claim that recent cases have limited the circumstances in which "alternative security is permissible," ECF No. 253 at 19, but nearly all of these cases were decided prior to this Court's entry of the partial stay. In any event, none demonstrates the inadequacy of the Pledge as security. For example, *Ortiz* establishes that one situation satisfying Rule 62(b)'s provision for "alternative security" is where a non-party's funds, in the exact amount of the money judgment they are securing, are "set aside" and appropriately "allocated" for that purpose. *Ortiz v. Stambach*, No. 1:16-cv-00321-EAW, 2023 WL 3089087, at *2 (W.D.N.Y. Apr. 26, 2023). That case says nothing about situations, like this one, where there is a security mechanism separate from cash capable of protecting a judgment creditor's interest in property.

The other cases involve the inapposite scenario where the proposed "other security" is woefully deficient to warrant a *stay of a monetary award*. This case is qualitatively different because the partial stay only prevents Defendants from acting on the security interest embodied in the Pledge, but does not extend to Defendants' monetary judgment. In *Shkreli*, for example, the defendant attempted to stay enforcement of a money judgment through a proposed alternate security of a remainder interest in shares that were already being held by a receiver to satisfy a different money judgment in an unrelated case. *FTC v. Shkreli*, No. 20-cv-00706-DLC, 2022 WL 814071, at *2 (S.D.N.Y. Mar. 17, 2022). The court rejected this attempt because, unlike in this case, the defendant's "future interest in any shares that may remain after the [unrelated] judgment

17

is satisfied is entirely speculative and provides no assurance that the plaintiffs here will be able to collect on their judgment after success on appeal." *Id.* In *Richardson*, the "alternative security" found to be lacking was a letter of credit that could be unilaterally terminated at any moment. *Richardson v. Prisoner Transp. Servs. of Am.*, No. 3:15-cv-01061-ARC, 2019 WL 1003624, at *3 (M.D. Pa. Feb. 27, 2019). Recognizing that this could happen before litigation proceedings concluded—leaving plaintiff with "no recourse"—the court ruled the security was inadequate to secure the monetary award. *Id.* By contrast, Defendants' interest in the CITGO Shares is neither speculative nor fleeting. Should the Final Judgment be affirmed on appeal, the Collateral Agent would (pending sanctions relief) be able to vote and initiate foreclosure on the CITGO Shares.

## C.   The Value of the Collateral Has Increased Since 2020.

The speculative market value of the Collateral is irrelevant to the Pledge Agreement's adequacy as security for the partial stay. But even if it were relevant, Defendants' motion is at war with the reality of that market value. It is undisputed that the value of the Collateral has increased substantially since the Court entered the stay, and Defendants have failed to show that any contemplated settlements in the *Crystallex* matter could sufficiently depress the anticipated value of the Collateral to counteract those market forces.

In opposing the stay, Defendants bemoaned CITGO's "very substantial losses" and downgrade of the CITGO Entities' "stand-alone credit profile." ECF No. 237 at 15-16. Further, while public reporting valued CITGO at $8-$10 billion, Ex. J; Ex. K—Defendants insisted (citing the PDVSA Parties' "own expert") that "as of July 2019 the Collateral was worth only $1.34 billion—well below the more than $1.9 billion of principal and interest outstanding on the 2020 Notes." ECF No. 237 at 16 (citation omitted).

Defendants now acknowledge that CITGO's publicly reported valuation is approximately $13 billion—a figure $3 billion to $5 billion greater than 2020 valuations, and greater even than

the valuations in the Offering Circular at the Exchange. ECF No. 126-5 at 18 (disclosing value of CITGO at $11.3 billion and of CITGO Holding at $12.5 billion). Defendants have not shown a remote probability that supposedly imminent settlements threaten to deplete the value of the Collateral to less than the value about which they complained when opposing the stay in 2020.

### D. Defendants' Concerns Regarding the Collateral's Value Are Speculative and Ignore Their Alternative Remedies.

#### 1. Defendants Have Failed to Show Actual Changed Circumstances Warranting Modification of this Court's Partial Stay.

