UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PETRÓLEOS DE VENEZUELA, S.A., PDVSA PETRÓLEO, S.A., and PDV HOLDING, INC.,

    Plaintiffs and Counterclaim Defendants,

    - against -

MUFG UNION BANK, N.A. and GLAS AMERICAS LLC,

    Defendants and Counterclaim Plaintiffs.

No. 19 Civ. 10023 (KPF)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO MODIFY PARTIAL STAY**

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
Walter Rieman
Jonathan Hurwitz
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Facsimile: 212-757-3990

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
Roberto J. Gonzalez (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006-1047
Telephone: 202-223-7300

*Attorneys for Defendants and
Counterclaim Plaintiffs
(as to Federal and New York
law issues only)*

LATHAM & WATKINS LLP
Matthew S. Salerno
1271 Avenue of the Americas
New York, New York 10020-1300
Telephone: 212-906-1200
Facsimile: 212-751-4864
matthew.salerno@lw.com

*Attorneys for Defendants and
Counterclaim Plaintiffs*

# Table of Contents

                           **Page**

Table of Authorities ................................................................................................................ ii

Preliminary Statement ............................................................................................................. 1

Argument ................................................................................................................................ 2

 I.  PDVH Concedes That It Intends to Use CITGO's Assets to Settle with Other Creditors of PDVSA and the Republic ................................................................... 2

 II.  The Court Has Ample Authority Under Rule 62(b) to Impose Conditions on the Partial Stay, and the Facts Here Warrant Doing So .............................................. 4

   A.  The Court Should Impose Conditions on the Stay in Light of Changed Circumstances ................................................................................................ 4

   B.  PDVH's Position Would Render the Rights of the Trustee and the Collateral Agent Under the Pledge Agreement Empty Formalities ...................... 6

   C.  PDVH Ignores or Mischaracterizes the Changed Circumstances Since the Partial Stay Was Entered That Warrant Additional Conditions ............................ 7

   D.  PDVH's Claim That the Trustee and the Collateral Agent Have Alternative Remedies to Protect the Trustee's Money Judgment Is Irrelevant and Misleading ................................................................................ 11

 III. The Court Has Equitable Authority to Modify the Partial Stay and Should Do So ......... 13

Conclusion ............................................................................................................................. 15

## Table of Authorities

Page(s)

**Cases**

*Associated Bus. Tel. Sys. Corp.* v. *Greater Cap. Corp.*,
 128 F.R.D. 63 (D.N.J. 1989) ................................................................................................12

*Canady* v. *Erbe Elektromedizin GMBH*,
 271 F. Supp. 2d 64 (D.D.C. 2002) .......................................................................................13

*Coan* v. *Dunne*,
 2022 WL 392856 (D. Conn. Feb. 9, 2022) ............................................................................5

*Cohen* v. *Metro. Life Ins. Co.*,
 334 F. App'x 375 (2d Cir. 2009) ............................................................................................5

*Confederated Tribes & Bands of Yakama Nation* v. *Airgas USA, LLC*,
 2020 WL 13180198 (D. Or. June 16, 2020) .........................................................................5

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venez.*,
 2021 WL 129803 (D. Del. Jan. 14, 2021) ...........................................................................11

*Deutsche Bank Nat'l Trust Co.* v. *Cornish*,
 759 F. App'x 503 (7th Cir. 2019) ..........................................................................................5

*Donges* v. *USAA Fed. Sav. Bank*,
 2019 WL 3208076 (D. Ariz. July 16, 2019) ......................................................................5, 6

*JP Morgan Chase Bank, N.A.* v. *Reifler*,
 2014 WL 12648526 (S.D.N.Y. Aug. 25, 2014) ...................................................................10

*Mgmt. Registry, Inc.* v. *A.W. Cos., Inc.*,
 2023 WL 4249208 (D. Minn. June 28, 2023) .....................................................................13

*Milton Hosp.* v. *Thompson*,
 2007 WL 1549078 (D.D.C. May 25, 2007) ..........................................................................5

*Mottolese* v. *Kaufman*,
 176 F.2d 301 (2d Cir. 1949) ..................................................................................................5

*Nken* v. *Holder*,
 556 U.S. 418 (2009) .............................................................................................................13

*N. Ind. Pub. Serv. Co.* v. *Carbon Cnty. Coal Co.*,
 799 F.2d 265 (7th Cir. 1986) .................................................................................................5

*OI Eur. Grp. B.V.* v. *Bolivarian Republic of Venez.*,
    73 F.4th 157 (3d Cir. 2023) ..................................................................................................9

*Ortiz* v. *Stambach*,
    2023 WL 3089087 (W.D.N.Y. Apr. 26, 2023) .......................................................................5

