**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL     (1946-1956)
SIMON H. RIFKIND     (1950-1995)
LOUIS S. WEISS       (1927-1950)
JOHN F. WHARTON      (1927-1977)

WRITER'S DIRECT DIAL NUMBER

(212) 373-3260

WRITER'S DIRECT FACSIMILE

(212) 492-0260

WRITER'S DIRECT E-MAIL ADDRESS

wrieman@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

[Attorney roster omitted]

*NOT ADMITTED TO THE NEW YORK BAR

September 29, 2023

The Honorable Katherine Polk Failla
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

   *Petróleos de Venezuela, S.A. et al.* v. *MUFG Union Bank, N.A. et al.*, No. 1:19-cv-10023

Dear Judge Failla:

  By this letter, the Trustee and the Collateral Agent explain that an investor presentation issued by CITGO Petroleum Corp. ("CITGO") in September 2023 substantially supports the Trustee and the Collateral Agent's factual positions in connection with their pending motion for modification of the partial stay of the judgment, ECF No. 252 (the "Motion").  The Trustee and the Collateral Agent also respond to the letter from PDV Holding, Inc. ("PDVH") to the Court concerning the CITGO presentation, ECF No. 283 (the "PDVH Letter").  We became aware of the CITGO presentation after submission of the reply brief in support of the Motion, and we asked CITGO for its consent to our submission of the presentation to the Court (under seal, if CITGO so wished).  ECF No. 283-2; *see also* ECF No. 282.  Neither CITGO nor PDVH responded to that request before PDVH preemptively submitted its letter.

  The CITGO presentation supports the Motion in two major respects.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge

2

*First*, █████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

      The quoted passages from the presentation directly support a core reason to modify the partial stay. That reason is this: In light of the process supervised by Judge Stark of the United States District Court for the District of Delaware that is now swiftly moving towards a judicial sale of PDVH shares in mid-2024, various statements by the PDVSA Parties, and related facts, "there are strong reasons to believe that the PDVSA Parties intend to use the assets of CITGO . . . (i.e., the assets underlying the value of the Collateral) to settle many billions of dollars of claims" against PDVSA and the Republic. ECF No. 253, at 2. In opposition to the Motion, PDVH dismissively asserted that the Trustee and the Collateral Agent had not demonstrated "that any of the so-called 'risks' deriving from potential settlements in *Crystallex* are of real moment." ECF No. 273, at 2. While there was already ample evidence that the risks identified in the Motion are "of real moment," *see* ECF No. 280, at 7-11, CITGO's unambiguous written statement it its presentation ████████████████████████████████████

████████████████████████████████████████████████

---

[1]  The relevant passage from CITGO's preliminary offering memorandum, which is dated September 13, 2023, ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ The cover and quoted page from the memorandum are attached as Exhibit A.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                                 3

███████████████████████████████████████████████████████████ squarely establishes that the risk to the Collateral is real and substantial.

PDVH's effort to minimize this risk is misplaced. PDVH's principal contention is that the possibility of using CITGO's assets to finance settlements with other creditors "*is not new information.*" PDVH Letter at 2. It is true, of course, that the Republic's Council on the Administration and Protection of Assets ("CAPA"), in its letter of June 28, 2023, to the U.S. Secretary of State, stated that the PDVSA Parties intended to "leverage CITGO's improved financing capacities" to settle such claims. ECF No. 274-7, at 2; *see also* ECF No. 280, at 3. The CITGO presentation, however, confirms with clarity and specificity ████████████ ████████████████████████████████████████████████████████████ The CITGO presentation also establishes that ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

PDVH's other responses are similarly unpersuasive.

- It is immaterial whether, as PDVH asserts, "no settlements are certain or imminent." PDVH Letter at 2. Appellate proceedings will not be resolved until well into 2024 at the earliest. ECF No. 280, at 9 n.4. If the Motion is not granted, the Trustee and the Collateral Agent may learn of any future settlements only when they are consummated or when it is too late for the Trustee and the Collateral Agent to protect the economic interests of the 2020 Noteholders in preventing dissipation of the value of the Collateral. *See* ECF No. 280, at 10-11.

