**WILLKIE FARR & GALLAGHER** LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

October 6, 2023

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York  10007

Re:   *Petróleos de Venezuela, S.A., et al.* v. *MUFG Union Bank, N.A., et al.*, 1:19-cv-10023

Dear Judge Failla:

    This letter responds to the eight-page letter brief filed on September 29, 2023 by the Trustee and Collateral Agent ("Defendants") regarding CITGO Petroleum Corp.'s ("CITGO") September 2023 investor presentation ("Presentation"). ECF No. 292.

    For starters, this Court should strike Defendants' unauthorized letter brief. Defendants did not request an enlargement of this Court's standard three-page limit for letter motions,[1] nor did Defendants seek Plaintiffs' consent to their lengthy submission.[2] If allowed, Defendants' letter brief will exacerbate a prejudicial disparity with respect to their Motion—namely, Defendants' letter would bring their total page allocation for this Motion to **50 pages**,[3] nearly half of it filed *after* Plaintiffs' opposition, which complied with this Court's rules. Accordingly, this Court should disregard Defendants' letter brief, and consider the Motion on the basis of the briefs filed in compliance with this Court's rules. If this Court intends to consider Defendants' submission, Plaintiffs respectfully request that it accept this letter as a reply to correct a number of Defendants' misleading and inaccurate representations.

    *First*, Defendants' letter again asks this Court to rely upon the content of a settlement proposal, which is subject to the provisions of Federal Rule of Evidence 408. This Court should decline to weigh Defendants' purported offer to "compromise the claim" because such evidence is plainly inadmissible. If, however, the Court intends to rely upon such evidence in adjudicating this Motion, Plaintiffs respectfully request they be permitted to provide the Court with a sworn account of the representations

---

[1] *See, e.g.*, Individual Rules of Practice in Civil Cases 3(C) (three-page limit for discovery disputes); 4(A) (same for pre-motion submissions); 6(C) (same for jurisdictional statements); *see also* Local Civ. R. 37.3(c) (same for discovery disputes).
[2] Defendants chide Plaintiffs for having "preemptively submitted [their] letter," ECF No. 292 at 1, but their complaint makes no sense if their sincere objective was to ensure "imminent submission" of the Presentation to the Court, ECF No. 282 at 2. Unless, of course, Defendants' actual goal was to use the Presentation as an excuse to file yet another brief.
[3] Defendants' letter brief follows 42 pages of previously filed briefs and letters (ECF No. 252 (1 page); ECF No. 253 (23 pages); ECF No. 278 (2 pages); ECF No. 280 (15 pages); ECF No. 282 (1 page)), and almost 3,000 pages of supporting declarations and exhibits (ECF No. 254 (2 pages); ECF No. 255 (297 pages); ECF No. 281 (2,693 pages)).

made by Defendants' counsel during not only the referenced August 2, 2023 telephonic conversation, but all related settlement communications including those that occurred prior to August 2.

Regardless, Defendants' settlement proposal is unreasonable. The so-called anti-upstreaming provision of the Pledge provides that "all profits and other distributions on the Securities [i.e., the CITGO Holding shares that constitute the Collateral] shall be paid directly to the Collateral Agent." ECF No. 87-5 at 8. Yet Defendants have sought to expand that provision well beyond "profits and other distributions on the Securities," and to bind *other entities*. Defendants demanded that PDVSA and PDVH, whose ability to issue debt and equity is not affected by the Pledge, agree to provide "30 days' prior notice of any non-ordinary course transaction or transaction that transfers assets to any creditor of PDVSA, PDVSA Petróleo, or the Bolivarian Republic of Venezuela." ECF No. 281 ¶ 3. But even if Defendants were to prevail on appeal, and obtain sanctions relief, they would have no advanced notice or objection rights to transactions between PDVH and/or PDVSA and PDVSA's creditors.[4] Defendants' purported rights under the anti-upstreaming provision, if enforceable, are limited to "distributions on the Securities"—i.e., from CITGO Holding to its shareholders, and do not extend to *any* "non-ordinary course transactions" or *any* that *might* impact CITGO's value.[5] PDVH is open to an advanced notice agreement that tracks the actual terms of the Pledge, and has reached out to Defendants to discuss that potential compromise.

