PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

BEIJING
HONG KONG
LONDON
LOS ANGELES
SAN FRANCISCO

TOKYO
TORONTO
WASHINGTON, DC
WILMINGTON

DIRECT DIAL: (212) 373-3254
EMAIL: JHURWITZ@PAULWEISS.COM

May 9, 2024

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    *Petróleos de Venezuela, S.A. et al.* v. *MUFG Union Bank, N.A. et al.*, No. 1:19-cv-10023

Dear Judge Failla:

    We represent the Trustee and the Collateral Agent. We are writing concerning our clients' pending motion, ECF No. 252 (the "Motion"), for an order modifying the partial stay of execution of enforcement of this Court's judgment, ECF No. 241 (the "Stay Order"). The Motion has been fully briefed since September 8, 2023. On December 12, 2023, the parties jointly requested that the Court refrain from ruling on the Motion in light of the parties' efforts to achieve a consensual resolution of that motion. ECF No. 298; *see also* ECF No. 296 (letter from counsel for PDVH advising the Court that the parties were discussing a potential negotiated resolution of the Motion).

    The Trustee and the Collateral Agent now write to request that the Court rule on the Motion insofar as it seeks protection from impairment of the value of the Collateral by the use of CITGO and its assets for the benefit of other creditors of PDVSA or the Republic. Specifically, the Trustee and the Collateral Agent request that "to protect the status quo during the pendency of PDVH's appeal," Stay Order at 4, the Court condition any continuance of the stay on the PDVSA Parties' committing to refrain from (i) using any assets of CITGO Holding or CITGO Petroleum to make payments to PDVSA's creditors and (ii) issuing any securities, loans, or indebtedness, or any derivatives of CITGO Holding or CITGO Petroleum, to PDVSA's creditors, in either case without the written consent of the Trustee and the Collateral Agent. ECF No. 253 at 16–21, 23. The Trustee and the Collateral Agent do not at this time ask the Court to

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                                                                    2

rule on the request in the Motion to modify the stay to permit the Trustee and the Collateral Agent to exercise their contractual rights to vote the shares of CITGO Holding, *id*. at 22–23, although they reserve the right to seek such relief at a later date (or to seek other relief pertaining to their right to vote the Collateral shares).

   Modifying the Stay Order is necessary to preserve the status quo and protect the value of the Collateral pending PDVH's appeal. As explained in the Motion, there are strong reasons to believe the PDVSA parties intend to use the assets of CITGO to settle with creditors holding billions of dollars of claims against the PDVSA parties and the Republic, including in connection with the impending sale of PDVH in *Crystallex International Corp.* v. *Bolivarian Republic of Venezuela*, No. 1:17-mc-00151-LPS (D. Del.) (the "*Crystallex Asset Proceeding*"), thereby eroding the value of the Collateral and violating the Pledge Agreement. Mot. 2, 17–18. Section 2.05 of the Pledge Agreement provides that during the pendency of an Event of Default, profits and other distributions from CITGO Holding must be paid directly to the Collateral Agent and are subject to the liens provided under the Pledge Agreement. Mot. 4. The PDVSA Parties have made clear that, despite these provisions, they intend to seek to use CITGO's assets to settle with other creditors of PDVSA and the Republic. *See* statements cited in ECF No. 280 at 3–4.

   The risk that the PDVSA Parties will engage in such a transaction is increasing rapidly as the deadline for concluding the auction of PDVH approaches. The deadline to submit final binding bids is on June 11, 2024—little more than a month from today—and a final sales hearing is scheduled for July 15. *Crystallex Asset Proceeding*, No. 1:17-mc-00151-LPS, ECF No. 1134 (D. Del. Apr. 16, 2024).

