**WILLKIE FARR & GALLAGHER** LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

May 29, 2024

**VIA ECF**

The Honorable Katherine Polk Failla
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Petróleos de Venezuela, et al. v. MUFG Union Bank, N.A., et. al.*, 19-cv-10023 (KPF)

Dear Judge Failla:

  We write on behalf of PDV Holding, Inc. ("PDVH"), Petróleos de Venezuela S.A. ("PDVSA"), and PDVSA Petróleo, S.A. (together with PDVH and PDVSA, "Plaintiffs") in response to the Trustee and Collateral Agent's ("Defendants") May 21, 2024 letter ("Letter").[1] This Court should promptly deny Defendants' motion for all of the reasons set forth in Plaintiffs' previous briefing and letters. *See* ECF Nos. 273-75, 283, 293, 304.

  Defendants insist they are entitled to what is, in effect, a preliminary injunction against Plaintiffs, because this is a "critical period" for them. Letter at 2. But the reason this is a "critical period" for Defendants is not because of PDVH—the party that Defendants seek to enjoin. Instead, this is a "critical period" because the Second Circuit will soon vacate the very judgment the Bondholders have held out as leverage over the imminent auction of the shares of PDVH in *Crystallex*—an auction in which the Bondholders have no registered judgment or security interest of their own—in an effort to secure payment on their disputed and contingent claim in priority over the many creditors with recognized and attached judgments against PDVSA and the Republic.

  Defendants' assertion that the Second Circuit's anticipated vacatur of this Court's judgment is not "relevant" to their Letter, *id.*, is as perplexing as their misleading insistence that they seek no "additional security" beyond their rights in the judgment, *id.* at 1–2. Defendants do not dispute that they have "forfeited" their right to the protection of any interest in this Court's judgment by asking the Second Circuit to vacate it. *See* ECF No. 304, at 2. That by itself is sufficient grounds for denying the pending motion. What the Bondholders are asking for now is an additional order preemptively enjoining Plaintiffs from acting in a manner that the Bondholders believe would violate the disputed Pledge—notwithstanding the fact that if and when the Second Circuit grants the vacatur the parties have agreed must occur (at minimum) as a next step, the validity of the Pledge will be among the disputed questions before this Court on remand. The Bondholders have not even attempted to justify the entry of that kind of preliminary injunctive

---

[1] The Court's Individual Rules of Practice do not provide for a reply in support of letter motions. *See* Individual Rules of Practice in Civil Cases ¶ 2.C. To the extent the Court considers Defendants' reply letter (ECF No. 305), Plaintiffs respectfully request it also considers this response.

relief. *See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018) (preliminary injunctions); *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (anti-suit injunctions).

Defendants again resort to speculation based on press reports about what might happen in the *Crystallex* sales process, including the threat that "bidders may seek to leverage CITGO to fund" their purchase. Letter at 1.[2] The musings of reporters do not constitute the kind of evidence on which injunctions are granted. Moreover, while the Bondholders brush aside the notion that they are seeking an anti-suit injunction, the modification to the stay they seek would have precisely that effect if it would actually prevent the Special Master, or the winner of the *Crystallex* auction, from "seek[ing] to leverage CITGO" as part of the ultimate sale transaction. Letter at 1.

Equally unsupported is the Bondholders' suggestion that the PDVSA Parties currently intend to use CITGO assets in relation to other creditor claims. *See, e.g., id.* ("None of the PDVSA Parties' arguments justifies permitting such actions."); *id.* at 2 (citing ECF No. 253, at 13-15). As PDVH previously explained, and as remains true today, that is not the case. *See* ECF No. 273. One would think, after a year of incorrectly insisting the sky was about to fall, the Bondholders might be more circumspect with their accusations. In any event, as the Plaintiffs have now explained multiple times, Defendants' outdated sources do not support their alarmist concerns. *See id.* at 20-21.

It should at this point be obvious that it is the Defendants—not the Plaintiffs—who seek to leverage this Court to influence the *Crystallex* proceedings. Despite the fact that this long-pending motion concerns a stay pending appeal of a judgment that will soon be vacated, Defendants seek to convert that partial Stay (ECF No. 241 ("Stay" or "Stay Order")) into an order that would grant legal effect to a disputed provision of the Pledge Agreement (the so-called anti-upstreaming provision). *See* ECF No. 303 at 2. The reason the Bondholders demand that relief *now* is because, if granted, it would give them control rights over all of the equity within the CITGO entities, and thus the power to jump ahead of all other *Crystallex* creditors in receiving payment in the rapidly approaching auction of the shares of PDVH. It is likely that the Bondholders are seeking to use precisely that leverage in their "negotiations" with the *Crystallex* Special Master. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 17-mc-151-LPS, ECF No. 1155 at 3 (referencing the Special Master's "negotiation" with the Bondholders "regarding a 2016 CITGO equity pledge"); *id.* at 3 n.2 (noting the potential for the Special Master to negotiate an "agreement . . . with the PDVSA 2020 Bondholders" that could require "amend[ing] the Bidding Procedures pursuant to the Sale Procedures Order…."); *id.* at 7 (noting that the Special Master "is engaged in . . . *discussions with the bondholders* ….") (emphasis added).

Finally, Defendants correctly observe that the *Crystallex* Special Master has been authorized to "engage in discussions" with the Bondholders, 17-mc-151-LPS, ECF No. 479, but that authority does not grant the Bondholders any excuse to violate the terms of this Court's orders, including the partial Stay. Given that the *Crystallex* Court has expressly stated that the Special Master does not have authority to add "the PDVSA 2020 Bondholders to be a Sale Process Party"

---

[2] This assertion is puzzling given Defendants' previous concession that the sale of PDVH contemplated in the *Crystallex* litigation "would not affect the security interest of the Trustee and the Collateral Agent in th[e] Collateral" given their assertion of a first-lien security interest in that Collateral. ECF No. 253 at 9.

or "take any role in disposing of the PDVSA 2020 Bondholders' claims," *id.*, an attempt to enforce the Pledge Agreement via "consensual resolution" with the Special Master or *Crystallex* bidders that excludes the PDVSA Parties would violate that order as well. *Accord* Letter at 3 (acknowledging limits on Special Master's authority).

                                                                                             Respectfully submitted,

                                                                                             s/ Michael J. Gottlieb

cc: Counsel of record for all parties via ECF