PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

DIRECT DIAL: (212) 373-3254
EMAIL: JHURWITZ@PAULWEISS.COM

BEIJING                 SAN FRANCISCO
BRUSSELS                TOKYO
HONG KONG               TORONTO
LONDON                  WASHINGTON, DC
LOS ANGELES             WILMINGTON

August 16, 2024

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    *Petróleos de Venezuela, S.A. et al.* v. *MUFG Union Bank, N.A. et al.*, No. 1:19-cv-10023

Dear Judge Failla:

    We are writing on behalf of all the parties pursuant to the Court's Order entered July 19, 2024, ECF No. 312. The Order directed the parties to "meet and confer and file a joint proposal (i) outlining what factual and legal issues should be supplemented and (ii) proposing a reasonable briefing schedule." The Order further provides that "[s]hould the parties fail to reach a consensus, the parties should outline their respective positions on issues where they are unable to reach agreement, which the Court will consider in due course." *Id*.

    As set forth below, the parties have largely agreed on the issues to be addressed in supplemental briefing and the page limitations for the briefing. The parties disagree, however, about whether the supplemental briefing should include additional expert declarations regarding Venezuelan law, the scope of any such additional declarations, and the timing of their submissions. The parties' joint proposal and their respective positions on the issues as to which they disagree are set forth below.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                                              2

**Joint Proposal**

Subject to the Court's approval, the parties propose as follows:

1. The parties will file simultaneous supplemental briefs of no more than 35 pages in support of their previously filed motions for summary judgment, together with any supplemental statements of undisputed fact pursuant to Rule 56.1.

2. The parties may file simultaneous response briefs of no more than 20 pages, together with responses to any supplemental Rule 56.1 statements.

3. The parties' submissions shall address: (i) whether the issuance of the 2020 Notes and the associated guaranty and pledge of collateral are valid under Venezuelan law, (ii) the act of state doctrine in light of the discussion of that doctrine in the opinions issued by the Second Circuit, and (iii) any relevant factual or legal developments since September 2020.

4. All other issues—including but not limited to the effect under New York law of any alleged invalidity of the Governing Documents under Venezuelan law, the equitable defenses asserted by the Trustee and the Collateral Agent in paragraphs 98 to 106 of their Answer and Counterclaims, ECF No. 40, and the counterclaims asserted by the Trustee and the Collateral Agent for unjust enrichment, breach of warranty, and *quantum meruit*, *id.*, Counts 8, 9, 10, and 12—should be deferred until a later stage of this proceeding, without prejudice to arguments as to waiver or discovery relating to such issues.

**Position of the PDVSA Parties**

As noted in the parties' joint position, all parties now agree that the supplemental briefing this Court requested in its July 19, 2024 order should address (i) the validity of the 2020 Notes (and the associated guaranty and pledge) under Venezuelan law; (ii) the act of state doctrine; and (iii) any relevant intervening factual or legal developments. The PDVSA Parties welcome Defendants' departure from their initial position before this Court, which urged the Court to "decide the issues of Venezuelan law on the present record and without need for additional expert submissions or briefs." ECF No. 310 at 1

The PDVSA Parties proposed to Defendants on July 29, and reiterate here, that the Court should enter a briefing schedule under which (i) the parties would file simultaneous opening submissions no later than 90 days after this Court's order on supplemental briefing, (ii) the parties would file simultaneous reply submissions 60 days after opening submissions, and (iii) supplemental submissions would include supplementation of the record, as addressed in more detail below. The proposed schedule would thus allow for briefing to be completed in approximately five months' time. This schedule seeks to strike an appropriate balance between expeditious resolution of this case and ensuring that the Court has the benefit of the full record, including all available relevant facts and evidence. The parties' ability to submit additional

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                              3

evidence regarding intervening developments, including supplemental expert declarations, would ensure that this Court has a complete and up to date record for the purpose of hearing argument on, and deciding, the complex issues presented for decision.

