**CLARK SMITH VILLAZOR**

Clark Smith Villazor LLP
666 Third Avenue, 21st Floor
New York, New York 10017
www.csvllp.com

**CHRISTOPHER J. CLARK**
D: 212.377.0853
clark@csvllp.com

July 7, 2025

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

 *Petróleos de Venezuela, S.A. et al.* v. *MUFG Union Bank, N.A. et al.*, No. 1:19-cv-10023

Dear Judge Failla:

 We write on behalf of the Trustee and the Collateral Agent under the governing documents for the 2020 Notes in advance of the conference scheduled for July 10, 2025 and further to our prior letter (ECF No. 380) with an update on the Sale Process in *Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, No. 17-mc-151 (D. Del.) ("*Crystallex*").

 As the Court is aware, the action before this Court resulted from Petróleos de Venezuela, S.A. ("PDVSA") defaulting on the 2020 Notes, which were secured by PDV Holding, Inc.'s ("PDVH's") pledge of a 50.1% equity interest in CITGO Holding, Inc ("CITGO Holding").

 Plaintiff PDVSA is the sole owner of Plaintiff PDVH which in turn was the sole shareholder of CITGO Holding, prior to its pledge of 50.1% of those shares under the Pledge Agreement. CITGO Holding in turn is the sole owner of CITGO Petroleum Corp. ("CITGO Petroleum"). A chart reflecting this ownership structure is attached as Exhibit 1.

 The Pledge Agreement protects the pledged equity in CITGO Holding by forbidding any value leakage through distributions to the pledgor or its creditors following an Event of Default. It contains, among other things, an "anti-upstreaming" provision requiring that, during any Event of Default, "[a]ll payments, proceeds, dividends, distributions, monies, compensation, property, assets, instruments or rights that are received by [PDVH]" be "held in trust for the benefit of the Collateral Agent for the benefit of the Secured Parties, . . . [and] forthwith paid over to the Collateral Agent." Pledge Agreement § 2.05(f), ECF No. 87-5.

 In *Crystallex*, the court has been overseeing a judicial sale of the stock of PDVH for the benefit of the holders of more than $20 billion in judgments against PDVSA or its owner, the

The Honorable Katherine Polk Failla
United States District Judge                                                                 2

Bolivarian Republic of Venezuela ("Republic"). As shown in Exhibit 1, those claims, due to their attachments on the shares of PDVH, are structurally junior to the 2020 Notes vis-à-vis the CITGO Petroleum assets.

As part of the PDVH Sale Process, on July 2, the court-appointed Special Master filed his recommendation that the Delaware court approve a transaction in which the PDVH shares would be sold to the Gold Reserve Consortium. The recommended sale is premised on a complex scheme designed to evade the Pledge Agreement's dictates and to violate the 2020 Noteholders' rights under the Pledge Agreement and other Credit Documents that are before this Court. The sale, if consummated, would fundamentally impair the 2020 Noteholders' collateral by siphoning enormous value from the CITGO assets comprising that collateral.

The Gold Reserve transaction, if approved, would involve the purchase of the PDVH shares for approximately $7.832 billion in cash and judgment claims. The Gold Reserve Consortium is using almost none of its own money to acquire PDVH. Other than $50 million provided by Gold Reserve, the balance of the new money raised in connection with the acquisition would be debt financed by third parties with loans and notes issued or assumed at the level of CITGO Petroleum. The proceeds would be used to repay structurally junior creditors of PDVSA and the Republic. The 2020 Noteholders would be left secured by equity in a company with more than $4.3 billion of incremental net debt, having received not a dollar of paydown. Further, the proposed transaction would distribute approximately $1 billion from CITGO Petroleum's cash balances for the benefit of PDVH creditors. This transaction would eviscerate the value of the 2020 Noteholders' pledge on 50.1% of the CITGO Holding shares.

The structure of the offensive transaction is as follows. Gold Reserve has created an acquisition vehicle ("Dalinar") together with a wholly owned subsidiary ("Adolin"). Adolin is expected to raise the new debt financing for this transaction, which would then be transferred to an escrow paying agent, which would in turn pay PDVSA's judgment creditors. Then, Adolin would merge into CITGO Petroleum, with CITGO Petroleum's assets being used to secure the debt raised to fund the purchase price. To be sure, no lender would advance Adolin (a shell which has no assets of its own) a dollar without the CITGO Petroleum merger—which would result in CITGO Petroleum's assets being used to support the billions of dollars of new debt—in place. If consummated, the transaction would leave the assets of CITGO Petroleum—the value underlying the 50.1% of CITGO Holding pledged to the 2020 Noteholders—encumbered by billions of dollars of debt and fundamentally impaired. This would directly violate the Pledge Agreement, including but not limited to the anti-upstreaming provision discussed above. See Pledge Agreement § 2.05(f), ECF No. 87-5.

