

1(212) 318-6627
kurthansson@paulhastings.com

**VIA ECF**

September 8, 2025

The Honorable Katherine Polk Failla
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, No. 1:19-cv-10023-KPF
      (S.D.N.Y.)—Response to Defendants' Update Regarding the *Crystallex* Litigation

Dear Judge Failla:

      Plaintiffs Petróleos de Venezuela, S.A., PDVSA Petróleo, S.A., and PDV Holding, Inc. ("the PDVSA Parties") respectfully submit this response to Defendants MUFG Union Bank, N.A. and GLAS Americas LLC's ("the Bondholders'") September 5, 2025 letter regarding recent developments in the *Crystallex* litigation.  The Bondholders do not explain why they are informing the Court at this particular time about the August 22, 2025 bid by Amber Energy Inc. ("Amber"), pursuant to which the Bondholders hope to receive a $2.125 billion payoff in exchange for their notes.[1]  In any event, the Bondholders omit critical context of this controversial proposal, and exaggerate its certainty.  *First*, the Bondholders neglect to mention that Amber's bid—and any release of the 2020 notes—is contingent on future judicial and executive approvals that will not occur for years, if at all.  Absent an approval by Judge Stark, affirmance by the Third Circuit, and a sanctions exemption by the Office of Foreign Assets Control ("OFAC"), Amber cannot effectuate any "settlement" of the notes.  *Second*, the Bondholders do not tell the Court that both Judge Stark and the Special Master in *Crystallex* have noted that this Court's decision on the notes' validity—irrespective of which way the Court rules—would aid in maximizing value in the *Crystallex* sale process.  Until the judicial and executive processes are completed, Amber is not a qualified party to reach any settlement over the notes, which are assets blocked by the OFAC sanctions.  Once again, the Bondholders collude with an unqualified party in an effort to improperly close a multi-billion transaction.  This Court should proceed with its stated intention of issuing a decision this month.

---

[1] The Bondholders may have felt contractually obligated to do so given that their agreement with Amber—the Transaction Support Agreement ("TSA")—requires them "to use commercially reasonable efforts … to cause [this action] to be stayed until the closing of the Amber Transaction," as long as "no decision" has yet been rendered in this action.  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151, Dkt. No. 2123-1 at 809 (D. Del.).  Even the Bondholders apparently recognize, however, the impropriety of making a stay request given the Court's intention to issue its decision within a few weeks.  *See* Dkt. 394 at 2.  If the Court wishes to entertain the possibility of a stay, Plaintiffs respectfully submit that should be entered only upon a formal motion and briefing.



Hon. Katherine Polk Failla
September 8, 2025
Page 2

As an initial matter, the "settlement" the Bondholders tout is not a settlement between the parties in this litigation.[2] Rather, it is the latest bid tendered in the *Crystallex* litigation that contains a payoff to the Bondholders as part of the eventual sale. The approval prospects of this bid—the *fourth* recommended bid in the *Crystallex* auction—are tenuous at best, and are contingent on numerous future events.[3] *First*, the bid is subject to both procedural and substantive challenges that Judge Stark must resolve before approval. There is the threshold issue of whether the Special Master could even recommend the Amber bid without determining whether it complies with the minimum bidder protections set forth by Judge Stark. *Crystallex*, Dkt. No. 2090 at 1-4. The Amber bid is also more than $2 billion lower than the competing Gold Reserve bid. Judge Stark previously questioned—when addressing a bid by a subsidiary of Contrarian Capital Management, LLC (one of the main holders of the 2020 notes) that similarly envisioned a $2 billion payoff to the Bondholders—whether a potential settlement with the 2020 noteholders is worth $1 billion of the purchase price, if anything at all. *Crystallex*, Dkt. No. 1840-1 at 60. Judge Stark should not be expected to simply rubber-stamp the Amber bid when it contravenes his prior instructions. Judge Stark must ensure that Citgo's assets are "sold … to the highest bidder," 8 *Del. C.* § 324(a), in order to maximize both recovery for the creditors and reduction in PDVSA's debt obligations. *See Crystallex*, Dkt. No. 1728 at 3.[4]

*Second*, even if Judge Stark approves the Amber bid and enters a sale order, that order will be subject to an appeal to the Third Circuit. In fact, the agreement between the Bondholders and Amber expressly provides that the Bondholders have no obligation to transfer the notes (or to release the Pledge) if Judge Stark's sale order is stayed pending appeal. *See Crystallex*, Dkt. No. 2123-1 at 813 (§ 4.1(h)). *Third*, the OFAC must approve the transaction. *See id.* (§ 4.1(g). The OFAC has consistently signaled its respect to the judicial branch's prerogative to resolve—including through appeal—the underlying complex legal issues related to Citgo's ownership.

---

[2] There have been no settlement discussions between the PDVSA Parties and the Bondholders for over two years, since July 2023. The only discussions that may have taken place are those between the Bondholders and the various bidders in *Crystallex*—none of whom has any authority to act on behalf of the PDVSA Parties.

