**WILLKIE FARR & GALLAGHER** LLP

1875 K Street, N.W.
Washington, DC 20006-1238

December 3, 2025

Tel: 202 303 1000
Fax: 202 303 2000

**VIA ECF AND ELECTRONIC MAIL**

The Honorable Katherine Polk Failla
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007



Re:   *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, No. 1:19-cv-10023-KPF (S.D.N.Y.)

Dear Judge Failla:

PDV Holding, Inc. ("PDVH") respectfully submits this supplemental letter in further support of its motion for a partial stay pending appeal. *See* ECF No. 408. On November 25, 2025, Judge Stark issued an opinion formally adopting the Amber Energy ("Amber") bid and rejecting the Gold Reserve bid (i.e., the Dalinar bid). *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-00151 (D. Del.), ECF No. 2553. On November 29, Judge Stark entered the final Sale Order. *Crystallex*, ECF No. 2556.[1] Judge Stark's selection of Amber demonstrates that the central threat invoked by Defendants against issuance of a stay does not exist, and that their judgment with respect to the Pledge Agreement is even more secure than when this Court last entered a stay.

As made clear in their most recent filing, Defendants put forth internally contradictory positions to the stay. They incorrectly claim (without explanation) that the stay PDVH has requested—which necessarily applies to the exercise of voting rights that could impede the appeal in this case—would only limit the Bondholders' foreclosure rights, yet simultaneously claim that the stay is overbroad because it would affect other rights that they may wish to exercise.[2] ECF No. 427 at 3. They also incorrectly claim that PDVH will inevitably lose CITGO due to the Amber bid (notwithstanding that both the Venezuela Parties and Gold Reserve have appealed Judge Stark's decision to the Third Circuit), while simultaneously claiming that Gold Reserve and other creditors continue to pose a threat to the Sale Process (which, if true, would disrupt this supposed *fait accompli*). *Id.* at 2. Judge Stark's order resolves these contradictions by adopting the Amber bid, making clear that, at minimum unless and until the Third Circuit reverses Judge Stark's order, Gold Reserve cannot threaten to "torpedo" the value of the Collateral, and explaining that the Sale Process provides an additional layer of guaranteed protection to the Bondholders, on whose behalf Defendants act, during the pendency of the expedited appeal. *Contra* ECF No. 416 at 11.

---

[1] Judge Stark found that the Gold Reserve bid was "no longer a Qualified Bid under the [Sale Process Order]." *Crystallex*, ECF No. 2553 at 144. Conversely, Judge Stark stated that "the Amber Bid is able to proceed to closing without the 2020s having any ability to block the sale of the PDVH Shares due to the TSA[, which] … allow[s] Amber to obtain (and then extinguish) bonds worth in excess of $2.8 billion for $2.125 billion," all of which would still not moot this litigation. *Id.* ¶¶ 277, 290; *id.* at 139–40; ECF No. 2549 (some Bondholders object to the settlement).

[2] Aside from potential exercise of voting rights, the prospect that the Third Circuit appeal could upend the Sale Process undermines Defendants' promise not to foreclose the Collateral during the Amber-driven Sale Process.

**Rule 62(b)**. Defendants have argued that "Gold Reserve (or any similar bid) threatens serious harm to the Collateral's value." *Id.* at 12. This argument is no longer valid given Judge Stark's rejection of the Gold Reserve bid and selection of the Amber bid. It is indisputable that during the pendency of the expedited appeal, there will be no risk of "other creditors" acting "to seize the debtor's assets," as they cannot do so. *See* ECF No. 416 at 12-14 (addressing the non-existent claimed risk of the Gold Reserve bid); *Crystallex*, ECF No. 2556 at 22 ("All Interested Parties … are prohibited and enjoined from taking any action that adversely affects, interferes with, is likely to frustrate or is in any way inconsistent with the ability … to transfer the PDVH Shares to Buyer …"); *see also id.* at 23 (directing PDVH and CITGO's compliance with the SPA). As such, at least during the pendency of the appeal, the Pledge itself provides more than adequate security to justify a partial stay.

Rule 62(b) provides a stay as a "matter of right." Whether a bond is required depends on whether the Collateral provides "adequate security," not on any party's willingness or ability to post a bond. Defendants' *only* argument for why the Pledge itself does not provide "adequate security" during the pendency of the expedited Second Circuit appeal is their claim that the Collateral (which was sufficient in 2020) does not adequately protect against the potential diminishment in value by other creditors. But, and as noted, that is impossible unless the Third Circuit reverses Judge Stark's order, and Defendants have not explained otherwise. Judge Stark has emphasized that "[l]argely as a result of its TSA component, the Amber bid comes with a very high degree of closing certainty," and that the transaction "cannot be thwarted by the 2020 Bondholders, regardless of whatever enforceable rights they may have in connection with CITGO." *Crystallex*, ECF No. 2553 at 152. In other words, the Amber bid includes a contract that gives the Bondholders an enforceable right to the precise value they have assigned to their claim—at least $2.125 billion—and, provided that the Bondholders prevail on appeal as they insist they will, a partial stay of this Court's judgment as to PDVH will have no conceivable impact on the Bondholders' contractual rights. The Bondholders appear to concede this point. *See* ECF No. 416 at 3 ("The stay application could not and does not attempt to stop the Delaware sale process (or the 2020 Bondholders' agreement with a different bidder in that process, Amber Energy, to release the Collateral and transfer their Notes)."). Given that Defendants have already monetized the Collateral in an enforceable, multi-billion dollar agreement, which is itself already backed by an injunction prohibiting interference by third parties, they cannot credibly argue that diminution is an issue. The only relevant issue for appeal is whether Defendants' claims are valid.