To warrant modification of a stay entered under Rule 62, the moving party must demonstrate that the reasons for the stay have disappeared or changed significantly. *See Confederated Tribes & Bands of Yakama Nation v. Airgas USA, LLC*, No. 3:17-cv-00164-JR, 2020 WL 13180198, at *3 (D. Or. June 16, 2020); *Milton Hosp. v. Thompson*, No. CIVA 04-1497 RWR, 2007 WL 1549078, at *2 (D.D.C. May 25, 2007). In evaluating motions to modify stays, courts also look to whether changed circumstances have actually materialized at the time of requested relief. *See, e.g.*, *Mottolese v. Kaufman*, 176 F.2d 301, 302 (2d Cir. 1949) (referencing modification "in event of" changed circumstances); *N. Ind. Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986); *SEC v. Mut. Benefits Corp.*, No. 04-cv-60573-FAM, 2022 WL 3715982, at *4 (S.D. Fla. Aug. 29, 2022); *Donges*, 2019 WL 3208076, at *3.

Defendants argue that changed circumstances justify their motion, ECF No. 253 at 18, 20-21, 22, but the only development that actually has transpired—advancement of the *Crystallex* sales process—does not support modification of the stay. As Defendants admit, the sale of PDVH contemplated in the *Crystallex* litigation "would not affect the security interest of the Trustee and the Collateral Agent in th[e] Collateral" because Defendants have a first-lien security interest in that Collateral. ECF No. 253 at 9. Settlement of *Crystallex* judgments is no different—any such settlements, if executed and approved by relevant government authorities, would leave

Defendants' "first-priority security interest in the Collateral," *id.* at 19, intact. Defendants are not entitled to any specific "value" of the Collateral; they are only entitled to the "pledge of a first-priority interest in 50.1% of the shares of CITGO Holding." *Id.* at 3.

Defendants' remaining arguments are entirely speculative. They do not point to any other concrete factual development—let alone a significant one—that would warrant modifying the stay. Defendants assert that "the PDVSA Parties have expressed a clear intent to use funds from CITGO Petroleum to finance a potential settlement with Delaware creditors and to halt the *Crystallex* sales process." ECF No. 253 at 13, 17. In support, they quote a statement by Horacio Medina, the president of PDVSA's Ad Hoc Board, regarding the "renegotiation" of debts, CITGO's recent profitability, and the "range of possibilities" for making payments. *Id.* That statement does not suggest that PDVSA intends to instruct CITGO to raise $10 billion in debt, nor does it suggest that PDVH intends to reduce the CITGO Entities' value below the amount of Defendants' judgment.

In reality, as Defendants are well aware, no settlement between the PDVSA Parties and PDVSA's creditors has been agreed to, and none is imminent. On June 28, 2023—the day Defendants filed their Motion—the National Assembly's CAPA wrote to the U.S. Government expressly disclaiming the intent (or ability) to engage in the broad sweeping resolution of creditor claims that Defendants argue will take place. Ex. G. CAPA explained that the CITGO Entities lack the capacity and desire to take on an amount of debt that would imperil the value of Defendants' Collateral, and lack the intention and ability to surrender all assets to satisfy creditor settlements. *Id.* at 4-5. CAPA also expressly stated that Defendants should be included in contemplated settlement negotiations. *Id.* at 6.[6] At present, moreover, there are no executed or imminent

---

[6] Prior to filing their motion, Defendants did not confer with the undersigned counsel for PDVH, or with counsel for PDVSA or PDVSA Petróleo in this matter. Declaration of Michael Gottlieb ¶ 3. Instead, Defendants contacted a Jones Day attorney who represents PDVH in other matters

settlements with other creditors about which Defendants raise alarm. *See* Declaration of Fernando Vera ¶¶ 1-2.

Defendants' other bases for asserting the aforementioned "risks" are equally speculative. Relying largely on sources predating the Final Judgment, Defendants argue that the importance to the Republic and PDVSA of maintaining Venezuelan ownership of CITGO gives them "every reason to believe that the PDVSA Parties and the Republic will exhaust all means available to use assets of CITGO Holding or CITGO Petroleum to fund a settlement." ECF No. 253 at 14. But the threat to Venezuelan ownership of CITGO has been present throughout the past four years, including when this Court entered the stay. Although Defendants assert "concerns" that PDVSA and the Republic would use CITGO's assets to settle with other creditors because they allegedly "have a history" of using those assets to fund U.S.-based litigation against such creditor demands, ECF No. 253 at 15, Defendants fail to explain how these supposed practices—which they claim "are not new" and date to 2019, *see id.* at 15-16—constitute "changed circumstances" threatening depletion of the Collateral.