*Petróleos de Venezuela S.A.* v. *MUFG Union Bank, N.A.*,
    51 F.4th 456 (2d Cir. 2022) ................................................................................................14

*Port Chester Elec. Const. Corp.* v. *HBE Corp.*,
    1991 WL 258737 (S.D.N.Y. Nov. 27, 1991) .......................................................................10

*Rovi Guides, Inc.* v. *Comcast Corp.*,
    2018 WL 1726250 (S.D.N.Y. Apr. 6, 2018) ........................................................................13

*SEC* v. *Mut. Benefits Corp.*,
    2022 WL 3715982 (S.D. Fla. Aug. 29, 2022) ........................................................................5

*Seneca Nation of Indians* v. *New York*,
    2019 WL 6768779 (W.D.N.Y. Dec. 12, 2019) ......................................................................5

*Woodward & Dickerson* v. *Kahn*,
    1993 WL 106129 (S.D.N.Y. Apr. 2, 1993) ..........................................................................12

**Statutes**

28 U.S.C. § 1963 ............................................................................................................................12

**Other Authorities**

Federal Rule of Civil Procedure 62 ..................................................................................... *passim*

**Preliminary Statement**

PDVH seeks to turn the fundamental purposes of the partial stay and the policies animating Rule 62 on their heads.[1] The Court imposed the stay to maintain the status quo while the PDVSA Parties' appeal is pending and to protect the ability of the Trustee and the Collateral Agent to enforce their judgment against PDVH if it is affirmed. ECF No. 241 at 3–4. PDVH now argues, however, that the PDVSA Parties should be allowed to use the stay to *alter* the status quo. The PDVSA Parties propose to diminish CITGO's value to the Trustee and the Collateral Agent (and ultimately the 2020 Noteholders) by using its assets—the assets that underlie the value of the Collateral—to settle claims against other creditors of PDVSA and the Republic. zaffirmed into an empty formality. PDVH's position would also make the stay entirely unfair and one-sided: it would, according to PDVH, bind the Trustee and the Collateral Agent but create no corresponding obligation on the PDVSA Parties to protect the value of the underlying asset for the benefit of the 2020 Noteholders. The Court can and should modify the stay to prevent these perverse and unfair results.

PDVH does not dispute that the PDVSA Parties' strategy for avoiding a judicial sale of PDVH is to use CITGO's assets to finance settlements with other claimants against PDVSA and the Republic. On the contrary, it concedes it. And other developments since the stay was entered—the rapid progress of the judicial process in the federal court in Delaware for the sale of PDVH, policy changes by OFAC favoring such a sale, and the recent submission in the Delaware court of applications by creditors holding approximately $23 billion in claims against PDVSA and the Republic seeking to share in the sale proceeds—have dramatically increased the

---

[1] Terms not defined herein have the meanings set forth in the Trustee and the Collateral Agent's moving papers (ECF No. 253, "Mot.") and PDVH's opposition brief (ECF No. 273, "Opp."). "CITGO" refers collectively to CITGO Holding, Inc. and CITGO Petroleum Corp. "Ex. _" refers to the Exhibits to the Declaration of Jonathan H. Hurwitz and the Supplemental Declaration of Jonathan H. Hurwitz ("Suppl. Hurwitz Decl.").

1

pressure on the PDVSA Parties to misuse CITGO's assets in that way. It is immaterial that, as PDVH asserts, no such settlement has been executed or is "imminent." What matters is that, in contrast to the Court's finding at the time it entered the stay, the Collateral, absent reasonable prohibitions on its use to repay creditors of PDVSA and the Republic, no longer represents adequate security sufficient to justify a stay in lieu of a bond.

PDVH's contention that the Trustee and the Collateral Agent are improperly seeking to "moot the[] appeal" and to "initiate a foreclosure sale" grossly misrepresents the relief sought. The Trustee and the Collateral Agent do not ask for the right to foreclose. They ask only that PDVH be prohibited from modifying the status quo by stripping the Collateral of its value during the pendency of the PDVSA Parties' appeal (an appeal that is unlikely to be finally resolved until well into next year at the earliest). Nor do the Trustee and the Collateral Agent seek to prevent the PDVSA Parties from settling with other creditors; nothing in the Motion would prevent the PDVSA Parties from using non-CITGO assets (including equity or debt of PDVH) to settle with those creditors. But the PDVSA Parties' plan to use CITGO assets for that purpose while the stay is in effect should not be permitted.

The Court has broad authority under Rule 62(b) and its inherent equitable powers to impose conditions on the partial stay that preclude the PDVSA Parties from diminishing the value of the Collateral. The circumstances amply justify exercising that authority.