- PDVH asserts that the Trustee and the Collateral Agent "would have multiple opportunities to object to any future settlements, which are subject to approval by [OFAC], the Venezuelan National Assembly, and the U.S. District Court in Delaware." PDVH Letter at 2. There is no assurance, or even any reasonable expectation, that this will be so.

    An application to OFAC for a special license approving a settlement or settlement-related transaction would not be a matter of public record. Even OFAC's *issuance* of a special license would not routinely be a matter of public record.[2] The Trustee and

---

[2] As one commentator has explained, "[w]hen OFAC grants specific licenses, it does not make them public." Andrew Boyle, *Ripe for Reform*, Just Security (Feb. 12, 2021), https://www.justsecurity.org/74679/ripe-for-reform-the-opaque-world-of-specific-licenses-to-do-business-under-sanctions/. Applications for specific licenses are likewise nonpublic; both specific licenses and applications for specific licenses are available only through

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                                                             4

> the Collateral Agent could thus first become aware that OFAC had issued a special license when the PDVSA Parties enter into or consummate a transaction in reliance on the license.
>
> The Trustee and the Collateral Agent cannot rely on any alleged intention by the PDVSA Parties to submit any proposed settlement or settlement-related transactions to the 2015 Venezuelan National Assembly for approval. CITGO Holding and CITGO routinely enter into major financings without any such approval. ECF No. 100 ¶¶ 473-499. The Trustee and the Collateral Agent do not know whether any such submission to the National Assembly would be publicly disclosed or how speedily the process would be concluded. And they would not expect to have any ability to influence the National Assembly's actions.
>
> We are not aware of any requirement that the district court in Delaware grant prior approval of any settlement. PDVH does not appear to claim that prior judicial approval is required and has not cited any source for any such alleged requirement. *See* ECF No. 253, at 12-13 (discussing provision in Sale Procedures Order halting implementation of the order if underlying judgments are "consensually resolved"); ECF No. 255-2 ¶ 29 (underlying provision in Sale Procedures Order). Judge Stark would need to approve a stipulation by which a creditor dismissed its action in Delaware with prejudice pursuant to a settlement. *See* Fed. R. Civ. P. 41(a)(2); *see also* ECF No. 273, at 11. But the underlying settlement transactions could be consummated prior to or concurrently with submission of such a stipulation to Judge Stark. In any event, a request for routine judicial approval of a settlement-related dismissal would hardly give the Trustee or the Collateral Agent adequate advance notice or an opportunity to protect the value of the Collateral. The partial stay, as

---

requests under the Freedom of Information Act ("FOIA") (and subject to applicable FOIA exemptions). *Id*. ("If someone has an interest in learning what specific licenses OFAC has granted, that person has to file a Freedom of Information Act (FOIA) request, a notoriously slow-moving process."); 31 CFR 501.801 (a), (b)(6) (noting that OFAC will withhold specific licenses and applications for specific licenses in response to FOIA requests if OFAC "determines that such information should be withheld in accordance with an applicable FOIA exemption"). As an OFAC Associate Director with supervisory responsibility for processing FOIA requests has attested, "OFAC has a long-standing policy of treating as confidential information submitted to OFAC in support of license applications where the law, particularly [FOIA] exemptions (b)(4) [concerning commercial or financial information] and (b)(6) [concerning personal privacy interests], permit[s] such treatment." Decl. of Virginia R. Canter ¶ 64, *Cozen O'Connor* v. *U.S. Dep't of Treasury*, No. 2:05-cv-4332-TJS (E.D. Pa. Jan. 11, 2007), ECF No. 37-2. Even if the Trustee and the Collateral Agent knew or guessed when to submit a FOIA request to OFAC for information relating to settlement-related specific licenses or license applications, that request would probably not receive a timely response and would very likely result only in an eventual response asserting that the requested information is exempt from disclosure.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                           5

>   currently framed, would also appear to prevent the Trustee and the Collateral Agent from seeking to enforce their rights under the Pledge Agreement before Judge Stark. ECF No. 241 ¶ 5.
>
>   Furthermore, the PDVSA Parties elected not to respond to a proposal from the Trustee and the Collateral Agent that would have required the PDVSA Parties, among other things, to give the Trustee and the Collateral Agent reasonable advance notice of proposed transactions outside the ordinary course of business that removed value from the Collateral. ECF No. 280, at 3-4; ECF No. 281 ¶ 3. The PDVSA Parties' decision not to respond does not suggest any belief on their part that advance notice to the Trustee and the Collateral Agent through other channels is inevitable or even likely.