*Second*, contrary to Defendants' claim, ECF No. 292 at 3, the Presentation's statement ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ "Our proposal," the CAPA Letter explains, "is to leverage CITGO's improved financing capacities to settle claims by Crystallex, the PDVSA 2020 bondholders, and the PDVSA creditors who currently hold conditional attachments (ConocoPhillips, Dresser Rand, and Red Tree)." ECF No. 274-7 at 3. The CAPA Letter expressly references the possibility of the use of CITGO assets, and notes that CITGO has "generated meaningful financial capacity to fund a settlement with creditors" and has been working diligently with PDVSA and CAPA to explore that possibility. *Id.*

*Third*, Defendants continue to pretend as though the *potential* contemplated settlements would *exclude* the PDVSA 2020 bondholders. But as the CAPA Letter repeatedly emphasizes, the Venezuela Parties have identified a total of $5 billion worth of claims that could be settled using PDVH and CITGO assets, and that "Group 1" **expressly includes Defendants' $1.9 billion judgment**. ECF No. 274-7 at 3, 4, 7. The CAPA Letter explicitly asks the U.S. Government to "deny or defer licenses to [those] remaining creditors until after the 2024 Venezuelan elections" because efforts to satisfy those *additional* claims would "damage the image of [CITGO] and affect the result of the 2024 elections." *Id.* at 3–4. Defendants thus have no basis for describing the "[p]otential future settlements, if pursued by CITGO's shareholder," ECF No. 292 at 2, as encompassing tens of billions of dollars of additional claims.

---

[4] Similarly, Defendants ask this Court to bar CITGO from "issuing any securities, loans, or indebtedness … to PDVSA's creditors," ECF No. 253 at 3, without ever showing that such instruments constitute "profits or distributions on the Securities."

[5] These points fully answer Defendants' accusation that Plaintiffs intend to violate the Pledge's anti-upstreaming provision. *See* ECF No. 292 at 6, which is premised entirely on Defendants' self-serving interpretation of the anti-upstreaming provision and unwarranted insistence that no transaction could be structured to comply with it.

The total face value of the claims within Group 1, excluding Defendants' $1.9 billion judgment, is approximately $3.1 billion. Even if settlements with *all* Group 1 creditors were possible, and excluded Defendants, Defendants would have to show that a $3.1 billion reduction in value would likely thwart their ability to satisfy their judgment. But according to Defendants' own sources, the CITGO entities are worth at least $13 billion, leaving well over $9.5 billion in residual value. ECF No. 255-1.

***Fourth***, Defendants are wrong to accuse PDVH of "stark inconsistency" between its statements to this Court and the Presentation regarding a potential change of control at PDVH. ECF No. 292 at 7. The Presentation stated granting Defendants' demand for an immediate change of control at CITGO Holding would immediately hand keys to CITGO to a hostile counterparty with a single objective—monetizing their investment in the 2020 bonds. The bondholders have already declared their intent to freeze *any* CITGO transactions they believe would impair their purported Collateral *in any amount*.

***Fifth***, Defendants claim that Judge Stark would only need to "approve a stipulation by which a creditor dismissed its action in Delaware," ECF No. 292 at 4, but ignore that under Fed. R. Civ. P. 41(a)(1)(A)(ii), dismissal by stipulation of Crystallex's claim is permitted only if "signed by all parties who have appeared." Because Defendants have appeared in *Crystallex*, they would have to sign any such stipulation, and if they refuse, dismissal could be granted only by court order under Rule 41(a)(2).

***Sixth***, Defendants now self-servingly insist that, if empowered to vote the CITGO shares, they "could not and would not seek" to use CITGO assets to pay the obligations "arising from the 2020 Notes." *Id.* at 8. This assurance is meaningless. Nothing would stop Defendants, once empowered as CITGO Holding directors, from instructing the CITGO entities to satisfy the bondholders' claim, or to shut down CITGO's operations and spending until the bondholders are paid, thereby achieving the same end. Moreover, the CITGO Holding shares are blocked property under current U.S. sanctions, ECF No. 273 at 7–8, and no rights or interests in that property may be transferred to Defendants (including by an order of this Court) without a *specific* (rather than a general) license. *Id.*; *see also* 31 CFR §§ 591.310, 591.407. Defendants concede that they have no specific license.

***Seventh***, Defendants effectively ask this Court to empower them to block any transaction that would impair the "value of the Collateral" **in any amount whatsoever**, including being entitled to veto the issuance of debt or equity even at the PDVH level, because the Presentation "appears to imply that distributions from CITGO will be used" to "pay" that contemplated "debt in cash." ECF No. 292 at 5. But even if the Pledge were enforceable, PDVH is plainly entitled to issue debt or equity, including to fund settlements with creditors of PDVSA or the Republic, without running afoul of any provision in the Pledge Agreement. In sum, Defendants cannot possibly justify their demand to seize control of CITGO based on the hypothetical possibility that possible future settlements may involve possible future debt repayments that Defendants theorize would be inconsistent with the Pledge's anti-upstreaming provision.

- 4 -

                                                  Respectfully submitted,

                                                  *s/* Michael J. Gottlieb

                                                  Michael J. Gottlieb

cc: Counsel of record for all parties via ECF