   The march towards CITGO's auction creates the additional risk that the value of the Collateral will be impaired if bidders seek to use CITGO's assets to finance a purchase of PDVH. According to press reports, at least one preliminary bid for PDVH shares was $7.3 billion, and financial advisors appointed by the Court estimated bids in the range of $13–$14 billion. https://www.reuters.com/business/energy/weak-bids-citgo-auction-spurs-venezuela-pitch-alternative-pay-plan-2024-03-14/. Bids in this range will almost certainly require some if not all interested bidders to arrange external financing, possibly by leveraging CITGO's assets. For example, Rusoro Mining Ltd.—a creditor of the Republic—has announced that it submitted a non-binding indication of interest in PDVH's shares. https://rusoro.com/rusoro-announces-filing-non-binding-indication-of-interest-pursuant-to-citgo-bidding-procedures/. Rusoro, however, appears to have no material assets other than claims arising from Venezuela's expropriation of its mining concessions in that country, and its most recent audited financial statements are accompanied by going concern opinions from its auditors, indicating "significant doubt" about its ability to continue to operate as a going concern. *See* https://rusoro.com/; https://rusoro.com/corporate/financial-statements/. Accordingly, it almost certainly has no ability to finance an acquisition other than by bidding its claims (totaling approximately $1.5 billion) and leveraging CITGO's assets to pay off the approximately $3.7 billion of claims senior to it (exclusive of the 2020 Notes) and to pay the balance of the purchase price, thereby potentially impairing the value of the Collateral. *See* 17-mc-00151, ECF Nos. 1102 (D. Del. Apr. 3, 2024) (identifying nine claims of a higher priority than Rusoro's); 1140-1 (May 1, 2024)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                                                           3

(value of claims). Whether for the benefit of PDVSA, the Republic, or a third-party bidder, PDVH should not be permitted to reduce the Collateral value over the objection of the Trustee and the Collateral Agent.

The likelihood that the Second Circuit may vacate the Court's judgment for further proceedings does not warrant keeping the Stay Order in place without modification.  To begin with, it is unclear when or how the Second Circuit will rule on the pending appeal, or whether it will do so before the final bid deadline or the final sale hearing in the PDVH auction.  As the Court is likely aware, the Court of Appeals of the State of New York issued an opinion on February 20, 2024, holding that the PDVSA Parties' claims that the issuance of the 2020 Notes required authorization from the Venezuelan National Assembly implicate "validity" within the meaning of Uniform Commercial Code § 8-110(a)(1).  *Petróleos de Venezuela, S.A.* v. *MUFG Union Bank, N.A.*, __ N.Y. __, 2024 WL 674251 (N.Y. Feb. 20, 2024).  The parties filed supplemental briefs in the Second Circuit on March 19, 2024, *Petróleos de Venezuela, S.A.* v. *MUFG Union Bank, N.A.*, No. 20-3858, ECF Nos. 347 and 348 (2d Cir. March 19, 2024), and the court has not indicated when it may rule.  In the meantime, this Court's Stay Order not only stays enforcement of the judgment, but prohibits the Trustee, the Collateral Agent, and holders of 2020 Notes from "attempt[ing] to enforce the Pledge Agreement."  Stay Order at 7.  That the Second Circuit may vacate the Court's judgment does not affect the legitimate interest of the Trustee and the Collateral Agent in protecting the Collateral value or entitle the PDVSA Parties to take actions that threaten to impair that value.

As noted, the Trustee and the Collateral Agent are not now asking the Court to rule on their request to permit the Trustee and the Collateral Agent to exercise their contractual rights pursuant to Section 2.05(d) of the Pledge Agreement to vote the 50.1% of CITGO Holding that the Collateral Agent holds as Collateral.  The Trustee and the Collateral Agent reserve their right to do so (or to seek other relief pertaining to their right to vote the Collateral shares) in the future.  In particular, the Trustee and the Collateral Agent may seek relief from the Court entitling them to vote the Collateral shares, or precluding a purchaser of PDVH from installing a new Board of CITGO Holding without their consent, at a later stage of the PDVH auction, when there is greater clarity about the identity of a successful bidder and the timing, mechanics, and conditions of any sale of PDVH.  A sale to a non-Venezuelan entity not subject to U.S. sanctions and under a license from OFAC would eliminate any sanctions-related impediment to the exercise of their voting rights under the Pledge Agreement.  Those rights would be grossly violated if a purchaser, indirectly holding less than a majority of CITGO Holding's shares, attempts to replace the Board of Directors of CITGO Holding without their consent.

Respectfully submitted,

*/s/ Jonathan Hurwitz*

Jonathan Hurwitz

cc:  Counsel of Record (Via ECF)