      The PDVSA Parties respectfully submit that, consistent with Federal Rule of Civil Procedure 44.1, which allows this Court, in determining foreign law, to "consider any relevant material or source, including testimony," the parties should be permitted to include in their supplemental submissions any relevant documentary materials and expert declarations that are relevant to the intervening legal and factual developments. Contrary to Defendants' position, the quality and quantity of the parties' prior submissions is irrelevant to whether the Court should decide the case on a complete, rather than stale, record. The Court itself noted "the significant passage of time since the Court first considered the issues raised in this action" at the September 25, 2020 summary judgment hearing. ECF No. 312. The supplementation of the record as part of the supplemental briefing the Court has ordered would enable the Court to consider the important issues in this case—including issues of Venezuelan law and act of state— with the benefit of a record that reflects relevant intervening developments since 2020.

      Defendants do not articulate any reason why the parties require a decision on a timeline faster than what the PDVSA Parties have proposed. Instead, Defendants' principal motivation in opposing the PDVSA parties' proposed schedule became clear at the parties' July 29, 2024 meet-and-confer, when Defendants disclosed for the first time that their Venezuelan law expert was likely unwilling to submit additional expert reports, or to provide testimony due to his apparent concerns that doing so might violate a law enacted by the Maduro-controlled National Assembly in May 2023. Defendants stated that they had already started to search for a new Venezuelan law expert, but could not say how long such search would take. In order to permit Defendants additional time to locate a new expert witness, the PDVSA Parties agreed to a two-week extension for the present submission, which the Court granted.

      Defendants now argue that permitting supplemental expert declarations would give the PDVSA Parties "an unfair advantage" because Defendants have to locate "a new expert in Venezuelan law." But the PDVSA Parties have no objection to Defendants locating and retaining a new expert capable of offering an additional submission on issues of Venezuelan law. The need to secure a replacement expert because of the existing expert's unwillingness to provide additional opinions—even if motivated by legitimate concerns—is not, however, a valid reason to deprive the PDVSA parties of the right to submit—and to limit this Court's ability to consider—relevant evidence regarding intervening developments, including additional expert opinions or declarations.

      Defendants are surely capable of identifying an expert who is willing to testify to the opinions provided by their prior expert, and to supplement them as needed. The 90-day period for the parties' opening supplemental submissions that the PDVSA Parties propose, in contrast with Defendants' proposal that the Court "defer establishing a schedule" for yet another 30 days (requiring this Court to devote yet more time to scheduling of this matter next month), is a definite but reasonable timeline for finding and engaging an expert. Defendants are not starting

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                                                          4

their search from scratch. This case is nearly five-years old, the Maduro regime law at issue was enacted more than fifteen months ago,[1] and Defendants have been aware since the New York Court of Appeals' ruling in February 2024 that the issues of Venezuelan law would be relevant on remand. Parties routinely identify and retain expert witnesses in a matter of weeks, if not days, and there are many Venezuelan-trained lawyers who have emigrated to other countries and therefore would not have security concerns.

Defendants suggest that live expert testimony is unnecessary, and note that the PDVSA Parties never objected to the use of expert reports in this Court's prior resolution of the parties' cross-motions for summary judgment. The fact that this Court may not call for live testimony (via Rule 44.1 or otherwise) is beside the point. At the time the existing expert reports were submitted, Defendants' expert represented that they could, if called upon at trial, testify to the contents of their report. *See* ECF No. 152 § 7. That is no longer the case, and this Court will now have to confront what effect the witness's unavailability has on the weight that testimony should be given.

Defendants insist that supplementation will "shed no light on the issues presented." But numerous developments that have occurred since 2020 could potentially be relevant to the Venezuelan law and act of state doctrine issues that remain pending.