The basic effect of the transaction therefore is the transfer of value from PDVH subsidiaries, CITGO Holding and CITGO Petroleum, to structurally junior judgment creditors, in violation of the Pledge Agreement and other documents governing the 2020 Noteholders' rights. This transaction would materially impair the pledged stock of CITGO Holding, which is the subject of this action. Indeed, substantially all of the assets of CITGO Petroleum would be pledged as security to the Gold Reserve financing parties.

CLARK SMITH VILLAZOR

The Honorable Katherine Polk Failla
United States District Judge                                                                                                3

      The terms of Adolin's financing further emphasize its destructive nature on the 2020 Notes. Those terms prohibit the 2020 Noteholders' payment with CITGO Petroleum funds should the 2020 Notes be reconfirmed by this Court as being valid or enforceable. Payments of the 2020 Notes are classified as "Restricted Payments" under the Adolin financing documentation, which are barred in virtually all circumstances.

      The Gold Reserve transaction thus seeks to violate the Trustee's, Collateral Agent's and 2020 Noteholders' rights under the Credit Documents that are before this Court in connection with the parties' pending summary judgment motions, and would deprive this Court of its ability to award meaningful relief in that dispute. This Court has jurisdiction over the Credit Documents and the 2020 Noteholders' rights under those agreements. In fact, during a June 26, 2025 *ex parte* meeting with the Special Master, Judge Stark recognized that the Delaware proceedings are not the forum to resolve the 2020 Noteholders' rights: "[T]he 2020s are not in my litigation. The 2020s are not judgment creditors. They have whatever rights they have. They are litigating them in another court." Ex. 2, Tr. at 48:7-49:9. Judge Stark further recognized the possibility of injunction proceedings in this Court arising out of a bid recommended by the Special Master: "And if [the 2020 Noteholders] are going to, you know, try to get an injunction from me or from the Southern District or some other court, that may be a litigation that has to happen." *Id.* at 61:18-22. Judge Stark also stated that the Sale Process in Delaware was not "in any way intended to benefit the 2020 bondholders" and was instead intended solely "to maximize value for the judgment creditors that are in [his] case." *Id.* at 48:25-49:4. It is therefore critical that the Trustee's, Collateral Agent's and 2020 Noteholders' rights continue to be adjudicated—and protected—by this Court.

      It was concern about these very developments that led the Trustee and Collateral Agent to ask the Court for the pre-motion conference scheduled for this Thursday. *See* ECF No. 380. Notwithstanding Judge Stark's statement to the Special Master acknowledging his "understand[ing] that [he] cannot intentionally take actions to interfere with or deprive [the 2020 Noteholders] of whatever rights they have," Ex. 2 at 49:5-8, the proposed Sale Order filed by the Special Master on July 2 contains provisions that appear specifically designed to do just that. For example, the proposed Sale Order would purportedly enjoin the Trustee, Collateral Agent and 2020 Noteholders from taking any action that would adversely affect the sale of the PDVH shares and would require PDVH and its subsidiaries to take actions to consummate the transaction irrespective of such parties' rights under the Credit Documents. *See* Ex. 3, Proposed Sale Order ¶¶ 6, 13, 25. This proposed Sale Order appears critical to encouraging Gold Reserve's financing parties to finance the transaction in exchange for an improper promise that they cannot face liability for violating the 2020 Noteholders' rights.

CLARK SMITH VILLAZOR

The Honorable Katherine Polk Failla
United States District Judge                                                                                           4

      These developments pose serious irreparable harm to the Trustee, Collateral Agent and 2020 Noteholders.  Subject to the Court's direction, the Trustee and the Collateral Agent, subject to direction by the 2020 Noteholders, are prepared to file a motion for a preliminary injunction promptly.  We look forward to discussing these issues further during the July 10 conference.

      Respectfully submitted,

      */s/ Christopher J. Clark*

      Christopher J. Clark

cc:  Counsel of Record (Via ECF)

CLARK SMITH VILLAZOR