[3] The current bid is the second bid Amber tendered in *Crystallex*; its prior bid likewise provided for a payment to the Bondholders. *See Crystallex*, Dkt. No. 1325-1 at 135-36. Judge Stark ultimately rejected that bid upon objections from other *Crystallex* parties. *See* Dkt. No. 1517 at 1-5. And Judge Stark expressly directed that any future agreement between the Special Master and a recommended bidder "shall NOT include any requirement or condition with respect to the 2020 Bond Entities other than that bidders acknowledge that the 2020 Bond Entities purport to have a pledge of 50.1% of the equity of CITGO Holding, Inc., which is disputed by the Venezuela Partis and is subject to active litigation." Dkt. No. 1517 at 7-8.

[4] Moreover, the TSA inexplicably commits Amber to pay not only all the attorneys' fees of the Bondholders' counsel in this action, but also the attorneys' fees of their counsel in *other* litigation, such as the *VR Global* litigation. *Crystallex*, Dkt. No. 2123-1 at 803, 811 (§§ 1.1, 3.1(a)(vi)). As this Court may recall, the *VR Global* lawsuit advanced a meritless fraud claim that the PDVSA parties intentionally misrepresented the 2020 notes' validity during the 2016 Exchange Offer, despite having known all along that the notes were invalid absent the National Assembly authorization. After this Court refused the invitation to accept that case, Dkt. No. 262, Judge Cote dismissed VR Global's complaint for failure to state a claim and the Second Circuit affirmed without argument. *VR Global Partners, L.P. v. Petróleos de Venezuela S.A.*, No. 23-cv-5604, 2024 WL 1514982 (S.D.N.Y. Apr. 8), *aff'd*, No. 24-1176, 2024 WL 4891271 (2d Cir. Nov. 26, 2024).



Hon. Katherine Polk Failla
September 8, 2025
Page 3

Altogether, these steps will likely take years, and they are certain to post-date this Court's projected resolution of the parties' pending summary judgment motions by the end of this month. Further, there is no guarantee that *all* holders of the 2020 notes will decide to hand their notes over to Amber, despite the Bondholders' belief that they "should be strongly incentivized" to accept Amber's exchange offer. Dkt. 394 at 2. Indeed, as the TSA recognizes, "[a]ny holder of 2020 Notes" that does not participate in that exchange, "shall remain subject to th[is a]ction." *Crystallex*, Dkt. No. 2123-1 at 830.

The Bondholders also do not inform this Court that both Judge Stark and the Special Master have indicated that this Court's decision on the 2020 notes' validity would benefit the sale process. Judge Stark deliberately scheduled the September-October sales hearing with the knowledge that he would have the benefit of this Court's ruling on the notes' validity. *Crystallex*, Dkt. No. 2056 at 3; Dkt. No. 2155-1 at 43-44. More recently, the Special Master recognized the benefits of this Court's decision to the sale process—indeed, his most recent recommendation is predicated on this Court issuing a ruling prior to Judge Stark's final decision. *See* Dkt. No. 2123 at 12.

Importantly, this Court's decision will help to obtain a value-maximizing outcome in the *Crystallex* sales process *irrespective* of which way the Court rules. As the Special Master explained, if this Court rules that the notes are valid, the TSA would lock the Bondholders to a payoff that is lower than the total amount the Bondholders claim they are owed. *See Crystallex*, Dkt. No. 2123 at 13. Conversely, if this Court finds that the notes are invalid, Judge Stark could "consider whether it views the $2.125 billion settlement as an over-valuation of the PDVSA 2020 Bondholders' claims and a diversion of value from Attached Judgment Creditors," and therefore reopen the bidding process to provide a new opportunity to obtain a better value for Citgo. *Id.* at 13-14. The subsequent bids would likely "provide higher consideration to holders of Attached Judgments" because the bids themselves will either be higher or will re-direct to the judgment creditors the money currently earmarked for the Bondholders. *Id.* at 14.

Finally, as the U.S. Department of State emphasized in a letter to this Court, "Nicolás Maduro and his coterie of corrupt associates have ravaged Venezuela's economy, … and have exploited and squandered the Venezuelan people's assets, including Petróleos de Venezuela, S.A." Dkt. 393-1 at 1. The Bondholders' current efforts, in association with a non-authorized party, to side-step a conclusive decision on the 2020 notes' validity while securing a multi-billion payoff at the expense of forgiving PDVSA's genuine debt obligations repeats the same conduct they committed in 2016, when they entered into an exchange offer while ignoring the 2015 Venezuelan National Assembly. The Court should ignore the Bondholders' misleading representations about the purported "settlement," and issue the decision in this case on the projected timeline already stated by this Court.



Hon. Katherine Polk Failla
September 8, 2025
Page 4


Respectfully submitted,

<u>/s/ Kurt W. Hansson</u>
Kurt W. Hansson
Igor V. Timofeyev
*Counsel for Plaintiffs-Counterdefendants*
*Petróleos De Venezuela, S.A. and PDVSA Petróleo, S.A.*

<u>/s/ Michael J. Gottlieb</u>
Michael J. Gottlieb
*Counsel for Plaintiff-Counterdefendant PDV Holding, Inc.*

cc:  Counsel of record