Judge Stark's adoption of the Amber bid further demonstrates that no additional security is required under the *Nassau* factors. As to the first and second *Nassau* factors, because the selected Amber bid includes a contractual vehicle to ensure payment of the Bondholders, the collection process if the appeal were resolved in the Bondholders' favor ***today*** would be identical to the collection process if the Bondholders prevail ***following*** PDVH's expedited Second Circuit appeal. As to the third and fourth factors, the TSA adopted by Judge Stark means that the value for which Defendants have bargained, and memorialized into a binding contract, will be delivered to them (again, assuming they prevail on appeal) ***regardless of how the fair market value of the operating companies might fluctuate in the interim***. In other words, Defendants' rights to be repaid (via their negotiated settlement involving the Collateral) will remain fully intact, unencumbered, and not be subject to any diminishment. In sum, Judge Stark's final selection of Amber (including the Bondholders' TSA) only proves that no additional security or bond is necessary to protect the

Bondholders' ability to recover on their judgment. ECF No. 409 at 17–18. Thus, the Pledge, bolstered by the Bondholders' TSA, more than adequately satisfies "the 'other security' requirement of Rule 62(b)," and will do so through PDVH's appeal.  ECF No. 241 at 3.

**Equitable Powers.** In 2020, this Court readily determined that the equitable factors warranted the entry of a stay. *See* ECF No. 241 at 5 n.5. Defendants urged that changed circumstances—namely, the possible selection of the Gold Reserve bid—make it "hardly equitable" to grant a stay and theorize that such a stay would leave them "powerless to stop transactions that would encumber the Collateral." ECF No. 416 at 15–16. But Judge Stark's Sale Order renders this argument moot, and Defendants have not identified anything that could credibly happen while this matter and the *Crystallex* matter are pending on appeal (other than losing those appeals) that could impair their ability to collect the $2.125 billion they have agreed to accept in exchange for their bonds.

PDVH's ability to litigate the validity of the Pledge on the merits is an existential issue to the Company. PDVH seeks to have its appeal heard before the status quo is irreparably changed by any number of self-help measures that the Bondholders have at various times claimed the right to undertake. Meanwhile, should the Sale Process progress to closing, the Bondholders who signed onto the TSA (with roughly 75% of all Bondholders) will receive $2.125 billion for the release of the Collateral, without any disruption from the requested stay and, notably, *without* resolving this litigation. Plainly, following Judge Stark's adoption of the Amber bid, Defendants face virtually no harm from a short partial stay during the expedited appeals period of the instant litigation. Any scenario involving the failure of the Amber bid would almost certainly occur after the conclusion of PDVH's expedited appeal, and if it occurred sooner, Defendants could readily seek modification of the stay from this Court (as they did before).

The Court's recent extension of the automatic stay demonstrates why a stay of this judgment would be the most effective mechanism by which to allow the *Crystallex* process to proceed without disruption. As this Court and Judge Stark have noted, the current automatic stay has not interfered with Judge Stark's Sale Process, nor has it prejudiced any party from making arguments to protect their rights, whether in this Court or in Delaware. *See* ECF No. 390; *see also* Transcript of Status Conference Hearing (Nov. 13, 2025) at 5:9–15 ("[T]he parties really haven't been compromised in their ability to make arguments to [Stark], nor do I believe their positions have been prejudiced."). It is unclear why continuation of the status quo (in which the judgment has been stayed) would prejudice Defendants in any way. By contrast, the *absence* of a stay threatens to upset the status quo, because it would allow the Bondholders to claim a judicially-granted right to immediately enforce their rights under the Pledge—perhaps to demand more money, perhaps to attempt to force an end to this very litigation. *See* ECF No. 247 at 2 (arguing the *Crystallex* sale process is "fluid").

PDVH also requests that, in the meantime, the Court modestly extend the automatic stay until it issues a decision on the instant motion. Specifically, PDVH understands that this Court intends to issue a decision on the stay by December 9, which is 10 days after Judge Stark's order issued on November 29. ECF No. 421. Given that this Court stayed "execution on the Final Judgment and any proceedings to enforce it until the earlier of seven days after the issuance of Judge Stark's order," *id.*, PDVH respectfully requests that the automatic stay be continued through December 9, or any date by which this Court issues its decision on PDVH's motion.

Respectfully submitted,

*/s/ Kristin Bender*
Kristin Bender
Michael J. Gottlieb
Nicholas Reddick
Alyxandra Vernon
*Counsel for Plaintiff-Counterdefendant PDV Holding, Inc.*

cc: Counsel of record


The Court has reviewed Defendants' letter in further opposition to Plaintiffs' motion for a partial stay of execution of judgment (Dkt. #427) and Plaintiffs' above letter in further support of their stay motion (Dkt. #428). For substantially the reasons contained in Defendants' letter — in particular, the Court's continuing desire to "avoid interfering with th[e] ongoing process" in *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, No. 1:17-mc-151 (D. Del.) (Dkt. #427 at 2) — Plaintiffs' stay motion is DENIED.

Although the Court denies Plaintiffs' motion on the merits, it notes its belief that the automatic stay expired on December 2, 2025, which was seven days after the issuance of Judge Stark's November 25, 2025 Order adopting the Special Master's recommendation to approve Amber's bid — not on December 6, 2025, as the parties suggest. (*See* Dkt. #421; *Crystallex* Dkt. #2554).

The Clerk of Court is directed to terminate the pending motion at docket entry 408.

Dated:   December 5, 2025              SO ORDERED.
         New York, New York

                                       HON. KATHERINE POLK FAILLA
                                       UNITED STATES DISTRICT JUDGE