At bottom, Defendants' "reason to believe" and "reasons for concern" do not approach a threshold of fact. Their predictions regarding what (if any) settlements the National Assembly and PDVSA might reach with other creditors are too speculative to serve as a basis to modify the stay. Their complaints of the "risk" that the CITGO Entities' assets will be devalued to settle creditor litigation are equally speculative, and they have failed to show *any* plausible scenario where the value of the Collateral would be reduced to an amount less than Defendants' money judgment.

---

but has never appeared in this litigation; that attorney has since disputed Defendants' characterization of the "conferral." *Id.* ¶ 4. Plaintiffs subsequently provided Defendants with the CAPA Letter and asked Defendants to withdraw their motion given the lack of support for their claims. *Id.* ¶ 5. Defendants refused. *Id.* ¶ 6.

**2.     Defendants Have Alternative Remedies to Protect Their Unstayed Money Judgment.**

Defendants have several alternative avenues for securing their interests in their unstayed money judgment, each of which strongly counsels against modification of the stay.

*First*, Defendants ignore the numerous conditions precedent to a settlement under the U.S. sanctions regime that would enable Defendants to protect their rights. For example, as Defendants are well aware, the sale or transfer of the CITGO Entities' assets is prohibited in the absence of a license, including with respect to settlement. *See, e.g.*, FAQ 1125; *see also* E.O. 13850, E.O. 13884, 31 C.F.R. §§ 591.309, 591.310. Defendants can raise any concerns about prospective settlements with OFAC or the *Crystallex* court while OFAC deliberates whether to grant such license. The fact that an OFAC license is required *prior* to the execution of settlement agreements, *see* FAQ 1124, renders Defendants' conjured firesale scenarios utterly implausible.

*Second*, and relatedly, any settlement in *Crystallex* would require providing notice to, and obtaining approval by, the *Crystallex* court, given the need to file motions to dismiss any pending creditor claims that might otherwise be included in the sales process. *See* Fed. R. Civ. P. 41(a)(2); *see also In re Crystallex Int'l Corp.*, 11-14074-LSS (Nov. 28, 2022), ECF No. 373 ¶ 5 (proceeds of sale of PDVH shares recovered by Crystallex may not be transferred out of United States without court approval). Defendants have been invited to participate in that litigation—both by the Court and by OFAC. *See* Ex. A; FAQ 1124. That on-the-record process provides Defendants with ample opportunity to present their views.

*Third*, nothing in this Court's partial stay has prevented Defendants from seeking to enforce their money judgment as to PDVSA and PDVSA Petróleo, whether in Delaware or elsewhere. Defendants have long been aware of—and involved in—the *Crystallex* proceedings, including the

steady expansion of the pool of judgments before that court. *See, e.g.*, Ex. A. It is indisputable that, when this Court entered the stay, there was a substantial risk that PDVSA might enter into one or more settlement agreements involving CITGO resources, and the *Crystallex* court began moving expeditiously toward a sales process in October 2022. No. 17-mc-00151-LPS (D. Del. Oct. 7, 2022), ECF No. 481. Notwithstanding this knowledge, Defendants declined to register their judgment in Delaware, or to seek its inclusion in the sales process. Meanwhile, at least one of the 2020 Noteholders, Contrarian, has registered its judgment relating to other bonds in Delaware. *See Contrarian Cap. Mgmt, L.L.C. et al. v. Bolivarian Republic of Venezuela*, 21-mc-00018-LPS (July 21, 2023), ECF No. 47.

Defendants' motion should be understood for what it is—a strategic attempt to transform a stay designed to protect PDVH from irreparable harm into a vehicle to extract a premium on their judgment. Defendants' calculated decision not to enforce their money judgment reveals that their true concern is not that the judgments in *Crystallex* will deplete the value of their Collateral, but instead a desire to position themselves to veto settlements with *Crystallex* parties, presumably to coerce PDVH and PDVSA into foregoing their appellate rights and agreeing to a premature full-price settlement. None of this supports modifying this Court's partial stay.