## Argument

I. **PDVH Concedes That It Intends to Use CITGO's Assets to Settle with Other Creditors of PDVSA and the Republic**

As shown in the Motion, modifying the partial stay is warranted because "there are strong reasons to believe the PDVSA parties intend to use the assets of CITGO . . . to settle

2

many billions of dollars of claims against the PDVSA Parties and the Republic," thereby eroding the value of the Collateral and violating the Pledge Agreement. Mot. 2, 17–18.

PDVH does not dispute that this is just what the PDVSA Parties intend. Indeed, it concedes it. PDVH asserts that modifying the stay to restrict this use of CITGO's assets would "interfere with efforts to resolve other creditor claims pending before other courts." Opp. 1. This assertion admits the point, because restricting the use of CITGO's assets would interfere only with "settlements" that use CITGO's assets to pay off the claimants in those litigations. Restricting the use of CITGO's assets in the way requested by the Motion would *not* affect settlements relying on other sources of value. PDVH's concession is consistent with other statements by the PDVSA Parties making clear that they intend to use CITGO's assets to settle with other creditors, including the public statement by the President of PDVSA's Ad Hoc Board that PDVSA intends to use CITGO's improved profitability to resolve claims against PDVSA and the Republic, Mot. 13, 17; Ex. 9, and their letter to Secretary Blinken stating that they intend to "leverage CITGO's improved financing capacities" to settle such claims (as well as claims by the Trustee and the Collateral Agent), PDVH Ex. G. As recently as June 30, Reuters reported that "negotiators representing Venezuela" were engaged in negotiations with creditors of PDVSA and the Republic, and the head of PDVSA's ad hoc Board was quoted as stating that "[o]ffers and counter offers have been presented." Ex. 48.[2]

Discussions between counsel while the Motion was pending further evidence the PDVSA Parties' intent to misuse CITGO's assets to settle with other creditors of PDVSA and

---

[2] We are not aware of more recent articles discussing the progress of settlement negotiations, but that fact should not be read as suggesting that negotiations are not ongoing. The more probable explanation consists of likely instructions from lawyers to clients to maintain public silence (instructions that could well be related to the filing of this Motion) and the likely execution of nondisclosure agreements governing settlement negotiations between PDVSA and the Republic, on the one hand, and their creditors, on the other.

3

the Republic. On August 2, 2023, counsel for the Trustee and the Collateral Agent offered to withdraw this motion if the PDVSA Parties agreed only (i) to give the Trustee and the Collateral Agent 30 days' prior notice of any non-ordinary-course transaction or transaction that transfers assets to any creditor of PDVSA, PDVSA Petróleo, or the Republic; (ii) not to violate the anti-upstreaming provisions in sections 2.05(c) and (f) of the Pledge Agreement; and (iii) to provide information concerning any past transactions during the pendency of the partial stay of the kind specified in item (i). Supp. Hurwitz Decl. ¶ 3. The proposal would have required the PDVSA Parties only to comply with the Pledge Agreement and to provide the Trustee and the Collateral Agent with prior notice of transactions that could diminish the value of the Collateral. The PDVSA Parties elected not to respond to that proposal. *Id.*

## II. The Court Has Ample Authority Under Rule 62(b) to Impose Conditions on the Partial Stay, and the Facts Here Warrant Doing So

Rule 62(b) is designed to preserve the status quo pending appeal, Mot. 21, and the Court has ample authority to impose conditions on the partial stay to serve this purpose. The Trustee and the Collateral Agent ask the Court to modify the partial stay to protect the value of the Collateral and their rights under the Pledge Agreement (other than the right to nonjudicial foreclosure) while the stay is in effect. These modifications are warranted in light of changed circumstances and would preserve the status quo, rather than provide any unfair advantage.

### A. The Court Should Impose Conditions on the Stay in Light of Changed Circumstances

PDVH acknowledges that the Court has authority under Rule 62(b) to address changed circumstances that render the security provided in lieu of a bond no longer adequate to protect the judgment creditor. Opp. 19; *see also* Mot. 20–21 (collecting cases).³ PDVH's

---

³ PDVH argues that a Rule 62(b) stay cannot be modified until changed circumstances have "actually materialized." Opp. 19. To the extent PDVH's argument is meant to suggest that a stay can only be modified

4

assertion that the Court cannot take any action because a stay under Rule 62(b) is granted as a matter of right, Opp. 14, is erroneous. As even the cases PDVH cites show, an appellant is entitled to a stay only by posting a bond or other security ensuring that "the prevailing party will recover in full, if the decision should be affirmed." *See Cohen* v. *Metro. Life Ins. Co.*, 334 F. App'x 375, 378 (2d Cir. 2009); *Seneca Nation of Indians* v. *New York*, 2019 WL 6768779, at *2 (W.D.N.Y. Dec. 12, 2019) (stay granted as of right only where party posts a full bond or other security); ECF No. 241 at 3–4. As one court has explained, the judgment debtor must be able to provide the court with a "high degree of confidence in the availability of funds to pay the judgment" should its decision be affirmed on appeal. *Ortiz* v. *Stambach*, 2023 WL 3089087, at *2 (W.D.N.Y. Apr. 26, 2023); *see also* Mot. 19.