- It is equally immaterial that, as PDVH asserts, "certain of the methods for raising capital (such as debt or equity at the PDVH level)" would not impair the value of the Collateral. PDVH Letter at 2. PDVH's assertion ignores the clear statement in the CITGO presentation that

    

- Citing its response to the Motion and CAPA's letter, PDVH asserts that it intends to use only "a limited amount of cash and non-cash resources from the CITGO entities" to settle with other creditors, and that "the total amount of resources that the CITGO entities could provide in support of any such settlements [with other creditors] . . . is far less than any amount that could plausibly reduce the collateral's value below that of Defendants' judgment." PDVH Letter at 2 (emphasis omitted).

    The CAPA letter, however, shows just the opposite. It identifies "~$21 billion" of claims against PDVSA and the Republic. ECF No. 274-7, at 3. That amount far exceeds the $13 billion in value that PDVH ascribes to CITGO. See ECF No. 273, at 2. CAPA concluded that the sale of PDVH's shares in Delaware will leave "close to $15 billion in claims . . . unsatisfied." ECF No. 274-7, at 1; see also ECF No. 281-2 (chart summarizing claims in excess of $23 billion by creditors seeking to obtain proceeds from judicial sale of PDVH shares).

    Moreover, allowing the PDVSA Parties to reduce the current value of the Collateral to merely the amount of the judgment (plus interest) would gravely compromise the practical enforceability of the judgment, would contravene the right of the Trustee

The Honorable Katherine Polk Failla
United States District Judge                                                                                          6

and the Collateral Agent to adequate security, and would permit the PDVSA Parties to breach the Pledge Agreement. The Collateral is illiquid, and its value is subject to fluctuation and potential decline during the remaining pendency of the appeal. ▮▮▮▮▮▮▮▮▮▮ A sale of the Collateral would be time-consuming, expensive, and complex, and the Trustee and the Collateral Agent are entitled to recover expenses, including expenses of any foreclosure and sale, as well as the amount of the judgment plus interest, from the proceeds of the sale, ECF No. 87-5 §§ 5.05, 5.06; ECF No. 87-4 §§ 5.01(e), 8.05. These sorts of problems explain why courts have often required a judgment debtor to post alternative security having a value that far exceeds the amount of the judgment secured. *See* ECF No. 280, at 10. And because the Collateral consists of 50.1% of CITGO Holding's shares, the value of the Collateral reflects only 50.1% o▮▮▮▮▮▮▮▮▮▮

Finally, PDVH's failure in its letter and its brief in opposition to acknowledge the anti-upstreaming provisions of the Pledge Agreement has magnified the reasons for concern about the potential future misuse of CITGO's assets. The Pledge Agreement provides that following an Event of Default, distributions from CITGO Holding must be paid directly to the Collateral Agent—not to PDVH—and that any such distributions made to PDVH in breach of that provision must be held in trust for the Collateral Agent. ECF No. 87-5 § 2.05(c), (f); *see* ECF No. 253, at 4-5; ECF No. 280, at 6-7. In other words, the Pledge Agreement prohibits exactly ▮▮▮▮▮▮▮▮▮▮ And faced with this contradiction, PDVH *does not say in its letter, as it did not say in its brief, that the PDVSA Parties will comply with these provisions in the Pledge Agreement. See also* ECF No. 280, at 3-4. In fact, PDVH's unquantified suggestion that the PDVSA Parties will use only "a limited amount of cash and non-cash resources from the CITGO entities," PDVH Letter at 2, when the Pledge Agreement prohibits *all* distributions to any entity other than the Collateral Agent, seems to suggest that the PDVSA Parties may be willing to breach the Pledge Agreement if they regard the breaches as "limited."