For example, as the PDVSA Parties informed Defendants, there is a recently published (in March 2024) authoritative treatise on Venezuelan administrative law: José Araujo-Juárez's *Treatise on General and Comparative Administrative Law*, Volume 4: Public Contract (Center for Integration and Public Law, Caracas 2024). The treatise directly addresses the concept of national public interest contracts in Venezuelan law, including the relevant constitutional provisions and judicial decisions. As Defendants acknowledge, Professor Araujo-Juárez prior writings on the subject have already been cited and debated by the parties during summary judgment briefing. Professor Araujo-Juárez agreed to submit an expert declaration providing his views. The PDVSA Parties respectfully submit that a declaration from Professor Araujo-Juárez is entirely appropriate under Rule 44.1, as it is relevant to the Venezuelan law issues pending before the Court, takes account of important scholarship published subsequent to the Court's initial consideration of the parties' summary judgment motions, and would aid the Court's consideration of important issues of foreign law. Professor Araujo-Juárez' most recent treatise is an authoritative treatment of Venezuelan law, reflecting years of work undertaken by him for scholarly (not litigation) purposes. Defendants' suggestion that this Court should disregard the

---

[1] The PDVSA Parties note that representatives of the PDVSA Ad Hoc Board, as well as the officers and directors of PDV Holding Inc., have been threatened and targeted—including at times by name, as a result of this same law. *See* El Publico TV, Letter from Alejandro Teran Martinez to Merrick Garland (Jan. 8, 2024), at 8-9 https://elpublicotv.com/wp-content/uploads/2024/01/ATTORNEY-2.pdf (referencing Carlos Jordá, CEO and President of CITGO Petroleum Corporation, in relation to "a series of public events that could be among those described in the anti-corruption act as a crime").

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                                                          5

treatise (and disallow Professor Araujo-Juárez' from presenting his opinions) because it was published after this litigation was initiated finds no support in law or logic.[2]

There are numerous other developments relevant to the Court's interpretation of Venezuelan law, and the PDVSA Parties' expert, Professor Allan R. Brewer-Carías, has indicated his desire to provide a supplemental declaration to take account of the pertinent developments.  *See* Fed. R. Civ. P. 26(e)(1)(A), (2) (parties must supplement expert disclosures as to material new issues).  Those developments include, but are not limited to: the impact of the change in Venezuela's Interim Government, including the creation of a new legislative Commission that exercises oversight over PDVSA and its subsidiaries and the passage of new legislation relating to that Commission and PDVSA; published resolutions and statements by the 2015 National Assembly, and its leadership, relevant to PDVSA and its subsidiaries including CITGO Holding, Inc. and CITGO Petroleum Corporation; and several resolutions enacted by the Maduro-controlled National Assembly between December 14, 2023 and July 14, 2023, that invoke the Venezuelan constitutional provisions at issue and adopt an interpretation in accord with the interpretation articulated by the Republic's amicus submissions, Professor Brewer, and the 2015 National Assembly.[3]  The parties may disagree about the import of those materials and developments, but they are unquestionably relevant both to the interpretation and application of the Venezuelan constitutional provisions at issue, and to the international comity issues that this Court will need to address.  Given that Defendants concede that "[a]t the very least, any additional expert submissions should be limited to developments in Venezuelan law," the proposed submissions from Professor Brewer-Carías and Professor Araujo-Juárez, should be permitted.[4]

---

[2]  Defendants, in fact, have previously argued that this Court should consider recent developments, including PDVSA's post-Exchange conduct, in weighing the issues of Venezuelan law in this case. *See* ECF No. 99 at 31, 41 (citing PDVSA's practices "after the Exchange Offer and the U.S. recognition of Interim President Guaido" to argue the PDVSA Parties had capacity to incur debt and pledge their assets); *id*. at 41 ("this practice of issuing debt without National Assembly approval has continued with the approval of the PDVSA Parties' ad hoc boards"); *see also* ECF No. 158 at 33-34 ("The PDVSA Parties' definition of contracts of national interest contradicts the PDVSA Parties' multi-decade practice of issuing debt . . . including recently under the approval of the PDVSA Parties' ad hoc boards").