### E. Defendants' Proposed Order Amounts to a Legally Deficient Request for Injunctive Relief.

Rather than making an argument tethered to Rule 62(b), Defendants ask this Court to put to PDVH the choice of either foregoing the stay (and thereby mooting the pending appeal) or agreeing to conditions that effectively amount to injunctive relief in the form of an asset freeze. Those conditions would interfere with CITGO's ordinary business operations, its relationship with its direct and indirect shareholders, and its ability to satisfy or settle judgments within the jurisdiction of other courts. *None* of the conditions Defendants propose amounts to cognizable

"security" under Rule 62(b). Instead, they would be intrusive status quo orders that are typically only entertained by bankruptcy courts or the Delaware Court of Chancery. *See, e.g.*, *Carlos Eduardo Lorefice Lynch v. R. Angel Gonzalez Gonzalez*, C.A. No. 2019-0356-MTZ (Del. Ch. June 22, 2020). Defendants' request would effectively enjoin the CITGO Entities from their operations and obligations existing independent of the Final Judgment. *Cf.* ECF No. 241 n.4 (stating that PDVH's partial stay motion did not request injunctive relief because relief was not as to "rights independent of Final Judgment"); *Nken*, 556 U.S. at 418, 428-29.

For substantially the reasons described above, *see supra* at 8-14, Defendants cannot show that injunctive relief is appropriate. *See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018). Defendants' motion would preclude CITGO from making payments, or issuing securities, loans, indebtedness, or derivatives to PDVSA creditors, and would directly restrict the CITGO Entities' power to make decisions in the exercise of their fiduciary duties to their shareholders, including potential settlement of creditor suits if such settlements are deemed consistent with those fiduciary duties. Limiting the CITGO Entities' ability to make such decisions goes beyond enforcing the validity of the Pledge—it would impose intrusive operational limitations on CITGO that would inflict irreparable harm. The injunction prohibiting the CITGO Entities from providing funding for a settlement with *Crystallex* creditors may be impossible to undo, even if this Court's judgment is ultimately vacated and Plaintiffs prevail on the merits.

Finally, such an order would be effectively an anti-suit injunction forbidding the CITGO Entities from taking certain actions in a parallel federal district-court proceeding before the *Crystallex* court, and would raise serious questions of inter-court comity. Defendants' motion does not even purport to address the equitable factors courts typically consider when evaluating such an injunction or whether it would promote "sound judicial administration." *William Gluckin & Co.*

*v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969). Nothing in Defendants' speculative assertions would warrant such intrusion into another federal court's prerogative. *Supra* at 19-21.

Defendants' other request, for immediate permission to vote the shares of CITGO Holding, is effectively a request to allow them to enforce the Pledge notwithstanding the appeal. Granting this request would permit Defendants to replace the CITGO Entities' Boards of Directors and immediately exercise control over CITGO's operations, beyond aspects affecting the Collateral. This posture would empower Defendants to make consequential decisions that would have permanent effects including, critically, via a legal right to sever Venezuelan ownership over the CITGO Entities through foreclosure on the CITGO Shares. *Contra In re Nassau*, 783 F.3d 414, 417 (2d Cir. 2015) ("The purpose of [now-Rule 62(b)] is to ensure that the prevailing party will recover in full, if the decision should be affirmed, *while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed*.") (internal quotation marks and citation omitted) (emphasis added). Defendants' request, if granted, would transform the *Crystallex* sales process into a sale of a minority interest and would provide Defendants with unwarranted leverage to extract a favorable settlement from whoever controls PDVH after the sales process concludes. Defendants have not come close to justifying such extraordinary relief.

## **CONCLUSION**

PDVH respectfully requests that the Court deny Defendants' motion to modify the partial stay. Should the Court grant Defendants any relief, PDVH respectfully requests that the Court delay the effectiveness of any such order to permit PDVH to seek relief from the Second Circuit.

Dated:  August 16, 2023                     Respectfully submitted,

                                                                */s/ Michael J. Gottlieb*
                                                                Michael J. Gottlieb

Jeffrey B. Korn
Nicholas Reddick
Kristin Bender

WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC  20006-1238
Telephone: (202) 303-1442
Facsimile: (202) 303 2442
mgottlieb@willkie.com

787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
jkorn@willkie.com

One Front Street, 34th Floor
San Francisco, California 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599
nreddick@willkie.com

WILLKIE FARR & GALLAGHER (UK) LLP
Citypoint, 1 Ropemaker Street
London, EC2Y 9AW, United Kingdom
Telephone: +44 (203) 580-4833
Facsimile: +44 (203) 580-4800
kbender@willkie.com

*Attorneys for PDV Holding, Inc.*