PDVH further asserts that the Court's only options, should the security be deemed inadequate, are lifting the stay or imposing a bond. Opp. 14. Not so. Where, as here, the posted "other security" is property, courts routinely impose conditions that the property be "cared for and protected." In *Deutsche Bank Nat'l Trust Co.* v. *Cornish*, 759 F. App'x 503, 509–10 (7th Cir. 2019), for example, the court held that a mortgaged property was adequate security only so long as it was occupied, cared for, insured, and up to date on property taxes. *See also Coan* v.

---

once the judgment creditor's interests have already been prejudiced, PDVH's own authority is clear that is not the law. *See N. Ind. Pub. Serv. Co.* v. *Carbon Cnty. Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986) (modification of the terms of a stay of enforcement may be appropriates if the judgment debtor's ability to pay "begin[s] to deteriorate"); *SEC* v. *Mut. Benefits Corp.*, 2022 WL 3715982, at *4 (S.D. Fla. Aug. 29, 2022) (holding that the conditions of a stay could be modified if risks to the security are "magnified"); *Donges* v. *USAA Fed. Sav. Bank*, 2019 WL 3208076, at *3 (D. Ariz. July 16, 2019) (holding that stay can be modified if the value of a property securing the stay "begin to deteriorate in value" or "other circumstances arise"). The other cases PDVH cites, which do not involve stays of execution of judgments, are inapposite. *Confederated Tribes & Bands of Yakama Nation* v. *Airgas USA, LLC*, 2020 WL 13180198, at *3 (D. Or. June 16, 2020) (analyzing request for reconsideration of stay of proceedings, not a modification of the conditions of the stay of an enforcement of judgment); *Milton Hosp.* v. *Thompson*, 2007 WL 1549078, at *2 (D.D.C. May 25, 2007) (denying motion to lift stay of proceedings where there were no changed circumstances); *Mottolese* v. *Kaufman*, 176 F.2d 301, 304 (2d Cir. 1949) (declining to lift stay of proceedings where it was not yet likely certain actions in another case would go forward).

*Dunne*, 2022 WL 392856, at *1–2 (D. Conn. Feb. 9, 2022) (similar); *Donges*, 2019 WL 3208076, at *3 (granting relief pursuant to Rule 62(d) and noting that "[s]hould the property begin to deteriorate in value or other circumstances arise such that Defendant's interest in the property is no longer sufficient to secure its interests pending appeal, Defendant may 'petition the [Court] for supplementary relief.'" (quoting *N. Ind. Pub. Serv. Co.* v. *Carbon Cnty. Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986))). Under these authorities, the Court can and should impose conditions on the stay to ensure that the PDVSA Parties do not impair the value of the Collateral.

> **B. PDVH's Position Would Render the Rights of the Trustee and the Collateral Agent Under the Pledge Agreement Empty Formalities**

PDVH's assertion that "the Pledge Agreement continues to provide adequate security," Opp. 14, rests on mischaracterizing what the Pledge Agreement provides. PDVH asserts that the stay protects the rights of the Trustee and the Collateral Agent "to what the Pledge Agreement provides: the preservation of their right to access and foreclose on 50.1% of the shares of CITGO Holding." Opp. 2. But that statement is belied by the terms of the Pledge Agreement itself and would render the rights of the Trustee and the Collateral Agent under that Agreement of little or no value. Merely preserving the right of the Trustee and the Collateral Agent to foreclose on the pledged shares would be meaningless if, before any foreclosure, the PDVSA Parties were free to strip CITGO of value in direct contravention of the express terms of the Pledge Agreement. Accordingly, the Pledge Agreement includes a range of provisions to preserve the Collateral's value, including provisions expressly prohibiting misuse of CITGO assets. As discussed in the Motion (and as PDVH does not dispute), the Pledge Agreement provides that, following an Event of Default (as has occurred here), PDVH may not collect profits or distributions from the Collateral; PDVH must hold in trust for the Collateral Agent any assets or other consideration it receives from CITGO Holding in breach of that provision; and the

Collateral Agent may act in all respects as the owner of the Collateral, including by voting the shares of CITGO Holding constituting the Collateral. Mot. 4–5. These provisions ensure that, in case of default, CITGO's assets are not used to benefit PDVH, PDVSA, or the Republic in ways that would impair the value of the Collateral. They are particularly critical now, because so long as the partial stay remains in effect, the Trustee and the Collateral Agent cannot exercise their right to immediate nonjudicial foreclosure, Pledge § 5.02(a), ECF No. 87-5.