*Second*, the investor presentation is also relevant to whether allowing the Collateral Agent to exercise its voting rights arising from the shares of CITGO Holding that constitute the Collateral would disrupt CITGO's assets or operations. In its response to the Motion, PDVH asserted that granting the Motion would "impos[e] intrusive restrictions on CITGO's operations." ECF No. 273, at 13; *see also id.* at 24. ▮▮▮▮▮▮▮▮▮▮

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                              7

[REDACTED]

PDVH does not even try to explain the stark inconsistency between what it told this Court and what CITGO has told prospective investors. [REDACTED] PDVH offers no reason to think that a change in control of CITGO Holding would have materially different consequences for the assets or operations of CITGO than a change in control of PDVH, and no such reason exists. In fact, a change in control of PDVH *is* effectively a change in control of CITGO Holding. That is so because PDVH is the sole shareholder of CITGO Holding, and thus (subject to the rights of the Collateral Agent) PDVH may elect directors of CITGO Holding and otherwise exercise the rights of a sole shareholder.

Next, PDVH asserts that lifting the stay would harm "*PDVH . . . by removing its control over its wholly owned subsidiary.*" PDVH Letter at 2. But the Pledge Agreement contemplates that following a default on the 2020 Notes, the Collateral Agent may vote the securities constituting the Collateral. Removing PDVH's control over CITGO Holding is not "harm" of which PDVH may justifiably complain; that removal of control is an agreed contractual consequence of PDVSA's payment default. One obvious major purpose of the contractual provision in question was to enable the Collateral Agent to prevent PDVH and its shareholders from draining value out of the Collateral. Actions by PDVH and its shareholders that drain value are now a real possibility. It is no answer for PDVH to say that the pending appeal challenges the enforceability of the Pledge Agreement. This Court has ruled that the Pledge Agreement is enforceable, and the PDVSA Parties should not be permitted to attack the value of the Collateral during the pendency of the appeal.

PDVH also alleges that the Trustee and the Collateral Agent seek to "enable[e] [themselves] to seize control of the CITGO entities' operations and initiate (or threaten to initiate) a foreclosure sale." PDVH Letter at 2. That is not so. As to a foreclosure sale: the Trustee and the Collateral Agent have not sought modification of the provisions in the partial stay that prohibit them or others from "attempting to sell the collateral securing the 2020 Notes." ECF No. 241, at 7 ¶ 5. And if and when those provisions cease to be effective, the Trustee and the Collateral Agent, acting pursuant to directions from and arrangements with the 2020 Noteholders—and not the directors of CITGO Holding—would have the sole power under the contracts governing the 2020 Notes to initiate and conduct a foreclosure sale. ECF No. 87-5 §§ 5.02-5.05; ECF No. 87-4 § 5.01(e). New directors of CITGO Holding could not foreclose or threaten to foreclose.

Nor would permitting the Collateral Agent to exercise its voting rights improperly "seize control of the CITGO entities' operations." The 2020 Notes are obligations of PDVSA and the Guarantor, and they are secured by Collateral belonging to PDVH (and indirectly to PDVH's

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                                                        8

parents).  The 2020 Notes are not obligations of CITGO Holding, and CITGO Holding does not own the Collateral.  New directors of CITGO Holding would have the obligations and duties of directors.  They could not and would not seek, against the will of the PDVSA Parties, to use assets of CITGO Holding or CITGO to pay the obligations of PDVSA and the Guarantor arising from the 2020 Notes.  The Trustee and the Collateral Agent seek permission for the Collateral Agent to exercise its voting rights only to preserve the *status quo* during the pendency of the appeal and to prevent the PDVSA Parties from improperly stripping the Collateral of its value during that time.  ECF No. 280, at 2, 14-15.

    Respectfully submitted,

    *s/ Walter Rieman*

    Walter Rieman

cc:  Counsel of Record (Via ECF)