[3]  Defendants argue no expert opinion regarding these resolutions should even be presented because they were enacted by the illegitimate Maduro-controlled legislature, but that entirely misses the point.  These resolutions are relevant *not* because they represent laws enacted by the Venezuelan Government as recognized by the United States—they are relevant because they demonstrate that *even* the Maduro regime that executed the Exchange Offer recognizes that national public interest contracts executed by PDVSA must be approved by the National Assembly to be deemed legitimate under the Venezuelan Constitution.

[4]  Defendants insinuate that the PDVSA Parties ask for supplemental expert submissions because they are "dissatisfied with their chosen expert."  The basis for this accusation is a purported inconsistency in Professor Brewer's prior writings, and what Defendants view as an insufficiently persuasive explanation for that alleged inconsistency.  Far from "backtrack[ing]" from reliance on Professor Brewer, the PDVSA Parties request to submit a supplemental declaration from him.  Regardless, the Court can determine what weight to give to expert opinions after they are submitted.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                                 6

      Defendants ignore that, like the remaining issues of Venezuelan law, the act of state doctrine also requires consideration of developments that have taken place since 2020. Those developments include: (a) U.S. recognition of the National Assembly after the expiration of the Interim Guaidó Government; (b) numerous statements by the U.S. Government regarding its continued recognition of, and support for, the 2015 National Assembly; (c) similar statements the U.S. Government has made regarding the illegitimacy and abuses of the Maduro regime; (d) changes to the Venezuelan sanctions regime administered by the Treasury Department, including the repeated renewal of the General License (now General License 5P) that prohibits the Bondholders from taking steps to enforce their purported rights under the Pledge Agreement, and (e) legal briefs filed by the National Assembly (speaking on behalf of the Republic) addressing legal principles relevant to this case. These developments may affect how this Court addresses act of state issues, as well as its resolution of the international comity doctrine issues.

      Finally, Defendants complain that Plaintiffs have provided inadequate notice of all of the relevant developments that may be included in supplemental briefing, but an abbreviated meet-and-confer process was neither the time nor place to debate the relevance of weight of those developments. Notwithstanding that Defendants had already declared their opposition to *any* additional briefing or evidence on remand, Plaintiffs in good faith provided illustrative examples of the kinds of developments that would be included in supplemental expert reports and briefing. A proposal for a scheduling order is not the proper place to debate the relevance of this new material or its admissibility. Such an approach is at odds with Rule 44.1. The PDVSA Parties respectfully submit that their scheduling proposal will most efficiently and accurately allow this Court to evaluate the issues before it with the benefit of a complete record.

      **Position of the Trustee and the Collateral Agent**

      The Trustee and the Collateral Agent respectfully submit that the Court should not permit additional expert reports on Venezuelan law.[5] *First*, the Court has already received hundreds of pages of submissions about Venezuelan law from the parties. The PDVSA Parties have cited no material developments in Venezuelan law since the Court's summary judgment ruling in October 2020, ECF No. 215. Additional expert submissions will thus shed no light on the issues presented and will delay resolution of an action that has allowed the PDVSA Parties to avoid complying with their contractual obligations for nearly five years. *Second*, additional expert submissions will give the PDVSA Parties an unfair advantage: as discussed below, due to changes in the political environment in Venezuela, the expert for the Trustee and the Collateral Agent—who resides in Venezuela—believes that submitting further reports in this case would subject the expert to the risk of retaliation by the Maduro regime. Accordingly, the Trustee and the Collateral Agent would have to locate a new expert in Venezuelan law, likely one who does not reside in Venezuela and who is not vulnerable to such retaliation. In contrast, the PDVSA Parties' expert is located in the United States and we understand does not face the same risks. *Third*, in the alternative, any additional expert reports should be limited to developments in

---

[5]    Capitalized terms have the meaning set forth in the Trustee and the Collateral Agent's memorandum of law in support of their motions for summary judgment, ECF No. 99.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                                 7

Venezuelan law, if any, since the entry of the Court's summary judgment, and should not cover matters previously addressed in the parties' prior expert submissions. *Finally*, should the Court allow additional expert submissions regarding Venezuelan law, the Trustee and the Collateral Agent respectfully request that the Court defer establishing a schedule for such submissions by 30 days to enable them to engage and consult with a new expert. Should the Court not allow additional expert submissions regarding Venezuelan law, the Trustee and Collateral Agent propose that initial supplemental submissions be due 90 days after the entry of a scheduling order and that responsive submissions be due 60 days thereafter.