PDVH also complains that restricting the use of CITGO's assets to settle with other creditors would "impose intrusive operational limitations on CITGO." Opp. 13, 24. But the Pledge Agreement imposes just such restrictions. And PDVH offers no evidence that the conditions the Trustee and the Collateral Agent seek are more burdensome than is necessary to protect the 2020 Noteholders.

### C. PDVH Ignores or Mischaracterizes the Changed Circumstances Since the Partial Stay Was Entered That Warrant Additional Conditions

PDVH contends that the "risk of future impairments due to the potential for settlements with other creditors" is the same now as it was in December 2020 when the Court entered the partial stay. Opp. 15–16. That is not so in multiple related ways.

*First*, as discussed in Point I, since the stay was entered, the PDVSA Parties have repeatedly expressed their intent to leverage CITGO's assets to settle with other creditors. PDVH cites no similar statements before the stay was entered. PDVH asserts that there was always a "substantial risk that PDVSA might enter into one or more settlement agreements involving CITGO resources." Opp. 23. But the only support it cites is a filing in the Delaware litigation nearly two years *after* the stay was entered that says nothing about using CITGO assets to settle with other creditors. *Id.* And whatever unstated intent the PDVSA Parties claim they had in 2020 to use CITGO's assets for that purpose does not justify allowing them to do that now.

7

*Second*, when the Court entered the partial stay, there was no ongoing, judicially approved process for the sale of PDVH. Today, in contrast, that process is well underway in the District of Delaware, and a hearing on a sale to the successful bidder is tentatively scheduled for July 15, 2024. Mot. 9–10; Ex. 24. Indeed, that development is undoubtedly why the PDVSA Parties are focused on using CITGO's assets to settle with other creditors. As noted in the Motion, the Sale Procedures Order, entered nearly two years after the partial stay, provides that a settlement with all creditors entitled to share in the sale proceeds automatically halts the sale process. That provision creates enormous pressure on the PDVSA Parties to settle with their creditors rather than run the risks of a judicial sale. Mot. 12.

*Third*, since the stay was entered, OFAC has fundamentally changed its policy regarding a possible sale of PDVH; it has stated that it will "implement a favorable licensing policy" toward applications for such a sale. Mot. 10. PDVH's lengthy discussion of OFAC licensing policy, Opp. 7–10, makes no mention of this critical change, which undoubtedly contributes further to the pressure on the PDVSA Parties to settle with their creditors before PDVH is sold.

*Fourth*, in contrast to the time that the stay was entered, creditors with claims in excess of $23 billion have now filed submissions in the Delaware court seeking a share of the proceeds of any sale of PDVH. These claims are summarized in Exhibit 25. The amount of these claims far exceeds the $13 billion in value that PDVH ascribes to CITGO. Opp. 2.

*Fifth*, judicial decisions since the stay was entered have eased the path for many of the creditors who seek to share in the proceeds of a sale of PDVH. In December 2020, it had not yet been adjudicated whether PDVSA was the alter ego of Venezuela during the Guaidó administration's tenure in office. In July 2023, the Third Circuit affirmed a ruling by Judge Stark

8

that "PDVSA is Venezuela's alter ego" even after the commencement of Guaidó administration. *OI Eur. Grp. B.V.* v. *Bolivarian Republic of Venez.*, 73 F.4th 157, 172 & n.21 (3d Cir. 2023), *petition for cert. filed*, No. 23-140 (Aug. 16, 2023). As the Venezuelan commission charged with managing the Republic's assets abroad acknowledged before the Third Circuit's ruling was issued, creditors holding some $5 billion in claims against the Republic "are seeking to collect based on alter ego claims that depend upon a judicial determination that . . . PDVSA remains an alter ego of the Republic." PDVH Ex. G at 6. Now that the Third Circuit has rendered that determination, those creditors are free to pursue their claims against PDVSA's assets, and in particular against PDVH.

*Sixth*, in December 2020, there remained a realistic chance that the Guaidó administration and opposition parties might soon gain power in Venezuela. Since that time, Mr. Guaidó has been removed from office and the likelihood of a peaceful democratic transition appears more remote than ever. Ex. 49. The opposition-led commission in charge of Venezuela's U.S. assets thus has few if any material assets other than CITGO with which to settle with creditors of PDVSA or the Republic and faces powerful political pressure to avoid a loss of the Republic's indirect ownership of CITGO.