1. The submission of additional expert reports is unnecessary and unlikely to be illuminating. As the Court noted in its Opinion and Order, it has already received "excellent briefing and analysis from the parties and their respective experts on the intricacies of Venezuelan law." ECF No. 215 at 65. The record includes more than 400 pages of expert witness submissions by highly qualified experts for both sides addressing Venezuelan law and thousands of pages of accompanying exhibits, including Venezuelan judicial decisions, scholarly publications, and evidence regarding PDVSA's decades of debt issuances without seeking or obtaining National Assembly approval. The Court heard oral argument on those issues for more than an hour. The PDVSA Parties did not contend at any time before the entry of the Court's summary judgment order that they did not have an adequate opportunity to litigate Venezuelan law.

The Trustee and the Collateral Agent submit that there have not been—and could not be—any developments in Venezuelan law since the Court's summary judgment ruling that would bear on the decisions to be made by the Court here. The United States deems Venezuela's Supreme Tribunal of Justice to be aligned with the Maduro regime, and its members—including members of that court's Constitutional Chamber—have been subject to U.S. sanctions since May 18, 2017. *See* Specifically Designated Nationals List Update (May 18, 2017), https://ofac.treasury.gov/recent-actions/20170518. In the parties' meet and confer discussions, the PDVSA Parties have not cited any judicial decisions since the Court's ruling that bear on the issues presented here.[6]

The PDVSA Parties have identified two allegedly relevant post-summary judgment legal developments they intend to rely upon: (i) they state that the National Assembly elected in 2020 and aligned with the Maduro regime has issued resolutions since the Court's summary judgment

---

[6] To the extent that the Court considers judicial decisions by the Constitutional Chamber to bear on the issues presented in this case, the only on-point decision of which we are aware supports the position taken by the Trustee and the Collateral Agent and their Venezuelan law expert. In *Tobías Nóbrega Suárez*, Decision of the Constitutional Chamber of the Supreme Tribunal of Justice N° 00821, (Dec. 8, 2022), the Constitutional Chamber reaffirmed that only contracts to which the Republic itself is a party—and not contracts involving only State-owned enterprises such as PDVSA—qualify as contracts of national public interest pursuant to Article 150 of the Constitution. The decision is thus consistent with the pre-Maduro 2002 decision of the Constitutional Chamber in *Andrés Velásquez et al.*, Decision of the Constitutional Chamber of the Supreme Tribunal of Justice N° 2241, (Sept. 24, 2002), as discussed in prior expert submissions. *See* ECF Nos. 84 at ¶¶ 23–28; 84-2 at ¶¶ 98–101; 152 at ¶ 32; 175 at ¶¶ 17–35. No expert in this case has questioned the legitimacy of the court that decided *Andrés Velásquez*.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                                                                    8

ruling that are relevant to the issues addressed in this action, and (ii) they state that a legal scholar—whom they now wish to proffer as an additional expert—has published a treatise addressing Article 150 and contracts of national public interest. Neither justifies additional expert submissions.