Against the foregoing, the PDVSA Parties' arguments as to CITGO's financial performance are a red herring. CITGO's recent profitability neither negates these risks nor ensures the value of the Collateral will not decline during the pendency of the litigation. *See* Mot. 8. Indeed, CITGO has experienced significant downturns as recently as 2021. *See, e.g.*, Ex. 50. There is no guarantee that CITGO's value will not materially decline while the Court's judgment is on appeal.[4] And any purported recent increase in CITGO's value has been dwarfed

---

[4] A final resolution of the PDVSA Parties' appeal will not come, at the earliest, until well into 2024. As the Court is aware, that appeal is now pending before the New York Court of Appeals on questions certified by the

by $20+ billion in claims against PDVSA and the Republic, all of which they will need to address to maintain their indirect ownership of CITGO.

In recognition that alternative security provides less assurance than a bond, courts in this Circuit "often require alternative security considerably in excess of the judgment." *Port Chester Elec. Const. Corp.* v. *HBE Corp.*, 1991 WL 258737, at *2 (S.D.N.Y. Nov. 27, 1991) (collecting cases); *see also JP Morgan Chase Bank, N.A.* v. *Reifler*, 2014 WL 12648526, at *3 (S.D.N.Y. Aug. 25, 2014) (citing *Port Chester* and denying stay where alternative security was half of judgment). In *Port Chester*, the court held that a construction payment bond eight times the amount of judgment was sufficient alternative security only when it could sufficiently protect judgment creditor and any other possible creditors. 1991 WL 258737, at *2. Here, as PDVH acknowledges, CITGO "cannot incur an amount of debt that would come close to satisfying the total amount of creditor claims in Delaware," Opp. 11, much less the total amount of those claims plus the claims on the 2020 Notes. *See also* Ex. G at 1 (asserting that the Delaware sale process will leave "close to $15 billion in claims . . . unsatisfied").

It is no answer to assert that a settlement with other creditors has not yet been executed and is not "imminent." Opp. 2, 11, 19, 20; Vera Dec. ¶ 2. Rather, the issue under Rule 62(b) is whether, as discussed above, the pledged shares of CITGO Holding remain adequate as security to support the partial stay. They do not. The Court should accordingly modify the stay to preserve the status quo and protect the value of the Collateral. If, however, the Court concludes

---

Second Circuit. Just last week, the Court of Appeals released its oral argument calendar for November 2023 (the last period for argument this calendar year). *See* Ex. 51. Although this case has been fully briefed since July, it was not included on the November argument calendar. Thus, the earliest that argument will be heard by the Court of Appeals will be January 2024. Even after a ruling by the Court of Appeals, the losing party on a decision arising from certified questions may file a motion for rehearing in that Court within 30 days after decision. N.Y. Court of Appeals Rule of Practice 500.24(b). And once the matter is remanded to the Second Circuit, that court may solicit additional briefing before issuing a ruling.

that the entitlement of the Trustee and the Collateral Agent to relief depends on the probability of a value-removing transaction in the immediate future, it should permit the Trustee and the Collateral Agent to undertake discovery on that subject from the PDVSA Parties and/or their financial advisors. The Trustee, the Collateral Agent, and this Court are not required to accept factual assertions on this subject from PDVSA that have not been tested by discovery. (And, as noted, the Trustee and the Collateral Agent have offered to postpone any litigation regarding the stay until given notice of an imminent transaction, and PDVH declined even to respond to that proposal.)

> **D.    PDVH's Claim That the Trustee and the Collateral Agent Have Alternative Remedies to Protect the Trustee's Money Judgment Is Irrelevant and Misleading**

PDVH's assertion that there is no need to modify the stay because "Defendants have several alternative avenues for securing their interests in their unstayed money judgment," Opp. 22–23, is irrelevant and misleading. The Pledge Agreement contains bargained-for terms protecting the interests of the Trustee and the Collateral Agent in the Collateral following an Event of Default—including, most notably, the right to exercise an immediate foreclosure on the Collateral. The PDVSA Parties themselves have identified the pledge of the Collateral as the "defining feature" of the 2020 Notes issuance. No. 20-3858, ECF No. 142 at 4. PDVH's argument that the Trustee and the Collateral Agent should have sought to enforce their money judgment—a judgment that PDVSA has refused to honor for years—would very likely be fruitless. As Judge Stark has noted, Venezuela is a "highly-recalcitrant judgment debtor" and it has engaged in years of delay tactics to frustrate enforcement of judgments. *Crystallex Int'l Corp.* v. *Bolivarian Republic of Venez.*, 2021 WL 129803, at *18 (D. Del. Jan. 14, 2021). Moreover, if the Trustee and the Collateral Agent sought to enforce the money judgment, but not their stayed rights under the Pledge Agreement, they would be forced to take a place in line with

11

many unsecured creditors holding judgments in an aggregate amount far exceeding CITGO's value.