The resolutions by the 2020 National Assembly likewise do not warrant additional expert briefing. The 2020 National Assembly was established following elections in 2020 that the U.S government has referred to as "fraudulent." *See* Press Statement, Michael R. Pompeo, U.S. Secretary of State, *The United States Continues To Recognize Interim President Guaidó and the Last Democratically Elected National Assembly in Venezuela* (Jan. 5, 2021), https://2017-2021.state.gov/the-united-states-continues-to-recognize-interim-president-guaido-and-the-last-democratically-elected-national-assembly-in-venezuela/. The U.S. government has accordingly stated that it "considers [the National Assembly elected in 2020] to be illegitimate and will not recognize it or its pronouncements." *Id.* The 2015 National Assembly led by parties that oppose the Maduro regime—the body that appointed PDVSA's board—has likewise stated that it does not recognize the legitimacy of the 2020 National Assembly. Ex. 1 at 3 & Art. 9. The PDVSA Parties' expert has opined that as a matter of Venezuelan law actions by "illegitimate" government bodies are "not entitled to recognition or deference." ECF No. 96-2 ¶ 31; *see also* ECF No. 96-1 ¶¶ 91–92.[7] In light of these facts, resolutions of the 2020 National Assembly cannot be given weight in construing Venezuelan law.[8]

The 2024 treatise the PDVSA Parties have cited likewise does not justify additional expert submissions. As the Court has noted, academic scholarship published while this litigation is pending (and potentially intended to influence this litigation) is not informative. As the Court told the PDVSA Parties' counsel at oral argument in response to their citation of articles published during the litigation by Venezuelan legal scholars, "I don't find useful even eminent folks who are just saying nice things while this litigation is pending." ECF No. 246, Tr. 97:11–23. Moreover, prior publications by the author of the treatise, José Araujo-Juárez, addressing Article 150 and contracts of national public interest were cited and discussed in the expert submissions by the parties. *See* ECF Nos. 84, 96-1, 96-2, 154, 179. The PDVSA Parties do not contend that Professor Araujo-Juárez would offer a new perspective. Nor do they contend that Professor Brewer is unable to address any new legal developments since the Court's summary

---

[7] The PDVSA Parties have argued on that basis that this Court should disregard any decisions of the Constitutional Chamber since 2015, including the Constitutional Chamber's decision of July 20, 2016 in *Brigitte Acosta Isasis*, in which the Chamber reaffirmed the holding of *Andrés Velásquez*. *See* ECF No. 84-2 ¶¶ 104–107. The PDVSA Parties' reliance on resolutions of the 2020 National Assembly cannot be squared with their prior position.

[8] The PDVSA Parties first identified these resolutions to the Trustee and the Collateral Agent on August 12, 2024, and accordingly the Trustee and the Collateral Agent have not had an opportunity to fully review them. Accordingly, the Trustee and the Collateral Agent reserve the right to assert other objections to the consideration of these resolutions or to address them in further detail if the Court authorizes submissions regarding them.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                                                         9

judgment ruling. That Professor Araujo-Juárez has now issued a new publication on the issue does not warrant additional expert submissions.

Finally, the PDVSA Parties cite political developments in Venezuela since the Court's summary judgment ruling. But the PDVSA Parties do not explain how these developments—including a change in the Republic's Interim Government, the creation of a new commission to oversee PDVSA and its subsidiaries, and the passage of legislation relating to the Commission and PDVSA—can have any bearing on the meaning of the Venezuelan Constitution in 2016, when the Notes in dispute were issued. The PDVSA Parties likewise refer generally to "published resolutions and statements by the 2015 National Assembly, and its leadership, relevant to PDVSA and its subsidiaries," but they do not identify any such resolutions or statements or show that they are relevant to what the Venezuelan Constitution meant in 2016.

2.  Additional expert submissions will give the PDVSA Parties an unfair advantage because changes in the political environment in Venezuela have rendered it hazardous for the expert for the Trustee and the Collateral Agent—who resides in Venezuela—to submit additional expert reports in this case at this time. In contrast, the PDVSA Parties' expert is located in the United States and we understand is not subject to similar risks.