Indeed, it is unclear that the Trustee and the Collateral Agent could have enforced the Trustee's money judgment in Delaware without extensive threshold litigation. Under 28 U.S.C. § 1963, to register the judgment in the District of Delaware during the pendency of the PDVSA Parties' appeal, the Trustee and the Collateral Agent would need to obtain this Court's permission upon a showing of good cause. Case law suggests that to satisfy that burden, they would need to establish, *inter alia*, that PDVSA and PDVSA Petróleo do not have sufficient assets in this District to satisfy the judgment. *Woodward & Dickerson* v. *Kahn*, 1993 WL 106129, at *1 (S.D.N.Y. Apr. 2, 1993); *Associated Bus. Tel. Sys. Corp.* v. *Greater Cap. Corp.*, 128 F.R.D. 63, 68 (D.N.J. 1989). The PDVSA Parties would undoubtedly have opposed registration on the grounds that the Collateral is subject to the jurisdiction of this Court. The Court should not deny otherwise appropriate relief to the Trustee and the Collateral Agent because they did not incur the expense of yet more litigation.

PDVH's suggestion that the Trustee and the Collateral Agent could "raise any concerns" with OFAC is similarly specious. Opp. 22. OFAC is not a court, and its role is not to adjudicate claims of specific creditors, much less to adjudicate the priority of claims against PDVSA. The suggestion that the burden should be on the Trustee and the Collateral Agent to request assistance from OFAC because the PDVSA Parties seek to avoid their debts is absurd.

Finally, PDVH's accusation that this Motion represents a "strategic attempt" by the Trustee and the Collateral Agent to "extract a premium on their judgment," Opp. 23, is backwards. The Trustee and the Collateral Agent seek only to preserve their rights under the judgment and the Pledge Agreement while the PDVSA Parties' appeal is pending. It is the

PDVSA Parties who seek to use the Court's stay strategically to misuse CITGO's assets while the Trustee and the Collateral Agent are precluded from exercising their rights.

**III.     The Court Has Equitable Authority to Modify the Partial Stay and Should Do So**

PDVH's assertion that the Trustee and the Collateral Agent have waived any arguments about the Court's equitable power, Opp. 9, is based on a misreading of the Court's order. The Court's principal stated basis for the partial stay was Rule 62(b). ECF No. 241 at 2. While the Court noted that a stay was authorized by its inherent equitable authority to protect the status quo pending appeal as well as Rule 62(b), the Court's discussion of the relevant equitable standard under *Nken* v. *Holder*, 556 U.S. 418, 434 (2009), was limited to one of the four relevant factors—namely, irreparable injury, ECF No. 241 at 4–5 & n.5. PDVH did not even invoke the Court's equitable authority in seeking a stay, and, as the Court noted, PDVH did not analyze the relevant *Nken* factors. *Id.* at 5 n.5. The Trustee and the Collateral Agent's Motion directly addressed irreparable injury and showed that there would be no such injury to PDVH if the Court grants the relief they requested. Mot. 22. In these circumstances, there is no waiver.

To the extent the partial stay was based on the Court's equitable authority, the Court has ample authority to modify it. It is well settled that "[t]he same court that imposes a stay of litigation has the inherent power and discretion to lift the stay. . . . When circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay." *Canady* v. *Erbe Elektromedizin GMBH*, 271 F. Supp. 2d 64, 75 (D.D.C. 2002); *see also Rovi Guides, Inc.* v. *Comcast Corp.*, 2018 WL 1726250, at *1 (S.D.N.Y. Apr. 6, 2018) (similar); *Mgmt. Registry, Inc.* v. *A.W. Cos., Inc.*, 2023 WL 4249208, at *9 (D. Minn. June 28, 2023) ("A court may modify or vacate a stay, however, when circumstances have changed and made the stay inequitable.").

Here, the *Nken* equitable factors weigh in favor of modifying the partial stay.