The relevant developments are as follows. In view of the extraordinarily high-profile and politically charged nature of this case in Venezuela, the Court issued an order on July 30, 2020 providing that the identity of the Venezuelan law expert for the Trustee and the Collateral Agent—who resides in Venezuela—should be kept under seal to protect the expert's safety. ECF No. 207. These safety concerns have significantly increased since that time. In May 2023, the Maduro-aligned 2020 National Assembly enacted a statute purporting to criminalize involvement in "actions, negotiations, offers, agreements, commitments, or acts of administration, sale, or disposition of any asset, right, or interest of the Republic or its entities located abroad," and rendering violations of the statute punishable by up to 20 years' imprisonment. Law for the Protection of Assets, Rights, and Interests of the Republic and its Entities Abroad, Official Gazette No. 6,747 (May 22, 2023), Art 13; original and certified English translation attached as Exhibit 2. The Maduro regime has made clear that it will target persons involved in such litigation. On June 17, 2024, the regime stated that it "will continue to adopt every measure at its disposal to prevent the consummation of the final dispossession of CITGO, and reserves the right to exercise actions against any company or person who might purchase the shares, facilitates the purchase or negotiates CITGO's assets, as well as against those responsible for the plundering of this important asset for the present and the future of all Venezuelans." Comunicado de la República Bolivariana de Venezuela, original and certified English translation attached as Exhibit 3 at 2; *see also* Ex. 4 at 2 (January 9, 2024 release). In view of these developments, the expert who previously submitted declarations regarding Venezuelan law on behalf of the Trustee and the Collateral Agent has concluded that submitting additional declarations would subject the expert to the risk of prosecution in Venezuela.

Accordingly, should the Court permit additional expert reports, the Trustee and the Collateral Agent—but not the PDVSA Parties—will be subject to the unfair disadvantage of

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla
United States District Judge                                                                                           10

having to locate a new expert in Venezuelan law, likely one who does not reside in Venezuela and who is not vulnerable to such retaliation.

       3.      At the very least, any additional expert submissions should be limited to developments in Venezuelan law, if any, since the Court's summary judgment ruling.  The PDVSA Parties should not be permitted to use the passage of time as an excuse to submit reports that seek to relitigate issues that the parties' experts have already addressed comprehensively.  It is scarcely surprising that the PDVSA Parties wish to backtrack from their complete reliance on Professor Brewer.  As the Court will recall, the opinions that Professor Brewer expressed in this case on the core issues presented here were squarely *opposite* to the positions he had taken for years in his academic writing, and he claimed when confronted with his prior written statements they were simply typographical errors that had been repeated multiple times.  ECF Nos. 84 at ¶¶ 23–28; 160 at 30; ECF No. 246 at 98:13–99:11.  But the PDVSA Parties should not be permitted to reopen the summary judgment record merely because they are dissatisfied with their chosen expert.

       4.      Finally, should the Court permit any further expert submissions on Venezuelan law, due to political developments in Venezuela, the Trustee and the Collateral Agent will likely have to engage a new expert.  The Trustee and the Collateral Agent have begun this process, but as of today have not yet retained a new expert.  The Trustee and the Collateral Agent therefore respectfully request that, if the Court believes additional expert briefing would be beneficial, the Trustee and the Collateral Agent be permitted to report back to the Court within 30 days with an update on their search.  Once an expert has been located, the Trustee and the Collateral Agent do not oppose the PDVSA Parties' proposed schedule for submissions no later than 90 days after the entry of a scheduling order and simultaneous reply submissions 60 days after opening submissions.  Should the Court not allow additional expert submissions regarding Venezuelan law, in light of the complexity of the issues presented and the breadth of the summary judgment record, the Trustee and Collateral Agent likewise propose that initial supplemental submissions be due 90 days after the entry of a scheduling order and that responsive submissions be due 60 days thereafter.

* * *

       The parties thank the Court for its consideration of these matters and are available at the Court's convenience for a conference to respond to any questions the Court may have.

       Respectfully submitted,

       */s/ Jonathan H. Hurwitz*

       Jonathan H. Hurwitz

cc:  Counsel of record (Via ECF)