13

***Likelihood of success on the merits***. Contrary to PDVH's misleading assertions, the PDVSA Parties' likelihood of success on the merits is *less* than it was when the stay was entered. Since the stay was entered, the Second Circuit has squarely rejected the PDVSA Parties' principal argument that the 2020 Notes were unenforceable under the act of state doctrine. *Petróleos de Venezuela S.A.* v. *MUFG Union Bank, N.A.*, 51 F.4th 456, 466–67 (2d Cir. 2022). The Court, while certifying questions of state law to the New York Court of Appeals, also acknowledged the strong arguments supporting the position taken by the Trustee and the Collateral Agent. *E.g.*, *id.* at 472 ("Considering the volume of securities activity in New York, if section 8-110 was as broad as the [PDVSA Parties] suggests, one would expect to find a trove of New York decisions applying the statute."). And even if the PDVSA Parties were to prevail on the New York choice-of-law issues remaining on appeal, they will need to establish their claims under Venezuelan law. ECF No. 99, at 37–44.

***No irreparable injury to PDVH***. PDVH's argument that it would be irreparably injured by "premature execution of the Final Judgment" through "initiat[ing] a foreclosure sale," Opp. 10, misrepresents the relief sought by the Motion. The Motion does not seek the right to foreclose on the Collateral. Instead, it seeks only to preserve the status quo by preventing the misappropriation of CITGO's assets. *See* Mot. 20. Nor do the Trustee and the Collateral Agent seek the right to appoint CITGO Holding directors (following consultation with OFAC) to implement a foreclosure sale, but only to "ensure that the PDVSA Parties comply with their obligations not to diminish the value of the Collateral by causing CITGO Holding and CITGO Petroleum to use their assets to settle claims with the Republic and the PDVSA Parties." Mot. 22. PDVH would not be prejudiced by being required not to use the assets of CITGO for the

benefit of PDVSA and the Republic. *Id.* at 10. Indeed, that is what the Pledge Agreement already requires. *Supra* II.B.

     ***Cognizable injury to the Trustee and the Collateral Agent***. The Trustee and the Collateral Agent have shown the risk of substantial cognizable injury unless the stay is modified, for reasons discussed above. There is every reason to believe that the PDVSA parties intend to diminish the value of the Collateral by using CITGO's assets, in violation of the Pledge Agreement, to settle claims of other, structurally junior creditors. *Supra* I, II.C. The likelihood of such a misuse of CITGO's assets is thus far from "speculative." Opp. 3, 11, 20.

     ***Public interest***. PDVH asserts there is a public interest in retaining Venezuela's indirect ownership interest in CITGO, Opp. 13, but this argument is misplaced; the Trustee and the Collateral Agent do not seek to "moot the appeal," as PDVH contends, *id.*, but to preserve the status quo. Similarly, PDVH's pious invocation of U.S. policy favoring "resolution of this dispute through litigation (or negotiated settlement) rather than self-help by the Noteholders," *id.*, misrepresents the relief sought by the Trustee and the Collateral Agent. It is the PDVSA Parties—not the Trustee and the Collateral Agent—who are seeking the right to engage in self-help by using CITGO assets to favor one group of (unsecured) creditors over the (secured) 2020 Noteholders. There is no public interest in favor of avoiding adjudicated debts.

## Conclusion

    The motion should be granted.

Dated: New York, New York
September 8, 2023

Respectfully submitted,

| | |
|---|---|
| LATHAM & WATKINS LLP<br>Matthew S. Salerno<br>1271 Avenue of the Americas<br>New York, New York 10020-1300<br>Telephone: 212-906-1200<br>Facsimile: 212-751-4864<br>matthew.salerno@lw.com<br><br>*Attorneys for Defendants and Counterclaim Plaintiffs MUFG Union Bank, N.A. and GLAS Americas LLC, in their respective capacities as Trustee and Collateral Agent, under the Indenture dated October 27, 2016, and the Pledge and Security Agreement dated October 28, 2016, governing PDVSA's Senior Secured Notes due 2020* | PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP<br><br>By:  *s/ Walter Rieman*<br>    Walter Rieman<br>    Jonathan Hurwitz<br>    1285 Avenue of the Americas<br>New York, New York 10019-6064<br>Telephone: 212-373-3000<br>Facsimile: 212-757-3990<br>wrieman@paulweiss.com<br>jhurwitz@paulweiss.com<br><br>PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP<br>Roberto J. Gonzalez (*pro hac vice*)<br>2001 K Street, NW<br>Washington, DC 20006-1047<br>Telephone: 202-223-7300<br>rgonzalez@paulweiss.com<br><br>*Attorneys for Defendants and Counterclaim Plaintiffs MUFG Union Bank, N.A. and GLAS Americas LLC, in their respective capacities as Trustee and Collateral Agent, under the Indenture dated October 27, 2016, and the Pledge and Security Agreement dated October 28, 2016, governing PDVSA's Senior Secured Notes due 2020 (as to Federal and New York law issues only)* |